**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LISA MONTGOMERY**<br>**Federal Medical Center Carswell**<br>**3000 I Street**<br>**Fort Worth, TX 76127,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM P. BARR**<br>**Attorney General of the United States**<br>**In his official capacity**<br>**950 Pennsylvania Avenue, NW**<br>**Washington, DC 20530,**<br><br>**JEFFREY A. ROSEN**<br>**Deputy Attorney General of the United States**<br>**In his official capacity**<br>**950 Pennsylvania Avenue, NW**<br>**Washington, DC 20530**<br><br>**ROSALIND SARGENT-BURNS**<br>**Acting Pardon Attorney**<br>**In her official capacity**<br>**950 Pennsylvania Avenue, NW**<br>**Washington, DC 20530**<br><br>**MICHAEL CARVAJAL**<br>**Director, Federal Bureau of Prisons**<br>**In his official capacity**<br>**320 First St. NW**<br>**Washington, DC 20534**<br><br>**BARB von BLACKENSEE**<br>**Regional Director of the North Central**<br>**Region of the BOP**<br>**In her official capacity**<br>**400 State Avenue, Suite 800**<br>**Kansas City, KS 66101**<br><br>**MICHAEL CARR**<br>**Warden, Federal Medical Center Carswell**<br>**In his official capacity** | ) | **No. ____________________** |

**3000 I Street**
**Fort Worth, TX 76127**

**T.J. WATSON**
**Warden, Federal Correctional Complex**
**Terre Haute**
**In his official capacity**
**4700 Bureau Road South**
**Terre Haute, IN 47802**

**ALIX M. McLEAREN**
**National Administrator of Women**
**And Special Populations**
**Federal Bureau of Prisons**
**In her official capacity**
**320 First Street, NW**
**Washington, DC 20534**

**DEPARTMENT OF JUSTICE**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530**

**OFFICE OF THE PARDON ATTORNEY**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530**

**FEDERAL BUREAU OF PRISONS**
**320 First St., NW**
**Washington, DC 20534,**

**Defendants.**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 18 U.S.C. § 3599

## I.
## Nature of Action

1. Plaintiff Lisa Montgomery (Mrs. Montgomery) brings this action for injunctive and declaratory relief for violations of her right to due process under the Fifth Amendment of the United States Constitution and under 18 U.S.C. § 3599 that have arisen in the course of her attempt

to make use of the mandatory procedures created for federal death-sentenced prisoners seeking executive clemency.

**II.**

**Parties**

2. Mrs. Montgomery is a U.S. citizen and is presently incarcerated at the Federal Medical Center (FMC) Carswell. She is a death sentenced prisoner under the control and supervision of the Federal Bureau of Prisons (BOP), an agency within the United States Department of Justice (DOJ). She is presently scheduled for execution by lethal injection at the United States Penitentiary in Terre Haute, Indiana on December 8, 2020.

3. Defendant William P. Barr is the Attorney General of the United States. Mrs. Montgomery was remanded into the Attorney General's custody upon conviction and imposition of a death sentence. Attorney General Barr oversees the BOP and the Office of the Pardon Attorney. He is sued here in his official capacity for the purpose of obtaining declaratory and injunctive relief.

4. Defendant Jeffrey A. Rosen is the Deputy Attorney General of the United States. Under the direction of the Attorney General, he oversees the day-to-day operations of the BOP and the Office of the Pardon Attorney. He is sued here in his official capacity for the purpose of obtaining declaratory and injunctive relief.

5. Defendant Rosalind Sargent-Burns is the Acting Pardon Attorney. She is charged with managing the day-to-day operations of the Office of the Pardon Attorney, including oversight, review, and investigation of clemency petitions and making recommendations on petitions, pursuant to the clemency process, to the Deputy Attorney General and Attorney General. She is sued here in her official capacity for the purpose of obtaining declaratory and injunctive relief.

6. Defendant Michael Carvajal is the Director of the BOP. He oversees the operations of BOP facilities, staff, and individuals in BOP custody, and serves the Deputy Attorney General and Attorney General. He is sued here in his official capacity for the purpose of obtaining declaratory and injunctive relief.

7. Defendant Barb von Blackensee is the Regional Director of the North Central Region of the BOP. As such, she has the responsibility for USP Terre Haute, and she plays a critical role in the oversight of the operations of that prison, including policy implementation. She is sued here in her official capacity for the purpose of obtaining declaratory and injunctive relief.

8. Defendant Michael Carr is the Warden of the Federal Medical Center Carswell, where Mrs. Montgomery is presently incarcerated. He is sued in his official capacity for the purpose obtaining declaratory and injunctive relief.

9. Defendant T.J. Watson is the Complex Warden of USP Terre Haute, which is where Mrs. Montgomery will be executed. In that position, he is charged with management of USP Terre Haute and the oversight and implementation of operations and policies there. He is sued here in his official capacity for the purpose of obtaining declaratory and injunctive relief.

10. Defendant Alix M. McLearan is the National Administrator of Women and Special Populations Branch for the BOP. She is sued in her official capacity for the purpose of obtaining injunctive and declaratory relief.

11. Defendant DOJ is a cabinet-level department of the federal government responsible for enforcement of the laws of the United States, for oversight and implementation of procedures relating to executive clemency, and for oversight of the BOP and implementation of BOP policies.

12. Defendant Office of the Pardon Attorney is an office within the DOJ responsible for reviewing, investigating, and making favorable or unfavorable recommendations regarding petitions for executive clemency.

13. Defendant BOP is a sub-agency of the DOJ responsible for the care, custody, and control of individuals incarcerated by the Federal Government.

14. Defendants are acting, and each of them at all times relevant hereto were acting, in their respective official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of federal law in violating Mrs. Montgomery's constitutional rights.

**III.**

**Jurisdiction and Venue**

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that the claim for injunctive relief arises under the United States Constitution and federal statutes, including 5 U.S.C. § 702 which waives sovereign immunity for an action seeking relief other than monetary damages against an agency. The request for declaratory relief is based on 28 U.S.C. § 2201, in that an actual controversy exists between Defendants and Mrs. Montgomery involving actions taken by the Defendants and policies applied by Defendants to Mrs. Montgomery in violation of rights guaranteed by the United States Constitution and federal statute. Specifically, Defendants have created conditions that prevent Mrs. Montgomery from accessing and participating in the clemency process with the assistance of counsel.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) because the DOJ, Office of the Pardon Attorney, and BOP headquarters are in this district; because a substantial part of the events giving rise to the claims made by Mrs. Montgomery—including

Defendants' actions pertaining to the executive clemency process in Mrs. Montgomery's case—took place and continue to take place in this District; and because Defendants, the majority of whom reside in this District, were acting in their official capacities in violating Mrs. Montgomery's rights.

## IV.

## Factual Background

### A. Procedural Background

17. Mrs. Montgomery was convicted of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a) and sentenced to death. *United States v. Montgomery*, 635 F.3d 1074, 1079 (8th Cir. 2011). Her conviction was affirmed on direct appeal. *Id.* Her motion pursuant to 28 U.S.C. § 2255 was dismissed. *Montgomery v. United States*, 17-1716 (8th Cir. Jan. 25, 2019) (judgment denying a certificate of appealability (COA)), *cert. denied*, No. 19-5921, 2020 WL 4429729, at *1 (U.S. Aug. 3, 2020); *Montgomery v. United States*, Case No. 12-08001-CV-SJ-GAF (W.D. Mo. Mar. 3. 2017) (order, R. 212).

18. On the evening of October 16, 2020, the BOP provided notice of its intent to execute Mrs. Montgomery on December 8, 2020. *United States v. Montgomery*, Case No. 05-cr-06002-GAF-1 (W.D. Mo. Oct. 16, 2020) (Government's Notice Regarding Execution Date, R. 444).

### B. Mrs. Montgomery's History of Sexual Violence, Mental Illness, and Current Conditions of Confinement

19. Mrs. Montgomery is a victim of incest, child sex trafficking, gang rape, physical abuse, and neglect. These harrowing experiences, combined with congenital brain damage and multiple traumatic brain injuries, have resulted in incurable and significant psychiatric disabilities.

20. Mrs. Montgomery's profound trauma began during her childhood. Her alcoholic stepfather sexually abused her beginning when she was eleven years old. In subsequent years, he raped her

on a weekly basis. He built her a room on the outside of the family's trailer to isolate her from the rest of the family. He invited his friends to rape her as well; she told a police officer at the time that they raped her anally, vaginally, and orally, one after the other. When they were finished, they urinated on her. Her mother, far from protecting Lisa, threatened, abused, and beat her, and trafficked her to men in exchange for services. This sexual violence continued when, as a teen, Lisa was pressured into marrying her stepbrother, who then sexually tortured and raped her.

21. Decades of rapes, beatings, and sexual torture have taken a devastating toll. Mrs. Montgomery has documented brain damage, experiences temporal lobe seizures, and has been diagnosed with Bipolar Disorder and Complex Post Traumatic Stress Disorder ("Complex PTSD"). She dissociates regularly, involuntarily detaching from her circumstances, and struggles to know what is real and what is not. She endures hallucinations, psychosis, mania and depression, affecting every aspect of her daily life. To treat her episodes of florid psychosis and mitigate the debilitating symptoms of her other psychiatric disabilities, FMC Carswell personnel administer her anti-psychotic, anti-epileptic, and anti-depressant medications. Even with these treatments, Mrs. Montgomery continues to experience severe, distressing, and near-constant symptoms of her mental illnesses.

22. Since the Defendants announced their intent to execute Mrs. Montgomery on October 16, they have placed her on "suicide watch" in solitary confinement where she is constantly monitored and the lights are never turned off. Guards observe her every move, including using the toilet.

23. Mrs. Montgomery is presently forced to wear a "safety smock," a flexible garment held shut by insecure Velcro straps. From October 16 to October 30, Defendants denied Mrs. Montgomery access to underwear. The loose fitting smock frequently exposed Mrs. Montgomery's body to prison guards, including her breasts, pubic area, and genitalia.

24. Beginning on October 16, all of Mrs. Montgomery's possessions were taken away from her, including family photos, legal materials, her wedding band, and reading materials. Presently, she is permitted a single crayon and a piece of paper. She is permitted four squares of toilet paper for each use. The prison has denied her access to her eyeglasses and her CPAP machine prescribed by her physician for sleep apnea.

25. On November 10, 2020, Mrs. Montgomery's counsel, Ms. Kelley Henry and Ms. Amy Harwell, objected to Mrs. Montgomery's conditions of confinement in a letter to Kacie Inman, counsel for the BOP at FMC Carswell. They noted that as a victim of repeated sexual violence, Mrs. Montgomery was particularly humiliated and distressed by the removal of her underwear.

26. Since October 30, Mrs. Montgomery has been afforded mesh underwear. She has also been permitted a single paperback book since October 23.

27. Mrs. Montgomery is allowed a cold shower three times a week. She has been given a rubber finger toothbrush and is permitted to brush her teeth twice a day.

28. Defendants are aware of Mrs. Montgomery's mental illness, including her fear of unknown men as result of her history of sexual trauma. Defendants have supervised the provision of antipsychotic and mood stabilizing medication since she was incarcerated.

29. Defendants have conditioned the provision of personal items, hygiene supplies, bathing, and clothing upon Mrs. Montgomery's perceived attitude and mood.

30. Mrs. Montgomery's conditions of confinement have exacerbated her mental illness. They also limit Mrs. Montgomery's ability to participate in the preparation of application for clemency. She remains preoccupied by her access to her underwear, as well as the fear that prison staff will take away other small privileges.

31. In three recent visits, Ms. Harwell and Ms. Henry observed Mrs. Montgomery in a state of acute mental distress and anxiety. Based upon their training and experience, they observed Mrs. Montgomery to be actively dissociative.

**C. The COVID-19 Pandemic and its Impact on Mrs. Montgomery's Ability to Prepare and Present Her Clemency Application**

1. COVID-19 Infections Have Reached Record Levels and Affect All Regions of the Country

32. The COVID-19 Pandemic continues unabated. As of this writing, more than 10 million individuals have been infected, more than 239,000 individuals have died, and daily infections have surged passed 100,000 per day in the United States. *CDC COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited Nov. 12, 2020).

33. It is beyond dispute that any activity requiring close, sustained contact in enclosed spaces presents a health risk at this time. *See Social Distancing*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last accessed Nov. 8, 2020).

34. Incarcerated individuals and individuals working in penal institutions face unique and heightened risks of infection of COVID-19. Megan Wallace, et al., *COVID-19 in Correctional and Detention Facilities—United States, February–April 2020* 69 Morbidity and Mortality Weekly Report 19, 587–90 (2020). As of this writing, nearly 170,000 prisoners have tested positive for COVID-19 and more than 1,300 have died. *A State-by-State Look at Coronavirus in Prisons*, The Marshall Project, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last accessed Nov. 9, 2020). Although complete statistical accounting is

unavailable, over 38,000 prison staff members have tested positive and at least 91 prison workers have died. *Id.*

2. Mrs. Montgomery's Lawyers Are Currently Infected with COVID-19

35. Since March 2020 and consistent with federal court policies for the Middle District of Tennessee, the appointed public defender for the Middle District of Tennessee, Henry A. Martin, ordered that all federal public defender staff cease in-person client visits, witness interviews, and travel, absent a showing of compelling need. This policy was implemented for the safety of public defender staff, court staff, the United States Marshal's Service, corrections staff, and the public at large pursuant to local health mandates and guidance from the Centers for Disease Control and Prevention.

36. Upon notification of Mrs. Montgomery's impending execution, Mr. Martin made a limited exception authorizing Ms. Henry and Ms. Harwell to visit Mrs. Montgomery at FMC Carswell.

37. Ms. Harwell and Ms. Henry traveled to FMC Carwell on October 19, 2020, and visited Mrs. Montgomery on October 20. They were able to confer with Mrs. Montgomery in a non-contact setting via a telephone. A placard indicated that the telephone connection was monitored by BOP. On October 21, they returned for another visit after receiving assurances from BOP legal counsel that conversations would not be monitored.

38. Mrs. Montgomery exhibited signs of terror and distress. She was being held on suicide watch. She exhibited signs of dissociation.

39. On October 25, 2020, Ms. Harwell returned to FMC Carswell. Ms. Harwell again noted signs of distress in Mrs. Montgomery and observed dissociative behavior.

40. On November 1, 2020, Ms. Harwell and Ms. Henry returned to Texas and visited Mrs. Montgomery at FMC Carswell on November 2. Both noted Mrs. Montgomery exhibited signs of dissociation and impaired contact with reality.

41. In spite of following applicable safety guidelines including wearing masks, adhering to social distancing, and frequent handwashing, both Ms. Henry and Ms. Harwell were infected with COVID-19 shortly after returning from FMC Carswell.

42. On November 5, 2020, Ms. Harwell began to feel ill. She obtained a test for COVID-19 on November 6. A positive result was confirmed on November 11.

43. Ms. Harwell is symptomatic and suffers from extreme fatigue, impaired thinking and judgment, cough, sweats, chills, body aches, headache, loss of appetite, nausea, and a sore throat.

44. Ms. Harwell is 48 years old and resides with her 68-year-old spouse and teenage daughter, both of whom have pre-existing conditions that put them at risk for poor outcomes if they become infected with COVID-19.

45. On November 7, 2020, Ms. Henry noticed that she had lost her sense of smell. She was also fatigued and could not think clearly. Upon the advice of her personal physician, she underwent a test for COVID-19 on November 8. On November 10, laboratory results confirmed she was infected with COVID-19.

46. Ms. Henry's symptoms include gastrointestinal distress, severe headache, loss of taste, loss of appetite, cough, sore throat, head congestion, debilitating fatigue, and an inability to concentrate. Her treating physician has ordered that she stop working and rest to maximize her chances of recovery.

47. Ms. Henry is at risk for stress cardiomyopathy. She is 54 years old and resides with her 63-year-old husband who is at risk of adverse outcomes if infected with COVID-19.

48. Ms. Henry and Ms. Harwell are presently quarantined on their physicians' advice. In accordance with the policies of their employer, they may not enter their offices to access their paper files in Mrs. Montgomery's case. They are prohibited from traveling to meet with their client and to speak to witnesses.

49. Since they have started showing symptoms of COVID-19, they have also been unable to work on Mrs. Montgomery's clemency application. They cannot draft the clemency petition and compile evidence in support of their arguments as to why the President should exercise mercy and spare her life. They also cannot visit Mrs. Montgomery.

3. Defendant Barr deliberately scheduled Mrs. Montgomery's execution date at a time that precludes her attorneys from preparing and presenting a clemency petition.

50. Defendant Barr deliberately scheduled Mrs. Montgomery's execution during the height of the COVID-19 pandemic, without affording her lawyers the same degree of notice afforded to other death-sentenced prisoners.

51. A petition for clemency is not appropriate until an individual's § 2255 motion is final. Rules Governing Petitions for Executive Clemency: Capital Cases, 65 FR 48379-02 ("The rule provides for a petitioner to exhaust the direct appeal and first petition under 28 U.S.C. 2255 before seeking executive clemency.").

52. The denial of Mrs. Montgomery's § 2255 motion became final on August 3, 2020, when the Supreme Court denied certiorari. *Montgomery v. United States*, No. 19-5921, 2020 WL 4429729, at *1 (U.S. Aug. 3, 2020). The Government gave notice of its intent to execute her on October 16, 2020, a mere 74 days later. *United States v. Montgomery*, Case No. 05-cr-06002-GAF-1 (W.D. Mo. Oct. 16, 2020) (Government's Notice Regarding Execution Date R. 444).

53. Among the five federal death row inmates that have sought clemency in 2020, the average length of time between when the courts completed review of their § 2255 petitions and when the

defendants received a death notice was 1,807 days, or more than four and a half years. *See United States v. Lee*, 715 F.3d 215, 217 (8th Cir. 2013) *cert. denied*, 574 U.S. 834 (2014); *United States v. Lee*, Case No. 4:97-CR-00243 (E.D. Ark. June 15, 2020) (Government's Notice Regarding Execution Date, R. 1379) **(2,079 days)**; *Purkey v. United States*, 729 F.3d 860, 861 (8th Cir. 2013), *cert. denied*, 574 U.S. 933 (2014); *United States v. Purkey*, 4:01-cr-00308-FJG-1 (W.D. Mo. July 25, 2019) (Government's Notice Regarding Execution Date, R. 617) **(2,071 days)**; *Honken v. United States*, 42 F. Supp. 3d 937, 1197 (N.D. Iowa 2013); *Honken v. United States*, 14-1329 (8th Cir. May 2, 2014) (order denying a COA), *cert. denied*, *Honken v. United States*, 577 U.S. 914 (2015); *United States v. Honken*, Case No. 3:01-CR-3047-LTS (N.D. Iowa June, 15, 2020) (Government's Notice Regarding Execution Date, R. 807) **(1,715 days)**; *Mitchell v. United States*, 790 F.3d 881, 885 (9th Cir. 2015), cert. denied, *Mitchell v. United States*, 137 S. Ct. 38 (2016); *United States v. Mitchell*, No. CR-01-1062-PCT-DGC (D. Ariz. July 29, 2020) (Notice Regarding Execution, R. 605) **(1,395 days)**; *LeCroy v. United States*, 739 F.3d 1297, 1301 (11th Cir. 2014), *cert. denied*, 575 U.S. 904 (2015); *United States v. LeCroy*, 2:02-CR-00038-RWS-JCF (N.D. Ga. Aug. 1, 2020) (Government's Notice Regarding Execution Date, R. 591) **(1,792 days)**; *United States v. Bernard*, 762 F.3d 467, 470 (5th Cir. 2014) (denying Petitioner Christopher Vialva a COA) , *cert. denied sub. nom.*, *Vialva v. United States*, 136 S. Ct. 1155 (2016); *United States v. Vialva*, Case No. W-99-CR-070 (1) (W.D. Texas July 31, 2020) (Government's Notice Regarding Execution Date, R. 673) **(1,614 days)**.

54. Defendant Barr retains full discretion over when executions are scheduled. The law does not mandate when he must set an execution date. 28 C.F.R. 26.3. Department of Justice regulations suggest that at least 120 days' notice should be provided to a prisoner so that she may prepare an adequate clemency petition. Rules Governing Petitions for Executive Clemency: Capital Cases,

65 FR 48379-02 (noting that clemency petitioners are "normally provide[d] at least 120 days' notice" to prepare a petition).

55. No discernable difference exists between Mrs. Montgomery and the other death-sentenced individuals who were afforded much more time to prepare and present clemency petitions.[1]

56. The drastically shortened timeline is further exacerbated by the limitations caused by the COVID-19 Pandemic detailed above and counsel's present infection.

4. <u>Henry and Harwell's COVID-19 Infections Prevent Them From Preparing and Presenting a Clemency Application for Mrs. Montgomery</u>

57. The presentation of a clemency petition is distinct from the filing of a federal habeas petition. Clemency applications often include newly-gathered evidence that has never been presented to the courts. For example, it is common for clemency petitions to include declarations from mental health experts attesting to the condemned prisoner's mental health. Other mental health experts can attest to the likelihood that the prisoner will pose no danger to prison staff or inmates if she is sentenced to life imprisonment. Clemency petitions often contain statements from the prisoner's family members describing how they would be affected by the prisoner's execution, and attesting to the prisoner's impact on their lives. Prison guards can provide affidavits about the character of the condemned prisoner. All of these documents are typically gathered over a period of months leading up to a scheduled execution.

58. Ms. Henry and Ms. Harwell have represented Mrs. Montgomery since November 2012. Both represented Mrs. Montgomery in her § 2255 action. *Montgomery v. United States*, Case No. 12-8001-CV-SJ-GAF (W.D. Mo. Nov. 1, 2012) (R. 20). As such, they possess unparalleled understanding of Mrs. Montgomery's case and have built an attorney-client relationship with Mrs. Montgomery over more than eight years.

[1] Mrs. Montgomery is the only woman on federal death row.

59. At this late juncture, a competent presentation of clemency cannot be conducted by substitute counsel. Substitute counsel would need months to become fully acquainted with Mrs. Montgomery's case.

60. A prisoner's mental health is often the centerpiece of clemency petitions. Over the last several years, governors in four states—Missouri, Virginia, Georgia and Indiana—have commuted death sentences on the basis of a prisoner's ongoing mental illness. *See, e.g., List of Clemencies Since 1976*, Death Penalty Information Center, https://deathpenaltyinfo.org/facts-and-research/clemency/list-of-clemencies-since-1976. In these cases, clemency has served as a fail-safe for prisoners whose claims of incompetency were rejected by the courts.

61. Mental illness and trauma lie at the core of Mrs. Montgomery's case. Throughout her post-conviction appeals, she has claimed that her severe mental illness renders her ineligible for the death penalty. Courts have found these claims unavailing. Clemency represents the only viable means at this late hour to consider how her mental illness affects her moral culpability and weighs in favor of mercy.

62. Mrs. Montgomery's clemency application would therefore rest heavily on evidence that she is currently suffering from a severe mental illness. To support this argument, counsel will require the assistance of experts with access to Mrs. Montgomery. They will also require access to their client to monitor her mental health, access that is now impossible because of their own COVID-19 infections.

63. Before they became ill with COVID-19, Mrs. Montgomery's attorneys had observed that Mrs. Montgomery's mental health continued to deteriorate as her execution date neared.

64. Given the fragility of Mrs. Montgomery's mental health, and counsel's inability to visit her, counsel is unable to monitor her mental condition and provide accurate, contemporaneous information to the Defendants about a crucial aspect of her clemency campaign.

65. Because of the pandemic, the defense team has also been unable to obtain independent expert assessments of Mrs. Montgomery's current mental status. The experts who have knowledge of Mrs. Montgomery's case, and who have built rapport with her, are unable to travel as a result of rules imposed by their respective institutions as well as their individual vulnerabilities to COVID-19.

66. Siddhartha Nadkarni, M.D. is an Assistant Professor associated with the New York University (NYU) Langone Medical Center and the NYU Grossman School of Medicine. His employer prohibits travel to assess Mrs. Montgomery. In addition to these institutional restrictions, Dr. Nadkarni suffers from diabetes and asthma. As such, he is at heightened risk of COVID-19 infection and heightened risk of death if infected. He has been a contracted expert on Mrs. Montgomery's case since 2013. He attests that he is incapable of conducting an adequate assessment of Mrs. Montgomery remotely.

67. Ruben Gur, Ph.D. is a tenured professor at the University of Pennsylvania. He has been a consulting expert in Mrs. Montgomery's case since 2006. His employer prohibits travel due to the COVID-19 Pandemic. He is 73 years old and at heightened risk of infection from COVID-19. He attests that prevailing professional norms to do not allow for a remote assessment of Mrs. Montgomery.

68. George Woods, M.D., is a California physician specializing in cognitive impairments, ethno-psychopharmacology, and psychotherapy. He has been a contracted expert in Mrs.

Montgomery's case since 2013. Dr. Woods is 72 years old and suffers from prostate cancer. He currently takes immunosuppressant therapy.

69. Based upon Dr. Woods's medical condition and age, he has been instructed by his physicians not to travel, and is therefore unable to conduct an in-person assessment of Mrs. Montgomery's mental health. Dr. Woods attests that he is incapable of conducting a remote assessment of Mrs. Montgomery, and that prevailing professional norms require direct clinical observation.

70. Katherine Porterfield, Ph.D., is an employee of NYU School of Medicine and holds the position of Adjunct Clinical Instructor in the Department of Psychiatry. Dr. Porterfield has been a consulting expert on Mrs. Montgomery's case since 2016. Due NYU's institutional restrictions, Dr. Porterfield is not permitted to travel for business. Dr. Porterfield attests that remote assessment of Mrs. Montgomery is not clinically appropriate and that it would be difficult to gauge accurately Mrs. Montgomery's mental state.

71. Mrs. Montgomery's case for clemency also rests upon her horrific history of childhood physical and sexual abuse, rape and domestic violence. How these issues are presented in a clemency application is a sensitive decision that requires consultation with a client. Clemency applications often receive widespread media coverage, and some clients are uncomfortable disclosing intimate details of their lives with the broader public. Mrs. Montgomery's lawyers are presently unable to meet with Mrs. Montgomery to discuss these issues. Moreover, because of the sensitive nature of many of the facts relating to Mrs. Montgomery's rapes and other sexual trauma, she is not comfortable discussing them by phone. During her phone calls with legal counsel, Mrs. Montgomery is under constant observation.

72. It is likewise impossible for Mrs. Montgomery's defense team to obtain an accurate assessment of her mental status by phone.

73. Mrs. Montgomery's defense team is likewise unable to interview potential clemency witnesses remotely because of the sensitive nature of many of the interviews, which detail family physical and sexual abuse.

74. Ms. Henry's supervisor, the Federal Defender for the Middle District of Tennessee, has written to the Department of Justice Office of the Pardon Attorney to notify the office of Ms. Henry and Ms. Harwell's COVID-19 infection and to request a reprieve. In response, the Office of the Pardon Attorney has indicated that a request for clemency must be received by November 16, 2020, and that the deadline cannot be changed. The Office of the Pardon Attorney also indicated that Mrs. Montgomery must provide signed, written authorization permitting counsel to present a petition for reprieve or clemency. At this juncture, travel to obtain this signature and discuss the clemency petition with Mrs. Montgomery is impossible.

## V.

## CAUSES OF ACTION

75. Plaintiff incorporates paragraphs 1-74 by reference.

76. Plaintiff has a life interest protected by the Due Process Clause of the United States Constitution, and a statutory right to counsel in clemency proceedings under 18 U.S.C. §3599. These constitutional and statutory protections entitle Plaintiff to meaningful access to a clemency process under conditions that permit her counsel to prepare her clemency application and participate in the clemency process.

77. Unless this Court restrains and enjoins defendants and their agents, Plaintiff will be deprived of her fundamental right to access a minimally fair clemency process with the assistance of counsel. Plaintiff has no adequate remedy at law to restrain defendant's violations of her rights.

**Claim I**

**Fifth Amendment: Right to Due Process**

78. Plaintiff realleges and incorporates herein by reference the allegations contained in all of the preceding paragraphs.

79. By scheduling Mrs. Montgomery's execution during the peak of the COVID-19 pandemic, Defendants have deprived Mrs. Montgomery of her ability to access and meaningfully participate in the clemency process with the assistance of counsel in violation of the Fifth Amendment. Defendant Barr's deliberate actions in scheduling Mrs. Montgomery's execution at the height of the COVID-19 pandemic have caused Mrs. Montgomery's lawyers to become ill with COVID-19. As a result, Mrs. Montgomery's defense team has experienced, and continues to experience, severe and insurmountable limitations upon the investigation, collection, and presentation of evidence that lies at the core of Mrs. Montgomery's request for commutation of her death sentence.

80. As a result of Defendant Barr's actions, counsel cannot meaningfully participate in the clemency process, and without her lawyers to present a clemency application, Mrs. Montgomery has no access to that process. Meaningful access to the clemency process is required under Fifth Amendment right to due process.

81. For all of these reasons, to allow Mrs. Montgomery to be executed without an opportunity to be represented by her long-standing lawyers, under circumstances in which she will be deprived of meaningful access to the clemency process, would violate her due process rights under the Fifth Amendment.

**Claim II**

**<u>18 U.S.C. §3599: Right to Appointed Counsel in Clemency Proceedings</u>**

82. Plaintiff realleges and incorporates herein by reference the allegations contained in all of the preceding paragraphs.

83. Mrs. Montgomery has a statutory right to counsel in clemency proceedings. *Harbison v. Bell*, 556 U.S. 180, 194 (2009); *Id.* at 197 (Thomas, J., concurring); 18 U.S.C. § 3599. Recognizing the importance of continuity of counsel, § 3599 permits collateral appeal counsel to represent a condemned inmate in a clemency petition. As a matter of practice, it is common—in fact preferred—for collateral appeal counsel to continue to represent a condemned prisoner in a clemency proceeding after the conclusion of a § 2255 action.

84. As detailed in Ms. Harwell and Ms. Henry's affidavits, their infection with COVID-19 directly coincided with their repeated travel to visit Mrs. Montgomery to carry out their ethical duties to their client.

85. As a result of their infection, Ms. Harwell and Ms. Henry are exhibiting symptoms and physicians have directed them to cease work and rest in order to recover and to reduce the risk that their infections will worsen.

86. Under these circumstances, Mrs. Montgomery's statutory right to counsel has been, and continues to be, violated by Defendants' actions.

**IV.**

**Prayer for Relief**

87. WHEREFORE, Plaintiff prays for relief as follows:

88. On each claim for relief, a declaratory judgment that by scheduling Mrs. Montgomery's execution during a global pandemic, under circumstances that resulted in Mrs. Montgomery's attorneys testing positive for COVID-19, Defendants have violated Plaintiff's right to due process and to the assistance of counsel to prepare and present her clemency petition under 18 U.S.C. §3599.

89. On each claim for relief, for a temporary restraining order and a preliminary injunction preventing defendants and all persons acting under their authority, direction, or control, from taking adverse action on Plaintiff's request for reprieve and from denying any request for commutation of her death sentence that may be filed in her case without the assistance of her longstanding lawyers, Kelley Henry and Amy Harwell.

90. On each claim for relief, for a temporary restraining order and a preliminary injunction preventing defendants and all persons acting under their authority, direction, or control, from taking steps to execute Mrs. Montgomery until such time that her counsel may represent her without danger to themselves or the public and that experts may conduct assessments and offer evidence in her clemency proceeding.

DATED: November 12, 2020

Respectfully submitted,

s/Sandra L. Babcock______________

Sandra L. Babcock
Clinical Professor, International Human Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com