# Exhibit 1

# **DECLARATION OF AMY D. HARWELL**

1. I am an Assistant Federal Public Defender in the Office of the Federal Public Defender for the Middle District of Tennessee in Nashville. I am licensed to practice in the state courts of Tennessee and multiple federal jurisdictions.

2. Prior to my current employment, I served as an Assistant Public Defender for the Metropolitan Nashville Public Defender's Office for nine years.

3. I became an Assistant Federal Public Defender in 2007 and was promoted to Assistant Chief of the Capital Habeas Unit in 2018.

4. Since becoming a federal public defender, I have received specialized training in the observation and detection of mental health and trauma-related symptomology. This training has been both formal and informal: I have attended numerous continuing legal education courses designed for capital practitioners focused on the detection and documentation of client symptomology, including many seminars sponsored by the Administrative Office of the Courts. I have also benefitted from on-the-job, informal training from my supervisor and from clinicians with whom we consult.

5. I have taught courses in the detection of trauma symptomology, including dissociation and psychosis, at both state and national training seminars for capital practitioners.

6. In 2012, in the course of my employment, I was assigned to represent Lisa Montgomery along with my supervisor Kelley Henry and local Kansas City counsel Lisa Nouri.

7. I have maintained an attorney-client relationship with Mrs. Montgomery since 2012, frequently traveling to Texas to visit with her at FMC Carswell, a BOP facility outside Fort Worth. In the eight years of representing Mrs. Montgomery, I estimate that I have visited her in person at least 44 times and have spoken to her by phone at least 200 times. It is my repeated experience throughout this eight-year period that Mrs. Montgomery's symptoms of dissociation and psychosis are much harder to perceive on the telephone. For that reason, among others, I have continued to travel to Forth Worth regularly to observe her and note her on-going symptomology for the legal team.

8. On October 16, 2020, Mrs. Montgomery's BOP "unit manager" called my personal cell phone. He told me to hold for Mrs. Montgomery. When Mrs. Montgomery came on the line, she was sobbing and unable to speak. For several long moments, she cried hysterically before she said anything. I told her I was listening, I was concerned, I wanted to know whatever it was that she had to say, and I would wait on the line until she could talk. She finally managed to utter, "you don't know?" I affirmed that I, indeed, did not know why she was calling or crying. She was again unable to speak for a short period. Her breathing was extremely fast. Finally, she was able to tell me that the Warden had read her an execution warrant. Throughout our call, Mrs. Montgomery continued to sob and hyperventilate.

9. Kelley Henry and I traveled to Texas on Monday, October 19, 2020, and saw Mrs. Montgomery on Tuesday, October 20. At that time, the prison was unprepared to provide appropriate accommodations for a private attorney-client visit, maintaining that Mrs. Montgomery had to be under the watch of a guard with her ear on the door due to the concern of prison psychological staff that Mrs. Montgomery was actively suicidal. We met with Mrs. Montgomery in a non-contact visitation room, separated by glass. There was only one phone receiver in the room where Ms. Henry and I were, and it was clearly labeled that BOP monitors the conversations held on that phone. During that visit, I was able to observe Mrs. Montgomery in acute distress, exhibiting symptoms of terror and dissociation. She was wearing a Ferguson Suicide Smock and described having spent the entire time since we had spoken curled in a fetal position in the suicide prevention cell, crying. Other than discussion about her physical needs and conditions of confinement, Ms. Henry and I attempted to confine our discussion to non-confidential matters due to our concerns that the BOP staff were monitoring our conversations.

10. Having addressed the need for confidentiality with the prison and receiving appropriate documentation of the assurance by BOP officials that the phone lines we were required to use to converse with Mrs. Montgomery would not be monitored, Ms. Henry and I returned the following day, October 21, for an attorney-client visit with Mrs. Montgomery. I again observed Mrs. Montgomery in a Ferguson Suicide Smock. She exhibited symptoms of distress, including shaking and tearfulness, and at times, she exhibited symptoms of dissociation and psychosis, including failure to respond to questions and a blank glassy-eyed staring expression. She endorsed her disconnect from reality by describing that she felt removed from her physical body. From my training and my discussions with mental health experts in Mrs. Montgomery's case, I know that these behaviors are symptoms of her mental illness and are associated with psychosis.

11. On October 25, I returned to Texas and visited with Mrs. Montgomery on October 26. However, my visit was curtailed by the prison's failure to allow me in to see Mrs. Montgomery as scheduled ahead of time. I was able to be with her for slightly less than ninety minutes. I again observed her to be dressed in a Ferguson Safety smock. She shivered throughout our visit.  Several times during our visit, I had to help Mrs. Montgomery ground herself so as to not dissociate from reality.

12. On November 1, I again traveled to Texas with Ms. Henry for a visit with Mrs. Montgomery on November 2. During our visit, I noted Mrs. Montgomery's inability to attend to our conversation and other symptoms that indicated that her ability to think and reason was severely impaired. She did not seem fully in touch with reality.

13. On each of our trips, Ms. Henry and I attempted to observe every recommended safety precaution, including wearing N95 masks in the airport and on airplanes and not removing the N95 until we were in our rental car. We made prodigious use of hand sanitizer and otherwise frequently and thoroughly washed our hands. We wore cloth masks to the prison and in public spaces at the hotel, not removing those until we were, again, back in our rental car or in our hotel rooms.

14. On November 5, late in the day, I began to feel ill. In an abundance of caution, I submitted to a COVID test at a public testing station on November 6. I began to quarantine from my family and community. I received a positive test result on November 11. I have communicated with my physician and been instructed to rest and quarantine.

15. Though I am generally healthy, I have a moderate heart condition which increases my risk for possible immediate and long-term health effects due to infection with COVID-19. I am 48 years-old. Additionally, both my 68-year-old spouse and my teenaged daughter have numerous pre-existing conditions that place them at higher risk for poor outcomes if they were to contract COVID. My high school aged daughter is currently engaged in remote learning in our home where I am quarantined.

16. My symptoms have been increasing daily, so far including: extreme fatigue, impaired thinking and judgment, cough, sweats, chills, feeling feverish, moderate-to-severe body aches and headache, loss of appetite, nausea, vomiting, and sore throat. I am unable to focus for prolonged periods, and I need to lie down throughout the day. Despite my best efforts, I have found it impossible to do the work necessary to prepare Mrs. Montgomery's clemency application.

17. I was previously scheduled to travel to Federal Medical Center Carswell on November 8–9, 2020. I have canceled that trip due to my illness. Based upon Mrs. Montgomery's symptomology and worsening mental health condition, it had been the intention of Ms. Henry and I to visit Ms. Montgomery on a weekly basis in the days leading up to her execution. Due to my illness, these visits have been halted for the foreseeable future.

I declare under penalty of perjury that the foregoing is true and correct.

_Amy D. Harwell_

Executed this 12th day of November, 2020.