**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. <u>1:20-cv-3261</u>** |
| | ) | |
| **WILLIAM P. BARR, et al.,** | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**</u>

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .......................................................................................................1

BACKGROUND ........................................................................................................4

STANDARD OF REVIEW .........................................................................................7

ARGUMENT .............................................................................................................8

I.      MONTGOMERY'S MOTION SHOULD BE DENIED BECAUSE SHE FAILS
        TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS .....................................8

        A.      The government has complied with all applicable clemency regulations. ..............8

        B.      Montgomery's due process claim lacks merit. .......................................11

        C.      Montgomery's statutory claim lacks merit. ...........................................18

II.     THE EQUITABLE FACTORS DO NOT SUPPORT AN INJUNCTION .......................20

CONCLUSION............................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

### <u>Cases</u>

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014)...........................................................7

*Barr v. Lee*, 140 S. Ct. 2590 (2020).............................................................4, 13, 22

*Bowles v. Desantis*, 934 F.3d 1230 (11th Cir. 2019) ......................................................20

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ...........................................................4, 22

*Clay v. United States*, 537 U.S. 522 (2003) .................................................................5

*Coleman v. Thompson*, 501 U.S. 722 (1991).................................................................16

*Ex Parte Garland*, 71 U.S. (4 Wall.) 333 (1866)...........................................................20

*Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93 (D.D.C. 2003) ...............................7

*Garcia v. Jones*, 910 F.3d 188 (5th Cir. 2018) ............................................................13

*Gissendaner v. Comm., Ga. Dep't of Corr.*, 794 F.3d 1327 (11th Cir. 2015) ...............13

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
    639 F.3d 1078 (D.C. Cir. 2011)................................................................8, 20, 22

*Harbison v. Bell*, 556 U.S. 180 (2009) ...............................................2, 8, 12, 19, 20

*Hill v. McDonough*, 547 U.S. 573 (2006) .....................................................................7

*Lambert v. Barrett*, 157 U.S. 697 (1895)....................................................................10

*LeCroy v. United States*, 975 F.3d 1192 (11th Cir. 2020) ............................3, 14, 15, 19

*Lee v. Hutchinson*, 854 F.3d 978 (8th Cir. 2017) ........................................................13

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................................7

*Mitchell v. Barr*, No. 1:20-CV-02331-RCL, 2020 WL 5062952
    (D.D.C. Aug. 27, 2020).......................................................................3, 9, 10, 14

*Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25. 2019), *cert. denied*,
    140 S. Ct. 2820 (May 26, 2020)..................................................................1, 5

*Montgomery v. United States*, 565 U.S. 1263 (2012) .....................................................5

*Montgomery v. United States*, — U.S. —, No. 19-5921, 2020 WL 4429729 (2020)......................5

*Munaf v. Geren*, 553 U.S. 674 (2008)..................................................................................7

*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) ....................................................9

*Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998)................................2, 3, 9, 12, 13, 18

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) .............................................................14

*Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020) .........................................................15

*Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)............................................20

*Purkey v. United States*, 964 F.3d 603 (7th Cir.).......................................................16

*Schick v. Reed*, 419 U.S. 256 (1974)...........................................................................20

*Sepulvado v. Louisiana Bd. of Pardons & Parole*, 171 F. App'x 470 (5th Cir. 2006).................18

*United States ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489 (2d Cir. 1950) ..............................11

*United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002)................................................5, 6

*United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871) ...............................................8

*United States v. Lee*, No. 4:97-cr-243, 2020 WL 3921174 (E.D. Ark. July 10, 2020)...........15, 16

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011)................................1, 4, 5

*United States v. Pollard*, 416 F.3d 48 (D.C. Cir. 2005)................................................11

*Wainwright v. Brownlee*, 103 F.3d 708 (8th Cir. 1997) .............................................18

*Wainwright v. Torna*, 455 U.S. 586 (1982) ...............................................................14

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................3, 7, 10, 12, 21

## Statutes

18 U.S.C. § 3599...................................................................................... 3, 12, 16-19

28 U.S.C. § 2241.............................................................................................16

28 U.S.C. § 2255...................................................................................1, 5, 9, 16, 18

**<u>Regulations</u>**

28 C.F.R. § 1.1 ................................................................................................9, 10

28 C.F.R. § 1.10 ...................................................................1, 2, 5, 6, 9, 10

28 C.F.R. § 1.11 ....................................................................................................9

28 C.F.R. § 26.4(a) ................................................................................................6

## INTRODUCTION

One week before Christmas in 2004, Plaintiff Lisa Montgomery carried out a premeditated murder-kidnap scheme in which she strangled a 23-year-old pregnant woman to death and kidnapped her baby after beginning to cut the baby out of the woman's body while the woman was still alive. *See United States v. Montgomery*, 635 F.3d 1074, 1079 (8th Cir. 2011). Montgomery subsequently confessed to the murder and kidnapping. *Id.* at 1085. In October 2007, a jury found Montgomery guilty of federal kidnapping-resulting-in-death and unanimously recommended a death sentence, which the court imposed. *Id.* at 1085. Her sentence was affirmed on appeal; her motion for collateral relief under 28 U.S.C. § 2255 was denied; the court of appeals declined to issue a certificate of appealability; and, on May 26, 2020, the Supreme Court denied her petition for a writ of certiorari. *See id.* at 1079; Order, *Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25, 2019), *cert. denied*, 140 S. Ct. 2820 (May 26, 2020). Nearly five months later, on October 16, 2020, her execution was scheduled for December 8, 2020, at the United States Penitentiary in Terre Haute, Indiana—the ninth federal execution scheduled this year.

After receiving notice of her execution date on October 16, Montgomery and her team of at least sixteen attorneys have filed numerous legal actions, including a 246-page filing attempting to intervene in the long-running execution-protocol litigation before Judge Chutkan, *see In re Fed. Bureau of Prisons' Execution Protocol Cases* ("*Protocol Cases*"), No. 1:19-MC-145-TSC; a 65-page petition to the Inter-American Commission on Human Rights; and a 29-page complaint challenging the conditions of her confinement and seeking to enjoin her transfer to Terre Haute, which is now pending before Judge McFadden, *see Montgomery v. Barr*, No. 1:20-CV-3214.

Montgomery has not, however, submitted a clemency petition. It is undisputed that, under federal regulations, she was eligible to submit such a petition between the time her Section 2255 proceedings "terminated" this May, 28 C.F.R. § 1.10(b), and "no later than 30 days after" the notice of her scheduled execution, *id.*, which in this case would be November 15. On November 9, the Pardon Attorney received a letter seeking a reprieve (*i.e.*, postponement) of Montgomery's execution on the ground that two of her counsel were suffering from symptoms of (and were subsequently confirmed to have) COVID-19. *See* Dkt. 2-2, 2-3, 2-5. The Pardon Attorney

responded the next day, expressing "sincere sympathy" for the request, and explaining that—while the Pardon Attorney is not authorized to grant a reprieve—the government would "accommodate the obvious difficulties" facing counsel. Dkt. 2-6, at 1. Specifically, the Pardon Attorney explained that she would construe the 30-day regulatory deadline to fall on Monday, November 16 (rather than Sunday, November 15), and—critically—that any attorney representing Montgomery could satisfy the regulatory deadline simply by filing electronically a boilerplate "placeholder petition" on November 16, which could then be supplemented electronically with any materials of Montgomery's team's choosing over the next 15 days (*i.e.*, by December 1). *Id.* at 2; *see* 28 C.F.R. § 1.10(b); Gillespie Decl. ¶¶ 6-9. The Pardon Attorney also offered to hear an "oral presentation … conducted remotely over teleconferencing" at a time of Montgomery's counsel's choice. Dkt. 2-6, at 2; *see* Gillespie Decl. ¶10. And in subsequent communications, the federal Bureau of Prisons (BOP) has explained that Montgomery may have unsupervised telephone or videoconference communications with her attorneys or others (such as experts) to discuss her clemency petition or other topics. *See* Carr Decl. ¶¶ 8-9.

Notwithstanding those accommodations, Montgomery filed a complaint in this Court and now seeks injunctive relief barring the government from proceeding with her execution. The crux of her legal theory is that the recent COVID-19 infection of two of her at least sixteen attorneys has deprived her of due process and her statutory right to counsel by making it more difficult to complete a clemency application. The government appreciates those concerns and remains committed to accommodations that allow Montgomery to file a meaningful pardon, commutation, or reprieve petition. But her attempt to obtain injunctive relief from this Court is seriously flawed as a legal matter and should be denied for two independent reasons.

First, Montgomery's claim is unlikely to succeed on the merits. The federal clemency power is committed exclusively to the President. *See* U.S. Const. art. II, § 2, cl. 1; *Harbison v. Bell*, 556 U.S. 180, 187 (2009). Even in a capital case, the exercise of that power is "rarely, if ever, [an] appropriate subject[] for judicial review." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (plurality opinion). At most, the Due Process Clause establishes that the

-2-

government must satisfy "some *minimal* procedural safeguards"—for example, not subjecting death-row inmates to an "arbitrar[y]" scheme "whereby a[n] official flipped a coin to determine whether to grant clemency." *Id.* at 289 (O'Connor, J., concurring in the judgment). The clemency process that the government has provided Montgomery—which has also been provided to nine other federal death-row inmates who have been scheduled for execution during this year's pandemic—readily satisfies that minimum standard, *see, e.g.*, *Mitchell v. Barr*, No. 1:20-CV-02331-RCL, 2020 WL 5062952 (D.D.C. Aug. 27, 2020), particularly considering the accommodations that the government has made and will continue to make to account for the illness of two of Montgomery's counsel. Indeed, it is the prerogative of the President to grant a reprieve by postponing the execution date, and a court would improperly intrude on that exclusively executive function by enjoining an execution date on the grounds alleged by Montgomery. Likewise, the statutory right to be represented by counsel during clemency proceedings, 18 U.S.C. § 3599(e), does not entitle Montgomery to *postpone* her execution simply because two of her sixteen counsel are currently suffering from COVID, particularly in light of the "ready access" Montgomery still has to counsel remotely. *LeCroy v. United States*, 975 F.3d 1192, 1197 (11th Cir. 2020), *cert. denied*, No. 20-5767 (20A52), 2020 WL 5640389 (U.S. Sept. 22, 2020).

Second, Montgomery cannot satisfy the equitable requirements necessary for injunctive relief. *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 32 (2008). Any harm that she suffers from a reduction in capacity by two of her sixteen counsel is limited when considered against the backdrop of the many other resourceful counsel that she has on her team (including those who filed this lawsuit); the nearly six months that her counsel had to work on a clemency petition between May and their COVID-19 diagnosis in November; and the two-and-a-half weeks that remain to work on a full petition for clemency or reprieve before it is due on December 1. Although the pandemic imposes undeniable constraints on all involved, numerous other federal death-row inmates have submitted clemency petitions this year, *see* Gillespie Decl. ¶¶ 14-17, and the government remains committed to working with Montgomery's counsel to allow her to do the same. On the other side of the ledger, the public interest in allowing the execution to

"proceed as planned" is overwhelming. *Barr v. Lee*, 140 S. Ct. 2590, 2592 (2020). Montgomery perpetrated an astonishingly brutal crime for which the jury determined that the death penalty was warranted. She does not contest her guilt or the lawfulness of that sentence, and the public's "important interest in the timely enforcement of" her capital sentence far outweighs the narrow (and ultimately meritless) objections she raises here. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019). The motion should accordingly be denied.

## BACKGROUND

A. More than 13 years ago, Montgomery committed a horrific murder that was calculated, premeditated, and shockingly brutal. Montgomery's victim, Bobbie Jo Stinnett, was eight months pregnant at the time of her murder in December of 2004. *Montgomery*, 635 F.3d at 1079. Using an alias and posing as a potential buyer of a puppy Stinnett had advertised for sale, Montgomery entered Stinnett's home in Skidmore, Missouri, with a sharp kitchen knife and a white cord concealed in her jacket pocket. *Id.* Montgomery attacked Stinnett and used the cord to strangle her until she was unconscious. *Id.* Montgomery then used the kitchen knife to cut into Stinnett's abdomen, causing Stinnett to regain consciousness. A struggle ensued, and Montgomery strangled Stinnett a second time, killing her. *Id.* at 1079-80. Montgomery thereafter extracted the premature baby from Stinnett's mutilated body, cutting the umbilical cord and fleeing with the baby. *Id.* at 1080. A short time later, Stinnett's mother found her daughter lying on the living room floor, covered in blood. *Id.* Her mother said that it looked like Stinnett's stomach had exploded. *Id.*

Montgomery had carefully and meticulously plotted the crime for months. *Id.* at 1079-80. Montgomery met Stinnett online in April of 2004, and soon learned from Stinnett's Facebook page that Stinnett was pregnant. *Id.* at 1079 Although Montgomery had undergone a surgical procedure that rendered her incapable of becoming pregnant, Montgomery began telling her family, friends, and an online community that she was pregnant. *Id.* at 1079. She began wearing maternity clothes and behaving as if she were pregnant. *Id.* Unaware of the permanent sterilization, Montgomery's then-husband and her children believed that she was expecting. *Id.* Those who knew that Montgomery had been sterilized—including her former husband and his wife—accused

Montgomery of deceiving her family. *Id.* "She responded that she would prove them wrong." *Id.* at 1085

Following the murder and kidnapping, Montgomery placed the infant in a car seat, falsely told her husband that she had given birth to the child at a women's clinic in Topeka, Kansas, and calmly returned with her husband to their home in Melvern, Kansas, where she pretended the infant was her own. *Id.* at 1079–80.  She subsequently admitted to the crime, and, after an extensive trial, she was found guilty by the jury, which recommended a sentence of death.  *Id.* at 1085.  The Eighth Circuit affirmed Montgomery's conviction in 2011, *see id*. at 1099, and the Supreme Court denied certiorari the following year. *Montgomery v. United States*,  565 U.S. 1263 (2012). Montgomery's motion for collateral relief under 28 U.S.C. § 2255 was subsequently denied, and the Eighth Circuit declined to issue a certificate of appealability in January 2019.  Order, *Montgomery*, No. 17-1716. The Supreme Court denied certiorari on May 26, 2020.   140 S. Ct. 2820.   At that point, Montgomery's first round of collateral review had "terminated."  28 C.F.R. § 1.10(b).  She became a candidate for execution and was eligible to file a clemency petition.  *Id.*[1]

B.   On October 16, 2020, the Attorney General announced that BOP had scheduled Montgomery's     execution     to     take     place     on     December     8,     2020.     *See* https://www.justice.gov/opa/pr/executions-scheduled-two-federal-inmates-convicted-heinous-murders. The Attorney General noted that Montgomery was convicted of an especially heinous murder more than 13 years ago. *Id.* The October 16 scheduling of Montgomery's December 8 execution provided her with 53 days of notice, consistent with the 50 days' notice specified in

---

[1]The Supreme Court denied a rehearing petition on August 3, 2020, *see Montgomery v. United States*, — U.S. —, No. 19-5921, 2020 WL 4429729 (2020), but Montgomery's attempt to seek collateral relief was terminated when the Supreme Court denied her petition for certiorari in May.  *See* Sup. Ct. R. 16(3) ("The order of denial will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice."); *see also Clay v. United States*, 537 U.S. 522, 528 n.4 (2003) (recognizing in dicta that "courts of appeals 'have uniformly concluded that, if a prisoner petitions for certiorari, the contested conviction becomes final when the Supreme Court either denies the writ or issues a decision on the merits [.]'" (quoting *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002))).

BOP's nonbinding execution protocol, *see Protocol Cases* Doc. 171, at 23, and well in excess of the 20 days of notice provided by regulation, 28 C.F.R. § 26.4(a).

C. Following the scheduling of her execution, Montgomery submitted a 264-page filing attempting to intervene in litigation challenging the federal execution protocol. *Protocol Cases* Docs. 303–04. Montgomery withdrew that filing five days later. On November 5, Montgomery— through counsel in this case and three longtime post-conviction counsel—filed a 65-page Petition with the Inter-American Commission on Human Rights. https://www.deathpenaltyworldwide.org/ wp-content/uploads/2020/10/IACHR-Petition.pdf.   On   November 6,   Montgomery   filed   a complaint challenging the current and future conditions of her confinement and her transfer to Terre Haute, Indiana, where she is scheduled for execution. *Montgomery v. Barr* ("*Confinement Case*"), No. 1:20-CV-3214-TNM, Doc. 1 (D.D.C. Nov. 6, 2020).

On November 9, two of Montgomery's counsel submitted a letter to the Pardon Attorney seeking a reprieve (*i.e.*, postponement) of Montgomery's execution on the ground that the two counsel were suffering from symptoms of (and were subsequently confirmed to have) COVID-19. *See* Dkt. 2-2, 2-3, 2-5.   The Pardon Attorney responded the next day, expressing "sincere sympathy" for the request, and explaining that—while the Pardon Attorney is not authorized to grant a reprieve—the government would "accommodate the obvious difficulties" facing counsel. Dkt. 2-6, at 1. Specifically, the Pardon Attorney explained that she would construe the 30-day regulatory deadline to fall on Monday, November 16 (rather than Sunday, November 15), and that any attorney representing Montgomery could satisfy the regulatory deadline simply by filing electronically a "placeholder petition" on November 16, which could then be supplemented electronically with any materials of Montgomery's team's choosing over the next 15 days (*i.e.*, by December 1).  *Id.* at 2; *see* 28 C.F.R. § 1.10(b); Gillespie Decl. ¶¶ 6-9.  The Pardon Attorney also offered to hear an "oral presentation … conducted remotely over teleconferencing" at a time of Montgomery's counsel's choice.  Dkt. 2-6, at 2; *see* Gillespie Decl. ¶ 10.  BOP has been willing to permit Montgomery to have unmonitored telephone or videoconference communications with

her attorneys or others (such as experts) to discuss her clemency petition or other topics.  *See* Carr Decl. ¶¶ 3, 8-9.

On November 12—nearly six months after she became eligible to file a clemency petition, 27 days after her execution was scheduled, and four days before the placeholder clemency petition is due—Montgomery filed this suit and moved for a temporary restraining order and preliminary injunction seeking to stop her execution.

## STANDARD OF REVIEW

Montgomery has moved for a preliminary injunction and temporary restraining order, and the same exacting standards apply for both. *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003). "A preliminary injunction s an extraordinary and drastic remedy . . . ." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks omitted).  "[I]t is never awarded as of right," *id.* at 690, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted).  The movant must satisfy a four-prong test, establishing "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The "most important factor" is whether the movant has "established a likelihood of success on the merits."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  Additionally, because Montgomery seeks a stay of execution, she must also "satisfy all of the requirements for a stay, including a showing of a *significant* possibility of success on the merits."  *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (emphasis supplied).

## ARGUMENT

The motion for injunctive relief should be denied for either of two reasons.  First, Montgomery's claim is not likely to succeed on the merits, because she has neither a constitutional

nor a statutory entitlement to the relief she seeks.  Second, Montgomery fails to satisfy the equitable requirements needed to support the extraordinary remedy of enjoining an execution, given that she had considerable time to work on a clemency petition before her execution was scheduled, still has ample time to complete a petition for clemency or reprieve before December 1, has a large team of counsel to assist her, and committed a horrific capital offense 16 years ago for which the victim's family and the public should receive justice without further delay.

## I.    MONTGOMERY'S MOTION SHOULD BE DENIED BECAUSE SHE FAILS TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

Montgomery's request for relief fails because she cannot demonstrate "a substantial likelihood of success on the merits" of her claim—"a key" and "often . . . dispositive" issue in requests for preliminary equitable relief.  *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011).  Specifically, Montgomery contends that she has a constitutional due process and statutory right to have her execution postponed because two of her attorneys currently have COVID-19.  Particularly in light of the accommodations the government is making to enable her to file a petition for clemency or reprieve, those claims have no significant prospect of success.  Injunctive relief is accordingly unwarranted.

### A.    The government has complied with all applicable clemency regulations.

Clemency is an exclusively executive function, committed by the Constitution to the sole discretion of the President.  *See* U.S. Const. art. II, § 2, cl. 1 (providing that the President "shall have Power to grant Reprieves and Pardons for Offenses against the United States"); *Harbison*, 556 U.S. at 187 ("Federal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law."); *United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871) (rejecting congressional limitations on the pardon power); *see also Whether the President May Have Access to Grand Jury Material in the Course of Exercising His Authority to Grant Pardons*, 24 Op. O.L.C. 366 (2000) ("The Supreme Court's decisions recognize that the pardon power is different from many other presidential powers in that it is textually committed exclusively to the President.").  Accordingly, even in the capital context, "pardon and commutation

decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Woodard*, 523 U.S. at 276 (plurality opinion); *see, e.g.*, *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010) ("A court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions."); *Mitchell*, 2020 WL 5062952, at *2-3 (rejecting clemency-based claim by a federal death-row inmate shortly before his execution).

The Department of Justice has issued "advisory" regulations to guide the clemency process, 28 C.F.R. § 1.11, including regulations specifically applicable to death-row inmates, *see* 28 C.F.R. § 1.10. Although those regulations "create no enforceable rights in persons applying for executive clemency," 28 C.F.R. § 1.11, it is undisputed that the Department has fully complied with the applicable regulations here. Of particular relevance to Montgomery's claims, the regulations provide that "[a] person seeking executive clemency by pardon, reprieve, commutation of sentence, or remission of fine shall execute a formal petition." 28 C.F.R. § 1.1. A petition for reprieve or commutation of a death sentence may be filed as soon as "proceedings on the [inmate's] direct appeal of the judgment of conviction and first petition under 28 U.S.C. 2255 have terminated," 28 C.F.R. § 1.10(b), and a petition for commutation "should be filed no later than 30 days after" the petitioner receives notice of her execution date, *ibid.*. Once an application is filed, additional papers "should be filed no later than 15 days after the filing of the petition itself." *Id.* An inmate's "counsel may request to make an oral presentation of reasonable duration to the Office of the Pardon Attorney in support of the clemency petition." 28 C.F.R. § 1.10(c).

The pardon regulations have been followed fully in this case. Proceedings on Montgomery's "first petition under 28 U.S.C. 2255 . . . terminated" on May 26, 2020. 28 C.F.R. § 1.10(b); Sup. Ct. R. 16(3). Montgomery has accordingly been eligible to submit a clemency application at any time since that date. *See* 28 C.F.R. § 1.10(b). When her execution was scheduled on October 16, 2020, she had an additional 30 days to submit a clemency application, plus an additional 15 days to supplement the application with additional materials. *See id.* On Monday, November 9, 2020—six days before the 30-day deadline—the Federal Public Defender of the

Middle District of Tennessee, Henry A. Martin, submitted a three-page letter that was forwarded by email to the Office of the Pardon Attorney. *See* Gillespie Decl. ¶ 6. The letter asked the President for a reprieve of Montgomery's execution date because two of Montgomery's attorneys—assistant federal public defenders in Martin's office—were possibly infected with COVID-19 and had been ordered to quarantine. *Id.* The letter also discussed several grounds for clemency that the attorneys had planned to include in Montgomery's application. *Id.* The next day, the Pardon Attorney advised Mr. Martin that requests for reprieve[2] should be submitted through a formal clemency petition, per 28 C.F.R. § 1.1. *Id.* at 7. The Pardon Attorney also stated that the Office would construe the 30-day deadline to extend to Monday, November 16, and would accept a "placeholder" application on that date that could be supplemented by additional materials and Montgomery's signature at any time before December 1, 2020. *See* Gillespie Decl. ¶ 8. The Pardon Attorney also advised that any oral presentation that Montgomery's attorneys wished to make would be conducted electronically using teleconferencing services and that all materials could be submitted via email or other digital transmission. *See id.* ¶ 10.

Montgomery's counsel replied on November 10, seeking clarification as to whether counsel could sign a clemency petition on Montgomery's behalf. *Id.* ¶ 11. The Pardon Attorney responded on the same date, advising counsel that pursuant to 28 C.F.R. § 1.10(a), Montgomery was required to sign the petition, but that if this signature requirement proved difficult, the Pardon Attorney may consider additional, unspecified accommodations. Gillespie Decl. ¶ 12. Other than to thank the Pardon Attorney for clarifying the signature requirement, Montgomery's counsel has not made additional contact with the Pardon Attorney since November 10. If any of Montgomery's counsel file a simple placeholder application on November 16, and then file a supplemented application for clemency or a reprieve by December 1, the Pardon Attorney will be able to complete its review and recommendation with sufficient time before the scheduled execution, as it has for the four other federal death-row inmates executed this year who submitted clemency

---

[2] The President could grant a "reprieve" by postponing the execution date. *See, e.g.*, *Lambert v. Barrett*, 157 U.S. 697, 699 (1895)

applications. *See* Gillespie Decl. ¶¶ 14–15.  Montgomery accordingly has no ground to contest the legality of the clemency process she has received under the applicable federal regulations.

>   **B.      Montgomery's due process claim lacks merit.**

Montgomery nevertheless claims that she has been denied due process because her counsel and experts are hindered in preparing a clemency application by the COVID-19 pandemic.  (Mot. 6-7.)  Although the government will continue working to accommodate the challenges presented by the pandemic, Montgomery's claim has no merit as a matter of constitutional law.

a. As noted above, the Constitution commits the federal clemency process exclusively to the President, and it "is a matter of grace, over which courts have no review."  *United States v. Pollard*, 416 F.3d 48, 57 (D.C. Cir. 2005) (alterations omitted) (quoting *United States ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489, 491 (2d Cir. 1950) (Learned Hand, J.)); see pp. 2-3, *supra*. As the D.C. Circuit put it in *Pollard*, "fundamental constitutional principles absolutely dictate" judicial restraint from intrusion into the executive's management of the clemency process—in that case, declining access to classified materials to support her clemency petition.  416 F.3d at 57; *see id.* ("[I]t is entirely out of our power to compel discovery of or access to documents for the sake of a clemency petition.")  The same constitutional authority governing the clemency power counsels similar judicial restraint here.

The President controls the timing of clemency proceedings.  If the President wants to exercise discretion to grant Montgomery a reprieve in order to give her counsel more time to prepare a clemency petition, the President will do so, assuming that Montgomery submits a formal petition asking for a reprieve as set forth in the regulations.  There is no basis for the Court to interfere with the President's exercise of the Executive's exclusive authority in this area.

b. Montgomery's theory for her constitutional claim is not entirely clear.  She relies heavily on the Supreme Court's decision in *Harbison* (Mot. 6-7), but—as she ultimately appears to acknowledge (*id.* at 7)—*Harbison* was not a constitutional case.  The question was whether 18 U.S.C. § 3599(e)'s provision of a right to counsel in clemency proceedings "encompasses state clemency proceedings."  556 U.S. at 182-83.  The Court's *statutory* holding that § 3599(e) applies

to such *state* proceedings has nothing to do with Montgomery's *constitutional* claim in this *federal* case. *Id.* at 183. To the extent other discussion in *Harbison* has any bearing on the constitutional question here, it only reinforces the government's position that "[f]ederal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law." *Id.* at 187.

Montgomery also briefly alludes to the Supreme Court's decision in *Woodard* (Mot. 6), which did involve a constitutional claim, albeit in the context of *state* clemency proceedings. In that case, a plurality of the Court *rejected* the premise that a state's "clemency procedures . . . violate due process" simply because they lacked certain procedures the inmate desired. 523 U.S. at 282. In explaining its reasoning, the plurality reinforced that the clemency power is "committed . . . to the authority of the executive." *Id.* at 276. Justice O'Connor's concurrence, joined by three other Justices, took the position that "some *minimal* procedural safeguards apply to clemency proceedings." *Id.* at 289. For example, Justice O'Connor explained that judicial intervention might be warranted "in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.*

It is far from evident that the due-process constraints discussed in *Woodard*—a case involving state clemency proceedings—extend to the President's clemency power, which is expressly conferred by the Constitution itself. *See Harbison*, 556 U.S. at 187 (drawing a "contrast" between federal and state clemency proceedings). But in any event, even if the "*minimal* procedural safeguards" required by Justice O'Connor's opinion in *Woodard* applied to the federal system, they would easily be satisfied here. In *Woodard*, the inmate (a) received only 3 days' notice of his clemency interview; (b) received 10 days' notice of his clemency hearing; (c) was not permitted to have his counsel present during the interview; (d) was permitted to have counsel at the hearing only at the discretion of the parole board chair; and (e) was precluded from testifying or submitting documentary evidence at the hearing. *Id.* at 289-90. Federal courts of appeals applying *Woodard* have denied relief in even more restrictive scenarios. For example, the

-12-

en banc Eighth Circuit held that state officials did not violate due process when they failed to comply with their own notice requirements, held hearings too close to the execution date, moved hearings and deprived inmates of time to prepare, and reduced by one-half the length of the hearings, *Lee v. Hutchinson*, 854 F.3d 978, 980-82 (8th Cir. 2017) (en banc) (per curiam). Similarly, the Eleventh Circuit declined to find a due process violation when state officials dissuaded prison staff from supporting clemency petitions on behalf of a female death-row inmate who had murdered her husband. *Gissendaner v. Comm., Ga. Dep't of Corr.*, 794 F.3d 1327, 1332 (11th Cir. 2015); *accord Lee*, 854 F.3d at 982 (explaining that dissuading prison staff from "filing a letter in support of" a death-row inmate's clemency application was not a due process violation even when it "went to the very heart of the merits of the inmate's clemency appeal"); *see also Garcia v. Jones*, 910 F.3d 188, 191 (5th Cir. 2018) (allegation that composition of Parole Board violated state law "does not assert an arbitrary clemency proceeding akin to the flip of a coin or a complete denial of access to the clemency process").

The thorough and structured federal clemency proceedings available to Montgomery are not remotely comparable to the coin toss or arbitrary exclusion that Justice O'Connor suggested would violate the Constitution—or even to the far more restrictive state procedures that *Woodard* and lower courts applying it have upheld. As noted above, Montgomery could have submitted a clemency application at any time since May. Nothing stopped Montgomery or any of her numerous attorneys from working on a clemency application beginning around that time, particularly given that the Department of Justice had started scheduling federal executions by that time and began carrying out executions in July 2020. *See Lee*, 140 S. Ct. at 2591. Even now, all Montgomery has to do by November 16 is file a placeholder application, which will give her an additional 15 days until December 1 to supplement her application. As noted, that is the same amount of time that other federal death-row inmates have had to complete applications, and—notwithstanding the pandemic—four of them have done so. *See* Gillespie Decl. ¶¶ 14-15 (noting that LeCroy and Vialva submitted pardon applications after their executions were scheduled with 53 and 55 days' notice, respectively). In addition, the government completed a thorough review

of the clemency application submitted by Lezmond Mitchell after his execution was rescheduled with 28 days' notice. *See* Gillespie Decl. ¶¶ 16-17; *Mitchell*, 2020 WL 5062952, at *2. Relying on *Woodard*, Mitchell filed a suit in this Court making claims similar to those asserted by Montgomery (and others)—in particular that his procedural due process rights would be violated because the Executive would not have time to thoroughly review his application. *See* 2020 WL 5062952, at *2. This Court concluded that Mitchell's claims had "no likelihood of success" because (among other reasons) none of the concerns raised by Justice O'Connor's *Woodard* concurrence "are present here." *Id*. at *3-4. The same is true of Montgomery's claims.

c. Montgomery argues that the ongoing COVID-19 pandemic and alleged illness of two of her counsel make it impossible to submit a meaningful clemency application, which she contends amounts to a due process violation. (Mot. 6–7) As an initial matter, Hall has no constitutional right to counsel at this stage. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (providing that the Constitution does not require the appointment of counsel for indigent prisoners collaterally attacking their criminal judgments); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (explaining that where there is no constitutional right to counsel, there can be no deprivation of effective assistance); *LeCroy*, 975 F.3d at 1197 (rejecting a death-row inmate's argument that the COVID-19 pandemic prevented his counsel from meeting with him to prepare a clemency petition and "reiterat[ing] our consistent [holding] that there is no federal constitutional right to counsel in postconviction proceedings." (quotation omitted)). Therefore, she cannot assert a violation of any constitutional right to an attorney with respect to the preparation of her clemency petition.

Aside from Montgomery's lack of a constitutional right to counsel to assist in any clemency proceedings, Montgomery's constitutional claim fails for additional reasons. The cited difficulties in preparing a clemency application during a pandemic (Mot. 6–7) are—as Judge Chutkan has explained in related contexts—"not the result of" any governmental "actions, but of the pandemic itself." *Protocol Cases* Doc. 261, at 16; see *Protocol Cases* Doc. 145, at 14 (similar). Other courts have likewise uniformly rejected claims seeking to delay executions based on pandemic-related limitations on counsel, execution witnesses, and the like. *See id.* (citing cases); *see also, e.g.*,

-14-

*LeCroy v. United States*, 975 F.3d 1192, 1197-98 (11th Cir. 2020), *cert. denied*, No. (20A52), 2020 WL 5640389 (U.S. Sept. 22, 2020); *Peterson v. Barr*, 965 F.3d 549, 551-53 (7th Cir. 2020) (rejecting APA claim brought by victim family members that scheduling an execution during the pandemic was arbitrary and capricious); Order, *United States v. LeCroy*, No. 2:02-CR-38, Doc. 601 at 13-14 (N.D. Ga. Sept. 4, 2020); Order, *United States v. Honken*, No. CR01-3047, Doc. 822 at 7-8 (N.D. Iowa July 14, 2020); *United States v. Lee*, No. 4:97-cr-243, 2020 WL 3921174, at *5 (E.D. Ark. July 10, 2020).

In *LeCroy*, for example, the Eleventh Circuit rejected a death-row inmate's assertion of a constitutional violation based on his counsel's pandemic-induced inability to meet with him "to assist in the preparation and filing of a clemency petition." 975 F.3d at 1197. In *Lee* as well, the inmate asked the district court to postpone his execution based on "the Covid-19 crisis and its effect on a plethora of issues surrounding . . . the effectiveness of counsel," but the court declined to do so, explaining that addressing COVID-19 concerns "is a judgment [it] prefer[red] to leave to the elected branches of government." 2020 WL 3921174, at *5.

d. In any event, the government has taken multiple steps to facilitate Montgomery's preparation and submission of a clemency application during the pandemic. BOP personnel at FMC Carswell have provided Montgomery with access to unmonitored phone calls with counsel. Carr Decl. ¶ 7. To that end, Montgomery has had approximately 23 legal calls with her lawyers since October 16, 2020, including calls scheduled nearly every weekday since October 25. *Id*. ¶ 8. Further, Montgomery received in-person legal visits on October 20, 21, 26, and 29, as well as November 2, 2020. *Id.* ¶ 5. In-person legal visits were also arranged by BOP for November 9, 11, 12, 16, 19, but Montgomery's counsel canceled them. *Id.* ¶ 6. An in-person counsel visit for November 23 remains tentative. *Id.* Similarly, unmonitored video conferencing with counsel or litigation consultants is available to Montgomery, but neither she nor her counsel have ever utilized that option. *Id.* ¶ 9. Notably, the number of current, known COVID-19 infections rates at FMC Carswell are low. *See id.*

In addition, the Office of the Pardon Attorney is operating remotely during the pandemic, accepts clemency petitions through email, and is willing to conduct hearings in death-penalty cases by video teleconference.  Gillespie Decl. ¶ 4.  In part through these procedures, four of the federal inmates whose executions have occurred between July and September 2020 submitted clemency applications, which the government has thoroughly reviewed and addressed.  *See* Gillespie Decl. ¶¶ 14-15.  As noted above, that includes LeCroy and Vialva, whose executions were scheduled with 53 and 55 days' notice, respectively.  *See* Gillespie Decl. ¶ 15.  Montgomery provides no basis to conclude that the pandemic creates such distinct burdens for her that the Constitution requires a court to intervene to order the government to reschedule her execution (and only her execution) for an undetermined date after the pandemic is brought under control.

e. Montgomery's argument is premised on a theory that goes well beyond any "minimal" due process guarantees recognized in *Woodard*, and instead rests upon robust due process requirements that no court has ever even suggested would apply to clemency applications.  In particular, for Montgomery to be entitled to the relief sought, this Court would necessarily need to find that due process requires that Montgomery's clemency application be prepared by two particular lawyers based on certain particular claims, but no court has extended due process that far.  *Cf. Purkey v. United States*, 964 F.3d 603, 614 (7th Cir.) *cert. denied*, No. 20-26 (20A12), 2020 WL 4006838 (July 16, 2020) (holding that ineffective assistance of post-conviction counsel appointed under 18 U.S.C. § 3599 did not render 28 U.S.C. § 2255 inadequate or ineffective to allow additional ineffective assistance of trial counsel claims to be brought through 28 U.S.C. § 2241); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding that where "[t]here is no constitutional right to an attorney," a defendant "cannot claim constitutionally ineffective assistance of counsel").  No case adopts anything like Montgomery's claimed due process requirements for how a clemency application must be prepared or that particular lawyers must prepare it.

Four attorneys filed the present motion making factual assertions about Montgomery's current mental and physical conditions—the precise arguments that are often made in a clemency

petition.  *Cf.*  Petition,  https://www.deathpenaltyworldwide.org/wp-content/uploads/2020/10/IACHR-Petition.pdf (making detailed arguments about trial, post-conviction proceedings, and Montgomery's past and present mental state, and referencing roughly 55 exhibits submitted in support).  In fact, and despite their claimed illness, attorneys Henry and Harwell contributed to this action, at least through their declarations. (Compl. Ex. 1, Ex. 2.)[3]  And nowhere in the submissions to this Court does Montgomery acknowledge that she is currently being represented by a third attorney, Lisa Nouri, who has represented her as counsel under 18 U.S.C. § 3559(c) since 2012.

Montgomery's argument also references a non-existent right that her counsel must meet with her in person. (Compl. 3.)  Whatever minimal due process right Montgomery may have, she cites no authority, and none exists, for her claims that due process requires a certain number or certain manner of counsel meetings to prepare a clemency petition.  And Montgomery makes no effort to show how the five in-person meetings she had since the setting of her execution date were insufficient to afford her due process.

The same failures equally undermine Montgomery's claim that due process requires a clemency petition addressing her current mental state as evaluated by providers who have previously treated her. (Compl. 2, 7.)  Far from minimal, no such rights exist.  There is no requirement, constitutional or statutory, for a clemency application to address an applicant's present mental state, let alone that it be addressed through contemporaneous evaluations by providers that have previously examined her.  Even if due process required that a clemency petition address Montgomery's present mental state, Montgomery fails to claim, and certainly does not meet her burden to show, that no evaluator could adequately examine her at this time.[4]

---

[3]Any alleged inability by counsel to enter their offices to access certain paper wholly ignores that such files could be sent to counsel, imaged and shared electronically, or reviewed by other counsel.

[4]There is nothing about the fact that Montgomery is subject to the death penalty that changes the constitutional considerations related to the scope of the President's clemency power.

**C.      Montgomery's statutory claim lacks merit.**

In addition to her due process claim, Montgomery briefly claims that she has been deprived

of a statutory right to counsel under 18 U.S.C. § 3599 because two of her at least sixteen attorneys

are purportedly restricted in their ability to work on her clemency application due to COVID-19

infections. (Compl. ¶¶ 82-86; Mot. 6-7.)  This claim fails on the merits.

Section 3599(a)(2) provides that an indigent defendant sentenced to death "shall be entitled

to the appointment of one or more attorneys" in a proceeding under 28 U.S.C. § 2255.  "Unless

replaced by similarly qualified counsel upon the attorney's own m.otion or upon motion of the

defendant, each attorney so appointed shall represent the defendant throughout every subsequent

stage of available judicial proceedings," including in "such . . . proceedings for executive or other

clemency as may be available to the defendant."  18 U.S.C. § 3599(e).

Montgomery has not been denied the representation of appointed counsel in connection

with her clemency petition.  She has failed to identify any government action that has deprived her

of counsel.  The two attorneys who have allegedly contracted COVID-19, Amy Harwell and

Kelley Henry, did not begin to feel ill until November 5 and 7, several months after Montgomery

---

In particular, neither the Fifth Amendment nor the Eighth Amendment limit the exclusivity of the
President's clemency power in any way applicable to this case.  *Woodard* itself involved an Eighth
Amendment claim in the context of an inmate subject to the death penalty. The *Woodard* plurality
recognized that state clemency proceedings are generally not subject to Fifth or Eighth
Amendment challenges in both the capital and non-capital contexts. 523 U.S. at 281–82 (plurality).
The plurality noted that prior to *Woodard*, the Supreme Court had not distinguished a capital
defendant's hope for clemency in the same manner that the Bill of Rights affords special
protections to a capital defendant at trial. *Id.* And as noted, Justice O'Connor, joined by three other
Justices, disagreed with the plurality only on exceptionally narrow grounds not present here, or in
virtually any case. *See id.* at 289 (O'Connor, J., concurring). Before and subsequent to *Woodard*,
courts have routinely rejected Fifth Amendment and Eighth Amendment challenges to the
clemency process afforded to death row inmates. *See*, *e.g.*, *Sepulvado v. Louisiana Bd. of Pardons
& Parole*, 171 F. App'x 470, 473 (5th Cir. 2006) (finding no violation where board denied death
row inmate a live hearing after reviewing an application for clemency); *Wainwright v. Brownlee*,
103 F.3d 708, 709 (8th Cir. 1997) (collecting cases dismissing Fifth Amendment and Eighth
Amendment challenges to state clemency processes).  Accordingly, that Montgomery's claim
arises in the context of a death penalty case does not change the pertinent analysis.

could have first filed a clemency petition and several weeks after her execution was scheduled. Harwell Decl. ¶ 14; Henry Decl. ¶ 25.  Their illness does not change the fact that they continue to represent Montgomery and are evidently working on her behalf.  Furthermore, Montgomery is also represented by appointed counsel Lisa Nouri.  Order, *Montgomery v. United States*, No. 12-8001 (W.D. Mo. April 17, 2012), ECF No. 2.  Montgomery described Nouri as "lead counsel" in the § 2255 proceedings.  Petition for Writ of Mandamus at 2, *In re: Lisa Montgomery*, No. 14-2725 (8th Cir. July 22, 2014).

Montgomery never develops her § 3559 claim in any substantive way, and that alone is enough to reject it.  Montgomery cites no authority supporting her position that § 3599 affords a basis to stay an execution based upon the temporary inability of *particular* appointed counsel to work on a clemency petition.  Indeed, the implications of that position are difficult to accept:  if an inmate is statutorily entitled to be represented by the *same* specific counsel throughout collateral and clemency proceedings, the death or retirement of that counsel would mean the inmate could *never* be executed.   Moreover, the Eleventh Circuit recently rejected an analogous claim, explaining that "nothing in § 3599(e) specifies in-person representation and . . . despite the heightened risks that COVID-19 poses," an inmate "still has ready access to the 'represent[ation]' that § 3599(e) contemplates" through other forms of communication such as "unmonitored telephone calls."  *LeCroy*, 975 F.3d at 1198.  The same is true here.  Notably, at present, it appears that at least one of Montgomery's currently ill counsel tentatively intends to resume visiting her as early as November 23. Carr Decl. ¶ 6.  Section 3599, moreover, was designed simply to provide indigent defendants with appointed counsel, *see Harbison*, 556 U.S. at 184-86, not to involve courts in overseeing the details of the clemency process, *see, e.g.*, *Bowles v. Desantis*, 934 F.3d 1230, 1242 (11th Cir. 2019) (rejecting an argument that the "innocuously worded" § 3599(e) created a right to federally appointed counsel's appearance before a state clemency board).

As on the constitutional claim, *Harbison* lends Montgomery's statutory claim no support. As noted, *Harbison* held merely that "§ 3599 authorizes federally appointed counsel to represent clients in state clemency proceedings." 556 U.S. at 183.  It in no way suggests that § 3599 can be

invoked to stay an execution on the basis that two of at least sixteen counsel have become ill. Montgomery, who is represented by lead counsel from her § 2255 proceeding, as well as at least fifteen other attorneys who have, so far, filed or attempted to file three lawsuits in this Court and a lengthy petition in an international tribunal, can hardly be considered "abandoned" or "without meaningful access" to the clemency process. *Harbison*, 556 U.S. at 194.

Moreover, to construe § 3599 as a limit on the manner in which the President may exercise the pardon power would raise serious constitutional questions. *Cf. Public Citizen v. Dep't of Justice*, 491 U.S. 440, 465-467 (1989) (construing statute narrowly to avoid infringing on President's Article II power to nominate judges). "[T]he pardoning power is an enumerated power of the Constitution and . . . its limitations, if any, must be found in the Constitution itself." *Schick v. Reed*, 419 U.S. 256, 267 (1974). "This power of the President is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions." *Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866). Courts should not construe § 3599 to unconstitutionally graft limits on the pardon power. *See Public Citizen*, 491 U.S. at 465-67.

## II.    THE EQUITABLE FACTORS DO NOT SUPPORT AN INJUNCTION

Because Montgomery's claims are unlikely to succeed on the merits, she is not entitled to injunctive relief regardless of the balance of the equities. *See, e.g.*, *Greater New Orleans*, 639 F.3d at 1083. Nonetheless, even if this Court were to conclude that Montgomery has a sufficient prospect of success on the merits, the equities weigh heavily against an injunction of her execution. *See, e.g.*, *Winter*, 555 U.S. at 24-26 (denying an injunction based on the equities); *Protocol Cases* Doc. 261, at 33-41 (denying an injunction based on an absence of irreparable harm even though the Court had found a statutory violation).

Montgomery does not challenge her conviction, sentence, or method of execution. She claims only that she is entitled to more time to prepare a clemency application. But it is hard to regard any resulting harm as inequitable when Montgomery has simply been subject to the same

clemency regulations as the other nine federal death-row inmates who have been scheduled for execution during this year—all of them during the pandemic.  While the recent COVID-19 infection of two of her counsel undeniably imposes some burden, that burden is relatively modest in light of the many other counsel that she has, the many months she and her team had to work on her clemency application before her execution was scheduled or these two counsel were infected, and the accommodations the government has made to allow her to file an application for clemency or reprieve by December 1.

Moreover, even before Montgomery exhausted her first round of collateral review in May, the prior 15 years provided numerous opportunities to hone her arguments regarding her history of trauma and mental state at the time she strangled Bobbie Jo Stinnett and cut Stinnett's baby from her womb.  Indeed, Montgomery has recounted those mitigating considerations in considerable detail in her filings over the past few weeks. *See*, *e.g.*, Complaint, ¶¶ 19–22; *Conditions Case* Doc. 1 at ¶¶ 19–43; Petition Alleging Violations of the Human Rights of Lisa Montgomery with the Inter-American Commission on Human Rights. https://www.deathpenaltyworldwide.org/wp-content/uploads/2020/10/IACHR-Petition.pdf. Montgomery is not entitled to—and does not need—a new round of expert discovery regarding her mental state in order to submit a meaningful clemency or reprieve petition. To the extent she believes that such expert materials would be useful, her own delay in failing to seek willing experts earlier—and in choosing to prioritize other avenues for possible relief in recent weeks—undercuts any cognizable claim of irreparable harm.

On the other side of the ledger, the public and the victim's family have an overwhelming interest in implementing the capital sentence recommended by the jury over twelve years ago. *See*, *e.g.*, *Bucklew*, 139 S. Ct. at 1133-34. Montgomery committed a horrific murder that was calculated, premeditated, and shockingly brutal.  Unsurprisingly, on direct appeal the Eighth Circuit declared there was "[o]verwhelming evidence" that Montgomery had committed the murder "in an especially heinous or depraved manner." *Id.* at 1095-96. Nearly 16 years have passed since Montgomery's unspeakable crimes, and Stinnett's family is still awaiting justice. The claims that

Montgomery has belatedly raised do not remotely "justify last-minute intervention by" this Court. *Lee*, 140 S. Ct. at 2591. The Court should decline to enter a restraining order or preliminary injunction.

## CONCLUSION

For the foregoing reasons, Montgomery's motion should be denied.

Dated:  November 14, 2020                    Respectfully submitted,


                                             TIMOTHY A. GARRISON
                                             United States Attorney
                                             Western District of Missouri

                                             JEFFREY RAY
                                             Deputy United States Attorney
                                             Western District of Missouri

                                             BRIAN P. CASEY
                                             Chief, Appellate Division
                                             Western District of Missouri

                                             */s/ Alan T. Simpson*
                                             ALAN T. SIMPSON, Missouri Bar #65183
                                             Assistant United States Attorney
                                             Western District of Missouri
                                             Special Assistant United States Attorney
                                             District of Columbia

                                              – and –

                                             MICHAEL R. SHERWIN
                                             Acting United States Attorney
                                             District of Columbia

                                             DANIEL F. VAN HORN
                                             Chief, Civil Division
                                             District of Columbia

                                             */s/ Johnny Walker*
                                             JOHNNY H. WALKER, D.C. Bar #991325
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, District of Columbia 20530
                                             Telephone: 202 252 2575
                                             Email: johnny.walker@usdoj.gov

                                              *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2020, I caused a true and correct copy of foregoing

to be served on all counsel of record listed below via the Court's CM/ECF system.

/s/ *Johnny Walker*
Assistant United States Attorney