**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LISA MONTGOMERY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:20-cv-3261** |
| | ) | |
| **WILLIAM P. BARR, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

# PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Defendants do not contest the relevant facts in this case. They do not contest that Defendant Barr deliberately scheduled Mrs. Montgomery's execution during the peak of a global pandemic that has so far killed more than 230,000 people in the United States. They do not contest that Mrs. Montgomery's sole capitally-qualified lawyers are seriously ill with COVID-19. And they do not contest that Defendant Barr has the power to reschedule her execution date at any time.

Faced with these uncontested facts, Defendants obfuscate. They suggest that Mrs. Montgomery has invited the Court to grade the adequacy of the clemency process. But Mrs. Montgomery does nothing of the sort. She does not ask this Court to evaluate the criteria used by the Executive Branch for determining the merits of a clemency application. She does not challenge the adequacy of the procedural safeguards established by the Executive Branch once a prisoner has filed a clemency application. Instead, she argues that Defendants have arbitrarily denied her access to the clemency process. The federal courts have stayed executions on far less egregious facts, and the Defendants cite no case that is remotely comparable to this. Defendants have only themselves to blame for this predicament, and the Court should enjoin them from executing Mrs. Montgomery until

her attorneys recover from COVID-19 and are able to fulfill their statutory obligations as capitally-qualified counsel.

**I.**

**MRS. MONTGOMERY IS LIKELY TO SUCCEED ON THE MERITS**

**A. Defendants Have Arbitrarily Denied Mrs. Montgomery Meaningful Access to Clemency in Violation of the Due Process Clause.**

In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288 (1998), five Justices of the Supreme Court agreed that the government violates due process and that judicial intervention is warranted when "the state arbitrarily denie[s] a prisoner any access to its clemency process."[1] *Id.* at 289 (O'Connor, J., concurring in part and concurring in judgment). Defendants do not—and cannot—dispute this. Yet Defendants disingenuously maintain that nothing prevents Mrs. Montgomery from accessing clemency. They dutifully tally the number of lawyers who have recently appeared on Mrs. Montgomery's behalf in unrelated lawsuits, and suggest that perhaps one of them could represent her in the clemency proceeding.

This argument is a makeweight. To begin with, as Defendants concede *sub silentio*, Ms. Harwell and Ms. Henry are the ***only*** capitally-qualified lawyers who have been appointed under § 3599 by an Article III judge. The obligation to prepare and present a clemency application is theirs and theirs alone, and they simply cannot fulfill it. Even more importantly, they alone have the expertise, the relationship with Mrs. Montgomery, and the familiarity with the voluminous record. *See* Ex. 2, Decl. of Lisa Nouri (explaining that she is not qualified to be learned counsel in a capital case and has never prepared a

[1] That Mrs. Montgomery's life hinges on her ability to access the clemency process heightens the due process concerns here. The Supreme Court has repeatedly recognized that in a death penalty case, clemency serves as a critical "fail-safe" for condemned prisoners. *See Herrera v. Collins*, 506 U.S. 390, 412 (1993) ("Executive clemency has provided the 'fail safe' in our criminal justice system."); *Harbison v. Bell*, 556 U.S. 180, 192–93 (2009) ("Congress' decision to furnish counsel for clemency proceedings demonstrates that it, too, recognized the importance of such process to death-sentenced prisoners").

clemency application); R. 2-10, Decl. of Carol Wright (describing duties of counsel in a capital clemency proceeding). Under these circumstances, the fact that lawyers with the ACLU have challenged her conditions of confinement, or that lawyers at Cornell University have brought this litigation, hardly matters. None of us has met Mrs. Montgomery. None of us has earned her trust. None of us knows the record. None of us can stand in for Ms. Harwell and Ms. Henry. To suggest, as the Defendants do, that any lawyer who can type Mrs. Montgomery's name on a pleading—apparently even a student at Cornell's International Human Rights Clinic—is qualified to represent her in a clemency proceeding where her life is at stake makes a mockery of her due process right to access clemency.

Unlike the cases cited by Defendants, Mrs. Montgomery is not alleging mere inconveniences as a result of the COVID-19 pandemic. *See* Defs. Resp. at 14–15. In this instance, Mrs. Montgomery's attorneys have been infected by the COVID-19 virus. They are exhibiting severe symptoms and have been incapacitated by their illness. *See* Ex. 1, Aff'd of Dr. Mark J. Davis, M.D. Under these unique circumstances, they cannot function. Yet for Mrs. Montgomery—a mentally ill prisoner without access to legal materials or even a pen——access to the clemency process "means nothing without access to counsel."[2] *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 22 (D.D.C. 2005). In this case, access to the fail-safe of executive clemency will only exist when her capitally-qualified lawyers may prepare and present an application. Failing that, Mrs. Montgomery has been "arbitrarily denied . . . any access to [the defendants'] clemency process."[3] *Woodard*, 523 U.S. at 289.

---

[2] Mrs. Montgomery's due process claim is buttressed by 18 U.S.C. § 3599, where Congress expressed its will that capital defendants shall be represented in clemency proceedings. This statutory command is rooted in due process concerns and reflects Congress' commitment "to improve the quality of lawyering in capital litigation," including in clemency. *Martel v. Clair*, 565 U.S. 648, 659 (2012).

[3] Defendants' calculation of the time available to Mrs. Montgomery's lawyers to prepare and present her clemency petition is misleading. The Supreme Court did not deny rehearing on her clemency petition until August 3, 2020. *Montgomery v. United States*, 17-1716 (8th Cir. Jan. 25, 2019)

Likewise, the Defendants suggests that Mrs. Montgomery seeks "robust due process requirements that no court has ever even suggested would apply to clemency applications." Defs. Resp. at 16. This wildly overstates the relief that Mrs. Montgomery seeks. Her claim is narrow, limited to the unique circumstances of her case. When an Article III judge appoints an attorney to pursue a clemency petition for a capital defendant pursuant to § 3599, due process and fundamental fairness require that those attorneys be allowed to prepare and present a petition for clemency.[4] Anything less constitutes the arbitrary denial of access of the clemency process, which Justice O'Connor foresaw in *Woodard*. And while federal courts have steadfastly abstained from intruding into the executive's prerogative to make clemency decisions, courts have not hesitated to intervene when meaningful access to the clemency process has been denied. *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000) (when a government lawyer was threatened with termination for providing information in support of an inmate's clemency petition, such state interference

---

(judgment denying a certificate of appealability (COA)), *pet. Rehearing denied*, No. 19-5921, 2020 WL 4429729, at *1 (U.S. Aug. 3, 2020). More important, counsel had no reason to believe the Defendants would schedule her client's execution when it did, given that for the five prisoners who sought clemency in 2020, the average time between cert denial and the setting of an execution date was 1,807 days, or more than four and a half years. R. 1, Compl., at ¶53. Additionally, the setting of the execution date triggers a number of vital tasks for clemency counsel, including intensive client consultations and outreach to family members, jurors, and other witnesses. *See* R. 2-10, Wright Decl. at ⁋⁋18, 24-27. These tasks could not have been completed before October 16, 2020. Finally, Defendants neglect to mention that from March to October, the Bureau of Prisons did not allow legal visits at Carswell so counsel was not able to consult with Mrs. Montgomery. R. 12-2, Decl. of Michael Carr, at ¶4.

[4] Analogously, numerous federal courts have held that Congress' recognition of non-citizens' statutory right to counsel implicates constitutional due process. *Hernandez Lara v. Barr*, 962 F.3d 45, 54 (1st Cir. 2020) ("The statutory right to counsel is a fundamental procedural protection worthy of particular vigilance."); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180–81 (3d Cir. 2010) ("This statutory and regulatory right to counsel is also derivative of the due process right to a fundamentally fair hearing."); *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007) ("Though there is no Sixth Amendment right to counsel in immigration proceedings, Congress has chosen to ensure that all aliens receive a full and fair hearing by providing a statutory right to counsel. . . . We have previously held that the statutory right to counsel at immigration proceedings stems from a constitutional guarantee of due process.") (internal citations and quotations omitted).

violated the inmate's right to due process); *Wilson v. U.S. Dist. Ct. for N. D. Cal.*, 161 F.3d 1185, 1187 (9th Cir. 1998) (district court's issuance of TRO was not clearly erroneous as a matter of law where state provided misleading information about the scope of clemency proceedings).[5]

Finally, the Defendants cite a smattering of cases for the proposition that Mrs. Montgomery's claims will somehow interfere with the President's pardon power. *Vincent v. Schlesinger*, 388 F. Supp. 370, 372 (D.D.C. 1975), for instance, involved military deserters who unsuccessfully sought to apply the Administrative Procedures Act to executive clemency proceedings. Similarly, *United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871), found that a federal statute which required courts to disregard a pardon "impairs the executive authority." But Mrs. Montgomery is not seeking to import law or regulations into clemency proceedings and does not seek to influence or restrict executive discretion in any way. Even less persuasive is the Defendants' reliance on *Mitchell v. Barr*, No. 1:20-CV-02331-RCL, 2020 WL 5062952 (D.D.C. Aug. 27, 2020). In that case, the petitioner participated fully in the clemency process (through counsel) and filed suit demanding a decision on his application. The Court denied relief, holding that Mitchell had no right to insist that the President act. *Id.* Mrs. Montgomery, by contrast, does not seek a particular outcome—or any outcome at all—from the President. She has arbitrarily been denied access to the process, and seeks relief from that denial.

Mrs. Montgomery is not challenging substantive decisions about who and which offenses the President may consider for clemency. *Cf. Ex parte Grossman*, 267 U.S. 87 (1925). Nor is she trying to make the clemency process take on a certain form. *Cf. Vincent*, 388 F. Supp. at 372 (deserters had no right

[5] Defendants also suggest that *Woodard* applies only to state clemency proceedings. Defs. Resp. at 11–12. Defendants cite no case for that proposition, and the law is otherwise. *See, e.g.*, *Mitchell v. Barr*, No. 1:20-CV-02331-RCL, 2020 WL 5062952, at *3 (D.D.C. Aug. 27, 2020) (applying the *Woodard* framework to a federal death penalty case). Indeed, the comity and federalism concerns that exist in cases involving federal oversight of state criminal convictions do not apply here.

under the Due Process Clause to appear before the board, to have certain mitigating factors considered, or to alter the conditions that attached to clemency). Her complaint hinges entirely on an issue that precedes presidential action (or inaction). She is simply seeking access to the process.[6]

**B. The Defendants Have Arbitrarily Denied Mrs. Montgomery Access to Counsel Under 18 U.S.C. §3599.**

Defendants similarly misapprehends Mrs. Montgomery's claim under 18 U.S.C. § 3599. Mrs. Montgomery's argument is simple: The ***only*** lawyers qualified to seek clemency on her behalf, both of whom have been appointed under 18 U.S.C. § 3599, have been stricken with a potentially life-threatening illness. In the words of physician Dr. Mark Davis, they are "functionally incapacitated." Ex. 1, Davis Aff'd at 3. It is clear, therefore, that Mrs. Montgomery is simply unrepresented, and that she has been denied the right to counsel guaranteed to her by Congress. On these undisputed facts, she has amply demonstrated a likelihood of success on the merits, and this Court should enjoin the Defendants from executing her.

The Supreme Court underscored the importance of § 3599 in *Martel*, 565 U.S. at 659, noting that the statute granted "enhanced rights of representation" for those sentenced to death both because of the seriousness of the penalty and the "unique and complex nature" of the legal work involved. It observed that "quality legal representation is necessary in all capital proceedings to foster fundamental fairness in the imposition of the death penalty." *Id*. at 659–60 (internal quotation marks omitted) (quoting *McFarland v. Scott*, 512 U.S. 849, 855 (1994)). In short, Congress' enactment of § 3599 and the Supreme Court's

[6] In other domains with broad executive discretion, the judiciary retains the power to review executive action. In the immigration context for example, Article III courts cannot challenge how executive officers apply their discretion over questions of removal, yet they "retain jurisdiction over constitutional claims and questions of law." *Leslie*, 611 F.3d at 174 (granting the petitioner a new removal hearing after being denied his statutory right to counsel under 8 C.F.R. § 1240.10(a)(2)-(3)). Likewise, when litigants are denied access to an attorney in proceedings entirely housed within the executive, courts have not hesitated to specify what due process requires. *See e.g.*, *Montes-Lopez v. Holder*, 694 F.3d 1085, 1089 (9th Cir. 2012) (finding reversible error when an immigration judge forced petitioner to proceed pro se in his asylum hearing); *Castaneda-Delgado v. Immigration and Naturalization Service*, 525 F.2d 1295, 1297 (7th Cir. 1975) (ordering a new removal hearing after the petitioner was not permitted to proceed with counsel of

analysis of that statute make plain that the right to counsel in clemency is itself rooted in due process concerns unique to capital representation.

It is far from unprecedented for federal courts to enjoin executions when the statutory right to counsel has been jeopardized. In *Christeson v. Roper*, 574 U.S. 373, 377 (2015), for instance, the Supreme Court stayed the pending execution of a capital defendant to consider whether the Eighth Circuit Court of Appeals misapplied the standard for substitution of counsel under § 3599. Upon review, the Court concluded that substitution was in the interests of justice, and that the stay of execution should stand so his new attorneys could litigate his claims. *Id.* at 379–81. The Court noted that, "Christeson faces a host of procedural obstacles" to succeed on his claims, but concluded that he should have both the opportunity to present such argument and the benefit of learned counsel in doing so. *Id*. at 381.

The Fifth Circuit has twice addressed the power of district courts to stay executions to vindicate a prisoner's right to counsel under § 3599. In *Battaglia v. Stephens*, the Fifth Circuit held that once a capital defendant invokes her rights under § 3599, federal courts are tasked with "mak[ing] the defendant's § 3599 right effective." 824 F.3d 470, 474 (5th Cir. 2016). In *Battaglia*, § 3599 counsel had abandoned his client and failed to prepare or present a claim that his client was incompetent to be executed. The Fifth Circuit stayed the execution, stating that "it would be improper to approve [Battaglia's] execution" before new counsel was able to develop the claim. Relying on *Battaglia*, the Fifth Circuit subsequently affirmed a decision by the district court to stay the execution of a capital defendant who raised a § 3599 claim based upon counsel's failure to file a clemency petition on behalf of his client. *Ramirez v. Davis*, 675 F. App'x 478, 479 (5th Cir. 2017), *aff'g Ramirez v. Davis*, Case No. 2:12-cv-00410, R. 48 (S.D. Tex. Jan. 31, 2017); *cf. In re Berkley*, 375 F.App'x 413, 415–16 (5th Cir. 2010) (Dennis, J., concurring) (clarifying that "federally appointed counsel *must* timely seek clemency for a death row inmate who requests such a

---

his choice).

petition) (emphasis added). These cases make clear that a court must stay an execution when necessary to "ensure that the defendant's statutory right to counsel [is] satisfied throughout the litigation." *Martel*, 565 U.S. at 660. As in *Battaglia*, Mrs. Montgomery "technically" has counsel. But § 3599 is not satisfied by the mere existence of appointed counsel if counsel cannot act on her client's behalf. *Battaglia*, 824 F.3d at 474. Since Ms. Harwell and Ms. Henry are unable to fulfill their roles as § 3599 counsel, this court may intervene "to make [defendant's] right to counsel meaningful." *Id*.

The other cases relied upon by the Defendants fail to support its restrictive view of § 3599. In *LeCroy v. United States*, 975 F.3d 1192, 1197–98 (11th Cir. 2020), for instance, the capital defendant asserted that his § 3599 right to counsel was infringed because COVID-19 prevented his clemency representation from proceeding in person, and that two of his lawyers were at "heightened risks" for COVID-19. *Id*. at 1197–98. Here, by contrast, Mrs. Montgomery's capitally-qualified attorneys have contracted COVID-19, and because of the severity of their illness, are unable to engage in the extensive physical and mental work necessary to complete her clemency application as required by § 3599. In short, the injury in *LeCroy* was hypothetical, while Mrs. Montgomery's is real.

*Bowles v. Desantis*, 934 F.3d 1230, 1242 (11th Cir. 2019), is both factually and legally distinguishable. In *Bowles,* the Eleventh Circuit considered whether a capital defendant had a right under 42 U.S.C. § 1983 to have his § 3599 counsel, rather than state-appointed counsel, represent him during his state clemency interview, approximately two months after § 3599 counsel prepared and filed a clemency application. *Id*. at 1236–39. In finding no such right, the Eleventh Circuit relied upon principles of comity and federalism that are simply not at issue in Mrs. Montgomery's case. *Id*. at 1242–44, 1246. Additionally, given that counsel did in fact prepare and file a clemency application in *Bowles*, the court did not consider the issue presented here.

Finally, Defendants uses *Bowles* and other cases to argue that § 3599 does not permit a federal

court to "oversee[] the details of the clemency process" and that doing so would infringe upon the President's constitutional power to exercise his pardon power. (Resp. at 19–20) (citing *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 465–67 (1989); *Schick v. Reed*, 419 U.S. 256, 267 (1974); *Ex parte Garland*, 71 U.S. 333 (1866)). Once again, this argument demonstrates a fundamental misunderstanding of both Mrs. Montgomery's complaint and § 3599. Mrs. Montgomery has not asked this Court to "oversee the details of her clemency process," but has asked the Court only to ensure that she is given sufficient access to the clemency process and to ensure that her § 3599 counsel is able to perform their professional and statutory obligations. Mrs. Montgomery does not dispute that, once an application for clemency and pardon has been filed, the decision of whether to grant it lies solely with the President.

**II.**

**THE EQUITIES FAVOR MRS. MONTGOMERY**

While Defendants have an interest in seeing that lawfully-imposed sentences are ultimately carried out, the relief Mrs. Montgomery seeks would not permanently delay her execution. Moreover, in other federal death penalty cases, Defendants have waited an average of four-and-a-half years to schedule the prisoners' executions after they exhausted their collateral appeals. *See* R. 1 at ¶53. In other words, Defendants' interest in carrying out Mrs. Montgomery's execution on December 8, 2020 is weak, particularly when compared to the harm that would be caused by executing Mrs. Montgomery without granting her meaningful access to the clemency process.

The public has a strong interest in making sure that our national executions are carried out in a manner consistent with integrity, honor, and fundamental fairness. These values, which are intrinsic to the legal system of the United States, favor granting a stay of execution to ensure Mrs. Montgomery has access to the historic fail-safe of executive clemency.

## III.

## CONCLUSION

Mrs. Montgomery is entitled to a preliminary injunction, and asks the Court to issue an order enjoining the Defendants from taking steps to carry out her execution until her attorneys have recovered from COVID-19 and are able to fulfill their statutory obligations as capitally-qualified counsel. She further requests that the Court issue an order enjoining Defendants from taking any adverse action with respect to her request for reprieve and/or clemency unless and until her attorneys have been given adequate time to recover from their illness and prepare and present a clemency petition pursuant to 18 U.S.C. § 3599.

DATED: November 15, 2020

Respectfully submitted,

s/Sandra L. Babcock_____
Sandra L. Babcock
Tex. Bar No. 01481700
Clinical Professor
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
IL Bar No. 6198353
Professor of the Practice of Law
and Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
NY Bar No. 5255195
Clinical Teaching
Fellow Cornell Law
School Ithaca, NY
14853 415.260.9690
Za72@cornell.edu

Edward J. Ungvarsky
D.C. Bar No. 459034
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case

/s/Sandra L. Babcock
Sandra L. Babcock