OFFICE OF THE
**FEDERAL PUBLIC DEFENDER**
**MIDDLE DISTRICT OF TENNESSEE**

**HENRY A. MARTIN**
**FEDERAL PUBLIC DEFENDER**

810 BROADWAY, SUITE 200
NASHVILLE, TENNESSEE 37203-3805
TELEPHONE: 615-736-5047
FAX: 615-736-5265

*Via Email to Office of the Pardon Attorney*

November 16, 2020

President Donald J. Trump
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

RE: Lisa Marie Montgomery,
DOB: 2/27/1968, SSN: 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
Inmate #11072-031
Federal Medical Center-Carswell
P.O. Box 27137
Fort Worth, TX 76127
Execution Date: December 8, 2020

FORMAL PLACEHOLDER PETITION FOR REPRIEVE AND/OR COMMUTATION OF SENTENCE FROM DEATH TO LIFE WITHOUT PAROLE

Dear President Trump:

Please accept this placeholder petition as a request for a reprieve of Mrs. Lisa Marie Montgomery's execution date of December 8, 2020 and/or commutation of her sentence from death to life without parole. Mrs. Montgomery wishes to access the executive clemency process. She is currently housed on suicide watch wearing only a Ferguson Suicide Smock and is only permitted to have a crayon and a piece of paper in her cell. Mrs. Montgomery's two capital qualified lawyers, Kelley Henry and Amy Harwell, are unable to provide you with the information we know you would want to have before deciding whether or not to spare this incredibly mentally ill woman's life because we contracted COVID-19 from visiting Mrs. Montgomery at the prison after she received notice of the execution date. A federal judge appointed the two of us to represent Mrs. Montgomery because our co-counsel, Lisa Nouri, had no experience with capital cases and understood how important it is to have lawyers

with capital experience to work on her case. None of us want to abandon our client. We should not have to choose between our lives and our client's life. We did not ask to be put in this situation. We did our jobs and got sick. The doctor's report of our condition is attached.

Our boss tried to ask you for a reprieve earlier, but the Pardon Attorney refused to send you the request. We are attaching it here. We are also attaching our client's authorization to act on her behalf. The guard stood over her and she signed it with the pen he let her borrow while her hands were shackled with two sets of handcuffs.

Therefore, we formally request that you grant a reprieve of Mrs. Montgomery's execution date so that we may recuperate from our illnesses, and then provide you with the information any President would want to have before making this important decision. At the conclusion of the reprieve, when we are well, we will provide you with a well-supported formal petition to commute her sentence to life without parole—a sentence Mrs. Montgomery has always been willing to accept.

Sincerely,

*/s/ Kelley J. Henry*

Kelley J. Henry
Supervisory Asst. Federal Public Defender

*/s/ Amy Harwell*

Amy D. Harwell
Asst. Chief, Capital Habeas Unit

*/s/ Lisa G. Nouri*

Lisa G. Nouri
Attorney at Law

**AFFIDAVIT OF DR. MARK J. DAVIS, M.D.**

I, MARK J. DAVIS, M.D., make the following affirmation under penalty of perjury:

**Background**

I am a medical doctor, Board Certified in Family Medicine. I have thirty years of experience in broad-range family medicine that includes managing populations on the ground in Southeast Asia during the original Severe Acute Respiratory Syndrome (SARS) response and Avian influenza as well as in the Middle East working around the coronavirus responsible for the Middle East Respiratory Syndrome (MERS). I am currently employed as consultant physician and surgeon for the California Department of Corrections (DOC) providing emergency coverage.

Due to the COVID-19 pandemic, California DOC is operating in a state of vigilance and managing outbreaks. In fact, after managing one outbreak earlier this year, we have suffered a new outbreak nine days ago that now is affecting 255 inmates and 47 employees/contractors at the remote, high security facility. Our first outbreak was imported from another facility leading to a restriction in transfers. The source of this most recent outbreak has yet to be determined, but the nature of this virus is that when one case is detected, it has already spread out of control. What starts with 2 people showing symptoms quickly gets out of control even with lock down implemented and extraordinary measures to intervene. Our facility is newer, but even so, these are the challenges of managing the spread of the virus in a congregate setting no matter what precautions are place. In any carceral setting, it is easy for the virus to spread due to challenges in achieving social distancing, the continued potential for virus exposure with staff coming in and out of the institution, and poor or outdated ventilation systems within the prison. All visitation has been halted for months now.

I have been requested to review the course of the confirmed SARS CoV2 illness for Amy Harwell and Kelley Henry in order to opine regarding the impact of the illness on their capacity to work. It is my understanding that they are the principal lawyers for a prisoner named Lisa Montgomery who is sentenced to death and facing execution on December 8, 2020.

In preparing this affidavit, I conducted clinical interviews of Ms. Harwell and Ms. Henry separately by phone, reviewing their approaches to reduce risk of virus exposure prior to infection and the nature of their potential exposure to the virus during their visits to the prison facility at Carswell, Texas. I also reviewed their medical histories, their current health background, and the symptoms they are currently experiencing. In these situations it is also critical to review the family structure and risk of individuals sharing their home because decisions to meet the demands of their work impact all of those in their daily routines, at home and at work.

Symptoms of SARS CoV2 infection begin within 2 to 14 days after exposure, although some people do not develop symptoms at all. Ms. Henry and Ms. Harwell last visited their client on November 2, 2020. Their first symptoms began three days after the November 2nd visit.

**Overall Summary of the Condition of Amy Harwell**

I spoke with Ms. Harwell on November 14, 2020. Ms. Harwell is a 48-year-old woman. She reported that symptoms began on Thursday the 5th, abruptly at 1:15 p.m., as profound fatigue, sweats, chills and body aches. Testing done on the 6th confirmed COVID-19. Ms. Harwell reports that Saturday and Sunday were a blur. The sweats and chills remitted by Tuesday. The fatigue has persisted and is profound, making it difficult to sit or stand for prolonged periods of time. She has also experienced a cough and nasal congestion along with gastrointestinal symptoms of loss of appetite, a single episode of vomiting, and persistent mild nausea. She has had a sore throat. There was a brief episode of transient visual distortion focally in the left eye and confined to the left eye lower outer quadrant. Throughout the illness and continuing until my clinical interview of her, there has been the troublesome symptom of serious concentration and memory problems.

She and her family have taken extra precautions to avoid infection due to the vulnerable health status of her 68 year-old husband. With his medical conditions, he would be considered very high risk status for serious complications and death from COVID-19. Nonetheless, he recently tested positive despite efforts to self-quarantine and then isolate when she became positive. Their daughter, age 16 years lives in the house as well.

**Overall Summary of the Condition of Kelley Henry**

I spoke with Ms. Henry on November 14, 2020. Ms. Henry is a 54-year-old woman. She reported that symptoms began on the Saturday the 7th, with the realization that she had lost her sense of smell when she was cooking garlic and shrimp. Her taste was also affected. She took a test on Sunday confirming infection with the novel corona virus. Her maximum temperature reached 99.6 dg F. She has experienced profound fatigue. The fatigue affected her activities of daily living, causing difficulty holding up her arms to dry her hair. Her muscles were also painful as though she had been exercising vigorously. She cannot stand up for more than 20 minutes at a time. She experiences persistent "fuzzy thinking" with a notable difficulty finding words that were previously easy and common for her. She has experienced morning headaches on the right more than left side. She has had tingling on both sides of the face with discomfort on the lateral face in front of the ears. Her loss of sense of taste and smell has persisted. She has experienced intermittent confusion and difficulty concentrating. She has also been troubled by gastrointestinal effects of the virus with loss of appetite, nausea, diarrhea and diffuse abdominal aching. She has respiratory symptoms with cough and has had low oxygenation, persistently running low between 91-93%. She was prescribed an albuterol inhaler for this and advised that if the oxygenation stayed below 92% for over 2 hours that she was to proceed to the Emergency Department for evaluation. Her heart rates have been elevated during the day.

There are particular elements of her past medical and surgical history that put her at a higher risk of complications, beyond the cardiomyopathy diagnosis that she carries. In addition, she has to worry about the advanced age of her husband at 62 years who has remained in his usual state of good health, but obviously has been exposed.

**Summation of their infection with SARS CoV-2 Contagion**

Ms. Harwell and Ms. Henry had both used N95 masks for travel with precautions of social distancing and attention to handwashing. They felt compelled to go into the facility at Carswell for their work. Prisons are one of the highest risk environments for the spread of COVID-19.

I am not personally familiar with the particular institutional precautions that are in place to protect vulnerable populations at FMC Carswell, but I am aware that there are active cases in this facility. According to the Federal Bureau of Prisons website, as of November 14, 2020, a total of 514 Carswell inmates have tested positive and recovered from the virus, while six inmates have died; one Carswell staff member has also died. The latest data I have seen indicates five confirmed active cases. I also noted that as of November 13, 2020, Tarrant County, Texas, where FMC Carswell is located, had reported 79,431 cases with 790 deaths with 18,245 active cases. The remarkable thing with this coronavirus infection is that people are infectious before manifesting symptoms. Prison outbreaks can arise from outside the facility and then spread very quickly.

The symptoms Ms. Harwell and Ms. Henry exhibit all fit with more severe symptoms of COVID-19. They are very serious and concerning from a medical perspective. The most worrisome and disabling symptoms are often the neurologic effects of this Coronavirus. Neurocovid effects are seen early in the less complex involvement of the taste and smell receptors or effects on the neurologic (autonomic) network impacting tone in the blood vessels in the peripheral vascular system causing the neurasthenia or fatigue. When there are symptoms of fuzzy thinking, confusion, difficulty concentrating, dysnomia (difficulty finding words), headaches, and the like – each of which we see with these two individuals – these are direct effects on the Central Nervous System from a breach of the blood brain barrier through the inflammatory storm that accompanies the body's response and can have lasting effects. We may only discover later as we gain more experience with this virus what these long lasting effects are. Experience with previous coronaviruses suggest that the more long term patients may be predisposed to, neurodegenerative disorders , depression, and accelerated neurological aging .

It can be difficult for some to understand the consequential effects of COVID-19 disease on the human body. They are severe. I can analogize the effects to the result of a severe head trauma. Brain rehabilitation after the disease takes effect can be likened to a post-concussion syndrome where attention needs to be taken early on in the course to allow for the body to heal. To recover from COVID-19, patients must slowly attempt to move about physically, eat a heart healthy diet, reduce stress and rest. These are critical ways to allow for the rejuvenation of the brain and to minimize poor outcomes in the future. Premature return to work will at least delay recovery; it can also prevent full recovery. Both Ms. Harwell and Ms. Henry are in precarious physical health conditions – for the near term and for their long term health. If I were their personal physician, I would recommend a minimum of 4 weeks of recovery at home, without the demands and stresses of professional obligations, before considering return to work. The recovery should be supervised by their physician. The focus on rehabilitation requires allowances for them to heal so as to avoid irreparable damage during this critical recovery period.

I can state with a reasonable degree of medical certainty that the journey to assist their client, as well as visiting and providing services to their client, during the height of the SARS CoV2 pandemic likely contributed to their present, severe illness, and that they now are functionally incapacitated from performance of any professional work obligations until their symptoms resolve, time is given to ensure no re-occcurence of symptoms, and their brains and bodies are given time to recover from the disease.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Mark J Davis MD

Mark J. Davis, M.D.
Executed on: 11/15/2020

References:

Majid Fotuhi et al, Neurobiology of COVID-19, Journal of Alzheimer's Disease (2020). DOI: 10.3233/JAD-200581

OFFICE OF THE
**FEDERAL PUBLIC DEFENDER**
**MIDDLE DISTRICT OF TENNESSEE**

**HENRY A. MARTIN**
**FEDERAL PUBLIC DEFENDER**

810 BROADWAY, SUITE 200
NASHVILLE, TENNESSEE 37203-3805
TELEPHONE: 615-736-5047
FAX: 615-736-5265

President Donald J. Trump
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

RE: Lisa Marie Montgomery
Request for Reprieve

Dear President Trump:

My name is Henry Martin. I have served as the appointed Federal Public Defender for the Middle District of Tennessee since 1985. Two of my lawyers, Kelley Henry and Amy Harwell, are counsel for Mrs. Lisa Montgomery, whose execution has been scheduled by the Bureau of Prisons for December 8, 2020. The purpose of this letter is to 1) inform you that lead counsel are exhibiting COVID-19 symptoms and 2) request a reprieve of Mrs. Montgomery's execution because of the obstacles caused by their conditions and the COVID-19 pandemic, which are preventing them from preparing a clemency petition on behalf of Mrs. Montgomery.

Consistent with court policy, I instructed the staff of my office to telework as much as possible since March, 2020. I suspended all in-person client visits, witness interviews, and travel, absent the detailed showing of a compelling need. I instituted this policy for the safety of my staff, our clients, court staff, the U.S. Marshals, corrections staff, and the community at large.

On October 16, 2020, I learned that Mrs. Montgomery's execution date had been scheduled for December 8, 2020. Lead counsel, Kelley Henry, informed me that the clemency petition would be due November 15, 2020. She requested permission for herself and co-counsel, Amy Harwell, to travel to the Federal Medical Center in Fort Worth, Texas to meet with Mrs. Montgomery. I agreed to permit that travel given the exigency created by an execution date.

Over the weekend, I learned that both attorneys have exhibited COVID symptoms and have been instructed by their physicians to self-quarantine. They are currently awaiting test results. No matter the results, however, they will be

required to remain in quarantine in compliance with CDC guidelines. As Federal Public Defender, I cannot permit either attorney to enter our offices to work on the case, nor can I permit them to engage in any travel until they have been cleared by their physicians. No other attorneys in the office have any familiarity with the facts and background of the case. Ms. Henry and Ms. Harwell are essential members of Mrs. Montgomery's team.

Ms. Henry and Ms. Harwell's current health condition and required quarantine presents an insurmountable obstacle to their representation of Mrs. Montgomery in the courts and in preparing a clemency petition. Even under normal circumstances, each would be expected to work 18-hour days to prepare a clemency petition and conduct other important litigation on behalf of Mrs. Montgomery. To do so, now, would endanger the health of each attorney.

In my thirty-five years as a Federal Public Defender, I have shepherded my staff through many trying times: government shutdowns, sequester, budget cuts. None of those situations compares with the challenges we face during this pandemic. We simply cannot provide you with the information we know you would want to have before making a decision about whether to spare Mrs. Montgomery's life.

For example, Ms. Henry and Ms. Harwell inform me that Lisa Montgomery's life has been marked by relentless trauma and terror, exacerbating her genetic predisposition to severe mental illness. Mrs. Montgomery committed her crime while in the grip of a psychotic episode and even today, she must take a complex cocktail of medications to stave off recurrent psychosis. Moreover, she is the only woman under a federal death sentence and the only woman on death row in the entire country for the type of crime that she committed.

Mrs. Montgomery is a survivor of child abuse, domestic violence, incest, multiple rapes, and child sex trafficking. Lisa's mother sexually trafficked her starting when she was a small child, including allowing her to be gang raped by adult men on multiple occasions and telling Lisa she had to "earn her keep." Her years of torture at the hands of caregivers, documented brain damage, and severe mental illness have severed her connection with reality; without antipsychotic medication, she would lose the ability to understand what is happening to her and to know what is real.

Mrs. Montgomery is entitled to present this information to you in a comprehensive format together with expert reports and witness statements. Because of their illness, which they likely contracted while as a result of traveling to

consult with Mrs. Montgomery, Ms. Henry and Ms. Harwell cannot perform this important task.

We respectfully request you grant Mrs. Montgomery a reprieve from her December 8, 2020 execution date.

Sincerely,

*Henry A. Martin*

Henry Alan Martin
Federal Public Defender
Middle District of Tennessee

TRULINCS 11072031 - MONTGOMERY, LISA M - Unit: CRW-A-A

---

FROM: Henry, Kelley
TO: 11072031
SUBJECT: Authorization to File Clemency/Reprieve
DATE: 11/12/2020 01:18:51 PM

I hereby authorize my attorneys, Kelley Henry and Amy Harwell, to request clemency or a reprieve on my behalf.

Signed:

Lisa Montgomery
Lisa Montgomery
#11072-031