IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 12-8001-CV-W-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent.* | ) | |

MOTION FOR RECONSIDERATION OF CJA PAYMENT REQUEST

COMES NOW Christine M. Blegen and submits this motion for reconsideration of the Court's decision to deny counsel's CJA voucher submitted on December 8, 2014. In support of this motion, counsel submits the following:

1. On December 8, 2014, undersigned counsel submitted a final CJA voucher in the above-captioned case requesting payment for services rendered from January 1, 2014 through the date the Court removed counsel in August of 2014.
2. In the cover letter accompanying this voucher, undersigned counsel also inquired as to whether the Court would consider releasing the CJA voucher funds previously withheld from three prior vouchers submitted by counsel as counsel has now been terminated from this case.
3. Counsel has received a letter from the Court dated January 13, 2015 (attached as Exhibit A) informing counsel that the Court is denying the December 8, 2014 voucher and that the Court is "not inclined to approve any additional payments from CJA funds." I assume this final sentence is meant to address the funds withheld from the three prior vouchers from which funds were withheld.

4. The first stated reason for denial of the most recent voucher is that some of the claims for services "were beyond the date that [I was] ordered to withdraw as counsel." (Exhibit A)

5. I have previously informed the Court that based upon my reading of the applicable cases and statutes, as well as my understanding of my ethical obligations to Lisa Montgomery, I could not comply with the Court's directive that I voluntarily remove myself from the case against my client's wishes.

6. The Court then removed me from the case on August 20, 2014.

7. I should have clarified in a cover letter accompanying the CJA voucher request of December 8, 2014, that while I recorded the hours I worked on the case after August 20, 2014 on the Excel worksheets required by the Court, those hours were not included in the totals reported on the CJA voucher. The hours on the actual voucher form presented for the Court's signature only included hours worked through August 20, 2014 when I was removed from the case over my objection. I apologize for not clarifying this matter at the time I submitted the voucher.

8. The second stated reason for denying the voucher is that I "requested expenses for travel that were not approved." (Exhibit A).

9. It is true that I made two visits to see Lisa Montgomery at the prison in Fort Worth, Texas during the time period covered by this voucher. The first visit occurred on May 8, 2014. I did bill for my travel time and mileage while driving my car to and from the Kansas City airport. I did bill for my driving time between the airport and the prison in Texas. I billed for my time meeting with my client. I did ***not*** bill for my airline ticket, the cost of a rental car, any other travel

time, or any meals while traveling. I suppose in my mind, if my client were housed in the Kansas City metropolitan area, or really any where within the radius within which CJA counsel are routinely expected to travel in this District to see clients, I would have been entitled to bill for driving time and mileage as most (if not all) CJA counsel do in this District when seeing clients at CCA or one of the more remote detention centers used to house our clients. Time spent directly with the client is always compensable. Since I was not seeking the extraordinary expenses of an airline ticket or the rental car fees in Texas, I assumed such a visit did not require prior court approval. I thought I was being mindful of the budget set by the Court last summer by covering the bulk of my expenses out of my own funds. If the Court feels the billable items I submitted in relation to this particular visit were improper, then I do not object to the Court striking them from the voucher, but I do not see this as a basis for denying the entire voucher.

10. The second visit I made to see Lisa Montgomery took place on July 29, 2014. The Court had ordered me to withdraw by July 28, 2014. I wanted to meet with Lisa Montgomery in person to explain all of the events that had transpired in June and July of 2014 as well as to specifically discuss with her my role as an attorney on her case. Mrs. Montgomery receives notices of the 8th Circuit rulings in her case and I wanted to afford her with an opportunity to ask questions and to have a meaningful attorney-client discussion in a confidential setting. Once again, I billed for travel time and mileage in Kansas City and travel time in Texas. I also billed for the time spent meeting with my client. I believe given the issues that developed in this case in June and July of 2014, it was necessary for me to meet

with Mrs. Montgomery. Once again, I did ***not*** bill for my airline ticket, a rental car, or any other travel expenses associated with this visit.

11. Finally, the Court's letter expresses the opinion that I have been "more than fairly and adequately compensated in this case." I would agree that prior to March 19, 2013, I was fairly and adequately compensated for the work I was performing in this case. The Court declined an offer by Ms. Nouri and myself to provide a case budget and every CJA voucher was approved without questions or concerns being raised.

12. Subsequent to the filing of Mrs. Montgomery's initial 2255 motion, this Court first expressed a desire to remove an attorney from Mrs. Montgomery's 2255 legal team and intimated that I would be the one removed. Then the Court opted to allow both Ms. Nouri and me to remain on the case, but set an overall CJA funds cap and stated that a percentage of each voucher submitted would be withheld until the conclusion of the case. Neither Ms. Nouri nor I objected to the overall CJA funds cap and we continued to work diligently on behalf of Lisa Montgomery.

13. I must object for the record to the denial of my final CJA voucher and the denial of the funds withheld from previous vouchers on the grounds that I have already been "more than fairly and adequately compensated in this case."

14. I was appointed on this case over two and half years ago and was asked to represent Lisa Montgomery in a death penalty 2255 proceeding. I assumed that the Court meant for me to represent her to the best of my abilities and that is what I have done in this case. Lisa Nouri and I had to collect files from Lisa

Montgomery's multiple trial level defense attorneys in addition to reviewing the Government's evidence and the trial and appellate records. We met with Lisa Montgomery, family members, and defense attorneys among others. We attempted to identify every possible claim that could be raised on her behalf due to the limited ability to amend an initial 2255 motion. The end result of our efforts was a 250-page document fully supported by over one thousand pages of exhibits that raises some very serious concerns about the representation of Lisa Montgomery at trial and on appeal. I realize that the time required by these endeavors was high, but I did attempt to bill prudently and conservatively as I do in every CJA case I handle and I attempted to produce a quality 2255 motion.

15. I would note for the record that I do not bill the Court for Westlaw legal research fees, routine copying, or routine postage even though I would be entitled to do so.

16. That said, I am a solo practitioner. To allow me to work on a case, under a known budget, and then deny over $20,000 in billable time payments (the December 8, 2014 voucher plus previously withheld funds) does not seem fair or adequate in my opinion. I would add that the majority of the hours billed in June and July of 2014 were necessitated by the actions of one of Mrs. Montgomery's trial attorneys and his efforts to conduct what Mrs. Montgomery's legal team considered to be improper discovery as well as by this Court's direction that I voluntarily remove myself from Mrs. Montgomery's legal team when I did not believe that I could legally or ethically do so.

In conclusion, I would just like to say that I have represented Mrs. Montgomery to the best of my abilities in this case and I would sincerely ask the Court to grant this Motion

for Reconsideration and approve both my December 8, 2014 voucher as well as the release of the previously withheld funds.

Respectfully submitted,

/s/ *Christine M. Blegen*

Christine M. Blegen, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CHARLES EVANS WHITTAKER U.S. COURTHOUSE**
**400 EAST NINTH STREET, SUITE 8452**
**KANSAS CITY, MISSOURI 64106**

**Chambers of**
**Gary A. Fenner, District Judge**

**(816) 512-5660**

**January 13, 2015**

Christine M. Blegen
Blegen Law Firm
230 SW Main Street
Suite 217
Lee's Summit, MO 64063

Re: *Lisa Montgomery v. United States of America,* Case No. 12-8001-CV-W-GAF

Dear Ms. Blegen:

I have denied your request for CJA payment in the above referenced case submitted December 8, 2014. Some of your claims for services were beyond the date that you were ordered to withdraw as counsel. Additionally, you have requested expenses for travel that were not approved. However, my controlling consideration is that you have been more than fairly and adequately compensated in this case and I am not inclined to approve any additional payments from CJA funds.

Very truly yours,

Gary A. Fenner

GAF/lm