# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 20-5340** **September Term, 2020**

**1:20-cv-03184-TSC**

**Filed On:** November 19, 2020

Orlando Cordia Hall,

Appellant

v.

William P. Barr, in his official capacity as U.S. Attorney General, et al.,

Appellees

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**BEFORE:** Millett, Pillard, and Rao, Circuit Judges

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. See Fed. R. App. P. 34(a)(2); D.C. Cir. Rule 34(j). Upon consideration of the foregoing, the emergency motion for stay of execution, the response thereto, and the reply, it is

**ORDERED** that the emergency motion for stay of execution be denied. It is

**FURTHER ORDERED AND ADJUDGED** that the district court’s November 16, 2020 order be affirmed.

### I

In July 2020, the Bureau of Prisons revised its execution protocol to provide death-sentenced inmates only 50 days' advance notice of their execution dates, instead of the 90 days' notice previously afforded by the protocol. Hall argues that shortening the notice period violates substantive due process, equal protection, and the Ex Post Facto Clause of the Constitution, U.S. Const., Art. 1, § 9, cl. 3. None of those arguments succeeds.

First, the provision of 50 days' notice did not deprive Hall of substantive due process. The Federal Bureau of Prisons' execution protocol, which reduced the

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 20-5340** **September Term, 2020**

government's notice period from 90 to 50 days, is a non-binding procedural rule that created no substantive due process right to a particular period of notice when an execution date is set. In re Federal Bureau of Prisons' Execution Protocol Cases, 955 F.3d 106, 112 (D.C. Cir. 2020); id. at 125 (Katsas, J., concurring); id. at 144 (Rao, J., concurring); Bureau of Prisons' 2020 Execution Protocol at 4 (providing that the protocol "does not create any legally enforceable rights or obligations"). Hall has been on notice of his death sentence since it was first imposed in 1995, sustained on appeal in 1998, and certiorari review by the Supreme Court denied in 1999. See United States v. Hall, 152 F.3d 381 (5th Cir. 1998), cert. denied, 526 U.S. 1117 (1999). Nor has Hall identified any basis in precedent or otherwise "deeply rooted in this Nation's history and tradition" for concluding that a particular notice period is "implicit in the concept of ordered liberty," which is required to make out a violation of substantive due process. Washington v. Glucksberg, 521 U.S. 702, 720-721 (1997) (formatting modified). By regulation, the warden was to provide Hall with at least 20 days' notice of his execution date. 28 C.F.R. § 26.4(a). Hall does not deny that he received that required notice.

Second, the provision of 50 days' notice did not deprive Hall of the equal protection of the laws. As noted, Hall received more than the 20 days' notice required by federal regulation. 28 C.F.R. § 26.4(a). The amendment of the execution protocol to provide 50 days' notice likewise has applied prospectively and evenhandedly to all inmates who have received execution dates since its adoption. See Gov't Br. 13, 27; J.A. 66 ¶ 12. Hall identifies no equal protection principle or precedent that bound the federal government, once it adopted internal guidance anticipating a 90-day notice period, to adhere to that same timeframe forever more. Instead, on this record, application of the non-binding guidance that is in effect at the time an execution date is set fully comports with the requirement of equal protection.

Third, the Ex Post Facto Clause stands as no barrier to the provision of 50 days' notice. The Ex Post Facto Clause proscribes the retroactive imposition of a "greater punishment[] than the law annexed to the crime[] when committed." Peugh v. United States, 569 U.S. 530, 533 (2013). Even assuming the Ex Post Facto Clause applies in the context of a non-binding notice provision like this, the protocol's notice period operated fully prospectively and did not alter Hall's imposed sentence of death. Moreover, Hall does not deny that capital punishment was an available sentence at the time he committed his crimes of conviction, and he has not pointed to anything in the law at the relevant time that required either a particular execution date or 90 days of advance notice.

## II

Hall separately argues the combination of the 50-day notice period and the

COVID-19 pandemic have violated his due process right to pursue clemency. But any "minimal procedural safeguards" the Due Process Clause guaranteed to Hall's clemency proceedings, Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in the judgment), have been satisfied. We need not resolve the precise scope of any due process protections here, because Hall has long had notice, the opportunity, and the assistance of counsel to pursue clemency. At the heart of Hall's due process claim is the assumption that he could not have conducted an investigation and synthesized the information to support his petition for clemency until his execution date was set on September 30, 2020. Not so. While federal regulations set a deadline for submitting a clemency petition of no later than 30 days after the execution date is set, the starting line for Hall to pursue clemency was after his "first petition" for collateral relief under 28 U.S.C. § 2255 was "terminated." 28 C.F.R. § 1.10(b). Hall's first Section 2255 petition was finally denied in 2007. United States v. Hall, 455 F.3d 508, 510 (5th Cir. 2006), cert. denied, 549 U.S. 1343 (2007). So Hall has had thirteen years to develop his case for clemency relief.

Hall, in fact, filed for clemency in December 2016, but then voluntarily withdrew it in January 2017. J.A. 64 ¶ 5. In addition, on October 30, 2020 – the deadline for submitting a clemency application – Hall's counsel reached out to the Office of the Pardon Attorney to obtain an extension to pursue clemency a second time. J.A. 65 ¶ 7. The Office of the Pardon Attorney offered (i) to treat that request as a clemency petition, (ii) to permit Hall to supplement it with documentation over the next fifteen days, and (iii) to allow an oral presentation by counsel, noting that the Office had been able to render a clemency recommendation in all of the requests it had received from other applicants during the pandemic before their execution dates. J.A. 65-66 ¶¶ 9, 11. But Hall's counsel declined to pursue that opportunity. Those two opportunities provided Hall whatever clemency process may have been due to him. This record also persuades us that throughout these proceedings Hall has benefitted from the representation of counsel sufficient to satisfy 18 U.S.C. § 3599.

## III

Finally, Hall argues that, by providing the Bureau of Prisons a role in the execution process, the execution protocol violates the Federal Death Penalty Act's requirement that a United States Marshal "supervise implementation of the sentence[.]" 18 U.S.C. § 3596(a). This court has not yet definitively resolved that statutory question. When this court first considered this issue in April of 2020, Judge Katsas rejected that argument on its merits. Federal Bureau of Prisons' Execution Protocol Cases, 955 F.3d at 124-125 (Katsas, J., concurring). He explained that, under the protocol, a United States Marshal must "oversee the execution," "direct which other personnel may be present," and order the commencement of the execution process. Id. at 124. In

addition, the individuals "administering the lethal agents [act] at the direction of the United States Marshal," and the Marshal is tasked with notifying the court once the sentence has been carried out. Id. at 124-125. In Judge Katsas's view, those roles satisfied the statutory requirement of supervision. However, neither of the other two panel members resolved the merits of that issue. Id. at 145-152 (Tatel, J., dissenting); id. at 145 (Rao, J., concurring) (concluding that the argument was forfeited).

We need not resolve that argument here. Hall is appealing the district court's denial of a preliminary injunction halting his execution. As a result, he must demonstrate that he is "likely to succeed on the merits" of that argument. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Given Judge Katsas's reasoning, it is debatable whether Hall has demonstrated a likelihood of success on this claim. But even if he does, he must also establish a likelihood that the assertedly improper division of responsibilities between the United States Marshal and the Bureau of Prisons irreparably harms him. Id. Hall, however, has made no argument as to how he is prejudiced, let alone irreparably harmed, by the United States Marshal not directly undertaking additional aspects of the execution process. He makes no argument that anything about his execution process would change if his interpretation of the Federal Death Penalty Act succeeded. For those reasons, even assuming Hall has the better of the statutory interpretation argument, he has not met the burden of demonstrating a right to the extraordinary relief of a preliminary injunction halting his execution.

For the foregoing reasons, the judgment of the district court denying a preliminary injunction is affirmed, and the motion for a stay of execution is denied.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate forthwith to the district court.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk