**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**LISA MARIE MONTGOMERY,**

**Plaintiff,**

**vs.**

**WILLIAM P. BARR, et al.,**

**Defendants.**
_____________________________/

**Civil Action**
**No. 1:20-cv-3261**

**Washington, DC**
**November 16, 2020**

**2:02 p.m.**

**TRANSCRIPT OF TELEPHONIC MOTION HEARING**
**BEFORE THE HONORABLE RANDOLPH D. MOSS**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**For the Plaintiff:**

**SANDRA L. BABCOCK**
**JOSEPH MARGULIES**
**ZOHRA AHMED**
Cornell Law School
157 Hughes Hall
Ithaca, NY 14853

**EDWARD UNGVARSKY**
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314

**For the Defendants:**

**ALAN SIMPSON**
U.S. Attorney's Office for the
Western District of Missouri
400 E. 9th Street, Suite 5510
Kansas City, MO 64106

**JOHNNY H. WALKER, III**
U.S. Attorney's Office for the
District of Columbia
555 4th Street, NW
Washington, DC 20530

**Court Reporter:**

**JEFF M. HOOK**
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Washington, DC 20001

P R O C E E D I N G S

**DEPUTY CLERK:** This is civil action 20-3261, Lisa Marie Montgomery versus William P. Barr, et al. Appearing for plaintiffs, Sandra Babcock, Zohra Ahmed, Joseph Margulies and Edward Ungvarsky. Appearing for defendants, Johnny Walker and Alan Simpson.

**THE COURT:** Well, thank you all for joining the call, and thank you for producing your very good briefs in such short order. I know you've all been working incredibly hard, and I'm appreciative of that. Before we get going, I want to remind everyone that under the Court's rules and the Chief Judge's standing order, it not permissible to record or to rebroadcast today's proceedings and I'm going to order that nobody do so. I'll ask that everyone mute your telephones when you're not speaking so we don't get feedback, and when are you speaking, please use the handset so we can hear you clearly. And finally, I'm going to ask that you introduce yourselves by name each time you speak so we have a clear record as to who is speaking.

So Ms. Babcock, are you speaking on behalf of the plaintiff today?

**PROFESSOR BABCOCK:** Good afternoon, your Honor. Yes, I am.

**THE COURT:** Well, you can kick things off, please. Thank you.

**PROFESSOR BABCOCK:** Thank you very much, your Honor. Sandra Babcock for plaintiff, Lisa Montgomery. Your Honor, Lisa Montgomery comes before this Court to vindicate her rights to access the historic failsafe provided by executive clemency. Unlike every case cited by the defendants, this is a case in which Mrs. Montgomery's only two capitally qualified lawyers have been stricken with COVID-19. According to physician Dr. Mark Davis, their symptoms are severe and affect both their mental and physical functioning. In his words, they are functionally incapacitated.

Under these conditions, Mrs. Montgomery is simply unable to access the clemency process. She is indigent and a severely mentally ill person. She is confined right now in a cell in Carswell, Texas with nothing more than a sheet of paper and a single crayon. Without her lawyers, she has no way of filing even the most minimal clemency petition.

Mrs. Montgomery's rights in this matter stem from both the Due Process Clause of the Fifth Amendment, and 18 U.S.C. 3599. The Supreme Court has held that condemned prisoners have a due process right to access the clemency process. And Congress has mandated that they have a right to be represented in that process by counsel who possess the requisite experience and skill. The defendants would have you --

**THE COURT:** I'm sorry to interrupt, but is that right, or is what Congress has done is appropriated money to provide for representation by those individuals, which is perhaps somewhat different than mandating that those lawyers are necessary to represent an applicant for clemency in a death penalty case?

**PROFESSOR BABCOCK:** Your Honor, I would direct you to --

**THE COURT:** And that's -- oh, go ahead.

**PROFESSOR BABCOCK:** I would direct you to Christeson vs. Roper where the Supreme Court addressed the right to counsel under 3599; where the Supreme Court uses the language that we quote in our reply brief that Congress' intent in passing 3599 was to ensure -- and I quote, that he should have the opportunity to present such argument and the benefit of learned counsel in doing so.

So that case I think is supportive of our argument that Congress, by requiring that counsel have -- that counsel be capitally qualified, recognized that in the clemency process, and in federal habeas proceedings in particular, that when a condemned prisoner is facing potential execution, there is a need for that person to be represented by lawyers who have certain qualifications, including capital experience.

**THE COURT:** Although what the provision deals with

is compensation, and that language you just read to me is consistent with the notion that Congress believed that it was very important that individuals in those circumstances have the best, most highly qualified counsel and provided funding for those. But it's a little bit different to say that versus saying Congress mandated that essentially either no one could be executed without that individual being provided with the opportunity for qualified counsel to represent them in the clemency process or that the pardon office must provide an opportunity for capital qualified counsel to represent someone in that process.

So my question is -- I mean, I understand that 3599 may represent a policy of Congress, and that Congress thought it was a very good thing to have this highly qualified counsel representing individuals in that context, and provided money for it for that reason. But that's a little bit different from saying that Congress mandated either that someone could not be executed unless that occurred or mandated that the pardon office had to hear from such individuals.

**PROFESSOR BABCOCK:** What Congress mandated, your Honor, is that counsel shall be appointed to represent a person in proceedings, including the clemency process. And they set forth certain minimal requirements for the type of counsel that has to be appointed. We believe that under

these circumstances -- and I think that Harbison vs. Bell is also supportive of this. Even though the narrow holding of Harbison hinged on the statutory requirement -- and obviously Harbison was a case that addressed funding of counsel appointed in federal habeas proceedings to represent their client in state clemency proceedings.

The language of the court in that case recognized that clemency was the historic failsafe, and that there was an interest that was intertwined with the Due Process Clause to ensure that a prisoner had access to this historic remedy, and that the way that Congress would guarantee that is through the provision of 3599 counsel. It otherwise doesn't really make sense to say that you have a right if you can't vindicate it.

**THE COURT:** Well, I mean, unless what Congress is saying here is that Congress is providing for the funding of that counsel. It's different than -- if it's a right -- you know, I'm trying to get my head around this. But one question is sort of what that right means. If the right means that either the President or the pardon office must hear from capital qualified counsel before someone can be executed, that then sounds like what Congress is doing is actually regulating the pardon process or the clemency process, is that fair?

**PROFESSOR BABCOCK:** No, your Honor, I disagree. I

think that what Congress is doing is ensuring that every death sentenced prisoner had a meaningful right to access the clemency process. I don't believe that Congress is in any way regulating the content of what happens once the President receives a duly filed and prepared clemency petition. Congress in no way was seeking to regulate the procedures under which clemency petitions would be considered, the criteria to be used in evaluating their merit. That's not what Congress was doing. It was ensuring that everyone got one fair shake, one fair opportunity to access that process. And I think that that --

**THE COURT:** Just to pause for a second. So they're regulating it then under your theory, but just in a very limited sense?

**PROFESSOR BABCOCK:** That's right.

**THE COURT:** I mean, I take it you are saying that the pardon office, for example, could not say we're just not hearing from counsel, sorry. You can make a presentation yourself, but we're not going to hear from your counsel. I understand that's a due process argument, put that aside.

In your view, that would violate the statute?

**PROFESSOR BABCOCK:** I think that it would violate the statute where a clemency process exists. Where a clemency process exists -- and we know that it does, there has to be access to that process. And if you imagine --

your Honor, if you look at the cases that defendants cite in their response, if you imagine that everything that happens in a clemency process happens in a closed room, the Court can't enter that closed room. And all of the cases that defendants describe in their pleadings involve what happens in that closed room.

This is not that case. This is a case where Lisa Montgomery is standing outside the room and she cannot get in. And the reason she can't get in is because her lawyers are the only ones who can open the door. And it does not violate or impinge upon the Executive's power to exercise the clemency power in accordance with whatever criteria they determine are dispositive. That is a matter that rests entirely with the Executive. But what we ask this Court to do is to issue preliminary relief that will safeguard Mrs. Montgomery's due process rights, which we believe were recognized first in Woodard by Justice O'Connor when she said that no state can arbitrarily deny a defendant access to the clemency process, and under 18 U.S.C. 3599. The defendants were the ones who scheduled Mrs. Montgomery's execution date during the peak of the global pandemic. They're the ones who have created this problem. They also have the power to solve it by rescheduling Mrs. Montgomery's execution.

And I should note that we have not sued the

President. The President is not a defendant in our case. We have sued the Department of Justice, the pardons attorney and those who were involved in the scheduling of -- and carrying out of Mrs. Montgomery's execution date. So under these circumstances, we believe the Court has the power to issue preliminary relief in order to preserve its jurisdiction and protect Mrs. Montgomery's life to vindicate her constitutional and statutory rights.

**THE COURT:** Has Mrs. Montgomery filed the placeholder petition that the pardon office invited her to file -- or her counsel to file?

**PROFESSOR BABCOCK:** She has not.

**THE COURT:** Is she going to do so?

**PROFESSOR BABCOCK:** Your Honor, I cannot tell you that. I can tell you that she has filed an authorization for Ms. Henry and Ms. Harwell to file the petition. That authorization --

**THE COURT:** She authorized just those two to file it?

**PROFESSOR BABCOCK:** That's correct. And they are the only two capitally qualified habeas counsel appointed pursuant to 3599. We know that they are incapacitated, which Dr. Davis has confirmed. But even if that placeholder petition were filed, it doesn't solve Mrs. Montgomery's problems, because the Government has made clear that an

actual clemency petition has to be filed 15 days later. And we know that Ms. Harwell and Ms. Henry's condition is severe and involves neurologic impairment. Dr. Davis has opined that they're going to need about four weeks to fully recover. So even if --

**THE COURT:** Four weeks from today or four weeks from the onset?

**PROFESSOR BABCOCK:** Four weeks from the onset. And I say that, but I guess I'd have to look back at his declaration, because I'm not sure that he specified.

**THE COURT:** I mean, it's a little bit hard to know -- you know, quite frankly this disease is unpredictable enough. I don't think any of us really know whether they'll be feeling quite well a week from now or whether three months from now they'll still be feeling terrible.

**PROFESSOR BABCOCK:** Well, sure, that's correct, your Honor. Again, that is no fault of Mrs. Montgomery or her attorneys. They are not the ones who created the conditions in which this took place. They certainly didn't wish to become ill with COVID-19, and it's correct that we can't predict the course of their illness. But we do have the opinion of a physician who, based on their clinical histories, their preexisting conditions that make them at heightened risk, has concluded that this is a severe case of

COVID-19.

We know that, for example, Ms. Henry's blood oxygen has been hovering around 91 to 93, and that she's been instructed to go to the emergency room if it stays below 92 I believe for at least two hours. We know that both of them are having trouble concentrating. We know that both of them are having memory problems. They have overwhelming fatigue. They're simply not at the point -- and this is already -- today's the 16th, and this is already a week into the illness.

**THE COURT:** More than that I think.

**PROFESSOR BABCOCK:** Right.

**THE COURT:** So what time today does the placeholder petition have to be filed by, if there is going to be one?

**PROFESSOR BABCOCK:** There is no time as I understand it, it was just said by today.

**THE COURT:** I see. Well, I'm going to direct then that you just file a notice with the Court as soon as one is filed, if one is filed. Even if it's filed at 11:59 tonight, I'll just direct that you file -- that you notify the Court by midnight then if that's the case.

**PROFESSOR BABCOCK:** We'll be happy to.

**THE COURT:** And I think it would also be important to clarify with the pardon office if they do have a

timeline. I'd hate for you to be in a situation in which you file at 11:59 and they say no, we meant 5:00 o'clock.

And what's the status of the draft petition? Because as I understand it, the Government's position is that defense counsel has had almost six months to prepare a petition. And I understand that the facts are evolving facts, and that they turn in part on Mrs. Montgomery's current mental health.

But is there a substantial draft of a petition at this point?

**PROFESSOR BABCOCK:** Not that I'm aware of, your Honor. And I'd like to clarify a few things that I think the Government misapprehends about the --

**THE COURT:** I'm sorry, just before you do that, when you say not that you're aware of, does that mean you don't know one way or the other or that you don't believe there is a draft?

**PROFESSOR BABCOCK:** I don't believe there is a draft, but I do not know whether there is a skeleton. I do not know. I know that there is --

**THE COURT:** Okay.

**PROFESSOR BABCOCK:** -- nothing as far as I know that would approximate what is required when counsel submits a clemency application.

**THE COURT:** Okay. I'm sorry, I interrupted you.

**PROFESSOR BABCOCK:** No problem. I'd like to clarify a couple of misperceptions that I'm afraid could arise as a result of the Government's -- I'm sorry, the defendants' response. And that is, you know, exactly what happens when an execution date is set. It is of course true that counsel have been representing Mrs. Montgomery for several years. But clemency is a different beast than a habeas petition.

Clemency, as you know, is an act of grace. The Executive can consider any facts at their disposal, any facts that are presented to them. Evidence doesn't have to be admissible in a court of law. And in fact, much of the evidence that the Executive considers is character evidence or evidence from a juror who comes forward after hearing that the execution date is set and says, "I was always disturbed by this case. I've changed my mind, and I really think that she deserves clemency." Or after hearing about her extensive history of sexual violence, abuse and trauma, "I believe that she is deserving of mercy." Or a relative of Mrs. Montgomery who has witnessed or who bore witness to the child sex trafficking comes forward and says, "I have new information that I've never shared with you about what I witnessed." Family members of the victim can come forward.

The triggering of the execution date, no matter how much preparation you do -- and I can speak from personal

experience, it is nothing compared to the amount of work that descends upon you once an execution date is set. These are cases -- and Mrs. Montgomery's case is a case in point. The setting of the execution date in her case triggered an outpouring of support from advocates who are involved in the fight against domestic violence, against sexual violence, against child sex trafficking; advocates who recognize that she has a debilitating mental illness who are now calling for a stay. None of these advocates came out before an execution date was set.

And I think it's easy to underappreciate the amount of work and the extraordinary mental and physical burden, the sleepless nights, the 18-hour days that go into preparing a clemency petition, particularly when the defendant in this case -- I'm sorry, the plaintiff in this case, Mrs. Montgomery, was given so little time compared to other similarly situated federal capital defendants who were on average given four and a half years between the denial of their sur petitions and the setting of their execution date. She was given 74 days.

**THE COURT:** But given what you're saying, if she was given 74 days, I would think that any vigorous and experienced counsel -- which I have every reason to believe was the case here, would begin on day one and would have done a great deal before early November to have at least

started the process of putting something together, right? They weren't starting -- they weren't going to go interview her a couple of times and then start sometime later this month to prepare the petition.

**PROFESSOR BABCOCK:** Your Honor, what I can tell you is that the amount of time that they were given is very short given all that they had to do. These are two of the best lawyers in the country. They have a lot of experience. They are people who work very hard and very diligently. Even under those circumstances, they would have been scrambling to meet the deadline imposed by the Government.

Now that they've been stricken with COVID, that is not possible. No matter how much time they had up until the time that they became sick, they are functionally incapacitated and cannot meet the current deadline.

**THE COURT:** I mean, here's the difficulty as I see it, which is I, like you, read Woodard to say that some minimal due process applies. I think if you count the Justices in concurrence with Justice Stevens, you get to five votes for the proposition that there's some element of due process that applies.

But under Justice O'Connor's opinion, which becomes controlling for those purposes, it's a pretty minimal level of due process that applies. And I just -- I struggle with the question of whether even if I might think

that -- if I were the pardon attorney or if I were president of the United States or if I were the attorney general, I would want to make sure that people had heard -- that I had heard everything that I could possibly hear before making such an important and significant decision. And I would want to make sure that that person had the best representation, and that their lawyers had the time they needed to put together their case.

I'm not sure that that's what the standard is under Woodard. As I understand it, the standard under Woodard is it's a pretty minimal due process standard. The hints that we're given as to what it means are perhaps that rolling the dice or basing decisions on race are improper. But beyond that, the court doesn't suggest a whole lot. There were even limitations in that case on the role that counsel was allowed to play in the process.

So I come back to this with that in mind. If that's what the standard is here, and Mrs. Montgomery does have other counsel, including counsel who have been involved for a long period of time, that counsel may not be death penalty qualified or may not have tried a death penalty case and may not have even ever written a clemency petition before. But the question for me is even if I were to think that it is imprudent to move forward with an execution under those circumstances, can I as a judge conclude that it would

violate this very minimal level of due process protection to say that you need to move forward with other counsel under these circumstances and do your best to put together the petition; and ultimately it's up to the President to decide whether to put things off or whether to hear more? I mean, to my mind, that's kind of what this case comes down to.

**PROFESSOR BABCOCK:** Your Honor, with respect, I think you're looking at the wrong place in the Woodard decision. The language that you're speaking of goes to what happens once the clemency petition is received. And you are absolutely correct, apart from a flip of the coin or a deliberately discriminatory clemency decision based on the defendant's race or sex or some other constitutionally impermissible basis for electing to grant or deny clemency, the Executive's power is virtually unfettered. We completely agree with that.

But that language about the minimal procedural safeguards, the flipping of the coin, all had to do with what happens once the person's inside the room. None of the cases -- very, very few, in fact, of the cases interpreting Woodard have to do with that second -- the language that's in O'Connor's concurring opinion that comes after the minimal due process safeguards and talks about arbitrarily denying access to the clemency process.

That's what this case is about, it's about access.

It's not about --

**THE COURT:** I mean, I guess I'm not convinced that that's necessarily the case. I mean, she has access. She can file a clemency petition. And she may not be able to make all of the arguments that she would want to make, and she may not be able to present her case as well as she perhaps should be allowed to present her case, but she's not being told you cannot file a clemency petition. She's being in fact sort of encouraged and accommodated to file a petition, but one hand is tied behind her back in doing it. So it's not that she's denied access, it's she has access, but she has access with one hand tied behind her back.

**PROFESSOR BABCOCK:** It's our position that she's not being given access at all. And that is because her capitally qualified lawyers are the two lawyers, number one, that she has authorized to file this clemency petition. And they are the only ones who are qualified under the criteria set forth by Congress to do so.

And to say otherwise, to suggest that anyone could file this clemency petition -- as I say, even a student in my international human rights clinic that authored the petition to the Inter-American Commission on Human Rights could represent Mrs. Montgomery is to make a mockery of her right to due process and her statutory right to counsel under 18 U.S.C. 3599.

**THE COURT:** Well, put aside the statute for a minute and just concentrate on the Constitution and sort of the level of due process that I'm told under Woodard is appropriate as a matter of due process. And in Woodard, some of what happened happened before the petition was filed or heard at least. I mean, it was the interview. And there, the applicant's hand was tied behind his back in Woodard because he wasn't allowed to have his lawyer present during his interview, which put him in a really difficult situation figuring out what to do about his Fifth Amendment rights, and whether he might actually say things that made things worse or that was otherwise incriminating in that context.

And not having a lawyer sitting by your side, I would actually say, in that process may even be more of a hindrance to being able to present your best case for clemency than having to rely on lawyers who are not capital qualified.

**PROFESSOR BABCOCK:** Your Honor, I think that was a very different case. In Woodard, the prisoner filed a clemency application. The prisoner was represented in the filing of his clemency application by very experienced counsel, Adele Shank, who's one of the most experienced capital litigators in Ohio. And in that case, it was simply a matter of a process that had been set out by the parole

board -- which exists in many states, that in the interview of the prisoner himself before the full consideration -- plenary consideration of the clemency petition, can be -- the prisoner can decide not to participate, but does not have the right to be accompanied by counsel during that preliminary interview. That's a very, very different situation than what we're talking about here where, again, they just are functionally incapacitated and cannot file a clemency petition in accordance with their statutory and professional obligations.

**THE COURT:** But there are other lawyers who could, they just couldn't do as good a job.

**PROFESSOR BABCOCK:** There are no other lawyers who have been appointed under 3599 and authorized by Mrs. Montgomery to file the clemency petition.

**THE COURT:** Well, that's her choice, though. I mean, if she chooses not to authorize somebody else, that's her decision I suppose, right?

**PROFESSOR BABCOCK:** As you know, Mrs. Montgomery is somebody who has a very difficult time trusting lawyers. These are lawyers who have been with her every step of the way throughout her mental illness, throughout the ups and downs that she has experienced, and who went immediately to see her after an execution date was set because they knew that her mental status -- that her mental health would

immediately deteriorate, which it did.

It is very difficult to say that this is Mrs. Montgomery's choice, that she is somehow relinquishing -- intentionally relinquishing a right. None of us could say that. This is somebody who is severely mentally ill, who trusts in her appointed counsel who have spent hundreds of hours with her over the last few years building that rapport and relationship and trust.

**THE COURT:** Right. For example, has Ms. Nouri -- who's been with her for as long, if not longer actually, and may not have the same level of experience. But has Ms. Nouri said to her, look, they're sick at home, we don't want to miss this deadline, can I file at least a placeholder petition on your behalf?

**PROFESSOR BABCOCK:** I cannot say one way or the other whether she has had that conversation with her client. I've not been privy to any of those conversations. But in our view, that would not solve the constitutional problem. Because even coming back to the placeholder petition, it does not solve that a full clemency petition would be due 15 days later.

**THE COURT:** I mean, I take your point, I just -- I guess what I continue to struggle with -- and I want to look harder at 3599 and the cases. I'm as of yet not convinced that that creates a sort of condition on the ability of the

United States to carry out an execution and says that without capital qualified counsel for the clemency process itself, that it can't go forward.

**PROFESSOR BABCOCK:** Your Honor, may I --

**THE COURT:** Please.

**PROFESSOR BABCOCK:** I'm sorry, may I take just a minute to consult with my co-counsel?

**THE COURT:** Yes, please.

**PROFESSOR BABCOCK:** Thank you.

(Brief pause in the proceedings)

**PROFESSOR BABCOCK:** Your Honor, my co-counsel just reminded me that under Ramirez, the Fifth Circuit case that we cite in our reply, the Fifth Circuit granted a stay under highly analogous circumstances to what exist here. And that was a case involving the construction of section 3599.

**THE COURT:** Okay, I'll make sure to take a look at that case. But for present purposes, put aside 3599 -- I will look at this a lot harder, but put that aside for the moment. Focusing on Woodard, you know, I guess I'm not convinced at this point that Mrs. Montgomery is being simply denied access to the clemency process. Although I am convinced, I think, that she is being provided with access to it in a manner in which one hand is tied behind her back with respect to the most critical decision that will be made between now and December 8th -- I'm sorry, yeah, between now

and December 8th. I understand that having any limitation on what one can do when one is facing an execution date is critically important.

But I'm also being -- trying to be guided by what the Supreme Court has told me in that the procedural protections are minimal. And if I conclude that she has access to the process, it's just access in a way in which she is very limited and frustrated in her ability to put on her best case, the question then becomes for me is that a violation of due process to put someone in a position in which the desire for expediency in the execution process trumps her ability to put on her best case.

I guess I'm not sure that the answer under the existing case law comes out in your favor on that proposition.

**PROFESSOR BABCOCK:** Your Honor, I would also direct you to Harbison v. Bell. I think where we are disagreeing is just on the impact on her -- of her lawyer's availability, and what that implies for her ability to access. And if you look at Harbison, in Harbison, the Court towards the end of the opinion talks about the right to meaningful access to the clemency process.

**THE COURT:** Right.

**PROFESSOR BABCOCK:** And meaningful access I think -- I hope that you would agree, if you say that this

is akin to proceeding with one hand tied behind your back, that's not meaningful access. We read --

**THE COURT:** Although the Supreme Court might think it is meaningful access I'm afraid. If having to have your interview about whether you get clemency or not without your attorney present doesn't interfere with your access, you know, that's certainly tying one hand behind your back.

**PROFESSOR BABCOCK:** But that's different, because that person did have access to the clemency process. That person filed a clemency petition, that person had a lawyer.

**THE COURT:** Right. But I have to say, if at the end of the day Mrs. Montgomery doesn't file a clemency petition, it's either going to be because she's too mentally ill to do so, which is a different case than this case, or it's going to be that she's made a strategic decision not to do so. Because I don't have any doubt that there are lawyers who would file something on her behalf and would bring to the pardon attorney and to the President's attention the history of domestic violence, and would bring to the pardon attorney and the President's attention the history of mental illness and so forth. I have no doubt that the counsel that is ill at home now would do a better job with it.

But the question, though, is whether that's of constitutional moment in this area in which you're dealing

with a presidential power. The President of course has the power, and the pardon attorney has the power -- the President has the power to grant a reprieve and say no, I want to hear more information. But in a world in which the President doesn't say I'm going to grant a reprieve, the president says I want to move forward and I don't really care whether it's the best lawyers or some substitutes, the question is where the President has made that decision in the exercise of his pardon power not to grant a reprieve, is it the Court's role as a matter of due process to say no, you have to do that?

**PROFESSOR BABCOCK:** Your Honor, here again I think there is a distinction to be drawn between a reprieve and a preliminary injunction to preserve the Court's jurisdiction and to freeze the status quo while the Court considers the merits of this case. I think that -- and we don't contest that the President has the unique power to issue reprieves in this case. But that is very different. What we are -- and I think the Court always has jurisdiction to vindicate and to police the application of the Constitution and federal law, even in administrative processes, which is what this is.

It is an administrative process that's governed by the Code of Federal Regulations, internal regulations established by the Department of Justice and the Office of

the Pardon Attorney that are at stake here.

**THE COURT:** Although regulations that say they create no substantive or enforceable rights.

**PROFESSOR BABCOCK:** Precisely. But I mention it only because this is not a case about the President's power to grant or deny a reprieve. It is about the power of the Court to insist that Mrs. Montgomery's constitutional and statutory rights be upheld by providing her access to this process that was set up by -- in accordance with administrative regulations. That is something that courts do all the time.

**THE COURT:** So let me ask you -- speaking of jurisdiction, is there any question here about whether this is the right court and whether the defendant -- or defendants in the case are the right defendants? Or to put it otherwise, is this really the equivalent of a habeas petition or a collateral review where the action should be brought in the jurisdiction where Mrs. Montgomery's currently being incarcerated, and that the defendant ought to be the direct custodian?

**PROFESSOR BABCOCK:** Absolutely not, your Honor. The defendants -- the clemency process, all of those decisions are taking place in Washington, D.C. Our gravamen -- the gravamen of our complaint is that she's being deprived of access to the clemency process, and all of

the relevant actors in that process are located within the District. There are, of course, defendants located outside of the District, because they're the ones who are involved in carrying out her execution. But all of the principal defendants reside within the District.

**THE COURT:** But there are two different things going on here. And to the extent you're seeking relief with respect to the clemency process, I'm not quite entirely sure what that relief is with respect to the clemency process other than to say that they shall hear from -- that the pardon attorney should hear from Mrs. Montgomery's capital qualified counsel.

**PROFESSOR BABCOCK:** Right.

**THE COURT:** But the real relief you're seeking, though, is a stay of the execution. Because if I don't stay the execution date, that other relief is meaningless. I mean, I can say fine, I want you to hear from them. And they'd say fine, we're happy to hear from them anytime before December 8th. But after December 8th, it's going to be moot because she's going to be executed.

So isn't the real relief you're seeking is a stay of execution, in which case I just wonder whether I'm the right court?

**PROFESSOR BABCOCK:** Your Honor, you're right, it is both that we're seeking. But the reason this isn't a

habeas is because we're not seeking to disturb her conviction or sentence. Under those circumstances, the Supreme Court has made very clear that it is not only permissible but appropriate for plaintiffs to bring civil suits. This usually happens in the 1983 context, because most of the executions in the United States have been carried out in state courts rather than by the federal government. But most of the cases in which this has arisen involved the challenges to lethal injection. And the courts have --

**THE COURT:** I was just going to ask you to point me to a citation that I would have for that proposition.

**PROFESSOR BABCOCK:** The main case that I think is -- I need to go double check the citation, but it's a federal -- I mean, it's a challenge to lethal injection that was brought by a state court prisoner pursuant to 1983. And the issue was addressed, if memory serves, directly by the Supreme Court. I think it's out of Alabama, and I just can't remember the case right now.

**THE COURT:** Okay, that's helpful. Thank you. Anything else you want to add? I'll give you a chance to respond after I hear from the Government. I'm happy to hear anything else you want to say now.

**PROFESSOR BABCOCK:** Yeah, let me just consult with counsel. Sorry, it's complicated when I'm on the phone, so

if you'd just give me one minute.

**THE COURT:** Sure.

(Brief pause in the proceedings)

**PROFESSOR BABCOCK:** If I could just reserve some time after the Government argues, that would be much appreciated.

**THE COURT:** You may.

**PROFESSOR BABCOCK:** Thank you.

**THE COURT:** Thank you. So is it Mr. Simpson speaking today for the Government?

**MR. SIMPSON:** Yes, your Honor.

**THE COURT:** Do you want to kick things off? I'm happy to ask you some questions to start, whichever you prefer.

**MR. SIMPSON:** I would like to address one matter, and that is I'm reliably informed that the pardon office typically uses 11:59 p.m. Eastern as the cutoff point for all submissions. I believe that there's an intent to do so in this case as well, and I wanted to make the Court aware of that.

**THE COURT:** I appreciate that, because I do think that on things of this nature clarity is essential. You never want someone to make a mistake based on some lack of clarity, so I appreciate that.

**MR. SIMPSON:** I just have one sentence I would

like to say before your Honor has any questions, and that is that the Government strongly believes that the relief sought in this case is itself a request for a reprieve. And whether that reprieve should be granted is committed to the exclusive discretion of the President of the United States by the text of the Constitution.

And with that, I'm happy to hear any questions that your Honor has based off of our brief or the additional things that have been discussed today.

**THE COURT:** My first question for you is do you agree with me that Justice O'Connor's opinion in Woodard is controlling on the question of whether there is some level of due process protection that applies with respect to the clemency process? Because you take the four votes for her concurring opinion, and Justice Stevens' even more expansive view of the right in his concurring and dissenting opinion, and you have five votes.

**MR. SIMPSON:** I agree with your Honor that that opinion is controlling, but I disagree that it applies to federal clemency proceedings. As noted by Judge Mitchell in footnote -- or Judge Lamberth, I'm sorry, in footnote one of his Mitchell opinion, specifically Woodard concerned state clemency proceedings. And there are strong textual reasons in the Constitution why there would be a difference between state clemency proceedings, which are not committed by the

text of the Constitution to the exclusive discretion of the states, and the pardon or reprieve power in Article II which is so committed.

**THE COURT:** I mean, I take that point, but I guess I'm less -- I mean, that is a distinction. And in fact, I went back and looked at Woodard, and the statute at issue in Woodard -- I take that back. The constitutional provision in Woodard actually assigned a partial role to the state legislature. So it was a shared power in that case. I guess I'm not convinced that the Due Process Clause has no application to powers that are assigned solely to one branch or the other.

So, for example, Congress has the power to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries. I don't think anyone would suggest -- even though it's Congress that is granted that exclusive right, the President can't say I'm going to create patents on my own. Obviously courts can't say they're going to create patents. That is a right that's vested in Congress. I don't think anyone would say that Congress could pass a law saying that people of a particular race can get patents, but people of a different race can't get patents, right? The Bill of Rights applies to even sole powers.

So putting it in this context, I take it you wouldn't say that the President, in exercising the pardon power, could say as a matter of policy we're adopting a regulation saying that if you're of a particular race don't apply?

**MR. SIMPSON:** Your Honor, I agree that that would raise serious constitutional questions, but those constitutional questions are not present in this case. What I would -- I would refer your Honor to Federalist number 74 where Alexander Hamilton explained why the pardon power's exclusive vesting within the President was so important. It was the subject of considered deliberation in the Constitution as to what particular -- whether specific categories of crimes ought to be subject to the pardon power, and whether or not there ought to be any amount of oversight.

**THE COURT:** Right. I mean, I understand that -- and I don't think that plaintiff's counsel is suggesting otherwise. I understand that the Court would have no role in saying, for example, that the President just made a really poor decision here, and the President failed to consider these five factors -- and this is like an APA case. And because the President didn't give adequate consideration to these five factors, I'm going to remand the case to him to give it another look. I don't think anyone is suggesting

that that's what is going on here.

But as I read Woodard, it does say that there is some minimal level of due process that applies. Woodard certainly took as a given that clemency, whether it's at the executive level -- the federal executive level or at the state level, is something that has traditionally been understood to involve the exercise of discretion and that courts have very little role to play. And so I start from that premise, that the Court's role here is extremely limited.

The other thing I'm just pushing back on is the proposition that because it's a sole power, that the Court has no role to play; or because the President can exercise complete discretion in deciding whether to grant an application or not, that the President has -- that the Constitution doesn't otherwise apply under those circumstances. It may be that the level of constitutional scrutiny is extremely minimal, but that's different from simply saying, well, because it's a sole power, it's nonexistent.

Because if that were the case, then I don't understand what you do with all the other sole powers that are assigned to Congress, for example, in the Constitution where one also would say the Court has -- the Court has no role in deciding, for example, whether Congress should

impose taxes or not. That's up to Congress. Congress can make that decision for whatever reason it wants to so long as it's not one that violates the Constitution. But if Congress decides that it's going to do it based on grounds of race, that may be a problem.

I understand that courts ought not even get into the business of like requiring the President to explain his reasoning in a manner that would intrude into the process, and therefore we may never know whether a decision is based on race or not. If the President announced that people of a particular race or a particular religion will never be granted clemency, that might well be problematic.

**MR. SIMPSON:** We agree, your Honor. I mean, I think that that would be very problematic. But I would point your Honor back to Federalist number 74 where the primary structural limit on the pardon power is the fear of being accused of kind of -- sorry, I'm going to butcher the world that Hamilton used, connivance. And so if there is any limit, it's only in that extreme situation that your Honor has identified and it's clearly not applicable here.

And I've struggled with this question myself, and what I came to was the Public Citizen decision where the Court said, you know, wherever this balance lies, it's clearly not applicable. It wasn't applicable in that case, and it's not applicable here. So I think that really

teasing out where the structural separation of powers, where that balance lies, whether it's in your Honor's hypothetical or something perhaps less egregious where it's clearly not applicable here, I don't think it's necessary to decide. And I think that judicial restraint particularly counsels against these sorts of structural decisions outside of the appropriate case.

**THE COURT:** Well, what do you say if one does accept the proposition -- and I understand your argument. But if I were to accept the proposition that Woodard applies here and that Justice O'Connor's opinion is controlling, and that there is some minimal level of due process scrutiny that applies, if I were to reach that conclusion, what do you say to plaintiff counsel's contention that this circumstance crosses that line; that the only two lawyers who really have the depth of knowledge necessary to prepare an adequate clemency petition are thoroughly incapacitated at the moment and unable to work; and that unless they can do so, it really is not possible to present a clemency petition that accurately conveys the grounds by which the President should act here?

**MR. SIMPSON:** Thank you, your Honor. I believe that the standard that is being applied is quite rigorous. First, this is essentially an argument that Ms. Montgomery is entitled to choice of counsel. However, it's clear that

in a collateral proceeding or a post-conviction proceeding outside of direct appeal, she doesn't even have a right to adequate counsel.

**THE COURT:** But let me ask you to pause, just pause you for a second there. I take that point. But assume I agree with you, that she doesn't have the right to counsel of her choice, and she isn't required -- she isn't entitled to best counsel, and maybe not even entitled to capital qualified counsel. But I think her comeback is to say -- I can't remember the exact number, but it was something like 47 bankers boxes full of materials thus far that exist with respect to this case. And plus all the additional materials that one would need to put together of affidavits or declarations from advocates from various perspectives out there. It's just not humanly possible in 15 days, if Clarence Darrow were assigned to the case tomorrow, for Clarence Darrow to put together a clemency petition that would do justice to her case.

**MR. SIMPSON:** Thank you, your Honor. I think that what your Honor is essentially articulating is a reason why someone would seek a reprieve in order to file a better commutation petition with the pardon office. And whether or not that ought to be granted is, in our view, committed to the exclusive discretion of the President.

But I would add that there are a few other issues

with what your Honor has stated. First, Ms. Nouri was appointed back in 2012. And although there have been some statements about how qualified she was at that time, she has, as we know, at least eight years of post-conviction experience in this case. And even if she wasn't driving the bus for all of that litigation, she was in the bus. She was the local counsel throughout that proceeding. And there's been no articulation that she has less knowledge of the material facts, that she wasn't along for the ride throughout all of that litigation.

Moreover, the passage of time has honed most, if not all, of those reasons -- of the reasons that would be articulated for clemency. And they've been repeated in multiple cases in this Court. They've been repeated to an international tribunal. To the extent counsel or Ms. Montgomery want to articulate different reasons and probe those, they've been able to do so for a long period of time. They're going to be able to do so. And there is no constitutional right or there's no meaningful lack of access to these proceedings based off of difficulties with particular counsel taking the reins.

They've already done many things, and I am skeptical that there is no work product that had been created as of November 5th or 6th I believe. This is a large undertaking, and there was something due today --

although there's an additional 15 days that are provided. The one -- we're speaking about the constitutional argument, but I think that it's important to be clear behind this idea of capitally qualified counsel. 18 U.S.C. 3599 does not contain the same learned counsel requirement as exists in I believe it's 18 U.S.C. 3005. So whether or not Ms. Nouri, or any number of other counsel who represent Ms. Montgomery in various cases, would have qualified back in 2012 under 18 U.S.C. 3005, all or virtually all do have the same sort -- you know, comparatively lesser requirements that are articulated in 3599.

But it's also important to think larger at the context of clemency proceedings themselves. This is not litigation, this is a matter of executive grace committed to the discretion of the President. And the qualifications are not nearly as rigorous or the same as they would be at the trial level for a capital defendant. The person who represents her need not be a lawyer. She's been funded a lawyer, and I think that there's -- I think that one problem with Ms. Montgomery's argument is that in essence she's trying to have it both ways. She's trying to say, well, she's essentially been abandoned by certain lawyers -- through no fault of their own, but abandoned. And then instead of seeking new counsel in the appropriate court, she is coming to this Court and asking for a reprieve, whenever

that reprieve would be committed to the President's discretion.

**THE COURT:** And what is the status of the reprieve application?

**MR. SIMPSON:** Your Honor, there has been no reprieve application.

**THE COURT:** I thought there was a request for a reprieve or in essence for an extension of the deadline here?

**MR. SIMPSON:** Your Honor, what there was was an e-mail from counsel who was the federal defender of the Middle District of Tennessee. And I believe that what was communicated was that that needed to be an official request with Ms. Montgomery's authorization.

**THE COURT:** I see. So that is one of the two things that is due by 11:59 tonight?

**MR. SIMPSON:** Yes, if that's the basis -- if that's in fact what Ms. Montgomery seeks. I can't opine as to what she in fact seeks.

**THE COURT:** What was the document that was filed with the international tribunal?

**MR. SIMPSON:** Thank you, your Honor. The document that was filed was a petition, and it covered many of the types of arguments -- the Inter-American Commission for Human Rights -- and I'm sure I'm not getting that right, and

Professor Babcock could more accurately describe the title of it. But the important point is that that was a 65-page document containing hearing -- it references numerous exhibits such as hearing transcripts, other evidence. And it encompasses the same types of information that would be typical in a clemency proceeding or in any request for the President to exercise his discretion to grant somebody a commutation or reprieve.

**THE COURT:** What is your response to the Ramirez case that plaintiff cites to in the Fifth Circuit?

**MR. SIMPSON:** Thank you, your Honor. The Ramirez case, like the Battaglia case -- there are numerous cases in the habeas context where somebody is able to credibly argue that their counsel had abandoned them. But none of those cases occur in the clemency context. So, for example, I'm trying to point to something specific in the Ramirez case. But we do not believe that there is anything -- you know, your Honor, I just don't have a familiarity with that case to be able to discuss it.

**THE COURT:** Okay. It's always best to be forthcoming about that sort of thing, I can take a look at it.

So anything else you want to add before I give Professor Babcock a chance to respond?

**MR. SIMPSON:** Thank you, your Honor. The only

additional thing I would say is that on the statutory -- we believe that the statutory claim is a direct attempt to interfere with the President's -- to manage the process by which the President exercises sole discretion to grant a reprieve or commutation. And in any event, because plaintiff, Ms. Montgomery, seeks a stay of her execution, we would reinforce that she would have to satisfy a -- she'd have to be able to demonstrate a significant possibility of success on the merits. She simply is not able to do so in this case.

Thank you, your Honor, for reading the briefs and for your time.

**THE COURT:** Thank you. Professor Babcock, rebuttal?

**PROFESSOR BABCOCK:** Yes, your Honor. If you may, would you mind giving me just a minute to consult with my co-counsel?

**THE COURT:** Please.

**PROFESSOR BABCOCK:** Thank you.

(Brief pause in the proceedings)

**PROFESSOR BABCOCK:** Thank you, your Honor. Before I begin, let me just give you the cites to those two cases that you'd asked about where the Supreme Court held that courts may stay executions in civil litigation brought pursuant to section 1983. It's Nelson vs. Campbell, 541

U.S. 637, and Skinner vs. Switzer -- I only have the Supreme Court cite, but it's 131 S.Ct. 1289.

**THE COURT:** All right, thank you.

**PROFESSOR BABCOCK:** Your Honor, counsel for defendants just made a fairly stunning statement, which is that Mrs. Montgomery need not be represented by a lawyer at all. And so I had said in our reply that apparently according to defendants -- and I admit this was slightly snide, that it would be sufficient if Mrs. Montgomery were represented by one of my clinic students. That is apparently their position. And in our view, that is simply inconsistent with the dictates of the Due Process Clause combined with section 3599. Ramirez was a case involving the right of 3599 counsel to file a clemency petition in the Fifth Circuit. That is a case that is directly on point.

This is a case in which we believe this Court can fashion very narrow relief uniquely tailored to the extraordinary circumstances of Mrs. Montgomery's case. This case is sui generis. There is no other case of which we are aware that involves counsel who are functionally incapacitated and unable to file a clemency petition on behalf of their client in the midst of a global pandemic that is killing -- that has already killed over 230,000 people in this country.

Under these circumstances, the Court can and

should fashion injunctive relief that would not dictate what criteria the Executive should use, how their internal review processes should be conducted, but that would allow Mrs. Montgomery, through her capitally qualified counsel appointed pursuant to 18 U.S.C. 3599, to prepare and present a clemency petition on her behalf so that she can make use -- meaningful -- that she can meaningfully access what the Supreme Court has consistently characterized as a historic failsafe in our legal system. That is all that we are asking, your Honor.

And there was a request in this case for a reprieve by Mr. Henry of the federal defender's office acting on behalf of his two incapacitated lawyers. That request for reprieve was denied by the pardons attorney, and he was told that the request would not be forwarded to the President unless a clemency petition was filed.

That is all that we have, your Honor. Thank you very much.

**THE COURT:** Can I ask you, what was the petition to the international --

**PROFESSOR BABCOCK:** The Inter-American Commission on Human Rights?

**THE COURT:** Yes.

**PROFESSOR BABCOCK:** So thank you for that, nobody ever asks me about those petitions. The Inter-American

Commission on Human Rights, your Honor, is a human rights body that was established under the organization of American states to review complaints alleging human rights violations in the United States. My human rights clinic students this semester wrote a clemency -- not a clemency petition, sorry, a petition to the Inter-American Commission. And we filed it back a few weeks ago, I don't remember the exact date. But it alleges a number of different human rights violations, including, for example, that the United States is prepared to execute somebody who suffers from debilitating, severe mental illness; that the United States failed to take adequate steps to protect Mrs. Montgomery from sexual violence throughout her life; that she was provided ineffective assistance of counsel, and other claims that the commission will we hope duly consider.

So that is the Inter-American Commission on Human Rights.

**THE COURT:** Is some portion of that useful for purposes of the clemency petition? Maybe not entirely, but is some portion of it?

**PROFESSOR BABCOCK:** It's much more akin, your Honor, to a habeas petition rather than a clemency petition. A clemency petition really is very different. The kinds of arguments that are raised are not legal arguments. The petition to the Inter-American Commission, these are legal

arguments under international law. So I think the more ready analogy is to a habeas petition.

**THE COURT:** You raised the point, which I guess doesn't come as a surprise to me, that a clemency petition doesn't raise legal arguments. Doesn't that also support the view that as a matter of due process and perhaps as a matter of the statute, you don't need capital qualified counsel for purposes of a clemency petition. In fact, it's a very different skill set. In fact, what you really want is somebody who has a pretty good understanding of what the President cares about and what may be motivating to the President here.

But the reason for capital qualified counsel, I mean, there are a whole bunch of unique and complicated rules that apply in capital cases. We know this long history of counsel who was not as well qualified as they should be in these cases failing to raise arguments that are then waived for purposes of appeal or collateral review in ways that could then have devastating effects for purposes of capital defendants. That's why you need capital qualified counsel.

I mean, one obviously is the stakes of what's going on. But two is that it is a highly specialized field. Whereas I suspect that there are folks out there who have never practiced law a minute in their lives, who if you

showed the record to in this case could tell you what arguments are most likely to be appealing to President Trump and which ones are not going to be appealing to President Trump that have nothing to do with the legal merits.

**PROFESSOR BABCOCK:** Your Honor, I would direct you to the exhibit, I believe it was Exhibit 9 attached to our memo in support of the motion for TRO, which is the declaration of Carol Wright that lays out the duties of clemency counsel under the guidelines of the American Bar Association. And she describes in detail the professional standards governing the submission of clemency procedures. This is not child's play, it is very, very sophisticated.

If this were a case -- if this were a different case -- you know, let's say this were a case involving a serial killer, somebody who had raped and murdered a dozen women and tortured them before he killed them; and this is somebody who then committed another murder in prison. That's the kind of case where, well, you know, you know that your chances for clemency are probably slim to none. In that case, I grant you that quality counsel probably doesn't matter. That person should still have, and still does have, the right to 3599 counsel. But that's not this case.

This is a case that involves very substantial arguments in favor of clemency, and these are arguments that can't be put together by any old person. As smart as my

students are, they are not capable of doing this. And they're not capable either of monitoring -- Mrs. Montgomery's mental health is relevant to the clemency process, it's not just a Ford competency issue. Whether or not she is currently functioning, she is currently in contact with reality, is something that her lawyers should be able to present to the Executive Branch. Because that's something that historically clemency decision makers have relied upon as grounds for granting commutations of death sentences. In at least five cases over the last -- in the modern death penalty era, governors have granted clemency on that basis alone. These are things that ordinary folks who don't have the same training as Ms. Harwell and Ms. Henry are simply unable to do.

So it is -- we just reject completely the idea that a prisoner who has been condemned to death has no statutory right or due process right to meaningful access to the clemency process through the appointed counsel under 18 U.S.C. 3599 with the minimum skills and experience necessary to submit that petition.

**THE COURT:** How much time would be needed? So if some reprieve or extension were granted, would two weeks be sufficient, three weeks? I mean, you tell me.

**PROFESSOR BABCOCK:** Your Honor, what we would suggest is that the Court grant a preliminary injunction

that would allow -- that would be consistent with the recommendations of Dr. Davis; that is to say, four weeks from the onset of symptoms. And that counsel also be granted the amount of time that they lost by virtue of having been incapacitated, which at this point is about roughly 11 days if I'm counting correctly.

**THE COURT:** I guess I'm not sure why you would do both of those things.

**PROFESSOR BABCOCK:** Because if it takes them four weeks to recover, they still don't make up the time.

**THE COURT:** But you said four weeks from onset of symptoms is what you just said.

**PROFESSOR BABCOCK:** Oh yeah, I guess you're right. I'm sorry, math was never my forte.

**THE COURT:** So what you're really just talking about ultimately is just a two-week extension?

**PROFESSOR BABCOCK:** Can I -- your Honor, can I just pause for a minute and consult with my co-counsel?

**THE COURT:** Yes.

**PROFESSOR BABCOCK:** Thank you.

(Brief pause in the proceedings)

**PROFESSOR BABCOCK:** Thank you, your Honor. I apologize, I wanted to make sure I was reading Dr. Davis' affidavit correctly. As I read it, what he is saying is that he would recommend four weeks for recovery from the

time that he saw them. I will concede that that is not expressly stated in his affidavit, but that is what we would suggest.

**THE COURT:** Well, I don't mean to suggest that I've made any decision to grant anything, but I just wanted to know what your position was on that.

Anything further, Professor Babcock?

**PROFESSOR BABCOCK:** No, your Honor, that would be all. Thank you.

**THE COURT:** Mr. Simpson, anything further?

**MR. SIMPSON:** Yes, your Honor, just briefly. If the Court were inclined to enter such a stay, I don't think that it would be reasonable for there to be a so called standstill, right. That surely amongst Ms. Nouri and amongst her other lawyers, there would be numerous opportunities for this important work to be done, communications to be had with Ms. Montgomery. I don't see it as remotely reasonable to ask that we simply pause the process until particular lawyers can do something.

The only additional authority I would direct your Honor to is a statement regarding the denial of certiorari that was issued by Justice Sotomayor in Holiday vs. Stephens. That's 577 U.S. 999. And in that case, she was considering a situation in which a Texas death row inmate's lawyers actually refused to file a clemency petition for

him. And the district court declined to find that that inmate has been abandoned such that it should have appointed new counsel under section 3599.

The lawyers thereafter filed a petition, and Justice Sotomayor noted that it likely -- that the petition would have benefitted from additional preparation by more zealous advocates. I can only imagine that she's referring to advocates exactly of the type like Ms. Harwell and her co-counsel. But despite those concerns, Justice Sotomayor said it was unlikely that Woodard would have given the Supreme Court the authority to interfere with Texas' clemency decision, and so she committed that decision back to the state courts. And I think that in a federal proceeding, your Honor is in much of the same situation.

**THE COURT:** Well, I will take a look at that as well. And with respect to whether there is some short extension of time and whether work should be ongoing or not, I would say that I certainly -- and I think the judiciary in general, would much prefer that decisions of that nature be made by the Executive. And it may be hopefully there will be actually a reprieve petition that is filed before 11:59 tonight along with a clemency petition.

But I would encourage the pardon attorney and the President to look at that seriously to see if in light of the extraordinary circumstances that are present here with

respect to the illness of the two lawyers, whether there could be some short extension that the Executive would be prepared to grant that might address what's raised in this case. But that's obviously not up to me. I just would encourage you to raise that, and encourage the Executive to look seriously at that question. Because I think we all agree that these decisions are ones that would be better made by the Executive than a court.

And I do also encourage Mrs. Montgomery to take advantage of the opportunity to file a petition for reprieve and a petition for clemency by the deadline tonight. You should not rest assured at all that I'm going to grant relief. I need to think harder about this. I'm going to try and do something very quickly, because I do want to provide plenty of time for appellate review. But I would encourage you to file those things, because you may well not have any relief from me. And obviously what really matters is what relief you may or may not get from an appellate court or the Supreme Court. But I really would encourage you to take advantage of that opportunity so it just doesn't pass by in a way in which it's lost forever.

Well, that's all I have today, unless any of the parties have anything else they'd like to raise with me?

**PROFESSOR BABCOCK:** Nothing from Mrs. Montgomery, your Honor. Thank you.

**THE COURT:** Okay, thank you.

**MR. SIMPSON:** Nothing from the Government either. Thank you, your Honor.

**THE COURT:** Well, thank you all. If there are any developments, please file a notice with the Court as soon as you possibly can so I'll know about that. And as I said, I will get you a decision as soon as I can as well. Thank you all, have a good afternoon.

(Proceedings adjourned at 3:22 p.m.)

# C E R T I F I C A T E

I, **Jeff Hook, Official Court Reporter**, certify that the foregoing is a true and correct transcript of the remotely reported proceedings in the above-entitled matter.

**PLEASE NOTE:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

November 30, 2020 ______________________________

DATE Jeff M. Hook

**1**

11 [1] 48/6
114 [1] 1/15
11:59 [1] 29/17
11:59 and [1] 12/2
11:59 tonight [3] 11/21 39/16 50/22
1289 [1] 42/2
131 [1] 42/2
14853 [1] 1/13
15 [4] 10/1 21/20 36/16 38/1
157 [1] 1/13
16 [1] 1/5
16th [1] 11/9
18 [8] 3/19 8/19 18/25 38/4 38/6 38/8 43/5 47/18
18-hour [1] 14/13
19 [4] 3/8 10/21 11/1 53/8
1983 [3] 28/5 28/16 41/25
1:20-cv-3261 [1] 1/3

**2**

20-3261 [1] 2/2
20001 [1] 1/25
2012 [2] 37/2 38/8
2020 [1] 1/5
20530 [1] 1/22
22314 [1] 1/16
230,000 [1] 42/23
2:02 [1] 1/6

**3**

3005 [2] 38/6 38/9
3261 [2] 1/3 2/2
333 [1] 1/24
3599 [20] 3/20 4/12 4/14 5/13 6/12 8/19 9/22 18/25 20/14 21/24 22/15 22/17 38/4 38/11 42/13 42/14 43/5 46/22 47/19 50/3
3:22 p.m [1] 52/9

**4**

400 [1] 1/18
47 [1] 36/11
4th [1] 1/21

**5**

541 [1] 41/25
5510 [1] 1/18
555 [1] 1/21
577 [1] 49/23
5:00 [1] 12/2
5th [1] 37/24

**6**

637 [1] 42/1
64106 [1] 1/19
65-page [1] 40/2
6th [1] 37/24

**7**

74 [4] 14/20 14/22 32/9 34/15

**8**

8th [4] 22/25 23/1 27/19 27/19

**9**

91 [1] 11/3
92 [1] 11/5
93 [1] 11/3
999 [1] 49/23
9th [1] 1/18

**A**

abandoned [4] 38/22 38/23 40/14 50/2
ability [4] 21/25 23/8 23/12 23/19
able [10] 18/4 18/6 19/16 37/17 37/18 40/13 40/19 41/8 41/9 47/7
above [1] 53/5
above-entitled [1] 53/5
absolutely [2] 17/11 26/21
abuse [1] 13/18
accept [2] 35/9 35/10
access [31] 3/4 3/13 3/21 6/10 7/2 7/11 7/25 8/18 17/24 17/25 18/3 18/11 18/11 18/12 18/14 22/21 22/22 23/7 23/7 23/20 23/22 23/24 24/2 24/4 24/6 24/9 26/8 26/25 37/19 43/7 47/17
accommodated [1] 18/9
accompanied [1] 20/5
accordance [3] 8/12 20/9 26/9
according [2] 3/8 42/8
accurately [2] 35/20 40/1
accused [1] 34/17
act [2] 13/9 35/21
acting [1] 43/13
action [3] 1/3 2/2 26/17
actors [1] 27/1
actual [1] 10/1
actually [7] 6/23 19/11 19/15 21/10 31/8 49/25 50/21
add [3] 28/21 36/25 40/23
additional [6] 30/8 36/13 38/1 41/1 49/20 50/6
address [2] 29/15 51/3
addressed [3] 4/11 6/4 28/17
Adele [1] 19/23
adequate [4] 32/23 35/17 36/3 44/12
adjourned [1] 52/9
administrative [3] 25/21 25/23 26/10
admissible [1] 13/12
admit [1] 42/8
adopting [1] 32/3
advantage [2] 51/10 51/20
advocates [6] 14/5 14/7 14/9 36/14 50/7 50/8
affect [1] 3/9
affidavit [2] 48/24 49/2
affidavits [1] 36/14
afraid [2] 13/2 24/4
afternoon [2] 2/22 52/8
again [3] 10/18 20/7 25/12
against [4] 14/6 14/6 14/7 35/6
ago [1] 44/7
agree [8] 17/16 23/25 30/11 30/18 32/6 34/13 36/6 51/7
ahead [1] 4/9
AHMED [2] 1/12 2/4
akin [2] 24/1 44/21
al [2] 1/5 2/3
Alabama [1] 28/18
ALAN [2] 1/17 2/6
Alexander [1] 32/10
Alexandria [1] 1/16
Alfred [1] 1/15
alleges [1] 44/8
alleging [1] 44/3
allow [2] 43/3 48/1
allowed [3] 16/16 18/7 19/8
almost [1] 12/5
alone [1] 47/12
along [2] 37/9 50/22
although [6] 4/25 22/21 24/3 26/2 37/2 38/1
always [3] 13/15 25/19 40/20
Amendment [2] 3/19 19/10
American [9] 18/22 39/24 43/21 43/25 44/2 44/6 44/16 44/25 46/9
amongst [2] 49/14 49/15
amount [5] 14/1 14/12 15/6 32/15 48/4
analogous [1] 22/14
analogy [1] 45/2
announced [1] 34/10
APA [1] 32/22
apart [1] 17/11
apologize [1] 48/23
apparently [2] 42/7 42/11
appeal [2] 36/2 45/18
appealing [2] 46/2 46/3
APPEARANCES [1] 1/10
Appearing [2] 2/3 2/5
appellate [2] 51/15 51/18
applicable [5] 34/20 34/24 34/24 34/25 35/4
applicant [1] 4/5
applicant's [1] 19/7
application [8] 12/24 19/21 19/22 25/20 31/11 33/15 39/4 39/6
applied [1] 35/23
applies [9] 15/18 15/21 15/24 30/13 30/19 31/24 33/3 35/10 35/13
apply [3] 32/5 33/16 45/15
appointed [10] 5/22 5/25 6/5 9/21 20/14 21/6 37/2 43/5 47/18 50/2
appreciate [2] 29/21 29/24
appreciated [1] 29/6
appreciative [1] 2/10
appropriate [4] 19/4 28/4 35/7 38/24
appropriated [1] 4/2
approximate [1] 12/23
arbitrarily [2] 8/18 17/23
area [1] 24/25
argue [1] 40/13
argues [1] 29/5
argument [7] 4/15 4/17 7/20 35/9 35/24 38/2 38/20
arguments [10] 18/5 39/24 44/24 44/24 45/1 45/5 45/17 46/2 46/24 46/24
arise [1] 13/3
arisen [1] 28/8
around [2] 6/18 11/3
Article [1] 31/2
articulate [1] 37/16
articulated [2] 37/13 38/11

## A

articulating [1] 36/20
articulation [1] 37/8
arts [1] 31/14
aside [4] 7/20 19/1 22/17 22/18
assigned [4] 31/8 31/11 33/23 36/16
assistance [1] 44/14
Association [1] 46/10
assume [1] 36/6
assured [1] 51/12
attached [1] 46/6
attempt [1] 41/2
attention [2] 24/19 24/20
attorney [11] 9/2 16/1 16/2 24/6 24/18 24/20 25/2 26/1 27/11 43/14 50/23
Attorney's [2] 1/17 1/20
attorneys [1] 10/19
authored [1] 18/21
authority [2] 49/20 50/11
authorization [3] 9/15 9/17 39/14
authorize [1] 20/17
authorized [3] 9/18 18/16 20/14
authors [1] 31/15
availability [1] 23/19
Avenue [1] 1/24
average [1] 14/18
aware [4] 12/11 12/15 29/19 42/20

## B

BABCOCK [8] 1/11 2/4 2/20 3/2 40/1 40/24 41/13 49/7
back [17] 10/9 16/17 18/10 18/12 19/7 21/19 22/23 24/1 24/7 31/6 31/7 33/11 34/15 37/2 38/8 44/7 50/12
balance [2] 34/23 35/2
bankers [1] 36/11
Bankruptcy [1] 1/24
Bar [1] 46/9
BARR [2] 1/5 2/3
based [7] 10/23 17/12 29/23 30/8 34/4 34/9 37/20
basing [1] 16/13
basis [3] 17/14 39/17 47/12
Battaglia [1] 40/12
beast [1] 13/7
became [1] 15/14
become [1] 10/21
becomes [2] 15/23 23/9
begin [2] 14/24 41/22
behalf [6] 2/20 21/14 24/17 42/22 43/6 43/13
behind [7] 18/10 18/12 19/7 22/23 24/1 24/7 38/3
believes [1] 30/2
Bell [2] 6/1 23/17
below [1] 11/5
benefit [1] 4/16
benefitted [1] 50/6
best [10] 5/4 15/8 16/6 17/3 19/16 23/9 23/12 25/7 36/8 40/20
better [3] 24/22 36/21 51/7
beyond [1] 16/14
Bill [1] 31/24
bit [3] 5/5 5/17 10/11
blood [1] 11/2
board [1] 20/1
body [1] 44/2
bore [1] 13/20
both [7] 3/9 3/19 11/6 11/7 27/25 38/21 48/8
boxes [1] 36/11
branch [2] 31/11 47/7
brief [6] 4/13 22/10 29/3 30/8 41/20 48/21
briefly [1] 49/11
briefs [2] 2/8 41/11
bring [3] 24/18 24/19 28/4
brought [3] 26/18 28/16 41/24
building [1] 21/8
bunch [1] 45/14
burden [1] 14/13
bus [2] 37/6 37/6
business [1] 34/7
butcher [1] 34/17

## C

call [1] 2/8
called [1] 49/13
calling [1] 14/8
came [2] 14/9 34/22
Campbell [1] 41/25
can [34] 2/17 2/24 6/21 7/18 8/10 8/18 9/15 13/10 13/23 13/25 15/5 16/25 18/4 20/3 20/4 21/13 23/2 27/17 31/23 33/13 34/1 35/18 40/21 42/16 42/25 43/6 43/7 43/19 48/17 48/17 49/19 50/7 52/6 52/7
capable [2] 47/1 47/2
capital [15] 4/24 5/10 6/21 14/17 19/17 19/24 22/2 27/11 36/9 38/17 45/7 45/13 45/15 45/20 45/20
capitally [6] 3/7 4/19 9/21 18/15 38/4 43/4
care [1] 25/7
cares [1] 45/11
Carol [1] 46/8
carried [1] 28/7
carry [1] 22/1
carrying [2] 9/4 27/4
Carswell [1] 3/15
case [80]
cases [15] 8/1 8/4 14/3 17/20 17/20 21/24 28/8 37/14 38/8 40/12 40/15 41/22 45/15 45/17 47/10
categories [1] 32/14
cell [1] 3/15
certain [3] 4/23 5/24 38/22
certainly [4] 10/20 24/7 33/4 50/18
certify [1] 53/4
certiorari [1] 49/21
challenge [1] 28/15
challenges [1] 28/9
chance [2] 28/21 40/24
chances [1] 46/19
changed [1] 13/16
character [1] 13/13
characterized [1] 43/8
check [1] 28/14
Chief [1] 2/12
child [2] 13/21 14/7
child's [1] 46/12
choice [4] 20/16 21/3 35/25 36/7
chooses [1] 20/17
Christeson [1] 4/11
Circuit [4] 22/12 22/13 40/10 42/15
circumstance [1] 35/15
circumstances [12] 5/3 6/1 9/5 15/10 16/25 17/3 22/14 28/2 33/17 42/18 42/25 50/25
citation [2] 28/12 28/14
cite [3] 8/1 22/13 42/2
cited [1] 3/5
cites [2] 40/10 41/22
citizen [1] 34/22
City [1] 1/19
civil [4] 1/3 2/2 28/4 41/24
claim [1] 41/2
claims [1] 44/14
Clarence [2] 36/16 36/17
clarify [3] 11/25 12/12 13/2
clarity [2] 29/22 29/24
Clause [4] 3/19 6/9 31/10 42/12
clear [5] 2/19 9/25 28/3 35/25 38/3
clearly [4] 2/17 34/20 34/24 35/3
clemency [88]
client [3] 6/6 21/16 42/22
clinic [3] 18/21 42/10 44/4
clinical [1] 10/23
closed [3] 8/3 8/4 8/6
co [5] 22/7 22/11 41/17 48/18 50/9
co-counsel [5] 22/7 22/11 41/17 48/18 50/9
Code [1] 25/24
coin [2] 17/11 17/18
collateral [3] 26/17 36/1 45/18
COLUMBIA [2] 1/1 1/21
combined [1] 42/13
comeback [1] 36/9
coming [2] 21/19 38/25
commission [8] 18/22 39/24 43/21 44/1 44/6 44/15 44/16 44/25
committed [8] 30/4 30/25 31/3 36/23 38/14 39/1 46/17 50/12
communicated [1] 39/13
communications [1] 49/17
commutation [3] 36/22 40/8 41/5
commutations [1] 47/9
comparatively [1] 38/10
compared [2] 14/1 14/16
compensation [1] 5/1
competency [1] 47/4
complaint [1] 26/24
complaints [1] 44/3
complete [1] 33/14
completely [2]

## C

completely... [2] 17/16 47/15
complicated [2] 28/25 45/14
concede [1] 49/1
concentrate [1] 19/2
concentrating [1] 11/6
concerned [1] 30/22
concerns [1] 50/9
conclude [2] 16/25 23/6
concluded [1] 10/25
conclusion [1] 35/13
concurrence [1] 15/19
concurring [3] 17/22 30/15 30/16
condemned [3] 3/20 4/21 47/16
condition [2] 10/2 21/25
conditions [3] 3/12 10/20 10/24
conducted [1] 43/3
confined [1] 3/14
confirmed [1] 9/23
Congress [27] 3/22 4/2 4/18 5/2 5/6 5/13 5/13 5/17 5/21 6/11 6/15 6/16 6/22 7/1 7/3 7/6 7/9 18/18 31/13 31/17 31/21 31/22 33/23 33/25 34/1 34/1 34/4
Congress' [1] 4/13
connivance [1] 34/18
consider [3] 13/10 32/22 44/15
consideration [3] 20/2 20/3 32/23
considered [2] 7/8 32/12
considering [1] 49/24
considers [2] 13/13 25/15
consistent [2] 5/2 48/1
consistently [1] 43/8
Constitution [10] 1/24 19/2 25/20 30/6 30/24 31/1 32/13 33/16 33/23 34/3
constitutional [10] 9/8 21/18 24/25 26/7 31/7 32/7 32/8 33/17 37/19 38/2
constitutionally [1] 17/13
construction [1] 22/15
consult [4] 22/7 28/24 41/16 48/18
contact [1] 47/6
contain [1] 38/5
containing [1] 40/3
content [1] 7/4
contention [1] 35/14
contest [1] 25/16
context [7] 5/15 19/13 28/5 32/1 38/13 40/13 40/15
continue [1] 21/23
controlling [4] 15/23 30/12 30/19 35/11
conversation [1] 21/16
conversations [1] 21/17
conveys [1] 35/20
conviction [3] 28/2 36/1 37/4
convinced [5] 18/2 21/24 22/20 22/22 31/10
Cornell [1] 1/12
correctly [2] 48/6 48/24
counsel [71]
counsel's [1] 35/14
counsels [1] 35/5
count [1] 15/18
counting [1] 48/6
country [2] 15/8 42/24
couple [2] 13/2 15/3
course [4] 10/22 13/5 25/1 27/2
court [50] 1/1 1/23 1/23 3/3 3/20 4/11 4/12 6/7 8/3 8/14 9/5 11/19 11/22 13/12 16/14 23/5 23/20 24/3 25/15 25/19 26/7 26/14 27/23 28/3 28/16 28/18 29/19 32/19 33/12 33/24 33/24 34/23 37/14 38/24 38/25 41/23 42/2 42/16 42/25 43/8 47/25 49/12 50/1 50/11 51/8 51/19 51/19 52/5 53/3 53/9
Court's [4] 2/11 25/10 25/14 33/9
courts [9] 1/24 26/10 28/7 28/9 31/19 33/8 34/6 41/24 50/13
covered [1] 39/23
COVID [5] 3/8 10/21 11/1 15/12 53/8
COVID-19 [4] 3/8 10/21 11/1 53/8
crayon [1] 3/16
create [3] 26/3 31/19 31/20
created [3] 8/22 10/19 37/24
creates [1] 21/25
credibly [1] 40/13
crimes [1] 32/14
criteria [4] 7/8 8/12 18/17 43/2
critical [1] 22/24
critically [1] 23/3
crosses [1] 35/15
current [2] 12/8 15/15
currently [3] 26/19 47/5 47/5
custodian [1] 26/20
cutoff [1] 29/17
cv [1] 1/3

## D

D.C [1] 26/23
Darrow [2] 36/16 36/17
date [14] 8/21 9/4 13/5 13/15 13/24 14/2 14/4 14/10 14/19 20/24 23/2 27/16 44/7 53/14
Davis [4] 3/8 9/23 10/3 48/2
Davis' [1] 48/23
day [2] 14/24 24/12
days [8] 10/1 14/13 14/20 14/22 21/21 36/16 38/1 48/6
DC [3] 1/4 1/22 1/25
deadline [5] 15/11 15/15 21/13 39/8 51/11
deal [1] 14/25
dealing [1] 24/25
deals [1] 4/25
death [8] 4/6 7/2 16/20 16/21 47/9 47/11 47/16 49/24
debilitating [2] 14/8 44/11
December [4] 22/25 23/1 27/19 27/19
December 8th [4] 22/25 23/1 27/19 27/19
decide [3] 17/4 20/4 35/4
decides [1] 34/4
deciding [2] 33/14 33/25
decision [16] 16/5 17/9 17/12 20/18 22/24 24/15 25/8 32/21 34/2 34/9 34/22 47/8 49/5 50/12 50/12 52/7
decisions [5] 16/13 26/23 35/6 50/19 51/7
declaration [2] 10/10 46/8
declarations [1] 36/14
declined [1] 50/1
defendant [6] 8/18 9/1 14/15 26/14 26/19 38/17
defendant's [1] 17/13
defendants [17] 1/6 1/17 2/5 3/6 3/24 8/1 8/5 8/20 14/17 26/15 26/15 26/22 27/2 27/5 42/5 42/8 45/20
defendants' [1] 13/4
defender [1] 39/11
defender's [1] 43/12
defense [1] 12/5
deliberately [1] 17/12
deliberation [1] 32/12
demonstrate [1] 41/8
denial [2] 14/18 49/21
denied [3] 18/11 22/21 43/14
deny [3] 8/18 17/14 26/6
denying [1] 17/24
Department [2] 9/2 25/25
deprived [1] 26/25
depth [1] 35/16
descends [1] 14/2
describe [2] 8/5 40/1
describes [1] 46/10
deserves [1] 13/17
deserving [1] 13/19
desire [1] 23/11
despite [1] 50/9
detail [1] 46/10
deteriorate [1] 21/1
determine [1] 8/13
devastating [1] 45/19
developments [1] 52/5
dice [1] 16/13
dictate [1] 43/1
dictates [1] 42/12
difference [1] 30/24
different [18] 4/4 5/5 5/17 6/17 13/7 19/20 20/6 24/8 24/14 25/18 27/6 31/23 33/18 37/16 44/8 44/23 45/9 46/13
difficult [3] 19/9 20/20 21/2
difficulties [1] 37/20
difficulty [1] 15/16

D
diligently [1] 15/9
direct [10] 4/7 4/10 11/18 11/21 23/17 26/20 36/2 41/2 46/5 49/20
direct you [1] 4/7
directly [2] 28/17 42/15
disagree [2] 6/25 30/19
disagreeing [1] 23/18
discoveries [1] 31/16
discretion [9] 30/5 31/1 33/7 33/14 36/24 38/15 39/2 40/7 41/4
discriminatory [1] 17/12
discuss [1] 40/19
discussed [1] 30/9
disease [1] 10/12
disposal [1] 13/10
dispositive [1] 8/13
dissenting [1] 30/16
distinction [2] 25/13 31/5
district [11] 1/1 1/1 1/9 1/18 1/21 1/24 27/2 27/3 27/5 39/12 50/1
disturb [1] 28/1
disturbed [1] 13/16
document [3] 39/20 39/22 40/3
domestic [2] 14/6 24/19
done [4] 4/2 14/25 37/22 49/16
door [1] 8/10
double [1] 28/14
doubt [2] 24/16 24/21
down [1] 17/6
downs [1] 20/23
dozen [1] 46/15
Dr. [5] 3/8 9/23 10/3 48/2 48/23
Dr. Davis [3] 9/23 10/3 48/2
Dr. Davis' [1] 48/23
Dr. Mark [1] 3/8
draft [4] 12/3 12/9 12/17 12/19
drawn [1] 25/13
driving [1] 37/5
due [26] 3/19 3/21 6/9 7/20 8/16 15/18 15/21 15/24 16/11 17/1 17/23 18/24 19/3 19/4 21/20 23/10 25/10 30/13 31/10 33/3 35/12 37/25 39/16 42/12 45/6 47/17
duly [2] 7/5 44/15
during [4] 8/21 19/9 20/5 53/7
duties [1] 46/8

E
e-mail [1] 39/11
early [1] 14/25
Eastern [1] 29/17
easy [1] 14/11
EDWARD [2] 1/14 2/5
effects [1] 45/19
egregious [1] 35/3
eight [1] 37/4
either [6] 5/6 5/18 6/20 24/13 47/2 52/2
electing [1] 17/14
element [1] 15/20
else [5] 20/17 28/21 28/23 40/23 51/23
emergency [1] 11/4
encompasses [1] 40/5
encourage [6] 50/23 51/5 51/5 51/9 51/16 51/19
encouraged [1] 18/9
end [2] 23/21 24/12
enforceable [1] 26/3
enough [1] 10/13
ensure [2] 4/14 6/10
ensuring [2] 7/1 7/9
enter [2] 8/4 49/12
entirely [3] 8/14 27/8 44/19
entitled [4] 35/25 36/8 36/8 53/5
entitled to [1] 36/8
equivalent [1] 26/16
era [1] 47/11
essence [2] 38/20 39/8
essential [1] 29/22
essentially [4] 5/6 35/24 36/20 38/22
established [2] 25/25 44/2
et [2] 1/5 2/3
evaluating [1] 7/8
even [21] 3/17 6/2 9/23 10/5 11/20 15/10 15/25 16/15 16/22 16/23 18/20 19/15 21/19 25/21 30/15 31/17 31/24 34/6 36/2 36/8 37/5
even if [1] 10/5
event [1] 41/5
everyone [3] 2/11 2/14 7/10
evidence [5] 13/11 13/13 13/13 13/14 40/4
evolving [1] 12/6
exact [2] 36/10 44/7
exactly [2] 13/4 50/8
example [9] 7/17 11/2 21/9 31/13 32/20 33/23 33/25 40/15 44/9
exclusive [6] 30/5 31/1 31/15 31/18 32/11 36/24
execute [1] 44/10
executed [4] 5/7 5/18 6/22 27/20
execution [21] 4/22 8/21 8/24 9/4 13/5 13/15 13/24 14/2 14/4 14/10 14/19 16/24 20/24 22/1 23/2 23/11 27/4 27/15 27/16 27/22 41/6
executions [2] 28/6 41/24
executive [13] 3/5 8/14 13/10 13/13 33/5 33/5 38/14 43/2 47/7 50/20 51/2 51/5 51/8
Executive's [2] 8/11 17/15
exercise [5] 8/11 25/9 33/7 33/13 40/7
exercises [1] 41/4
exercising [1] 32/2
exhibit [2] 46/6 46/6
Exhibit 9 [1] 46/6
exhibits [1] 40/4
exist [2] 22/14 36/12
existing [1] 23/14
exists [4] 7/23 7/24 20/1 38/5
expansive [1] 30/15
expediency [1] 23/11
experience [7] 3/24 4/24 14/1 15/8 21/11 37/5 47/19
experienced [4] 14/23 19/22 19/23 20/23
explain [1] 34/7
explained [1] 32/10
expressly [1] 49/2
extension [5] 39/8 47/22 48/16 50/17 51/2
extensive [1] 13/18
extent [2] 27/7 37/15
extraordinary [3] 14/12 42/18 50/25
extreme [1] 34/19
extremely [2] 33/9 33/18

F
facing [2] 4/21 23/2
fact [8] 13/12 17/20 18/9 31/5 39/18 39/19 45/8 45/9
factors [2] 32/22 32/24
facts [5] 12/6 12/7 13/10 13/11 37/9
failed [2] 32/21 44/12
failing [1] 45/17
failsafe [3] 3/4 6/8 43/9
fair [3] 6/24 7/10 7/10
fairly [1] 42/5
familiarity [1] 40/18
Family [1] 13/23
far [2] 12/22 36/11
fashion [2] 42/17 43/1
fatigue [1] 11/8
fault [2] 10/18 38/23
favor [2] 23/14 46/24
fear [1] 34/16
federal [12] 4/20 6/5 14/17 25/21 25/24 28/7 28/15 30/20 33/5 39/11 43/12 50/13
Federalist [2] 32/9 34/15
feedback [1] 2/16
feeling [2] 10/14 10/15
few [5] 12/12 17/20 21/7 36/25 44/7
field [1] 45/23
Fifth [6] 3/19 19/10 22/12 22/13 40/10 42/15
fight [1] 14/6
figuring [1] 19/10
file [24] 9/11 9/11 9/16 9/18 11/19 11/21 12/2 18/4 18/8 18/9 18/16 18/20 20/8 20/15 21/13 24/12 24/17 36/21 42/14 42/21 49/25 51/10 51/16 52/5
filed [18] 7/5 9/9 9/15 9/24 10/1 11/14 11/20 11/20 11/20 19/5 19/20 24/10 39/20 39/23 43/16 44/6 50/4 50/21
filing [2] 3/17 19/22
finally [1] 2/17
find [1] 50/1

## F

fine [2] 27/17 27/18
first [4] 8/17 30/10 35/24 37/1
five [5] 15/20 30/17 32/22 32/24 47/10
flip [1] 17/11
flipping [1] 17/18
Focusing [1] 22/19
folks [2] 45/24 47/12
footnote [2] 30/21 30/21
For the Defendants [1] 1/17
Ford [1] 47/4
foregoing [1] 53/4
forever [1] 51/21
forte [1] 48/14
forth [3] 5/24 18/18 24/21
forthcoming [1] 40/21
forward [7] 13/14 13/21 13/23 16/24 17/2 22/3 25/6
forwarded [1] 43/15
four [10] 10/4 10/6 10/6 10/8 14/18 30/14 48/2 48/9 48/11 48/25
frankly [1] 10/12
freeze [1] 25/15
frustrated [1] 23/8
full [3] 20/2 21/20 36/11
fully [1] 10/4
functionally [4] 3/10 15/14 20/8 42/20
functioning [2] 3/10 47/5
funded [1] 38/18
funding [3] 5/5 6/4 6/16
further [2] 49/7 49/10

## G

general [2] 16/2 50/19
generis [1] 42/19
given [11] 14/16 14/18 14/20 14/21 14/22 15/6 15/7 16/12 18/14 33/4 50/10
giving [1] 41/16
global [2] 8/21 42/22
goes [1] 17/9
good [6] 2/8 2/22 5/14 20/12 45/10 52/8
governed [1] 25/23
governing [1] 46/11
government [9] 9/25 12/13 15/11 28/8 28/22 29/5 29/10 30/2 52/2
Government's [2] 12/4 13/3
governors [1] 47/11
grace [2] 13/9 38/14
grant [13] 17/14 25/3 25/5 25/9 26/6 33/14 40/7 41/4 46/20 47/25 49/5 51/3 51/12
granted [8] 22/13 30/4 31/18 34/12 36/23 47/11 47/22 48/4
granting [1] 47/9
gravamen [2] 26/24 26/24
great [1] 14/25
grounds [3] 34/4 35/20 47/9
guarantee [1] 6/11
guess [10] 10/9 18/2 21/23 22/19 23/13 31/4 31/10 45/3 48/7 48/13
guided [1] 23/4
guidelines [1] 46/9

## H

habeas [9] 4/20 6/5 9/21 13/8 26/16 28/1 40/13 44/22 45/2
half [1] 14/18
Hall [1] 1/13
Hamilton [2] 32/10 34/18
hand [6] 18/10 18/12 19/7 22/23 24/1 24/7
handset [1] 2/16
happened [2] 19/5 19/5
happens [8] 7/4 8/2 8/3 8/5 13/5 17/10 17/19 28/5
happy [5] 11/23 27/18 28/22 29/13 30/7
Harbison [6] 6/1 6/3 6/4 23/17 23/20 23/20
hard [3] 2/10 10/11 15/9
harder [3] 21/24 22/18 51/13
Harwell [4] 9/16 10/2 47/13 50/8
hate [1] 12/1
have you [1] 3/25
head [1] 6/18
health [3] 12/8 20/25 47/3
hear [14] 2/17 5/19 6/21 7/19 16/4 17/5 25/4 27/10 27/11 27/17 27/18 28/22 28/22 30/7
hear from [1] 27/10
heard [3] 16/3 16/4 19/6
hearing [7] 1/8 7/18 13/14 13/17 40/3 40/4 53/7
heightened [1] 10/25
held [2] 3/20 41/23
helpful [1] 28/20
Henry [3] 9/16 43/12 47/13
Henry's [2] 10/2 11/2
here's [1] 15/16
highly [4] 5/4 5/14 22/14 45/23
himself [1] 20/2
hindrance [1] 19/16
hinged [1] 6/3
hints [1] 16/12
historic [4] 3/4 6/8 6/10 43/9
historically [1] 47/8
histories [1] 10/24
history [4] 13/18 24/19 24/21 45/16
holding [1] 6/2
Holiday [1] 49/22
home [2] 21/12 24/22
honed [1] 37/11
Honor [56]
Honor's [1] 35/2
HONORABLE [1] 1/9
HOOK [3] 1/23 53/3 53/14
hope [2] 23/25 44/15
hopefully [1] 50/20
hour [1] 14/13
hours [2] 11/5 21/7
hovering [1] 11/3
Hughes [1] 1/13
human [10] 18/21 18/22 39/25 43/22 44/1 44/1 44/3 44/4 44/8 44/16
humanly [1] 36/15
hundreds [1] 21/7
hypothetical [1] 35/2

## I

idea [2] 38/3 47/15
identified [1] 34/20
II [1] 31/2
III [1] 1/20
ill [5] 3/14 10/21 21/6 24/14 24/22
illness [7] 10/22 11/10 14/8 20/22 24/21 44/11 51/1
imagine [3] 7/25 8/2 50/7
immediately [2] 20/23 21/1
impact [1] 23/18
impairment [1] 10/3
impermissible [1] 17/14
impinge [1] 8/11
implies [1] 23/19
important [9] 5/3 11/24 16/5 23/3 32/11 38/3 38/12 40/2 49/16
impose [1] 34/1
imposed [1] 15/11
improper [1] 16/13
imprudent [1] 16/24
incapacitated [8] 3/11 9/22 15/15 20/8 35/17 42/21 43/13 48/5
incarcerated [1] 26/19
inclined [1] 49/12
including [4] 4/24 5/23 16/19 44/9
inconsistent [1] 42/12
incredibly [1] 2/9
incriminating [1] 19/12
indigent [1] 3/13
individual [1] 5/7
individuals [4] 4/3 5/3 5/15 5/20
ineffective [1] 44/14
information [3] 13/22 25/4 40/5
informed [1] 29/16
injection [2] 28/9 28/15
injunction [2] 25/14 47/25
injunctive [1] 43/1
inmate [1] 50/2
inmate's [1] 49/24
inside [1] 17/19
insist [1] 26/7
instead [1] 38/24
instructed [1] 11/4
intent [2] 4/14 29/18
intentionally [1] 21/4
Inter [7] 18/22 39/24 43/21 43/25 44/6 44/16 44/25
Inter-American [7] 18/22 39/24 43/21 43/25 44/6 44/16 44/25
interest [1] 6/9
interfere [3] 24/6 41/3 50/11
internal [2] 25/24 43/2
international [5] 18/21 37/15 39/21 43/20 45/1
interpreting [1] 17/20
interrupt [1] 4/1

I

interrupted [1] 12/25
intertwined [1] 6/9
interview [6] 15/2 19/6 19/9 20/1 20/6 24/5
into [4] 11/10 14/13 34/6 34/8
introduce [1] 2/18
intrude [1] 34/8
inventors [1] 31/15
invited [1] 9/10
involve [2] 8/5 33/7
involved [5] 9/3 14/5 16/19 27/3 28/9
involves [3] 10/3 42/20 46/23
involving [3] 22/15 42/13 46/14
issue [6] 8/15 9/6 25/17 28/17 31/6 47/4
issued [1] 49/22
issues [1] 36/25
Ithaca [1] 1/13

J

JEFF [3] 1/23 53/3 53/14
job [2] 20/12 24/23
JOHNNY [2] 1/20 2/6
joining [1] 2/7
JOSEPH [2] 1/11 2/4
judge [4] 1/9 16/25 30/20 30/21
Judge's [1] 2/12
judicial [1] 35/5
judiciary [1] 50/18
jurisdiction [5] 9/7 25/14 25/19 26/13 26/18
juror [1] 13/14
justice [12] 8/17 9/2 15/19 15/22 25/25 30/11 30/15 35/11 36/18 49/22 50/5 50/9
Justices [1] 15/19

K

Kansas [1] 1/19
kick [2] 2/24 29/12
killed [2] 42/23 46/16
killer [1] 46/15
killing [1] 42/23
kind [3] 17/6 34/17 46/18
kinds [1] 44/23
knew [1] 20/24
knowledge [2] 35/16 37/8

L

lack [2] 29/23 37/19
Lamberth [1] 30/21
language [6] 4/13 5/1 6/7 17/9 17/17 17/21
large [1] 37/25
larger [1] 38/12
last [2] 21/7 47/10
later [3] 10/1 15/3 21/21
law [8] 1/12 1/15 13/12 23/14 25/21 31/22 45/1 45/25
lawyer [6] 19/8 19/14 24/10 38/18 38/19 42/6
lawyer's [1] 23/18
lawyers [25] 3/7 3/16 4/4 4/23 8/9 15/8 16/7 18/15 18/15 19/17 20/11 20/13 20/20 20/21 24/17 25/7 35/15 38/22 43/13 47/6 49/15 49/19 49/25 50/4 51/1
lays [1] 46/8
learned [2] 4/16 38/5
least [6] 11/5 14/25 19/6 21/13 37/4 47/10
legal [5] 43/9 44/24 44/25 45/5 46/4
legislature [1] 31/9
less [3] 31/5 35/3 37/8
lesser [1] 38/10
lethal [2] 28/9 28/15
level [12] 15/24 17/1 19/3 21/11 30/12 33/3 33/5 33/5 33/6 33/17 35/12 38/17
lies [2] 34/23 35/2
life [2] 9/7 44/13
light [1] 50/24
likely [2] 46/2 50/5
limit [2] 34/16 34/19
limitation [1] 23/1
limitations [2] 16/15 53/9
limited [4] 7/14 23/8 31/15 33/10
line [1] 35/15
LISA [5] 1/2 2/2 3/2 3/3 8/7
litigation [4] 37/6 37/10 38/14 41/24
litigators [1] 19/24
little [5] 5/5 5/17 10/11 14/16 33/8
lives [1] 45/25
local [1] 37/7
located [2] 27/1 27/2
long [5] 16/20 21/10 34/2 37/17 45/15
longer [1] 21/10
look [12] 8/1 10/9 21/12 21/23 22/16 22/18 23/20 32/25 40/21 50/15 50/24 51/6
looked [1] 31/6
looking [1] 17/8
lost [2] 48/4 51/21
lot [3] 15/8 16/14 22/18

M

mail [1] 39/11
main [1] 28/13
makers [1] 47/8
making [1] 16/4
manage [1] 41/3
mandated [5] 3/22 5/6 5/17 5/19 5/21
mandating [1] 4/4
manner [2] 22/23 34/8
many [3] 20/1 37/22 39/23
MARGULIES [2] 1/11 2/5
MARIE [2] 1/2 2/3
Mark [1] 3/8
material [1] 37/9
materials [2] 36/11 36/13
math [1] 48/14
matter [14] 3/18 8/13 13/24 15/13 19/4 19/25 25/10 29/15 32/3 38/14 45/6 45/7 46/21 53/6
matters [1] 51/17
may [21] 5/13 16/20 16/21 16/22 18/4 18/6 19/15 21/11 22/4 22/6 29/7 33/17 34/5 34/9 41/15 41/24 45/11 50/20 51/16 51/18 51/18
maybe [2] 36/8 44/19
mean [22] 5/12 6/15 7/16 10/11 12/15 15/16 17/5 18/2 18/3 19/6 20/17 21/22 27/17 28/15 31/4 31/5 32/17 34/13 45/14 45/22 47/23 49/4
meaningful [8] 7/2 23/22 23/24 24/2 24/4 37/19 43/7 47/17
meaningfully [1] 43/7
meaningless [1] 27/16
means [3] 6/19 6/20 16/12
meant [1] 12/2
meet [2] 15/11 15/15
members [1] 13/23
memo [1] 46/7
memory [2] 11/7 28/17
mental [10] 3/9 12/8 14/8 14/12 20/22 20/25 20/25 24/21 44/11 47/3
mentally [3] 3/14 21/6 24/13
mention [1] 26/4
mercy [1] 13/19
merit [1] 7/9
merits [3] 25/16 41/9 46/4
Middle [1] 39/12
midnight [1] 11/22
midst [1] 42/22
might [5] 15/25 19/11 24/3 34/12 51/3
mind [4] 13/16 16/17 17/6 41/16
minimal [12] 3/17 5/24 15/18 15/24 16/11 17/1 17/17 17/23 23/6 33/3 33/18 35/12
minimum [1] 47/19
minute [6] 19/2 22/7 29/1 41/16 45/25 48/18
misapprehends [1] 12/13
misperceptions [1] 13/2
miss [1] 21/13
Missouri [1] 1/18
mistake [1] 29/23
Mitchell [2] 30/20 30/22
MO [1] 1/19
mockery [1] 18/23
modern [1] 47/11
moment [3] 22/19 24/25 35/18
money [2] 4/2 5/16
monitoring [1] 47/2
MONTGOMERY [29] 1/2 2/3 3/2 3/3 3/12 8/8 9/9 10/18 13/6 13/20 14/16 16/18 18/23 20/15 20/19 22/20 24/12 35/24 37/16 38/7 39/18 41/6 42/6 42/9 43/4 44/12 49/17 51/9 51/24
Montgomery's [18] 3/6 3/18 8/16 8/20 8/23 9/4 9/7 9/24 12/7 14/3 21/3 26/7 26/18 27/11 38/20 39/14 42/18 47/3
month [1] 15/4

M

months [2] 10/15 12/5
moot [1] 27/20
more [10] 3/15 11/11 17/5 19/15 25/4 30/15 40/1 44/21 45/1 50/6
Moreover [1] 37/11
MOSS [1] 1/9
most [8] 3/17 5/4 19/23 22/24 28/6 28/8 37/11 46/2
motion [2] 1/8 46/7
motivating [1] 45/11
move [3] 16/24 17/2 25/6
Mr. [3] 29/9 43/12 49/10
Mr. Henry [1] 43/12
Mr. Simpson [2] 29/9 49/10
Mrs. [34] 3/6 3/12 3/18 8/16 8/20 8/23 9/4 9/7 9/9 9/24 10/18 12/7 13/6 13/20 14/3 14/16 16/18 18/23 20/15 20/19 21/3 22/20 24/12 26/7 26/18 27/11 42/6 42/9 42/18 43/4 44/12 47/3 51/9 51/24
Mrs. Montgomery [18] 3/12 9/9 10/18 13/6 13/20 14/16 16/18 18/23 20/15 20/19 22/20 24/12 42/6 42/9 43/4 44/12 51/9 51/24
Mrs. Montgomery's [16] 3/6 3/18 8/16 8/20 8/23 9/4 9/7 9/24 12/7 14/3 21/3 26/7 26/18 27/11 42/18 47/3
Ms. [22] 2/20 9/16 9/16 10/2 10/2 11/2 21/9 21/12 35/24 37/1 37/16 38/6 38/7 38/20 39/14 39/18 41/6 47/13 47/13 49/14 49/17 50/8
Ms. Babcock [1] 2/20
Ms. Harwell [4] 9/16 10/2 47/13 50/8
Ms. Henry [2] 9/16 47/13
Ms. Henry's [2] 10/2 11/2
Ms. Montgomery [6] 35/24 37/16 38/7 39/18 41/6 49/17
Ms. Montgomery's [2] 38/20 39/14
Ms. Nouri [5] 21/9 21/12 37/1 38/6 49/14
much [10] 3/1 13/12 13/25 15/13 29/5 43/18 44/21 47/21 50/14 50/19
multiple [1] 37/14
murder [1] 46/17
murdered [1] 46/15
must [2] 5/10 6/20
mute [1] 2/14
myself [1] 34/21

N

name [1] 2/18
narrow [2] 6/2 42/17
nature [2] 29/22 50/19
nearly [1] 38/16
necessarily [1] 18/3
necessary [4] 4/5 35/4 35/16 47/19
need [10] 4/22 10/4 17/2 28/14 36/13 38/18 42/6 45/7 45/20 51/13
needed [3] 16/8 39/13 47/21
Nelson [1] 41/25
neurologic [1] 10/3
new [3] 13/22 38/24 50/3
nights [1] 14/13
nobody [2] 2/14 43/24
none [5] 14/9 17/19 21/4 40/14 46/19
nonexistent [1] 33/20
North [1] 1/15
note [2] 8/25 53/7
noted [2] 30/20 50/5
notice [2] 11/19 52/5
notify [1] 11/22
notion [1] 5/2
Nouri [5] 21/9 21/12 37/1 38/6 49/14
November [3] 1/5 14/25 37/24
November 5th [1] 37/24
number [6] 18/15 32/9 34/15 36/10 38/7 44/8
numerous [3] 40/3 40/12 49/15
NW [2] 1/21 1/24
NY [1] 1/13

O

o'clock [1] 12/2
O'Connor [1] 8/17
O'Connor's [4] 15/22 17/22 30/11 35/11
obligations [1] 20/10
obviously [5] 6/4 31/19 45/22 51/4 51/17
occur [1] 40/15
occurred [2] 5/19 53/7
off [5] 2/24 17/5 29/12 30/8 37/20
office [12] 1/17 1/20 5/10 5/19 6/20 7/17 9/10 11/25 25/25 29/16 36/22 43/12
official [3] 1/23 39/13 53/3
Ohio [1] 19/24
old [1] 46/25
once [4] 7/4 14/2 17/10 17/19
one [33] 5/7 6/18 7/10 7/10 11/15 11/19 11/20 12/16 14/24 18/10 18/12 18/15 19/23 21/15 22/23 23/2 23/2 24/1 24/7 29/1 29/15 29/25 30/21 31/11 33/24 34/3 35/8 36/13 38/2 38/19 39/15 42/10 45/22
ones [8] 8/10 8/20 8/22 10/19 18/17 27/3 46/3 51/7
ongoing [1] 50/17
only [12] 3/6 8/10 9/21 18/17 26/5 28/3 34/19 35/15 40/25 42/1 49/20 50/7
onset [4] 10/7 10/8 48/3 48/11
open [1] 8/10
opine [1] 39/18
opined [1] 10/3
opinion [10] 10/23 15/22 17/22 23/21 30/11 30/15 30/16 30/19 30/22 35/11
opportunities [1] 49/16
opportunity [6] 4/15 5/8 5/10 7/10 51/10 51/20
order [5] 2/9 2/12 2/13 9/6 36/21
ordinary [1] 47/12
organization [1] 44/2
otherwise [6] 6/12 18/19 19/12 26/16 32/19 33/16
ought [5] 26/19 32/14 32/15 34/6 36/23
out [13] 9/4 14/9 19/10 19/25 22/1 23/14 27/4 28/7 28/18 35/1 36/15 45/24 46/8
outpouring [1] 14/5
outside [4] 8/8 27/2 35/6 36/2
over [3] 21/7 42/23 47/10
oversight [1] 32/16
overwhelming [1] 11/8
own [2] 31/19 38/23
oxygen [1] 11/3

P

p.m [3] 1/6 29/17 52/9
page [1] 40/2
pandemic [3] 8/21 42/22 53/8
paper [1] 3/16
pardon [22] 5/9 5/19 6/20 6/23 7/17 9/10 11/25 16/1 24/18 24/20 25/2 25/9 26/1 27/11 29/16 31/2 32/2 32/10 32/14 34/16 36/22 50/23
pardon attorney [1] 25/2
pardons [2] 9/2 43/14
parole [1] 19/25
part [1] 12/7
partial [1] 31/8
participate [1] 20/4
particular [8] 4/21 31/22 32/4 32/13 34/11 34/11 37/21 49/19
particularly [2] 14/14 35/5
parties [1] 51/23
pass [2] 31/22 51/21
passage [1] 37/11
passing [1] 4/14
patents [4] 31/19 31/20 31/23 31/24
pause [9] 7/12 22/10 29/3 36/4 36/5 41/20 48/18 48/21 49/18
peak [1] 8/21
penalty [4] 4/6 16/21 16/21 47/11
people [6] 15/9 16/3 31/22 31/23 34/10 42/24
perhaps [5] 4/4 16/12 18/7 35/3 45/6
period [2] 16/20 37/17
permissible [2] 2/12 28/4
person [10] 3/14 4/22 5/23 16/6 24/9

P

person... [5] 24/10 24/10 38/17 46/21 46/25
person's [1] 17/19
personal [1] 13/25
perspectives [1] 36/15
petition [60]
petitions [3] 7/7 14/19 43/25
phone [1] 28/25
physical [2] 3/10 14/12
physician [2] 3/8 10/23
place [3] 10/20 17/8 26/23
placeholder [5] 9/10 9/23 11/14 21/14 21/19
plaintiff [8] 1/3 1/11 2/21 3/2 14/15 35/14 40/10 41/6
plaintiff's [1] 32/18
plaintiffs [2] 2/4 28/4
play [4] 16/16 33/8 33/13 46/12
pleadings [1] 8/5
please [7] 2/16 2/24 22/5 22/8 41/18 52/5 53/7
plenary [1] 20/3
plenty [1] 51/15
PLLC [1] 1/15
plus [1] 36/12
point [15] 11/8 12/10 14/3 21/22 22/20 28/11 29/17 31/4 34/15 36/5 40/2 40/16 42/15 45/3 48/5
police [1] 25/20
policy [2] 5/13 32/3
poor [1] 32/21
portion [2] 44/18 44/20
position [5] 12/4 18/13 23/10 42/11 49/6
possess [1] 3/23
possibility [1] 41/8
possible [3] 15/13 35/19 36/15
possibly [2] 16/4 52/6
post [2] 36/1 37/4
post-conviction [2] 36/1 37/4
potential [1] 4/22
power [21] 8/11 8/12 8/23 9/5 17/15 25/1 25/2 25/2 25/3 25/9 25/17 26/5 26/6 31/2 31/9 31/13 32/3 32/15 33/12 33/19 34/16
power's [1] 32/10
powers [4] 31/11 31/25 33/22 35/1
practiced [1] 45/25
Precisely [1] 26/4
predict [1] 10/22
preexisting [1] 10/24
prefer [2] 29/14 50/19
preliminary [5] 8/15 9/6 20/6 25/14 47/25
premise [1] 33/9
preparation [2] 13/25 50/6
prepare [4] 12/5 15/4 35/16 43/5
prepared [3] 7/5 44/10 51/3
preparing [1] 14/14
present [12] 4/15 18/6 18/7 19/8 19/16 22/17 24/6 32/8 35/19 43/5 47/7 50/25
presentation [1] 7/18
presented [1] 13/11
preserve [2] 9/6 25/14
president [34] 6/20 7/5 9/1 9/1 16/1 17/4 25/1 25/3 25/5 25/6 25/8 25/17 30/5 31/18 32/2 32/11 32/20 32/21 32/23 33/13 33/15 34/7 34/10 35/21 36/24 38/15 40/7 41/4 43/16 45/11 45/12 46/2 46/3 50/24
President's [5] 24/18 24/20 26/5 39/1 41/3
presidential [1] 25/1
pretty [3] 15/23 16/11 45/10
primary [1] 34/16
principal [1] 27/4
prison [1] 46/17
prisoner [9] 4/21 6/10 7/2 19/20 19/21 20/2 20/4 28/16 47/16
prisoners [1] 3/21
privy [1] 21/17
probably [2] 46/19 46/20
probe [1] 37/17
problem [5] 8/22 13/1 21/18 34/5 38/19
problematic [2] 34/12 34/14
problems [2] 9/25 11/7
procedural [2] 17/17 23/5
procedures [2] 7/7 46/11
proceeding [6] 24/1 36/1 36/1 37/7 40/6 50/14
proceedings [16] 2/13 4/20 5/23 6/5 6/6 22/10 29/3 30/20 30/23 30/25 37/20 38/13 41/20 48/21 52/9 53/5
process [63]
processes [2] 25/21 43/3
producing [1] 2/8
product [1] 37/23
professional [2] 20/10 46/10
Professor [4] 40/1 40/24 41/13 49/7
progress [1] 31/14
promote [1] 31/13
proposition [6] 15/20 23/15 28/12 33/12 35/9 35/10
protect [2] 9/7 44/12
protection [2] 17/1 30/13
protections [1] 23/6
provide [3] 4/3 5/10 51/15
provided [7] 3/4 5/4 5/8 5/16 22/22 38/1 44/14
providing [2] 6/16 26/8
provision [3] 4/25 6/12 31/7
Public [1] 34/22
purposes [6] 15/23 22/17 44/19 45/8 45/18 45/19
pursuant [4] 9/22 28/16 41/25 43/5
pushing [1] 33/11
put [15] 7/20 16/8 17/3 17/5 19/1 19/9 22/17 22/18 23/8 23/10 23/12 26/15 36/13 36/17 46/25
putting [2] 15/1 32/1

Q

qualifications [2] 4/23 38/15
qualified [23] 3/7 4/19 5/4 5/8 5/10 5/15 6/21 9/21 16/21 18/15 18/17 19/18 22/2 27/12 36/9 37/3 38/4 38/8 43/4 45/7 45/13 45/16 45/21
quality [1] 46/20
quickly [1] 51/14
quite [4] 10/12 10/14 27/8 35/23
quo [1] 25/15
quote [2] 4/13 4/14

R

race [8] 16/13 17/13 31/23 31/23 32/4 34/5 34/10 34/11
raise [5] 32/7 45/5 45/17 51/5 51/23
raised [3] 44/24 45/3 51/3
Ramirez [5] 22/12 40/9 40/11 40/16 42/13
RANDOLPH [1] 1/9
raped [1] 46/15
rapport [1] 21/8
rather [2] 28/7 44/22
reach [1] 35/13
read [5] 5/1 15/17 24/2 33/2 48/24
reading [2] 41/11 48/23
ready [1] 45/2
real [2] 27/14 27/21
reality [1] 47/6
really [15] 6/13 10/13 13/16 19/9 25/6 26/16 32/21 34/25 35/16 35/19 44/23 45/9 48/15 51/17 51/19
reason [7] 5/16 8/9 14/23 27/25 34/2 36/20 45/13
reasonable [2] 49/13 49/18
reasoning [1] 34/8
reasons [4] 30/23 37/12 37/12 37/16
rebroadcast [1] 2/13
rebuttal [1] 41/14
received [1] 17/10
receives [1] 7/5
recognize [1] 14/7
recognized [3] 4/19 6/7 8/17
recommend [1] 48/25
recommendations [1] 48/2
record [3] 2/12 2/19 46/1
recover [2] 10/5 48/10
recovery [1] 48/25
refer [1] 32/9
references [1] 40/3
referring [1] 50/7
refused [1] 49/25
regarding [1] 49/21
regulate [1] 7/6
regulating [3] 6/23 7/4 7/13

**R**

regulation [1] 32/4
regulations [4] 25/24 25/24 26/2 26/10
reinforce [1] 41/7
reins [1] 37/21
reject [1] 47/15
relationship [1] 21/8
relative [1] 13/19
relevant [2] 27/1 47/3
reliably [1] 29/16
relied [1] 47/9
relief [13] 8/15 9/6 27/7 27/9 27/14 27/16 27/21 30/2 42/17 43/1 51/13 51/17 51/18
religion [1] 34/11
relinquishing [2] 21/4 21/4
rely [1] 19/17
remand [1] 32/24
remedy [1] 6/11
remember [3] 28/19 36/10 44/7
remind [1] 2/11
reminded [1] 22/12
remotely [3] 49/18 53/5 53/9
repeated [2] 37/13 37/14
reply [3] 4/13 22/13 42/7
reported [1] 53/5
Reporter [3] 1/23 1/23 53/3
reporting [1] 53/9
represent [8] 4/5 5/9 5/11 5/13 5/22 6/5 18/23 38/7
representation [2] 4/3 16/7
represented [5] 3/23 4/23 19/21 42/6 42/10
representing [2] 5/15 13/6
represents [1] 38/18
reprieve [21] 25/3 25/5 25/9 25/13 26/6 30/3 30/4 31/2 36/21 38/25 39/1 39/3 39/6 39/8 40/8 41/5 43/12 43/14 47/22 50/21 51/10
reprieves [1] 25/17
request [7] 30/3 39/7 39/13 40/6 43/11 43/14 43/15
required [2] 12/23 36/7
requirement [2] 6/3 38/5
requirements [2] 5/24 38/10
requiring [2] 4/18 34/7
requisite [1] 3/24
rescheduling [1] 8/23
reserve [1] 29/4
reside [1] 27/5
respect [8] 17/7 22/24 27/8 27/9 30/13 36/12 50/16 51/1
respective [1] 31/16
respond [2] 28/22 40/24
response [3] 8/2 13/4 40/9
rest [1] 51/12
restraint [1] 35/5
rests [1] 8/13
result [1] 13/3
review [5] 26/17 43/2 44/3 45/18 51/15
ride [1] 37/9
right [45] 3/14 3/21 3/22 4/2 4/12 6/13 6/17 6/19 6/19 7/2 7/15 11/12 15/1 18/24 18/24 20/5 20/18 21/4 21/9 23/21 23/23 24/11 26/14 26/15 27/13 27/23 27/24 28/19 30/16 31/15 31/18 31/20 31/24 32/17 36/2 36/6 37/19 39/25 42/3 42/14 46/22 47/17 47/17 48/13 49/14
rights [18] 3/4 3/18 8/16 9/8 18/21 18/22 19/11 26/3 26/8 31/24 39/25 43/22 44/1 44/1 44/3 44/4 44/8 44/17
rigorous [2] 35/23 38/16
risk [1] 10/25
role [8] 16/15 25/10 31/8 32/19 33/8 33/9 33/13 33/25
rolling [1] 16/13
room [6] 8/3 8/4 8/6 8/8 11/4 17/19
Roper [1] 4/11
roughly [1] 48/6
row [1] 49/24
rules [2] 2/11 45/15

**S**

S.Ct [1] 42/2
safeguard [1] 8/15
safeguards [2] 17/18 17/23
same [7] 21/11 38/5 38/9 38/16 40/5 47/13 50/14
SANDRA [3] 1/11 2/4 3/2
satisfy [1] 41/7
saw [1] 49/1
saying [10] 5/6 5/17 6/16 7/16 14/21 31/22 32/4 32/20 33/19 48/24
scheduled [1] 8/20
scheduling [1] 9/3
School [1] 1/12
science [1] 31/14
scrambling [1] 15/11
scrutiny [2] 33/18 35/12
second [3] 7/12 17/21 36/5
section [4] 22/15 41/25 42/13 50/3
securing [1] 31/14
seek [1] 36/21
seeking [7] 7/6 27/7 27/14 27/21 27/25 28/1 38/24
seeks [3] 39/18 39/19 41/6
semester [1] 44/5
sense [2] 6/13 7/14
sentence [2] 28/2 29/25
sentenced [1] 7/2
sentences [1] 47/10
separation [1] 35/1
serial [1] 46/15
serious [1] 32/7
seriously [2] 50/24 51/6
serves [1] 28/17
set [10] 5/24 13/5 13/15 14/2 14/10 18/18 19/25 20/24 26/9 45/9
setting [2] 14/4 14/19
several [1] 13/7
severe [4] 3/9 10/2 10/25 44/11
severely [2] 3/14 21/5
sex [3] 13/21 14/7 17/13
sexual [3] 13/18 14/6 44/13
shake [1] 7/10
shall [2] 5/22 27/10
Shank [1] 19/23
shared [2] 13/22 31/9
sheet [1] 3/15
short [4] 2/9 15/7 50/16 51/2
showed [1] 46/1
sick [2] 15/14 21/12
side [1] 19/14
significant [2] 16/5 41/8
similarly [1] 14/17
simply [9] 3/12 11/8 19/24 22/20 33/19 41/9 42/11 47/14 49/18
SIMPSON [4] 1/17 2/6 29/9 49/10
single [1] 3/16
sitting [1] 19/14
situated [1] 14/17
situation [6] 12/1 19/10 20/7 34/19 49/24 50/14
six [1] 12/5
skeleton [1] 12/19
skeptical [1] 37/23
skill [2] 3/24 45/9
skills [1] 47/19
Skinner [1] 42/1
sleepless [1] 14/13
slightly [1] 42/8
slim [1] 46/19
smart [1] 46/25
snide [1] 42/9
sole [5] 31/24 33/12 33/19 33/22 41/4
solely [1] 31/11
solve [4] 8/23 9/24 21/18 21/20
somebody [9] 20/17 20/20 21/5 40/7 40/13 44/10 45/10 46/15 46/17
somehow [1] 21/3
someone [6] 5/11 5/18 6/21 23/10 29/23 36/21
sometime [1] 15/3
somewhat [1] 4/4
soon [3] 11/19 52/5 52/7
sophisticated [1] 46/12
sorry [13] 4/1 7/18 12/14 12/25 13/3 14/15 22/6 22/25 28/25 30/21 34/17 44/5 48/14
sort [6] 6/19 18/9 19/2 21/25 38/9 40/21
sorts [1] 35/6
Sotomayor [3] 49/22 50/5 50/9
sought [1] 30/2
sounds [1] 6/22
speak [2] 2/18 13/25
speaking [8] 2/15 2/16 2/19 2/20 17/9 26/12 29/10 38/2
specialized [1] 45/23
specific [2] 32/13 40/16
specifically [1] 30/22
specified [1] 10/10
spent [1] 21/7

S
stake [1] 26/1
stakes [1] 45/22
standard [5] 16/9 16/10 16/11 16/18 35/23
standards [1] 46/11
standing [2] 2/12 8/8
standstill [1] 49/14
start [3] 15/3 29/13 33/8
started [1] 15/1
starting [1] 15/2
state [9] 6/6 8/18 28/7 28/16 30/22 30/25 31/8 33/6 50/13
stated [2] 37/1 49/2
statement [2] 42/5 49/21
statements [1] 37/3
states [12] 1/1 1/9 16/2 20/1 22/1 28/6 30/5 31/2 44/3 44/4 44/9 44/11
status [4] 12/3 20/25 25/15 39/3
statute [5] 7/21 7/23 19/1 31/6 45/7
statutory [8] 6/3 9/8 18/24 20/9 26/8 41/1 41/2 47/17
stay [8] 14/9 22/13 27/15 27/15 27/21 41/6 41/24 49/12
stays [1] 11/4
stem [1] 3/18
step [1] 20/21
Stephens [1] 49/23
steps [1] 44/12
Stevens [1] 15/19
Stevens' [1] 30/15
still [4] 10/15 46/21 46/21 48/10
strategic [1] 24/15
Street [3] 1/15 1/18 1/21
stricken [2] 3/7 15/12
strong [1] 30/23
strongly [1] 30/2
structural [3] 34/16 35/1 35/6
struggle [2] 15/25 21/23
struggled [1] 34/21
student [1] 18/20
students [3] 42/10 44/4 47/1
stunning [1] 42/5
subject [3] 32/12 32/14 53/8
submission [1] 46/11
submissions [1] 29/18
submit [1] 47/20
submits [1] 12/23
substantial [2] 12/9 46/23
substantive [1] 26/3
substitutes [1] 25/7
success [1] 41/9
sued [2] 8/25 9/2
suffers [1] 44/10
sufficient [2] 42/9 47/23
suggest [6] 16/14 18/19 31/17 47/25 49/3 49/4
suggesting [2] 32/18 32/25
sui [1] 42/19
Suite [1] 1/18
suits [1] 28/5
support [3] 14/5 45/5 46/7
supportive [2] 4/17 6/2
suppose [1] 20/18
Supreme [12] 3/20 4/11 4/12 23/5 24/3 28/3 28/18 41/23 42/1 43/8 50/11 51/19
sur [1] 14/19
sure [12] 10/10 10/17 16/3 16/6 16/9 22/16 23/13 27/8 29/2 39/25 48/7 48/23
surely [1] 49/14
surprise [1] 45/4
suspect [1] 45/24
Switzer [1] 42/1
symptoms [3] 3/9 48/3 48/12
system [1] 43/9

T
tailored [1] 42/17
talking [2] 20/7 48/15
talks [2] 17/23 23/21
taxes [1] 34/1
teasing [1] 35/1
technological [1] 53/9
telephones [1] 2/15
TELEPHONIC [1] 1/8
Tennessee [1] 39/12
terrible [1] 10/16
Texas [2] 3/15 49/24
Texas' [1] 50/11
textual [1] 30/23
theory [1] 7/13
thereafter [1] 50/4
therefore [2] 34/9 53/8
thoroughly [1] 35/17
though [5] 6/2 20/16 24/24 27/15 31/17
thought [2] 5/14 39/7
three [2] 10/15 47/23
throughout [5] 20/22 20/22 37/7 37/10 44/13
thus [1] 36/11
tied [5] 18/10 18/12 19/7 22/23 24/1
timeline [1] 12/1
times [2] 15/3 31/15
title [1] 40/1
today [8] 2/21 10/6 11/13 11/17 29/10 30/9 37/25 51/22
today's [2] 2/13 11/9
together [6] 15/1 16/8 17/3 36/13 36/17 46/25
told [4] 18/8 19/3 23/5 43/15
tomorrow [1] 36/17
tonight [4] 11/21 39/16 50/22 51/11
took [2] 10/20 33/4
tortured [1] 46/16
towards [1] 23/21
traditionally [1] 33/6
trafficking [2] 13/21 14/7
training [1] 47/13
transcript [2] 1/8 53/4
transcripts [1] 40/4
trauma [1] 13/18
trial [1] 38/17
tribunal [2] 37/15 39/21
tried [1] 16/21
triggered [1] 14/4
triggering [1] 13/24
TRO [1] 46/7
trouble [1] 11/6
true [2] 13/5 53/4
Trump [2] 46/2 46/4
trumps [1] 23/12
trust [1] 21/8
trusting [1] 20/20
trusts [1] 21/6
try [1] 51/14
trying [5] 6/18 23/4 38/21 38/21 40/16
turn [1] 12/7
two [15] 3/7 9/18 9/21 11/5 15/7 18/15 27/6 35/15 39/15 41/22 43/13 45/23 47/22 48/16 51/1
two-week [1] 48/16
tying [1] 24/7
type [2] 5/24 50/8
types [2] 39/24 40/5
typical [1] 40/6
typically [1] 29/17

U
U.S [5] 1/17 1/20 1/24 42/1 49/23
U.S.C [8] 3/20 8/19 18/25 38/4 38/6 38/9 43/5 47/19
ultimately [2] 17/4 48/16
unable [4] 3/13 35/18 42/21 47/14
under [30] 2/11 3/12 4/12 5/25 7/7 7/13 8/19 9/4 15/10 15/22 16/10 16/10 16/24 17/2 18/17 18/25 19/3 20/14 22/12 22/13 23/13 28/2 33/16 38/8 42/25 44/2 45/1 46/9 47/18 50/3
underappreciate [1] 14/11
understand that [1] 32/17
understood [1] 33/7
undertaking [1] 37/25
unfettered [1] 17/15
UNGVARSKY [3] 1/14 1/15 2/5
unique [2] 25/17 45/14
uniquely [1] 42/17
UNITED [9] 1/1 1/9 16/2 22/1 28/6 30/5 44/4 44/9 44/11
unless [5] 5/18 6/15 35/18 43/16 51/22
Unlike [1] 3/5
unlikely [1] 50/10
unpredictable [1] 10/13
up [6] 15/13 17/4 26/9 34/1 48/10 51/4
upheld [1] 26/8
upon [3] 8/11 14/2 47/9
ups [1] 20/22
use [3] 2/16 43/2 43/7
used [2] 7/8 34/18
useful [2] 31/14 44/18
uses [2] 4/12 29/17
usually [1] 28/5

V
VA [1] 1/16
various [2] 36/14 38/8

V

versus [2] 2/3 5/6
vested [1] 31/21
vesting [1] 32/11
victim [1] 13/23
view [6] 7/21 21/18 30/16 36/23 42/11 45/6
vigorous [1] 14/22
vindicate [4] 3/3 6/14 9/7 25/19
violate [4] 7/21 7/22 8/11 17/1
violates [1] 34/3
violation [1] 23/10
violations [2] 44/3 44/9
violence [5] 13/18 14/6 14/6 24/19 44/13
virtually [2] 17/15 38/9
virtue [1] 48/4
votes [3] 15/20 30/14 30/17

W

waived [1] 45/18
WALKER [2] 1/20 2/6
wants [1] 34/2
Washington [4] 1/4 1/22 1/25 26/23
way [9] 3/17 6/11 7/4 7/6 12/16 20/22 21/15 23/7 51/21
ways [2] 38/21 45/19
week [3] 10/14 11/10 48/16
weeks [11] 10/4 10/6 10/6 10/8 44/7 47/22 47/23 48/2 48/10 48/11 48/25
weren't [2] 15/2 15/2
Western [1] 1/18
what particular [1] 32/13
what's [3] 12/3 45/22 51/3
whenever [1] 38/25
Whereas [1] 45/24
wherever [1] 34/23
whichever [1] 29/13
who's [2] 19/23 21/10
whole [2] 16/14 45/14
WILLIAM [2] 1/5 2/3
wish [1] 10/21
within [3] 27/1 27/5 32/11
without [4] 3/16 5/7 22/2 24/5
witness [1] 13/20
witnessed [2] 13/20 13/23
women [1] 46/16
wonder [1] 27/22
Woodard [20] 8/17 15/17 16/10 16/11 17/8 17/21 19/3 19/4 19/8 19/20 22/19 30/11 30/22 31/6 31/7 31/8 33/2 33/3 35/10 50/10
words [1] 3/10
work [7] 14/1 14/12 15/9 35/18 37/23 49/16 50/17
working [1] 2/9
world [2] 25/4 34/18
worse [1] 19/12
Wright [1] 46/8
writings [1] 31/16
written [1] 16/22
wrong [1] 17/8
wrote [1] 44/5

Y

years [4] 13/7 14/18 21/7 37/4

Z

zealous [1] 50/7
ZOHRA [2] 1/12 2/4