IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA MARIE MONTGOMERY,

Plaintiff,

vs.

WILLIAM P. BARR, et al.,

Defendants.
______________________________/

Civil Action
No. 1:20-cv-3261

Washington, DC
November 18, 2020

11:01 a.m.

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: SANDRA L. BABCOCK
JOSEPH MARGULIES
ZOHRA AHMED
Cornell University Law School
157 Hughes Hall
Ithaca, NY 14853

EDWARD UNGVARSKY
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314

For the Defendants: ALAN SIMPSON
U.S. Attorney's Office for the
Western District of Missouri
400 E. 9th Street, Suite 5510
Kansas City, MO 64106

JOHNNY H. WALKER, III
U.S. Attorney's Office for the
District of Columbia
555 4th Street NW
Washington, DC 20530

Court Reporter: JEFF M. HOOK
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Washington, DC 20001

P R O C E E D I N G S

**DEPUTY CLERK:** This is civil action 20-3261, Lisa Marie Montgomery versus William P. Barr, et al. Appearing for plaintiffs, Sandra Babcock, Zohra Ahmed, Joseph Margulies and Edward Ungvarsky. Appearing for defendant, Johnny Walker and Alan Simpson. Also on the line at the Court's request is Lisa Nouri.

**THE COURT:** Great, thank you all. And I appreciate you all assembling on such short notice. But given the circumstances, I think we all need to be moving as quickly as we can. I'll remind everybody that under the Court's rules and the Chief Judge's standing order, it's not permissible to record or to rebroadcast today's proceedings. I'll ask that everyone mute your microphone when you're not speaking so that we don't get feedback. Please speak into the handset when are you speaking so we can hear you clearly. And please introduce yourself by name each time you speak so we have a clear record.

I'll tell you why I've asked everyone to get back on the phone, because I did go as promised and read some of the cases that plaintiff's counsel referred to at oral argument, including the Ramirez case from the Fifth Circuit. I'm persuaded there's at least a substantial argument that section 3599 does provide an entitlement to continuous representation by qualified counsel through the clemency

process. But I had questions still about how and if 3599 applies in this case. Because in looking at it more carefully, it was not apparent to me whether any of the attorneys have actually been appointed pursuant to section 3599. Obviously Ms. Nouri may be able to speak more directly to this or Professor Babcock may have answers to these questions.

But I went back and I looked at the motion and order from the collateral review proceedings that the Government cites -- or cited to in its brief for the proposition that Ms. Nouri is serving -- or was appointed under 3599. And it looked to me as though what had happened is that there was a motion made by -- and I believe it was probably trial counsel, for appointment of counsel under 3599, and it proposed counsel from I believe the federal defender in Maryland.

And the district court judge, Judge Fenner I believe, granted in part and denied in part that motion, and then appointed Ms. Nouri and another attorney to serve pursuant to 18 U.S.C. section 3005 and 18 U.S.C. section 3006(a). And then it appeared from the record in the case as though Ms. Henry and Ms. Harwell then simply entered appearances in the case. And so I would like to explore and better understand both factually whether any of the attorneys have been appointed under 3599, and then to get

your views legally as to what the implications are one way or the other with respect to the answer to that question.

So I'm happy to start with Professor Babcock. And if Professor Babcock would like to defer to Ms. Nouri with respect to any of those factual questions, that would be fine with me as well.

**PROFESSOR BABCOCK:** Thank you, your Honor. This is Sandra Babcock. I will give you my overview of the appointment history, and then allow Ms. Nouri to supplement that since she was directly involved in that -- at that stage of the case. You are correct that the original motion for appointment came from Mr. Duchardt, and that Judge Fenner granted in part and denied in part that request for appointment. There were subsequently requests for clarification from counsel.

And in April 2012, my understanding is that Ms. Nouri was appointed under 3599 as well as 3006(a). She then requested funding, or in the alternative the appointment of the Federal Public Defender, because the Federal Public Defender had expertise in representing individuals facing the death penalty which she lacked. And she had specifically been speaking to Ms. Henry, and Ms. Henry had said she would be willing to take on this case.

And on September 21st, 2012, there was a hearing

where the court did appointment the Federal Public Defender as co-counsel. And I understand that that order was finally entered in November 2012, even though the hearing was actually in September. And I'm going to ask Ms. Nouri to correct if anything that I've just stated is inaccurate or needs to be supplemented.

**THE COURT:** Ms. Nouri, are you there?

**MS. NOURI:** I'm sorry, your Honor, I was on mute as instructed. Lisa Nouri. Thank you, your Honor. I want to clarify the order was entered pursuant to a motion filed, the motion filed in September to clarify things or to get an alternative option of the Federal Public Defender in Tennessee. The judge entered an order. I don't think that there was a specific hearing to my recollection right now. But he entered an ex parte order September 21, 2012 appointing the Federal Public Defender's office in Tennessee. It was -- and then he instructed the specific attorneys who were going to work on it to enter their appearance pursuant to his order appointing them. And that is when they entered November 1st. But he actually ordered them in the case September 21, 2012.

And just to clarify, I thought -- I took the Judge's original order granting in part and denying part, the one he did in April 2012, was that what he was denying was Mr. Duchardt had requested the two specific attorneys,

Ruth Friedman and Miriam Gohara. And he was denying those two and appointing myself and the other attorney instead, your Honor. That's the way I read that, and we were all appointed pursuant to 3599.

**THE COURT:** Your understanding is that you were all appointed pursuant to 3599?

**MS. NOURI:** Yes, that's correct.

**THE COURT:** And are there docket references or orders that actually reference 3599 that you can provide to the Court?

**MS. NOURI:** Yes, I can do that after the call, your Honor. I think some of them are -- were under seal and may still be under seal. But I can certainly do that for the Court's purposes.

**THE COURT:** Okay. If there are orders that are under seal where just as a matter of time you can't go to Judge Fenner quickly enough to get an order lifting the seal or if you feel as though the seal would preclude you from actually sharing those with the Court, I suppose that you could just file something with the Court making your representation to the Court that the orders were pursuant to 3599. So I'll leave it to you.

I mean, I do need the answer in a way that -- not just for my benefit, but for the appellate court's benefit, there's a clear record as to whether the appointments were

under 3599 or not, and whether that's true for you as well as for Ms. Henry and Ms. Harwell.

And so if there's some way a record could be made on that under these tight time constraints, I would be very appreciative.

**MS. NOURI:** Yes, sure, that will be done.

**THE COURT:** Okay, thank you. Give me a second here.

The Deputy Clerk was just bringing to my attention I guess that Professor Babcock will actually have to make the filing on Ms. Nouri's behalf just because Ms. Nouri has not appeared in this case yet. But I'm sure that you can work out those details.

**PROFESSOR BABCOCK:** Yes, your Honor. This is Sandra Babcock, I will make the filing.

**THE COURT:** Okay. And then while I have Ms. Nouri on the telephone here, I've read your declaration, and my understanding from your declaration is, one, that at least at the time you had prepared your declaration, that you had not participated in the investigation and efforts that were underway for purposes of preparing a clemency petition or a commutation petition, is that correct?

**MS. NOURI:** That's correct. I don't have it printed out in front of me, your Honor, but there's no tangible document that says like here's the draft clemency

petition, if that's what you're asking.

**THE COURT:** No, no, I'm asking whether you have been involved in the efforts to actually prepare the petition?

**MS. NOURI:** Well, I think we were just getting started, your Honor, with that process, and then the other attorneys got sick after their legal visits. And I'm waiting for them to get better to do my part of any kind of clemency petition. I have not drafted one before, and I'm going to have to defer to them on an actual drafting of a petition. That's where I'm at on it, your Honor.

**THE COURT:** I see. And do they have a draft to your knowledge or have they started preparing a petition at this point?

**MS. NOURI:** No, your Honor. I mean, the answer is no, there is no draft. The farthest we got was seeking approval from the client, which was then either faxed or scanned back. And then they became sick. And I was going to go see the client, and I've decided I'm not going to that facility right now, your Honor. So that's how far we are. And then we -- you know, we were -- we filed the placeholder thing, document, whatever you want to call it that came out of Tennessee. They have the whole record, the whole file. They maintain everything there.

**THE COURT:** And you don't have copies of whatever

materials you would need?

**MS. NOURI:** Well, your Honor, there is a system on Box that I can access, but it is very challenging to find things in their system -- which is super security I guess, the Government, it's Summation. And so it's oftentimes easier for them to access documents than me. When we're under serious time constraints like we are now, I've got to defer to their file keeping. Because my -- me finding things on Box is very, very challenging, your Honor.

**THE COURT:** What is it -- I'm not sure what -- is that an acronym you're referring to, finding things on what?

**MS. NOURI:** Box.

**THE COURT:** B-O-X?

**MS. NOURI:** Yes, Box.com, your Honor.

**THE COURT:** I see, okay.

**MS. NOURI:** The Government has -- their office has it stored in a different format.

**THE COURT:** I see. And what about expert interviews, expert reports, things like that that you might need for purposes of preparing a clemency petition?

**MS. NOURI:** Your Honor --

**THE COURT:** Who has that, who's done that?

**MS. NOURI:** I don't have the contacts with the experts, your Honor. I've never been the one who was assigned to deal with the experts. That's not been my role,

that's their role.

**THE COURT:** And to your knowledge, have they been working with the experts?

**MS. NOURI:** I don't think we can get our experts into the facilities right now. They're not allowed to travel.

**THE COURT:** I see, okay. So I take it because you were appointed under 3599 that you met the qualifications of having not less than five years of experience before the Court of Appeals, and not less than three years experience in handling appeals in felony cases, is that right?

**MS. NOURI:** Yes, your Honor, that's correct.

**THE COURT:** And the same is true I would assume with respect to Ms. Henry and Ms. Harwell?

**MS. NOURI:** Yes, your Honor.

**THE COURT:** So can you just give me your best assessment? At this point I guess you have 14 days or something like that to prepare a clemency petition. If you were working by yourself or with -- or if you had the lead on this and were working with other attorneys who might be able to volunteer or help, is that something that you feel like you could do?

**MS. NOURI:** To zealously represent the client by myself, no, your Honor. I don't feel like I could do that. It's a daunting task. I've never done a clemency petition

before, your Honor.

**THE COURT:** And you haven't worked with the experts before?

**MS. NOURI:** I know who the experts are. I've met with some of the experts. I've spoken with them. I have never done that alone, your Honor. So no, I don't -- I don't even have their cell phone numbers, your Honor.

**THE COURT:** Do you have their e-mail addresses?

**MS. NOURI:** Of course I do, Judge.

**THE COURT:** That's what I would have assumed. Let me ask, Mr. Simpson, is there anything else you think I should ask Ms. Nouri while we have her here?

**MR. SIMPSON:** I'm sorry, your Honor, I didn't catch who you were posing that question to. I just want to make sure it wasn't the Government.

**THE COURT:** It was, it was for you, Mr. Simpson. I was asking whether there was anything else you think I should ask Ms. Nouri while we have her on the line?

**MR. SIMPSON:** My question would be first that Ms. Nouri has understood that she's performing the duties under 3599 pursuant to Judge Fenner's orders.

**THE COURT:** I think she did indicate that believes that she has been appointed under 3599. Is there something other than that that you think is important?

**MR. SIMPSON:** Not for Ms. Nouri, your Honor.

**THE COURT:** All right. And Professor Babcock, while we have Ms. Nouri on the line, is there anything else that you would like to ask her, either through me or on your own, for purposes of making a record in this case?

**PROFESSOR BABCOCK:** Yes, there is one thing, your Honor.

Ms. Nouri, I recall that in this case you made a funding request to the Eighth Circuit at some point pursuant -- after the certificate of appealability -- the request for certificate of appealability had been filed, and that you received an order from the Eighth Circuit denying in part your request for funding. And my understanding is that the denial of that request for funding was because the office of the Federal Public Defender was on the case and had been doing substantial work on this matter.

And I just wanted to confirm that that was a correct understanding?

**MS. NOURI:** I'm sorry, I had to get off mute. This is Lisa Nouri. No, that is not correct. I have not filed anything for funding with the Eighth Circuit. I, as well as Kelly Henry and Amy Harwell, their office was appointed under 3599 by the Eighth Circuit. And when I ultimately submitted a bill, I was rejected I guess you could say and it was discounted significantly. And I think part of the Eighth Circuit's reasoning was that the other

counsel and their office were in the case. So I have not done anything since then as far as billing, budgeting or anything of that nature.

**PROFESSOR BABCOCK:** So you have not been paid and you have not submitted a request for payment relating to any preparation for the presentation of a clemency petition in this case, is that right?

**MS. NOURI:** That is correct, yes, ma'am.

**PROFESSOR BABCOCK:** Thank you.

**THE COURT:** Have you received any payment at all for your work on this case under 3599(g)?

**MS. NOURI:** In the appellate court, the district court or both?

**THE COURT:** Anywhere?

**MS. NOURI:** In the district court, I would have to access my e-voucher, but my belief is that I have not submitted a bill since the summer of 2013. But I could be wrong. It was a summer, and I don't remember what summer it was. But certainly the last year and a half, I know I did not submit a bill.

**THE COURT:** And that's just because you haven't been doing substantial work on the matter?

**MS. NOURI:** No, that's not the answer. The answer is because I had a feeling I was not going to get paid or was going to be cut, and it was worth -- it was not worth

the stress that it was causing. So I know the court discounted the last bill I had submitted and withheld either 20 or 25 percent in the district court. I don't even remember honestly, and I've never gone back and pursued it. And I just chose not to submit a bill after that.

**THE COURT:** But when you did submit bills, it was under 3599, is that right?

**MS. NOURI:** Yes.

**THE COURT:** Do you know -- this is a strange circumstance, but do you know what, if anything, the federal defender did? Because it's a federal defender from a different district. Were they seeking compensation under 3599, if you know?

**MS. NOURI:** From the Court?

**THE COURT:** Yes.

**MS. NOURI:** Oh, no, of course not. They weren't seeking compensation.

**THE COURT:** Because they were being paid under the -- whatever appropriations were available for the federal defender?

**MS. NOURI:** Yes.

**THE COURT:** But you still think that, notwithstanding that, that their appointment was under 3599?

**MS. NOURI:** Yes, because that's the -- I think that's what the order said, if I could see what it said

exactly. It said that they were appointed as co-counsel in the above captioned case to assist with the representation of petitioner, and that they were ordered to enter their appearances on behalf of petitioner. And that followed an order where the Court appointed us and approved the billing procedures, et cetera.

**THE COURT:** I guess that gets back to my question as to whether they were appointed under 3599 or not. It may be you just need to go back and look through the docket and provide Professor Babcock with whatever material there is.

**MS. NOURI:** Yes. And again, I will do that, but I think the motions and all that that he approved say all that, your Honor.

**THE COURT:** Well, that's helpful. All right, thank you.

I mean, for purposes of counsel making any legal arguments they'd like to raise, reading Ramirez and Battaglia, the Supreme Court's decision in Christeson and Harbison as well as the statute, as I said, I do think there's a substantial argument that where counsel has been appointed under 3599, that there is an entitlement to that counsel to continuously represent the individual; and for there not to be a disruption in that representation, presumably because of the knowledge that experienced counsel or counsel experienced with the case has. There obviously

are needs for substitution for good cause, but I take it that's nothing that has happened here.

In 3599(e), it says that unless replaced by similarly qualified counsel on the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout competency proceedings and proceedings for executive clemency. I think there's at least a substantial argument here that that word each, at least in this context, is important; and that where you have three lawyers who were appointed pursuant to 3599 -- which I'll assume for present purposes, two of whom have been carrying the laboring oar with respect to issues relating to clemency, one of whom doesn't have experience with a clemency petition and who was substantially less involved in the process, it is important that each attorney continue with their representation.

Now, obviously if there were 30 lawyers that were appointed and one lawyer couldn't participate, it doesn't strike me that that would be a problem. But where it's material and goes to really whether there is counsel qualified to continue the work and to continue the efforts, I think there's at least a substantial argument that that would create a statutory right.

I'm still left with a couple of questions. One is if it turns out that some or all of the lawyers were not

appointed pursuant to 3599, I would be curious as to what the parties think applies then and whether 3599 would actually have any application if they were not formally appointed pursuant to that provision.

And then the other question I have is assuming that what I've just set forth is right, what are the implications for that in this case where there is counsel. And I understand the declarations from the doctor saying that his recommendation would be that the two lawyers not do any work for four weeks. But I think we all know that there's a great deal of uncertainty and inconsistency in results with respect to the coronavirus and how it affects individuals. And I don't know with any sort of level of certainty how Ms. Henry and Ms. Harwell are feeling today, how they'll be feeling tomorrow or the day after, and whether they would be in a position in which they could at least tell Ms. Nouri what needs to be done in order to complete an appropriate clemency petition within the time that's allowed.

So that's where my current thinking is on it. I want to be as transparent as I can with the parties here, because this is obviously an important matter. And also time is of the essence, so I want to give you all an opportunity to tell me whether you think I'm thinking about this incorrectly, and to help elucidate these issues as much

as possible for me.

So with that background, Professor Babcock, I don't know if there's anything else you would like to add to what's previously been argued in the case.

**PROFESSOR BABCOCK:** Yes, your Honor. Thank you very much. This is Sandra Babcock. I'm not going to repeat what I said earlier. I agree with your recitation of 3599 obviously. I think the Supreme Court has repeatedly made clear that 3599 is more than a funding statute. There's language in both Harbison, Martel and Christeson that talks about how Congress by passing 3599 ensured that federal capital defendants have, in the words of Martel, enhanced rights of representation. In Christeson, it was a mandatory right to qualified legal counsel in a capital case. In Harbison, Congress' decision to furnish counsel for clemency proceedings demonstrates that it too recognized the importance of such process to death sentenced prisoners.

So this language reinforces and underscores the importance of having capitally qualified counsel in these cases. Ms. Nouri, when she was appointed, did the ethical thing that she was required to do under the ABA rules, and that took advantage of 3599(d)'s assessment that in certain cases that are particularly complex -- and that certainly applies here, that additional counsel may be appointed. And I agree that all counsel appointed under 3599 have ongoing

obligations to represent their client throughout every subsequent stage of the proceedings.

I wanted to address one thing that I think the Government insinuated -- sorry, the defendants insinuated in the last hearing and was stated in a case that came out a couple of days ago in this district, insinuating that the defendant -- or that counsel for Mrs. Montgomery could have begun preparing a clemency application years ago; that there was no reason that they should have waited until this late date to begin drafting a clemency application. And I wanted to share a couple of facts with the Court that I think are really relevant in explaining why no clemency application has apparently been drafted as of this date.

The first thing I wanted to point out is that the Supreme Court did not deny rehearing in this case until August 3rd. And the clock did not really begin to tick for them until that date. At that point, counsel for Mrs. Montgomery consulted with experts who are working with the federal courts to determine and assist counsel in federal capital cases. And they were assured that there was very little possibility that any execution date would be set for Mrs. Montgomery for two reasons.

First, because the average time between the finalization of the 2255 process and the notice of setting an execution date is typically years. The average, as we

pointed out in our complaint, was four and a half years. And secondly, there were other prisoners who were -- who had been on death row -- federal death row longer, and who were also eligible to receive execution dates. So at that point, there was no reason for counsel to believe that the Government was going to move imminently to set an execution date.

But beyond that, I think it's important to point out two additional facts. First, the federal defender's office, and Ms. Harwell and Ms. Henry in particular, are capital litigators who at the time -- this summer, for example, they had -- sorry, on September 19th, 2019, Tennessee requested execution dates for seven of their clients. In February 2020, Tennessee set execution dates for three of their clients. Ms. Henry was on those cases as was Ms. Harwell was on two of them.

On October 27th of this year -- one of those clients had been scheduled for execution on December 3rd. On October 27th of this year, one of those clients had a clemency hearing. On November 6th, that client, Purvis Payne, received a reprieve -- represented by Ms. Henry, a reprieve from the governor. One day later, November 7th, Ms. Henry came down with symptoms of COVID-19.

I didn't mention this before, your Honor, because I would have thought that it was -- it went beyond saying

that counsel was not simply sitting on their hands waiting for an execution date to be set in Ms. Montgomery's case. These are diligent lawyers who have a very, very full caseload, and they made a reasonable judgment based on information that they received and based on the Government's own practices that no execution date would be set in this case.

And finally, Ms. Nouri's decision not to seek payment in this matter reflects her understanding that the federal defender's office was going to be carrying the load of preparing and presenting this clemency application, and is also consistent with the practice of federal district courts in circuits around the country. There was a case not too long ago in the Eleventh Circuit where counsel applied for funding -- this is in the case of -- the defendant's name was Anthony George Battle, and these motions are also sealed. But counsel had asked for appointment of the federal defender for the Middle District of Georgia to prepare for competency -- competency to be executed and clemency proceedings. And that request for funding was denied because -- or the request for appointment was denied because there was no current need for representation in clemency proceedings.

There is a general understanding -- that's true in Oklahoma as well. In Oklahoma, I'm working on a case right

now where the -- and this is consistent practice in the Tenth Circuit, that counsel will not be funded to represent and prepare clemency applications until at the very least after cert is denied, and typically when an execution date is set. That is the understanding. So it is disingenuous for anyone to suggest that Ms. Henry or Ms. Harwell or Ms. Nouri should have been preparing this clemency application, you know, from the time they began their representation of her in 2255 proceedings.

And finally, your Honor, I wanted to go back to the minimal due process language in Woodard. The minimal due process language and the arbitrary denial of access to the clemency process, if this is not arbitrary denial of access under the Due Process Clause, then Woodard is a dead letter and Harbison is a dead letter. It is hard to imagine any other circumstances where there could be a better record of counsel -- of a death sentenced prisoner who is indigent and mentally ill being deprived of this one last opportunity to present the reasons why she should not be exterminated from the human race with the assistance of the only two lawyers in her case who are qualified to represent her at this stage.

**THE COURT:** Let me ask you a question -- well, first of all, can you also fairly promptly just provide in written form something to the Court -- and it can be a

notice, however you want to do it, that identifies for me that list of other obligations that you just identified, that you ran through?

**PROFESSOR BABCOCK:** I'm sorry, your Honor, which --

**THE COURT:** You were talking about all of the various other death penalty matters that Ms. Henry and Ms. Harwell were working on simultaneously, that would be helpful to have that.

**PROFESSOR BABCOCK:** Yes, that's fine.

**THE COURT:** The other question I have is since section 3599 applies to defendants who are financially unable to obtain adequate representation, and provides that attorneys serving under 3599 shall be compensated at $125 per hour, does 3599 really fit for Ms. Harwell and Ms. Henry since they were federal public defenders?

**PROFESSOR BABCOCK:** Yes, I believe it does, your Honor. And the reason I think it does is that I believe that 3599 is not just about funding, it's about counsel for financially unable defendants, that's the title of the statute. Mrs. Montgomery is a financially -- she is an indigent defendant who is entitled to the appointment of counsel. And the mechanism here -- you know, the payment mechanism, is not the dispositive factor. The dispositive factor is that under 3599, she is entitled to the

appointment of qualified counsel.

So my -- our position is that it does not matter and is not dispositive that the federal defenders weren't paid through the same mechanism that Ms. Nouri was paid.

**THE COURT:** If it turns out they were not appointed under 3599, does the statute have any application here other than perhaps sort of setting a sense of the Congress?

**PROFESSOR BABCOCK:** Your Honor, may I consult with my co-counsel for a moment?

**THE COURT:** Yes.

**PROFESSOR BABCOCK:** Thank you.

(Brief pause in the proceedings)

**PROFESSOR BABCOCK:** Thank you, your Honor. I wanted to clarify whether we had the order to show that the Federal Public Defender's office was appointed under 3599. My understanding is that they were, and that the Federal Public Defender's office is consistently appointed under 3599 in these cases.

That having been said, I want to answer your question, which is that if they weren't, and if Ms. Nouri were the only 3599 appointed counsel, does that make a difference. And my answer is no, it doesn't make a difference. Because in this case -- and I'm not saying this to impugn the integrity and commitment of Ms. Nouri, but I

think this is closer to a case of abandonment of counsel as there was in Ramirez and Battaglia. Because you have a lawyer who, through no fault of her own, just has not had the experience, does not have the experience and the skill to represent Mrs. Montgomery in these proceedings. This is much -- this would be much more of a case where it would be a violation of her ethical obligations to represent Mrs. Montgomery in these proceedings, because she's just not qualified.

**THE COURT:** Would I then need to -- if that were the case -- and I realize this is all hypothetical, would I then need to entertain a motion to appoint Ms. Henry and Ms. Harwell pursuant to 3599(d)?

**PROFESSOR BABCOCK:** If they weren't appointed under 3599 you mean?

**THE COURT:** Yes. I mean, that's why I said it's all hypothetical.

**PROFESSOR BABCOCK:** I'm sorry, I'm thinking. You know, I guess I can't answer that question really thoughtfully, your Honor. I would need to think about it some more. My instinct is to say no simply because I think -- well, first of all, I think they are. But it could be that there would have to be a motion if they weren't. And if they're incapacitated -- and let's say this Court were inclined to say, well, you know, in light of their

incapacitation and Ms. Nouri's inability and lack of qualifications to represent Mrs. Montgomery, I need to appoint additional counsel. Then that I believe -- if that counsel were learned counsel and experienced counsel and were given sufficient time to present and prepare the clemency petition, then that could satisfy 3599.

But the problem there, of course, is that if you appointed new counsel in light of the illness of her two long-standing lawyers, you're talking about giving them a lot of time. And I mean, you know, we're talking about several months in order for them to come up to speed on the case.

**THE COURT:** Okay. Let me hear perhaps from Mr. Simpson unless there's anything else, Professor Babcock, that you want to add at this point?

**PROFESSOR BABCOCK:** No, your Honor, I think I've said all I need to. Thank you very much.

**THE COURT:** Okay, thank you. Mr. Simpson.

**MR. SIMPSON:** Thank you, your Honor. I'm going to start off with a recitation of the record. You asked me if I had any particular questions for Ms. Nouri, and I really don't. I think that the record in this matter is clear enough. But I did interpret your invitation at that time as an opportunity to go in an explain or answer your questions as the Government sees them, so I'd like to take that

opportunity first.

First, we believe that Ms. Nouri and at the time an attorney named Christine Blegen were appointed, and that 3599 applies to that appointment based off of the timing that they were appointed. And there are no magic words required under 3599 for an appointment to be made pursuant to that particular section. They've understood since the timing of that that they're obligated to provide the services contemplated by 3599, and have in fact provided those services over many, many years.

**THE COURT:** Just to interrupt for a second, would you also say the same thing with respect to Ms. Henry and Ms. Harwell?

**MR. SIMPSON:** No, your Honor. They were not specifically appointed under 3599. The office of the Federal Public Defender for the Middle District of Tennessee was appointed. And subsequent to that, Ms. Henry entered her appearance in the 2255, and actually Ms. Harwell did not. And I have record citations for all of these facts.

**THE COURT:** You're welcome to provide those to the Court as well. I invited the plaintiff to do that, but I would invite you to do the same.

**MR. SIMPSON:** Okay, and we're happy to do that. In particular, many facts regarding the understanding of counsel's appointment are apparent in a writ proceeding to

the Eighth Circuit, which was 14-2725. And we will include citations to that as well. But I don't think that there's been anything said today which would demonstrate any likelihood that the office of the Federal Public Defender for the Middle District of Tennessee is less than capable of submitting a very good clemency application, far beyond anything that is required by any statute or the Constitution.

And I also believe the same thing of Ms. Nouri. Ms. Nouri has intimate familiarity with this case. She's been -- she's had knowledge of the relevant individuals. And even if she was not leading the charge, for example, on expert witnesses, she was there. She has e-mails, she has knowledge of the documents, even if she didn't consider herself the lead drafter. Although I'd note that in 2014 in the writ petition, she was designated as lead counsel. And I believe we cited that in the brief.

I don't think that the cases, specifically either the Ramirez or the Battaglia case, are on point for your Honor. Those cases generally deal where there's a habeas petition or there's some significant constitutional entitlement to access -- to use Ms. Babcock's term, to access a particular type of relief. Here, clemency is vested in the sole discretion of the President. And again --

**THE COURT:** But Ramirez -- I'm sorry, Ramirez was a state clemency proceeding.

**MR. SIMPSON:** Your Honor, even though that is the case, I think that there is -- the Ramirez decision that I saw was an unpublished Fifth Circuit decision. I don't believe that -- I believe that based off of the allegations in that case, there was an allegation that there was some substantive entitlement underlying that, not simply a desire for more time to submit a clemency petition. If I'm wrong, I'm wrong, your Honor.

But in any event, I don't think that that case is particularly persuasive. For one, it's distinguishable because different states have different procedures. And I think that the Due Process Clause requires more of states than the federal clemency proceedings -- which as we've noted extensively are committed by the text to the President. But even if there was some question, here there's no threshold showing or even a suggestion that anybody would refuse to submit a clemency application, that the Federal Public Defender's office for the Middle District of Tennessee would be unable to gather the extensive work product over that period of time.

And I'd note that in representing Ms. Montgomery, at least two attorneys from that office have either -- have tried to intercede on her behalf, first the Federal Public

Defender himself in correspondence with the pardon attorney. And I'd also note that in the protocol cases at docket number I believe it's 303, that there was an additional attorney on a complaint representing -- or proposed complaint in intervention to represent Ms. Montgomery. I don't think that there's any suggestion that the Federal Public Defender for the Middle District of Tennessee would be unable to submit a very good clemency application.

With respect to -- the last thing I'll say about appointing of offices is that our understanding is based not only on the assignment of the record, but also on rules and procedures generally governing the judiciary. The Guide to Judiciary Policy regarding defender services contemplates that offices, not individual attorneys, will be appointed for situations exactly as this. Because there could be issues with workload where there needed to be assignment or additional counsel brought in.

I think I've seen e-mails to the Bureau of Prisons recently that had other Federal Public Defender employees from the Middle District of Tennessee. There is an expectation in managing any government office that somebody might become very busy, they might leave, but that the office itself takes on that responsibility.

**THE COURT:** Mr. Simpson, just to pause for a second just to test the logic of your position. So if you

had an office like the office of the Federal Public Defender for the Middle District of Tennessee that was appointed pursuant to section 3599 in a death penalty case, and you had a lawyer who had spent years and years working on the case and no one else in that office had worked on the case; and that lawyer had interviewed dozens and dozens of witnesses, interviewed experts and was getting ready to sit down and write a clemency petition that was due the next day and got hit by a bus, would you say under those circumstances, well, it's the office that represents the individual and so there's not a problem or would you concede that if there were people who weren't up to speed and there's not time to get up to speed then there's a problem?

**MR. SIMPSON:** Your Honor, first of all, I think that your question posits a compelling case for a reprieve, and I believe that that decision would be committed to the Executive Branch. As a matter of fact, I don't want to just fight with your Honor's hypothetical, because I don't think it's practical to believe. Attorneys are obligated by various professional obligations to plan for things and to leave records. But assuming that it was all in one attorney's mind and there was no which way that any person could ever figure that out, I think it would raise a real question.

But we don't have that here, because Ms. Nouri was

involved throughout this process even though she hasn't been submitting bills recently because some of them have been cut -- which I think is in and of itself an indication of -- I think that that in and of itself is an indication that the desired procedures here are not normal even for capital defendants.

What this case is really about is trying to impose a choice of counsel obligation on the Government. If there were a request for additional counsel under 3599, Ms. Montgomery would not have a say in that underlying request. If the Court wanted to honor her request, that would be fine. But there is no choice of counsel or outside -- all counsel would need to do would be to satisfy the minimal requirements of 3599. If there was some attorney who had more familiarity with the case, that wouldn't be reviewable, and it wouldn't violate the statute.

**THE COURT:** I mean, I take it your point -- I mean, I agree with you that 3599 does not give a capital defendant the right to choose his or her counsel. But what (e) and the structure of the statute and some of the case law on it does seem to suggest is that there is a right to continuity of counsel, recognizing the very high stakes of the death penalty and the very steep learning curve and huge amounts of information that can be involved in these cases.

I would think that it's fair to read the statute

to include a congressional policy that we don't want to put someone to death where -- simply because their lawyer, who is the one who's experienced with the case and knows the case, abandons the case, for example, at the last minute for the clemency process. Even though it is true that someone else could step in and file something, they just couldn't file something that would be up to perhaps the quality that section 3599 has in mind.

**MR. SIMPSON:** Your Honor, I think that the problem is that Congress' policy -- or their desired procedures for the President to consider in the clemency process cannot be understood to impose any limit on the President's discretion, his unilateral exercise of executive grace.

**THE COURT:** I'm sorry to interrupt you, but I'm not sure I disagree with you at all about what you're saying there. I'd be interested -- and it may be that Professor Babcock would say that there's a constitutional limitation here. But I think it's quite possible that -- to my mind, that if President Trump were to announce and to say I have decided already to deny clemency in this case; I know enough about this case; I know how horrible this crime is, I'm aware of this case; and quite frankly, I don't care how mentally ill Mrs. Montgomery is, I don't care whatever mitigation she may have on her side, it will not sway me because I hereby -- I'm not going to grant clemency in this

case. That might moot out this case if the President were to say that. It might not be a very prudent thing to say without actually having information in front of him to make a judgment.

But I'm not sure saying -- you know, as things stand, the rules adopted by the Executive Branch do provide for a process. There is an opportunity to be heard on this. And unless the President were to somehow supersede that in some way, I guess I don't see how this interferes with the President's pardon power. It may interfere with the Attorney General and the Bureau of Prisons' power to set an execution date. But the President can say and do whatever he wants with respect to whether he's going to grant a pardon in this case or grant commutation of sentence.

**MR. SIMPSON:** Your Honor, I do think that that is sort of building up a house of cards per se where we're leaping on, right, the -- what we're doing is we're saying, well, you don't have any entitlement to the underlying clemency proceeding or the reprieve of the execution, but we're nonetheless willing to find a due process violation. And I think I've made my argument clear here.

But what I'd like to point out is that as a matter of fact, I don't think the record would support your Honor's -- where your Honor has gone with this. For one, there is no suggestion that given Ms. Nouri's extensive

knowledge of Ms. Montgomery's case, that her, in interaction with other attorneys at the Federal Public Defender's office for the Middle District of Tennessee, could prepare a very good clemency application, far in excess of any minimal application required by the statute.

Second, I think that there is no indication that we have in this case that Ms. Harwell or Ms. Henry are incapacitated to the extent that they could not communicate with their own co-counsel at the Middle District of Tennessee in getting something like this filed, talk to X person, do something, look in this file, that sort of general logistical conversation. That is reinforced by the fact that they have executed both at least one -- at least one and I believe several declarations since the onset of symptoms. And in addition, they authored or coordinated with their co-counsel to file the placeholder clemency application itself. There is --

**THE COURT:** Although I have to say, that wasn't much of a document if you read that carefully.

**MR. SIMPSON:** Yeah, I --

**THE COURT:** It didn't read like something that was prepared by somebody who was terribly focused.

**MR. SIMPSON:** Well, and I'm sure you could say the same for my filings as well, your Honor.

**THE COURT:** Not at all.

**MR. SIMPSON:** But the issue I have is that there is a large disconnect in Ms. Babcock's argument that no one would ever start preparing a clemency application really until the execution date is set. But then it becomes an insurmountable burden. And I just do not believe that that is the case. I don't think that the record supports that finding.

There are obviously ABA standards or things that people may like to include in a clemency application. But as Ms. Babcock said last time we were on the phone, clemency is not necessarily legal arguments. They're arguments that are designed to appeal and to access executive grace, which is never given as of right. And there's nothing about that that is going to require the kind of extensive investigation -- there's nothing that requires additional expert discovery, for example. There's nothing about that that requires a large team of attorneys -- let me rephrase that. There's nothing that requires experts. But the Bureau of Prisons has nonetheless made videoconferencing with experts available should the Federal Public Defender for the Middle District of Tennessee wish to have those conversations or Ms. Nouri.

There is nothing that requires an extensive, in-person investigation; again, nothing that has required that since the beginning of this case, and nothing that

continues to require it. So I don't think that any kind of ABA documentation or any sort of, you know, this is our latest, greatest, best list of the various things that you could say is reflective of what Congress had in mind whenever 3599 was enacted. And it's certainly, certainly not reflective of what -- of the standard identified in Woodard.

So I just cannot, cannot square the desired procedures in this case and the timeline desired with anything else. This case is really about a delay of 10 days, your Honor. If the onset of symptoms started on November 5th and the application was due on November 15th, there must have been some -- you know, it must have been that at least Ms. Henry and Ms. Harwell would have been able to prepare -- using the source documents already gathered, to prepare the clemency application.

**THE COURT:** Can I ask you about that -- I'm sorry to interrupt, Mr. Simpson. I have to go back and look at the regulations again, but I was under the impression actually that the pardon attorney's agreement -- that you can put a placeholder in and still file 15 days later -- was not something that was just made up for this case, but that that actually was a standing rule that already exists. So it was not just -- if I'm right about that, it wasn't just 10 days, it was 25 days.

**MR. SIMPSON:** Fair enough, your Honor. There is an opportunity to supplement and go out. But again, we are now nearly two weeks after this onset, and Ms. Nouri has under her belief consistently been appointed under 3599. And under the belief of the office for the Federal Public Defender for the Middle District of Tennessee, continued to believe that they are appointed under 3599.

And I think that essentially what we saw on Monday night is that your Honor and the Department of Justice are sort of engaged in a game of chicken with Ms. Montgomery, where Ms. Montgomery is asking your Honor for these sorts of additional concessions but ultimately is able to file something. And I don't think that there's been any representation that she would be unable to file something that provided her meaningful access to the clemency process. Perhaps not the most ideal access, perhaps not her very best arguments by her most experienced habeas counsel, but access via other very experienced people from the Middle District of Tennessee, and access from Ms. Nouri who has as good or better understanding of the facts of Ms. Montgomery's case.

**THE COURT:** All right, thank you. Anything further?

**MR. SIMPSON:** Your Honor, I assume that you're going to want any record cites quickly. Will you be making any --

**THE COURT:** That's a good point. I think that what I probably need to direct is that both sides file any additional record cites or any additional material with me by 4:00 o'clock today. Is that acceptable?

**PROFESSOR BABCOCK:** That's acceptable, your Honor.

**THE COURT:** Mr. Simpson, is that okay with you?

**MR. SIMPSON:** Yes, your Honor.

**THE COURT:** Professor Babcock, do you want to briefly respond to Mr. Simpson's comments?

**PROFESSOR BABCOCK:** Yes, your Honor, thank you. We are now 13 days away from the deadline set by the Government for the submission of supplemental materials. And in reflecting on what the Government -- what the defendants just argued, I wanted to direct the Court to this language in Harbison v. Bell. And this is a quote: "Far from regarding clemency as a matter of mercy alone, we have called it 'the failsafe' in our criminal justice system." And that is quoting I believe McFarland v. Scott.

This is not a case where we are asking for Mrs. Montgomery to be able to say, well, you know what, I'm not satisfied with Ms. Nouri or Ms. Harwell or Ms. Henry, I want Ruth Friedman or I want Judy Clark to represent me in these proceedings. All we are asking for is that she be allowed to be represented by the attorneys that have been representing her for the last eight years under 3599 with

the requisite skill and experience to present and prepare her clemency application.

The Government's suggestion that it's not an insurmountable burden for them to do that at this point while they are functionally incapacitated with COVID-19 is laughable. And their suggestion that any other lawyer in the fed PD's office would be capable of doing this is akin to saying -- you know, let's say that White & Case had been appointed on this case, and you had a partner and associate who had been working on it -- which is not uncommon, taking this matter and working on it. And let's just say that they'd been appointed under 3599, and both of them get COVID or both of them die.

The Government would say, well, you know what, you could assign a real estate lawyer in that firm, they've got lots of resources. You know, they've got paralegals. That's completely adequate. And it is just not the case that lawyers are fungible in that way. Every single lawyer in the federal defender's office has other capital clients, has other clients with execution dates. And it just reflects a really profound misunderstanding of the burdens that are placed on these lawyers all the time, not just in Mrs. Montgomery's case, but in the other cases that they're managing.

Ramirez, by the way, the defendants are incorrect.

That was a clemency case as your Honor pointed out. And there was no other underlying matter, it was simply that counsel had breached his duty by failing to file a clemency petition. And the court stayed the execution because there was only a short time remaining before the execution, and there was insufficient time left to consider whether the new attorney who had been proposed -- and this is a quote from Ramirez, "possesses the necessary qualifications to represent Ramirez on clemency."

So all of these cases together, your Honor, support a conclusion that there is a right -- there is a right to meaningful access to the clemency process under Bell, and that there is a right to be represented by qualified -- by capitally qualified counsel in the clemency process. And that is both a reflection -- it is rooted in both the Due Process Clause and in the congressional mandate set out in 3599.

**THE COURT:** The one thing I would just push back on is you keep saying capitally qualified counsel. I'm not quite sure that's true for 3599. It's qualified counsel.

**PROFESSOR BABCOCK:** Yes, your Honor, I did say that. And 3599 doesn't say capitally qualified, but that is the language -- you know, when the Supreme Court in Christeson talks about a mandatory right to qualified legal counsel in these proceedings, that was a capital case. And

in Martel, 3599 grants federal capital defendants and capital habeas petitioners enhanced rights of representation. So 3599 may not say that you're entitled to a capitally qualified lawyer, but when you read that in conjunction with Supreme Court jurisprudence in interpreting 3599, it is unmistakable that the Supreme Court understands 3599 to mean that a person like Mrs. Montgomery is entitled to qualified lawyers who have the requisite skill to defend her in this process.

**THE COURT:** And what do you say or what does Ms. Nouri say to Mr. Simpson's argument that Ms. Nouri meets that standard, and that she's been in this case a long time and that she's an experienced lawyer?

**PROFESSOR BABCOCK:** Ms. Nouri is --

**THE COURT:** Everyone has to file their first clemency petition sometime.

**PROFESSOR BABCOCK:** Ms. Nouri -- if you want to say that she has to file her first clemency petition, it shouldn't be in a case where she has 13 days to do it and where she has no access to the entire record.

**THE COURT:** I thought she said she had access but that it was slow or difficult for her to find things. Is that not right?

**PROFESSOR BABCOCK:** My understanding is that there are certain files that the federal defender's office keeps

in Box, which is like Dropbox, it's a cloud based system. And that there are others that are kept according to an internal filing system. That's my understanding. I can clarify that.

**THE COURT:** I'm going to ask Ms. Nouri to clarify that. She may be on mute still.

**MS. NOURI:** I'm sorry, your Honor, this is Lisa Nouri. I had to get off mute. There is an entire electronic file maintained by the national Federal Public Defender's office. They tell me it's called Summation. It is the entire file. I have selected documents on my Box account that they created for me which might be a large portion of the file, but there are some documents or e-mails or things like that that I don't have access to necessarily.

Anything big, yes, I would have that on Box, but it's very tedious to find. And the bulk of the expert contacts, I have reports or things like that, but I don't have the -- necessarily all the underlying documents or e-mails that related to those, your Honor.

**THE COURT:** Okay, thank you.

**PROFESSOR BABCOCK:** Your Honor --

**THE COURT:** Professor Babcock.

**PROFESSOR BABCOCK:** Yes, thank you, your Honor. The other thing I wanted to point out, I don't know what documents Mr. Simpson is referring to when he talks about

how there were other staff members at the Federal Public Defender's office on certain pleadings. I believe they may have been paralegals, but that is something that I -- it's just not a matter of record in this case, that anyone in the federal defender's office has taken steps or is currently qualified to represent Mrs. Montgomery in the clemency process.

**THE COURT:** Anything further from you?

**PROFESSOR BABCOCK:** No, thank you, your Honor.

**THE COURT:** All right, thank you. Mr. Simpson, any final words?

**MR. SIMPSON:** Yes, your Honor. First, I would like to say that our insinuation was not that -- or what I said I believe or intended to say was not that either Ms. Henry or Ms. Harwell could actually prepare the application, but simply that I think that their interactions in this case prove that they've been able to be somewhat responsive to inquiry. I don't think that your Honor should adopt a test under the Due Process Clause which functionally would replace the test under 3599(a)(2) for abandonment. And I think that if there is an actual allegation that Ms. Montgomery has been functionally abandoned in the Montgomery -- in the clemency process, that that would be something that they would have to take back to the trial judge who did those appointments. I don't have a venue cite

for section 3599 appointments for your Honor, but it's my understanding that those are generally always done by the trial judge.

But that they would have to -- you know, we would have to have a hearing with evidence as to what Ms. Montgomery wants with regard to her clemency process; that Ms. Nouri and the office of the Federal Public Defender for the Middle District of Tennessee are not capable of fulfilling their obligations under 3599; and that accordingly, that their ought to be different counsel appointed. Again, the remedy would still be that yet another counsel be appointed.

Now, I understand your Honor's hypothetical that there could be some last second inability of counsel that would justify some sort of a temporary stay. But here, I don't believe that that exists. I don't think that there's any threshold showing that's been made that 3599 cannot be followed by the attorneys who have been appointed and to which that section still applies.

So I appreciate it, your Honor, for the time and listening to the arguments. We just vehemently disagree that there would be any due process requirement that would not -- that would supplant the abandonment process, which I think is what is really being discussed or is actually what occurred in cases like Battaglia and Ramirez.

**THE COURT:** So I think to the extent what you're doing is raising a venue argument now, I think that's just too late, at least with respect to the motion for a preliminary injunction. That's a waivable defense. The Government has filed its briefs. We've had two lengthy oral arguments in this case. It strikes me that it would be sort of grossly unfair for the Government to raise that argument now at this late date and to say to the plaintiff, sorry, you've got to go refile in front of Judge Fenner or someone else at this point. I just don't see how there's time to do that under these circumstances.

It strikes me to the extent you're making a venue argument now, my at least inclination is that that's waived, at least for present purposes. Maybe with respect to later purposes in the case, it might be different.

**MR. SIMPSON:** I understand, your Honor. Again, I was not intending to make a venue argument as to what your Honor would rule. My argument is that 3599 and the procedures contemplated by that section do govern this such that your Honor's underlying -- that there's no need to impose as a substitute to the already existing procedures a due process remedy.

**THE COURT:** Okay, fair enough. Well, thank you all. I look forward to getting your additional submissions. This is not an easy case, and I appreciate all the help that

you're giving me. Anything else you want to get to me by 4:00 o'clock today I will consider. Thank you all, take care.

(Proceedings adjourned at 12:20 p.m.)

# CERTIFICATE

I, **Jeff Hook, Official Court Reporter**, certify that the foregoing is a true and correct transcript of the remotely reported proceedings in the above-entitled matter.

**PLEASE NOTE:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

**November 30, 2020**
**DATE**

**Jeff M. Hook**

## $

$125 [1] 23/14

## '

's [1] 18/22
'the [1] 39/17

## 1

10 [2] 37/10 37/25
114 [1] 1/15
11:01 [1] 1/6
12:20 p.m [1] 47/4
13 [2] 39/11 42/19
14 [1] 10/17
14-2725 [1] 28/1
14853 [1] 1/13
15 [1] 37/21
157 [1] 1/13
15th [1] 37/12
18 [3] 1/5 3/20 3/20
19 [3] 20/23 40/5 48/8
19th [1] 20/12
1:20-cv-3261 [1] 1/3
1st [1] 5/20

## 2

20 [1] 14/3
20-3261 [1] 2/2
20001 [1] 1/25
2012 [6] 4/16 4/25 5/3 5/15 5/21 5/24
2013 [1] 13/17
2014 [1] 28/15
2019 [1] 20/12
2020 [2] 1/5 20/14
20530 [1] 1/22
21 [2] 5/15 5/21
21st [1] 4/25
22314 [1] 1/16
2255 [3] 19/24 22/9 27/18
25 [1] 37/25
25 percent [1] 14/3
2725 [1] 28/1
27th [2] 20/17 20/19

## 3

30 [1] 16/17
3005 [1] 3/20
3006 [2] 3/21 4/17
303 [1] 30/3
3261 [2] 1/3 2/2
333 [1] 1/24
3599 [69]
3rd [2] 19/16 20/18

## 4

400 [1] 1/18
4:00 [2] 39/4 47/2
4th [1] 1/21

## 5

5510 [1] 1/18
555 [1] 1/21
5th [1] 37/12

## 6

64106 [1] 1/19
6th [1] 20/20

## 7

7th [1] 20/22

## 9

9th [1] 1/18

## A

a.m [1] 1/6
ABA [3] 18/21 36/8 37/2
abandoned [1] 44/22
abandonment [3] 25/1 44/20 45/23
abandons [1] 33/4
able [6] 3/5 10/21 37/14 38/12 39/20 44/17
above [2] 15/2 48/5
above-entitled [1] 48/5
acceptable [2] 39/4 39/5
access [16] 9/3 9/6 13/16 22/12 22/14 28/22 28/23 36/12 38/15 38/16 38/17 38/19 41/12 42/20 42/21 43/14
according [1] 43/2
accordingly [1] 45/10
account [1] 43/12
acronym [1] 9/11
action [2] 1/3 2/2
actual [2] 8/10 44/21
actually [14] 3/4 5/4 5/20 6/9 6/19 7/10 8/3 17/3 27/18 34/3 37/20 37/23 44/15 45/24
add [2] 18/3 26/15
addition [1] 35/15
additional [11] 18/24 20/9 26/3 30/3 30/17 32/9 36/15 38/12 39/3 39/3 46/24
address [1] 19/3
addresses [1] 11/8
adequate [2] 23/13 40/17
adjourned [1] 47/4
adopt [1] 44/19
adopted [1] 34/6
advantage [1] 18/22
affects [1] 17/12
again [7] 15/11 28/25 36/24 37/19 38/2 45/11 46/16
ago [3] 19/6 19/8 21/14
agree [3] 18/7 18/25 32/18
agreement [1] 37/20
AHMED [2] 1/12 2/4
akin [1] 40/7
al [2] 1/5 2/3
ALAN [2] 1/17 2/6
Alexandria [1] 1/16
Alfred [1] 1/15
allegation [2] 29/7 44/21
allegations [1] 29/6
allow [1] 4/9
allowed [3] 10/5 17/19 39/24
alone [2] 11/6 39/16
alternative [2] 4/18 5/12
Although [2] 28/15 35/18
always [1] 45/2
amounts [1] 32/24
Amy [1] 12/21
announce [1] 33/19
Anthony [1] 21/16
apparent [2] 3/3 27/25
apparently [1] 19/13
appeal [1] 36/12
appealability [2] 12/9 12/10
appeals [2] 10/10 10/11
appearance [2] 5/19 27/18
appearances [3] 1/10 3/23 15/4
appeared [2] 3/21 7/12
Appearing [2] 2/3 2/5
appellate [2] 6/24 13/12
application [19] 17/3 19/8 19/10 19/12 21/11 22/8 24/6 28/6 29/19 30/8 35/4 35/5 35/17 36/3 36/9 37/12 37/16 40/2 44/16
applications [1] 22/3
applied [1] 21/14
applies [6] 3/2 17/2 18/24 23/12 27/4 45/19
appoint [2] 25/12 26/3
appointed [41] 3/4 3/11 3/19 3/25 4/17 6/4 6/6 10/8 11/23 12/22 15/1 15/5 15/8 15/21 16/5 16/10 16/18 17/1 17/4 18/20 18/24 18/25 24/6 24/16 24/18 24/22 25/14 26/8 27/3 27/5 27/15 27/17 30/14 31/2 38/4 38/7 40/9 40/12 45/11 45/12 45/18
appointing [4] 5/16 5/19 6/2 30/10
appointment [14] 3/14 4/9 4/12 4/14 4/19 5/1 14/23 21/17 21/21 23/22 24/1 27/4 27/6 27/25
appointments [3] 6/25 44/25 45/1
appreciate [3] 2/9 45/20 46/25
appreciative [1] 7/5
appropriate [1] 17/18
appropriations [1] 14/19
approval [1] 8/17
approved [2] 15/5 15/12
April [2] 4/16 5/24
April 2012 [2] 4/16 5/24
arbitrary [2] 22/12 22/13
argued [2] 18/4 39/14
argument [13] 2/22 2/23 15/20 16/8 16/22 34/21 36/2 42/11 46/2 46/7 46/13 46/17 46/18
arguments [6] 15/17 36/11 36/11 38/17 45/21 46/6
around [1] 21/13
assembling [1] 2/9
assessment [2] 10/17 18/22
assign [1] 40/15
assigned [1] 9/25
assignment [2] 30/11 30/16
assist [2] 15/2 19/19
assistance [1] 22/20
associate [1] 40/9
assume [3] 10/13 16/11 38/23
assumed [1] 11/10
assuming [2] 17/5 31/21
assured [1] 19/20
attention [1] 7/9
attorney [10] 3/19 6/2 16/5 16/15 27/3 30/1 30/4 32/15 34/11 41/7
attorney's [5] 1/17 1/20 16/4 31/22 37/20
attorneys [14] 3/4 3/25 5/18 5/25 8/7 10/20 23/14 29/24 30/14 31/19 35/2

## A

attorneys... [3] 36/17 39/24 45/18
August [1] 19/16
August 3rd [1] 19/16
authored [1] 35/15
available [2] 14/19 36/20
Avenue [1] 1/24
average [2] 19/23 19/25
aware [1] 33/22
away [1] 39/11

## B

B-O-X [1] 9/13
BABCOCK [17] 1/11 2/4 3/6 4/3 4/4 4/8 7/10 7/15 12/1 15/10 18/2 18/6 26/14 33/17 36/10 39/8 43/22
Babcock's [2] 28/22 36/2
back [10] 2/19 3/8 8/18 14/4 15/7 15/9 22/10 37/18 41/18 44/24
background [1] 18/2
Bankruptcy [1] 1/24
BARR [2] 1/5 2/3
based [6] 21/4 21/5 27/4 29/6 30/10 43/1
Battaglia [4] 15/18 25/2 28/19 45/25
Battle [1] 21/16
became [1] 8/18
become [1] 30/22
becomes [1] 36/4
began [1] 22/8
begin [2] 19/10 19/16
beginning [1] 36/25
begun [1] 19/8
behalf [3] 7/11 15/4 29/25
belief [3] 13/16 38/4 38/5
believes [1] 11/22
Bell [2] 39/15 41/13
benefit [2] 6/24 6/24
best [3] 10/16 37/3 38/16
better [4] 3/24 8/8 22/16 38/20
beyond [3] 20/8 20/25 28/6
big [1] 43/15
bill [5] 12/23 13/17 13/20 14/2 14/5
billing [2] 13/2 15/5
bills [2] 14/6 32/2
Blegen [1] 27/3
both [9] 3/24 13/13 18/10 35/13 39/2 40/12 40/13 41/15 41/16
Box [6] 9/3 9/9 9/12 43/1 43/11 43/15
Box.com [1] 9/14
Branch [2] 31/17 34/6
breached [1] 41/3
brief [3] 3/10 24/13 28/17
briefly [1] 39/9
briefs [1] 46/5
bringing [1] 7/9
brought [1] 30/17
budgeting [1] 13/2
building [1] 34/16
bulk [1] 43/16
burden [2] 36/5 40/4
burdens [1] 40/21
Bureau [3] 30/18 34/11 36/19
bus [1] 31/9
busy [1] 30/22

## C

call [2] 6/11 8/22
called [2] 39/17 43/10
came [4] 4/12 8/22 19/5 20/23
can [17] 2/11 2/16 6/9 6/11 6/13 7/12 9/3 10/4 10/16 17/21 22/24 22/25 32/24 34/12 37/17 37/21 43/3
capable [3] 28/5 40/7 45/8
capital [10] 18/12 18/14 19/20 20/11 32/5 32/18 40/19 41/25 42/1 42/2
capitally [5] 18/19 41/14 41/19 41/22 42/4
captioned [1] 15/2
cards [1] 34/16
care [3] 33/22 33/23 47/3
carefully [2] 3/3 35/19
carrying [2] 16/12 21/10
case [75]
caseload [1] 21/4
cases [14] 2/21 10/11 18/20 18/23 19/20 20/15 24/19 28/18 28/20 30/2 32/24 40/23 41/10 45/25
catch [1] 11/14
cause [1] 16/1
causing [1] 14/1
cell [1] 11/7
cert [1] 22/4
certain [3] 18/22 42/25 44/2
certainly [5] 6/13 13/19 18/23 37/5 37/5
certainty [1] 17/14
certificate [2] 12/9 12/10
certify [1] 48/4
cetera [1] 15/6
challenging [2] 9/3 9/9
charge [1] 28/12
chicken [1] 38/10
Chief [1] 2/12
choice [2] 32/8 32/12
choose [1] 32/19
chose [1] 14/5
Christeson [4] 15/18 18/10 18/13 41/24
Christine [1] 27/3
Circuit [9] 2/22 12/8 12/11 12/20 12/22 21/14 22/2 28/1 29/5
Circuit's [1] 12/25
circuits [1] 21/13
circumstance [1] 14/10
circumstances [4] 2/10 22/16 31/10 46/11
citations [2] 27/19 28/2
cite [1] 44/25
cited [2] 3/10 28/17
cites [3] 3/10 38/24 39/3
City [1] 1/19
civil [2] 1/3 2/2
clarification [1] 4/15
clarify [6] 5/10 5/11 5/22 24/15 43/4 43/5
Clark [1] 39/22
Clause [4] 22/14 29/14 41/16 44/19
clear [5] 2/18 6/25 18/9 26/22 34/21
clearly [1] 2/17
clemency [56]
Clerk [1] 7/9
client [5] 8/17 8/19 10/23 19/1 20/20
clients [6] 20/14 20/15 20/18 20/19 40/19 40/20
clock [1] 19/16
closer [1] 25/1
cloud [1] 43/1
co [5] 5/2 15/1 24/10 35/9 35/16
co-counsel [5] 5/2 15/1 24/10 35/9 35/16
collateral [1] 3/9
COLUMBIA [2] 1/1 1/21
comments [1] 39/9
commitment [1] 24/25
committed [2] 29/16 31/16
communicate [1] 35/8
commutation [2] 7/22 34/14
compelling [1] 31/15
compensated [1] 23/14
compensation [2] 14/12 14/17
competency [3] 16/6 21/19 21/19
complaint [3] 20/1 30/4 30/5
complete [1] 17/18
completely [1] 40/17
complex [1] 18/23
concede [1] 31/11
concessions [1] 38/12
conclusion [1] 41/11
CONFERENCE [1] 1/8
confirm [1] 12/16
Congress [3] 18/11 24/8 37/4
Congress' [2] 18/15 33/10
congressional [2] 33/1 41/16
conjunction [1] 42/5
consider [4] 28/14 33/11 41/6 47/2
consistent [2] 21/12 22/1
consistently [2] 24/18 38/4
Constitution [2] 1/24 28/8
constitutional [2] 28/21 33/17
constraints [2] 7/4 9/7
consult [1] 24/9
consulted [1] 19/18
contacts [2] 9/23 43/17
contemplated [2] 27/9 46/19
contemplates [1] 30/13
context [1] 16/9
continue [3] 16/16 16/21 16/21
continued [1] 38/6
continues [1] 37/1
continuity [1] 32/22
continuous [1] 2/24
continuously [1]

**C**

continuously... [1] 15/22
conversation [1] 35/12
conversations [1] 36/22
coordinated [1] 35/15
copies [1] 8/25
Cornell [1] 1/12
coronavirus [1] 17/12
correspondence [1] 30/1
counsel [61]
counsel's [1] 27/25
country [1] 21/13
couple [3] 16/24 19/6 19/11
course [3] 11/9 14/16 26/7
court [31] 1/1 1/23 1/23 3/17 5/1 6/10 6/19 6/20 6/21 10/10 13/12 13/13 13/15 14/1 14/3 14/14 15/5 18/8 19/11 19/15 22/25 25/24 27/21 32/11 39/14 41/4 41/23 42/5 42/6 48/3 48/9
court's [5] 2/7 2/12 6/14 6/24 15/18
courts [3] 1/24 19/19 21/13
COVID [4] 20/23 40/5 40/12 48/8
COVID-19 [3] 20/23 40/5 48/8
create [1] 16/23
created [1] 43/12
crime [1] 33/21
criminal [1] 39/17
curious [1] 17/1
current [2] 17/20 21/22
currently [1] 44/5
curve [1] 32/23
cut [2] 13/25 32/3
cv [1] 1/3

**D**

date [13] 19/10 19/13 19/17 19/21 19/25 20/7 21/2 21/6 22/4 34/12 36/4 46/8 48/14
dates [4] 20/4 20/13 20/14 40/20
daunting [1] 10/25
day [3] 17/15 20/22 31/8
days [8] 10/17 19/6 37/11 37/21 37/25 37/25 39/11 42/19
DC [3] 1/4 1/22 1/25
dead [2] 22/14 22/15
deadline [1] 39/11
deal [3] 9/25 17/11 28/20
death [9] 4/21 18/17 20/3 20/3 22/17 23/7 31/3 32/23 33/2
December [1] 20/18
December 3rd [1] 20/18
decided [2] 8/19 33/20
decision [6] 15/18 18/15 21/8 29/4 29/5 31/16
declaration [3] 7/17 7/18 7/19
declarations [2] 17/8 35/14
defend [1] 42/8
defendant [6] 2/5 16/5 16/6 19/7 23/22 32/19
defendant's [1] 21/15
defendants [10] 1/6 1/17 18/12 19/4 23/12 23/20 32/6 39/14 40/25 42/1
defender [20] 3/16 4/19 4/20 5/1 5/12 12/14 14/11 14/11 14/20 21/18 27/16 28/4 30/1 30/7 30/13 30/19 31/1 36/20 38/6 45/7
defender's [12] 5/16 20/9 21/10 24/16 24/18 29/20 35/2 40/19 42/25 43/10 44/2 44/5
defenders [2] 23/16 24/3
defense [1] 46/4
defer [3] 4/4 8/10 9/8
delay [1] 37/10
demonstrate [1] 28/3
demonstrates [1] 18/16
denial [3] 12/13 22/12 22/13
denied [5] 3/18 4/13 21/21 21/21 22/4
deny [2] 19/15 33/20
denying [4] 5/23 5/24 6/1 12/11
Department [1] 38/9
deprived [1] 22/18
Deputy [1] 7/9
designated [1] 28/16
designed [1] 36/12
desire [1] 29/8
desired [4] 32/5 33/10 37/8 37/9
details [1] 7/13
determine [1] 19/19
die [1] 40/13
difference [2] 24/23 24/24
different [6] 9/17 14/12 29/13 29/13 45/10 46/15
difficult [1] 42/22
diligent [1] 21/3
direct [2] 39/2 39/14
directly [2] 3/6 4/10
disagree [2] 33/15 45/21
disconnect [1] 36/2
discounted [2] 12/24 14/2
discovery [1] 36/16
discretion [2] 28/24 33/13
discussed [1] 45/24
disingenuous [1] 22/5
dispositive [3] 23/24 23/24 24/3
disruption [1] 15/23
distinguishable [1] 29/12
district [26] 1/1 1/1 1/9 1/18 1/21 1/24 3/17 13/12 13/15 14/3 14/12 19/6 21/12 21/18 27/16 28/5 29/20 30/7 30/20 31/2 35/3 35/9 36/21 38/6 38/18 45/8
docket [3] 6/8 15/9 30/2
doctor [1] 17/8
document [3] 7/25 8/22 35/19
documentation [1] 37/2
documents [7] 9/6 28/14 37/15 43/11 43/13 43/18 43/25
done [7] 7/6 9/22 10/25 11/6 13/2 17/17 45/2
down [2] 20/23 31/8
dozens [2] 31/6 31/6
draft [3] 7/25 8/12 8/16
drafted [2] 8/9 19/13
drafter [1] 28/15
drafting [2] 8/10 19/10
Dropbox [1] 43/1
Duchardt [2] 4/12 5/25
due [11] 22/11 22/12 22/14 29/14 31/8 34/20 37/12 41/16 44/19 45/22 46/22
during [1] 48/7
duties [1] 11/20
duty [1] 41/3

**E**

e-mail [1] 11/8
e-mails [4] 28/13 30/18 43/13 43/19
e-voucher [1] 13/16
earlier [1] 18/7
easier [1] 9/6
easy [1] 46/25
EDWARD [2] 1/14 2/5
efforts [3] 7/20 8/3 16/21
eight [1] 39/25
Eighth [6] 12/8 12/11 12/20 12/22 12/25 28/1
either [6] 8/17 12/3 14/2 28/18 29/24 44/14
electronic [1] 43/9
Eleventh [1] 21/14
eligible [1] 20/4
else [10] 11/11 11/17 12/2 18/3 26/14 31/5 33/6 37/10 46/10 47/1
elucidate [1] 17/25
employees [1] 30/19
enacted [1] 37/5
engaged [1] 38/10
enhanced [2] 18/12 42/2
enough [5] 6/17 26/23 33/20 38/1 46/23
ensured [1] 18/11
enter [2] 5/18 15/3
entered [7] 3/22 5/3 5/10 5/13 5/15 5/20 27/17
entertain [1] 25/12
entire [3] 42/20 43/8 43/11
entitled [5] 23/22 23/25 42/3 42/7 48/5
entitlement [5] 2/24 15/21 28/22 29/8 34/18
essence [1] 17/23
essentially [1] 38/8
estate [1] 40/15
et [3] 1/5 2/3 15/6
ethical [2] 18/20 25/7
even [11] 5/3 11/7 14/3 28/12 28/14 29/3 29/17 29/18 32/1 32/5 33/5
event [1] 29/11
everybody [1] 2/11
everyone [3] 2/14 2/19 42/15
evidence [1] 45/5

**E**

ex [1] 5/15
exactly [2] 15/1 30/15
example [4] 20/12 28/12 33/4 36/16
excess [1] 35/4
executed [2] 21/19 35/13
execution [16] 19/21 19/25 20/4 20/6 20/13 20/14 20/18 21/2 21/6 22/4 34/12 34/19 36/4 40/20 41/4 41/5
executive [5] 16/7 31/17 33/13 34/6 36/12
exercise [1] 33/13
existing [1] 46/21
exists [2] 37/23 45/16
expectation [1] 30/21
experience [6] 10/9 10/10 16/13 25/4 25/4 40/1
experienced [7] 15/24 15/25 26/4 33/3 38/17 38/18 42/13
expert [5] 9/18 9/19 28/13 36/16 43/16
expertise [1] 4/20
experts [11] 9/24 9/25 10/3 10/4 11/3 11/4 11/5 19/18 31/7 36/18 36/20
explain [1] 26/24
explaining [1] 19/12
explore [1] 3/23
extensive [4] 29/21 34/25 36/14 36/23
extensively [1] 29/16
extent [3] 35/8 46/1 46/12
exterminated [1] 22/19

**F**

facilities [1] 10/5
facility [1] 8/20
facing [1] 4/21
fact [4] 27/9 31/17 34/23 35/13
factor [2] 23/24 23/25
facts [5] 19/11 20/9 27/19 27/24 38/20
factual [1] 4/5
factually [1] 3/24
failing [1] 41/3
failsafe' [1] 39/17
fair [3] 32/25 38/1 46/23
fairly [1] 22/24
familiarity [2] 28/10 32/15
far [5] 8/20 13/2 28/6 35/4 39/15
farthest [1] 8/16
fault [1] 25/3
faxed [1] 8/17
February [1] 20/14
February 2020 [1] 20/14
fed [1] 40/7
federal [40] 3/15 4/19 4/20 5/1 5/12 5/16 12/14 14/10 14/11 14/20 18/11 19/19 19/20 20/3 20/9 21/10 21/12 21/18 23/16 24/3 24/16 24/17 27/16 28/4 29/15 29/20 29/25 30/6 30/19 31/1 35/2 36/20 38/5 40/19 42/1 42/25 43/9 44/1 44/5 45/7
feedback [1] 2/15
feel [3] 6/18 10/21 10/24
feeling [3] 13/24 17/14 17/15
felony [1] 10/11
Fenner [4] 3/17 4/13 6/17 46/9
Fenner's [1] 11/21
Fifth [2] 2/22 29/5
fight [1] 31/18
figure [1] 31/23
file [17] 6/20 8/23 9/8 33/6 33/7 35/11 35/16 37/21 38/12 38/14 39/2 41/3 42/15 42/18 43/9 43/11 43/13
filed [7] 5/10 5/11 8/21 12/10 12/20 35/10 46/5
files [1] 42/25
filing [3] 7/11 7/15 43/3
filings [1] 35/24
final [1] 44/11
finalization [1] 19/24
finally [3] 5/2 21/8 22/10
financially [3] 23/12 23/20 23/21
find [4] 9/3 34/20 42/22 43/16
finding [3] 9/8 9/11 36/7
fine [3] 4/6 23/10 32/12
firm [1] 40/15
first [13] 11/19 19/14 19/23 20/9 22/24 25/22 27/1 27/2 29/25 31/14 42/15 42/18 44/12
fit [1] 23/15
five [1] 10/9
focused [1] 35/22
followed [2] 15/4 45/18
For the Defendants [1] 1/17
foregoing [1] 48/4
form [1] 22/25
formally [1] 17/3
format [1] 9/17
forth [1] 17/6
forward [1] 46/24
four [2] 17/10 20/1
frankly [1] 33/22
Friedman [2] 6/1 39/22
front [3] 7/24 34/3 46/9
fulfilling [1] 45/9
full [1] 21/3
functionally [3] 40/5 44/19 44/22
funded [1] 22/2
funding [9] 4/18 12/8 12/12 12/13 12/20 18/9 21/15 21/20 23/19
fungible [1] 40/18
furnish [1] 18/15
further [2] 38/22 44/8

**G**

game [1] 38/10
gather [1] 29/21
gathered [1] 37/15
general [3] 21/24 34/11 35/12
generally [3] 28/20 30/12 45/2
George [1] 21/16
Georgia [1] 21/18
gets [1] 15/7
given [4] 2/10 26/5 34/25 36/13
giving [2] 26/9 47/1
goes [1] 16/20
Gohara [1] 6/1
good [6] 16/1 28/6 30/8 35/4 38/19 39/1
govern [1] 46/19
governing [1] 30/12
government [14] 3/10 9/5 9/16 11/15 19/4 20/6 26/25 30/21 32/8 39/12 39/13 40/14 46/5 46/7
Government's [2] 21/5 40/3
governor [1] 20/22
grace [2] 33/13 36/12
grant [3] 33/25 34/13 34/14
granted [2] 3/18 4/13
granting [1] 5/23
grants [1] 42/1
great [2] 2/8 17/11
greatest [1] 37/3
grossly [1] 46/7
guess [7] 7/10 9/4 10/17 12/23 15/7 25/19 34/9
Guide [1] 30/12

**H**

habeas [3] 28/20 38/17 42/2
half [2] 13/19 20/1
Hall [1] 1/13
handling [1] 10/11
hands [1] 21/1
handset [1] 2/16
happened [2] 3/12 16/2
happy [2] 4/3 27/23
Harbison [5] 15/19 18/10 18/15 22/15 39/15
hard [1] 22/15
Harwell [17] 3/22 7/2 10/14 12/21 17/14 20/10 20/16 22/6 23/8 23/15 25/13 27/13 27/18 35/7 37/14 39/21 44/15
hear [2] 2/16 26/13
heard [1] 34/7
hearing [7] 4/25 5/3 5/14 19/5 20/20 45/5 48/7
help [3] 10/21 17/25 46/25
helpful [2] 15/14 23/9
Henry [21] 3/22 4/22 4/23 7/2 10/14 12/21 17/14 20/10 20/15 20/21 20/23 22/6 23/7 23/15 25/12 27/12 27/17 35/7 37/14 39/21 44/15
here's [1] 7/25
hereby [1] 33/25
herself [1] 28/15
high [1] 32/22
himself [1] 30/1
history [1] 4/9
hit [1] 31/9
honestly [1] 14/4
honor [68]
Honor's [4] 31/18 34/24 45/13 46/20
HONORABLE [1] 1/9
HOOK [3] 1/23 48/3 48/14
horrible [1] 33/21
hour [1] 23/15
house [1] 34/16
huge [1] 32/23
Hughes [1] 1/13
human [1] 22/20

**H**

hypothetical [4] 25/11 25/17 31/18 45/13

**I**

ideal [1] 38/16
identified [2] 23/2 37/6
identifies [1] 23/1
III [1] 1/20
ill [2] 22/18 33/23
illness [1] 26/8
imagine [1] 22/15
imminently [1] 20/6
implications [2] 4/1 17/7
importance [2] 18/17 18/19
important [5] 11/24 16/9 16/15 17/22 20/8
impose [3] 32/7 33/12 46/21
impression [1] 37/19
impugn [1] 24/25
in-person [1] 36/24
inability [2] 26/1 45/14
inaccurate [1] 5/5
incapacitated [3] 25/24 35/8 40/5
incapacitation [1] 26/1
inclination [1] 46/13
inclined [1] 25/25
include [3] 28/1 33/1 36/9
including [1] 2/22
inconsistency [1] 17/11
incorrect [1] 40/25
incorrectly [1] 17/25
indicate [1] 11/22
indication [3] 32/3 32/4 35/6
indigent [2] 22/17 23/22
individual [3] 15/22 30/14 31/11
individuals [3] 4/21 17/13 28/11
information [3] 21/5 32/24 34/3
injunction [1] 46/4
inquiry [1] 44/18
insinuated [2] 19/4 19/4
insinuating [1] 19/6
insinuation [1] 44/13
instead [1] 6/2
instinct [1] 25/21
instructed [2] 5/9 5/17
insufficient [1] 41/6
insurmountable [2] 36/5 40/4
integrity [1] 24/25
intended [1] 44/14
intending [1] 46/17
interaction [1] 35/1
interactions [1] 44/16
intercede [1] 29/25
interested [1] 33/16
interfere [1] 34/10
interferes [1] 34/9
internal [1] 43/3
interpret [1] 26/23
interpreting [1] 42/5
interrupt [3] 27/11 33/14 37/18
intervention [1] 30/5
interviewed [2] 31/6 31/7
interviews [1] 9/19
intimate [1] 28/10
into [2] 2/15 10/5
introduce [1] 2/17
investigation [3] 7/20 36/15 36/24
invitation [1] 26/23
invite [1] 27/22
invited [1] 27/21
involved [5] 4/10 8/3 16/15 32/1 32/24
issue [1] 36/1
issues [3] 16/12 17/25 30/16
Ithaca [1] 1/13

**J**

JEFF [3] 1/23 48/3 48/14
JOHNNY [2] 1/20 2/6
JOSEPH [2] 1/11 2/4
judge [11] 1/9 3/17 3/17 4/12 5/13 6/17 11/9 11/21 44/25 45/3 46/9
Judge's [2] 2/12 5/23
judgment [2] 21/4 34/4
judiciary [2] 30/12 30/13
Judy [1] 39/22
jurisprudence [1] 42/5
justice [2] 38/9 39/17
justify [1] 45/15

**K**

Kansas [1] 1/19
keep [1] 41/19
keeping [1] 9/8
keeps [1] 42/25
Kelly [1] 12/21
kept [1] 43/2
kind [3] 8/8 36/14 37/1
knowledge [6] 8/13 10/2 15/24 28/11 28/14 35/1
knows [1] 33/3

**L**

laboring [1] 16/12
lack [1] 26/1
lacked [1] 4/21
language [6] 18/10 18/18 22/11 22/12 39/15 41/23
large [3] 36/2 36/17 43/12
last [9] 13/19 14/2 19/5 22/18 30/9 33/4 36/10 39/25 45/14
late [3] 19/9 46/3 46/8
later [3] 20/22 37/21 46/14
latest [1] 37/3
laughable [1] 40/6
law [3] 1/12 1/15 32/21
lawyer [10] 16/18 25/3 31/4 31/6 33/2 40/6 40/15 40/18 42/4 42/13
lawyers [10] 16/10 16/17 16/25 17/9 21/3 22/21 26/9 40/18 40/22 42/8
lead [3] 10/19 28/15 28/16
leading [1] 28/12
leaping [1] 34/17
learned [1] 26/4
learning [1] 32/23
least [14] 2/23 7/18 16/8 16/9 16/22 17/17 22/3 29/24 35/13 35/13 37/14 46/3 46/13 46/14
leave [3] 6/22 30/22 31/21
left [2] 16/24 41/6
legal [5] 8/7 15/16 18/14 36/11 41/24
legally [1] 4/1
lengthy [1] 46/5
less [4] 10/9 10/10 16/14 28/5
letter [2] 22/15 22/15
level [1] 17/13
lifting [1] 6/17
light [2] 25/25 26/8
likelihood [1] 28/4
limit [1] 33/12
limitation [1] 33/17
limitations [1] 48/9
line [3] 2/6 11/18 12/2
LISA [6] 1/2 2/2 2/7 5/9 12/19 43/7
list [2] 23/2 37/3
listening [1] 45/21
litigators [1] 20/11
little [1] 19/21
load [1] 21/10
logic [1] 30/25
logistical [1] 35/12
long [3] 21/14 26/9 42/12
long-standing [1] 26/9
longer [1] 20/3
look [4] 15/9 35/11 37/18 46/24
looked [2] 3/8 3/12
looking [1] 3/2
lot [1] 26/10
lots [1] 40/16

**M**

ma'am [1] 13/8
magic [1] 27/5
mail [1] 11/8
mails [4] 28/13 30/18 43/13 43/19
maintain [1] 8/24
maintained [1] 43/9
making [5] 6/20 12/4 15/16 38/24 46/12
managing [2] 30/21 40/24
mandate [1] 41/16
mandatory [2] 18/13 41/24
many [3] 27/10 27/10 27/24
MARGULIES [2] 1/11 2/5
MARIE [2] 1/2 2/3
Martel [3] 18/10 18/12 42/1
Maryland [1] 3/16
material [3] 15/10 16/20 39/3
materials [2] 9/1 39/12
matter [14] 6/16 12/15 13/22 17/22 21/9 24/2 26/22 31/17 34/22 39/16 40/11 41/2 44/4 48/6
matters [1] 23/7
may [13] 3/5 3/6 6/13 15/8 18/24 24/9 33/16 33/24 34/10 36/9 42/3 43/6 44/2
Maybe [1] 46/14
McFarland [1] 39/18
mean [9] 6/23 8/15

**M**

mean... [7] 15/16 25/15 25/16 26/10 32/17 32/18 42/7
meaningful [2] 38/15 41/12
mechanism [3] 23/23 23/24 24/4
meets [1] 42/11
members [1] 44/1
mentally [2] 22/18 33/23
mention [1] 20/24
mercy [1] 39/16
met [2] 10/8 11/4
microphone [1] 2/14
Middle [13] 21/18 27/16 28/5 29/20 30/7 30/20 31/2 35/3 35/9 36/21 38/6 38/18 45/8
might [8] 9/19 10/20 30/22 30/22 34/1 34/2 43/12 46/15
mind [4] 31/22 33/8 33/18 37/4
minimal [4] 22/11 22/11 32/14 35/4
minute [1] 33/4
Miriam [1] 6/1
Missouri [1] 1/18
misunderstanding [1] 40/21
mitigation [1] 33/24
MO [1] 1/19
moment [1] 24/10
Monday [1] 38/8
MONTGOMERY [21] 1/2 2/3 19/7 19/18 19/22 23/21 25/5 25/8 26/2 29/23 30/5 32/10 33/23 38/10 38/11 39/20 42/7 44/6 44/22 44/23 45/6
Montgomery's [4] 21/2 35/1 38/20 40/23
months [1] 26/11
moot [1] 34/1
more [8] 3/2 3/5 18/9 25/6 25/21 29/9 29/14 32/15
MOSS [1] 1/9
most [2] 38/16 38/17
motion [11] 3/8 3/13 3/18 4/11 5/10 5/11 16/4 16/5 25/12 25/23 46/3
motions [2] 15/12 21/16
move [1] 20/6
moving [1] 2/10
Mr. [13] 4/12 5/25 11/11 11/16 26/14 26/18 30/24 37/18 39/6 39/9 42/11 43/25 44/10
Mr. Duchardt [2] 4/12 5/25
Mr. Simpson [9] 11/11 11/16 26/14 26/18 30/24 37/18 39/6 43/25 44/10
Mr. Simpson's [2] 39/9 42/11
Mrs. [12] 19/7 19/18 19/22 23/21 25/5 25/8 26/2 33/23 39/20 40/23 42/7 44/6
Mrs. Montgomery [11] 19/7 19/18 19/22 23/21 25/5 25/8 26/2 33/23 39/20 42/7 44/6
Mrs. Montgomery's [1] 40/23
Ms. [90]
Ms. Babcock [1] 36/10
Ms. Babcock's [2] 28/22 36/2
Ms. Harwell [16] 3/22 7/2 10/14 17/14 20/10 20/16 22/6 23/8 23/15 25/13 27/13 27/18 35/7 37/14 39/21 44/15
Ms. Henry [20] 3/22 4/22 4/23 7/2 10/14 17/14 20/10 20/15 20/21 20/23 22/6 23/7 23/15 25/12 27/12 27/17 35/7 37/14 39/21 44/15
Ms. Montgomery [7] 29/23 30/5 32/10 38/10 38/11 44/22 45/6
Ms. Montgomery's [3] 21/2 35/1 38/20
Ms. Nouri [37] 3/5 3/11 3/19 4/4 4/9 4/17 5/4 5/7 7/11 7/16 11/12 11/18 11/20 11/25 12/2 12/7 17/17 18/20 22/7 24/4 24/21 24/25 26/21 27/2 28/9 28/10 31/25 36/22 38/3 38/19 39/21 42/11 42/11 42/14 42/17 43/5 45/7
Ms. Nouri's [4] 7/11 21/8 26/1 34/25
much [6] 17/25 18/6 25/6 25/6 26/17 35/19
must [2] 37/13 37/13
mute [5] 2/14 5/8 12/18 43/6 43/8
myself [2] 6/2 10/24

**N**

name [2] 2/17 21/16
named [1] 27/3
national [1] 43/9
nature [1] 13/3
nearly [1] 38/3
necessarily [3] 36/11 43/14 43/18
necessary [1] 41/8
need [14] 2/10 6/23 9/1 9/20 15/9 21/22 25/10 25/12 25/20 26/2 26/17 32/13 39/2 46/20
needed [1] 30/16
needs [3] 5/6 16/1 17/17
new [2] 26/8 41/6
next [1] 31/8
night [1] 38/9
nonetheless [2] 34/20 36/19
normal [1] 32/5
North [1] 1/15
not just [1] 37/24
note [4] 28/15 29/23 30/2 48/7
noted [1] 29/16
notice [3] 2/9 19/24 23/1
notwithstanding [1] 14/23
Nouri [41] 2/7 3/5 3/11 3/19 4/4 4/9 4/17 5/4 5/7 5/9 7/11 7/16 11/12 11/18 11/20 11/25 12/2 12/7 12/19 17/17 18/20 22/7 24/4 24/21 24/25 26/21 27/2 28/9 28/10 31/25 36/22 38/3 38/19 39/21 42/11 42/11 42/14 42/17 43/5 43/8 45/7
Nouri's [4] 7/11 21/8 26/1 34/25
November [7] 1/5 5/3 5/20 20/20 20/22 37/12 37/12
November 15th [1] 37/12
November 1st [1] 5/20
November 2012 [1] 5/3
November 5th [1] 37/12
November 6th [1] 20/20
November 7th [1] 20/22
number [1] 30/3
numbers [1] 11/7
NW [2] 1/21 1/24
NY [1] 1/13

**O**

o'clock [2] 39/4 47/2
oar [1] 16/12
obligated [2] 27/8 31/19
obligation [1] 32/8
obligations [5] 19/1 23/2 25/7 31/20 45/9
obtain [1] 23/13
obviously [6] 3/5 15/25 16/17 17/22 18/8 36/8
occurred [2] 45/25 48/7
October [2] 20/17 20/19
October 27th [2] 20/17 20/19
off [5] 12/18 26/20 27/4 29/6 43/8
office [30] 1/17 1/20 5/16 9/16 12/14 12/21 13/1 20/10 21/10 24/16 24/18 27/15 28/4 29/20 29/24 30/21 30/23 31/1 31/1 31/5 31/10 35/2 38/5 40/7 40/19 42/25 43/10 44/2 44/5 45/7
offices [2] 30/10 30/14
official [2] 1/23 48/3
oftentimes [1] 9/5
Oklahoma [2] 21/25 21/25
one [23] 4/1 5/24 7/18 8/9 9/24 12/5 16/13 16/18 16/24 19/3 20/17 20/19 20/22 22/18 29/12 31/5 31/21 33/3 34/24 35/13 35/14 36/2 41/18
ongoing [1] 18/25
only [4] 22/20 24/22 30/11 41/5
onset [3] 35/14 37/11 38/3
opportunity [6] 17/24 22/18 26/24 27/1 34/7 38/2
option [1] 5/12
oral [2] 2/21 46/5
order [15] 2/12 3/9 5/2 5/10 5/13 5/15 5/19 5/23 6/17 12/11 14/25 15/5 17/17 24/15 26/11
ordered [2] 5/20 15/3
orders [4] 6/9 6/15 6/21 11/21
original [2] 4/11 5/23

O

others [1] 43/2
ought [1] 45/10
out [16] 7/13 7/24 8/22 16/25 19/5 19/14 20/1 20/9 24/5 31/23 34/1 34/22 38/2 41/1 41/17 43/24
outside [1] 32/13
over [2] 27/10 29/22
overview [1] 4/8
own [5] 12/4 16/4 21/6 25/3 35/9

P

p.m [1] 47/4
paid [5] 13/4 13/24 14/18 24/4 24/4
pandemic [1] 48/8
paralegals [2] 40/16 44/3
pardon [4] 30/1 34/10 34/14 37/20
part [9] 3/18 3/18 4/13 4/13 5/23 5/23 8/8 12/12 12/25
parte [1] 5/15
participate [1] 16/18
participated [1] 7/20
particular [5] 20/10 26/21 27/7 27/24 28/23
particularly [2] 18/23 29/12
parties [2] 17/2 17/21
partner [1] 40/9
passing [1] 18/11
pause [2] 24/13 30/24
payment [4] 13/5 13/10 21/9 23/23
Payne [1] 20/21
PD's [1] 40/7
penalty [4] 4/21 23/7 31/3 32/23
people [3] 31/12 36/9 38/18
per [2] 23/15 34/16
percent [1] 14/3
performing [1] 11/20
perhaps [5] 24/7 26/13 33/7 38/16 38/16
period [1] 29/22
permissible [1] 2/13
person [4] 31/22 35/11 36/24 42/7
persuaded [1] 2/23
persuasive [1] 29/12
petition [21] 7/21 7/22 8/1 8/4 8/9 8/11 8/13 9/20 10/18 10/25 13/6 16/14 17/18 26/6 28/16 28/21 29/9 31/8 41/4 42/16 42/18
petitioner [2] 15/3 15/4
petitioners [1] 42/2
phone [3] 2/20 11/7 36/10
placed [1] 40/22
placeholder [3] 8/21 35/16 37/21
plaintiff [4] 1/3 1/11 27/21 46/8
plaintiff's [1] 2/21
plaintiffs [1] 2/4
plan [1] 31/20
pleadings [1] 44/2
please [3] 2/15 2/17 48/7
PLLC [1] 1/15
point [15] 8/14 10/17 12/8 19/14 19/17 20/4 20/8 26/15 28/19 32/17 34/22 39/1 40/4 43/24 46/10
pointed [2] 20/1 41/1
policy [3] 30/13 33/1 33/10
portion [1] 43/13
posing [1] 11/14
position [3] 17/16 24/2 30/25
posits [1] 31/15
possesses [1] 41/8
possibility [1] 19/21
possible [2] 18/1 33/18
power [2] 34/10 34/11
practical [1] 31/19
practice [2] 21/12 22/1
practices [1] 21/6
preclude [1] 6/18
preliminary [1] 46/4
preparation [1] 13/6
prepare [10] 8/3 10/18 21/19 22/3 26/5 35/3 37/15 37/16 40/1 44/15
prepared [2] 7/19 35/22
preparing [7] 7/21 8/13 9/20 19/8 21/11 22/7 36/3
present [5] 16/11 22/19 26/5 40/1 46/14
presentation [1] 13/6
presenting [1] 21/11
President [7] 28/24 29/17 33/11 33/19 34/1 34/8 34/12
President's [2] 33/12 34/10
presumably [1] 15/24
previously [1] 18/4
printed [1] 7/24
prisoner [1] 22/17
prisoners [2] 18/17 20/2
Prisons [2] 30/18 36/19
Prisons' [1] 34/11
probably [2] 3/14 39/2
problem [5] 16/19 26/7 31/11 31/13 33/9
procedures [8] 15/6 29/13 30/12 32/5 33/10 37/9 46/19 46/21
proceeding [3] 27/25 29/2 34/19
proceedings [17] 2/13 3/9 16/7 16/7 18/16 19/2 21/20 21/23 22/9 24/13 25/5 25/8 29/15 39/23 41/25 47/4 48/5
process [27] 3/1 8/6 16/15 18/17 19/24 22/11 22/12 22/13 22/14 29/14 32/1 33/5 33/11 34/7 34/20 38/15 41/12 41/15 41/16 42/9 44/7 44/19 44/23 45/6 45/22 45/23 46/22
product [1] 29/22
professional [1] 31/20
Professor [11] 3/6 4/3 4/4 7/10 12/1 15/10 18/2 26/14 33/16 39/8 43/22
profound [1] 40/21
promised [1] 2/20
promptly [1] 22/24
proposed [3] 3/15 30/4 41/7
proposition [1] 3/11
protocol [1] 30/2
prove [1] 44/17
provide [7] 2/24 6/9 15/10 22/24 27/8 27/20 34/6
provided [2] 27/9 38/15
provides [1] 23/13
provision [1] 17/4
prudent [1] 34/2
public [22] 4/19 4/20 5/1 5/12 5/16 12/14 23/16 24/16 24/18 27/16 28/4 29/20 29/25 30/7 30/19 31/1 35/2 36/20 38/5 43/9 44/1 45/7
purposes [8] 6/14 7/21 9/20 12/4 15/16 16/11 46/14 46/15
pursuant [15] 3/4 3/20 5/10 5/19 6/4 6/6 6/21 11/21 12/9 16/10 17/1 17/4 25/13 27/6 31/3
pursued [1] 14/4
Purvis [1] 20/20
push [1] 41/18
put [2] 33/1 37/21

Q

qualifications [3] 10/8 26/2 41/8
qualified [17] 2/25 16/4 16/21 18/14 18/19 22/21 24/1 25/9 41/14 41/14 41/19 41/20 41/22 41/24 42/4 42/8 44/6
quality [1] 33/7
quickly [3] 2/11 6/17 38/24
quite [3] 33/18 33/22 41/20
quote [2] 39/15 41/7
quoting [1] 39/18

R

race [1] 22/20
raise [3] 15/17 31/23 46/7
raising [1] 46/2
Ramirez [11] 2/22 15/17 25/2 28/19 29/1 29/1 29/4 40/25 41/8 41/9 45/25
ran [1] 23/3
RANDOLPH [1] 1/9
read [7] 2/20 6/3 7/17 32/25 35/19 35/21 42/4
reading [1] 15/17
ready [1] 31/7
real [2] 31/23 40/15
realize [1] 25/11
really [11] 16/20 19/12 19/16 23/15 25/19 26/21 32/7 36/3 37/10 40/21 45/24
reason [3] 19/9 20/5 23/18
reasonable [1] 21/4
reasoning [1] 12/25
reasons [2] 19/22

**R**

reasons... [1] 22/19
rebroadcast [1] 2/13
recall [1] 12/7
receive [1] 20/4
received [4] 12/11 13/10 20/21 21/5
recently [2] 30/19 32/2
recitation [2] 18/7 26/20
recognized [1] 18/16
recognizing [1] 32/22
recollection [1] 5/14
recommendation [1] 17/9
record [18] 2/13 2/18 3/21 6/25 7/3 8/23 12/4 22/16 26/20 26/22 27/19 30/11 34/23 36/6 38/24 39/3 42/20 44/4
records [1] 31/21
reference [1] 6/9
references [1] 6/8
referred [1] 2/21
referring [2] 9/11 43/25
refile [1] 46/9
reflecting [1] 39/13
reflection [1] 41/15
reflective [2] 37/4 37/6
reflects [2] 21/9 40/21
refuse [1] 29/19
regard [1] 45/6
regarding [3] 27/24 30/13 39/16
regulations [1] 37/19
rehearing [1] 19/15
reinforced [1] 35/12
reinforces [1] 18/18
rejected [1] 12/23
related [1] 43/19
relating [2] 13/5 16/13
relevant [2] 19/12 28/11
relief [1] 28/23
remaining [1] 41/5
remedy [2] 45/11 46/22
remember [2] 13/18 14/4
remind [1] 2/11
remotely [2] 48/5 48/9
repeat [1] 18/6
repeatedly [1] 18/8
rephrase [1] 36/17
replace [1] 44/20
replaced [1] 16/3
reported [1] 48/5
Reporter [3] 1/23 1/23 48/3
reporting [1] 48/9
reports [2] 9/19 43/17
represent [13] 10/23 15/22 16/6 19/1 22/2 22/21 25/5 25/7 26/2 30/5 39/22 41/9 44/6
representation [11] 2/25 6/21 15/2 15/23 16/16 18/13 21/22 22/9 23/13 38/14 42/3
represented [3] 20/21 39/24 41/13
representing [4] 4/20 29/23 30/4 39/25
represents [1] 31/10
reprieve [4] 20/21 20/22 31/15 34/19
request [12] 2/7 4/13 12/8 12/10 12/12 12/13 13/5 21/20 21/21 32/9 32/11 32/11
requested [3] 4/18 5/25 20/13
requests [1] 4/14
require [2] 36/14 37/1
required [5] 18/21 27/6 28/7 35/5 36/24
requirement [1] 45/22
requirements [1] 32/14
requires [5] 29/14 36/15 36/17 36/18 36/23
requisite [2] 40/1 42/8
resources [1] 40/16
respect [10] 4/2 4/5 10/14 16/12 17/12 27/12 30/9 34/13 46/3 46/14
respond [1] 39/9
responsibility [1] 30/23
responsive [1] 44/18
results [1] 17/12
review [1] 3/9
reviewable [1] 32/16
right [24] 5/14 8/20 10/5 10/11 12/1 13/7 14/7 15/14 16/23 17/6 18/14 21/25 32/19 32/21 34/17 36/13 37/24 38/21 41/11 41/12 41/13 41/24 42/23 44/10
rights [2] 18/13 42/2
role [2] 9/25 10/1
rooted [1] 41/15
row [2] 20/3 20/3
rule [2] 37/23 46/18
rules [4] 2/12 18/21 30/11 34/6
Ruth [2] 6/1 39/22

**S**

same [6] 10/13 24/4 27/12 27/22 28/9 35/24
SANDRA [5] 1/11 2/4 4/8 7/15 18/6
satisfied [1] 39/21
satisfy [2] 26/6 32/13
saw [2] 29/5 38/8
saying [8] 17/8 20/25 24/24 33/15 34/5 34/17 40/8 41/19
scanned [1] 8/18
scheduled [1] 20/18
School [1] 1/12
Scott [1] 39/18
se [1] 34/16
seal [5] 6/12 6/13 6/16 6/17 6/18
sealed [1] 21/17
second [5] 7/7 27/11 30/25 35/6 45/14
secondly [1] 20/2
section [11] 2/24 3/4 3/20 3/20 23/12 27/7 31/3 33/8 45/1 45/19 46/19
security [1] 9/4
seek [1] 21/8
seeking [3] 8/16 14/12 14/17
seem [1] 32/21
sees [1] 26/25
selected [1] 43/11
sense [1] 24/7
sentence [1] 34/14
sentenced [2] 18/17 22/17
September [6] 4/25 5/4 5/11 5/15 5/21 20/12
September 19th [1] 20/12
September 21 [2] 5/15 5/21
September 21st [1] 4/25
serious [1] 9/7
serve [1] 3/19
services [3] 27/9 27/10 30/13
serving [2] 3/11 23/14
set [11] 17/6 19/21 20/6 20/14 21/2 21/6 22/5 34/11 36/4 39/11 41/17
setting [2] 19/24 24/7
seven [1] 20/13
several [2] 26/11 35/14
shall [2] 16/6 23/14
share [1] 19/11
sharing [1] 6/19
short [2] 2/9 41/5
show [1] 24/15
showing [2] 29/18 45/17
sick [2] 8/7 8/18
side [1] 33/24
sides [1] 39/2
significant [1] 28/21
significantly [1] 12/24
similarly [1] 16/4
simply [7] 3/22 21/1 25/21 29/8 33/2 41/2 44/16
SIMPSON [11] 1/17 2/6 11/11 11/16 26/14 26/18 30/24 37/18 39/6 43/25 44/10
Simpson's [2] 39/9 42/11
simultaneously [1] 23/8
single [1] 40/18
sit [1] 31/7
sitting [1] 21/1
situations [1] 30/15
skill [3] 25/4 40/1 42/8
slow [1] 42/22
sole [1] 28/24
somebody [2] 30/21 35/22
somehow [1] 34/8
someone [3] 33/2 33/5 46/9
sometime [1] 42/16
somewhat [1] 44/17
sorry [12] 5/8 11/13 12/18 19/4 20/12 23/4 25/18 29/1 33/14 37/17 43/7 46/8
sort [8] 17/13 24/7 34/16 35/11 37/2 38/10 45/15 46/6
sorts [1] 38/11
source [1] 37/15
speak [3] 2/15 2/18 3/5
speaking [3] 2/15 2/16 4/22
specific [3] 5/14

**S**

specific... [2] 5/17 5/25
specifically [3] 4/22 27/15 28/18
speed [3] 26/11 31/12 31/13
spent [1] 31/4
spoken [1] 11/5
square [1] 37/8
staff [1] 44/1
stage [3] 4/11 19/2 22/22
stakes [1] 32/22
stand [1] 34/6
standard [2] 37/6 42/12
standards [1] 36/8
standing [3] 2/12 26/9 37/23
start [3] 4/3 26/20 36/3
started [3] 8/6 8/13 37/11
state [1] 29/2
stated [2] 5/5 19/5
states [4] 1/1 1/9 29/13 29/14
STATUS [1] 1/8
statute [9] 15/19 18/9 23/21 24/6 28/7 32/16 32/20 32/25 35/5
statutory [1] 16/23
stay [1] 45/15
stayed [1] 41/4
steep [1] 32/23
step [1] 33/6
steps [1] 44/5
still [8] 3/1 6/13 14/22 16/24 37/21 43/6 45/11 45/19
stored [1] 9/17
strange [1] 14/9
Street [3] 1/15 1/18 1/21
stress [1] 14/1
strike [1] 16/19
strikes [2] 46/6 46/12
structure [1] 32/20
subject [1] 48/8
submission [1] 39/12
submissions [1] 46/24
submit [6] 13/20 14/5 14/6 29/9 29/19 30/8
submitted [4] 12/23 13/5 13/17 14/2
submitting [2] 28/6 32/2
subsequent [2] 19/2 27/17
subsequently [1] 4/14
substantial [6] 2/23 12/15 13/22 15/20 16/8 16/22
substantially [1] 16/14
substantive [1] 29/8
substitute [1] 46/21
substitution [1] 16/1
sufficient [1] 26/5
suggest [2] 22/6 32/21
suggestion [5] 29/18 30/6 34/25 40/3 40/6
Suite [1] 1/18
Summation [2] 9/5 43/10
summer [4] 13/17 13/18 13/18 20/11
super [1] 9/4
supersede [1] 34/8
supplant [1] 45/23
supplement [2] 4/9 38/2
supplemental [1] 39/12
supplemented [1] 5/6
support [2] 34/23 41/11
supports [1] 36/6
suppose [1] 6/19
Supreme [6] 15/18 18/8 19/15 41/23 42/5 42/6
sure [8] 7/6 7/12 9/10 11/15 33/15 34/5 35/23 41/20
sway [1] 33/24
symptoms [3] 20/23 35/15 37/11
system [5] 9/2 9/4 39/17 43/1 43/3

**T**

talk [1] 35/10
talking [3] 23/6 26/9 26/10
talks [3] 18/10 41/24 43/25
tangible [1] 7/25
task [1] 10/25
team [1] 36/17
technological [1] 48/9
tedious [1] 43/16
telephone [1] 7/17
TELEPHONIC [1] 1/8
temporary [1] 45/15
Tennessee [17] 5/13 5/17 8/23 20/13 20/14 27/16 28/5 29/21 30/7 30/20 31/2 35/3 35/10 36/21 38/6 38/19 45/8
Tenth [1] 22/2
term [1] 28/22
terribly [1] 35/22
test [3] 30/25 44/19 44/20
therefore [1] 48/8
thinking [3] 17/20 17/24 25/18
though [7] 3/12 3/22 5/3 6/18 29/3 32/1 33/5
thought [3] 5/22 20/25 42/21
thoughtfully [1] 25/20
three [3] 10/10 16/10 20/15
threshold [2] 29/18 45/17
throughout [3] 16/6 19/1 32/1
tick [1] 19/16
tight [1] 7/4
timeline [1] 37/9
timing [2] 27/4 27/8
title [1] 23/20
today [4] 17/14 28/3 39/4 47/2
today's [1] 2/13
together [1] 41/10
tomorrow [1] 17/15
took [2] 5/22 18/22
transcript [2] 1/8 48/4
transparent [1] 17/21
travel [1] 10/6
trial [3] 3/14 44/24 45/3
tried [1] 29/25
true [6] 7/1 10/13 21/24 33/5 41/20 48/4
Trump [1] 33/19
trying [1] 32/7
turns [2] 16/25 24/5
two [12] 5/25 6/2 16/11 17/9 19/22 20/9 20/16 22/20 26/8 29/24 38/3 46/5
type [1] 28/23
typically [2] 19/25 22/4

**U**

U.S [3] 1/17 1/20 1/24
U.S.C [2] 3/20 3/20
ultimately [2] 12/23 38/12
unable [5] 23/13 23/20 29/21 30/8 38/14
uncertainty [1] 17/11
uncommon [1] 40/10
under [47] 2/11 3/12 3/14 3/25 4/17 6/12 6/13 6/16 7/1 7/4 9/7 10/8 11/21 11/23 12/22 13/11 14/7 14/12 14/18 14/23 15/8 15/21 18/21 18/25 22/14 23/14 23/25 24/6 24/16 24/18 25/15 27/6 27/15 31/9 32/9 37/19 38/4 38/4 38/5 38/7 39/25 40/12 41/12 44/19 44/20 45/9 46/11
underlying [6] 29/8 32/10 34/18 41/2 43/18 46/20
underscores [1] 18/18
understands [1] 42/6
understood [3] 11/20 27/7 33/12
underway [1] 7/21
unfair [1] 46/7
UNGVARSKY [3] 1/14 1/15 2/5
unilateral [1] 33/13
UNITED [2] 1/1 1/9
University [1] 1/12
unless [3] 16/3 26/14 34/8
unmistakable [1] 42/6
unpublished [1] 29/5
up [6] 26/11 31/12 31/13 33/7 34/16 37/22
upon [1] 16/5
use [1] 28/22
using [1] 37/15

**V**

VA [1] 1/16
various [3] 23/7 31/20 37/3
vehemently [1] 45/21
venue [4] 44/25 46/2 46/12 46/17
versus [1] 2/3
vested [1] 28/24
via [1] 38/18
videoconferencing [1] 36/19
views [1] 4/1
violate [1] 32/16
violation [2] 25/7 34/20
visits [1] 8/7
volunteer [1] 10/21
voucher [1] 13/16

**W**

waited [1] 19/9
waiting [2] 8/8 21/1
waivable [1] 46/4
waived [1] 46/13
WALKER [2] 1/20 2/6

W

wants [2] 34/13 45/6
Washington [3] 1/4 1/22 1/25
way [8] 4/1 6/3 6/23 7/3 31/22 34/9 40/18 40/25
weeks [2] 17/10 38/3
welcome [1] 27/20
weren't [6] 14/16 24/3 24/21 25/14 25/23 31/12
Western [1] 1/18
what's [1] 18/4
whenever [1] 37/5
White [1] 40/8
who's [2] 9/22 33/3
whole [2] 8/23 8/23
WILLIAM [2] 1/5 2/3
willing [2] 4/23 34/20
wish [1] 36/21
withheld [1] 14/2
within [1] 17/18
without [1] 34/3
witnesses [2] 28/13 31/7
Woodard [3] 22/11 22/14 37/7
word [1] 16/8
words [3] 18/12 27/5 44/11
work [8] 5/18 7/13 12/15 13/11 13/22 16/21 17/10 29/21
worked [2] 11/2 31/5
working [9] 10/3 10/19 10/20 19/18 21/25 23/8 31/4 40/10 40/11
workload [1] 30/16
worth [2] 13/25 13/25
writ [2] 27/25 28/16
write [1] 31/8
written [1] 22/25
wrong [3] 13/18 29/9 29/10

Y

year [3] 13/19 20/17 20/19
years [9] 10/9 10/10 19/8 19/25 20/1 27/10 31/4 31/4 39/25

Z

zealously [1] 10/23
ZOHRA [2] 1/12 2/4