UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA M. MONTGOMERY,<br>                    *Plaintiff*,<br><br>            v.<br><br>WILLIAM P. BARR, *et al.*,<br>                    *Defendants*. | Civil Action No. 20-3261 (RDM) |

## ADMINISTRATIVE DOCUMENTS

Pursuant to the Court's order of December 11, 2020, Defendants submit the attached

current and former administrative documents that reference the setting of execution dates or refer

to Plaintiff. Defendants note that additional documents concerning the Federal Bureau of

Prisons' Execution Protocol—and certified versions of the BOP Execution Protocols that

follow—appear in the Certified Administrative Record in *In re Fed. Bureau of Prisons'*

*Execution Protocol Cases*, No. 1:19-MC-145-TSC (*See*, *e.g.*, Dkts. 39, 69, 97, and 171);

however, Defendants do not believe such additional documents are responsive to the Court's

order or relevant to Plaintiff's claims.

Dated:  December 13, 2020          Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

JEFFREY RAY
Deputy United States Attorney
Western District of Missouri

BRIAN P. CASEY
Chief, Appellate Division
Western District of Missouri

*/s/ Alan T. Simpson*
ALAN T. SIMPSON, Missouri Bar #65183
Assistant United States Attorney
Western District of Missouri
Special Assistant United States Attorney
District of Columbia

 – and –

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN
Chief, Civil Division
District of Columbia

 */s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.

<u>/s/ *Alan T. Simpson*</u>
Assistant United States Attorney

# INDEX TO LIST OF ADMINISTRATIVE DOCUMENTS

| Number | Bates Numbers | Description |
|--------|---------------|-------------|
| 1 | 0001-0053 | BOP Execution Protocol (first version) Case No. 1:19-MC-145-TSC ("*Protocol Cases*"), Dkt. 39-1 at AR 0876 to 0928, 1068 to 1070 |
| 2 | 0054-0111 | BOP Execution Protocol (second version), *Protocol Cases* Dkt. 39-1 at AR 1016 to 1070 |
| 3 | 0112-0165 | BOP Execution Protocol (current version), *Protocol Cases* Dkt. 39-1 at AR 1086 to 1139 |
| 4 | 0166-0169 | Justice Manual, 9-140.110-.113 |
| 5 | 0170-0171 | Memorandum re Setting Execution Date (Montgomery) |
| 6 | 0172 | Notice of Execution Date (Montgomery) |
| 7 | 0173-0174 | Memorandum re Setting Execution Date (Montgomery) |
| 8 | 0175 | Notice of Execution Date (Montgomery) |

# BOP EXECUTION PROTOCOL



SENSITIVE - LIMITED OFFICIAL USE ONLY          2004

FEDERAL BUREAU OF PRISONS
EXECUTION PROTOCOL MANUAL

Page

INTRODUCTION     General Provisions ........................... 1

    I.     Purpose of Manual ...................... 1
    II.    Organization........................... 1
    III.   Cross References....................... 1
    IV.    Policy ................................ 1


CHAPTER 1        Pre-Execution Checklist ...................... 4

    I.     General Provisions ..................... 4
    II.    Establishing an Execution Date ......... 4
    III.   Period of Time Between Establishment
           of an Execution Date to Thirty Days
           Prior to the Execution ................ 6
    IV.    Period of Time Between Twenty-Nine
           to Fourteen Days Prior to the
           Execution ............................. 9
    V.     Period of Time Between Thirteen to
           Seven Days Prior to the Execution ...... 10
    VI.    Period of Time Between Six to Three
           Days Prior to the Execution ........... 11
    VII.   Period of Time Between Two Days to
           One Day Prior to the Execution ........ 12


CHAPTER 2        Execution Checklist .......................... 14

    I.     General Provisions ..................... 14
    II.    Period of Time Between Twenty-Four to
           Twelve Hours Prior to the Execution .... 14
    III.   Period of Time Between Twelve to Three
           Hours Prior to the Execution .......... 15
    IV.    Period of Time Between Three Hours to
           Thirty Minutes Prior to the Execution .. 17
    V.     The Final Thirty Minutes Prior
           to the Execution ...................... 19
    VI.    Final Sequence of Events: Execution .... 20


CHAPTER 3        Post-Execution Checklist ...................... 22

    I.     General Provisions ..................... 22

II.      Removing Witnesses from the Execution
         Facility ............................... 22

III.     Removal of the Body of the
         Condemned Individual ................... 23
IV.      Site Clean-up ......................... 23
V.       Returning to Routine Operations ........ 23

CHAPTER 4      Command Center ............................... 24

I.       General Provisions ..................... 24
II.      Location, Role and Function ........... 24
III.     Command Center Staffing ............... 25
IV.      Radio Communication ................... 25
V.       Resources ............................. 25

CHAPTER 5      Contingency Planning ......................... 27

I.       General Provisions ..................... 27
II.      Specific Procedures ................... 27
III.     Execution Witness Management ........... 29
IV.      Reservation Security Plan ............. 31

CHAPTER 6      News Media Procedures ........................ 34

I.       General Provisions ..................... 34
II.      Condemned Individual Interviews........ 35
III.     Media Orientation ..................... 35
IV.      Media Center Operations................ 37
V.       The Execution Information Center....... 42

CHAPTER 7      Stays, Commutations and Other Delays ......... 45

I.       General Provisions ..................... 45
II.      Presidential and Judicial Authority
         to Interrupt Execution ................ 45
III.     Communication of Pardons, Stays,
         Commutations or Delays ................ 46
IV.      Procedures to Implement Last-Minute
         Stays ................................. 47

APPENDICES     Appendix A - Memorandum of Agreement Between
               Federal Bureau of Prisons and Witness......... 48
               Appendix B - Media Witness Press Pool
                            Agreement ........................ 49
               Appendix C - Sample Letter to Media .......... 50

INTRODUCTION:  GENERAL PROVISIONS

I.   Purpose of Manual

The purpose of this manual is to outline Federal Bureau of
Prisons (BOP) policy and procedures for planning and carrying out
the execution of a person convicted of a capital offense.  These
procedures should be observed and followed as written unless
deviation or adjustment is required, as determined by the
Director of the BOP or the Warden.  This manual explains internal
government procedures and does not create any legally enforceable
rights or obligations.

II.  Organization

This manual provides specific time related checklists for pre-
execution, execution and post execution procedures as well as
detailed procedures related to the execution process, command
center operations, contingency planning, news media procedures,
and handling stays, commutations and other delays.

III. Cross References

A.   Title 28, Code of Federal Regulations, Chapter 1, Part 26

B.   Title 28, Code of Federal Regulations, Chapter 1, Part 1

C.   Inmate Systems Management - Program Statement 5800.13,
Paragraph 807

D.   Searching, Detaining, Non-Inmates; Arresting Authority;
Metal Detectors - Program Statement 5510.09

E.   Contact with News Media - Program Statement 1480.05

F.   Accounting Management Manual - Program Statement
2000.02, Chapter 10950

G.   Command Centers - Operations Memorandum 075.92

IV.  Policy

A.   It is the policy of the BOP that the execution of a person
sentenced to death under Federal law by a court of competent
authority and jurisdiction be carried out in an efficient
and humane manner.

B.   The BOP will make every effort in the planning and
preparation of an execution to ensure that the execution
process:

1.  faithfully adheres to the letter and intent of the law;

2.  is handled in a manner that minimizes the negative impact on the safety, security, and operational integrity of the correctional institution in which it occurs and the BOP in general;

3.  accommodates the public's right to obtain information concerning the event;

4.  reasonably addresses the privacy interests of those persons for whom the law and BOP policy require such privacy;

5.  provides sufficient contingency planning to ensure that unforeseen problems can be addressed and overcome;

6.  allows for stays of execution, commutations and other delays in the execution countdown;

7.  provides an opportunity for interested persons to exercise their First Amendment rights to demonstrate for or against capital punishment in a lawful manner; and

8.  ensures a firm and adequate response to unlawful civil disobedience, trespass, or other violations of the law by persons attempting to disrupt or prevent the execution.

C.  The BOP will seek the arrest and encourage the prosecution of persons, including but not limited to those who:

1.  violate prohibitions against filming, taping, broadcasting, or otherwise electronically documenting the death of the condemned individual;

2.  trespass or otherwise enter upon BOP property without proper permission and clearance from the Warden;

3.  participate in unlawful demonstrations;

4.  unlawfully attempt to disrupt, prevent, or otherwise interfere with the execution;

5.  being inmates, are involved in disruptive, assaultive, or other lawfully proscribed behavior related to an execution; or

      6.    unlawfully threaten, intimidate, or terrorize persons involved in the execution process.

D.    BOP staff involved in the execution will make every effort, within the limits of these policies and procedures and the laws of the United States, to:

      1.    display appropriate levels of professionalism, restraint, and courtesy in interaction with witnesses, demonstrators, news media, and other non-staff persons during the execution process;

      2.    prevent emotion or intimidation from hindering efforts to carry out assigned duties; and

      3.    conduct themselves at all times in a manner reflecting the solemnity and sensitivity of the occasion.

E.    BOP Mental Health and Religious Services personnel will be available for counseling sessions with all personnel participating directly in an execution process, before and after an execution.

F.    Each execution will be fully evaluated by the institution, region, and Central Office staff.  If warranted, recommendations will be made and considered in order to improve procedures.

CHAPTER 1:   PRE-EXECUTION CHECKLIST

I.   <u>General Provisions</u>

    A.   <u>Purpose of Chapter</u>

        1.   The purpose of this chapter is to provide a checklist of procedures and events that should occur between the period of time prior to the establishment of an execution date and 24 hours prior to the execution.

        2.   Full detail will not be provided for each procedure or event in this chapter.  For detail, refer to specific chapters which follow.

        3.   This chapter covers the following time periods:

            a.   prior to the execution date being established;

            b.   establishment of the execution date to thirty days prior to the execution;

            c.   twenty-nine to fourteen days prior to the execution;

            d.   thirteen to seven days prior to the execution;

            e.   six to three days prior to the execution; and

            f.   forty-eight to twenty-four hours prior to the execution.

    B.   <u>Policy</u>

        1.   A systematic countdown to execution must be completed to ensure that all procedures and events necessary to adequately prepare for the execution are completed in a timely manner.

        2.   Absent intervention by the court system or the President as noted in Chapter 7, delays in the countdown process will only occur in extraordinary situations relating to the security and good order of the institution as approved by the Director of the BOP.

II.  <u>Establishing an Execution Date</u>

After a sentencing hearing is conducted in a United States District Court resulting in a determination that a criminal defendant be sentenced to death for commission of an offense

described in a Federal statute, and the sentencing judge signs the appropriate Judgment and Order:

A. Except to the extent a court orders otherwise, the Director of the BOP will designate a date, time, and place for the execution of the sentence. On June 18, 1993, the Director of the BOP established the United States Penitentiary, Terre Haute, Indiana, as the site of such executions. The following individuals/offices will be advised in writing of the execution date: the sentencing judge, Attorney General, Office of the Deputy Attorney General, Office of the Pardon Attorney, the Assistant Attorney General for the Criminal Division, the Chief of the Capital Case Unit, Director of the United States Marshals Service (USMS), the Office for Victims of Crime, Assistant Director for Correctional Programs Division, Assistant Director for General Counsel and Review Division, appropriate Regional Director, United States Attorney's Office for the district of conviction, United States Attorney's Office for the Southern District of Indiana and Warden of USP Terre Haute.

B. Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R. § 26.3(a)(1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R. § 26.4(a)). If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.

C. The Warden of USP Terre Haute will notify, in writing, the condemned individual under sentence of death, of the date designated by the Director for execution at least 90 days in advance. If the designated execution date is stayed, notice of the new execution date must be given no later than 20 days before the execution, if time permits and if not, as soon as possible. If the execution date is set by a judge, the Warden will notify the condemned individual, in writing, as soon as possible. The Warden will include information concerning the clemency application process in the written notice. Under 28 C.F.R. §1.10(b), a petition for commutation of sentence should be filed no later than 30 days after the condemned individual has received notification from the Warden of the execution date.

D. Unless the President interposes, the execution of the sentence will not be stayed on the basis of the condemned individual filing a petition for executive clemency.

III. Period of Time Between Establishment of an Execution Date to
Thirty Days Prior to the Execution

The following procedures should be completed between the time an
execution date is set and 30 days prior to the execution.

A.  Briefing the Condemned Individual

As soon as practical after establishment of the execution
date, the Warden at USP Terre Haute or designee, will
personally brief the condemned individual regarding relevant
aspects of the execution process including information
contained in items C through F of this section.  A briefing
sheet outlining these aspects of the execution will be given
to the condemned individual.  If requested, a copy of the
briefing sheet will be given to a representative identified
by the condemned individual. In addition, the Warden will
ascertain the inmate's religious preference.

B.  Condemned Individual's Choice of Witnesses

When the condemned individual is informed by the Warden of
the execution date, he/she will be advised that he/she may
designate not more than one spiritual adviser, two defense
attorneys, and three adult friends or relatives (at least 18
years old) to be present at the execution.  The condemned
individual will be asked to submit the list of his/her
witnesses to the Warden no later than 30 days after
notification of the date of the scheduled execution.

C.  Disposition of Personal Property and Accounts

The Warden will review the options available to the inmate
for property/account distribution and will ask the condemned
individual to provide instructions, no later than 14 days
prior to the execution, concerning the disposition of the
personal property and funds in any accounts controlled or
administered by the BOP.  If the condemned individual fails
to provide instructions for such disposition, the
property/accounts will be disposed of in accordance with the
Accounting Management Manual and Inmate Systems Management
Manual.

D.  Organ Donation

The condemned individual's body will not be used for organ
donation.

E.  Disposition of Body

The Warden will review options available to the condemned
individual following the release of the body to the Vigo
County Coroner.  The Warden will ask the condemned

6

individual to provide instructions concerning the disposition of his/her body no later than 14 days prior to the execution.  If the condemned individual fails to provide instructions, the body will be handled in accordance with the Accounting Management Manual.

F.   Designation of Persons Required to Assist with the Execution

1.   Those persons necessary to carry out the execution will be identified.

a.   The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.

b.   The Warden is responsible for selection of the persons involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.

2.   Individuals will be identified for placement in all vital or important positions.  Alternates will also be identified.  The Assistant Director, Correctional Programs Division, Regional Director, and the Warden will determine which positions require alternates and will ensure adequate coverage is provided

3.   No officer or employee of the Department of Justice will be required to be in attendance at or participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee. Staff participation in the execution process must be on a voluntary basis.

G.   Other Approved Witnesses

1.   In addition to the United States Marshal designated by the Director of the USMS (hereafter called the "Designated United States Marshal") and the Warden, the following persons will be present at the execution.

a.   Necessary personnel selected by the Designated United States Marshal and the Warden.

b.   Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary.

    c.   Not more than the following numbers of persons selected by the Warden:

        (1)  eight citizens (in identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the condemned individual was prosecuted to recommend up to eight individuals who are victims or victim family members to be witnesses of the execution); and

        (2)  ten representatives of the press.

  2.   No other person will be present at the execution, unless such person's presence is granted by the Director of the BOP.  No person younger than 18 years of age will witness the execution.

  3.   The Warden will notify all witnesses of the date, time and place of the execution as soon as practicable before the designated time of execution.

H.   <u>Contact with the Vigo County Coroner</u>

  1.   The Warden will contact the Vigo County Coroner to coordinate the Coroner's role.

  2.   The Vigo County Coroner will be requested to provide direction concerning:

    a.   transfer of custody of the body of the executed individual from the Warden to the Vigo County Coroner;

    b.   transportation of the body from the Execution Room to the Vigo County Coroner's facility; and

    c.   security arrangements during the transfer.

I.   <u>Briefing of Institution Staff</u>

  1.   It is necessary to maintain, as nearly as possible, normal prison operations throughout the execution process.

  2.   Local prison administrators should be briefed by the Warden, as appropriate, on plans for the execution, restrictions on access, crowd control, additional security procedures, etc., on an on-going basis.

3. As soon as plans begin to evolve which will affect general prison operations, briefings should begin and continue until operations return to normal.

IV. <u>Period of Time Between Twenty-Nine to Fourteen Days Prior to the Execution</u>

A. <u>Witnesses</u>

1. To the extent possible, the Warden will develop a final list of citizen and condemned individual's witnesses.

2. All witnesses/participants will be required to sign an agreement prior to being cleared and added to the witness list. Included in the document will be an agreement to be searched before entering the Execution Facility and not to photograph or make any other visual or audio recording of the execution (see Appendix A).

B. <u>Qualified Person</u>

The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.

C. <u>Condemned Individual's Property and Accounts</u>

The Warden will finalize arrangements for disposition of the condemned individual's property and accounts no later than 14 days prior to the scheduled execution date.

D. <u>Disposition of Body</u>

The Warden will finalize arrangements with the Vigo County Coroner for disposition of the body, security for the Vigo County Coroner's vehicle, and transfer of custody of the body in accordance with appropriate State and local laws.

E. <u>Selection of Executioner(s)</u>

The Warden, with the assistance of the Director, USMS and Director, BOP, will finalize the selection of executioner(s) and their alternates.

F. <u>Training</u>

1. The Warden will ensure that appropriate training sessions are held for persons involved in the various aspects of the execution event.

   2.   Not all of the persons involved need to practice
        together.  Individual teams will practice as units,
        with inter-team practices scheduled, as necessary by
        the Warden, to facilitate coordination and smooth
        interaction.

V.   Period of Time Between Thirteen to Seven Days Prior to the
     Execution

   A.   Condemned Individual's Property and Accounts

        All paperwork regarding disposition of property and accounts
        should be completed.

   B.   Food Services

        At least seven days prior to execution, the Warden or
        designee will contact the condemned individual to arrange
        for his/her last meal.

   C.   Purchase of Substances to be Used in Lethal Injection

        The Warden will ensure the purchase of lethal substances to
        be used in the execution.  Once purchased, these lethal
        substances will be secured in the institution until called
        for by the Warden.

   D.   Law Enforcement Coordination

        1.   The Warden will meet with Federal, State, and local
             law enforcement personnel to coordinate support
             related to the execution.

        2.   Joint practices should be conducted between law
             enforcement staff involved to ensure coordination and
             interaction is well defined and understood.

   E.   Restrictions on Condemned Individual's Visitors

        Beginning seven days prior to the designated date of
        execution, the condemned individual will have access only to
        his/her spiritual advisers (not to exceed two), his/her
        defense attorneys, members of his/her family,  and
        designated officers and employees of the BOP. Upon approval
        of the Director of the BOP, the Warden may grant access to
        such other proper persons as the condemned individual may
        request.

VI.   Period of Time Between Six to Three Days Prior to the Execution

A.   Witnesses

Non-media witness agreements should be signed by the witnesses and reviewed by the Warden or designee.

1.   The Warden will provide a final list of witnesses to the:

a.   Assistant Director, Correctional Programs Division;

b.   Assistant Director, Information, Policy, and Public Affairs Division;

c.   Regional Director;

d.   Director, USMS; and

e.   Designated United States Marshal

f.   United States Attorney's Office – district of conviction

g.   United States Attorney's Office – Southern District of Indiana

2.   Persons who refuse to sign agreements will not be allowed to attend the execution.

B.   Brief Affected Law Enforcement Agencies

The Warden will ensure that staff from other law enforcement agencies who have not participated in practice sessions or have not otherwise been briefed previously will be briefed and their responsibilities explained.

C.   Condemned Individual's Property and Accounts

Verify arrangements are complete.

D.   Executioner(s)

An individual designated by the Warden will:

1.   review with executioner(s) and alternates arrangements for their transportation and escort to the Execution Facility; and

2.   review with participants' arrangements for security of executioner(s) and protection of their identities.

11

E.   Equipment Check/Inventory

All equipment necessary to conduct the execution will be
inventoried and checked at least 72 hours prior to the
execution by individuals designated by the Warden.

VII.   Period of Time Between Two Days to One Day Prior to the Execution



B.   <u>Practices</u>

Final practices will be conducted as directed by the Warden.

C.   <u>Equipment Checks</u>

Maintenance staff should verify necessary installation of and test electrical, heating/air conditioning and communications equipment in:

1.   BOP Execution Facility;

2.   Command Center.

D.   <u>Warden Contacts</u>

1.   To ensure that coordination efforts are in place, the following entities will be contacted by the Warden:

a.   Department of Justice Command Center (to ensure communications, if required, by the Attorney General, the Supreme Court, the President of the United States and the affected United States Attorneys Offices);

b.   BOP Director's Office;

c.   USMS Director's Office; and

d.   affected law enforcement agencies.

2.   Identify specific individuals who are contact persons for the entities/individuals listed in Subsection 1 above.

E.   <u>Equipment Check Verification by Warden</u>

1.   The Warden will ensure completion of pre-execution inventory and equipment check in the BOP Execution Facility.

2.   The Warden will verify that the Execution Facility's equipment checks have been completed.

CHAPTER 2:   EXECUTION CHECKLIST

I.   <u>General Provisions</u>

    A.   <u>Purpose of Chapter</u>

        1.   This chapter provides a checklist of procedures
and events that should occur during the final 24 hours
prior to the execution.

    B.   <u>Policy</u>

        1.   It is the policy of the BOP that the countdown to the
execution will be accomplished in a carefully
coordinated manner.

        2.   The execution will be carried out in a manner
consistent with Federal law.

II.   <u>Period of Time Between Twenty-Four to Twelve Hours Prior to the
Execution</u>



    B.   <u>Condemned Individual Communication</u>

        1.   Excluding calls to the condemned individual's
Attorney(s) of Record and calls specifically approved
by the Warden, the condemned individual's telephone
privileges will be terminated 24 hours prior to the
execution.

        2.   The condemned individual's Attorney(s) of Record,
spiritual adviser(s), immediate family members or
other persons approved by the Director of the BOP,
will be given visiting privileges during the final 24
hours as determined by the Warden.  Visiting
privileges will be suspended when preparations for the
execution require suspension.

    C.   <u>Food Services</u>

    The Warden will contact the condemned individual to finalize
arrangements for his/her final meal and ensure that it is
properly prepared and served by staff.

D.   <u>Maintenance Response Team</u>

Beginning eight hours prior to an execution, the Facility Manager
or other appropriate individual will ensure that a Maintenance
Response Team is available to provide necessary maintenance and
repair of systems at the Execution Facility or in other areas of
the institution.

E.   <u>Access to the Execution Facility</u>



III.  <u>Period of Time Between Twelve to Three Hours Prior to the Execution</u>

A.   <u>Final Briefing</u>

2.   A final briefing will be held, attended by senior BOP and
Marshals Service staff, the Warden, and representatives
deemed appropriate by the Warden.  The Warden will conduct
the meeting, with senior staff providing guidance and policy
decisions, as needed.

3.   During the briefing, participants will:

a.   identify problems, develop solutions, and specify time
lines;

b.   provide status reports;

c.   coordinate support services involvement; and

d.   conduct a final review of procedures.

15

B.    Food Service

The condemned individual will be served a final meal at a time determined by the Warden.

C.    Visits

Visits by family, attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden.

D.    Restricting Access to Prison Property

1.    During the final 12 hours prior to the execution, access to prison property will be limited to:

    a.    on-duty staff;

    b.    on-duty contract workers;

    c.    volunteers deemed necessary by the Warden;

    d.    approved delivery vehicles;

    e.    law enforcement personnel on business-related matters;

    f.    routine inmate visitors; and

    g.    other persons approved by the Warden.

2.    During the final eight hours:

    a.    all off-duty Department of Justice personnel will be required to leave institution property;



E.    Establishment of Command Center

16

IV.   Period of Time Between Three Hours to Thirty Minutes Prior to the Execution

    A.   Pre-Execution Procedures

        1.   The Warden will ensure that all countdown procedures for required activities and actions are progressing.

        2.   Immediate action to complete any unfinished required procedures will be initiated.

        3.   The Warden will designate a recorder who will begin logging execution activities in the official execution log book commencing three hours prior to the scheduled execution.  The log will reflect, at a minimum, the time each of the following events occurs:

            a.   Condemned individual removed from Inmate Holding Cell;

            b.   Condemned individual strapped to gurney;

            c.   Arrival of government/community witnesses;

            d.   Arrival of condemned individual's authorized witnesses;

            e.   Arrival of media witnesses;

            f.   Opening of drapes;

            g.   Last statement by condemned individual;

            h.   Reading of statement conveying inmate's sentence of death;

            i.   Upon Designated United States Marshal's approval, the execution process begins;

            j.   Signal by Executioner(s) that lethal substances have been administered;

            k.   Determination of condemned individual's death through the EKG readout by designated qualified person;

            l.   Announcement of death of condemned individual;

            m.   Closing of drapes;

            n.   Notification to outside media and demonstrators of condemned individual's death;

     o.    Removal and transportation of media witnesses to media center;

     p.    Removal of condemned individual's authorized witnesses;

     q.    Removal of government/community witnesses;

     r.    Restraint Team/Vigo County Coroner enter Execution Room to remove body;

     s.    Removal of body to Vigo County Coroner's vehicle;

     t.    Performance of any necessary cleaning chores;

     u.    Directive by Warden to secure Execution Facility.

**B.**   **Execution Room Staff Assemble**

    1.    The Executioner(s) will be escorted into the Execution Facility and will inventory supplies and ensure that everything is ready.



    3.    All other Execution Room staff will be assembled on-site for final instructions at least forty-five minutes prior to the scheduled execution.

**C.**   **Contact with the Department of Justice Command Center**



V.    The Final Thirty Minutes Prior to the Execution

    A.    Final Sequence of Events:  Preparation

        1.    Bringing the Condemned Individual to the Execution Room

            At the appropriate time, the condemned individual will be:

            a.    removed from the Inmate Holding Cell by the Restraint Team;

            b.    strip-searched by the Restraint Team and then dressed in khaki pants, shirt, and slip-on shoes.

            c.    secured with restraints, if deemed appropriate by the Warden;

            d.    escorted to the Execution Room by the Restraint Team.

        2.    Restraint Team Procedures

            In the Execution Room the ambulatory restraints, if any, will be removed  and the condemned individual will be restrained to the Execution Table.

        3.    Admit Witnesses

            a.    Subsequent to appropriate search procedures, witnesses will be admitted to the witness rooms.

b. The government/community witnesses will then enter and will be escorted to their assigned area. The escorts will remain with the witnesses.

c. The authorized witnesses invited by the condemned individual will be admitted and escorted to their assigned area.

1. If any of the condemned individual's invited witnesses wish to be on-site, but not actually witness the execution, accommodations will be made for them by the Warden.

2. Escorts will remain with the condemned individual's witnesses. There will be a minimum of two escorts for each witness group.

d. The last witnesses to be admitted will be the news media representatives. The members of the news media selected to witness the execution will be escorted to their assigned area. Escorts will remain with the news media witnesses and ensure their separation from the other witnesses while at the Execution Facility. Media witnesses will not be permitted to interview or question staff or other witnesses while at the Execution Facility.

VI. **Final Sequence of Events: Execution**

A. **Staff Witnesses**

1. Staff participating in the preparation for the execution will exit the Execution Room but stand by in an adjacent area.

2. Staff members participating in and/or observing the execution will include the:

a. Designated United States Marshal;

b. Warden;

c. Executioner(s);

d. Other staff authorized by the Director of the BOP.

B.   Countdown

1.   Once the condemned individual has been secured to the
     table, staff inside the Execution Room will open the
     drapes covering the windows of the witness rooms.

2.   The condemned individual will be asked if he/she has
     any last words or wishes to make a statement.  The
     condemned individual will have been advised in advance
     that this statement should be reasonably brief.

3.   At the conclusion of the remarks, or when a
     determination is made to proceed, the documentation
     deemed necessary to the execution process will be
     read.  Once the Designated United States Marshal makes
     a final determination that the execution is to
     proceed, the executioner(s) will be directed to
     administer the lethal injection.

4.   If the execution is ordered delayed █████████████

     █████████████████████ the Designated United States Marshal
     will instruct the Executioner(s) to step away from the
     execution equipment and will notify the condemned
     individual and all present that the execution has been
     stayed or delayed.

C.   Determination of Death

1.   After the lethal injection has been administered:

     a.   The EKG will be monitored until apparent
          signs of life have ceased;

     b.   The time of death will be announced prior to
          the drapes being closed.

2.   The Designated United States Marshal will complete and
     sign the Return described in Section 26.2(b) of
     28 C.F.R. and will file such document with the
     sentencing court.

CHAPTER 3:  POST-EXECUTION CHECKLIST

I.    General Provisions

    A.    Purpose of Chapter

        The purpose of this chapter is to:

        1.    provide the procedures to be followed after the execution, of the condemned individual;

        2.    identify the responsibilities for tasks to be completed; and

        3.    provide for the transfer of the body of the condemned individual from the custody of the BOP.

    B.    Policy

        It is the policy of the BOP that:

        1.    the condemned individual will be examined by a specified qualified person following the administration of the lethal substances to ensure that death has occurred;

        2.    When the qualified individual is satisfied that death has occurred, the time of death will be announced to the witnesses;

        3.    the witnesses to the execution will then be removed from the Execution Facility and returned to their individual staging areas so that they may leave the institution.  News media witnesses will be removed to a secondary press location where they will participate in a press conference;

        4.    the body of the condemned individual will be surrendered to the Vigo County Coroner;

        5.    after removal of the body, the site will be cleaned and restored to its previous condition.

II.   Removing Witnesses from the Execution Facility

    A.    After the pronouncement of death, the witnesses will be escorted from the facility in the following order:

        1.    news media witnesses;

        2.    condemned individual's authorized witnesses; and

        3.    government/community witnesses.

    B.    Each group of witnesses will be kept separate from the others and escorted to waiting vehicles to be driven to separate designated sites.

III.  <u>Removal of the Body of the Condemned Individual</u>

    A.    After the witnesses have departed, the restraints will be removed from the condemned individual's body.

    B.    The Vigo County Coroner or designee will be escorted into the Execution Facility.  The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.

IV.  <u>Site Clean-Up</u>

    A.    Under the supervision of an individual designated by the Warden, staff will clean and secure the Execution Facility.

    B.    Institution staff will be trained in infectious disease preventive practices and utilize appropriate precautions in cleaning up the Execution Facility.

    C.    The Execution Facility will be locked and secured when the Warden is satisfied that clean-up has been completed.

V.  <u>Returning to Routine Operations</u>

    A.    Following the execution, Department of Justice and BOP staff involved in the execution will be deactivated, as appropriate, under direction of the senior departmental, BOP and USMS staff on-site.

    B.    The Warden's designated public affairs representative will determine when to secure the media assembly site after the news conference is complete.

    C.    The Warden will bring the institution security back to routine operations as he/she sees fit.

CHAPTER 4:  Command Center

I.   <u>General Provisions</u>

    A.   <u>Purpose of Chapter</u>

        The purpose of this chapter is to:

        1.   identify the role and function of the Command Center;

        2.   specify the individuals authorized to staff the Command Center; and

        3.   provide an inventory of the minimum resources required in the Command Center.

    B.   <u>Policy</u>

        It is the policy of the BOP that:

        1.   the Bureau operate a local, emergency Command Center during the execution operation to:

            a.   coordinate security, transportation, crowd control, access and other processes;

            b.   provide policy and procedural advice, as needed, or upon request;

            c.   coordinate inter-agency functions; and

            d.   serve as an information processing and operations nerve center for the execution;

████████████████████████████████████████████

        3.   sufficient resources be available in the Command Center to permit staff there to function efficiently.

II.  <u>Location, Role and Function</u>

    A.   The Command Center will be operational prior to the scheduled execution and maintained for the duration of the execution operation, in an area identified by the Warden.

    B.   The roles and functions of the Command Center include:
        1.   coordinating the various personnel, components and elements of the execution operation;

████████████████████████████████████████████

III.  Command Center Staffing

    A.  Command Center staff should include the following positions:



    B.  The Command Center Director may include such other persons as may be needed, for the period of time required.  During that time, an additional temporary pass will be issued to and worn by the person so admitted.

    C.  Access to the Command Center will be limited to persons specifically authorized by the Command Center Director or Warden.

IV.  Radio Communication

    A.  The official radio frequency for communication with personnel involved in the execution process will be determined by the Warden.

    B.  Non-cellular telephones must be used for critical or confidential communications.

CHAPTER 5:   CONTINGENCY PLANNING

I.    General Provisions

   A.    Purpose of Chapter

         The purpose of this chapter is to:

         1.    aid in the development of a predetermined contingency
               plan to assist staff in the management of the
               execution event and in responding to related emergency
               situations;

         2.    identify the role and function of staff needed to
               formulate and activate the plan, if needed; and

         3.    identify specific areas to stage staff and equipment.
               The location of witness processing will be
               pre-determined by the Warden on a case-by-case basis.

   B.    Policy

         It is the policy of the BOP to:

         1.    prepare and test contingency plans;

         2.    identify all security measures needed to protect staff
               and inmates of an institution as well as BOP property;
               and

         3.    coordinate all resources to ensure the safety of the
               public, staff, and inmates.

II.   Specific Procedures

   A.    An individual identified by the Warden will prepare
         contingency plans related to an emergency occasioned by the
         execution, such as an institution disturbance, hostage
         taking, outside demonstration, outside assault on the
         facility, etc.  All plans will be reviewed and approved by
         the Warden and the Regional Director.

   B.    Plans will include provisions for:

C.   <u>Intelligence Operations</u>

D.   <u>Staging Areas</u>

E.   <u>Tactical Deployment</u>

III. <u>Execution Witness Management</u>



4.    No pat or visual search of any witness will be
      conducted unless the Warden has reasonable suspicion

to believe the witness is concealing weapons, drugs, audio or visual recording devices, or any other item not expressly authorized and the witness agrees to be searched. If the witness refuses to be searched, he/she will not be permitted to serve as a witness.

5.  Staff at each staging area will notify the Command Center when all execution witnesses are accounted for and processed.

6.  Escorts will remain at their assigned staging areas until the Command Center directs them to transport the witnesses to the Execution Facility.

B.  <u>Transportation to the Execution Facility</u>



3.  Escorts will ensure that witness groups do not come into contact with each other.

4.  Escorts will transport witnesses to the Execution Facility and notify the Command Center when each group of witnesses is secured in the assigned observation area.

5.  Once each group is secured, the next group will be moved as directed by the Command Center.

6.  The Command Center will be notified by the appropriate staff member when all groups are in place.

7.  The Command Center, in turn, will notify the Warden or designee.

C.  <u>Transportation from the Facility</u>



2.    The groups will be returned to the staging areas
      by the escorts, who will ensure that no group comes in
      contact with another group.

3.    Escorts will notify the Command Center as each group
      returns to the staging area.

4.    The Command Center will direct each move to expedite
      departures and also to prevent groups from
      encountering one another in the parking lot.

5.    Media witnesses will be returned to the Media Center
      to have a press pool briefing as outlined
      in Chapter 6.

IV.   Reservation Security Plan



32

3.   The escort Lieutenant and escort teams will be
     available and will accompany execution witnesses.

CHAPTER 6:   NEWS MEDIA PROCEDURES

I.   <u>General Provisions</u>

    A.   <u>Purpose of Chapter</u>

This chapter describes the procedures and requirements for allowing representatives of the news media access to an inmate sentenced to death, as well as procedures for news media access to the execution.  This chapter also provides procedures for releasing information relating to the execution.

    B.   <u>Policy</u>

The BOP recognizes the desirability of establishing procedures which afford the public information about its operations through the news media.  In accordance with established policy, reasonable efforts will be made to accommodate representatives of the news media before, during, and after a scheduled execution.  Media representatives will be treated in a fair and consistent manner in accordance with current policies and procedures of the BOP.  The agency has the responsibility, however, to ensure the orderly and safe operation of its institutions, and therefore must regulate media access.

    C.   <u>Roles</u>

        1.   Representatives of the news media are those individuals described in Program Statement 1480.03, Contact with News Media, whose principal employment is to gather and report news.

        2.   The Warden will designate a specific staff member as the official representative to the news media regarding death penalty issues and the scheduled execution.

        3.   The BOP Assistant Director, Information, Policy and Public Affairs Division, will coordinate the release of information to the news media and assist the Warden in the selection of individual news media witnesses.  The Department of Justice Office of Public Affairs will be kept informed of these matters.

II.  Condemned Individual Interviews

    A.   Purpose

        As stated in Program Statement 1480.03, Contact with News Media, it is not the BOP's intent to provide publicity for an inmate or special privileges for the news media, but rather to ensure a better informed public.

    B.   Limits

        With this in mind, representatives of the news media may be permitted to conduct interviews with condemned individuals. Guidelines regarding the frequency and length of interviews, as well as accompanying security, will reflect BOP/institution policy and will be established by the Warden, who will take into account available resources.

    C.   Prohibition

        Ordinarily, no media interviews will be permitted with the condemned individual once the execution date is within seven days.

III. Media Orientation

    A.   Definition

        No later than eight days before a confirmed execution date, the institution will hold a Media Orientation to provide media representatives with information on the scheduled execution. No other press conference or Media Orientation regarding the execution will be scheduled or held until after the scheduled execution, except as provided below in subsection B. Every effort will be made by the Warden's representative to notify local, State, and national media representatives of the scheduled Media Orientation. Central Office Public Affairs staff will provide assistance to institution personnel in this area.

        1.   All persons, including media representatives, must have appropriate identification to enter the institution on any occasion. Media representatives must have appropriate press credentials. This requirement includes camerapersons, sound technicians, and reporters.

        2.   All individuals will be advised that they are subject to search of their person and equipment prior to entering and prior to leaving a BOP facility.

35

B.   <u>Updates Prior to the Execution</u>

Following activation of the Media Center, the Warden's
representative will provide the news media with regular
briefings or updates of the execution process.

1.   No later than eight hours prior to the scheduled
     execution, a Media Center will be activated.
     Telephone lines, tables, risers for cameras and
     outlets for electrical equipment and cameras will be
     available.  Restroom facilities (and if possible,
     vending machines) will also be provided.

2.   The Warden's designated representative will be present
     in the Media Center to provide regular announcements.

C.   <u>Media Orientation Releases</u>

During the Media Orientation, the following information will
be made available to members of the media:

1.   General information regarding the scheduled execution
     and about the individual scheduled for execution.

2.   Specific information regarding procedures to be
     followed by the media on the date of the scheduled
     execution.

3.   Media representatives will be reminded that there are
     obvious security concerns about aircraft flying over
     Federal correctional facilities and therefore, their
     assistance and cooperation in this matter is expected.

4.   Media representatives will be informed of how the
     press pool will be established (see paragraph IV D 2)
     and advised that if they are selected as press pool
     witnesses to the execution, they will agree prior to
     the execution to:

     a.   sign the document designated as the Media Witness
          Press Pool Agreement (see Media Witness Press
          Pool Agreement, Appendix B);

     b.   be subject to a metal detection scanning;

     c.   not make any photographic, visual or audio
          recordings of the execution (each media witness
          will be provided only paper and a pencil or pen
          while in the execution witness area); and

36

       d.   return to the Media Center after the execution to
           answer questions of all other media represented
           concerning their observations during the
           execution.

   5.   After the Warden's representative, media pool
       witnesses and appropriate Department of Justice staff,
       if available, have addressed the media in the Media
       Center, the press briefing will be terminated and all
       media personnel will leave the Media Center.

## IV.   Media Center Operations

### A.   Requesting Authorization

   1.   After an execution date is set by the court/Director
       of the BOP, and no sooner than twenty days prior to
       the scheduled execution, news media representatives
       will be advised, in writing, by the Warden's
       designated representative that they may request, in
       writing, authorization to participate in the
       institution's Media Center activity in the hours
       preceding the scheduled execution (see Sample Letter
       to Media, Appendix C).

       The requests, which must be in writing, should be
       received by the Warden no later than ten days
       prior to the execution.  Requests must include names,
       social security numbers, and dates of birth for each
       representative of a media organization and his/her
       support staff.  Only those media organizations
       submitting written requests, within the stated time
       frame, will be considered for participation in Media
       Center activities.

   2.   Requests for consideration may be granted by the
       Warden, provided they demonstrate that the requesting
       individual falls within the definition of "member of
       the press and broadcast media" set forth in BOP
       Program Statement 1480.03, Contact with News Media.

### B.   Possible Limitations

The number of media representatives may be limited by the
Warden due to space and safety considerations, but care will
be taken to include representatives from both the print and
broadcast media.

### C.   Briefing Packets and Updates

#### 1.   Packets

Following activation of the Media Center, the Warden's
representative will provide press briefing packets for

reporters in the Media Center.  The contents of the press briefing packet will include, but not be limited to, releasable information on the condemned individual, pool reporters (once selected), the sequence of events, and the history of Federal executions.

2.    Updates

Written updates generally will be distributed to the press on a regular basis following activation of the Media Center.  Updates will include:

a.    a summary of activities related to the execution and sequence of events; and

b.    a summary, cleared by the Warden, of the condemned individual's activities during his/her final twenty-four hours.

D.    News Media Witness Selection

1.    Number in Attendance

The Warden will permit no more than 10 members of the media to witness the execution.  The number of additional media representatives authorized to remain in the Media Center on the day of the execution may be limited, due to space and safety concerns.

2.    Pool Selection Process

a.    Press pool members will be selected by their peers at least three hours prior to the scheduled execution.  Representatives from each of the following categories must be included:

(1)    one local media source (located within the city or town of the institution);

(2)    three television news programs of a station or network holding an FCC license (at least two being national broadcast stations);

(3)    two media sources from the area where the crime was committed;

    (4)   one wire service;

    (5)   one radio station; and

    (6)   two print media organizations.

b.   Press pool witnesses will be selected from qualified media representatives who have been admitted into the institution's Media Center and who have provided staff with proper identification. A list of media representatives will be compiled by the Warden's representative and furnished to the media for their review in the selection process.

### 3. Signed Agreement

Media selected as press pool witnesses will then be required to agree to:

a.   act as a pool representative as described further in this chapter; and

b.   abide by all established conditions, rules, and regulations while in attendance at the execution; to include allowing a metal detector scan of their person.

### 4. Supplemental Representatives

In the event the media are unable to identify witnesses in each of the above described categories, the Warden's designated representative may name other qualifying media representatives to attend, with a maximum of 10 being named.

### E. Media Witnesses to the Execution

### 1. Search Process

Each media pool witness attending the execution will be scanned by a metal detector prior to admittance to the Execution Facility.

a.   No pat or visual search of any media pool witness will be conducted unless the Warden has reasonable suspicion to believe the media representative is concealing weapons, drugs, audio or visual recording devices, or any other items not expressly authorized and the media

representative agrees to be searched.  If the representative refuses to be searched, he/she will not be permitted to serve as a media witness.

1.   Electronic or mechanical recording devices include, but are not limited to, still, moving picture or video tape cameras, tape recorders or similar devices, and radio/television broadcasting devices.

2.   The representative will only be permitted paper and a pencil or pen as provided by institution staff.

2.   Witness Briefing

The 10 selected members of the news media will be required to sign both the witness agreement (Appendix A) and the Media Witness Press Pool Agreement (Appendix B).  They must also attend the pre-execution briefing at the Media Center.  This briefing, conducted by a representative of the Warden, will provide specific information on the event and expectations regarding their conduct.  This will include:

a.   a review of approved materials that can be taken to the Execution Room;

b.   search procedures;

c.   escort procedures; and

d.   the role of pool reporters.

3.   Prohibition of Substitutes

No substitute media pool witness will be permitted after this briefing is conducted.

4.   Segregation after the Search

After the search, all witnesses will be segregated and escorted to the Execution Facility.  Media witnesses will not be permitted to have physical  contact with any other persons during this time.

5. __Excluding Witnesses__

The Warden will not exclude any media witness duly selected in accordance with this chapter from attendance at the execution or cause a selected media witness to be removed from the media pool witness area unless the media witness:

a.   refuses to submit to a reasonable search as outlined in these regulations;

b.   faints, becomes ill, or requests to be allowed to leave during the execution;

c.   causes a disturbance within the media pool witness area that disrupts the orderly progress of the execution as determined by the Warden's representative on site; or

d.   fails to abide by the provisions of the Witness Agreement.

6. __The Execution Process__

The selected media pool witnesses will be escorted as a group to the execution location prior to the execution and will be allowed to remain there throughout the execution process.  The Warden will designate a BOP Spokesperson to remain with the media pool witnesses throughout the process and to answer questions.

F.   __Death Announcement__

Immediately following the execution and prior to the post-execution press pool briefing, a Warden's representative will read the following prepared statement to the press and demonstrators:

41

SAMPLE STATEMENT

(To be read at post execution press briefing and to any assembled
members of the public.)

_____, Warden of _____,

reports that pursuant to the sentence of the United States

District Court in _____,
`                                    (Condemned Individual's Name)

has been executed by lethal injection.

_____ was pronounced dead at
     (Condemned Individual's Name)

_____ on _____.
     (Time)              (Date)

> G.   Press Pool Post-Execution Briefing
>
>       All news media press pool witnesses will, after being
>       returned from the execution to the Media Center, immediately
>       brief other media representatives covering the event.  The
>       pool witnesses will provide an account of the execution and
>       will endeavor to answer all questions asked of them by other
>       media representatives.  They will not report their
>       observations regarding the execution to their respective
>       news organizations until after the non-witness media
>       representatives have had the benefit of the pool
>       representatives' accounts of the execution.
>
> H.   Post Execution Press Conference
>
>       If deemed necessary and appropriate, representatives of the
>       Department of Justice, USMS and BOP will answer questions
>       from the assembled media for no more than 30 minutes after
>       the press briefing.

V.   The Execution Information Center

>  A.   Responsibility
>
>        The Warden's representative will establish and operate an
>        Execution Information Center.

B.   Purpose

The Execution Information Center:

1.   is a central processing point for all incoming media and public interest telephone calls pertaining to the scheduled execution;

2.   allows the institution's staff to handle normal and routine business;

3.   handles "crank" calls and bomb threats in accordance with BOP policy; and

4.   establishes a log of calls for future reference, investigation and evaluation.

C.   Location

1.   The Execution Information Center will be located in an area identified by the Warden.

2.   Only persons authorized by the Warden will be allowed in the Center's operational area. Center staff are responsible for keeping the area clear of unauthorized personnel.

D.   Schedule

1.   The Execution Information Center will commence operations approximately two working days prior to the scheduled execution.  The Information Center will operate twelve hours a day on the days prior to the scheduled execution and for the eighteen hours immediately preceding the scheduled execution.  The Center will remain in operation until approximately one hour after the execution.

2.   The Warden's representative will arrange coverage of telephones, based on the volume of calls.

3.   Staffing for the Execution Information Center will be coordinated by the Warden's representative.

E.    Screening Calls

    1.    Types of Calls

        a.    Business Calls

            Calls from BOP staff or other Federal agencies relating to the execution; or fromBOP staff relating to operational issues affected by the execution which may need to be forwarded to the Command Center.

        b.    Personal Calls

            Calls intended for individuals (staff or witnesses) connected with the execution.

        c.    Inquiry Calls

            Execution-related calls from the general public.

            1.    Staff will endeavor to answer every call in a professional, courteous and efficient manner.

            2.    If bomb threats are received, the staff member receiving the call will utilize established procedures.  Bomb threats will be communicated to the Command Center immediately.

            3.    If possible, all "crank" calls and calls considered to be an emergency, should be recorded and traced.

CHAPTER 7:  STAYS, COMMUTATIONS AND OTHER DELAYS

I.    General Provisions

    A.    Purpose of Chapter

        The purpose of this chapter is to:

        1.    cite the entities capable of causing execution stays, commutations, and other delays;

        2.    specify the manner of communicating such delays/commutations; and

        3.    provide the procedures for implementing the delay/commutation.

    B.    Policy

        It is the policy of the BOP that:

        1.    procedures must be in place to receive and ensure proper handling of legal interruptions of the execution countdown;

        2.    staff understand their roles and the BOP's responsibilities in the event of such interruptions; and

        3.    contingency plans provide methods for responding to:

            a.    temporary delays;

            b.    lengthy delays; and

            c.    commutations.

II.   Presidential and Judicial Authority to Interrupt Execution

    A.    President

        1.    The United States Constitution confers upon the President the power to grant reprieves and pardons for offenses against the United States.  This has been held to include the power to grant conditional pardons and commute sentences.

        2.    Neither Congress nor a State legislature can limit the President's power to pardon.

B.  <u>Courts</u>

A Federal court of competent jurisdiction may issue a stay of execution or invalidate a sentence of death as a result of appellate or collateral proceedings.

III.  <u>Communication of Pardons, Stays, Commutations or Delays</u>

A.  <u>Prior to Final Execution Countdown</u>

If the BOP receives an order from a Federal court of competent jurisdiction or the President ordering a respite, reprieve, stay, commutation, pardon or other action which requires the suspension or termination of the execution:

1.  the Attorney General's Office will be contacted for consultation; and

2.  a decision will be made by the Director of the BOP concerning the status of planning and preparation for the execution.

B.  <u>During Final Execution Countdown</u>

1.  During the final twenty-four hours, the BOP and the USMS will maintain frequent contact with the Attorney General's Office through ██████████ ████████████████████████



C.  <u>Final Clearance for Execution</u>

At an appropriate time prior to the execution ████████ ████████ the Designated United States Marshal will verify clearance to continue with the execution ████████

IV.  <u>Procedures to Implement Last-Minute Stays</u>

    A.  Upon receiving a stay during the final countdown, the first
        effort will be to determine the probable length of the
        delay.

    B.  If the witnesses have not been moved from their staging
        areas, they will be held in those locations until further
        instructions are received from the Warden to proceed with or
        terminate the execution.

    C.  If witnesses are already at the Execution Facility and the
        condemned individual is restrained:

        1.  If the delay appears to be relatively lengthy, the
            condemned individual will be returned to the Holding
            Cell by the Restraint Team.  The witnesses will be
            returned to their staging areas in the order listed.
            There they will await further information.

        2.  If the delay is likely to be relatively short in
            duration, the witnesses will remain in place. The
            drapes will be closed and the condemned individual
            will remain restrained on the table.

        3.  If the execution is indefinitely stayed, set for re-
            sentencing, commuted, or halted by pardon, the
            execution will be halted, and the condemned individual
            and witnesses will be immediately advised.  Witnesses
            will be returned to their staging areas and the
            condemned individual returned to appropriate quarters
            in the institution.

Appendix A

MEMORANDUM OF AGREEMENT
BETWEEN
FEDERAL BUREAU OF PRISONS
AND WITNESS

This agreement is made between the Federal Bureau of Prisons and the following witness:

_____

In accordance with Title 28, Code of Federal Regulations, Section 26.4, the Federal Bureau of Prisons may allow you, as a witness, to be present at the execution.  However, your presence at the execution is not a right and, in order to be entitled to be present, you will be required to agree to the following conditions:

1.   You will not bring onto institution grounds anything constituting legal or illegal contraband under any applicable statute, regulation or policy, including, but not limited to, firearms, weapons, explosives, metal cutting tools, narcotic drugs, alcoholic beverages, or any item creating a threat to institution safety, security, or good order;

2.   You agree to submit to a reasonable search for contraband and other searches as considered necessary by the Bureau of Prisons for entry into the institution;

3.   You will conduct yourself in a lawful and orderly manner;

4.   You will comply with all lawful directives of correctional personnel while on institution grounds;

5.   You will not bring onto institution grounds any photographic or other visual or audio recording device; and

You have read, understand, and agree to the above.  By signing this agreement, you agree to comply with its conditions and understand that failure to abide by them will result in your removal from institution grounds and could lead to prosecution for violation of Federal laws.

_____           _____
          (Witness)                                  (Date)

_____           _____
     (Agency Representative)                         (Date)

Appendix B

## MEDIA WITNESS PRESS POOL AGREEMENT

In consideration of having been selected as an official witness
to the execution of _____ on
_____, I, _____,
hereby agree to act as a pool reporter and, not to interview non-
media witnesses or Department of Justice staff at the Execution
Facility.  Following the execution, I agree to return immediately
to the Media Center to brief my colleagues there regarding the
execution and answer their questions.  I also agree to file my
story only after I have completed my responsibilities as a pool
reporter.

NAME: _____

(Signature)

ORGANIZATION: _____

DATE: _____


_____

(BOP Staff Witness)

49

Appendix C

SAMPLE LETTER TO MEDIA
(Re:  Media Center Operations)

In accordance with the provisions of 28 C.F.R., Part 26,
Implementation of Death Sentences in Federal Cases,

_____ is scheduled to be executed
    (Condemned Individual's Name)

at _____ on _____.
      (Institution)            (Date)

No later than eight hours preceding the scheduled execution, a Media
Center will be established at the _____ in
                                                (Location)
Terre Haute, Indiana, and telephones will be available.  Should you
desire to cover the event from the Media Center, or if selected, be a
media pool witness, please submit your written request to me, via fax
or by mail, so that it is received in my office no later than

_____.
               (Date 10 days prior to execution)

The request must include your name, the names of all support
staff (sound technician, cameraperson, etc.) who may accompany
you on this day.  Social security numbers and dates of birth for all
participants, including yourself, must also be furnished in your
letter so that appropriate security checks can be completed.  You will
be notified promptly if we have any concerns with your request.  Space
is limited and admittance to the Media Center will have to be on a
first-come, first-accommodated basis.

Should you desire to be considered to be a media pool witness to the
execution, you will also be required to sign agreements consenting to
a search prior to entering the execution facility, and agreeing to
abide by all relevant conditions, rules and regulations.  Should you
participate, your name is subject to being released to the media.

Please note that all media representatives will be required to sign a
log and show proper press credentials in order to be admitted to the
Media Center.

                              Sincerely,
                              Name
                              Title

50

0054

U.S. Department of Justice

Federal Bureau of Prisons

---

Office of the Director                    Washington, D.C. 20534

July 25, 2019

MEMORANDUM FOR J. E. KRUEGER, REGIONAL DIRECTOR
                NORTH CENTRAL REGION

FROM:          HUGH J. HURWITZ
                Acting Director

SUBJECT:       Addendum to Execution Protocol

This memorandum is to advise that I hereby adopt the attached
Addendum to the Federal Execution Protocol. Please coordinate as
appropriate, including incorporating the Addendum into the Federal
Execution Protocol.

Attachment

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 25, 2019

A.     Federal death sentences are implemented by an intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director, Federal Bureau of Prisons (BOP) and to be administered by qualified personnel selected by the Warden and acting at the direction of the United States Marshal.  28 CFR 26.3. The procedures utilized by the BOP to implement federal death sentences shall be as follows unless modified at the discretion of the Director or his/her designee, as necessary to (1) comply with specific judicial orders; (2) based on the recommendation of on-site medical personnel utilizing their clinical judgment; or (3) as may be required by other circumstances.

B.     The identities of personnel considered for and/or selected to perform death sentence related functions, any documentation establishing their qualifications and the identities of personnel participating in federal judicial executions or training for such judicial executions shall be protected from disclosure to the fullest extent permitted by law.

C.     The lethal substances to be utilized in federal lethal injections shall be Pentobarbital Sodium.

D.     Not less than fourteen (14) days prior to a scheduled execution, the Director or designee, in conjunction with the United States Marshal Service, shall make a final selection of qualified personnel to serve as the executioner(s) and their alternates. See BOP Execution Protocol, Chap. 1, §§ III (F) and IV (B) & (E). Qualified personnel includes currently licensed physicians, nurses, EMTs, Paramedics, Phlebotomists, other medically trained personnel, including those trained in the United States Military having at least one year professional experience and other personnel with necessary training and experience in a specific execution related function.  Non-medically licensed or certified qualified personnel shall participate in a minimum of ten (10) execution rehearsals a year and shall have participated in at least two (2) execution rehearsals prior to participating in an actual execution.  Any documentation establishing the qualifications, including training, of such personnel shall be maintained by the Director or designee.

E.     The Director or designee shall appoint a senior level Bureau employee to assist the United States Marshal in implementing the federal death sentence.  The Director or designee shall appoint an additional senior level Bureau employee to supervise the activities of personnel preparing and administering the lethal substances.

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 25, 2019

F.      The lethal substances shall be prepared by qualified personnel in the following manner unless otherwise directed by the Director, or designee, on the recommendation of medical personnel.  The lethal substances shall be placed into three sets of numbered and labeled syringes.  One of the sets of syringes is used in the implementation of the death sentence and two sets are available as a backup.

G.      Approximately thirty (30) minutes prior to the scheduled implementation of the death sentence, the condemned individual will be escorted into the execution room.  The condemned individual will be restrained to the execution table.  The leads of a cardiac monitor will be attached by qualified personnel.  A suitable venous access line or lines will be inserted and inspected by qualified personnel and a slow rate flow of normal saline solution begun.

H.      Lethal substances shall be administered intravenously.  The Director or designee shall determine the method of venous access (1) based on the training and experience of personnel establishing the intravenous access; (2) to comply with specific orders of federal courts; or (3) based upon a recommendation from qualified personnel.

A set of syringes will consist of:

Syringe #1 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
Syringe #2 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
Syringe #3 contains 60 mL of saline flush,

Each syringe will be administered in the order set forth above when directed by supervisory personnel.

If peripheral venous access is utilized, two separate lines shall be inserted in separate locations and determined to be patent by qualified personnel. A flow of saline shall be started in each line and administered at a slow rate to keep the line open.  One line will be used to administer the lethal substances and the second will be reserved in the event of the failure of the first line.  Any failure of a venous access line shall be immediately reported to the Director or designee.

# BOP EXECUTION PROTOCOL



SENSITIVE – LIMITED OFFICIAL USE ONLY          2019

Federal Bureau of Prisons
Execution Protocol Manual

Page

INTRODUCTION    General Provisions………………………………………………    4

I.    Purpose of Manual……………………………………....    4
II.    Organization………………………………………….....    4
III.    Cross References……………………………………….    4
IV.    Procedure………………………………………………    4


CHAPTER 1    Pre-Execution Checklist…………………………………….    7

I.    General Provisions……………………………………….    7
II.    Establishing an Execution Date………………………….    7
III.    Period of Time Between Establishment
    Of an Execution Date to Thirty Days
    Prior to the Execution……………………………………    8
IV.    Period of Time Between Twenty-Nine
    To Fourteen Days Prior to the
    Execution…………………………………………………    12
V.    Period of Time Between Thirteen to
    Seven Days Prior to the Execution……………………….    13
VI.    Period of Time Between Six to Three
    Days Prior to the Execution…………………………….    13
VII.    Period of Time Between Two Days to
    One Day Prior to the Execution…………………………    15


CHAPTER  2    Execution Checklist ………………………………………….    17

I.    General Provisions……………………………………….    17
II.    Period of Time Between Twenty-Four to
    Twelve Hours Prior to the Execution…………………....    17
III.    Period of Time Between Twelve to Three
    Hours Prior to the Execution…………………………….    18
IV.    Period of Time Between Three Hours to
    Thirty Minutes Prior to the Execution……………………    20
V.    The Final Thirty Minutes Prior
    To the Execution…………………………………………    22
VI.    Final Sequences of Events:  Execution………………    24


CHAPTER 3    Post-Execution Checklist………………………………………    26

I.    General Provisions………………………………………    26

|  |  |  |  |
|---|---|---|---|
|  | II. | Removing Witnesses from the Execution Facility………………………………………………………… | 26 |
|  | III. | Removal of the Body of the Inmate……………………………………………………………... | 27 |
|  | IV. | Site Clean-up……………….……………………… | 27 |
|  | V. | Returning to Routine Operations……………………… | 27 |
| CHAPTER 4 |  | Command Center………………………………………... | 28 |
|  | I. | General Provisions…………………………………… | 28 |
|  | II. | Location, Role and Function………………………… | 28 |
|  | III. | Command Center Staffing……………………………... | 29 |
|  | IV. | Resources……………………………………………... | 29 |
| CHAPTER 5 |  | Contingency Planning…………………………………... | 30 |
|  | I. | General Provisions…………………………………… | 30 |
|  | II. | Specific Procedures………………………………….. | 31 |
|  | III. | Execution Witness Management……………………… | 32 |
|  | IV. | Reservation Security Plan…………………………….. | 35 |
| CHAPTER 6 |  | News Media Procedures………………………………… | 37 |
|  | I. | General Provisions…………………………………… | 37 |
|  | II. | Inmate Interviews…………………………………….. | 37 |
|  | III. | Media Orientation…………………………………….. | 38 |
|  | IV. | Media Center Operations…………………………….. | 39 |
|  | V. | The Execution Information Center……………………. | 45 |
| CHAPTER 7 |  | Stays, Commutations and Other Delays………………… | 47 |
|  | I. | General Provisions…………………………………… | 47 |
|  | II. | Presidential and Judicial Authority To Interrupt Execution…………………………………. | 47 |
|  | III. | Communication of Pardons, Stays, Commutations or Delays…………………………….. | 46 |
|  | IV. | Procedures to Implement Last-Minute Stays…………………………………………………. | 48 |
| APPENDICES |  | Appendix A – Memorandum of Agreement Between Federal Bureau of Prisons and Witness……………………… | 50 |
|  |  | Appendix B – Media Witness Press Pool Agreement………………………………………... | 51 |
|  |  | Appendix C – Sample Letter to Media………………… | 52 |

INTRODUCTION:   GENERAL PROVISONS

I.      Purpose of Manual

The purpose of this manual is to outline Federal Bureau of Prisons (BOP) policy
and procedures for planning and carrying out the execution of a person
convicted of a capital offense.  These procedures should be observed and
followed as written unless deviation or adjustment is required, as determined by
the Director of the BOP or the Warden.  This manual explains internal
government procedures and does not create any legally enforceable rights or
obligations.

II.     Organization

This manual provides specific time related checklists for pre-execution, execution
and post execution procedures as well as detailed procedures related to the
execution process, command center operations, contingency planning, news
media procedures, and handling stays, commutations and other delays.

III.    Cross References

A.      Title 28, Code of Federal Regulations, Chapter 1, Part 26

B.      Title 28, Code of Federal Regulations, Chapter 1, Part 1

C.      Correctional Systems Manual – Program Statement 5800.15, Paragraph
803

D.      Searching, Detaining, or Arresting Visitors to Bureau Grounds and
Facilities – Program Statement 5510.09

E.      News Media Contacts – Program Statement 1480.05

F.      Accounting Management Manual – Program Statement 2000.02, Chapter
10950

G.      Receiving and Discharge Manual – Program Statement 5800.18

IV.     Procedure

A.      The BOP will ensure the execution of a person sentenced to death under
federal law by a court of competent authority and jurisdiction be carried
out in an efficient and humane manner.

B.      The BOP will make every effort in the planning and preparation of an
execution to ensure the execution process:

1.  Faithfully adheres to the letter and intent of the law;

2.  Is handled in a manner that minimizes the negative impact on the safety, security, and operational integrity of the correctional institution in which it occurs and the BOP in general;

3.  Accommodates the public's right to obtain information concerning the event;

4.  Reasonably addresses the privacy interests of those persons for whom the law and BOP policy require such privacy;

5.  Provides sufficient contingency planning to ensure that unforeseen problems can be addressed and overcome;

6.  Allows for stays of execution, commutations and other delays in the execution countdown;

7.  Provides an opportunity for interested person to exercise their First Amendment rights to demonstrate for or against capital punishment in a lawful manner; and

8.  Ensures a firm and adequate response to unlawful civil disobedience, trespass, or other violations of the law by persons attempting to disrupt or prevent the execution.

C.  The BOP will seek the arrest and encourage the prosecution of persons, including but not limited to those, who:

1.  Violate prohibitions against filming, taping, broadcasting, or otherwise electronically documenting the death of the inmate;

2.  Trespass or otherwise enter upon BOP property without proper permission and clearance from the Warden;

3.  Participate in unlawful demonstrations;

4.  Unlawfully attempt to disrupt, prevent, or otherwise interfere with the execution;

5.  Are inmates involved in disruptive, assaultive, or other unlawfully proscribed behavior related to an execution; or

6.  Unlawfully threaten, intimidate, or terrorize persons involved in the execution process.

D.     BOP staff involved in the execution will make every effort, within the limits of these procedures and the laws of the United States, to:

     1.     Display appropriate levels of professionalism, restraint, and courtesy, in interaction with witnesses, demonstrators, news media, and other persons during the execution process;

     2.     Prevent emotion or intimidation from hindering efforts to carry out assigned duties; and

     3.     Conduct themselves at all times in a manner reflecting the solemnity and sensitivity of the occasion.

E.     BOP staff trained in crisis support will be available for counseling sessions with all personnel participating directly in an execution process, before and after an execution.

CHAPTER 1:        PRE-EXECUTION CHECKLIST

I.    General Provisions

    A.    Purpose of Chapter

        1.    The purpose of this chapter is to provide a checklist of procedures and events that should occur between the period of time prior to the establishment of an execution date and 24 hours prior to the execution.

        2.    Full detail will not be provided for each procedure or event in this chapter.  For detail, refer to specific chapters which follow.

        3.    This chapter covers the following time periods:

            a.    Prior to the execution date being established;

            b.    Establishment of the execution date to thirty days prior to the execution;

            c.    Twenty-nine to fourteen days prior to the execution;

            d.    Thirteen to seven days prior to the execution;

            e.    Six to three days prior to the execution; and

            f.    Forty-eight to twenty-four hours prior to the execution.

    B.    Procedure

        1.    A systematic countdown to an execution must be completed to ensure that all procedures and events necessary to adequately prepare for the execution are completed in a timely manner.

        2.    Absent intervention by the court system or the President as noted in Chapter 7, delays in the countdown process will only occur in extraordinary situations relating to the security and good order of the institution as approved by the Director of the BOP.

II.   Establishing of an Execution Date

After a sentencing hearing is conducted in a United States District Court resulting in a determination that a criminal defendant be sentenced to death for commission of an offense described in a federal statute, and the sentencing judge signs the appropriate Judgment and Order:

A.   Except to the extent a court orders otherwise, the Director of the BOP will designate a date and time for the execution of the sentence.  The following individuals/offices will be advised in writing of the execution date: the sentencing judge, Attorney General, Office of the Deputy Attorney General, Office of the Pardon Attorney, the Assistant Attorney General for the Criminal Division, the Chief of the Capital Case Unit, Director for the United States Marshals Service (USMS), the Office for Victims of Crime, Assistant Director for Correctional Programs Division, Assistant Director for General Counsel and Review Division, appropriate Regional Director, United Sates Attorney's Office for the district of conviction, United Sates Attorney's Office for the Southern District of Indiana and Warden of USP Terre Haute.

B.   Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R.§ 26.3 (a)(1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R.§ 26.4 (a)).  If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.

C.   The Warden of USP Terre Haute will notify, in writing, the inmate under sentence of death, of the date designated by the Director for execution at least 90 days in advance.  If the designated execution date is stayed, notice of the new execution date must be given no later than 20 days before the execution, if time permits and if not, as soon as possible.  If the execution date is set by a judge, the Warden will notify the inmate, in writing, as soon as possible.  The Warden will include information concerning the clemency application process in the written notice.  Under 28 C.F.R. §1.10(b), a petition for commutation of sentence should be filed no later than 30 days after the inmate has received notification from the Warden of the execution date.

D.   Unless the President interposes, the execution of the sentence will not be stayed on the basis of the inmate filing a petition for executive clemency.

III.   Period of Time Between Establishment of an Execution Date to Thirty Days Prior to the Execution

The following procedures should be completed between the time an execution date is set and 30 days prior to the execution.

A.    Briefing the Inmate

As soon as practical after establishment of the execution date, the Warden at USP Terre Haute or designee, will personally brief the inmate regarding relevant aspects of the execution process including information contained in items C through F of this section.  A briefing sheet outlining these aspects of the execution will be given to the inmate.  If requested, a copy of the briefing sheet will be given to a representative identified by the inmate.  In addition, the Warden will ascertain the inmate's religious preference.

B.    Inmate's Choice of Witnesses

When the inmate is informed by the Warden of the execution date, he/she will be advised that he/she may designate not more than one spiritual adviser, two defense attorneys, and three adult friends or relatives (at least 18 years old) to be present at the execution. The inmate will be asked to submit the list of his/her witnesses to the Warden no later than 30 days after notification of the date of the scheduled execution.

C.    Disposition of Person Property and Accounts

The Warden will review the options available to the inmate for property/account distribution and will ask the inmate to provide instructions, no later than 14 days prior to the execution, concerning the disposition of the personal property and funds in any accounts controlled or administered by the BOP.  If the inmate fails to provide instructions for such disposition, the property/accounts will be disposed on in accordance the Accounting Management Manual and the Receiving and Discharge Manual.

D.    Organ Donation

The inmate's body will not be used for organ donation.

E.    Disposition of Body
The Warden will review options available to the inmate following the release of the body to the Vigo County Coroner.  The Warden will ask the inmate to provide instructions concerning disposition of his/her body no later 14 days prior to the execution.  If the inmate fails to provide instructions, the body will be handled in accordance with the Accounting Management Manual.

F.   Designation of Persons Required to Assist with the Execution

    1.    Those persons necessary to carry out the execution will be identified.

        a.    The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.

        b.    The Warden, in conjunction with the Regional Director, is responsible for selection of the local staff involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.

    *2.*    All individuals identified for placement in vital or important positions and identified alternates, will be attired in a uniform as determined by the presiding Regional Director.

    3.    No officer or employee of the Department of Justice will be required to be in attendance at or participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee.  Staff participation in the execution process must be on a voluntary basis.

G.   Other Approved Witnesses

    1.    In addition to the United States Marshal designated by the Director of the USMS (hereafter called the "Designated United Sates Marshal") and the Warden, the following persons will be present at the execution.

        a.    Necessary personnel selected by the Designated United States Marshal and the Warden.

        b.    Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary.

        c.    Not more than the following members of persons selected by the Warden:

            (1)    Up to eight citizens (in identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the inmate was prosecuted to recommend up to eight individuals who are victims

or victim family members to be witnesses of the execution); and

    (2)    Ten representatives of the press.

2.    No other person will be present at the execution unless such person's presence is granted by the Director of the BOP.  No person younger than 18 years of age will witness the execution.

3.    The Warden will notify all witnesses of the date, time and place of the execution as soon as practicable before the designated time of execution.

H.    <u>Contact with the Vigo County Coroner</u>

1.    The Warden will contact the Vigo County Coroner to coordinate the Coroner's role.

2.    The Vigo County Coroner will be requested to provide direction concerning:

    a.    Transfer of custody of the body of the executed individual from the Warden to the Vigo County Coroner;

    b.    Transportation of the body from the Execution Room to the Vigo County Coroner's facility; and

I.    <u>Briefing of Institution Staff</u>

1.    It is necessary to modify prison operations and communicate with local staff throughout the execution process.

2.    Local prison administrators should be briefed by the Warden, as appropriate, on plans for the execution, restrictions on access, crowd control, additional security procedures, etc., on an on-going basis.

3.    As soon as plans begin to evolve which will affect general prison operations, briefings should begin and continue until operations return to normal.

IV.    Period of Time Between Twenty-Nine to Fourteen Days Prior to the Execution

    A.    Witnesses

        1.    To the extent possible, the Warden will develop a final list of citizen and inmate's witnesses.

        2.    All witnesses/participants will be required to sign an agreement prior to being cleared and added to the witness list.  Included in the document will be an agreement to be searched before entering the Execution Facility and not to photograph or make any other visual or audio recording of the execution (see Appendix A.).

    B.    Qualified Person

        The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.

    C.    Inmate's Property and Account

        The Warden will finalize arrangements for disposition of the inmate's property and accounts no later than 14 days prior to the scheduled execution date.

    D.    Disposition of Body

        The Warden will finalize arrangements with the Vigo County Coroner for disposition of the body, security for the Vigo County Coroner's vehicle, and transfer of custody of the body in accordance with appropriate state and    local laws.

    E.    Selection of Executioner (s)

        The Warden, with the assistance of the Regional Director, Director and USMS will finalize the selection of executioner(s) and their alternates.

    F.    Training

        The Regional Director will ensure that appropriate training Sessions are held for persons involved in the various aspects of the execution event.

V.      Period of Time Between Thirteen to Seven Days Prior to the Execution

    A.      Inmate's Property and Accounts

        All paperwork regarding disposition of property and accounts should be completed.

    B.      Food Services

        At least seven days prior to execution, the Warden or designee will contact the inmate to arrange for his/her last meal.

    C.      Purchase of Substances to be Used in Lethal Injection

        The Bureau of Prisons will ensure the purchase of lethal substances to be used in the execution.  Once purchased, the lethal substance or substances will be secured in the institution until called for by the Regional Director.

    D.      Law Enforcement Coordination

        1.      The Warden will meet with federal, state, and local law enforcement personnel to coordinate support related to the execution.

        2.      Joint practices should be conducted between law enforcement staff involved to ensure coordination and interaction is well defined and understood.

    E.      Restrictions on Inmate's Visitors

        Beginning seven days prior to the designated date of execution, the inmate will have access only to his/her spiritual advisers (not to exceed two), his/her defense attorneys, members of his/her family, and designated officers and employees of the BOP.  Upon approval of the Director of the BOP, the Warden may grant access to such other proper persons as the inmate may request.

VI.     Period of Time Between Six to Three Days Prior to the Execution

    A.      Witnesses

        Non-media witness agreements should be signed by the witnesses and reviewed by the Regional Director.

        1.      The Warden will provide a final list of witnesses to the:

       a.       Director, Bureau of Prisons

       b.       Assistant Director, Correctional Programs Division;

       c.       Assistant Director, Information, Policy, and Public Affairs Division;

       d.       Assistant Director, Office of General Counsel

       e.       Director, USMS; and

       f.       Designated United States Marshal

       g.       United States Attorney's Office – district of conviction

       h.       United States Attorney's Office- Southern District of Indiana

2.       Persons who refuse to sign agreements will not be allowed to attend the execution.

B.       <u>Brief Affected Law Enforcement Agencies</u>

The Warden will ensure that staff from other law enforcement agencies who have not participated in practice session or have not otherwise been briefed previously will be briefed and their responsibilities explained.

C.       <u>Inmate's Property and Accounts</u>

Verify arrangements are complete.

D.       <u>Executioner(s)</u>

An individual designated by the Warden will:

1.       Review with executioner(s) and alternates arrangements for their transportation and escort to the Execution Facility; and

2.       Review with participants' arrangements for security of executioner(s) and protection of their identities.

E.       <u>Equipment Check/Inventory</u>

All equipment necessary to conduct the execution will be inventoried and checked at least 72 hours prior to the execution by individuals designated by the Regional Director.

VII.   Period of Time Between Two Days to One Day Prior to the Execution



B.    <u>Practices</u>

     Final practices will be conducted as directed by the Regional Director.

C.    <u>Equipment Checks</u>

     Maintenance staff should verify necessary installation of and test electrical, heating/air conditioning, backup generator and communications equipment in:

    1.    BOP Execution Facility;

    2.    Command Center.

D.    <u>Regional Director and/or Warden Contacts</u>

    1.    To ensure that coordination efforts are in place, the following entities and specifically identified individuals will be contacted by the Regional Director and/or the Warden:

        a.    Department of Justice Command Center (to ensure communications, if required, by the Attorney General, the Supreme Court, the President of the United States and the affected United States Attorneys Offices);

        b.    BOP Director's Office;

        c.    USMS Director's Office; and

        d.    Affected law enforcement agencies.

E.    <u>Equipment Check Verification by the Regional Director</u>

    1.    The Regional Director will ensure completion of pre-execution inventory and equipment check in the BOP Execution Facility.

    2.    The Regional Director will verify that the Execution Facility's equipment checks have been completed.

CHAPTER 2:  EXECUTION CHECKLIST

I.  General Provisions

    A.  Purpose of Chapter

        1.  This chapter provides a checklist of procedures and events that should occur during the final 24 hours prior to the execution.

    B.  Procedure

        The execution will be carried out in a manner consistent with Title 28, Code of Federal Regulations, Part 26.

II.  Period of Time Within Twenty-Four Hours Prior to the Execution

    B.  Inmate Communication

        1.  Excluding calls to the inmate's attorney(s) of record and calls specifically approved by the Warden, the inmate's telephone privileges will be terminated 24 hours prior to the execution.

        2.  The inmate's attorney(s) of record, spiritual adviser(s), or other persons approved by the Director of the BOP, will be given visiting privileges during the final 24 hours as determined by the Warden. Visiting privileges will be suspended when preparations for the execution require suspension.

    C.  Food Service

        The Warden will contact the inmate to finalize arrangements for his/her final meal and ensure that it is properly prepared and served by staff.

    D.  Maintenance Response Team

        Beginning eight hours prior to an execution, the Facility Manager or other appropriate individual will ensure that a Maintenance Response Team is available to provide necessary maintenance and repair of systems at the Execution Facility or in other areas of the institution.

E.    Access to the Execution Facility



III.    Period of Time Between Twelve to Three Hours Prior to the Execution

A.    Final Briefing

2.    A final briefing will be held, attended by senior BOP and Marshals Service staff, the Regional Director, and representatives deemed appropriate by the Regional Director.  The Regional Director will conduct the meeting, with the senior staff providing guidance and policy decisions, as needed.

3.    During the briefing, participants will:

a.    Identify problems, develop solutions, and specific time lines;

b.    Provide status reports;

c.    Coordinate support services involvement; and

d.    Conduct a final review of procedures.

B.    Food Service

 The inmate will be served a final meal at a time determined by the Warden.

C.    Visits

 Visits by attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden.

D.    Restricting Access to Prison Property

 1.    At the discretion of the Warden, during the final 12 hours prior to the execution, access to prison property will be limited to:

  a.    On-duty staff;

  b.    On-duty contract workers;

  c.    Volunteers deemed necessary by the Warden;

  d.    Approved delivery vehicles;

  e.    Law enforcement personnel on business-related matters;

  f.    Routine inmate visitors; and

  g.    Other persons approved by the Warden.

 2.    During the final eight hours:

  a.    All off-duty Department of Justice personnel will be required to leave institution property;

   E.    Establishment of Command Center

IV.   Period of Time Between Three Hours to Thirty Minutes Prior to the Execution

   A.    Pre-Execution Procedures

      1.    The Regional Director will ensure that all countdown procedures for required activities and actions are progressing.

      2.    Immediate action to complete any unfinished required procedures will be initiated.

      3.    The Warden will designate a recorder who will begin logging execution activities in the official execution log commencing three hours prior to the scheduled execution.  The log will reflect, at a minimum, the time each of the following events occurs:

         a.    Inmate removed from Inmate Holding Cell;

         b.    Inmate strapped to gurney;

         c.    Arrival of government/community witnesses;

         d.    Arrival of inmate's authorized witnesses;

         e.    Arrival of media witnesses;

         f.    Opening of drapes;

         g.    Last statement by inmate;

         h.    Reading of statement conveying inmate's sentence of death;

         i.    Upon Designated United States Marshal's approval, the execution process begins;

         j.    Signal by Executioner(s) that lethal substances have been administered;

         k.    Determination of inmate's death by designated qualified person;

      l.      Announcement of death of inmate;

      m.     Closing of drapes;

      n.     Notification of outside media and demonstrators of inmate's death;

      o.     Removal and transportation of media witnesses to media center;

      p.     Removal of inmate's authorized witnesses;

      q.     Removal of government/community witnesses;

      r.     Restraint Team/Vigo County Coroner enter Execution Room to remove body;

      s.     Removal of body to Vigo County Coroner's vehicle;

      t.     Performance of any necessary cleaning chores;

      u.     Directive by Warden to secure Execution Facility.

B.     Execution Room Staff Assemble

    1.    The Executioner(s) will be escorted into the Execution Facility and will inventory supplies and ensure that everything is ready.

    3.    All other Execution Room staff will be assembled on-site for final instructions at least forty five minutes prior to the scheduled execution.

C.     Contact with the Department of Justice Command Center



V.   The Final Thirty Minutes Prior to the Execution

 A.   Final Sequence of Events: Preparation

  1.   Bringing the Inmate to the Execution Room

   At the appropriate time, the inmate will be:

   a.   Removed from the Inmate Holding Cell by the Restraint Team;

   b.   Strip-searched by the Restraint Team and then dressed appropriately;

   c.   Secured with restraints;

   d.   Escorted to the Execution Room by the Restraint Team.

2.   Restraint Team Procedures And Preparation

    a. In the Execution Room the ambulatory restraints will be removed and the inmate will be restrained to the Execution Table.

    b. The inmate will then be assessed and prepared for execution by qualified medical personnel.

3.   Admit Witnesses

    a. Subsequent to appropriate search procedures, witnesses will be admitted to the witness rooms.

    b. The government/community witnesses will then enter and will be escorted to their assigned area.  The escorts will remain with the witnesses.

    c. The authorized witnesses invited by the inmate individual will be admitted and escorted to their assigned area.

        1. If any of the inmate's invited witnesses wish to be on-site, but not actually witness the execution, accommodations will be made for them by the Warden.

        2. Escorts will remain with the inmate's witnesses. There will be a minimum of two escorts for each witness group.

    d. The last witnesses to be admitted will be the news media representatives.  The members of the news media selected to witness the execution will be escorted to their assigned area.  Escorts will remain with the news media witnesses and ensure their separation from the other witnesses while at the Execution Facility.  Media witnesses will not be permitted to interview or question staff or other witnesses while at the Execution Facility.

VI.   Final Sequence of Events: Execution

    A.   Staff Witnesses

        1.   Staff participating in the preparation for the execution will exit the Execution Room but stand by in an adjacent area.

        2.   Staff members participating in and/or observing the execution will include the:

            a.   Designated United States Marshal;

            b.   Senior BOP Official;

            c.   Executioner(s);

            d.   Other staff authorized by the Director of the BOP.

    B.   Countdown

        1.   Upon the direction of the Senior BOP Official, staff inside the Execution Room will open the drapes covering the windows of the witness rooms.

        2.   The inmate will be asked if he/she has any last words or wishes to make a statement.  The inmate will have been advised in advance that this statement should be reasonably brief.

        3.   At the conclusion of the remarks, or when a determination is made to proceed, the documentation deemed necessary to the execution process will be read.  Once the Designated United States Marshal makes a final determination that the execution is to proceed, the executioner(s) will be directed to administer the lethal injection.

        4.   If the execution is ordered delayed ⬛⬛⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛ the Designated United State Marshal will notify the Senior BOP Official who will in turn instruct the Executioner(s) to step away from the execution equipment and will notify the inmate and all present that the execution has been stayed or delayed.

    C.   Determination of Death

        1.   After the lethal injection has been administered:

            a.   The inmate will be monitored until apparent signs of life have ceased;

      b.     The time of death will be announced prior to the drapes being closed.

2.     The Designated United States Marshal will complete and sign the Return described in 28 C.F.R. § 26.2(b) and will file such document with the sentencing court.

CHAPTER 3:        POST-EXECUTION CHECKLIST

I.      General Provisions

        A.      Purposes of Chapter

                The purpose of this chapter is to:

                1.      Provide the procedures to be followed after the execution of the
                        inmate;

                2.      Identify the responsibilities for tasks to be completed; and

                3.      Provide for the transfer of the body of the inmate from the custody
                        of the BOP.

        B.      Procedure

                It is the procedure of the BOP that:

                1.      The inmate will be examined by a specified qualified person
                        following the administration of the lethal substances to ensure that
                        death has occurred;

                2.      When the qualified individual is satisfied that death has occurred,
                        the time of death will be announced to the witnesses;

                3.      The witnesses to the execution will then be removed from the
                        Execution Facility and returned to their individual staging areas so
                        that they may leave the institution.  News media witnesses will be
                        removed to a secondary press location where they will participate in
                        a press briefing;

                4.      The body of the inmate will be surrendered to the Vigo County
                        Coroner;

                5.      After removal of the body, the site will be cleaned and restored to
                        its previous condition.

II.     Removing Witnesses from the Execution Facility

        A.      After the pronouncement of death, the witnesses will be escorted from the
                facility in the following order:

                1.      News media witnesses;

                2.      Inmate's authorized witnesses; and

3.    Government/community witnesses.

B.    Each group of witnesses will be kept separate from the others and escorted to waiting vehicles to be driven to separate designated sites.

III.   <u>Removal of the Body of the Inmate</u>

A.    After the witnesses have departed, the restraints will be removed from the inmate's body.

B.    The Vigo County Coroner or designee will be escorted into the Execution Facility.  The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.

IV.   <u>Site Clean-Up</u>

A.    Under the supervision of an individual designated by the Warden, staff will clean and secure the Execution Facility.

B.    The Execution Facility will be locked and secured when the Warden is satisfied that clean-up has been completed.

V.   <u>Returning to Routine Operations</u>

A.    Following the execution, Department of Justice and BOP staff involved in the execution will be deactivated, as appropriate, under direction of the DOJ, BOP and USMS staff on-site.

B.    The designated public affairs representative will determine when to secure the media assembly site after the news conference is complete.

C.    The Warden will bring the institution security back to routine operations as he/she sees fit.

CHAPTER 4:        Command Center

I.     General Provisions

       A.    Purpose of Chapter

             The purpose of this chapter is to:

             1.     Identify the role and function of the Command Center;

             2.     Specify the individuals authorized to staff the Command Center;
                    and

             3.     Provide an inventory of the minimum resources required in the
                    Command Center.

       B.    Procedure

             It is the procedure of the BOP that:

             1.     The Bureau operate a local, emergency Command Center during
                    the execution operation to:

                    a.    Coordinate security, transportation, crowd control, access
                          and other processes;

                    b.    Provide policy and procedural advice, as needed, or upon
                          request;

                    c.    Coordinate inter-agency functions; and

                    d.    Serve as an information processing and operations
                          information center for the execution.

II.    Location, Role and Function

       A.    The Command Center will be operational prior to the scheduled execution
             and maintained for the duration of the execution operation.

       B.    The roles and functions of the Command Center include:

             1.     Coordinating the various personnel, components and elements of
                    the execution operation;

III.   <u>Command Center Staffing</u>

   A.   Command Center staff should include the following positions:

   B.   Access to the Command Center will be limited to persons specifically
        authorized by the Command Center Director or Warden.



CHAPTER 5: CONTINGENCY PLANNING

I.     General Provisions

       A.     Purpose of Chapter

              The purpose of this chapter is to:

              1.     Aid in the development of a predetermined contingency plan to
                     assist staff in the management of the execution event and in
                     responding to related emergency situations;

              2.     Identify the role and function of staff needed to formulate and
                     activate the plan, if needed; and

              3.     Identify specific areas to stage staff and equipment.  The location of
                     witness processing will be pre-determined by the Warden on a
                     case-by-case basis.

       B.     Procedure

              It is the procedure of the BOP to:

              1.     Prepare and test contingency plans;

2.  Identify all security measures needed to protect staff and inmates of an institution as well as BOP property; and

3.  Coordinate all resources to ensure the safety of the public, staff, and inmates.

II.  Specific Procedures

A.  An individual identified by the Warden will prepare contingency plans related to an emergency occasioned by the execution, such as an institution disturbance, hostage taking, outside demonstration, outside assault on the facility, etc.  All plans will be reviewed and approved by the Warden and the Regional Director.

B.  Plans will include provisions for:

C.  Intelligence Operations

D.     Staging Areas

E.     Tactical Deployment

III.    Execution Witness Management



4.      While all witnesses to the execution are subject to search,  no pat
or visual search of any witness will be conducted unless the
Warden has reasonable suspicion to believe the witness is
concealing weapons, drugs, audio or visual recording devices, or
any other item not expressly authorized and the witness agrees to
be searched.  If the  witness refuses to be searched, he/she will not
be permitted to serve as a witness.

5.      Staff at each staging area will notify the Command Center when all
execution witnesses are accounted for and processed.

6.      Escorts will remain at their assigned staging areas until the
Command Center directs them to transport the witnesses to the
Execution Facility.

B.      Transportation to the Execution Facility



3.    Escorts will ensure that witness groups do not come into contact with each other.

4.    Escorts will transport witnesses to the Execution Facility and notify the Command Center when each group of witnesses is secured in the assigned observation area.

5.    Once each group is secured, the next group will be moved as directed by the Command Center.

6.    The Command Center will be notified by the appropriate staff member when all groups are in place.

7.    The Command Center, in turn, will notify the Warden or designee.

C.    Transportation from the Facility



2.    The groups will be returned to the staging areas by the escorts, who will ensure that no group comes in contact with another group.

3.    Escorts will notify the Command Center as each group returns to the staging area.

4.    The Command Center will direct each move to expedite departures and also to prevent groups from encountering one another in the parking lot.

5.    Media witnesses will be returned to the Media Center to have a press pool briefing as outlined in Chapter 6.

IV.    <u>Reservation Security Plan</u>



0092

3. BOP staff will be available and will accompany execution witnesses.

CHAPTER 6:  NEWS MEDIA PROCEDURES

I.      General Provisions

A. Purpose of Chapter

This chapter describes the procedures and requirement for allowing representatives of the news media access to an inmate sentenced to death, as well as procedures for news media access to the execution.  This chapter also provides procedures for releasing information relating to the execution.

B. Procedure

The BOP recognizes the desirability of establishing procedures which afford the public information about its operations through the news media. In accordance with established policy, reasonable efforts will be made to accommodate representatives of the news media before, during, and after a scheduled execution.  Media representatives will be treated in a fair and consistent manner in accordance with current policies and procedures of the BOP.  The agency has the responsibility, however, to ensure the orderly and safe operation of its institutions, and therefore must regulate media access.

C. Roles

1.  Representatives of the news media are those individuals described in Program Statement 1480.05, News Media Contacts, whose principal employment is to gather and report news.

2.  The Regional Director will designate a specific staff member as the official representative to the news media regarding death penalty issues and the scheduled execution.

3.  The BOP Assistant Director, Information, Policy and Public Affairs Division, will coordinate the release of information to the news media and assist the Regional Director in the selection of individual news media witnesses.  The Department of Justice Office of Public Affairs will be kept informed of these matters.

II.   Inmate Interviews

   A.   Purpose

   As stated in Program Statement 1480.05, News Media Contacts, it is not the BOP's intent to provide publicity for an inmate or special privileges for the news media, but rather to ensure a better informed public.

   B.   Limits

   With this in mind, representatives of the news media may be permitted to conduct interviews with inmates.  Guidelines regarding the frequency and length of interviews, as well as accompanying security, will reflect BOP/institution policy and will be established by the Warden, who will take into account the available resources.

   C.   Prohibition

   Ordinarily, no media interviews will be permitted with the inmate once the execution date is within seven days.

III.   Media Orientation

   A.   Definition

   Ordinarily one day before a confirmed execution date, the institution will hold a Media Orientation to provide media representatives with information on the scheduled execution.  No other press conference or Media Orientation regarding the execution will be scheduled or held until after the scheduled execution, except as provided below in subsection B.  Every effort will be made by the Warden's representative to notify local, state and national media representatives of the scheduled Media Orientation.  Central Office Public Affairs staff will provide assistance in this area.

   1.   All persons, including media representatives, must have appropriate identification to enter the institution on any occasion. Media representatives must have appropriate press credentials.  This requirement includes camerapersons, sound technicians, and reporters.

   2.   All individuals will be advised that they are subject to search of their person and equipment prior to entering and prior to leaving a BOP facility.

   B.   Updates Prior to the Execution

   Following activation of the Media Center, the Warden's representative will provide the news media with regular briefings or updates of the execution process.

1. No later than eight hours prior to the scheduled execution, a Media Center will be activated.  Telephone lines, tables, risers for cameras and outlets for electrical equipment and cameras will be available.  Restroom facilities will also be provided.

2. A BOP representative will be present in the Media Center to provide regular announcements.

C. Media Orientation Releases

During the Media Orientation, the following information will be made available to members of the media:

1. General information regarding the scheduled execution and about the individual scheduled for execution.

2. Specific information regarding procedures to be followed by the media on the date of the scheduled execution.

3. Media representatives will be reminded that there are obvious security concerns about aircraft flying over federal correctional facilities and therefore, their assistance and cooperation in this matter is expected.

4. Media representatives will be informed of how the press pool will be established (see paragraph IV D 2) and advised that if they are selected as press pool witnesses to the execution, they will agree prior to the execution to:

   a. Sign the document designated as the Media Witness Press Pool Agreement (see Media Witness Press Pool Agreement, Appendix B);

   b. Be subject to search which includes metal detection scanning;

   c. Not make any photographic, visual or audio recordings of the execution (each media witness will be provided only paper and a pencil or pen while in the execution witness area); and

   d. Return to the Media Center after the execution to answer questions of all other media represented concerning their observations during the execution.

5. After the BOP representative, media pool witnesses and appropriate Department of Justice staff, if available, have addressed the media in the Media Center, the press briefing will be terminated and all media personnel will leave the Media Center.

IV.  Media Center Operations

  A.  Requesting Authorization

  1.  After an execution date is set by the Court/Director of the BOP, and no sooner than twenty days prior to the scheduled execution, news media representatives will be advised, in writing, by the BOP's representative that they may request, in writing, authorization to participate in the institution's Media Center activity in the hours preceding the scheduled execution (see Sample Letter to Media, Appendix C).

  The request, which must be in writing, should be received by the Warden no later than ten days prior to the execution.  Requests must include names, social security numbers, and dates of birth for each representative of a media organization and his/her support staff.  Only those media organizations submitting written requests, within the stated time frame, will be considered for participation in Media Center activities.

  2.  Requests for consideration may be granted by the Warden, provided they demonstrate that the requesting individual falls within the definition of "member of the press and broadcast media" set forth in BOP Program Statement 1480.05, News Media Contacts.

  B.  Possible Limitations

  The number of media representatives may be limited by the Regional Director due to space and safety considerations, but care will be taken to include representatives from both the print and broadcast media.

  C.  Briefing Packets and Updates

  1.  Packets

  Following activation of the Media Center, the Warden's representative will provide press briefing packets for reporters in the Media Center.  The contents of the press briefing packet will include, but not limited to, releasable information on the inmate, pool reporters (once selected), the sequence of events, and the history of federal executions.

  2.  Updates

  Written updates generally will be distributed to the press on a regular basis following activation of the Media Center. Updates will include:

a.    A summary of activities related to the execution and sequence of events; and

b.    A summary, cleared by the Warden, of the inmate's activities during his/her final twenty-four hours.

D.    <u>News Media Witness Selection</u>

1.    <u>Number in Attendance</u>
The Warden will permit no more than 10 members of the media to witness the execution.  The number of additional media representatives authorized to remain in the Media Center of the day of the execution may be limited due to space and safety concerns.

2.    <u>Pool Selection Process</u>

a.    Press pool members will be selected by their peers at least three hours prior to the scheduled execution. Representatives from each of the following categories must be included:

(1)    One local media source (located within the city or town of the institution);

(2)    Three television news programs of a station or network holding an FCC license (at least two being national broadcast stations);

(3)    Two media sources from the area where the crime was committed;

(4)    One wire service;

(5)    One radio station; and

(6)    Two print media organizations.

b.    Press pool witnesses will be selected from qualified media representatives who have been admitted into the institution's Media Center and who have provided staff with proper identification.  A list of media representatives will be compiled by the BOP's representative and furnished to the media for their review in the selection process.

3.    <u>Signed Agreement</u>

Media selected as press pool witnesses will then be required to agree to:

a.  Act as a pool representative as described further in this chapter; and

b.  Abide by all established conditions, rules, and regulations while in attendance at the execution; to include allowing a metal detector scan of their person.

4.  Supplemental Representatives

In the event the media are unable to identify witnesses in each of the above described categories, the BOP's designated representative may name other qualifying media representatives to attend, with a maximum of 10 being named.

E.  Media Witnesses to the Execution

1.  Search Process

Each media pool witness attending the execution will be scanned by a metal detector prior to admittance to the Execution Facility.

a.  While all witnesses to the execution may be subject to search, no pat or visual search of any media pool witness will be conducted unless the Warden has reasonable suspicion to believe the media representative is concealing weapons, drugs, audio or visual recording devices, or any other items not expressly authorized and the media representative agrees to be searched.  If the representative refuses to be searched, he/she will not be permitted to serve as a media witness.

1.  Electronic or mechanical recording devices include, but are not limited to, still, moving picture or video tape cameras, tape recorders or similar devices, and radio/television broadcasting devices.

2.  The representative will only be permitted paper and a pencil or pen as provided by institution staff.

2.  Witness Briefing

The 10 selected members of the news media will be required to sign both the witness agreement (Appendix A) and the Media Witness Press Pool Agreement (Appendix B).  They must also attend the pre-execution briefing at the Media Center.  This briefing, conducted by a representative of the Warden, will provide specific information on the event and expectations regarding their conduct. This will include:

a.  Review of approved materials that can be taken to the

Execution Room;

b.   Search procedures;

c.   Escort procedures; and

d.   The role of pool reporters.

3.   <u>Prohibition of Substitutes</u>

No substitute media pool witness will be permitted after this briefing is conducted.

4.   <u>Segregation after the Search</u>

After clearing the metal detector, all witnesses will be segregated and escorted to the Execution Facility.  Media witnesses will not be permitted to have physical contact with any other persons during this time.

5.   <u>Excluding Witnesses</u>

The Warden will not exclude any media witness duly selected in accordance with this chapter from attendance at the execution or cause a selected media witness to be removed from the media pool witness area unless the media witness:

a.   Refuses to submit to a reasonable search as outlined in these regulations;

b.   Faints, becomes ill, or requests to be allowed to leave during the execution;

c.   Causes a disturbance within the media pool witness area that disrupts the orderly progress of the execution as determined by the Warden's representative on site; or

d.   Fails to abide by the provisions of the Witness Agreement.

6.   <u>The Execution Process</u>

The selected media pool witnesses will be escorted as a group to the execution location prior to the execution. A designated BOP Spokesperson will remain with the media pool witnesses throughout the process.

F.   <u>Death Announcement</u>

Immediately following the execution and prior to the post-execution press pool briefing, a BOP representative will read the following prepared statement to the press and demonstrators:

SAMPLE STATEMENT

(To be read at post execution press briefing and to any assembled members of the public.)

_____, Warden of _____,

reports that pursuant to the sentence of the United States District Court in

_____, _____
                                                        (Inmate's Name)

has been executed by lethal injection.

_____ was pronounced dead at
                        (Inmate's Name)

_____ on _____.
         (Time)                              (Date)

G.   Press Pool Post-Execution Briefing

All news media press pool witnesses will, after being returned from the execution to the Media Center, immediately brief other media representatives covering the event.  The pool witnesses will provide an account of the execution and will endeavor to answer all questions asked of them by other media representatives.  They will not report their observations regarding the execution to their respective news organizations until after the non-witness media representatives have had the benefit of the pool representatives' accounts of the execution.

H.   Post Execution Press Conference

If deemed necessary and appropriate, representatives of the Department of Justice, USMS, and BOP will answer questions from the assembled media for no more than 30 minutes after the press briefing.

V.    The Execution Information Center

    A.    Responsibility

        The BOP's representative will establish and operate an Execution Information Center.

    B.    Purpose

        The Execution Information Center:

        1.    Is a central processing point for all incoming media and public interest telephone calls pertaining to the scheduled execution;

        2.    Allows the institution's staff to handle normal and routine business;

        3.    Handles "crank" calls and bomb threats in accordance with BOP policy; and

        4.    Establishes a log of calls for future reference, investigation and evaluation.

    C.    Location

        1.    The Execution Information Center will be located in an area identified by the Warden.

        2.    Only persons authorized by the Regional Director and/or Warden will be allowed in the Center's operational area.  Center staff are responsible for keeping the area clear of unauthorized personnel.

    D.    Schedule

        1.    The Execution Information Center will commence operations approximately two working days prior to the scheduled execution. The Information Center will operate twelve hours a day on the days prior to the scheduled execution and for the eighteen hours immediately preceding the scheduled execution.  The Center will remain in operation until approximately one hour after the execution.

        2.    The BOP's representative will arrange coverage of telephones, based on the volume of calls.

3.      Staff for the Execution Information Center will be coordinated by the BOP's representative.

E.      Screening Calls

   1.      Types of Calls

      a.      Business Calls

               Calls from BOP staff or other Federal agencies relating to the execution; or from BOP staff relating to operational issues affected by the execution which may need to be forwarded to the Command Center.

      b.      Personal Calls

               Calls intended for individuals (staff or witnesses) connected with the execution.

      c.      Inquiry Calls

               Execution-related calls from the general public.

               1.      Staff will endeavor to answer every call in a professional, courteous and efficient manner.

               2.      If bomb threats are received, the staff member receiving the call will utilize established procedures. Bomb threats will be communicated to the Command Center immediately.

               3.      If possible, all "crank" calls and calls considered to be an emergency, should be recorded and traced.

CHAPTER 7:  STAYS, COMMUTATIONS AND OTHER DELAYS

I.      General Provisions

        A.      Purpose of Chapter

                The purpose of this chapter is to:

                1.      Cite the entities capable of causing execution stays, commutations, and other delays;

                2.      Specify the manner of communicating such delays/commutations; and

                3.      Provide the procedures for implementing the delay/commutation.

        B.      Procedure

                It is the procedure of the BOP that:

                1.      Processes must be in place to receive and ensure proper handling of legal interruptions of the execution countdown;

                2.      Staff understand their roles and the BOP's responsibilities in the event of such interruptions; and

                3.      Contingency plans provide methods for responding to:

                        a.      Temporary delays;

                        b.      Lengthy delays; and

                        c.      Commutations.

II.     Presidential and Judicial Authority to Interrupt Execution

        A.      President

                1.      The United States Constitution confers upon the President the power to grant reprieves and pardons for offenses against the United States.  This has been held to include the power to grant conditional pardons and commute sentences.

2.    Neither Congress nor a State legislature can limit the President's power to pardon.

B.    Courts

A federal court of competent jurisdiction may issue a stay of execution or invalidate a sentence of death as a result of appellate or collateral proceedings.

III.    Communication of Pardons, Stays, Commutations or Delays

A.    Prior to Final Execution Countdown

If the BOP receives an order from a federal court of competent jurisdiction or the President ordering a respite, reprieve, stay, commutation, pardon or other action which requires the suspension or termination of the execution:

1.    The Attorney General's Office will be contacted for consultation; and

2.    A decision will be made by the Director of the BOP concerning the status of planning and preparation for the execution.

B.    During Final Execution Countdown

1.    During the final twenty-four hours, the BOP and the USMS will maintain frequent contact with the Attorney General's Office

C.    Final Clearance for Execution

At an appropriate time prior to the execution                              the Designated United States Marshal will verify clearance to continue with the execution

IV.    Procedures to Implement Last-Minute Stays

    A.    Upon receiving a stay during the final countdown, the first effort will be to determine the probable length of the delay.

    B.    If the witnesses have not been moved from their staging areas, they will be held in those locations until further instructions are received from the Senior BOP staff to proceed with or terminate the execution.

    C.    If witnesses are already at the Execution Facility and the inmate is restrained:

        1.    If the delay appears to be relatively lengthy, the inmate will be returned to the Holding Cell by the Restraint Team.  The witnesses will be returned to their staging areas in the order listed.  There they will await further information.

        2.    If the delay is likely to be relatively short in duration, the witnesses will remain in place.  The drapes will be closed and the inmate will remain restrained on the table.

        3.    If the execution is indefinitely stayed, set for re-sentencing, commuted, or halted by pardon, the execution will be halted, and the inmate and witnesses will be immediately advised.  Witnesses will be returned to their staging areas and the inmate returned to appropriate quarters in the institution.

Appendix A

## MEMORANDUM OF AGREEMENT
## BETWEEN
## FEDERAL BUREAU OF PRISONS
## AND WITNESS

This agreement is made between the Federal Bureau of Prisons and the following witness:

_____

In accordance with Title 28, Code of Federal Regulations, Section 26.4, the Federal Bureau of Prisons may allow you, as a witness, to be present at the execution. However, your presence at the execution is not a right and, in order to be entitled to be present, you will be required to agree to the following conditions:

1.    You will not bring onto institution grounds anything constituting legal or illegal contraband under applicable statute, regulation or policy, including, but not limited to, firearms, weapons, explosives, metal cutting tools, narcotic drugs, alcoholic beverages, or any item creating a threat to institution safety, security, or good order;

2.    You agree to submit to a reasonable search for contraband and other searches as considered necessary by the Bureau of Prisons for entry into the institution;

3.    You will conduct yourself in a lawful and orderly manner;

4.    You will comply with all lawful directives of correctional personnel while on institution grounds;

5.    You will not bring onto institution grounds any photographic or other visual or audio recording device, to include cellular devices; and

You have read, understand, and agree to the above.  By signing this agreement, you agree to comply with its conditions and understand that failure to abide by them will result in your removal from institution grounds and could lead to prosecution for violation of Federal laws.

_____    _____

(Witness)                                          (Date)

_____    _____

(Agency Representative)                          (Date)

Appendix B

## MEDIA WITNESS PRESS POOL AGREEMENT

In consideration of having been selected as an official witness to the execution of

_____ on _____,

I, _____,

hereby agree to act as a pool reporter and, not to interview non-media witnesses or

Department of Justice staff at the Execution Facility.  Following the execution, I agree to

return immediately to the Media Center to brief my colleagues there regarding the

execution and answer their questions.  I also agree to file my story only after I have

completed my responsibilities as a pool reporter.

NAME:              _____

                                           (Signature)

ORGANIZATION:  _____

DATE:              _____

                                    _____

                                           (BOP Staff Witness)

Appendix C

SAMPLE LETTER TO MEDIA
(Re:  Media Center Operations)

In accordance with the provisions of 28 C.F.R., Part 26, Implementation of Death
Sentences in Federal Cases,

_____ is scheduled to be executed
    (Inmate's Name)

at _____ on _____.
        (Institution)                 (Date)

No later than eight hours preceding the scheduled execution, a Media Center will be
established at the _____ in  Terre Haute, Indiana,
                      (Location)
and telephones will be available.  Should you desire to cover the event from the Media
Center, or if selected, be a media pool witness, please submit your written request to
me, via fax or by mail, so that it is received in my office no later than

_____.
    (Date 10 days prior to execution)

The request must include your name, the names of all support staff (sound technician,
cameraperson, etc.)  who may accompany you on this day.  Social security numbers
and date of birth for all participants, including yourself, must also be furnished in your
letter so that appropriate security checks can be completed.  You will be notified
promptly if we have any concerns with your request.  Space is limited and admittance to
the Media Center will have to be on a first-come, first-accommodated basis.

Should you desire to be considered to be a media pool witness to the execution, you will
also be required to sign agreements consenting to a search prior to entering the
execution facility, and agreeing to abide by all relevant conditions, rules and regulations.
Should you participate, your name is subject to being released to the media.

Please note that all media representatives will be required to sign a log and show
proper press credentials in order to be admitted to the Media Center.


                  Sincerely,
                  Name
                  Title

U.S. Department of Justice

Federal Bureau of Prisons

---

Office of the Director                    Washington, D.C. 20534

July 25, 2019

MEMORANDUM FOR J. E. KRUEGER, REGIONAL DIRECTOR
               NORTH CENTRAL REGION

FROM:          HUGH J. HURWITZ
               Acting Director

SUBJECT:       Addendum to Execution Protocol

This memorandum is to advise that I hereby adopt the attached
Addendum to the Federal Execution Protocol. Please coordinate as
appropriate, including incorporating the Addendum into the Federal
Execution Protocol.

Attachment

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 25, 2019

A.      Federal death sentences are implemented by an intravenous injection of a
        lethal substance or substances in a quantity sufficient to cause death, such
        substance or substances to be determined by the Director, Federal Bureau of
        Prisons (BOP) and to be administered by qualified personnel selected by the
        Warden and acting at the direction of the United States Marshal.  28 CFR 26.3.
        The procedures utilized by the BOP to implement federal death sentences shall
        be as follows unless modified at the discretion of the Director or his/her
        designee, as necessary to (1) comply with specific judicial orders; (2) based on
        the recommendation of on-site medical personnel utilizing their clinical judgment;
        or (3) as may be required by other circumstances.

B.      The identities of personnel considered for and/or selected to perform death
        sentence related functions, any documentation establishing their qualifications
        and the identities of personnel participating in federal judicial executions or
        training for such judicial executions shall be protected from disclosure to the
        fullest extent permitted by law.

C.      The lethal substances to be utilized in federal lethal injections shall be
        Pentobarbital Sodium.

D.      Not less than fourteen (14) days prior to a scheduled execution, the Director or
        designee, in conjunction with the United States Marshal Service, shall make a
        final selection of qualified personnel to serve as the executioner(s) and their
        alternates. See BOP Execution Protocol, Chap. 1, §§ III (F) and IV (B) & (E).
        Qualified personnel includes currently licensed physicians, nurses, EMTs,
        Paramedics, Phlebotomists, other medically trained personnel, including those
        trained in the United States Military having at least one year professional
        experience and other personnel with necessary training and experience in a
        specific execution related function.  Non-medically licensed or certified qualified
        personnel shall participate in a minimum of ten (10) execution rehearsals a year
        and shall have participated in at least two (2) execution rehearsals prior to
        participating in an actual execution.  Any documentation establishing the
        qualifications, including training, of such personnel shall be maintained by the
        Director or designee.

E.      The Director or designee shall appoint a senior level Bureau employee to assist
        the United States Marshal in implementing the federal death sentence.  The
        Director or designee shall appoint an additional senior level Bureau employee to
        supervise the activities of personnel preparing and administering the lethal
        substances.

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 25, 2019

F.      The lethal substances shall be prepared by qualified personnel in the following manner unless otherwise directed by the Director, or designee, on the recommendation of medical personnel.  The lethal substances shall be placed into three sets of numbered and labeled syringes.  One of the sets of syringes is used in the implementation of the death sentence and two sets are available as a backup.

G.      Approximately thirty (30) minutes prior to the scheduled implementation of the death sentence, the condemned individual will be escorted into the execution room.  The condemned individual will be restrained to the execution table.  The leads of a cardiac monitor will be attached by qualified personnel.  A suitable venous access line or lines will be inserted and inspected by qualified personnel and a slow rate flow of normal saline solution begun.

H.      Lethal substances shall be administered intravenously.  The Director or designee shall determine the method of venous access (1) based on the training and experience of personnel establishing the intravenous access; (2) to comply with specific orders of federal courts; or (3) based upon a recommendation from qualified personnel.

        A set of syringes will consist of:

        Syringe #1 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
        Syringe #2 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
        Syringe #3 contains 60 mL of saline flush,

        Each syringe will be administered in the order set forth above when directed by supervisory personnel.

        If peripheral venous access is utilized, two separate lines shall be inserted in separate locations and determined to be patent by qualified personnel. A flow of saline shall be started in each line and administered at a slow rate to keep the line open.  One line will be used to administer the lethal substances and the second will be reserved in the event of the failure of the first line.  Any failure of a venous access line shall be immediately reported to the Director or designee.

# BOP EXECUTION PROTOCOL



SENSITIVE − LIMITED OFFICIAL USE ONLY                    2020

Federal Bureau of Prisons
Execution Protocol Manual

Page

INTRODUCTION   General Provisions…………………………………………   4

I.      Purpose of Manual……………………………………....   4
II.     Organization……………………………………………...   4
III.    Cross References………………………………………..   4
IV.     Procedure…………………………………………………   4

CHAPTER 1      Pre-Execution Checklist……………………………………   7

I.      General Provisions………………………………………   7
II.     Establishing an Execution Date…………………………   7
III.    Period of Time Between Establishment
        Of an Execution Date to Thirty Days
        Prior to the Execution……………………………………   8
IV.     Period of Time Between Twenty-Nine
        To Fourteen Days Prior to the
        Execution…………………………………………………   12
V.      Period of Time Between Thirteen to
        Seven Days Prior to the Execution……………………   13
VI.     Period of Time Between Six to Three
        Days Prior to the Execution…………………………….   13
VII.    Period of Time Between Two Days to
        One Day Prior to the Execution…………………………   15

CHAPTER  2     Execution Checklist ……………………………………….   17

I.      General Provisions………………………………………   17
II.     Period of Time Between Twenty-Four to
        Twelve Hours Prior to the Execution…………………....   17
III.    Period of Time Between Twelve to Three
        Hours Prior to the Execution…………………………….   18
IV.     Period of Time Between Three Hours to
        Thirty Minutes Prior to the Execution……………………   20
V.      The Final Thirty Minutes Prior
        To the Execution…………………………………………   22
VI.     Final Sequences of Events:  Execution……………….   24

CHAPTER 3      Post-Execution Checklist…………………………………..   26

I.      General Provisions………………………………………   26

|  |  |  |  |
|---|---|---|---|
|  | II. | Removing Witnesses from the Execution Facility……………………………………………….. | 26 |
|  | III. | Removal of the Body of the Inmate……………………………………………….. | 27 |
|  | IV. | Site Clean-up………………..……………………… | 27 |
|  | V. | Returning to Routine Operations……………………… | 27 |
| CHAPTER 4 |  | Command Center……………………………………….. | 28 |
|  | I. | General Provisions……………………………………… | 28 |
|  | II. | Location, Role and Function…………………………… | 28 |
|  | III. | Command Center Staffing……………………………... | 29 |
|  | IV. | Resources……………………………………………... | 29 |
| CHAPTER 5 |  | Contingency Planning……………………………………... | 30 |
|  | I. | General Provisions……………………………………… | 30 |
|  | II. | Specific Procedures…………………………………… | 31 |
|  | III. | Execution Witness Management……………………… | 32 |
|  | IV. | Reservation Security Plan……………………………… | 35 |
| CHAPTER 6 |  | News Media Procedures………………………………….. | 37 |
|  | I. | General Provisions……………………………………… | 37 |
|  | II. | Inmate Interviews……………………………………… | 37 |
|  | III. | Media Orientation……………………………………… | 38 |
|  | IV. | Media Center Operations……………………………... | 39 |
|  | V. | The Execution Information Center…………………….. | 45 |
| CHAPTER 7 |  | Stays, Commutations and Other Delays……………………… | 47 |
|  | I. | General Provisions……………………………………… | 47 |
|  | II. | Presidential and Judicial Authority To Interrupt Execution…………………………………. | 47 |
|  | III. | Communication of Pardons, Stays, Commutations or Delays………………………………… | 46 |
|  | IV. | Procedures to Implement Last-Minute Stays……………………………………………………… | 48 |
| APPENDICES |  | Appendix A – Memorandum of Agreement Between Federal Bureau of Prisons and Witness……………………… | 50 |
|  |  | Appendix B – Media Witness Press Pool Agreement…………………………………….. | 51 |
|  |  | Appendix C – Sample Letter to Media…………………… | 52 |

INTRODUCTION:   GENERAL PROVISONS

I.      Purpose of Manual

The purpose of this manual is to outline Federal Bureau of Prisons (BOP) policy and procedures for planning and carrying out the execution of a person convicted of a capital offense.  These procedures should be observed and followed as written unless deviation or adjustment is required, as determined by the Director of the BOP or the Warden.  This manual explains internal government procedures and does not create any legally enforceable rights or obligations.

II.     Organization

This manual provides specific time related checklists for pre-execution, execution and post execution procedures as well as detailed procedures related to the execution process, command center operations, contingency planning, news media procedures, and handling stays, commutations and other delays.

III.    Cross References

A.      Title 28, Code of Federal Regulations, Chapter 1, Part 26

B.      Title 28, Code of Federal Regulations, Chapter 1, Part 1

C.      Correctional Systems Manual – Program Statement 5800.15, Paragraph 803

D.      Searching, Detaining, or Arresting Visitors to Bureau Grounds and Facilities – Program Statement 5510.09

E.      News Media Contacts – Program Statement 1480.05

F.      Accounting Management Manual – Program Statement 2000.02, Chapter 10950

G.      Receiving and Discharge Manual – Program Statement 5800.18

IV.     Procedure

A.  The BOP will ensure the execution of a person sentenced to death under federal law by a court of competent authority and jurisdiction be carried out in an efficient and humane manner.

B.  The BOP will make every effort in the planning and preparation of an execution to ensure the execution process:

1.    Faithfully adheres to the letter and intent of the law;

2.    Is handled in a manner that minimizes the negative impact on the safety, security, and operational integrity of the correctional institution in which it occurs and the BOP in general;

3.    Accommodates the public's right to obtain information concerning the event;

4.    Reasonably addresses the privacy interests of those persons for whom the law and BOP policy require such privacy;

5.    Provides sufficient contingency planning to ensure that unforeseen problems can be addressed and overcome;

6.    Allows for stays of execution, commutations and other delays in the execution countdown;

7.    Provides an opportunity for interested person to exercise their First Amendment rights to demonstrate for or against capital punishment in a lawful manner; and

8.    Ensures a firm and adequate response to unlawful civil disobedience, trespass, or other violations of the law by persons attempting to disrupt or prevent the execution.

C. The BOP will seek the arrest and encourage the prosecution of persons, including but not limited to those, who:

1.    Violate prohibitions against filming, taping, broadcasting, or otherwise electronically documenting the death of the inmate;

2.    Trespass or otherwise enter upon BOP property without proper permission and clearance from the Warden;

3.    Participate in unlawful demonstrations;

4.    Unlawfully attempt to disrupt, prevent, or otherwise interfere with the execution;

5.    Are inmates involved in disruptive, assaultive, or other unlawfully proscribed behavior related to an execution; or

6.    Unlawfully threaten, intimidate, or terrorize persons involved in the execution process.

D.   BOP staff involved in the execution will make every effort, within the limits of these procedures and the laws of the United States, to:

    1.   Display appropriate levels of professionalism, restraint, and courtesy, in interaction with witnesses, demonstrators, news media, and other persons during the execution process;

    2.   Prevent emotion or intimidation from hindering efforts to carry out assigned duties; and

    3.   Conduct themselves at all times in a manner reflecting the solemnity and sensitivity of the occasion.

E.   BOP staff trained in crisis support will be available for counseling sessions with all personnel participating directly in an execution process, before and after an execution.

CHAPTER 1:        PRE-EXECUTION CHECKLIST

I.    General Provisions

    A.    Purpose of Chapter

        1.    The purpose of this chapter is to provide a checklist of procedures and events that should occur between the period of time prior to the establishment of an execution date and 24 hours prior to the execution.

        2.    Full detail will not be provided for each procedure or event in this chapter.  For detail, refer to specific chapters which follow.

        3.    This chapter covers the following time periods:

            a.    Prior to the execution date being established;

            b.    Establishment of the execution date to thirty days prior to the execution;

            c.    Twenty-nine to fourteen days prior to the execution;

            d.    Thirteen to seven days prior to the execution;

            e.    Six to three days prior to the execution; and

            f.    Forty-eight to twenty-four hours prior to the execution.

    B.    Procedure

        1.    A systematic countdown to an execution must be completed to ensure that all procedures and events necessary to adequately prepare for the execution are completed in a timely manner.

        2.    Absent intervention by the court system or the President as noted in Chapter 7, delays in the countdown process will only occur in extraordinary situations relating to the security and good order of the institution as approved by the Director of the BOP.

II.   Establishing of an Execution Date

After a sentencing hearing is conducted in a United States District Court resulting in a determination that a criminal defendant be sentenced to death for commission of an offense described in a federal statute, and the sentencing judge signs the appropriate Judgment and Order:

A.  Except to the extent a court orders otherwise, the Director of the BOP will designate a date and time for the execution of the sentence.  The following individuals/offices will be advised in writing of the execution date: the sentencing judge, Attorney General, Office of the Deputy Attorney General, Office of the Pardon Attorney, the Assistant Attorney General for the Criminal Division, the Chief of the Capital Case Unit, Director for the United States Marshals Service (USMS), the Office for Victims of Crime, Assistant Director for Correctional Programs Division, Assistant Director for General Counsel and Review Division, appropriate Regional Director, United Sates Attorney's Office for the district of conviction, United Sates Attorney's Office for the Southern District of Indiana and Warden of USP Terre Haute.

B.  Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R. § 26.3 (a) (1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R. § 26.4 (a)).  If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.

C.  The Warden of USP Terre Haute will notify, in writing, the inmate under sentence of death, of the date designated by the Director for execution at least 50 days in advance, unless the Director determines in his or her discretion that a different date, no later than 20 days in advance, would be more appropriate.  If the designated execution date is postponed by fewer than 20 days, notice of the new execution date will be given as soon as possible.  If the execution date is set by a judge, the Warden will notify the inmate, in writing, as soon as possible.  The Warden will include information concerning the clemency application process in the written notice.  Under 28 C.F.R. § 1.10 (b), a petition for commutation of sentence should be filed no later than 30 days after the inmate has received notification from the Warden of the execution date.

D.  Unless the President interposes, the execution of the sentence will not be stayed on the basis of the inmate filing a petition for executive clemency.

III.  <u>Period of Time Between Establishment of an Execution Date to Thirty Days Prior to the Execution</u>

The following procedures should be completed between the time an execution date is set and 30 days prior to the execution.

A.   Briefing the Inmate

As soon as practical after establishment of the execution date, the Warden at USP Terre Haute or designee, will personally brief the inmate regarding relevant aspects of the execution process including information contained in items C through F of this section.  A briefing sheet outlining these aspects of the execution will be given to the inmate.  If requested, a copy of the briefing sheet will be given to a representative identified by the inmate.  In addition, the Warden will ascertain the inmate's religious preference.

B.   Inmate's Choice of Witnesses

When the inmate is informed by the Warden of the execution date, he/she will be advised that he/she may designate not more than one spiritual adviser, two defense attorneys, and three adult friends or relatives (at least 18 years old) to be present at the execution. The inmate will be asked to submit the list of his/her  witnesses to the Warden no later than 30 days after notification of the date of the scheduled execution.

C.   Disposition of Person Property and Accounts

The Warden will review the options available to the inmate for property/account distribution and will ask the inmate to provide instructions, no later than 14 days prior to the execution, concerning the disposition of the personal property and funds in any accounts controlled or administered by the BOP.  If the inmate fails to provide instructions for such disposition, the property/accounts will be disposed on in accordance the Accounting Management Manual and the Receiving and Discharge Manual.

D.   Organ Donation

The inmate's body will not be used for organ donation.

E.   Disposition of Body
The Warden will review options available to the inmate following the release of the body to the Vigo County Coroner.  The Warden will ask the inmate to provide instructions concerning disposition of his/her body no later 14 days prior to the execution.  If the inmate fails to provide instructions, the body will be handled in accordance with the Accounting Management Manual.

F.   Designation of Persons Required to Assist with the Execution

1.   Those persons necessary to carry out the execution will be identified.

a.   The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.

b.   The Warden, in conjunction with the Regional Director, is responsible for selection of the local staff involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.

2.   All individuals identified for placement in vital or important positions and identified alternates, will be attired in a uniform as determined by the presiding Regional Director.

3.   No officer or employee of the Department of Justice will be required to be in attendance at or participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee.  Staff participation in the execution process must be on a voluntary basis.

G.   Other Approved Witnesses

1.   In addition to the United States Marshal designated by the Director of the USMS (hereafter called the "Designated United Sates Marshal") and the Warden, the following persons will be present at the execution.

a.   Necessary personnel selected by the Designated United States Marshal and the Warden.

b.   Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary.

c.   Not more than the following members of persons selected by the Warden:

(1)   Up to eight citizens (in identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the inmate was prosecuted to recommend up to eight individuals who are victims

10

or victim family members to be witnesses of the execution); and

    (2)    Ten representatives of the press.

2.    No other person will be present at the execution unless such person's presence is granted by the Director of the BOP.  No person younger than 18 years of age will witness the execution.

3.    The Warden will notify all witnesses of the date, time and place of the execution as soon as practicable before the designated time of execution.

H.    <u>Contact with the Vigo County Coroner</u>

1.    The Warden will contact the Vigo County Coroner to coordinate the Coroner's role.

2.    The Vigo County Coroner will be requested to provide direction concerning:

    a.    Transfer of custody of the body of the executed individual from the Warden to the Vigo County Coroner;

    b.    Transportation of the body from the Execution Room to the Vigo County Coroner's facility; and

I.    <u>Briefing of Institution Staff</u>

1.    It is necessary to modify prison operations and communicate with local staff throughout the execution process.

2.    Local prison administrators should be briefed by the Warden, as appropriate, on plans for the execution, restrictions on access, crowd control, additional security procedures, etc., on an on-going basis.

3.    As soon as plans begin to evolve which will affect general prison operations, briefings should begin and continue until operations return to normal.

IV.     Period of Time Between Twenty-Nine to Fourteen Days Prior to the Execution

    A.     Witnesses

        1.     To the extent possible, the Warden will develop a final list of citizen and inmate's witnesses.

        2.     All witnesses/participants will be required to sign an agreement prior to being cleared and added to the witness list.  Included in the document will be an agreement to be searched before entering the Execution Facility and not to photograph or make any other visual or audio recording of the execution (see Appendix A.).

    B.     Qualified Person

        The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.

    C.     Inmate's Property and Account

        The Warden will finalize arrangements for disposition of the inmate's property and accounts no later than 14 days prior to the scheduled execution date.

    D.     Disposition of Body

        The Warden will finalize arrangements with the Vigo County Coroner for disposition of the body, security for the Vigo County Coroner's vehicle, and transfer of custody of the body in accordance with appropriate state and    local laws.

    E.     Selection of Executioner (s)

        The Warden, with the assistance of the Regional Director, Director and USMS will finalize the selection of executioner(s) and their alternates.

    F.     Training

        The Regional Director will ensure that appropriate training Sessions are held for persons involved in the various aspects of the execution event.

V.    Period of Time Between Thirteen to Seven Days Prior to the Execution

    A.    Inmate's Property and Accounts

        All paperwork regarding disposition of property and accounts should be completed.

    B.    Food Services

        At least seven days prior to execution, the Warden or designee will contact the inmate to arrange for his/her last meal.

    C.    Purchase of Substances to be Used in Lethal Injection

        The Bureau of Prisons will ensure the purchase of lethal substances to be used in the execution.  Once purchased, the lethal substance or substances will be secured in the institution until called for by the Regional Director.

    D.    Law Enforcement Coordination

        1.    The Warden will meet with federal, state, and local law enforcement personnel to coordinate support related to the execution.

        2.    Joint practices should be conducted between law enforcement staff involved to ensure coordination and interaction is well defined and understood.

    E.    Restrictions on Inmate's Visitors

        Beginning seven days prior to the designated date of execution, the inmate will have access only to his/her spiritual advisers (not to exceed two), his/her defense attorneys, members of his/her family, and designated officers and employees of the BOP.  Upon approval of the Director of the BOP, the Warden may grant access to such other proper persons as the inmate may request.

VI.    Period of Time Between Six to Three Days Prior to the Execution

    A.    Witnesses

        Non-media witness agreements should be signed by the witnesses and reviewed by the Regional Director.

        1.    The Warden will provide a final list of witnesses to the:

        *a.*      Director, Bureau of Prisons

        b.      Assistant Director, Correctional Programs Division;

        c.      Assistant Director, Information, Policy, and Public Affairs Division;

        *d.*      Assistant Director, Office of General Counsel

        e.      Director, USMS; and

        f.      Designated United States Marshal

        g.      United States Attorney's Office – district of conviction

        h.      United States Attorney's Office- Southern District of Indiana

    2.      Persons who refuse to sign agreements will not be allowed to attend the execution.

**B.**    <u>Brief Affected Law Enforcement Agencies</u>

The Warden will ensure that staff from other law enforcement agencies who have not participated in practice session or have not otherwise been briefed previously will be briefed and their responsibilities explained.

**C.**    <u>Inmate's Property and Accounts</u>

Verify arrangements are complete.

**D.**    <u>Executioner(s)</u>

An individual designated by the Warden will:

    1.      Review with executioner(s) and alternates arrangements for their transportation and escort to the Execution Facility; and

    2.      Review with participants' arrangements for security of executioner(s) and protection of their identities.

**E.**    <u>Equipment Check/Inventory</u>

All equipment necessary to conduct the execution will be inventoried and checked at least 72 hours prior to the execution by individuals designated by the Regional Director.

VII.   Period of Time Between Two Days to One Day Prior to the Execution



B.    <u>Practices</u>

      Final practices will be conducted as directed by the Regional Director.

C.    <u>Equipment Checks</u>

      Maintenance staff should verify necessary installation of and test electrical, heating/air conditioning, backup generator and communications equipment in:

      1.    BOP Execution Facility;

      2.    Command Center.

D.    <u>Regional Director and/or Warden Contacts</u>

      1.    To ensure that coordination efforts are in place, the following entities and specifically identified individuals will be contacted by the Regional Director and/or the Warden:

            a.    Department of Justice Command Center (to ensure communications, if required, by the Attorney General, the Supreme Court, the President of the United States and the affected United States Attorneys Offices);

            b.    BOP Director's Office;

            c.    USMS Director's Office; and

            d.    Affected law enforcement agencies.

E.    <u>Equipment Check Verification by the Regional Director</u>

      1.    The Regional Director will ensure completion of pre-execution inventory and equipment check in the BOP Execution Facility.

      2.    The Regional Director will verify that the Execution Facility's equipment checks have been completed.

CHAPTER 2:  EXECUTION CHECKLIST

I.      General Provisions

    A.      Purpose of Chapter

        1.      This chapter provides a checklist of procedures and events that should occur during the final 24 hours prior to the execution.

    B.      Procedure

        The execution will be carried out in a manner consistent with Title 28, Code of Federal Regulations, Part 26.

II.     Period of Time Within Twenty-Four Hours Prior to the Execution

    B.      Inmate Communication

        1.      Excluding calls to the inmate's attorney(s) of record and calls specifically approved by the Warden, the inmate's telephone privileges will be terminated 24 hours prior to the execution.

        2.      The inmate's attorney(s) of record, spiritual adviser(s), or other persons approved by the Director of the BOP, will be given visiting privileges during the final 24 hours as determined by the Warden. Visiting privileges will be suspended when preparations for the execution require suspension.

    C.      Food Service

        The Warden will contact the inmate to finalize arrangements for his/her final meal and ensure that it is properly prepared and served by staff.

    D.      Maintenance Response Team

        Beginning eight hours prior to an execution, the Facility Manager or other appropriate individual will ensure that a Maintenance Response Team is available to provide necessary maintenance and repair of systems at the Execution Facility or in other areas of the institution.

E.   Access to the Execution Facility

III.   Period of Time Between Twelve to Three Hours Prior to the Execution

A.   Final Briefing

    2.   A final briefing will be held, attended by senior BOP and Marshals Service staff, the Regional Director, and representatives deemed appropriate by the Regional Director.  The Regional Director will conduct the meeting, with the senior staff providing guidance and policy decisions, as needed.

    3.   During the briefing, participants will:

        a.   Identify problems, develop solutions, and specific time lines;

        b.   Provide status reports;

        c.   Coordinate support services involvement; and

        d.   Conduct a final review of procedures.

B.     Food Service

      The inmate will be served a final meal at a time determined by the Warden.

C.     Visits

      Visits by attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden.

D.     Restricting Access to Prison Property

      1.     At the discretion of the Warden, during the final 12 hours prior to the execution, access to prison property will be limited to:

          a.     On-duty staff;

          b.     On-duty contract workers;

          c.     Volunteers deemed necessary by the Warden;

          d.     Approved delivery vehicles;

          e.     Law enforcement personnel on business-related matters;

          f.     Routine inmate visitors; and

          g.     Other persons approved by the Warden.

      2.     During the final eight hours:

          a.     All off-duty Department of Justice personnel will be required to leave institution property;



E.   Establishment of Command Center

IV.   Period of Time Between Three Hours to Thirty Minutes Prior to the Execution

A.   Pre-Execution Procedures

1.   The Regional Director will ensure that all countdown procedures for required activities and actions are progressing.

2.   Immediate action to complete any unfinished required procedures will be initiated.

3.   The Warden will designate a recorder who will begin logging execution activities in the official execution log commencing three hours prior to the scheduled execution.  The log will reflect, at a minimum, the time each of the following events occurs:

a.   Inmate removed from Inmate Holding Cell;

b.   Inmate strapped to gurney;

c.   Arrival of government/community witnesses;

d.   Arrival of inmate's authorized witnesses;

e.   Arrival of media witnesses;

f.   Opening of drapes;

g.   Last statement by inmate;

h.   Reading of statement conveying inmate's sentence of death;

i.   Upon Designated United States Marshal's approval, the execution process begins;

j.   Signal by Executioner(s) that lethal substances have been administered;

k.   Determination of inmate's death by designated qualified person;

l.     Announcement of death of inmate;

m.    Closing of drapes;

n.    Notification of outside media and demonstrators of inmate's death;

o.    Removal and transportation of media witnesses to media center;

p.    Removal of inmate's authorized witnesses;

q.    Removal of government/community witnesses;

r.    Restraint Team/Vigo County Coroner enter Execution Room to remove body;

s.    Removal of body to Vigo County Coroner's vehicle;

t.    Performance of any necessary cleaning chores;

u.    Directive by Warden to secure Execution Facility.

B.    <u>Execution Room Staff Assemble</u>

1.    The Executioner(s) will be escorted into the Execution Facility and will inventory supplies and ensure that everything is ready.

3.    All other Execution Room staff will be assembled on-site for final instructions at least forty five minutes prior to the scheduled execution.

C.    <u>Contact with the Department of Justice Command Center</u>



V.    The Final Thirty Minutes Prior to the Execution

     A.    Final Sequence of Events: Preparation

          1.    Bringing the Inmate to the Execution Room

              At the appropriate time, the inmate will be:

              a.    Removed from the Inmate Holding Cell by the Restraint Team;

              b.    Strip-searched by the Restraint Team and then dressed appropriately;

              c.    Secured with restraints;

              d.    Escorted to the Execution Room by the Restraint Team.

2.      Restraint Team Procedures And Preparation

      a.  In the Execution Room the ambulatory restraints will be removed and the inmate will be restrained to the Execution Table.

      b.  The inmate will then be assessed and prepared for execution by qualified medical personnel.

3.      Admit Witnesses

    a.      Subsequent to appropriate search procedures, witnesses will be admitted to the witness rooms.

    b.      The government/community witnesses will then enter and will be escorted to their assigned area.  The escorts will remain with the witnesses.

    c.      The authorized witnesses invited by the inmate individual will be admitted and escorted to their assigned area.

        1.      If any of the inmate's invited witnesses wish to be on-site, but not actually witness the execution, accommodations will be made for them by the Warden.

        2.      Escorts will remain with the inmate's witnesses. There will be a minimum of two escorts for each witness group.

    d.      The last witnesses to be admitted will be the news media representatives.  The members of the news media selected to witness the execution will be escorted to their assigned area.  Escorts will remain with the news media witnesses and ensure their separation from the other witnesses while at the Execution Facility.  Media witnesses will not be permitted to interview or question staff or other witnesses while at the Execution Facility.

VI.   Final Sequence of Events: Execution

    A.   Staff Witnesses

        1.   Staff participating in the preparation for the execution will exit the Execution Room but stand by in an adjacent area.

        2.   Staff members participating in and/or observing the execution will include the:

           a.   Designated United States Marshal;

           b.   Senior BOP Official;

           c.   Executioner(s);

           d.   Other staff authorized by the Director of the BOP.

    B.   Countdown

        1.   Upon the direction of the Senior BOP Official, staff inside the Execution Room will open the drapes covering the windows of the witness rooms.

        2.   The inmate will be asked if he/she has any last words or wishes to make a statement.  The inmate will have been advised in advance that this statement should be reasonably brief.

        3.   At the conclusion of the remarks, or when a determination is made to proceed, the documentation deemed necessary to the execution process will be read.  Once the Designated United States Marshal makes a final determination that the execution is to proceed, the executioner(s) will be directed to administer the lethal injection.

        4.   If the execution is ordered delayed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Designated United State Marshal will notify the Senior BOP Official who will in turn instruct the Executioner(s) to step away from the execution equipment and will notify the inmate and all present that the execution has been stayed or delayed.

    C.   Determination of Death

        1.   After the lethal injection has been administered:

           a.   The inmate will be monitored until apparent signs of life have ceased;

        b.     The time of death will be announced prior to the drapes being closed.

2.     The Designated United States Marshal will complete and sign the Return described in 28 C.F.R. § 26.2(b) and will file such document with the sentencing court.

CHAPTER 3:        POST-EXECUTION CHECKLIST

I.    General Provisions

    A.    Purposes of Chapter

        The purpose of this chapter is to:

        1.    Provide the procedures to be followed after the execution of the inmate;

        2.    Identify the responsibilities for tasks to be completed; and

        3.    Provide for the transfer of the body of the inmate from the custody of the BOP.

    B.    Procedure

        It is the procedure of the BOP that:

        1.    The inmate will be examined by a specified qualified person following the administration of the lethal substances to ensure that death has occurred;

        2.    When the qualified individual is satisfied that death has occurred, the time of death will be announced to the witnesses;

        3.    The witnesses to the execution will then be removed from the Execution Facility and returned to their individual staging areas so that they may leave the institution.  News media witnesses will be removed to a secondary press location where they will participate in a press briefing;

        4.    The body of the inmate will be surrendered to the Vigo County Coroner;

        5.    After removal of the body, the site will be cleaned and restored to its previous condition.

II.   Removing Witnesses from the Execution Facility

    A.    After the pronouncement of death, the witnesses will be escorted from the facility in the following order:

        1.    News media witnesses;

        2.    Inmate's authorized witnesses; and

3.      Government/community witnesses.

B.      Each group of witnesses will be kept separate from the others and escorted to waiting vehicles to be driven to separate designated sites.

III.    Removal of the Body of the Inmate

A.      After the witnesses have departed, the restraints will be removed from the inmate's body.

B.      The Vigo County Coroner or designee will be escorted into the Execution Facility.  The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.

IV.     Site Clean-Up

A.      Under the supervision of an individual designated by the Warden, staff will clean and secure the Execution Facility.

B.      The Execution Facility will be locked and secured when the Warden is satisfied that clean-up has been completed.

V.      Returning to Routine Operations

A.      Following the execution, Department of Justice and BOP staff involved in the execution will be deactivated, as appropriate, under direction of the DOJ, BOP and USMS staff on-site.

B.      The designated public affairs representative will determine when to secure the media assembly site after the news conference is complete.

C.      The Warden will bring the institution security back to routine operations as he/she sees fit.

0139

CHAPTER 4:        Command Center

I.      General Provisions

        A.      Purpose of Chapter

                The purpose of this chapter is to:

                1.      Identify the role and function of the Command Center;

                2.      Specify the individuals authorized to staff the Command Center;
                        and

                3.      Provide an inventory of the minimum resources required in the
                        Command Center.

        B.      Procedure

                It is the procedure of the BOP that:

                1.      The Bureau operate a local, emergency Command Center during
                        the execution operation to:

                        a.      Coordinate security, transportation, crowd control, access
                                and other processes;

                        b.      Provide policy and procedural advice, as needed, or upon
                                request;

                        c.      Coordinate inter-agency functions; and

                        d.      Serve as an information processing and operations
                                information center for the execution.

II.     Location, Role and Function

        A.      The Command Center will be operational prior to the scheduled execution
                and maintained for the duration of the execution operation.

        B.      The roles and functions of the Command Center include:

                1.      Coordinating the various personnel, components and elements of
                        the execution operation;

III.   Command Center Staffing

    A.   Command Center staff should include the following positions:

    B.   Access to the Command Center will be limited to persons specifically
        authorized by the Command Center Director or Warden.





CHAPTER 5: CONTINGENCY PLANNING

I.    General Provisions

      A.    Purpose of Chapter

            The purpose of this chapter is to:

            1.    Aid in the development of a predetermined contingency plan to
                  assist staff in the management of the execution event and in
                  responding to related emergency situations;

            2.    Identify the role and function of staff needed to formulate and
                  activate the plan, if needed; and

            3.    Identify specific areas to stage staff and equipment.  The location of
                  witness processing will be pre-determined by the Warden on a
                  case-by-case basis.

      B.    Procedure

            It is the procedure of the BOP to:

            1.    Prepare and test contingency plans;

   2.    Identify all security measures needed to protect staff and inmates of
         an institution as well as BOP property; and

   3.    Coordinate all resources to ensure the safety of the public, staff,
         and inmates.

II.   Specific Procedures

   A.   An individual identified by the Warden will prepare contingency plans
        related to an emergency occasioned by the execution, such as an
        institution disturbance, hostage taking, outside demonstration, outside
        assault on the facility, etc.  All plans will be reviewed and approved by the
        Warden and the Regional Director.

   B.   Plans will include provisions for:

   C.   Intelligence Operations

D.   Staging Areas

E.   Tactical Deployment

III.   Execution Witness Management



4.    While all witnesses to the execution are subject to search,  no pat or visual search of any witness will be conducted unless the Warden has reasonable suspicion to believe the witness is concealing weapons, drugs, audio or visual recording devices, or any other item not expressly authorized and the witness agrees to be searched.  If the  witness refuses to be searched, he/she will not be permitted to serve as a witness.

5.    Staff at each staging area will notify the Command Center when all execution witnesses are accounted for and processed.

6.    Escorts will remain at their assigned staging areas until the Command Center directs them to transport the witnesses to the Execution Facility.

B.    Transportation to the Execution Facility



3.   Escorts will ensure that witness groups do not come into contact with each other.

4.   Escorts will transport witnesses to the Execution Facility and notify the Command Center when each group of witnesses is secured in the assigned observation area.

5.   Once each group is secured, the next group will be moved as directed by the Command Center.

6.   The Command Center will be notified by the appropriate staff member when all groups are in place.

7.   The Command Center, in turn, will notify the Warden or designee.

C.   Transportation from the Facility



2.   The groups will be returned to the staging areas by the escorts, who will ensure that no group comes in contact with another group.

3.   Escorts will notify the Command Center as each group returns to the staging area.

4.      The Command Center will direct each move to expedite departures and also to prevent groups from encountering one another in the parking lot.

5.      Media witnesses will be returned to the Media Center to have a press pool briefing as outlined in Chapter 6.

IV.    Reservation Security Plan



3. BOP staff will be available and will accompany execution witnesses.

CHAPTER 6:  NEWS MEDIA PROCEDURES

I.    General Provisions

   A. Purpose of Chapter

   This chapter describes the procedures and requirement for allowing representatives of the news media access to an inmate sentenced to death, as well as procedures for news media access to the execution.  This chapter also provides procedures for releasing information relating to the execution.

   B. Procedure

   The BOP recognizes the desirability of establishing procedures which afford the public information about its operations through the news media. In accordance with established policy, reasonable efforts will be made to accommodate representatives of the news media before, during, and after a scheduled execution.  Media representatives will be treated in a fair and consistent manner in accordance with current policies and procedures of the BOP.  The agency has the responsibility, however, to ensure the orderly and safe operation of its institutions, and therefore must regulate media access.

   C. Roles

      1.  Representatives of the news media are those individuals described in Program Statement 1480.0*5*, News Media Contacts, whose principal employment is to gather and report news.

      2.  The Regional Director will designate a specific staff member as the official representative to the news media regarding death penalty issues and the scheduled execution.

      3.  The BOP Assistant Director, Information, Policy and Public Affairs Division, will coordinate the release of information to the news media and assist the Regional Director in the selection of individual news media witnesses.  The Department of Justice Office of Public Affairs will be kept informed of these matters.

II.   Inmate Interviews

A.   Purpose

As stated in Program Statement 1480.05, News Media Contacts, it is not the BOP's intent to provide publicity for an inmate or special privileges for the news media, but rather to ensure a better informed public.

B.   Limits

With this in mind, representatives of the news media may be permitted to conduct interviews with inmates.  Guidelines regarding the frequency and length of interviews, as well as accompanying security, will reflect BOP/institution policy and will be established by the Warden, who will take into account the available resources.

C.   Prohibition

Ordinarily, no media interviews will be permitted with the inmate once the execution date is within seven days.

III.   Media Orientation

A.   Definition

Ordinarily one day before a confirmed execution date, the institution will hold a Media Orientation to provide media representatives with information on the scheduled execution.  No other press conference or Media Orientation regarding the execution will be scheduled or held until after the scheduled execution, except as provided below in subsection B.  Every effort will be made by the Warden's representative to notify local, state and national media representatives of the scheduled Media Orientation.  Central Office Public Affairs staff will provide assistance in this area.

1.  All persons, including media representatives, must have appropriate identification to enter the institution on any occasion. Media representatives must have appropriate press credentials.  This requirement includes camerapersons, sound technicians, and reporters.

2.  All individuals will be advised that they are subject to search of their person and equipment prior to entering and prior to leaving a BOP facility.

B.   Updates Prior to the Execution

Following activation of the Media Center, the Warden's representative will provide the news media with regular briefings or updates of the execution process.

1. No later than eight hours prior to the scheduled execution, a Media Center will be activated.  Telephone lines, tables, risers for cameras and outlets for electrical equipment and cameras will be available.  Restroom facilities will also be provided.

2. A BOP representative will be present in the Media Center to provide regular announcements.

C. Media Orientation Releases

During the Media Orientation, the following information will be made available to members of the media:

1. General information regarding the scheduled execution and about the individual scheduled for execution.

2. Specific information regarding procedures to be followed by the media on the date of the scheduled execution.

3. Media representatives will be reminded that there are obvious security concerns about aircraft flying over federal correctional facilities and therefore, their assistance and cooperation in this matter is expected.

4. Media representatives will be informed of how the press pool will be established (see paragraph IV D 2) and advised that if they are selected as press pool witnesses to the execution, they will agree prior to the execution to:

   a. Sign the document designated as the Media Witness Press Pool Agreement (see Media Witness Press Pool Agreement, Appendix B);

   b. Be subject to search which includes metal detection scanning;

   c. Not make any photographic, visual or audio recordings of the execution (each media witness will be provided only paper and a pencil or pen while in the execution witness area); and

   d. Return to the Media Center after the execution to answer questions of all other media represented concerning their observations during the execution.

5. After the BOP representative, media pool witnesses and appropriate Department of Justice staff, if available, have addressed the media in the Media Center, the press briefing will be terminated and all media personnel will leave the Media Center.

IV.    Media Center Operations

A.    Requesting Authorization

1.    After an execution date is set by the Court/Director of the BOP, and no sooner than twenty days prior to the scheduled execution, news media representatives will be advised, in writing, by the BOP's representative that they may request, in writing, authorization to participate in the institution's Media Center activity in the hours preceding the scheduled execution (see Sample Letter to Media, Appendix C).

The request, which must be in writing, should be received by the Warden no later than ten days prior to the execution.  Requests must include names, social security numbers, and dates of birth for each representative of a media organization and his/her support staff.  Only those media organizations submitting written requests, within the stated time frame, will be considered for participation in Media Center activities.

2.    Requests for consideration may be granted by the Warden, provided they demonstrate that the requesting individual falls within the definition of "member of the press and broadcast media" set forth in BOP Program Statement 1480.05, News Media Contacts.

B.    Possible Limitations

The number of media representatives may be limited by the Regional Director due to space and safety considerations, but care will be taken to include representatives from both the print and broadcast media.

C.    Briefing Packets and Updates

1.    Packets

Following activation of the Media Center, the Warden's representative will provide press briefing packets for reporters in the Media Center.  The contents of the press briefing packet will include, but not limited to, releasable information on the inmate, pool reporters (once selected), the sequence of events, and the history of federal executions.

2.    Updates

Written updates generally will be distributed to the press on a regular basis following activation of the Media Center. Updates will include:

a. A summary of activities related to the execution and sequence of events; and

b. A summary, cleared by the Warden, of the inmate's activities during his/her final twenty-four hours.

D. <u>News Media Witness Selection</u>

1. <u>Number in Attendance</u>
The Warden will permit no more than 10 members of the media to witness the execution. The number of additional media representatives authorized to remain in the Media Center of the day of the execution may be limited due to space and safety concerns.

2. <u>Pool Selection Process</u>

a. Press pool members will be selected by their peers at least three hours prior to the scheduled execution. Representatives from each of the following categories must be included:

(1) One local media source (located within the city or town of the institution);

(2) Three television news programs of a station or network holding an FCC license (at least two being national broadcast stations);

(3) Two media sources from the area where the crime was committed;

(4) One wire service;

(5) One radio station; and

(6) Two print media organizations.

b. Press pool witnesses will be selected from qualified media representatives who have been admitted into the institution's Media Center and who have provided staff with proper identification. A list of media representatives will be compiled by the BOP's representative and furnished to the media for their review in the selection process.

3. <u>Signed Agreement</u>

Media selected as press pool witnesses will then be required to agree to:

a.  Act as a pool representative as described further in this chapter; and

b.  Abide by all established conditions, rules, and regulations while in attendance at the execution; to include allowing a metal detector scan of their person.

4.  <u>Supplemental Representatives</u>

In the event the media are unable to identify witnesses in each of the above described categories, the BOP's designated representative may name other qualifying media representatives to attend, with a maximum of 10 being named.

E.  <u>Media Witnesses to the Execution</u>

1.  <u>Search Process</u>

Each media pool witness attending the execution will be scanned by a metal detector prior to admittance to the Execution Facility.

a.  While all witnesses to the execution may be subject to search, no pat or visual search of any media pool witness will be conducted unless the Warden has reasonable suspicion to believe the media representative is concealing weapons, drugs, audio or visual recording devices, or any other items not expressly authorized and the media representative agrees to be searched.  If the representative refuses to be searched, he/she will not be permitted to serve as a media witness.

1.  Electronic or mechanical recording devices include, but are not limited to, still, moving picture or video tape cameras, tape recorders or similar devices, and radio/television broadcasting devices.

2.  The representative will only be permitted paper and a pencil or pen as provided by institution staff.

2.  <u>Witness Briefing</u>

The 10 selected members of the news media will be required to sign both the witness agreement (Appendix A) and the Media Witness Press Pool Agreement (Appendix B).  They must also attend the pre-execution briefing at the Media Center.  This briefing, conducted by a representative of the Warden, will provide specific information on the event and expectations regarding their conduct. This will include:

a.  Review of approved materials that can be taken to the

Execution Room;

b.   Search procedures;

c.   Escort procedures; and

d.   The role of pool reporters.

3.   <u>Prohibition of Substitutes</u>

No substitute media pool witness will be permitted after this briefing is conducted.

4.   <u>Segregation after the Search</u>

After clearing the metal detector, all witnesses will be segregated and escorted to the Execution Facility.  Media witnesses will not be permitted to have physical contact with any other persons during this time.

5.   <u>Excluding Witnesses</u>

The Warden will not exclude any media witness duly selected in accordance with this chapter from attendance at the execution or cause a selected media witness to be removed from the media pool witness area unless the media witness:

a.   Refuses to submit to a reasonable search as outlined in these regulations;

b.   Faints, becomes ill, or requests to be allowed to leave during the execution;

c.   Causes a disturbance within the media pool witness area that disrupts the orderly progress of the execution as determined by the Warden's representative on site; or

d.   Fails to abide by the provisions of the Witness Agreement.

6.   <u>The Execution Process</u>

The selected media pool witnesses will be escorted as a group to the execution location prior to the execution. A designated BOP Spokesperson will remain with the media pool witnesses throughout the process.

F.   <u>Death Announcement</u>

Immediately following the execution and prior to the post-execution press pool briefing, a BOP representative will read the following prepared statement to the press and demonstrators:

SAMPLE STATEMENT

(To be read at post execution press briefing and to any assembled members of the public.)

_____, Warden of _____,

reports that pursuant to the sentence of the United States District Court in

_____, _____
                                                                 (Inmate's Name)

has been executed by lethal injection.

_____ was pronounced dead at
              (Inmate's Name)

_____ on _____.
     (Time)                      (Date)

     G.    Press Pool Post-Execution Briefing

           All news media press pool witnesses will, after being returned from the execution to the Media Center, immediately brief other media representatives covering the event.  The pool witnesses will provide an account of the execution and will endeavor to answer all questions asked of them by other media representatives.  They will not report their observations regarding the execution to their respective news organizations until after the non-witness media representatives have had the benefit of the pool representatives' accounts of the execution.

     H.    Post Execution Press Conference

           If deemed necessary and appropriate, representatives of the Department of Justice, USMS, and BOP will answer questions from the assembled media for no more than 30 minutes after the press briefing.

V.    The Execution Information Center

A.    Responsibility

The BOP's representative will establish and operate an Execution Information Center.

B.    Purpose

The Execution Information Center:

1.    Is a central processing point for all incoming media and public interest telephone calls pertaining to the scheduled execution;

2.    Allows the institution's staff to handle normal and routine business;

3.    Handles "crank" calls and bomb threats in accordance with BOP policy; and

4.    Establishes a log of calls for future reference, investigation and evaluation.

C.    Location

1.    The Execution Information Center will be located in an area identified by the Warden.

2.    Only persons authorized by the Regional Director and/or Warden will be allowed in the Center's operational area.  Center staff are responsible for keeping the area clear of unauthorized personnel.

D.    Schedule

1.    The Execution Information Center will commence operations approximately two working days prior to the scheduled execution. The Information Center will operate twelve hours a day on the days prior to the scheduled execution and for the eighteen hours immediately preceding the scheduled execution.  The Center will remain in operation until approximately one hour after the execution.

2.    The BOP's representative will arrange coverage of telephones, based on the volume of calls.

3.    Staff for the Execution Information Center will be coordinated by the BOP's representative.

E.    <u>Screening Calls</u>

    1.    <u>Types of Calls</u>

        a.    Business Calls

            Calls from BOP staff or other Federal agencies relating to the execution; or from BOP staff relating to operational issues affected by the execution which may need to be forwarded to the Command Center.

        b.    Personal Calls

            Calls intended for individuals (staff or witnesses) connected with the execution.

        c.    Inquiry Calls

            Execution-related calls from the general public.

            1.    Staff will endeavor to answer every call in a professional, courteous and efficient manner.

            2.    If bomb threats are received, the staff member receiving the call will utilize established procedures. Bomb threats will be communicated to the Command Center immediately.

            3.    If possible, all "crank" calls and calls considered to be an emergency, should be recorded and traced.

CHAPTER 7:  STAYS, COMMUTATIONS AND OTHER DELAYS

I.      General Provisions

      A.      Purpose of Chapter

            The purpose of this chapter is to:

            1.      Cite the entities capable of causing execution stays, commutations, and other delays;

            2.      Specify the manner of communicating such delays/commutations; and

            3.      Provide the procedures for implementing the delay/commutation.

      B.      Procedure

            It is the procedure of the BOP that:

            1.      Processes must be in place to receive and ensure proper handling of legal interruptions of the execution countdown;

            2.      Staff understand their roles and the BOP's responsibilities in the event of such interruptions; and

            3.      Contingency plans provide methods for responding to:

                  a.      Temporary delays;

                  b.      Lengthy delays; and

                  c.      Commutations.

II.     Presidential and Judicial Authority to Interrupt Execution

      A.      President

            1.      The United States Constitution confers upon the President the power to grant reprieves and pardons for offenses against the United States.  This has been held to include the power to grant conditional pardons and commute sentences.

      2.    Neither Congress nor a State legislature can limit the President's power to pardon.

B.    <u>Courts</u>

A federal court of competent jurisdiction may issue a stay of execution or invalidate a sentence of death as a result of appellate or collateral proceedings.

III.    <u>Communication of Pardons, Stays, Commutations or Delays</u>

A.    <u>Prior to Final Execution Countdown</u>

If the BOP receives an order from a federal court of competent jurisdiction or the President ordering a respite, reprieve, stay, commutation, pardon or other action which requires the suspension or termination of the execution:

      1.    The Attorney General's Office will be contacted for consultation; and

      2.    A decision will be made by the Director of the BOP concerning the status of planning and preparation for the execution.

B.    <u>During Final Execution Countdown</u>

      1.    During the final twenty-four hours, the BOP and the USMS will maintain frequent contact with the Attorney General's Office



C.    <u>Final Clearance for Execution</u>

At an appropriate time prior to the execution ⬛⬛⬛⬛⬛⬛ the Designated United States Marshal will verify clearance to continue with the execution ⬛⬛⬛⬛⬛⬛

48

IV.    Procedures to Implement Last-Minute Stays

    A.    Upon receiving a stay during the final countdown, the first effort will be to determine the probable length of the delay.

    B.    If the witnesses have not been moved from their staging areas, they will be held in those locations until further instructions are received from the Senior BOP staff to proceed with or terminate the execution.

    C.    If witnesses are already at the Execution Facility and the inmate is restrained:

        1.    If the delay appears to be relatively lengthy, the inmate will be returned to the Holding Cell by the Restraint Team.  The witnesses will be returned to their staging areas in the order listed.  There they will await further information.

        2.    If the delay is likely to be relatively short in duration, the witnesses will remain in place.  The drapes will be closed and the inmate will remain restrained on the table.

        3.    If the execution is indefinitely stayed, set for re-sentencing, commuted, or halted by pardon, the execution will be halted, and the inmate and witnesses will be immediately advised.  Witnesses will be returned to their staging areas and the inmate returned to appropriate quarters in the institution.

Appendix A

MEMORANDUM OF AGREEMENT
BETWEEN
FEDERAL BUREAU OF PRISONS
AND WITNESS


This agreement is made between the Federal Bureau of Prisons and the following witness:

_____

In accordance with Title 28, Code of Federal Regulations, Section 26.4, the Federal Bureau of Prisons may allow you, as a witness, to be present at the execution. However, your presence at the execution is not a right and, in order to be entitled to be present, you will be required to agree to the following conditions:

1. You will not bring onto institution grounds anything constituting legal or illegal contraband under applicable statute, regulation or policy, including, but not limited to, firearms, weapons, explosives, metal cutting tools, narcotic drugs, alcoholic beverages, or any item creating a threat to institution safety, security, or good order;

2. You agree to submit to a reasonable search for contraband and other searches as considered necessary by the Bureau of Prisons for entry into the institution;

3. You will conduct yourself in a lawful and orderly manner;

4. You will comply with all lawful directives of correctional personnel while on institution grounds;

5. You will not bring onto institution grounds any photographic or other visual or audio recording device, to include cellular devices; and

You have read, understand, and agree to the above.  By signing this agreement, you agree to comply with its conditions and understand that failure to abide by them will result in your removal from institution grounds and could lead to prosecution for violation of Federal laws.


_____     _____
              (Witness)                                              (Date)


_____     _____
        (Agency Representative)                                (Date)

50

Appendix B

MEDIA WITNESS PRESS POOL AGREEMENT


In consideration of having been selected as an official witness to the execution of

_____ on _____,

I, _____,

hereby agree to act as a pool reporter and, not to interview non-media witnesses or

Department of Justice staff at the Execution Facility.  Following the execution, I agree to

return immediately to the Media Center to brief my colleagues there regarding the

execution and answer their questions.  I also agree to file my story only after I have

completed my responsibilities as a pool reporter.


NAME:          _____

                                            (Signature)

ORGANIZATION:   _____


DATE:          _____


                                   _____

                                        (BOP Staff Witness)


Appendix C

SAMPLE LETTER TO MEDIA
(Re:  Media Center Operations)

In accordance with the provisions of 28 C.F.R., Part 26, Implementation of Death
Sentences in Federal Cases,

_____ is scheduled to be executed
     (Inmate's Name)

at _____ on _____.
           (Institution)                     (Date)

No later than eight hours preceding the scheduled execution, a Media Center will be
established at the _____ in  Terre Haute, Indiana,
                     (Location)
and telephones will be available.  Should you desire to cover the event from the Media
Center, or if selected, be a media pool witness, please submit your written request to
me, via fax or by mail, so that it is received in my office no later than

_____.
    (Date 10 days prior to execution)

The request must include your name, the names of all support staff (sound technician,
cameraperson, etc.)  who may accompany you on this day.  Social security numbers
and date of birth for all participants, including yourself, must also be furnished in your
letter so that appropriate security checks can be completed.  You will be notified
promptly if we have any concerns with your request.  Space is limited and admittance to
the Media Center will have to be on a first-come, first-accommodated basis.

Should you desire to be considered to be a media pool witness to the execution, you will
also be required to sign agreements consenting to a search prior to entering the
execution facility, and agreeing to abide by all relevant conditions, rules and regulations.
Should you participate, your name is subject to being released to the media.

Please note that all media representatives will be required to sign a log and show
proper press credentials in order to be admitted to the Media Center.

                       Sincerely,
                       Name
                       Title

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 31, 2020

A.    Federal death sentences are implemented by an intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director, Federal Bureau of Prisons (BOP) and to be administered by qualified personnel selected by the Warden and acting at the direction of the United States Marshal.  28 CFR 26.3. The procedures utilized by the BOP to implement federal death sentences shall be as follows unless modified at the discretion of the Director or his/her designee, as necessary to (1) comply with specific judicial orders; (2) based on the recommendation of on-site medical personnel utilizing their clinical judgment; or (3) as may be required by other circumstances.

B.    The identities of personnel considered for and/or selected to perform death sentence related functions, any documentation establishing their qualifications and the identities of personnel participating in federal judicial executions or training for such judicial executions shall be protected from disclosure to the fullest extent permitted by law.

C.    The lethal substances to be utilized in federal lethal injections shall be Pentobarbital Sodium.

D.    Not less than fourteen (14) days prior to a scheduled execution, the Director or designee, in conjunction with the United States Marshal Service, shall make a final selection of qualified personnel to serve as the executioner(s) and their alternates. See BOP Execution Protocol, Chap. 1, §§ III (F) and IV (B) & (E). Qualified personnel includes currently licensed physicians, nurses, EMTs, Paramedics, Phlebotomists, other medically trained personnel, including those trained in the United States Military having at least one year professional experience and other personnel with necessary training and experience in a specific execution related function.  Non-medically licensed or certified qualified personnel shall participate in a minimum of ten (10) execution rehearsals a year and shall have participated in at least two (2) execution rehearsals prior to participating in an actual execution.  Any documentation establishing the qualifications, including training, of such personnel shall be maintained by the Director or designee.

E.    The Director or designee shall appoint a senior level Bureau employee to assist the United States Marshal in implementing the federal death sentence.  The Director or designee shall appoint an additional senior level Bureau employee to supervise the activities of personnel preparing and administering the lethal substances.

ADDENDUM TO BOP EXECUTION PROTOCOL
FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES
EFFECTIVE JULY 31, 2020

F.   The lethal substances shall be prepared by qualified personnel in the following manner unless otherwise directed by the Director, or designee, on the recommendation of medical personnel.  The lethal substances shall be placed into one set of numbered and labeled syringes.  This set of syringes is used in the implementation of the death sentence.  Additional lethal substances shall be available to draw into syringes if needed.

G.   Approximately thirty (30) minutes prior to the scheduled implementation of the death sentence, the condemned individual will be escorted into the execution room.  The condemned individual will be restrained to the execution table.  The leads of a cardiac monitor will be attached by qualified personnel.  A suitable venous access line or lines will be inserted and inspected by qualified personnel and a slow rate flow of normal saline solution begun.

H.   Lethal substances shall be administered intravenously.  The Director or designee shall determine the method of venous access (1) based on the training and experience of personnel establishing the intravenous access; (2) to comply with specific orders of federal courts; or (3) based upon a recommendation from qualified personnel.

A set of syringes will consist of:

Syringe #1 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
Syringe #2 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent
Syringe #3 contains 60 mL of saline flush,

Each syringe will be administered in the order set forth above when directed by supervisory personnel.

If peripheral venous access is utilized, two separate lines shall be inserted in separate locations and determined to be patent by qualified personnel. A flow of saline shall be started in each line and administered at a slow rate to keep the line open.  One line will be used to administer the lethal substances and the second will be reserved in the event of the failure of the first line.  Any failure of a venous access line shall be immediately reported to the Director or designee.



An official website of the United States government
Here's how you know

THE UNITED STATES
DEPARTMENT *of* JUSTICE

9-140.000 - PARDON ATTORNEY

| 9-140.110 | Office of the Pardon Attorney |
| 9-140.111 | Role of the Prosecuting Component in Clemency Matters |
| 9-140.112 | Standards for Considering Pardon Petitions |
| 9-140.113 | Standards for Considering Commutation Petitions |

## 9-140.110 - Office of the Pardon Attorney

The Pardon Attorney assists the President in the exercise of his power under Article II, Section 2, clause 1 of the Constitution (the pardon clause). See Executive Order dated June 16, 1893 (transferring clemency petition processing and advisory functions to the Justice Department), the Rules Governing the Processing of Petitions for Executive Clemency (codified in 28 CFR Sections 1.1 et seq.), and 28 CFR Sections 0.35 and 0.36 (relating to the authority of the Pardon Attorney). The Pardon Attorney, under the direction of the Deputy Attorney General, receives and reviews all petitions for Executive Clemency (which includes pardon after completion of sentence, commutation of sentence, remission of fine or restitution and reprieve), initiates and directs the necessary investigations, and prepares a report and recommendation for submission to the President in every case. In addition, the Office of the Pardon Attorney acts as a liaison with the public during the pendency of a clemency petition, responding to correspondence and answering inquiries about clemency cases and issues. The following sets forth guidance on clemency matters.

[added April 2018]

## 9-140.111 - Role of the Prosecuting Component in Clemency Matters

The Pardon Attorney routinely requests the United States Attorney in the district of conviction or if a Department litigating component was responsible for the case, the Assistant Attorney General in charge of the component to provide comments and recommendations on clemency cases that appear to have some merit, as well as on cases that raise issues of fact about which the United States Attorney or Assistant Attorney General may be in a position to provide information. Occasionally, the United States Attorney in the district in which a petitioner currently resides also may be contacted. In addition, in cases in which the petitioner seeks clemency based on cooperation with the government, the Pardon Attorney may solicit the views of the United States Attorney in the district(s) in which the petitioner cooperated, if different from the district of conviction, or the views of the Assistant Attorney General in charge of the Department litigating component with which the petitioner cooperated, if different from the prosecuting component. When a particular Main Justice component has jurisdiction over or involvement in a case, such as approving charges or participating in the prosecution of the defendant, the Pardon Attorney will also solicit comments and recommendations from that component.  For example, the Tax Division, which authorizes and supervises nearly all charges arising under the internal revenue laws, will be consulted when a defendant convicted of such a charge seeks clemency, whether or not a Division attorney was directly involved in prosecuting the case  While the decision to grant clemency generally is driven by considerations that differ from those that dictate the decision to prosecute, the United States Attorney's or Assistant Attorney's General prosecutive perspective lends valuable insights to the clemency process.

The views of the United States Attorney or Assistant Attorney General are given considerable weight in determining what recommendations the Department should make to the President. For this reason, and in order to ensure consistency, it is important that each request sent to the district or litigating component receive the personal attention of the United States Attorney or Assistant Attorney General . Each petition is presented for action to the President with a

report and recommendation from the Department, and the substance of the recommendation by the United States Attorney or Assistant Attorney General is included in this report.

The United States Attorney or Assistant Attorney General can contribute significantly to the clemency process by providing factual information and perspectives about the offense of conviction that may not be reflected in the presentence or background investigation reports or other sources, e.g., the extent of the petitioner's wrongdoing and the attendant circumstances, the amount of money involved or losses sustained, the petitioner's involvement in other criminal activity, the petitioner's reputation in the community and, when appropriate, the victim impact of the petitioner's crime. On occasion, the Pardon Attorney may request information from prosecution records that may not be readily available from other sources.

As a general matter, in clemency cases the correctness of the underlying conviction is assumed, and the question of guilt or innocence is not generally at issue. However, if a petitioner refuses to accept guilt, minimizes culpability, or raises a claim of innocence or miscarriage of justice, the United States Attorney or Assistant Attorney General should address these issues.

In cases involving pardon after completion of sentence, the United States Attorney or Assistant Attorney General is expected to comment on the petitioner's post-conviction rehabilitation, particularly any actions that may evidence a desire to atone for the offense, in light of the standards generally applicable in pardon cases as discussed in the following section. Similarly, in commutation cases, comments may be sought on developments after sentencing that are relevant to the merits of a petitioner's request for mercy.

In pardon cases, the Pardon Attorney will forward to the United States Attorney or Assistant Attorney General copies of the pardon petition and relevant investigative reports. These records should be destroyed by the United States Attorney or Assistant Attorney General (if in electronic form) or returned (if in hard copy) to the Pardon Attorney along with the response. In cases involving requests for other forms of executive clemency (i.e., commutation of sentence or remission of fine), copies of the clemency petition and such related records as may be useful (e.g., presentence report, judgment of conviction, prison progress reports, and completed statement of debtor forms) will be provided.

The Pardon Attorney also routinely requests the United States Attorney or Assistant Attorney General to solicit the views and recommendation of the sentencing judge. If the sentencing judge is retired, deceased, or otherwise unavailable for comment, the United States Attorney's or Assistant Attorney's General report should so advise. In the event the United States Attorney or Assistant Attorney General does not wish to contact the sentencing judge, the Pardon Attorney should be advised accordingly so that the judge's views may be solicited directly. Absent an express request for confidentiality, the Pardon Attorney may share the comments of the United States Attorney or Assistant Attorney General with the sentencing judge or other concerned officials whose views are solicited.

The United States Attorney or Assistant Attorney General may support, oppose or take no position on a pardon request. In this regard, it is helpful to have a clear expression of the office's position. The Pardon Attorney generally asks for a response within 30 days. If an unusual delay is anticipated, the Pardon Attorney should be advised when a response may be expected. If desired, the official views of the United States Attorney or Assistant Attorney General may be supplemented by separate reports from present or former officials involved in the prosecution of the case. The United States Attorney or Assistant Attorney General may of course submit a recommendation for or against clemency even if the Pardon Attorney has not yet solicited comments from the district or component. The Pardon Attorney informs the United States Attorney or Assistant Attorney General of the final disposition of any clemency application on which he or she has commented.

Should a president leave office without acting on a particular clemency petition, that petition will remain open and active until the incoming president reaches a decision.

[added April 2018]


## 9-140.112 - Standards for Considering Pardon Petitions

In general, a pardon is granted on the basis of the petitioner's demonstrated good conduct for a substantial period of time after conviction and service of sentence. The Department's regulations require a petitioner to wait a period of at

least five years after conviction or release from confinement (whichever is later) before filing a pardon application (28 CFR Section 1.2). The Department may grant a waiver of the five-year requirement. In determining whether a particular petitioner should be recommended for a pardon, the following are the principal factors taken into account.

A. **Post-conviction conduct, character, and reputation**. An individual's demonstrated ability to lead a responsible and productive life for a significant period after conviction or release from confinement is strong evidence of rehabilitation and worthiness for pardon. The background investigation customarily conducted by the FBI in pardon cases focuses on the petitioner's financial and employment stability, responsibility toward family, reputation in the community, participation in community service, charitable or other meritorious activities and, if applicable, military record. The investigation also serves to verify the petitioner's responses in the pardon application. In assessing post-conviction accomplishments, each petitioner's life circumstances are considered in their totality: it may not be appropriate or realistic to expect "extraordinary" post-conviction achievements from individuals who are less fortunately situated in terms of cultural, educational, or economic background.

B. **Seriousness and relative recentness of the offense.** When an offense is very serious, (e.g., a violent crime, major drug trafficking, breach of public trust, or white collar fraud involving substantial sums of money), a suitable length of time should have elapsed in order to avoid denigrating the seriousness of the offense or undermining the deterrent effect of the conviction. In the case of a prominent individual or notorious crime, the likely effect of a pardon on law enforcement interests or upon the general public should be taken into account. Victim impact may also be a relevant consideration. When an offense is very old and relatively minor, the equities may weigh more heavily in favor of forgiveness, provided the petitioner is otherwise a suitable candidate for pardon.

C. **Acceptance of responsibility, remorse, and atonement.** The extent to which a petitioner has accepted responsibility for his or her criminal conduct and made restitution to its victims are important considerations. A petitioner should be genuinely desirous of forgiveness rather than vindication. While the absence of expressions of remorse should not preclude favorable consideration, a petitioner's attempt to minimize or rationalize culpability does not advance the case for pardon. In this regard, statements made in mitigation (e.g., "everybody was doing it," or I didn't realize it was illegal") should be judged in context. Persons seeking a pardon on grounds of innocence or miscarriage of justice bear a formidable burden of persuasion.

D. **Need for Relief.** The purpose for which pardon is sought may influence disposition of the petition. A felony conviction may result in a wide variety of legal disabilities under state or federal law, some of which can provide persuasive grounds for recommending a pardon. For example, a specific employment-related need for pardon, such as removal of a bar to licensure or bonding, may make an otherwise marginal case sufficiently compelling to warrant a grant in aid of the individual's continuing rehabilitation. On the other hand, the absence of a specific need should not be held against an otherwise deserving applicant, who may understandably be motivated solely by a strong personal desire for a sign of forgiveness.

E. **Official recommendations and reports.** The comments and recommendations of concerned and knowledgeable officials, particularly the United States Attorney or Assistant Attorney General whose office prosecuted the case and the sentencing judge, are carefully considered. The likely impact of favorable action in the district or nationally, particularly on current law enforcement priorities, will always be relevant to the President's decision. Apart from their significance to the individuals who seek them, pardons can play an important part in defining and furthering the rehabilitative goals of the criminal justice system.

[added April 2018]


## 9-140.113 - Standards for Considering Commutation Petitions

A commutation of sentence reduces the period of incarceration; it does not imply forgiveness of the underlying offense, but simply remits a portion of the punishment. It has no effect upon the underlying conviction and does not necessarily reflect upon the fairness of the sentence originally imposed. Requests for commutation generally are not accepted

unless and until a person has begun serving that sentence. Nor are commutation requests generally accepted from persons who are presently challenging their convictions or sentences through appeal or other court proceeding.

In the case of a petitioner seeking relief from a sentence of death, the petitioner must have exhausted only the first motion for relief under 18 U.S.C. § 2255 before applying for clemency. In such a case,  the Bureau of Prisons generally will set a date of execution upon denial of the first Section 2255 motion. Thereafter, the petitioner has a limited amount of time to submit clemency applications and materials. *See* 28 C.F.R. § 1.10.

The President may commute a sentence to time served or he may reduce a sentence to achieve the inmate's release after a specified period of time. Commutation may be granted upon conditions similar to those imposed pursuant to parole or supervised release or, in the case of an alien, upon condition of deportation.

Commutation of sentence is an extraordinary remedy. Appropriate grounds for considering commutation have traditionally included disparity or undue severity of sentence, critical illness or old age, and meritorious service rendered to the government by the petitioner, e.g., cooperation with investigative or prosecutive efforts that has not been adequately rewarded by other official action. A combination of these and/or other equitable factors (such as demonstrated rehabilitation while in custody or exigent circumstances unforeseen by the court at the time of sentencing) may also provide a basis for recommending commutation in the context of a particular case.

The amount of time already served and the availability of other remedies are taken into account in deciding whether to recommend clemency. The possibility that the Department itself could accomplish the same result by petitioning the sentencing court, through a motion to reward substantial assistance under Rule 35 of the Federal Rules of Criminal Procedure, a motion for modification or remission of fine under 18 U.S.C. Section 3573, or a request for compassionate reduction in sentence under 18 U.S.C. Section 3582(c)(1), will also bear on the decision whether to recommend Presidential intervention in the form of clemency. When a commutation request is based on the serious illness of the petitioner, an expedited response from the United States Attorney or Assistant Attorney General is always appreciated. If the request involves a sentence of death, an expedited response from the United States Attorney or Assistant Attorney General is essential.

When a petitioner seeks remission of fine or restitution, the ability to pay and any good faith efforts to discharge the obligation are important considerations. Petitioners for remission also should demonstrate satisfactory post-conviction conduct.

On January 21, 1977, the President by Proclamation 4483 granted pardon to persons who committed nonviolent violations of the Selective Service Act between August 4, 1964 and March 28, 1973 and who were not Selective Service employees. Although a person who comes within the described class was immediately pardoned by the proclamation, the Pardon Attorney issues certificates of pardon to those within the class who were actually convicted of a draft violation and who make written application to the Department on official forms. When these applications are received by the Pardon Attorney, they are forwarded to the United States Attorney for the district in which the applicant was convicted to verify the facts of the case. The verification should be returned to the Pardon Attorney promptly.

[added April 2018]

‹ 9-139.000 - Miscellaneous Labor Statutes               up          9-141.000. Foreign Murder of United States Nationals
(18 U.S.C. § 1119) ›

**U.S. Department of Justice**                    0170

**Federal Bureau of Prisons**

_Office of the Director_                          _Washington, DC 20534_

October 16, 2020

MEMORANDUM FOR T.J. WATSON, WARDEN
                FEDERAL CORRECTIONAL COMPLEX
                TERRE HAUTE, INDIANA

FROM:           M.D. Carvajal
                Director

SUBJECT:        Setting Execution Date

The purpose of this memorandum is to schedule the date for the
execution of Lisa Montgomery, Register Number 11072-031.  The
sentence of death for inmate Montgomery will be carried out at
the United States Penitentiary in Terre Haute, Indiana, on
December 8, 2020.

Please provide inmate Montgomery notice of the execution date.


cc:  The Honorable William P. Barr
     Attorney General

     The Honorable Jeffrey A. Rosen
     Deputy Attorney General

     The Honorable Donald W. Washington
     Director, United States Marshals Service

     Jessica E. Hart
     Director, Office for Victims of Crime

     Brian C. Rabbitt
     Acting Assistant Attorney General, Criminal Division

Rosalind Sargent-Burns
Acting Pardon Attorney

Richard E. Burns
Chief, Capital Case Section

Ken Hyle
Assistant Director/General Counsel

Andre Matevousian
Assistant Director, Correctional Programs Division

Jeffrey E. Krueger
Regional Director, North Central Region

M. Carr
Warden, Federal Medical Center, Carswell, Texas

0172



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

October 16, 2020

Ms. Lisa M. Montgomery
Reg. No. 11072-031
FMC Carswell
J St. Bldg 3000
Fort Worth, TX 76127

Dear Ms. Montgomery:

The purpose of this letter is to inform you that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on April 4, 2008, by Judge Gary A. Fenner of the United States District Court for the Western District of Missouri. This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3(a)(1), the Director of the Federal Bureau of Prisons has set December 8, 2020, as the date for your execution by lethal injection.

Under Title 28, Code of Federal Regulations, Sections 1.1 and 1.10, if you wish to seek commutation of sentence or reprieve from the President, petitions may be emailed directly to the DOJ Pardon Attorney at USPARDON.Attorney@usdoj.gov. If email is not available, petitions may be mailed to the Office of the Pardon Attorney, U.S. Department of Justice, 950 Pennsylvania Avenue, RFK Main Justice Building, Washington, D.C. 20530. The Office of the Pardon Attorney is responsible for receiving and processing on behalf of the President all requests for clemency. If you wish to apply for commutation of sentence your petition must be filed within 30 days of the date you receive this notice.

Soon, your Warden will come to your housing unit to personally discuss with you many of the details surrounding the execution. At that time, the Warden will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden
FCC Terre Haute

cc: The Honorable Gary A. Fenner, Senior U.S. Judge, U.S. District Court (W.D. Missouri)
Ms. Lisa Mitchell, Courtroom Deputy to Senior Judge Fenner, U.S. District Court (W.D. Missouri)
Mr. Timothy A. Garrison, United States Attorney (W.D. Missouri)
Mr. David Ketchmark, First Assistant United States Attorney, (W.D. Missouri)
Mr. Josh Minkler, United States Attorney (S.D. Indiana)
Mr. Joseph "Dan" McClain, United States Marshal (S.D. Indiana)
Ms. Christine M. Blegen, Esq.
Ms. Lisa G. Nouri, Esq.

0173



**U.S. Department of Justice**

Federal Bureau of Prisons

_Washington, DC 20534_

November 23, 2020


MEMORANDUM FOR T.J. WATSON, WARDEN
                FEDERAL CORRECTIONAL COMPLEX
                TERRE HAUTE, INDIANA


FROM:          M.D. Carvajal
               Director


SUBJECT:          Setting Execution Date


On October 16, 2020, I provided notification scheduling the
execution date of Lisa Montgomery, Register Number 11072-031.
The purpose of this memorandum is to schedule a new date for the
execution of inmate Montgomery.  The sentence of death for
inmate Montgomery will be carried out at the United States
Penitentiary in Terre Haute, Indiana, on January 12, 2021.

Please provide inmate Montgomery notice of the execution date.


cc:  The Honorable William P. Barr
     Attorney General

     The Honorable Jeffrey A. Rosen
     Deputy Attorney General

     The Honorable Donald W. Washington
     Director, United States Marshals Service

     Jessica E. Hart
     Director, Office for Victims of Crime

Brian C. Rabbitt
Acting Assistant Attorney General, Criminal Division

Rosalind Sargent-Burns
Acting Pardon Attorney

Richard E. Burns
Chief, Capital Case Section

Ken Hyle
Assistant Director/General Counsel

Andre Matevousian
Assistant Director, Correctional Programs Division

Barbara von Blanckensee
Regional Director, North Central Region

M. Carr
Warden, Federal Medical Center, Carswell, Texas



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

November 23, 2020

Ms. Lisa M. Montgomery
Reg. No. 11072-031
FMC Carswell
J St. Bldg 3000
Fort Worth, TX 76127

Dear Ms. Montgomery:

The purpose of this letter is to inform you that a new date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on April 4, 2008, by Judge Gary A. Fenner of the United States District Court for the Western District of Missouri. This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3(a)(1), the Director of the Federal Bureau of Prisons has rescheduled the date for your execution by lethal injection for January 12, 2021.

Soon, your Warden will come to your housing unit to personally discuss with you many of the details surrounding the execution. At that time, the Warden will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden
FCC Terre Haute

cc: The Honorable Gary A. Fenner, Senior U.S. Judge, U.S. District Court (W.D. Missouri)
Ms. Lisa Mitchell, Courtroom Deputy to Senior Judge Fenner, U.S. District Court (W.D. Missouri)
Mr. Timothy A. Garrison, United States Attorney (W.D. Missouri)
Mr. David Ketchmark, First Assistant United States Attorney, (W.D. Missouri)
Mr. John Childress, Acting United States Attorney (S.D. Indiana)
Mr. Joseph "Dan" McClain, United States Marshal (S.D. Indiana)
Ms. Kelley Henry, Esq.
Ms. Lisa G. Nouri, Esq.