## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LISA MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:20-cv-03261-RDM** |
| | ) | |
| **WILLIAM P. BARR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to 5 U.S.C. § 702, Rule 56 of the Federal Rules of Civil Procedure, and Local Civil Rule 7(h)(2), Plaintiff Lisa Montgomery hereby moves for summary judgment with respect to Claims I and II of her Supplemental Complaint in the above-captioned matter. Accompanying this motion are a Memorandum of Points and Authorities in support of Mrs. Montgomery's motion, and a proposed order.

DATED:      December 15, 2020

Respectfully Submitted,

/s/ Sandra L. Babcock
Sandra L. Babcock
Clinical Professor, International Human
Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and
Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504
mvergow@omm.com

Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LISA MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03261-RDM |
| | ) | |
| WILLIAM P. BARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.      Designation Of A January 12, 2021 Execution Date Violates The Law ........................... 4

      A.      Defendants Violated Federal Regulations By Scheduling Mrs. Montgomery's
             Execution Before The Expiration Of This Court's Stay ........................................ 4

      B.      Defendants Violated The FDPA By Failing To Comply With Missouri Law When
             Setting Mrs. Montgomery's Execution Date ........................................................ 9

II.     Defendants' Violations Of Law Prejudice Mrs. Montgomery ........................................ 11

III.    The Proper Remedy Is To Vacate Mrs. Montgomery's Execution Date .......................... 13

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AAR Airlift Group, Inc. v. U.S. Transportation Command,*
    161 F. Supp. 3d 37 (D.D.C. 2015) .........................................................................3

*Adamski v. McHugh,*
    304 F. Supp. 3d 227 (D.D.C. 2015) ........................................................................4

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission,*
    988 F.2d 146 (D.C. Cir. 1993) .............................................................................13

*Allina Health Services v. Sebelius,*
    746 F.3d 1102 (D.C. Cir. 2014) .............................................................................4

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012) ..............................................................................................8

*Ford v. Wainwright,*
    477 U.S. 399 (1986) ............................................................................................12

*Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner,*
    926 F.3d 819 (D.C. Cir. 2019) ...............................................................................5

*HealthAlliance Hospitals, Inc. v. Azar,*
    346 F. Supp. 3d 43 (D.D.C. 2018) ..........................................................................7

*Huashan Zhang v. USCIS,*
    978 F.3d 1314 (D.C. Cir. 2020) .............................................................................5

*Illinois Public Telecommunications Association v. FCC,*
    123 F.3d 693 (D.C. Cir. 1997) .............................................................................13

*In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I),*
    955 F.3d 106 (D.C. Cir. 2020) ...............................................................9, 10, 12

*In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II),*
    No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) ...................................9, 10, 12

*Jicarilla Apache Nation v. U.S. Dep't of Interior,*
    613 F.3d 1112 (D.C. Cir. 2010) .......................................................................11, 13

*LeCroy v. United States,*
    975 F.3d 1192 (11th Cir. 2020) .............................................................................6

*Loma Linda University Medical Center v. Sebelius,*
    684 F. Supp. 2d 42 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010) ...........................3

*Matson Navigation Co. v. U.S. Dep't of Transportation*,
    --- F. Supp. 3d ---, 2020 WL 3542220 (D.D.C. June 30, 2020) ..................................13, 14

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)........................................................................................................12

*Natural Resource Defense Council, Inc. v. U.S. Food & Drug Administration*,
    760 F.3d 151 (2d Cir. 2014).............................................................................................5

*National Association of Home Builders v. Defenses of Wildlife*,
    551 U.S. 644 (2007)..........................................................................................................7

*Nielsen v. Preap*,
    139 S. Ct. 954 (2019).....................................................................................................5, 6

*Nken v. Holder*,
    556 U.S. 418 (2009)..........................................................................................................6

*Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission*,
    896 F.3d 520 (D.C. Cir. 2018) .................................................................................10, 11

*Pacific Ranger, LLC v. Pritzker*,
    211 F. Supp. 3d 196 (D.D.C. 2018) .................................................................................7

*Public Employees for Environmental Responsibility v. Beaudreau*,
    25 F. Supp. 3d 67 (D.D.C. 2014) .....................................................................................3

*Reed v. Salazar*,
    744 F. Supp. 2d 98 (D.D.C. 2010)..................................................................................13

*Smith v. Armontrout*,
    825 F.2d 182 (8th Cir. 1987) ...........................................................................................7

*Smith v. State*,
    145 So. 2d 688 (Miss. 1962)............................................................................................7

*State v. Joubert*,
    518 N.W.2d 887 (Neb. 1994)...........................................................................................7

*Stuttering Foundation of America v. Springer*,
    498 F. Supp. 2d 203 (D.D.C. 2007).................................................................................3

*Texas Children's Hospital v. Azar*,
    315 F. Supp. 3d 322 (D.D.C. 2018).................................................................................5

*Thomas Jefferson University v. Shalala*,
    512 U.S. 504 (1994).........................................................................................................8

*United States v. Montgomery*,
    635 F.3d 1074 (8th Cir. 2011) ........................................................9

*United States v. White*,
    413 F. Supp. 3d 15 (D.D.C. 2019) ..................................................5

*United Steel v. Mine Safety & Health Administration*,
    925 F.3d 1279 (D.C. Cir. 2019) ....................................................13

*Whitfield v. State*,
    435 S.W.3d 700 (Mo. Ct. App. 2014)..............................................9

## DOCKETED CASES

Brief for the United States in Opp'n to Appl. for Stay of Executions and to Pet. for Writ of
    Cert., *O'Keefe v. Barr*, Nos. 20A11, 20-23, 2020 WL 4015846 (U.S. July 2020)..............8

## STATUTES, RULES, AND REGULATIONS

28 C.F.R.
    § 26.3.............................................................................. *passim*
    § 26.4..............................................................................1, 11

Manner of Federal Executions, 85 Fed. Reg. 75,846-01 (Nov. 27, 2020)......................................6

5 U.S.C.
    § 706.............................................................................4, 11

18 U.S.C. § 3596(a) ...................................................................... *passim*

Mo. Const. art. V, § 5...................................................................9

Mo. Sup. Ct. R. 30.30(f) ...........................................................9, 12

## OTHER AUTHORITIES

Paul Kalinithi, *When Breath Becomes Air* (2016) ......................................13

U.S. Department of Justice, *Executions Scheduled for Inmates Convicted of
    Brutal Murders Many Years Ago* (Nov. 20, 2020),
    https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-
    brutal-murders-many-years-ago........................................................10

## INTRODUCTION

Whenever a federal execution is stayed, the Federal Death Penalty Act ("FDPA") and related federal regulations impose several straightforward requirements regarding when the Government may reschedule the prisoner's execution.  As an initial matter, binding Department of Justice regulations prohibit the Bureau of Prisons ("BOP") from designating a new execution date until "the stay [of execution] is lifted."  28 C.F.R. § 26.3(a)(1).  Once the stay is lifted, those regulations further require that the new date be set "at least 20 days in advance," unless the stay itself lasted fewer than 20 days.  28 C.F.R. § 26.4(a).  The FDPA, moreover, mandates that any federal death sentence be implemented "in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  Thus, any new execution date must comply not only with the federal regulations, but also with any relevant state law concerning execution scheduling.

In the instant case, Defendants have failed to comply with these basic requirements.  On November 19, 2020, the Court stayed Plaintiff Lisa Marie Montgomery's original execution date of December 8, 2020 until December 31, 2020—*i.e.*, longer than 20 days.  But before the stay was lifted, Defendants designated a new execution date for Mrs. Montgomery of January 12, 2021.  Under binding federal regulations, this new execution date is unlawful, as it was set prior to the expiration of the existing stay and is fewer than 20 days from the date the stay is set to expire.  In addition, the new date also violates Missouri law, which requires at least 90 days' notice of a new execution date and prohibits the execution of more than one individual in a month.  By setting an execution date that is earlier than the law permits, Defendants have unlawfully shortened the time for Mrs. Montgomery to obtain consideration of her clemency petition, to seek other relief from her death sentence, to live her last days, and to prepare for her death.

For these reasons, Mrs. Montgomery respectfully requests that the Court set aside her January 12, 2021 execution date pursuant to the Administrative Procedure Act ("APA").

## BACKGROUND

On October 16, 2020, Defendants notified Mrs. Montgomery that her execution would be carried out on December 8, 2020.  AR 172.  After her execution date was set, Mrs. Montgomery's statutorily-guaranteed capital attorneys fell ill with the COVID-19 virus, rendering them incapable of filing a timely clemency petition on Mrs. Montgomery's behalf.  On November 12, 2020, Mrs. Montgomery filed a complaint alleging violations of 18 U.S.C. § 3599 and the Fifth Amendment's Due Process Clause.  Dkt. 1.  Mrs. Montgomery sought a preliminary injunction and a temporary restraining order.  Dkt. 2.

On November 19, 2020, this Court granted Mrs. Montgomery's motion for preliminary injunctive relief in part and entered a stay of her execution.  Specifically, the Court directed that "Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are enjoined from executing Plaintiff Lisa Marie Montgomery before December 31, 2020."  Dkt. 20.  The Court followed with a Minute Order that explained that the Court "stay[ed] Plaintiff's execution date until December 31, 2020."  Minute Order I (Nov. 25, 2020).

On November 23, 2020, without waiting for the expiration of this Court's stay, Defendants designated a new date of January 12, 2021 for Mrs. Montgomery's execution.  AR 173.  In their letter notifying Mrs. Montgomery of her new execution date, Defendants stated that the "Director ha[d] rescheduled the date of [her] execution" "pursuant to [28 C.F.R. §] 26.3(a)(1)."  AR 175.  Defendants filed a notice on the Court's docket that they had designated a new execution date of January 12, 2021.  Dkt. 21.

On December 9, 2020, Mrs. Montgomery filed a motion seeking leave to supplement her original complaint with claims arising from the November 19, 2020 temporary stay of execution and Defendants' setting of a January 12, 2021 execution date.  Dkt. 29; *see also* Dkts. 19, 21. Following a status conference with the Court on December 10, 2020, Defendants waived any objections to the motion for leave aside from futility, Dkt. 31, and the Court granted Mrs. Montgomery's motion to file a supplemental complaint, Minute Order II (Dec. 11, 2020).

## LEGAL STANDARD

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is … consistent with the APA."  *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010).  But the typical summary judgment standard set forth in Federal Rule of Civil Procedure 56 does not apply in APA cases. *See Pub. Emps. for Envtl. Resp. v. Beaudreau*, 25 F. Supp. 3d 67, 94 (D.D.C. 2014).  Instead, "[u]nder the APA … the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did" and whether the agency's action is "otherwise consistent with the APA standard of review." *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (internal quotation marks omitted).  Thus, "the court's review is limited to the administrative record." *Id.*[1]  However, where, as here, the plaintiff claims that the agency's action is *ultra vires*, the district court's analysis does not turn on the *evidence* in the administrative record or the sufficiency of the agency's explanation for its decision; rather, the question is solely whether the agency's final

---

[1] The parties have agreed to a limited administrative record, Dkt. 33, given the purely legal questions before the Court.  *Cf. AAR Airlift Grp., Inc. v. U.S. Transp. Command*, 161 F. Supp. 3d 37, 42 n.2 (D.D.C. 2015) (permitting waiver of Local Civil Rule 7(n) on cross motions for summary judgment).

action was taken with valid legal authority. *See Adamski v. McHugh*, 304 F. Supp. 3d 227, 236-37 (D.D.C. 2015).

## ARGUMENT

Under the APA, courts must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory … authority," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

Here, Defendants' decision to designate Mrs. Montgomery's execution for January 12, 2021 violates the law in two different respects. First, Defendants failed to comply with Department of Justice regulations that prohibit BOP from setting a new execution date until "the stay [of execution] is lifted." 28 C.F.R. § 26.3(a)(1). *See* Dkt. 29-1 ("Supp. Compl.") at 5-6. Second, Defendants violated the requirement in the FDPA that a federal death sentence be implemented "in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a), because they ignored multiple aspects of Missouri law governing the timing of executions. *See* Supp. Compl. at 6-7. Each of these violations, on its own, requires the Court to vacate Mrs. Montgomery's execution date. *See, e.g.*, *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("vacatur is the normal remedy" under the APA for unlawful agency action).

## I.     Designation Of A January 12, 2021 Execution Date Violates The Law

### A.     Defendants Violated Federal Regulations By Scheduling Mrs. Montgomery's Execution Before The Expiration Of This Court's Stay

Federal law forbids Defendants from setting a new date for Mrs. Montgomery's execution before the stay of execution entered by this Court expires on December 31. The federal regulation that governs the designation of the date for a federal execution, 28 C.F.R. § 26.3, states that "[i]f the date designated for execution passes by reason of a stay of execution, then a new date *shall* be

designated promptly by the Director of the Federal Bureau of Prisons *when the stay is lifted*." *Id.*
§ 26.3(a)(1) (emphases added).

This provision is unambiguous:  Its plain language directs the BOP Director—using the
mandatory term "shall"—to designate a new execution date after "the stay is lifted." *Nat. Res.*
*Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 159-61 (2d Cir. 2014) (where statute
providing that government official "shall" take action was "linked" to an express "temporal
condition," the "statute [was] clear" that the "condition[] must be met" before government took
required action).  The rule must be "enforce[d] … according to its terms." *Tex. Child. Hosp. v.*
*Azar*, 315 F. Supp. 3d 322, 333 (D.D.C. 2018); *see also, e.g.*, *Huashan Zhang v. USCIS*, 978 F.3d
1314, 1322 (D.C. Cir. 2020) (where a regulation is clear on its face, courts "cannot disregard the
plain meaning … based on policy considerations" and "cannot defer to the agency's contrary
interpretation").  Accordingly, Defendants lack the power to designate a new execution date for
Mrs. Montgomery until after this Court's stay expires, and any date designated prior to the
expiration of the stay is *ultra vires*.

Basic "rules of grammar" confirm Mrs. Montgomery's reading of § 26.3(a)(1).  *See, e.g.*,
*United States v. White*, 413 F. Supp. 3d 15, 34 (D.D.C. 2019).  Most fundamentally, the adverbial
clause "when the stay is lifted" modifies the verb "designated." *Nielsen v. Preap*, 139 S. Ct. 954,
964 (2019) (observing that the "adverbial clause 'when … released' modifie[d] the verb 'shall
take.'" (citation omitted)).  Moreover, "ordinarily, and within reason, modifiers and qualifying
phrases attach to the terms that are nearest." *Grecian Magnesite Mining, Indus. & Shipping Co.,*
*SA v. Comm'r*, 926 F.3d 819, 824 (D.C. Cir. 2019).  Applying that principle here, "when the stay
is lifted" should be read to modify "designate[]"—the "nearest possible referent." *Id.*  Thus, the

"new date shall be designated" only "when the stay is lifted."  Defendants failed to comply with that directive here.  No other construction is reasonable.

Defendants may argue that "when the stay is lifted" refers to when "the new date" must occur—not when the new date must be "designated."  But that interpretation violates basic principles of grammar, as noted.  The adverbial clause "when the stay is lifted" must modify the verb "designated," § 26.3(a)(1), as an "adverb cannot modify a noun." *Nielsen*, 139 S. Ct. at 964.

The structure of § 26.3(a) supports the notion that the Government lacks the power to designate a new execution date while a stay is in place.  As the Government recently explained in the course of promulgating amendments to related regulations, "Section 26.3(a)'s prefatory language … authoriz[es] BOP's Director to set an execution date and time '[e]xcept to the extent a court orders otherwise,'" and "nothing" in the regulations "alters the courts' power to set aside or postpone execution dates pursuant to their authority to issue stays and injunctions."  Manner of Federal Executions, 85 Fed. Reg. 75,846-01, 75,850 (Nov. 27, 2020).  In other words, the prefatory language in 26.3(a) "sensibly recognize[s]" that the Director's authority to set an execution date is cabined by "a court's authority to stay or enjoin a scheduled execution," *LeCroy v. United States*, 975 F.3d 1192, 1196 (11th Cir. 2020), and therefore contemplates that the Director will carry out the functions the provisions describes *when* and *to the extent that* a stay is not in effect, *see* Manner of Federal Executions, 85 Fed. Reg. at 75,850 (citing *LeCroy*, 975 F.3d at 1196).

Indeed, in commanding that the Director designate a new date only upon expiration of a stay, federal regulations simply make explicit what is already implicit in a stay of execution.  As Plaintiff explained in her Motion to Clarify (Dkt. 28), a stay of execution—like any stay—"temporarily suspend[s]" the Government's "authority to act." *Nken v. Holder*, 556 U.S. 418, 428-29 (2009).  As a result, a stay of execution temporarily sets aside the Government's authority to

designate a new execution date during the pendency of a stay.  As the Eighth Circuit held in *Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987), when "an order of court staying [an] execution is in full force and effect," the Government may not "resume any preparations for [the] execution" until the "stay of execution [is] finally dissolved."  *Id.* at 184.  And as the Nebraska Supreme Court has recognized, "[t]he setting of execution dates in anticipation of the termination of a stay clearly constitutes preparation for the carrying out of an execution in violation of a federal law."  *State v. Joubert*, 518 N.W.2d 887, 898 (Neb. 1994) (holding that Nebraska courts "may not set an execution date anticipating the termination of a federal stay"); *see id.* at 897 (a stay precludes not just "the execution of the prisoner" but also "the ministerial act of setting a date on which the execution is to be carried out"); *see also Smith v. State*, 145 So. 2d 688, 690 (Miss. 1962) ("The [federal] stay of execution thus granted precludes affirmative action by this Court at this time upon the motion filed by the State asking that a new date be set for the execution of the death sentence.").[2]

The Government's practice in setting other federal executions is consistent with this view. For every execution scheduled since the Government resumed capital punishment in 2019, when the prisoner has obtained a stay of execution, the Government has waited until the expiration of

---

[2] Even if a stay of execution, of its own force, precludes only the execution of a prisoner, and not the act of designating an execution date, the regulations clearly preclude the designation of a date while a stay is in effect.  If, contrary to the rules of grammar, the adverbial phrase "when the stay is lifted" spoke to when "the new date" must occur, the phrase "when the stay is lifted" would be entirely unnecessary.  A stay of execution obviously forbids the Government to schedule an execution to occur while the stay is still in effect.  *See, e.g., HealthAlliance Hosps., Inc. v. Azar*, 346 F. Supp. 3d 43, 56 (D.D.C. 2018) ("[L]ike the words of a statute, the words of a regulation must be viewed in context.").  And "[i]t is well established that regulatory interpretations that produce surplusage are disfavored." *E.g., Pac. Ranger, LLC v. Pritzker*, 211 F. Supp. 3d 196, 215 (D.D.C. 2018); *see also, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668-69 (2007) (rejecting regulatory interpretation that rendered certain language "mere surplusage").

the stay to set a new execution date.  Indeed, Mrs. Montgomery's case is the only instance we could find in which the Government has designated a new execution date while a stay of execution was in effect.[3]  *See* Declaration of Zohra Ahmed in Support of Plaintiff Lisa Montgomery's Motion for Partial Summary Judgment ("Ahmed Decl."), Ex. 1.

The Government's written interpretations are also consistent with this understanding.  The Government's lethal-injection execution protocols, adopted in 2004, and revised in 2019 and 2020, have consistently explained that "[i]f the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP *when the stay is lifted*." AR 8, 64, 119 (emphasis added).  And the Government has, in at least one prior court filing, described § 26.3 as specifying that the Government's authority to reschedule an execution arises *after* a stay is lifted.  *See, e.g.*, Brief for the United States in Opp'n to Appl. for Stay of Executions and to Pet. for Writ of Cert., *O'Keefe v. Barr*, Nos. 20A11, 20-23, 2020 WL 4015846, at *21 (U.S. July 2020) (explaining that the "execution date was stayed until June 12, 2020," and that "*once the stay was lifted*, BOP promptly rescheduled the executions, *consistent with the applicable regulation*" (emphases added) (citing 28 C.F.R. § 26.3(a)(1))).  These prior interpretations contemplate that the Director will designate a new execution date only upon expiration of a stay, and do not even suggest that the Director may do so while a stay is in effect.  The Government's apparent view that it may reschedule Mrs. Montgomery's execution despite the pendency of a stay thus appears to "conflict[] with [its] prior interpretation" of § 26.3.  *Christopher v. SmithKline*

---

[3] In two instances—Alfred Bourgeois and Lezmond Mitchell—the Government appears to have designated a new execution date after courts ordered that the applicable stays be vacated, but before formal issuance of the associated mandates.  *See* Ahmed Decl., Ex. 1.  Mrs. Montgomery's case is the only one in which the Government has set an execution date during a stay absent a court order vacating that stay.

*Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)).

## B. Defendants Violated The FDPA By Failing To Comply With Missouri Law When Setting Mrs. Montgomery's Execution Date

In addition to violating federal regulations, Defendants have also violated the FDPA.  That statute requires, in relevant part, that "the implementation of the [death] sentence" be "in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  As the D.C. Circuit has explained, the FDPA requires Defendants to abide by "the positive law and binding regulations of [the] state" where the prisoner was sentenced.  *In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I)*, 955 F.3d 106, 130 (D.C. Cir. 2020) (Rao J., concurring); *accord In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II)*, No. 20-5361, slip op. at 3-4 (D.C. Cir. Dec. 10, 2020) (en banc) (three concurring judges and four dissenting judges recognized Judge Rao's concurrence in *Execution Protocol Cases I* as the controlling D.C. Circuit opinion).

Here, Mrs. Montgomery was sentenced in the Western District of Missouri, *see United States v. Montgomery*, 635 F.3d 1074, 1079 n.1 (8th Cir. 2011), so her execution must comply with any relevant Missouri statutes or regulations.  Defendants, however, have failed to comply with binding Missouri regulations in two different ways: (1) Missouri Supreme Court Rule 30.30(f) provides that "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered"; and (2) Rule 30.30(f) further prohibits Defendants from "execut[ing] more than one warrant of execution per month."[4]  Setting aside the federal requirements discussed above (which, of course, also bind the federal government when

---

[4] Missouri Supreme Court Rules constitute "positive law"—the Missouri Constitution provides that they "shall have the force and effect of law."  Mo. Const. art. V, § 5; *see also Whitfield v. State*, 435 S.W.3d 700, 702 (Mo. Ct. App. 2014) (Supreme Court Rules are "binding").

scheduling execution dates), Defendants have provided nowhere near the 90 days' notice this rule requires.  And Defendants have scheduled two additional executions for January 2021, in violation of Rule 3.30(f)'s monthly limit.  *See* Supp. Compl. at 4.[5]

For purposes of the FDPA, Missouri's scheduling requirements concern the "implementation" of Mrs. Montgomery's sentence.  18 U.S.C. § 3596(a).  As Judge Rao's controlling opinion in *Execution Protocol Cases I* explains, "implementation" has a "broad" scope and encompasses, not only the "top-line method of execution," but also "a range of procedures and safeguards surrounding executions," including those dictating the "[d]ate, time, [and] place."  955 F.3d at 133-34 (first alteration in original) (internal quotation marks omitted).  Moreover, as four additional D.C. Circuit judges recently emphasized in *Execution Protocol Cases II*, even under a "narrow[er] definition of 'implementation'" including "only those measures that 'effectuate death,' it seems clear that prescribing the date and time for the execution to occur is a necessary element of effectuating the death sentence."  *Execution Protocol Cases II,* No. 20-5361, slip op. at 4 (Wilkins, J., dissenting); *see also id.* at 3 (Katsas, J., concurring) (only three judges disagreeing with this construction the FDPA).[6]  As those four judges recognized, state laws like the Missouri rules at issue here are not mere "notice" provisions; they also determine when the execution may

---

[5] *See also* U.S. Dep't of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

[6] In *Execution Protocol Cases II*, the D.C. Circuit considered the denial of a preliminary injunction on irreparable harm grounds; this motion, which seeks summary judgment on claims brought under the APA, does not involve the "substantially higher" preliminary injunction standard, *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 535 (D.C. Cir. 2018).  Although Judges Rogers and Rao joined the majority and voted to deny the request for stays of execution, they did not join Judge Katsas's concurrence and did not express any view on the merits of the underlying claims.  Chief Judge Srinivasan and Judge Garland "did not participate in [the] matter."  *Execution Protocol Cases II*, No. 20-5361, slip op. at 1.

lawfully take place—"a fundamental part of [the death sentence's]  implementation." *Id.* at 4 (Wilkins, J., dissenting).

## II.    Defendants' Violations Of Law Prejudice Mrs. Montgomery

Defendants' violations of § 26.3(a)(1) and the FDPA are prejudicial.

The APA requires courts to take "due account … of the rule of prejudicial error" in APA cases.  5 U.S.C. § 706.  "The harmless error standard of the APA merely requires a showing of prejudice," in contrast to the "substantially higher" "irreparable harm standard … courts must apply in granting injunctive relief." *E.g.*, *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 535 (D.C. Cir. 2018).  The APA standard is, in other words, "'not … a particularly onerous requirement.'"  *E.g.*, *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010).  Where prejudice is "obvious to the court," the challenging party "need not demonstrate anything further." *Id.*

In this case, the prejudice to Mrs. Montgomery is obvious.  This Court's stay expires on December 31, 2020.  Minute Order I (the Court "stay[ed] Plaintiff's execution date until December 31, 2020").  Had Defendants complied with § 26.3(a)(1), Defendants would not have been able to set a new execution date for Mrs. Montgomery earlier than January 1, 2021.  Under § 26.3's neighboring regulation, a "prisoner under sentence of death" is entitled to notification "of the date designated for execution at least 20 days in advance."[7]  28 C.F.R. § 26.4(a).  Accordingly, the earliest possible date the Government could have designated for Mrs. Montgomery's execution is January 21, 2021—20 days from January 1.  Thus, Defendants' violation of federal regulations, if

---

[7] There is an exception to the 20-day notice requirement "when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution," 28 C.F.R. § 26.4(a), but that exception does not apply here, because more than 20 days will have passed from her original December 8, 2020 execution date.

permitted to stand, would deprive Mrs. Montgomery of nine days of life.  It is difficult to think of a more "obvious" kind of prejudice.  *Jicarilla Apache Nation*, 613 F.3d at 1121.

The prejudice is even more extreme when considering the violation of Missouri law as incorporated by the FDPA.  Had the Government complied with Missouri law, the earliest possible date for Mrs. Montgomery's execution would have been April 1, 2021—90 days after January 1, 2021.  *See* Mo. Sup. Ct. R. 30.30(f).  Accordingly, by failing to comply with Missouri law, the Government deprived Mrs. Montgomery of an additional 79 days of life.

Additionally, by setting an unlawfully early execution date, Defendants have denied Mrs. Montgomery critical time in which she is entitled to seek legal relief from her death sentence. Defendants have unlawfully shortened the "time for … further consideration" of Mrs. Montgomery's clemency petition—which at present, consists only of the placeholder submitted immediately prior to the Court's issuance of the stay—an injury that rises to the level of "irreparable harm" and thus *a fortiori* constitutes prejudice under the less stringent APA standard. *Execution Protocol Cases II*, No. 20-5361, slip op. at 3-4 (Wilkins, J., dissenting).[8]  They abridged Mrs. Montgomery's "*right* to have [her] sentence[] implemented 'in the manner prescribed by the law of the State'" under the FDPA.  *Execution Protocols I*, 955 F.3d at 144 (Rao, J. concurring) (quoting 18 U.S.C. § 3596(a))  (emphasis added).   And they have unlawfully denied Mrs. Montgomery the "valu[able]" time afforded to her by law to "prepare, mentally and spiritually, for [her] death." *Ford v. Wainwright*, 477 U.S. 399, 421 (1986) (Powell, J., concurring); *see, e.g.*, AR

---

[8] Indeed, because Defendants' unlawful action causes Mrs. Montgomery irreparable harm, she would also be entitled to injunctive relief barring Defendants from executing her in violation of federal law.  Here, however, the "less drastic remedy" of "vacatur … [is] sufficient to redress [her] injury," making injunctive relief, and a showing of irreparable harm, unnecessary.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010).

119-122 (listing some of the preparations of a prisoner prior to execution).[9]   Being denied

significant time to seek legal relief from, and spiritually and actively prepare for, one's own

execution easily satisfies the APA's prejudice standard.   *See Jicarilla Apache Nation*, 613 F.3d at

1121.

## III.   The Proper Remedy Is To Vacate Mrs. Montgomery's Execution Date

The "default remedy" under the APA "is to set aside Defendants' action."   *Reed v. Salazar*,

744 F. Supp. 2d 98, 119 (D.D.C. 2010); *see also, e.g.*, *Ill. Pub. Telecomms. Ass'n v. FCC*, 123

F.3d 693, 693 (D.C. Cir. 1997) ("the practice of the court is ordinarily to vacate").   In deciding

whether to vacate, courts consider (1) the "seriousness of the order's deficiencies (and thus the

extent of doubt whether the agency choose correctly)," and (2) the "disruptive consequences" of

vacatur.   *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)

(internal quotation marks omitted); *accord Matson Navigation Co. v. U.S. Dep't of Transp.*, --- F.

Supp. 3d ---, 2020 WL 3542220, at *1 (D.D.C. June 30, 2020) (applying *Allied-Signal* factors and

vacating agency action).

In this case, both of these factors support vacatur of the January 12, 2021 execution date.

First, there is *zero* doubt that Defendants' action was unlawful.   Defendants lack the power to

designate January 12, 2021 for Mrs. Montgomery's execution.   For that reason, remand without

vacatur makes no sense.   *See, e.g.*, *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279,

1287 (D.C. Cir. 2019) (rejecting agency's request for remand without vacatur because agency's

---

[9] For one whose days are numbered, each day of life is precious.   As Paul Kalinithi wrote after he
was diagnosed with a terminal illness, "I would have to learn to live in a different way, seeing
death as an imposing itinerant visitor but knowing that even if I'm dying, until I actually die, I am
still living."   Paul Kalinithi, *When Breath Becomes Air* 149-50 (2016).   Each day that Mrs.
Montgomery lives gives her additional time to see or communicate with her children, her
grandchildren, her many friends, and her spiritual advisor.   Each day provides her with additional
opportunities to see death differently, to reckon with her sins, to make amends, and to prepare for
her demise and what, if anything, comes next.

action was "*ultra vires*" and accordingly could "not be saved" on remand). That is to say, because executing Mrs. Montgomery on January 12, 2021 is outright prohibited by both federal regulations and the FDPA, Defendants will have to choose a different date on remand. It thus serves no purpose to leave the January 12, 2021 date in effect.

Second, there would be no "disruptive consequences" of vacatur. The remedy would apply to only one person: Mrs. Montgomery. And the Government can reschedule her execution in accordance with the law upon expiration of this Court's stay. In other words, for the Government, the consequences of vacatur are uncomplicated and manageable. This case is simply not one where "vacatur would have consequences that would prove difficult to unscramble" or "result in significant disruption." *Matson*, 2020 WL 3542220, at *4.

Mrs. Montgomery's claims raise discrete, purely legal questions. The appropriate remedy is simple too: The Court must set aside her illegal execution date.

## CONCLUSION

The Court should grant summary judgment in Mrs. Montgomery's favor on Claims I and II in the Supplemental Complaint and vacate Mrs. Montgomery's January 12, 2021 execution date.

DATED:       December 15, 2020

Respectfully Submitted,

/s/ Sandra L. Babcock
Sandra L. Babcock
Clinical Professor, International Human
Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and
Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504
mvergow@omm.com

Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

*Attorneys for Plaintiff*