UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA M. MONTGOMERY,<br>*Plaintiff*,<br>v.<br>WILLIAM P. BARR, *et al.*,<br>*Defendants*. | Civil Action No. 20-3261 (RDM) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO CLARIFY AND/OR MODIFY NOVEMBER 19, 2020, PRELIMINARY INJUNCTION ORDER**

Date: December 18, 2020

Respectfully submitted,


TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

JEFFREY RAY
Deputy United States Attorney
Western District of Missouri

BRIAN P. CASEY
Chief, Appellate Division
Western District of Missouri

*/s/ Alan T. Simpson*
ALAN T. SIMPSON, Missouri Bar #65183
J. BENTON HURST, D.D.C. Bar #MO009
DAVID WAGNER
Assistant United States Attorneys
Western District of Missouri
Special Assistant United States Attorneys
District of Columbia

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN
Chief, Civil Division
District of Columbia

*/s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

ARGUMENT AND AUTHORITIES .......... 5

I. The Court Should Not Clarify, Modify, or Enforce Its Injunction to Prohibit the Rescheduling of Montgomery's Execution .......... 6

A. The Court Should Not Clarify Its Injunction to Prohibit the Rescheduling of Montgomery's Execution .......... 7

1. The Injunction Did Not Expressly Prohibit the Rescheduling of the Execution .......... 7

2. The Injunction Did Not Impliedly Prohibit the Rescheduling of the Execution .......... 8

3. The Court's Injunction Does Not Inherently Prohibit All Government Action Relating to Montgomery's Execution .......... 10

B. The Court Should Not Modify Its Injunction by Extending the Time during which Defendants May Not Execute Montgomery .......... 15

C. Courts Have Rejected Challenges to the Rescheduling of Executions While a Stay Was Pending .......... 15

1. *Mitchell v. United States* .......... 16

2. *Bourgeois v. Watson* .......... 17

II. Defendants Fully Complied with 28 C.F.R. §§ 26.3 and 26.4 in Rescheduling Montgomery's Execution on November 23 for January 12 .......... 18

A. Section 26.3(a)(1) Requires the Director of the BOP to Designate a New Execution Date after Expiration of a Stay, but It Does Not Prohibit Him from Doing so Sooner .......... 19

B. Montgomery's Counterarguments Lack Merit .......... 21

C. Defendants' Interpretation of the Regulation Is Entitled to Deference .................23

D. Even If Correct, Montgomery's Construction Does Not Justify the Modification She Seeks ........................................................................25

III. The Equities Counsel Against Further Delay ....................................................26

CONCLUSION.............................................................................................................29

CERTIFICATE OF SERVICE .......................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot Labs. v. TorPharm, Inc.*, 503 F.3d 1372 (Fed. Cir. 2007)....................................................7

*Barr v. Lee*, 140 S. Ct. 2590 (2020)....................................................................................28

*Baze v. Rees*, 553 U.S. 35 (2008)........................................................................................3

*Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) ..........................................................17, 18

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) .......................................................................28

*Calderon v. Thompson*, 523 U.S. 538 (1998) ....................................................................2, 28

*Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015).....................................18

*Ex parte Garland*, 71 U.S. (4 Wall.) 333 (1866) ...................................................................15

*Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111 (D.C. Cir. 2017)...............................6, 26

*Hill v. McDonough*, 547 U.S. 573 (2006)...............................................................................11

*Holt v. Hobbs*, 574 U.S. 352 (2015) .....................................................................................24

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123 (D.C. Cir. 2020)...........27

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)................................................................................23

*Klayman v. Kollar-Kotelly*, No. 12-5340, 2013 WL 2395909 (D.C. Cir. 2013) ...........................12

**LeCroy v. United States*, 975 F.3d 1192 (11th Cir. 2020) ..............................................11, 19, 23

*Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145,
2020 WL 7186766 (D.D.C. Dec. 6, 2020)...........................................................................27

*Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020)............................................................16

*Montgomery v. Barr*, No. 20-cv-01281, 2020 WL 7353711 (N.D. Tex. Dec. 15, 2020) ..............24

*Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020).............................................3, 11

*Montgomery v. United States*, 565 U.S. 1263 (2012) ................................................................11

*N.S. v. Dixon*, No. 20-CV-101, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) ............................5, 6

*Nat'l Fed'n of Fed. Emps. v. Carlucci*, 680 F. Supp. 416 (D.D.C. 1988) ....................................6

*Nelson v. Campbell*, 541 U.S. 637 (2004) ......................................................................................11

**Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................10, 11, 12

**Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020), *cert. denied*, 20-5767 (20A52), 2020 WL 5640389 (Sept. 22, 2020)...........................................................................19, 20

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989).....................................................................15

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020)....................................................................11

*Schick v. Reed*, 419 U.S. 256 (1974)...............................................................................................15

*Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987).......................................................11, 13, 14

*Smith v. State*, 145 So. 2d 688 (Miss. 1962)......................................................................11, 14, 15

*State v. Joubert*, 518 N.W.2d 887 (Neb. 1994)...........................................................................11, 14

*Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618 (D.C. Cir. 2000) ........................................21

*Turner v. Safley*, 482 U.S. 78 (1987) ..............................................................................................24

*U.S. Food & Drug Admin*., 760 F.3d 151 (2d Cir. 2014) ..............................................................22

*United States v. Kelly*, 504 Fed.Appx. 85 (3d Cir. 2012) ...............................................................12

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011).....................................................3, 28

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020), *cert. denied*, 20-5766 (20A49), 2020 WL 5667626 (Sept. 24, 2020)...........................................................................27, 29

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1 (D.C. Cir. 2015) ........................................................................................................6, 17

*Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7 (2008) .........................................................27

**Statutes**

18 U.S.C. § 3599.........................................................................................................................3, 15

28 U.S.C. § 2241..............................................................................................................................17

28 U.S.C. § 2251 ....................12, 13, 14

28 U.S.C. § 2254 ....................11

28 U.S.C. § 2255 ....................11, 12, 16

**Rules**

Fed. R. App. P. 28 ....................18

Fed. R. Civ. P. 60 ....................16

Fed. R. Civ. P. 65 ....................6, 7

**Regulations**

28 C.F.R. § 26.3 .................... i, 1, 18, 19, 20, 24

28 C.F.R. § 26.4 ....................17, 18, 19

**Other Authorities**

11A Mary Kane, Federal Practice & Procedure Civil § 2955 (3d ed. 2020) ....................7

Per Curiam Order, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56 ....................18

Ltr. of the United States, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 54 ....................18, 23

Ltr. of Plaintiff, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55 ....................18

Order, *Bourgeois v. Watson*, No. 19-cv-392 (S.D. Ind. Dec. 3, 2020), Dkt. 37 ....................18

Motion of Lezmond Mitchell, *Mitchell v. United States*, No. 18-17031 (9th Cir. Nov. 29, 2018), Dkt. 3. ....................16

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. April 25, 2019), Dkt. 10-1 ....................16

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26 ....................16

Ltr. of the United States, *Mitchell v. United States*, No. 18-17031 (9th Cir. July 29, 2020), Dkt. 47 .................... 16-17, 23

Motion of Plaintiff, *Mitchell v. United States*, No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48 ....................17

Response of the United States, *Mitchell v. United States*, No. 18-17031
(9th Cir. Aug. 3, 2020), Dkt. 49 ........................................................................17, 23

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52. .................2, 17

Mandate, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55 ............ 16-17

Brief for the United States, *O'Keefe v. Barr*, Nos. 20A11, 20-23,
2020 WL 4015846 (U.S. July 2020) .......................................................................24

## INTRODUCTION

This Court's injunction is clear: Defendants may not execute plaintiff Lisa Montgomery before December 31, 2020. The injunction prohibits her execution before that date; it does not prohibit Defendants from executing her *on* or *after* that date, nor does it prohibit Defendants from merely providing notice of her execution prior to that date. Accordingly, after this Court enjoined Montgomery's initial execution date of December 8, 2020, but before that date had passed, the Director of the Bureau of Prisons (BOP) scheduled Montgomery's execution for a later date to facilitate carrying out her sentence once the injunction expires. Specifically, on November 23, 2020, the Director notified Montgomery that her execution was scheduled to take place on January 12, 2021, giving her 50 days' notice.

In challenging the scheduling of the new execution date, Montgomery argues not for any "clarification" of what this Court previously ordered but for a wholly new injunction, twice as long as the one this Court granted already. In other words, Montgomery seeks a modified, expanded injunction. But Montgomery cites no changed circumstance that warrants modification. Montgomery does not argue that she requires more time to prepare her clemency petition, or that her attorneys remain incapacitated, or that other attorneys remain unable to assist. Her motion cites no change in the factors the Court weighed in granting the preliminary injunction. Montgomery's motion is a transparent effort to impose additional delay for its own sake.

Montgomery also fails to demonstrate that her request for an expanded injunction satisfies the normal standards for the granting of injunctive relief, including a demonstration of a likelihood of success on the merits and that the equities tip in her favor. Nothing in the applicable federal regulations prohibited Defendants from acting on November 23, 2020, to reschedule Montgomery's execution for January 12, 2021. 28 C.F.R. § 26.3 requires that, "[i]f the date

designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." That language places a *duty* on the Director of the BOP to act promptly to reschedule an execution when a stay is lifted, but does not limit his *authority* to act prior to that point. And because the Director designated a new date for execution before the initial date of December 8, 2020, had passed, "the date designated for execution" has not "passe[d] by reason of a stay of execution." Montgomery effectively asks the Court to rewrite the regulation to prohibit the Director from setting a new date until a stay of execution or injunction is lifted, but the regulation simply does not say that. The purpose of the regulation is to ensure that stays do not produce undue delay in the rescheduling of executions. Montgomery reads it to have precisely the opposite effect, requiring additional delay for no purpose other than delay itself.

The government's scheduling of Montgomery's execution is consistent with past practice. Earlier this year, two other death-row prisoners each received a notice designating a new execution date, even though a stay of execution was in place on the day the prisoner received notice. Although one prisoner explicitly contested the government's authority to act to schedule an execution date while a stay of execution was in effect, a court of appeals declined relief. Order, *United States v. Mitchell*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52. Both capital sentences were carried out within ten days of the expiration of a court-ordered stay of execution.

Granting Montgomery's requested relief would directly undermine the public interest. The prior injunction provided Montgomery time to prepare a clemency petition, and she presents no unforeseen or legally cognizable harm that warrants further delay of her lawful capital sentence. The public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (quotation omitted), by "carrying out a sentence of death in a timely

manner," *Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality opinion). Montgomery's ever-evolving procedural challenges do not support additional delay of justice for her heinous crime.

This Court should deny Montgomery's motion to clarify, modify, or enforce its November 19, 2020, preliminary injunction.

## BACKGROUND

In December 2004, Montgomery strangled Bobbie Jo Stinnett to death while Stinnett was eight months pregnant and sliced her open with a kitchen knife to deliver and kidnap her premature baby. *United States v. Montgomery*, 635 F.3d 1074, 1079 (8th Cir. 2011). Montgomery was convicted and sentenced to death, and she has exhausted her challenges to her conviction and sentence. *See generally id.*; *Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020).

On October 16, 2020, the Director of the BOP scheduled Montgomery's execution for December 8, 2020. AR 170, 172. That announcement provided her 53 days' notice of her original execution date.

Montgomery thereafter filed this suit seeking to enjoin her execution on the ground that two of her counsel, Kelley Henry and Amy Harwell, were then incapacitated by COVID-19 and therefore had been unable to assist her in preparing a clemency petition, depriving her of counsel as provided by 18 U.S.C. § 3599. *See* Dkt. 19 at 1-2.

On November 19, 2020, this Court entered a preliminary injunction barring the government "from executing Plaintiff Lisa Marie Montgomery before December 31, 2020." Dkt. 20 at 1. The Court also ordered Harwell and Henry to "finalize Plaintiff's clemency petition as promptly as possible in light of their illness" and, in the event Harwell and Henry "believe that they will be unable to do so without further assistance by December 24, 2020," to "immediately apply to the U.S. District Court for the [Western] District of Missouri to appoint qualified, additional counsel,

or . . . enlist the assistance of other attorneys working in" the Office of the Federal Public Defender (FPD) of the Middle District of Tennessee. *Id.* at 1-2. To date, neither Harwell nor Henry has applied for additional counsel.

The Court agreed with Montgomery that § 3599 "creates an entitlement to meaningful representation by qualified counsel through the clemency process." Dkt. 19 at 11, 14. The Court concluded that Harwell and Henry, because of their illnesses, had "effectively abandoned" Montgomery at this "critical 'fail safe' stage in the death penalty system." *Id.* at 14 (citations omitted). And although the Court recognized that Montgomery continues to be represented by healthy, capable attorneys appointed pursuant to § 3599, it concluded that one attorney—Nouri—had also "'effectively abandoned' Plaintiff in her pursuit of clemency" and that the Office of the FPD "cannot fill the shoes of Harwell and Henry at this late date," with only "11 or 12 days" then remaining until the due date for the final clemency application. *Id.* at 17-20.

In light of the Court's injunction and Montgomery's pending request for clemency, on November 23, 2020, the Director of the BOP rescheduled Montgomery's execution for January 12, 2021, providing Montgomery 50 days' notice. AR 173, 175; *see* Dkt. 21. The currently scheduled execution date, January 12, 2021, is 88 days after Montgomery first received notice of an execution date.

The Pardon Attorney interpreted the Court's order as setting a deadline of December 24 for the submission of Montgomery's primary clemency application and permitting supplementation of that application on a showing of good cause through the conclusion of the injunction. Gillespie Decl. ¶¶ 3-5, Dkt. 22-2. And, on Defendants' motion, the Court clarified that "[i]n staying Plaintiff's execution date until December 31, 2020, the Court relied on the fact that Nouri and the FPD-MDT would remain obligated to continue representing Plaintiff, along with

Amy Harwell and Kelley Henry as soon as they are medically able to do so." Minute Order (Nov. 25, 2020).

On December 9, the day after her original execution date, three weeks after the Court's November 19 preliminary injunction order, and 16 days after the Director of the BOP set Montgomery's new execution date, Montgomery moved to clarify or modify the order. Dkt. 28. Montgomery argued that the preliminary injunction prohibited the Director from acting to designate a new execution date until January 1, 2020. *Id.* Specifically, she argued that federal regulations prohibit the Director from setting an execution date while a stay of execution is in effect. *Id.* At a teleconference in this matter on December 10, the Court stated that it did not have this particular issue in mind when granting preliminary injunctive relief. But Montgomery's counsel stated that Montgomery requests a ruling on the motion to clarify or modify nonetheless. Montgomery's counsel also said this is the first case where the federal government has scheduled an execution while an order enjoining or staying an execution is in place.

Montgomery is the third federal prisoner this year scheduled, during the pendency of a court-ordered stay, for execution after that stay concludes. In both prior cases, involving Lezmond Mitchell and Alfred Bourgeois, the inmate received a rescheduled execution date from the Director of the BOP during a months-long stay of execution. Both were executed on the rescheduled dates that were set during the stay. And both executions occurred fewer than 10 days after the court-ordered stays were lifted.

**ARGUMENT AND AUTHORITIES**

A district court may clarify the scope of an injunction "to facilitate compliance with the order and to prevent unwitting contempt." *N.S. v. Dixon*, No. 20-CV-101, 2020 WL 6701076, at *2 (D.D.C. Nov. 13, 2020) (cleaned up and quotation omitted). "[C]larifying the scope of a

preliminary injunction comports with the directive in Federal Rule of Civil Procedure 65 that '[e]very order granting an injunction' must 'state its terms specifically.'" *Id.*

A modification of an injunction requires changed circumstances, and "[t]he party seeking modification 'bears the burden of establishing that a significant change in circumstances warrants [its] revisions.'" *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017) (quotation omitted). If the party seeking relief can make this showing, the Court should then address whether the change justifies the modification requested, and this inquiry turns on the same criteria that govern the issuance of a preliminary injunction, including the likelihood of success on the merits, the balance of harms, and the public interest. *Nat'l Fed'n of Fed. Emps. v. Carlucci*, 680 F. Supp. 416, 435 (D.D.C. 1988) (applying the four-factor test for issuance of a preliminary injunction to a motion to expand a preliminary injunction).

The difference between clarifying and modifying an injunction turns on "the actual effect of the order, not its form." *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (quotations omitted). "An order modifies an injunction only if it actually changes the legal relationship of the parties." *Id.* (quotation omitted).

## I. The Court Should Not Clarify, Modify, or Enforce Its Injunction to Prohibit the Rescheduling of Montgomery's Execution

Because this Court's injunction did not prohibit Defendants from merely *scheduling* Montgomery's execution during the pendency of the injunction—for a date after the termination of the injunction—Defendants did not violate the injunction by doing so. The order neither expressly nor impliedly nor inherently includes such a prohibition. Montgomery identifies no changed circumstance that justifies expansion of the injunction. Furthermore, any such expansion would bear no relationship to the weighing of the factors that justified the injunction and would

further unconstitutionally infringe on the President's pardon power. This Court should deny the motion.

### A. The Court Should Not Clarify Its Injunction to Prohibit the Rescheduling of Montgomery's Execution

Every order granting an injunction must "state its terms specifically." Fed. R. Civ. P. 65(d). That admonition "strongly suggests that only those acts specified by the order will be treated as within its scope and that no conduct or action will be prohibited by implication." 11A Mary Kane, Federal Practice & Procedure Civil § 2955 (3d ed. 2020); *Abbot Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1382 (Fed. Cir. 2007) ("In this regard, the district court impermissibly interpreted the original injunction as prohibiting acts beyond its plain terms in violation of Fed. R. Civ. P. 65(d).").

#### 1. The Injunction Did Not Expressly Prohibit the Rescheduling of the Execution

This Court's injunction, by any reading, narrowly prohibits Defendants only from taking a particular action ("from executing" Montgomery) at a particular time ("before December 31, 2020"). Dkt. 20. It says: "ORDERED that Defendants . . . are enjoined from executing Plaintiff Lisa Marie Montgomery before December 31, 2020." Dkt. 20; *see* Minute Order (Nov. 25, 2020) ("In staying Plaintiff's execution date until December 31, 2020 . . . ."). As this Court explained in the accompanying opinion, the injunction was an order "briefly staying Plaintiff's execution date to permit Harwell and Henry to finalize her clemency petition." Dkt. 19 at 24.

The Court's injunction expressly prohibits Defendants from *executing* Montgomery prior to December 31, 2020; it does not expressly prohibit Defendants either from taking a different action before that date (such as *rescheduling* her execution) or from taking that same action on or after that date (such as executing her *on or after December 31, 2020*). The plain terms of the injunction permit Defendants to execute Montgomery as soon as December 31, 2020. The plain

terms similarly permitted Defendants to designate, during the pendency of the injunction, a date for Montgomery's execution after the injunction terminates.

This Court's injunction contrasts sharply with injunctions that do enjoin the government from setting an execution date. *See* Order, *Paul v. Holder*, No. 05-cv-2337 (D.D.C. April 3, 2014), Dkt. 336 ("The Defendants herein are enjoined from setting a date for executing Jeffery Paul and from executing Jeffery Paul pending further order of this Court."); Order, *Roane v. Gonzales*, No. 05-cv-2337 (D.D.C. June 11, 2007), Dkt. 68 (similar language with respect to Orlando Hall); Order, *Roane v. Gonzales*, No. 05-cv-2337 (D.D.C. June 11, 2007), Dkt. 67 (similar language with respect to Anthony Battle). These injunctions illustrate that there is a distinction between enjoining an execution and enjoining the scheduling of an execution date, and that the former does not accomplish the latter.

**2. The Injunction Did Not Impliedly Prohibit the Rescheduling of the Execution**

The original injunction is clear. That lack of ambiguity precludes Montgomery's effort to "clarify" the injunction to add what she claims is implied: that in addition to prohibiting her execution before December 31, 2020, the injunction while in effect also prohibited Defendants from taking the mere step of *rescheduling* her execution while the injunction is in effect. This Court should not "clarify" its injunction to add a prohibition it never originally imposed nor intended.

The "clarification" that Montgomery requests would dramatically expand the scope of the injunction, which "briefly stay[s] Plaintiff's execution date," until December 31, 2020. Dkt. 19 at 24. Indeed, Montgomery makes clear that she believes that, under this Court's order, the earliest date on which Defendants could execute her is January 21, 2021. *See* Dkt. 28 at 7 (arguing that Defendants cannot schedule Montgomery's execution until January 1 and cannot execute her until

"at the earliest, January 21, 2021.").[1] Montgomery's motion does not so much seek a "clarification" as it seeks to extend the length of this Court's prior injunction on grounds that have nothing to do with the basis of the original injunction, which involved access to counsel, clemency, and associated due process considerations.

To clarify the injunction as Montgomery requests would divorce it from the harm it sought to remedy. The Court issued the injunction "to stay Plaintiff's execution—briefly—to permit Harwell and Henry to recover from their illness and to have a short time to finish their work in supplementing Plaintiff's placeholder petition for reprieve or commutation of sentence." Dkt. 19 at 21. Indeed, the Court specifically limited its injunction "to give due respect to the interest of Defendants and the public in avoiding unjustified delays in capital[] cases." Dkt. 19 at 23. The Court's choice to prohibit Montgomery's execution until December 31 was based on its weighing of the relevant injunctive relief factors: the likelihood that Montgomery would succeed on her claim to enforce an alleged statutory right to clemency counsel, and the equities, including the public's and victims' interests in the timely execution of her lawful sentence. Montgomery does not attempt to show that the Court's weighing of those factors would have justified imposing a different kind of relief—that is, "set[ing] aside the Government's authority to act with respect to Mrs. Montgomery's execution," Dkt. 28 at 6—and further extending the earliest date on which she could be executed from December 31, 2020, to January 21, 2021.

Furthermore, this Court should not now clarify its order to grant Montgomery relief that she did not seek in her initial motion. In her motion, Montgomery sought only to enjoin Defendants

[1]Montgomery errs even in this calculation. Her suggestion that the Court's order prohibits the Government from acting on December 31, 2020, misreads the order, which states that Defendants "are enjoined from executing Plaintiff Lisa Marie Montgomery *before* December 31, 2020." Dkt. 20 at 1 (emphasis added).

"from carrying out her scheduled execution until she has had access to and an opportunity to participate in a clemency process with the assistance of counsel that comports with fundamental fairness." Dkt. 2 at 1. Pointedly, Montgomery did not ask this Court to prohibit the Defendants from rescheduling or taking other preparatory steps with respect to her execution.

Had Montgomery understood this Court's November 19, 2020, injunction to prohibit Defendants from continuing to prepare for her execution, she presumably would have objected when, four days later, Defendants filed a notice of Montgomery's rescheduled execution date. Dkt. 21. At the time, however, neither the Court nor Montgomery suggested Defendants were in violation of the injunction. It was only 16 days later that Montgomery filed this motion, suggesting that even she only lately came to believe that Defendants had violated this Court's order by rescheduling her execution.

**3. The Court's Injunction Does Not Inherently Prohibit All Government Action Relating to Montgomery's Execution**

Contrary to Montgomery's argument, the Court's injunction did not by its nature operate as a stay depriving Defendants of all authority to take any preparatory actions with respect to Montgomery's execution while the injunction is in effect. Montgomery suggests that the Court's injunction "temporarily suspend[s] the source of authority to act" and "set[s] aside . . . the source of the Government's authority." Dkt. 28 at 5 (quoting *Nken v. Holder*, 556 U.S. 418, 428-29 (2009)). Montgomery misreads *Nken* and its application to the Court's order in two respects.

*First*, the two quoted portions of *Nken* refer to stays, rather than injunctions. "[A]n injunction is a judicial process or mandate operating *in personam*." 556 U.S. at 428 (quotation omitted). "By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself." *Id.* "[A] stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's

conduct." *Id.* Courts that review the judgments of other courts, either on appeal or on collateral review, frequently issue "stays" of the judgment under review to permit time to consider the issues presented.

The cases Montgomery cites in her Motion for Partial Summary Judgment, Dkt. 35 at 14, are of this kind.[2] All involved stays that originated in courts with the authority to grant relief from the judgment under review—something that Montgomery has not sought and this Court could not grant. Where a collateral attack, if successful, would necessarily invalidate a conviction or sentence, that claim must proceed in habeas. *Nelson v. Campbell*, 541 U.S. 637, 643-44, 646-47 (2004); *Hill v. McDonough*, 547 U.S. 573, 579-83 (2006). For a federal prisoner like Montgomery, that means she may collaterally attack her conviction or sentence only in the district of conviction under 28 U.S.C. § 2255 or, when § 2255 is "inadequate or ineffective," in the district of confinement under § 2241. *See generally Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020), *cert. denied*, 20-26 (20A12), 2020 WL 4006838 (U.S. July 16, 2020).

Unlike this suit, habeas operates on the underlying judgment of conviction by permitting a court to declare that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Nelson*, 541 U.S. at 646-47. And because habeas effectively authorizes a federal district court to sit in review of the underlying state conviction, federal law further permits a district court reviewing a state judgment under § 2254 to "stay any

[2] *Smith v. Armontrout*, 825 F.2d 182, 184 (8th Cir. 1987), and *State v. Joubert*, 518 N.W.2d 887, 890-91 (Neb. 1994), involved stays issued to review habeas petitions under 28 U.S.C. § 2254. *Smith v. State*, 145 So. 2d 688, 690 (Miss. 1962), involved a stay issued by a Justice of the Supreme Court pending certiorari review directly from the state supreme court. Here, the United States Supreme Court denied certiorari from Montgomery's direct appeal and her petition under § 2255. *Montgomery v. United States*, 565 U.S. 1263 (2012); *Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020). The discussion in *LeCroy v. United States*, 975 F.3d 1192, 1196 (11th Cir. 2020), arose in an appeal from an order of the sentencing court.

proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas proceeding" and provides that "[a]fter the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. 28 U.S.C. § 2251(a), (b). Such a stay is akin to a stay pending appeal: it "operates upon the judicial proceeding itself." *Nken*, 556 U.S. at 428.

Here, in contrast, this Court is not reviewing—and cannot review—the judgment of Montgomery's federal sentencing court. *See* 28 U.S.C. § 2255(a); *United States v. Kelly*, 504 Fed.Appx. 85, 87 (3d Cir. 2012) (unpublished per curiam) ("The District Court lacked jurisdiction to review the decision of another federal district court."); *Klayman v. Kollar-Kotelly*, No. 12-5340, 2013 WL 2395909, at *1 (D.C. Cir. 2013) (per curiam) ("[T]his court has concluded that one district court does not have jurisdiction to review the decisions of another district court or federal appellate court[.]").

Furthermore, no federal statute grants this Court the stay authority that § 2251 grants to a federal district court reviewing a state judgment under § 2254. Because this Court does not sit in review of the criminal judgment, its injunction did not "return[] to the status quo—the state of affairs before" the criminal judgment was entered. *Nken*, 556 U.S. at 429. Montgomery is not seeking to "set[] aside" the source of the government's authority to execute her, temporarily or permanently. *Cf. id.* at 429. The judgment issued by the Western District of Missouri—which has been consistently and repeatedly affirmed by courts that have jurisdiction to do so—remains in place, and Defendants may prepare to execute it when this Court's injunction expires of its own accord.

The terms of this Court's order confirm that the order in this case is an injunction, not a stay. The Court did not purport to set aside the underlying judgment, thereby depriving Defendants

of "authority to act," Dkt. 28 at 5, but rather expressly "enjoined" Defendants "from executing Plaintiff Lisa Marie Montgomery before December 31, 2020," Dkt. 20. The Court enjoined one action—Montgomery's execution—and nothing else. This Court should reject Montgomery's misapplication of *Nken* and conclude that its injunction did not inherently set aside the underlying criminal judgment.

*Second*, even if this Court's order operated as "a stay," depriving the underlying criminal judgment of effect during its pendency, it would not deprive Defendants of their inherent authority to announce future plans to execute the judgment on the presumption that "the stay" will lift before the planned date, nor would it deprive Defendants of the inherent authority to take other preparatory steps that have no impact on Montgomery's rights. This is especially true here, where the Court's order ends by its own accord on a definite date known to all parties.

Montgomery cites three nonbinding cases to support her position that a stay would automatically bar the setting of an execution date, but none of the cases stands for that proposition. Two of the cases implicated the expansive stay provision of 28 U.S.C. § 2251, which is irrelevant to this case, and the third occurred in the very different procedural posture of a state prisoner's proceedings on direct review.

*Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987), differs from this case in important respects. There, the district court granted a stay of execution of indefinite duration pending review of the state prisoner's first habeas petition, and the preparations involved moving the inmate to a special holding area shortly after filing a motion to vacate a stay, with the intent to execute him within hours thereafter. *Id.* at 183-84. Additionally, the Eighth Circuit did not purport to announce a categorical rule that no preparations may be undertaken or dates set while a stay of execution is pending; it rather "disapprove[d]" of moving the prisoner to the special holding area and

conducting additional related "preparations." *Id.* at 184. Those activities are a far cry from simply designating an execution date after a stay is set to expire.

Additionally, although not explicitly discussed in the opinion, the Eighth Circuit issued its ruling against the backdrop of 28 U.S.C. § 2251 (1948), which at the time provided that after a federal judge presiding over a habeas corpus proceeding granted a stay of state court proceedings, "any such proceedings in any State court or by or under the authority of any State shall be void." Here, however, no analogous statute applies.

In *State v. Joubert*, the Nebraska Attorney General asked the Nebraska Supreme Court to set an execution date, notwithstanding that a federal district court had "entered an order staying execution of the sentence pending resolution of [a habeas] petition." 518 N.W. 2d 887, 890-91 (Neb. 1994) (per curiam) (cleaned up and quotation omitted). The Court refused, explaining that under § 2251, "once a federal stay has been granted in a habeas corpus action, any proceeding in any state court or by or under any state authority shall be void." *See id.* at 896. The court reasoned that "[t]he setting of execution dates in anticipation of the termination of a stay clearly constitutes preparation for the carrying out of an execution, in violation of federal law." *Id.* at 898. In contrast, no statute precludes the Director of the BOP from designating a new execution date or making other preparations for Montgomery's execution.

In *Smith v. State*, on direct review of a criminal conviction, the Mississippi Supreme Court declined to set a new execution date after Justice Hugo Black signed an order "staying the execution of the death sentence pending the action of the Supreme Court upon the [prisoner's] petition for certiorari." 145 So. 2d 688, 690 (Miss. 1962). The Mississippi Supreme Court summarily concluded that "[t]he stay of execution thus granted precludes affirmative action by this Court at this time upon the motion filed by the State asking that a new date be set for the

execution of the death sentence." *Id.* There, the stay was of indefinite duration pending direct review. In contrast, Montgomery has exhausted all her appellate rights on direct review (and initial collateral attack), and this Court's injunction is set to expire on a date certain.

### B. The Court Should Not Modify Its Injunction by Extending the Time during which Defendants May Not Execute Montgomery

Montgomery does not even attempt to show that the factors justifying the initial injunction now also justify its modification. She does not show that her appointed counsel will remain incapacitated into January 2021 and beyond, nor does she show that other counsel (such as Nouri and the FPD for the Middle District of Tennessee) will be—and have been—unable to work on her clemency petition during the period this Court provided.[3] Montgomery's failure to demonstrate that her request for modification is justified by the factors that the Court relied on in granting the preliminary injunction in the first instance demonstrates her lack of entitlement to the proposed modification.

### C. Courts Have Rejected Challenges to the Rescheduling of Executions While a Stay Was Pending

Contrary to Montgomery's claims, Defendants' rescheduling of her execution is unexceptional and consistent with past practice. On at least two prior occasions, Defendants have rescheduled executions notwithstanding that courts had stayed the executions at the time of the rescheduling. In both cases, the execution was permitted to proceed as scheduled, and in one

[3]To extend the Court's injunction still further on the ground that Congress created enforceable statutory limits on the pardon power in 18 U.S.C. § 3599 would exacerbate the intrusion on the President's sole power to grant reprieves and pardons. U.S. Const. art. II, § 2, cl.1; *cf. Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 465-67 (1989); *Schick v. Reed*, 419 U.S. 256, 267 (1974); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866) ("This power of the President is not subject to legislative control."). Defendants respectfully disagree that Congress may, by enacting § 3599, impose any limit on the pardon power, and note that the Court stated it "must proceed cautiously in light of the constitutional commitment of that authority to the President." Dkt. 19 at 21.

instance, the court of appeals rejected an express challenge to the rescheduling as violative of the stay.

### 1. *Mitchell v. United States*

In March 2018, Lezmond Mitchell filed a motion in Arizona federal district court to re-open his § 2255 proceedings pursuant to Federal Rule of Civil Procedure 60(b)(6). *Mitchell v. United States*, 958 F.3d 775, 783 (9th Cir. 2020), *cert. denied*, 20-5398 (20A30), 2020 WL 5016765 (U.S. Aug. 25, 2020). Mitchell claimed that he was erroneously denied the opportunity to interview the jurors in his case and that the error prevented him from presenting a fully investigated § 2255 motion. *Id.* The district court declined to grant the motion. *See id*.

In November 2018, Mitchell moved the Ninth Circuit for a certificate of appealability. Motion, *Mitchell v. United States*, No. 18-17031 (9th Cir. Nov. 29, 2018), Dkt. 3. The Ninth Circuit granted a certificate of appealability in April 2019. Order, *Mitchell*, No. 18-17031 (9th Cir. April 25, 2019), Dkt. 10. Notwithstanding the Ninth Circuit's grant of a certificate of appealability, on June 25, 2019, the BOP set Mitchell's execution for December 11, 2019. Order at 3 (Ikuta, J., dissenting), *Mitchell*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26.

The Ninth Circuit stayed Mitchell's execution pending appeal on October 4, 2019. Order at 1, *Mitchell*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26. On April 30, 2020, the Ninth Circuit affirmed the district court's denial of Mitchell's Rule 60(b) motion. *Mitchell*, 958 F.3d at 791-92. However, due to extensive post-opinion motion practice, the Ninth Circuit did not issue its mandate until August 18, 2020. *See* Mandate, *Mitchell*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55.

Before the mandate issued—and while Mitchell's execution was stayed—the BOP rescheduled Mitchell's execution for August 26, 2020. Ltr., *Mitchell*, No. 18-17031 (9th Cir. July

29, 2020), Dkt. 47. Mitchell immediately contested the BOP's authority to schedule an execution. Mitchell filed a motion to enforce the stay of his execution and strike his August 26, 2020, execution date. Motion, *Mitchell*, No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48. He argued the government's action violated the Ninth Circuit's stay of execution, *id.* at 6, and, alternatively, sought clarification or modification of the stay order to prohibit the government from setting an execution date until the mandate issued, *id.* at 7-8. He also argued, *id.* at 1-2, that the 20-day notice period under 28 C.F.R. § 26.4 should not include time during which his execution was stayed. The government opposed, noting that the "order stayed 'the execution'; it did not stay the scheduling of a new execution date at a time after the Court's stay should no longer be in place." Response at 9, *Mitchell*, No. 18-17031 (9th Cir. Aug. 3, 2020), Dkt. 49. The Ninth Circuit denied Mitchell's motion without comment. Order, *Mitchell*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52. Mitchell was executed on the scheduled date of August 26, 2020,[4] eight days after the Ninth Circuit's stay ended. *See* Mandate, *Mitchell*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55.

**2. *Bourgeois v. Watson***

In July 2019, the government set Alfred Bourgeois's execution for January 13, 2020. *Bourgeois v. Watson*, 977 F.3d 620, 627 n.2 (7th Cir. 2020), *cert. denied*, No. 20A104, 2020 WL 7296816 (Dec. 11, 2020). The next month, "Bourgeois filed a habeas corpus petition under 28 U.S.C. § 2241 in the Southern District of Indiana. He also moved to stay his execution." *Id.* at 627. "Bourgeois argued that he was intellectually disabled, and that his death sentence ran afoul of *Atkins* [*v. Virginia*] and the FDPA." *Id.* In March 2020, the district court found that Bourgeois made a strong showing of intellectual disability and granted his motion for a stay. *Id.* at 628.

---

[4]Bureau of Prisons – Federal Executions, https://www.bop.gov/about/history/federal_executions.jsp.

On October 6, 2020, the Seventh Circuit issued an opinion reversing the district court's decision that Bourgeois was likely to succeed on the merits and remanding the case with instructions for the district court to deny Bourgeois's motion for a stay and dismiss his habeas petition. *Id.* at 639. The government requested that the Seventh Circuit issue its mandate immediately, but the panel declined. *Id.* Instead, like in *Mitchell*, extensive post-opinion motion practice delayed the mandate. *See* Per Curiam Order, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56.

Before the mandate issued—and while Bourgeois's execution was stayed—the BOP rescheduled Bourgeois's execution for December 11, 2020. Ltr. at 2, *Bourgeois*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 54. After the government's notice of execution was docketed, Bourgeois immediately filed a Fed. R. App. P. 28(j) letter informing the Seventh Circuit that the government scheduled the execution "notwithstanding the continuing validity of the stay of execution entered by the District Court on March 10, 2020[.]" Ltr., *Bourgeois*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55. The Seventh Circuit denied rehearing en banc and issued its mandate on December 1, 2020. Per Curiam Order, *Bourgeois*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56. The district court vacated its stay two days later, on December 3. Order, *Bourgeois v. Watson*, No. 19-cv-392 (S.D. Ind. Dec. 3, 2020), Dkt. 37. Bourgeois was executed as scheduled on December 11, 2020, eight days after the stay of his execution terminated.[5]

## II. Defendants Fully Complied with 28 C.F.R. §§ 26.3 and 26.4 in Rescheduling Montgomery's Execution on November 23 for January 12

Montgomery is also not entitled to a modification of the injunction because she is unable to demonstrate a "substantial likelihood of success on the merits" of her claim. *See Food and Water*

[5]Bureau of Prisons – Federal Executions, https://www.bop.gov/resources/federal_executions_info.jsp.

*Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quotation marks omitted). Montgomery contends that Defendants violated 28 C.F.R. § 26.3(a)(1) by scheduling her execution before this Court's injunction expired. Dkt. 28 at 7. She maintains that Defendants cannot schedule a new date until January 1, 2021, and that she is entitled to 20 days' notice under 28 C.F.R. § 26.4(a)(1), meaning that in her view her execution cannot occur until January 21. Dkt. 28 at 7. Montgomery, however, misinterprets the plain text of the regulations in two distinct respects, and her reading would vitiate the regulations' purpose as well. Defendants fully complied with the letter and spirit of the regulations when, on November 23, they designated January 12 as the date when Montgomery's capital sentence will be carried out.

### A. Section 26.3(a)(1) Requires the Director of the BOP to Designate a New Execution Date after Expiration of a Stay, but It Does Not Prohibit Him from Doing so Sooner

"The applicable regulations delegate broad discretion to the BOP Director to set execution dates[.]" *Peterson v. Barr*, 965 F.3d 549, 552 (7th Cir. 2020); *see also LeCroy v. United States*, 975 F.3d 1192, 1195 (11th Cir. 2020) ("The Code of Federal Regulations vests the Bureau Director with broad authority and discretion to set execution dates as an initial matter[.]"), *cert. denied*, 20-5767 (20A52), 2020 WL 5640389 (Sept. 22, 2020). Specifically, § 26.3(a)(1) provides that the Director of the BOP shall set an execution date "no sooner than 60 days from the entry of the judgment of death," and that "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director . . . when the stay is lifted." Section 26.4(a)(1) provides in relevant part that "[t]he Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance . . . ." The constraints imposed by §§ 26.3(a)(1) and 26.4(a)(1) are "minimal": "the 60-day post-judgment waiting period and the 20-day notice to the prisoner[.]" *Peterson*, 965 F.3d at

552. "[I]f the BOP observes the minimal requirements in the regulations—as it did here—then it has the unconstrained discretion to choose a date for the execution." *Id.* at 552-53.

Even setting aside the fact that 28 C.F.R. § 26.3(a)(1) uses the term "stay" rather than "injunction," Defendants fully complied with § 26.3(a)(1). Montgomery interprets that regulation to require additional delay, but in fact it is designed to achieve precisely the opposite effect—by ensuring that a stay does not produce undue delay in the rescheduling of an execution. Two aspects of the text reflect this purpose and refute Montgomery's contrary reading. First, the text imposes a *duty* on the Director of the BOP to "promptly" designate a new execution date "[i]f the date designated for execution passes by reason of a stay of execution." The provision does not, however, in any way *prohibit* the Director from designating a new date before a stay expires. In other words, the regulation is mandatory but not prohibitory. *Cf. Peterson*, 965 F.3d at 553 (explaining that § 26.4(c) "is a limitation on, not an entitlement to, witness attendance").

Second, the text provides that the Warden shall promptly designate a new date "*[i]f* the date designated for execution passes by reason of a stay of execution." 28 C.F.R. § 26.3(a)(1). Here, the Director of the BOP designated a new date on November 23, over two weeks *before* the original December 8 execution date passed. Once the Director designated January 12 as the new execution date, December 8 was no longer "the date designated for execution." There can only be one date designated for execution at any particular time. The regulation refers to the active designated date, not superseded dates. Because the date designated for execution did not pass and has not passed, the mandatory effect of the regulation—or, alternatively, the prohibitory effect that Montgomery posits—was never triggered.[6]

[6]Defendants also complied with § 26.4(a)(1), which requires 20 days' notice of an execution date in certain circumstances. On November 23, 2020, the Warden of FCC Terre Haute

Read as a whole, the regulation makes perfect sense as a mechanism for ensuring that stays do not produce undue delay in the scheduling of executions. *See Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618, 625 (D.C. Cir. 2000) (indicating that regulations should be interpreted consistently with their purpose and text). If the date scheduled for an execution passes as a result of a stay, the regulation requires the Director promptly to designate a new date upon expiration of the stay. The regulation sensibly does not *require* the Director to designate a new date before the stay terminates, because there may be circumstances—particularly if the stay is indefinite—when doing so would not be practicable. But neither does it *prohibit* him from doing so. In circumstances like this one, where the injunction has a definite endpoint, advance scheduling benefits the government, the public, the victim's family, and even the prisoner by providing her with the maximum possible notice of the new date. And if the Director proactively reschedules the execution before the designated date passes, the regulation has nothing to say because its purpose has already been fulfilled.

**B. Montgomery's Counterarguments Lack Merit**

Montgomery asks the Court to essentially rewrite the regulation to, in her words, "*prohibit* BOP from setting a new execution date *until* 'the stay [of execution] is lifted.'" Dkt. 35 at 4 (emphasis added). For the reasons explained above, that interpretation cannot be squared with two independent features of the text, both of which Montgomery fails to address.

Montgomery's interpretation is not only a rewriting of the text, it is also inconsistent with the purpose of ensuring that executions are rescheduled promptly when a stay interferes with the original date. She has no explanation as to what purpose could be served by preventing the Director

---

notified Montgomery via letter that her execution date had been rescheduled for January 12, 2021, far more than 20 days in advance. *See* AR 179.

from rescheduling an execution during the pendency of an injunction with a definite endpoint, as in this case, thus providing clarity to all parties involved.

Moreover, under Montgomery's interpretation, any time an execution date is postponed 20 days or more by reason of a stay, an additional delay of at least 20 days must be gratuitously tacked on after the stay is lifted. *See* § 26.4(a)(1). Under this view, a court enjoining an execution must plan ahead to lift any stay at least 20 days before the date the court intends to allow the execution to proceed. If a court did not so plan, it would necessarily misbalance the injunctive relief factors any time it intended to enjoin an execution, rather than also enjoin the scheduling of an execution, thereby frustrating the public's interest in seeing death sentences timely carried out following the lifting of a stay. Montgomery suggests no reason, much less a good one, that an execution must be delayed by an additional 20 days every time a prior execution date has been postponed by at least 20 days and a stay is lifted.

Montgomery's reliance on *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 159-61 (2d Cir. 2014), is misplaced; that case does not support her interpretation of the regulation. Dkt. 35 at 3. The question in that case concerned the timing of when the Secretary of Health and Human Services was statutorily required to hold a hearing to consider whether prior approval of a new animal drug should be withdrawn. *See Nat. Res. Def. Council, Inc.*, 760 F.3d at 157-58. The Second Circuit noted that "Congress expressly provided that withdrawal of approval is required (indeed such withdrawal is authorized) only after a hearing is held and a finding is made." *Id.* at 160. Another portion of the statute at issue provided for emergency withdrawal of approval without a hearing. *Id.* at 162. This case, by contrast, involves an unrelated regulation that requires the agency to take a particular action promptly after a particular event, but by its terms does not disable the agency from taking the same action more expeditiously.

Finally, the fact that the regulations "sensibly recognize—as they must—a court's authority to stay or enjoin a scheduled execution," *LeCroy*, 975 F.3d at 1196, in no way suggests that the Director of the BOP lacks power to schedule an execution while a stay or injunction is in place, as Montgomery suggests. Dkt. 35 at 6. The Director obviously cannot schedule an execution to take place while a stay is in effect, and once a stay is lifted, the regulations require him to promptly schedule a new execution date. But neither of these strictures affect his discretion to designate, while a stay or injunction is in place, an execution date to occur after the stay or injunction is lifted.

**C. Defendants' Interpretation of the Regulation Is Entitled to Deference**

At the very least, Defendants' interpretation of § 26.3(a)(1) is reasonable. Thus, if the Court determines that the regulation is genuinely ambiguous, Defendants' interpretation should be afforded controlling weight. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019). The relevant regulatory interpretation has been made by Defendants. AR 173-74 (Notice of Rescheduling). It is plainly Defendants' official position, as demonstrated by the scheduling of executions for Montgomery, Mitchell, and Bourgeois while a stay or injunction was in effect, and numerous legal filings addressing the issue, including this brief. *See supra*; *see also*, *e.g.*, Ltr. at 2, *Mitchell*, No. 18-17031 (9th Cir. July 29, 2020), Dkt. 47 (asserting the government could schedule Mitchell's execution for a time when the stay should no longer be in place); Response at 2, *Mitchell*, No. 18-17031 (9th Cir. Aug. 3, 2020), Dkt. 49 (arguing that the "order stayed 'the execution'; it did not stay the scheduling of a new execution date at a time after the Court's stay should no longer be in place"); Ltr. at 2, *Bourgeois*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 54 (noting "the government's position that implementation of a lawful sentence postponed by a stay should be rescheduled as promptly as possible"). Both this brief and other filings in this case, *Mitchell*, and *Bourgeois* confirm the reasoning of the BOP Director, given that there are no notice or reliance

concerns in a regulation that governs Defendants' conduct—imposing a duty to promptly set execution dates—rather than the conduct of private parties. 28 C.F.R. § 26.3(a)(1).

Moreover, the scheduling of executions is obviously an area of Defendants' substantive expertise. Defendants operate the relevant correctional institutions, schedule executions, and manage execution logistics, including the team of individuals required to conduct an execution. *See* AR 112-65. Defendants also have a full-frame view of the quantity and type of individuals with federal capital sentences who are awaiting execution. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (noting that "[p]rison officials are experts in running prisons"); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (observing that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources"); *Montgomery v. Barr*, No. 20-cv-01281, 2020 WL 7353711, at *11, 13 (N.D. Tex. Dec. 15, 2020) (noting that "Defendants' evidence shows that BOP conducted multiple successful executions at FCC Terre Haute in recent months" and that FCC Terre Haute "staff have a demonstrated record of successfully conducting executions employing the lethal injunction protocol expressly approved by the Supreme Court").

Montgomery mistakenly asserts that the Government's prior written interpretations of § 26.3(a)(1) are in conflict with Defendants' position in this case. Dkt. 35 at 8. There is no conflict or inconsistency. The 2004, 2019, and 2020 Execution Protocols simply restate the regulation nearly verbatim and say that "[i]f the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted." AR 8, 64, 119. The Government's brief that Montgomery cites merely observed that "once the stay was lifted, BOP promptly rescheduled the executions, consistent with the applicable regulation. *See* 28 C.F.R. 26.3(a)(1)." Brief for the United States at 21, *O'Keefe v. Barr*, Nos. 20A11, 20-23, 2020 WL 4015846 (U.S. July 2020). These statements do not indicate or imply that the Government has

ever interpreted § 26.3(a)(1) as prohibiting the BOP from designating a new execution date while a stay is in place. Indeed, it has done precisely that on at least two prior occasions.

### D. Even If Correct, Montgomery's Construction Does Not Justify the Modification She Seeks

Even if the Court agrees with Montgomery's interpretation of § 26.3(a)(1), it should not grant her requested modification. Montgomery suggests no good reason her execution should not proceed on January 12. Rather, she seeks delay for delay's sake. Requiring Defendants to delay setting a new date until December 31, and then requiring them to provide 20 days' notice, would be inconsistent with the purpose of this Court's injunction, which was to postpone Montgomery's execution only so long as necessary to enable two of her appointed counsel to recover from COVID and finalize a clemency petition.

During the November 16, 2020, telephonic hearing, Montgomery indicated that she was seeking a preliminary injunction until approximately December 23. Nov. 16, 2020 Hrg. Tr. at 47-49, Dkt. 24. At no point before, during, or after the November 16 hearing did Montgomery advise this Court that she would subsequently take the position that her execution could not be scheduled for at least 20 days after any injunction entered by this Court expired. Instead, she raised this argument for the first time on December 9, the day after her originally scheduled execution date. Had Montgomery been transparent about her position on this issue, this Court could have enjoined her execution only until December 11, which under Montgomery's reading of the regulations would have permitted the Government to execute her on December 31 at the earliest. But Montgomery was not transparent, and the Court should reject her latest attempt to obtain a further delay for reasons wholly unrelated to preparing a clemency petition.

If the Court were to agree with Montgomery's reading of the relevant regulations, instead of extending the injunction, the Court should do precisely the opposite: modify the injunction to

permit the execution to proceed as early as December 31. Specifically, the Court could modify the injunction to provide that after December 30, Defendants may designate a new execution date without providing the full 20 days' notice required under § 26.4(a)(1). The 20 days' notice requirement in § 26.4(a)(1) applies "[e]xcept to the extent a court orders otherwise." This Court can order that Defendants need not provide 20 days' notice after the current injunction expires after December 30. This would simultaneously accomplish the original purpose of Montgomery's lawsuit, which was to afford Montgomery sufficient time to finalize a clemency petition, and also enable Defendants to carry out Montgomery's sentence in a timely manner.

As an alternative to ordering that the government is excused from the 20 days' notice requirement, the Court could modify its order enjoining Montgomery's execution by having the injunction expire on December 11 (*i.e.*, 20 days before December 31). Doing so would enable the Government to re-notice Montgomery's execution for January 12, 2021, a date she has had notice of since November 23.

To be clear, Defendants' notice of Montgomery's rescheduled execution complies with all applicable regulations. But to the extent this Court disagrees, Defendants suggest that the public's interest in timely enforcement of Montgomery's capital sentence requires modification of the injunction on narrower terms than Montgomery seeks—if not dissolution entirely. The Court cannot modify an injunction in order to achieve delay for delay's sake. If Montgomery is right on the law, this Court's prior balancing suggests the Court should modify the preliminary injunction to enable the government to carry out Montgomery's execution in a timely manner.

## III. The Equities Counsel Against Further Delay

Lastly, the equities, including the "public interest," *Manitoba*, 849 F.3d at 1117, counsel against a further delay of Montgomery's execution on the grounds she proposes.

*First*, Montgomery cannot establish the necessary irreparable harm for extension of an injunction. Bare requests for additional time cannot support injunctive relief delaying a valid capital sentence. As Judge Chutkan recently recognized, even if a court believes a statute affords a condemned prisoner additional days of life, providing fewer days' notice does not rise to the level of irreparable harm when the prisoner has been under a death sentence for well over a decade and has received notice well in advance of the execution. *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, 2020 WL 7186766, at *7 (D.D.C. Dec. 6, 2020); *see also United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020) (concluding that defendant's request for relief on FDPA notice claim failed on equitable factors, since 55 days' notice was "well in advance of [an] execution date"), *cert. denied*, 20-5766 (20A49), 2020 WL 5667626 (Sept. 24, 2020). For both of Montgomery's execution dates, she received at least the 50 days' notice set forth in the nonbinding 2019 Execution Protocol. Montgomery has been on notice of the government's intent to execute her since October 16, 2020—which is 88 days in advance of her January 12, 2021, execution date.

Even assuming a regulatory violation, Montgomery does not allege that she would have suffered harm by receiving a January 12 execution date in the first instance. A bare regulatory or statutory violation does not support an injunction without an additional showing of irreparable harm. *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 32 (2008) (injunctive relief "does not follow from success on the merits as a matter of course"); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020) ("Success on an APA claim does not automatically entitle the prevailing party to a permanent injunction."). Montgomery proffers no such harm because none exists.

*Second*, the equities weigh heavily against granting Montgomery additional delay of her sentence. It has been over 16 years since Montgomery brutally murdered Bobbie Jo Stinnett. Montgomery does not challenge her conviction for the kidnapping and murder she committed "in an especially heinous or depraved manner," *Montgomery*, 635 F.3d at 1095-96, nor does she challenge her sentence of death. The public has a "powerful and legitimate interest in punishing the guilty," *Calderon*, 523 U.S. at 556 (quotation omitted), by "carrying out a sentence of death in a timely manner," *Baze*, 553 at 61. Nonetheless, having unreasonably delayed seeking relief in this Court until shortly before her scheduled execution, *cf. Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020); *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019), she now seeks to nearly double the delay already imposed by this Court's prior injunction.

Montgomery has known for over 15 years that a day will come when she is executed. Over two months ago, Defendants told her that day was imminent. She has litigated her challenges to her conviction and sentence, and she has already received a three-week postponement of her execution date based solely on the illness of two particular lawyers. Equity does not support a further delay of Montgomery's lawful sentence.

**CONCLUSION**

For the foregoing reasons, this Court should deny Montgomery's motion to clarify, modify, or enforce its November 19, 2020, preliminary injunction.

Dated: December 18, 2020

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

JEFFREY RAY
Deputy United States Attorney
Western District of Missouri

BRIAN P. CASEY
Chief, Appellate Division
Western District of Missouri

*/s/ Alan T. Simpson*
ALAN T. SIMPSON, Missouri Bar #65183
J. BENTON HURST, D.D.C. Bar #MO009
DAVID WAGNER
Assistant United States Attorneys
Western District of Missouri
Special Assistant United States Attorneys
District of Columbia

– and –

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN
Chief, Civil Division
District of Columbia

*/s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Alan T. Simpson*
Special Assistant United States Attorney