UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LISA M. MONTGOMERY, | |
| *Plaintiff*, | |
| v. | Civil Action No. 20-3261 (RDM) |
| WILLIAM P. BARR, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: December 18, 2020

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

JEFFREY RAY
Deputy United States Attorney
Western District of Missouri

DANIEL F. VAN HORN
Chief, Civil Division
District of Columbia

BRIAN P. CASEY
Chief, Appellate Division
Western District of Missouri

*/s/ Alan T. Simpson*
ALAN T. SIMPSON, Missouri Bar #65183
J. BENTON HURST, D.D.C. Bar #MO009
DAVID WAGNER
Assistant United States Attorneys
Western District of Missouri
Special Assistant United States Attorneys
District of Columbia

*/s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................................. i

AUTHORITIES ......................................................................................................................... ii

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................3

STANDARD .................................................................................................................................3

I.      Montgomery Does Not Succeed on the Merits ..................................................................4

      A.      Defendants Did Not Violate Applicable Regulations by Rescheduling Montgomery's Execution .................................................................................................4

            1.      Defendants Fully Complied with 28 C.F.R. §§ 26.3 and 26.4 in Rescheduling Montgomery's Execution on November 23 for January 12 ...................................................................................................4

                  a.      Section 26.3(a)(1) Requires the Director of the BOP to Designate a New Execution Date after Expiration of a Stay, but It Does Not Prohibit Him from Doing so Sooner ....................5

                  b.      Montgomery's Counterarguments Lack Merit ................................7

                  c.      Defendants' Interpretation of the Regulation Is Entitled to Deference ..........................................................................................9

            2.      The Court's Injunction Does Not Inherently Prohibit All Government Action Relating to Montgomery's Execution ......................10

            3.      Courts Have Rejected Challenges to the Rescheduling of Executions While a Stay was Pending ..........................................................................15

                  a.      *Mitchell v. United States* ..............................................................15

                  b.      *Bourgeois v. Watson* ...................................................................17

      B.      Missouri Supreme Court Rule 30.30(f) Does Not Invalidate Montgomery's Scheduled Execution Date .....................................................................................18

            1.      Rule 30.30(f) Does Not Effectuate Death .................................................19

            2.      Rule 30.30(f) Governs the Internal Operations of State Government ........................................................................................................23

3.      Rule 30.30(f)'s Limitation on the Number of Executions Is Inapplicable on its Own Terms ....................................................................25

II.      Montgomery Is Not Entitled to Equitable Relief .............................................26

     A.      Montgomery's Request to Vacate Her Execution Date Is Properly Characterized as a Request for Injunctive Relief....................................26

     B.      Montgomery Cannot Satisfy the Standards for Injunctive Relief.........29

     C.      Montgomery Cannot Satisfy the Standard for Vacatur..........................33

CONCLUSION.....................................................................................................................34

CERTIFICATE OF SERVICE .............................................................................................36

# AUTHORITIES

**Page(s)**

## Cases

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649 (D.C. Cir. 2019) ......................34

*Barr v. Lee*, 140 S. Ct. 2590 (2020)...............................................................................................32

*Baze v. Rees*, 553 U.S. 35 (2008)..................................................................................3, 32, 33

*Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) ....................................................................17

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ..............................................................................32

*Bureau of Prisons' Execution Protocol Cases*, 19-mc-145, 2020 WL 5604293
 (D.D.C. Sept. 20, 2020) ...........................................................................................................25

*Calderon v. Thompson*, 523 U.S. 538 (1998) .......................................................................3, 33

*Glossip v. Gross*, 576 U.S. 863 (2015) ................................................................................31, 32

*Hill v. McDonough*, 547 U.S. 573 (2006).....................................................................................11

*Holt v. Hobbs*, 574 U.S. 352 (2015) .............................................................................................10

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123
 (D.C. Cir. 2020) ........................................................................................................4, 28, 29

*In re Fed. Bureau of Prisons' Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) ..........19, 20, 21, 22

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
 No. 20-5361 (D.C. Cir. Dec. 10, 2020) .....................................................................20-22, 29-30

*Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*,
 389 U.S. 64 (1967)....................................................................................................................27

*Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112 (D.C. Cir. 2010) ...................33

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .........................................................................................9

*Klayman v. Kollar-Kotelly*, 12-5340, 2013 WL 2395909 (D.C. Cir. 2013) .................................12

*LeCroy v. United States*, 975 F.3d 1192 (11th Cir. 2020), *cert. denied*, 20-5767 (20A52),
 2020 WL 5640389 (U.S. Sept. 22, 2020) ................................................5, 8, 11, 19, 23, 28

*Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145,
   2020 WL 7186766 (D.D.C. Dec. 6, 2020)..........................................................................30

*Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020)..................................................15, 16

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)...............................................4

*Montgomery v. Barr*, No. 20-cv-01281, 2020 WL 7353711 (N.D. Tex. Dec. 15, 2020) ..............10

*Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020)...................................................11

*Montgomery v. United States*, 565 U.S. 1263 (2012) .....................................................11

*Nelson v. Campbell*, 541 U.S. 637 (2004) ..............................................................11, 12

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................11, 12, 13, 26, 27

*PDK Labs., Inc. v. DEA*, 362 F.3d 786 (D.C. Cir. 2004)......................................................33

*Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020), *stay denied*, 20A6, 2020 WL 3964236
   (U.S. July 14, 2020) ....................................................................5, 6, 19, 22, 23

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020)........................................................12

*Barr v. Roane*, 140 S. Ct. 353 (2019). ..............................................................24

*Shinseki v. Sanders*, 556 U.S. 396 (2009)........................................................................33

*Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987)...........................................................11, 14

*Smith v. State*, 145 So. 2d 688 (Miss. 1962) .............................................................11, 15

*State v. Joubert*, 518 N.W.2d 887 (Neb. 1994)......................................................11, 14, 15

*Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618 (D.C. Cir. 2000) ............................6

*Turner v. Safley*, 482 U.S. 78 (1987) ..............................................................10

*U.S. Food & Drug Admin.*, 760 F.3d 151 (2d Cir. 2014) ..............................................8

*United States v. Kelly*, 504 Fed. Appx. 85 (3d Cir. 2012) ..............................................12

*United States v. Mitchell*, 971 F.3d 993 (9th Cir. 2020)......................................................19, 22

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011)....................................................32

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020), *cert. denied*, 20-5766 (20A49),
　　2020 WL 5667626 (U.S. Sept. 24, 2020) ................................................19, 22, 23, 30, 31

*Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982)....................................................26

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................29

## Statutes

5 U.S.C. § 702 .................................................................................................................29

5 U.S.C. § 703 .................................................................................................................29

5 U.S.C. § 706 .................................................................................................................33

18 U.S.C. § 3596 ...........................................................................................18, 19, 20, 23

28 U.S.C. § 2241 .............................................................................................................17

28 U.S.C. § 2251 .................................................................................................12, 13, 14

28 U.S.C. § 2254 .....................................................................................................11, 12

28 U.S.C. § 2255 .....................................................................................................12, 16

Ga. Code Ann. § 17-10-40(a) ........................................................................................25

## Rules

Fed. R. App. P. 28...........................................................................................................18

Fed. R. Civ. P. 60 ...........................................................................................................15

Missouri Supreme Court Rule 30.30(f) .................................................2, 18, 25, 26

## Regulations

28 C.F.R. § 26.3 .........................................................................................1, 4, 5, 6, 9, 10

28 C.F.R. § 26.4 ...............................................................................................1, 4, 17, 31

**Other Authorities**

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull.  (2019-2020) ...........28

Per Curiam Order, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56 .............17

Ltr. of the United States, *Bourgeois v. Watson*, No. 20-1891
(7th Cir. Nov. 20, 2020), Dkt. 54 ............................................................................ 9, 17-18

Ltr. of Plaintiff, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55 ...............18

Order, *Bourgeois v. Watson*, No. 19-cv-392 (S.D. Ind. Dec. 3, 2020), Dkt. 37 ...........................18

Motion of Lezmond Mitchell, *Mitchell v. United States*,
No. 18-17031 (9th Cir. Nov. 29, 2018), Dkt. 3. ...............................................................15

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. April 25, 2019), Dkt. 10-1 .................15

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26 ........................15

Ltr. of the United States, *Mitchell v. United States*, No. 18-17031
(9th Cir. July 29, 2020), Dkt. 47 ...................................................................................9, 16

Motion of Plaintiff, *Mitchell v. United States*, No. 18-17031
(9th Cir. July 30, 2020), Dkt. 48 ......................................................................................16

Response of the United States, *Mitchell v. United States*, No. 18-17031
(9th Cir. Aug. 3, 2020), Dkt. 49 ....................................................................................9, 16

Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52. ...............2, 16

Mandate, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55 .................17

Brief for the United States *O'Keefe v. Barr*, Nos. 20A11, 20-23,
2020 WL 4015846 (U.S. July 2020) ................................................................................10

## INTRODUCTION

This Court should deny summary judgment. Having abandoned all pretense of seeking delay on the ground that it will facilitate preparation of her clemency petition, Montgomery now seeks delay for its own sake based on alleged procedural violations, some of which she could have raised months ago. On the basis of those alleged violations, she seeks to nearly double the length of the Court's prior injunction, asking this Court to further enjoin Defendants from executing her any earlier than January 21, 2021. Montgomery's claims are both meritless and fail to satisfy the exacting standards for injunctive relief.

First, Montgomery's claims fail on the merits across the board. Defendants fully complied with federal regulations when, on November 23, 2020, they rescheduled Montgomery's execution for January 12, 2021. The regulations cited by Montgomery state that "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." 28 C.F.R. § 26.3. That language places a *duty* on the Director of the BOP to act promptly to reschedule an execution when a stay is lifted and does not limit his *authority* to act prior to that point. And because the Director designated a new date for execution before the initial date of December 8, 2020, had passed, "the date designated for execution" has not "passe[d] by reason of a stay of execution." Montgomery effectively asks the Court to rewrite the regulation to prohibit the Director from setting a new date until a stay of execution or injunction is lifted, but the regulation simply does not say that. The purpose of the regulation is to ensure that stays do not produce undue delay in the rescheduling of executions. Montgomery reads it to have precisely the opposite effect, requiring additional delay for no purpose other than delay itself.

The government's scheduling of Montgomery's execution is consistent with past practice. Earlier this year, two other death-row prisoners each received a notice designating a new execution date, even though a stay of execution was in place on the day the prisoner received notice. Although one prisoner explicitly contested the government's authority to act to schedule an execution date while a stay of execution was in effect, a court of appeals declined relief. Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 51. Both capital sentences were carried out within ten days of the expiration of a court-ordered stay of execution.

Nor did Defendants violate the Federal Death Penalty Act (FDPA) by failing to comply with Missouri Supreme Court Rule 30.30(f), which requires the Missouri Supreme Court to afford 90 days' notice prior to an execution and prohibits the state department of corrections from being required to execute more than one death warrant in a single month. Four circuit courts have concluded that the FDPA incorporates only those state rules that "effectuate death," and Rule 30.30(f) is a mere scheduling rule that does not effectuate death. In addition, the FDPA does not incorporate state rules that govern internal state organization. Rule 30.30(f) is such a rule: it operates to define the role of various state institutions and their interaction with each other. Attempting to translate that rule to the federal context—such as by requiring the Supreme Court to consult with the BOP in scheduling federal executions—would be nonsensical.

Second, Montgomery cannot satisfy the requirements for equitable relief. Montgomery seeks to bar Defendants from executing her on January 12. Regardless of what she calls it, that is a request for an injunction, and she must accordingly satisfy the stringent requirements for permanent injunctive relief. Montgomery cannot show irreparable harm. Even assuming the scheduling notice was technically deficient in some respect, that does not rise to the level of irreparable harm, given that Montgomery has been under a death sentence for 15 years and

received more than 50 days' notice of each of her execution dates. The equities also weigh against granting equitable relief. The public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citation omitted), by "carrying out a sentence of death in a timely manner," *Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality opinion). Montgomery's ever-evolving procedural challenges do not support additional delay of justice for her heinous crime.

This Court should deny Montgomery's motion for partial summary judgment and to vacate her execution date.

## BACKGROUND

On December 9, Montgomery filed a supplemental complaint. Dkt. 29 & Minute Order (Dec. 11, 2020). The supplemental complaint raises two claims: (1) a claim under the Administrative Procedure Act (APA) asserting that the Director lacks the legal authority to designate a new execution date until January 1, 2021, based on the same interpretation of the relevant regulations as Montgomery's motion to clarify or modify the preliminary injnction; and (2) an APA claim asserting that the FDPA incorporates a state-law rule requiring at least 90 days' notice in the scheduling of executions and limiting the number of executions that the executive may be required to perform in a particular month. Dkts. 28-29.

## STANDARD

Montgomery seeks to prevent Defendants from executing her on January 12, 2021 by vacating her execution date. Dkts. 35 & 35-3. And she seeks to bar Defendants from setting a new date for her execution until January 1, 2021. Dkts. 35 & 35-3. Although Montgomery purports to request only vacatur, her requested relief is properly characterized as a motion for permanent injunction. Montgomery does not merely ask the Court to set aside a notice; she asks the Court to

stop Defendants from executing her on January 12. "Success on an APA claim does not automatically entitle the prevailing party to a permanent injunction." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020). "Instead, the party must demonstrate that (i) 'it has suffered an irreparable injury,' (ii) 'remedies available at law . . . are inadequate to compensate for that injury,' (iii) the balance of hardships weighs in favor of an injunction, and (iv) 'the public interest would not be disserved by a permanent injunction.' " *Id.* (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010)).

**I.    Montgomery Does Not Succeed on the Merits**

  **A.    Defendants Did Not Violate Applicable Regulations by Rescheduling Montgomery's Execution[1]**

    **1.    Defendants Fully Complied with 28 C.F.R. §§ 26.3 and 26.4 in Rescheduling Montgomery's Execution on November 23 for January 12**

Montgomery does not establish success on the merits of her claim. Montgomery contends that Defendants violated 28 C.F.R. § 26.3(a)(1) by scheduling her execution before this Court's injunction expired. Dkt. 35 at 4. She maintains that Defendants cannot schedule a new date until January 1, 2021, and that she is entitled to 20 days' notice under 28 C.F.R. § 26.4(a)(1), meaning that in her view her execution cannot occur until January 21.[2] Dkt. 35 at 11. Montgomery, however, misinterprets the plain text of the regulations in two distinct respects, and her reading would vitiate the regulations' purpose as well. Defendants fully complied with the letter and spirit

---

[1] Because Montgomery essentially repeats in her summary judgment motion the regulatory argument she made in her Motion to Clarify or Modify, Dkt. 28 at 6-8, Defendants repeat in large measure their response to those arguments under this heading.

[2] Montgomery errs even in this calculation. Her suggestion that the Court's order prohibits the Government from acting on December 31, 2020, misreads the order, which states that Defendants "are enjoined from executing Plaintiff Lisa Marie Montgomery *before* December 31, 2020." Dkt. 20 at 1 (emphasis added).

of the regulations when, on November 23, they designated January 12 as the date when Montgomery's capital sentence will be carried out.

> ### a. Section 26.3(a)(1) Requires the Director of the BOP to Designate a New Execution Date after Expiration of a Stay, but It Does Not Prohibit Him from Doing so Sooner

"The applicable regulations delegate broad discretion to the BOP Director to set execution dates[.]" *Peterson v. Barr*, 965 F.3d 549, 552 (7th Cir. 2020); *see also LeCroy v. United States*, 975 F.3d 1192, 1195 (11th Cir. 2020) ("The Code of Federal Regulations vests the Bureau Director with broad authority and discretion to set execution dates as an initial matter[.]"), *cert. denied*, 20-5767 (20A52), 2020 WL 5640389 (U.S. Sept. 22, 2020). Specifically, § 26.3(a)(1) provides that the Director of the BOP shall set an execution date "no sooner than 60 days from the entry of the judgment of death," and that "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director . . . when the stay is lifted." Section 26.4(a)(1) provides in relevant part that "[t]he Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance . . . ." The constraints imposed by §§ 26.3(a)(1) and 26.4(a)(1) are "minimal": "the 60-day post-judgment waiting period and the 20-day notice to the prisoner[.]" *Peterson*, 965 F.3d at 552. "[I]f the BOP observes the minimal requirements in the regulations—as it did here—then it has the unconstrained discretion to choose a date for the execution." *Id.* at 552-53.

Even setting aside the fact that 28 C.F.R. § 26.3(a)(1) uses the term "stay" rather than "injunction," Defendants fully complied with § 26.3(a)(1). Montgomery interprets that regulation to require additional delay, but in fact it is designed to achieve precisely the opposite effect—by ensuring that a stay does not produce undue delay in the rescheduling of an execution. Two aspects of the text reflect this purpose and refute Montgomery's contrary reading. First, the text imposes

a *duty* on the Director of the BOP to "promptly" designate a new execution date "[i]f the date designated for execution passes by reason of a stay of execution." The provision does not, however, in any way *prohibit* the Director from designating a new date before a stay expires. In other words, the regulation is mandatory but not prohibitory. *Cf. Peterson*, 965 F.3d at 553 (explaining that § 26.4(c) "is a limitation on, not an entitlement to, witness attendance").

Second, the text provides that the Warden shall promptly designate a new date "*[i]f* the date designated for execution passes by reason of a stay of execution." 28 C.F.R. § 26.3(a)(1). Here, the Director of the BOP designated a new date on November 23, over two weeks *before* the original December 8 execution date passed. Once the Director designated January 12 as the new execution date, December 8 was no longer "the date designated for execution." There can only be one date designated for execution at any particular time. The regulation refers to the active designated date, not superseded dates. Because the date designated for execution did not pass and has not passed, the mandatory effect of the regulation—or, alternatively, the prohibitory effect that Montgomery posits—was never triggered.[3]

Read as a whole, the regulation makes perfect sense as a mechanism for ensuring that stays do not produce undue delay in the scheduling of executions. *See Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618, 625 (D.C. Cir. 2000) (indicating that regulations should be interpreted consistently with their purpose and text). If the date scheduled for an execution passes as a result of a stay, the regulation requires the Director promptly to designate a new date upon expiration of the stay. The regulation sensibly does not *require* the Director to designate a new date before the

---

[3] Defendants also complied with § 26.4(a)(1), which requires 20 days' notice of an execution date in certain circumstances. On November 23, 2020, the Warden of FCC Terre Haute notified Montgomery via letter that her execution date had been rescheduled for January 12, 2021, far more than 20 days in advance. *See* AR 179.

stay terminates, because there may be circumstances—particularly if the stay is indefinite—when doing so would not be practicable. But neither does it *prohibit* him from doing so. In circumstances like this one, where the injunction has a definite endpoint, advance scheduling benefits the government, the public, the victim's family, and even the prisoner by providing her with the maximum possible notice of the new date. And if the Director proactively reschedules the execution before the designated date passes, the regulation has nothing to say because its purpose has already been fulfilled.

### b.    Montgomery's Counterarguments Lack Merit

Montgomery asks the Court to essentially rewrite the regulation to, in her words, "*prohibit* BOP from setting a new execution date *until* 'the stay [of execution] is lifted.'" Dkt. 35 at 4 (emphasis added). For the reasons explained above, that interpretation cannot be squared with two independent features of the text, both of which Montgomery fails to address.

Montgomery's interpretation is not only a rewriting of the text, it is also inconsistent with the purpose of ensuring that executions are rescheduled promptly when a stay interferes with the original date. She has no explanation as to what purpose could be served by preventing the Director from rescheduling an execution during the pendency of an injunction with a definite endpoint, as in this case, thus providing clarity to all parties involved.

Moreover, under Montgomery's interpretation, any time an execution date is postponed 20 days or more by reason of a stay, an additional delay of at least 20 days must be gratuitously tacked on after the stay is lifted. *See* § 26.4(a)(1). Under this view, a court enjoining an execution must plan ahead to lift any stay at least 20 days before the date the court intends to allow the execution to proceed. If a court did not so plan, it would necessarily misbalance the injunctive relief factors any time it intended only to enjoin an execution, rather than also enjoin the scheduling of an

execution, thereby frustrating the public's interest in seeing death sentences timely carried out following the lifting of a stay. Montgomery suggests no reason, much less a good one, that an execution must be delayed by an additional 20 days every time a prior execution date has been postponed by at least 20 days and a stay is lifted.

Montgomery's reliance on *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 159-61 (2d Cir. 2014), is misplaced; that case does not support her interpretation of the regulation. Dkt. 35 at 3. The question in that case concerned the timing of when the Secretary of Health and Human Services was statutorily required to hold a hearing to consider whether prior approval of a new animal drug should be withdrawn. *See Nat. Res. Def. Council, Inc.*, 760 F.3d at 157-58. The Second Circuit noted that "Congress expressly provided that withdrawal of approval is required (indeed such withdrawal is authorized) only after a hearing is held and a finding is made." *Id.* at 160. Another portion of the statute at issue provided for emergency withdrawal of approval without a hearing. *Id.* at 162. This case, by contrast, involves an unrelated regulation that requires the agency to take a particular action promptly after a date certain, but by its terms does not disable the agency from taking the same action more expeditiously.

Finally, the fact that the regulations "sensibly recognize—as they must—a court's authority to stay or enjoin a scheduled execution," *LeCroy*, 975 F.3d at 1196, in no way suggests that the Director of the BOP lacks power to schedule an execution while a stay or injunction is in place, as Montgomery suggests. Dkt. 35 at 6. The Director obviously cannot schedule an execution to take place while a stay is in effect, and once a stay is lifted, the regulations require him to promptly schedule a new execution date. But neither of these strictures affect his discretion to designate, while a stay or injunction is in place, an execution date to occur after the stay or injunction is lifted.

c.      **Defendants' Interpretation of the Regulation Is Entitled to Deference**

At the very least, Defendants' interpretation of § 26.3(a)(1) is reasonable. Thus, if the Court determines that the regulation is genuinely ambiguous, Defendants' interpretation should be afforded controlling weight. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019). The relevant regulatory interpretation has been made by Defendants. AR 173-74 (Notice of Rescheduling). It is plainly Defendants' official position, as demonstrated by the scheduling of executions for Montgomery, Mitchell, and Bourgeois while a stay or injunction was in effect, and numerous legal filings addressing the issue, including this brief. *See supra*; *see also*, *e.g.*, Ltr. at 2, *Mitchell v. United States*, No. 18-17031 (9th Cir. July 29, 2020), Dkt. 47 (asserting the government could schedule Mitchell's execution for a time when the stay should no longer be in place); Response at 2, *Mitchell*, No. 18-17031 (9th Cir. Aug. 3, 2020), Dkt. 49 (arguing that the "order stayed 'the execution'; it did not stay the scheduling of a new execution date at a time after the Court's stay should no longer be in place"); Ltr. at 2, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 54 (noting "the government's position that implementation of a lawful sentence postponed by a stay should be rescheduled as promptly as possible"). Both this brief and other filings in this case, *Mitchell*, and *Bourgeois* confirm the reasoning of the BOP Director, given that there are no notice or reliance concerns in a regulation that governs Defendants' conduct— imposing a duty to promptly set execution dates—rather than the conduct of private parties. 28 C.F.R. § 26.3(a)(1).

Moreover, the scheduling of executions is obviously an area of Defendants' substantive expertise. Defendants operate the relevant correctional institutions, schedule executions, and manage execution logistics, including the team of individuals required to conduct an execution. *See* AR 112-65. Defendants also have a full-frame view of the quantity and type of individuals

with federal capital sentences who are awaiting execution. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (noting that "[p]rison officials are experts in running prisons"); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (observing that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources"); *Montgomery v. Barr*, No. 20-cv-01281, 2020 WL 7353711, at *11, *13 (N.D. Tex. Dec. 15, 2020) (noting that "Defendants' evidence shows that BOP conducted multiple successful executions at FCC Terre Haute in recent months" and that FCC Terre Haute "staff have a demonstrated record of successfully conducting executions employing the lethal injunction protocol expressly approved by the Supreme Court").

Montgomery mistakenly asserts that the Government's prior written interpretations of § 26.3(a)(1) are in conflict with Defendants' position in this case. Dkt. 35 at 8. There is no conflict or inconsistency. The 2004, 2019, and 2020 Execution Protocols simply restate the regulation nearly verbatim and say that "[i]f the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted." AR 8, 64, 119. The Government's brief that Montgomery cites merely observed that "once the stay was lifted, BOP promptly rescheduled the executions, consistent with the applicable regulation. *See* 28 C.F.R. 26.3(a)(1)." Brief for the United States at 21, *O'Keefe v. Barr*, Nos. 20A11, 20-23, 2020 WL 4015846 (U.S. July 2020). These statements do not indicate or imply that the Government has ever interpreted § 26.3(a)(1) as prohibiting the BOP from designating a new execution date while a stay is in place. Indeed, it has done precisely that on at least two prior occasions.

## 2. The Court's Injunction Does Not Inherently Prohibit All Government Action Relating to Montgomery's Execution

Contrary to Montgomery's argument, the Court's injunction did not by its nature operate as a stay depriving Defendants of all authority to take any preparatory actions with respect to Montgomery's execution while the injunction is in effect. Montgomery suggests that the Court's

injunction "temporarily suspend[s] the source of authority to act" and "set[s] aside . . . the source of the Government's authority." Dkt. 35 at 6 (quoting *Nken v. Holder*, 556 U.S. 418, 428-29 (2009)). Montgomery misreads *Nken* and its application to the Court's order in two respects.

*First*, the two quoted portions of *Nken* refer to stays, rather than injunctions. "[A]n injunction is a judicial process or mandate operating *in personam*." 556 U.S. at 428 (quotation omitted). "By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself." *Id.* "[A] stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id.* Courts that review the judgments of other courts, either on appeal or on collateral review, frequently issue "stays" of the judgment under review to permit time to consider the issues presented.

The cases Montgomery cites in her Motion for Partial Summary Judgment, Dkt. 35 at 14, are of this kind.[4] All involved stays that originated in courts with the authority to grant relief from the judgment under review—something that Montgomery has not sought and this Court could not grant. Where a collateral attack, if successful, would necessarily invalidate a conviction or sentence, that claim must proceed in habeas. *Nelson v. Campbell*, 541 U.S. 637, 643-44, 646-47 (2004); *Hill v. McDonough*, 547 U.S. 573, 579-83 (2006). For a federal prisoner like Montgomery, that means she may collaterally attack her conviction or sentence only in the district of conviction

---

[4] *Smith v. Armontrout*, 825 F.2d 182, 184 (8th Cir. 1987), and *State v. Joubert*, 518 N.W.2d 887, 890-91 (Neb. 1994), involved stays issued to review habeas petitions under 28 U.S.C. § 2254. *Smith v. State*, 145 So. 2d 688, 690 (Miss. 1962), involved a stay issued by a Justice of the Supreme Court pending certiorari review directly from the state supreme court. Here, the United States Supreme Court refused certiorari from Montgomery's direct appeal and her petition under § 2255. *Montgomery v. United States*, 565 U.S. 1263 (2012); *Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020). The discussion in *LeCroy v. United States*, 975 F.3d 1192, 1196 (11th Cir. 2020), arose in an appeal from an order of the sentencing court.

under 28 U.S.C. § 2255 or, when § 2255 is "inadequate or ineffective," in the district of confinement under § 2241. *See generally Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020), *cert. denied*, 20-26 (20A12), 2020 WL 4006838 (U.S. July 16, 2020).

Unlike this suit, habeas operates on the underlying judgment of conviction by permitting a court to declare that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Nelson*, 541 U.S. at 646-47. And because habeas effectively authorizes a federal district court to sit in review of the underlying state conviction, federal law further permits a district court reviewing a state judgment under § 2254 to "stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas proceeding" and provides that "[a]fter the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. 28 U.S.C. § 2251(a), (b). Such a stay is akin to a stay pending appeal: it "operates upon the judicial proceeding itself." *Nken*, 556 U.S. at 428.

Here, in contrast, this Court is not reviewing—and cannot review—the judgment of Montgomery's federal sentencing court. *See* 28 U.S.C. § 2255(a); *United States v. Kelly*, 504 Fed. Appx. 85, 87 (3d Cir. 2012) (unpublished per curiam) ("The District Court lacked jurisdiction to review the decision of another federal district court."); *Klayman v. Kollar-Kotelly*, 12-5340, 2013 WL 2395909, at *1 (D.C. Cir. 2013) (per curiam) ("[T]his court has concluded that one district court does not have jurisdiction to review the decisions of another district court or federal appellate court . . . .").

Furthermore, no federal statute grants this Court the stay authority that § 2251 grants to a federal district court reviewing a state judgment under § 2254. Because this Court does not sit in review of the criminal judgment, its injunction did not "return[] to the status quo—the state of

affairs before" the criminal judgment was entered. *Nken*, 556 U.S. at 429. Montgomery is not seeking to "set[] aside" the source of the government's authority to execute her, temporarily or permanently. *Cf. id.* at 429. The judgment issued by the Western District of Missouri—which has been consistently and repeatedly affirmed by courts that have jurisdiction to do so—remains in place, and Defendants may prepare to execute it when this Court's injunction expires of its own accord.

The terms of this Court's order confirm that the order in this case is an injunction, not a stay. The Court did not purport to set aside the underlying judgment, thereby depriving Defendants of "authority to act," Dkt. 35 at 6, but rather expressly "enjoined" Defendants "from executing Plaintiff Lisa Marie Montgomery before December 31, 2020," Dkt. 20. The Court enjoined one action—Montgomery's execution—and nothing else. This Court should reject Montgomery's misapplication of *Nken* and conclude that its injunction did not inherently set aside the underlying criminal judgment.

*Second*, even if this Court's order operated as "a stay," depriving the underlying criminal judgment of effect during its pendency, it would not deprive Defendants of their inherent authority to announce future plans to execute the judgment on the presumption that "the stay" will lift before the planned date, nor would it deprive Defendants of the inherent authority to take other preparatory steps that have no impact on Montgomery's rights. This is especially true here, where the Court's order ends by its own accord on a definite date known to all parties.

Montgomery cites three nonbinding cases to support her position that a stay would automatically bar the setting of an execution date, but none of the cases stands for that proposition. Two of the cases implicated the expansive stay provision of 28 U.S.C. § 2251, which is irrelevant

to this case, and the third occurred in the very different procedural posture of a state prisoner's proceedings on direct review.

*Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987), differs from this case in important respects. There, the district court granted a stay of execution of indefinite duration pending review of the state prisoner's first habeas petition, and the preparations involved moving the inmate to a special holding area shortly after filing a motion to vacate a stay, with the intent to execute him within hours thereafter. *Id.* at 183-84. Additionally, the Eighth Circuit did not purport to announce a categorical rule that no preparations may be undertaken or dates set while a stay of execution is pending; it rather "disapprove[d]" of moving the prisoner to the special holding area and conducting additional related "preparations." *Id.* at 184. Those activities are a far cry from simply designating an execution date after a stay is set to expire.

Additionally, although not explicitly discussed in the opinion, the Eighth Circuit issued its ruling against the backdrop of 28 U.S.C. § 2251 (1948), which at the time provided that after a federal judge presiding over a habeas corpus proceeding granted a stay of state court proceedings, "any such proceedings in any State court or by or under the authority of any State shall be void." Here, however, no analogous statute applies.

In *State v. Joubert*, the Nebraska Attorney General asked the Nebraska Supreme Court to set an execution date, notwithstanding that a federal district court had "entered an order staying execution of the sentence pending resolution of [a habeas] petition." 518 N.W. 2d 887, 890-91 (Neb. 1994) (per curiam) (cleaned up and quotation omitted). The Court refused, explaining that under § 2251, "once a federal stay has been granted in a habeas corpus action, any proceeding in any state court or by or under any state authority shall be void." *See id.* at 896. The court reasoned that "[t]he setting of execution dates in anticipation of the termination of a stay clearly constitutes

preparation for the carrying out of an execution, in violation of federal law." *Id.* at 898. In contrast, no statute precludes the Director of the BOP from designating a new execution date or making other preparations for Montgomery's execution.

In *Smith v. State*, on direct review of a criminal conviction, the Mississippi Supreme Court declined to set a new execution date after Justice Hugo Black signed an order "staying the execution of the death sentence pending the action of the Supreme Court upon the [prisoner's] petition for certiorari." 145 So. 2d 688, 690 (Miss. 1962). The Mississippi Supreme Court summarily concluded that "[t]he stay of execution thus granted precludes affirmative action by this Court at this time upon the motion filed by the State asking that a new date be set for the execution of the death sentence." *Id.* There, the stay was of indefinite duration pending direct review. In contrast, Montgomery has exhausted all her appellate rights on direct review (and initial collateral attack), and this Court's injunction is set to expire on a date certain.

### 3.   Courts Have Rejected Challenges to the Rescheduling of Executions While a Stay was Pending.

Contrary to Montgomery's claims, Defendants' rescheduling of her execution is unexceptional and consistent with past practice. On at least two prior occasions, Defendants have rescheduled executions notwithstanding that courts had stayed the executions at the time of the rescheduling. In both cases, the execution was permitted to proceed as scheduled, and in one instance, the court of appeals rejected an express challenge to the rescheduling as violative of the stay.

#### a.   *Mitchell v. United States*

In March 2018, Lezmond Mitchell filed a motion in Arizona federal district court to re-open his § 2255 proceedings pursuant to Federal Rule of Civil Procedure 60(b)(6). *Mitchell v. United States*, 958 F.3d 775, 783 (9th Cir. 2020), *cert. denied*, 20-5398 (20A30), 2020 WL

5016765 (U.S. Aug. 25, 2020). Mitchell claimed that he was erroneously denied the opportunity to interview the jurors in his case and that the error prevented him from presenting a fully investigated § 2255 motion. *Id.* The district court declined to grant the motion. *See id*.

In November 2018, Mitchell moved the Ninth Circuit for a certificate of appealability. Motion, *Mitchell v. United States*, No. 18-17031 (9th Cir. Nov. 29, 2018), Dkt. 3. The Ninth Circuit granted a certificate of appealability in April 2019. Order, *Mitchell*, No. 18-17031 (9th Cir. April 25, 2019), Dkt. 10. Notwithstanding the Ninth Circuit's grant of a certificate of appealability, on June 25, 2019, the BOP set Mitchell's execution for December 11, 2019. Order at 3 (Ikuta, J., dissenting), *Mitchell*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26.

The Ninth Circuit stayed Mitchell's execution pending appeal on October 4, 2019. Order at 1, *Mitchell*, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. 26. On April 30, 2020, the Ninth Circuit affirmed the district court's denial of Mitchell's Rule 60(b) motion. *Mitchell*, 958 F.3d at 791-92. However, due to extensive post-opinion motion practice, the Ninth Circuit did not issue its mandate until August 18, 2020. *See* Mandate, *Mitchell*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55.

Before the mandate issued—and while Mitchell's execution was stayed—the BOP rescheduled Mitchell's execution for August 26, 2020. Ltr., *Mitchell*, No. 18-17031 (9th Cir. July 29, 2020), Dkt. 47. Mitchell immediately contested the BOP's authority to schedule an execution. Mitchell filed a motion to enforce the stay of his execution and strike his August 26, 2020 execution date. Motion, *Mitchell*, No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48. He argued the government's action violated the Ninth Circuit's stay of execution, *id.* at 6, and, alternatively, sought clarification or modification of the stay order to prohibit the government from setting an execution date until the mandate issued. *Id.* at 7-8. He also argued, *id.* at 1-2, that the twenty-day

16

notice period under 28 C.F.R. § 26.4 should not include time during which his execution was stayed. The government opposed, noting that the "order stayed 'the execution'; it did not stay the scheduling of a new execution date at a time after the Court's stay should no longer be in place." Response at 9, *Mitchell*, No. 18-17031 (9th Cir. Aug. 3, 2020), Dkt. 49. The Ninth Circuit denied Mitchell's motion without comment. Order, *Mitchell*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52. Mitchell was executed on the scheduled date of August 26, 2020,[5] eight days after the Ninth Circuit's stay ended. *See* Mandate, *Mitchell*, No. 18-17031 (9th Cir. Aug. 18, 2020), Dkt. 55.

### b.    *Bourgeois v. Watson*

In July 2019, the government set Alfred Bourgeois's execution for January 13, 2020. *Bourgeois v. Watson*, 977 F.3d 620, 627 n.2 (7th Cir. 2020), *cert. denied*, No. 20A104, 2020 WL 7296816 (U.S. Dec. 11, 2020). The next month, "Bourgeois filed a habeas corpus petition under 28 U.S.C. § 2241 in the Southern District of Indiana. He also moved to stay his execution." *Id.* at 627. "Bourgeois argued that he was intellectually disabled, and that his death sentence ran afoul of *Atkins* [*v. Virginia*] and the FDPA." *Id.* In March 2020, the district court found that Bourgeois made a strong showing of intellectual disability and granted his motion for a stay. *Id.* at 628.

On October 6, 2020, the Seventh Circuit issued an opinion reversing the district court's decision that Bourgeois was likely to succeed on the merits and remanding the case with instructions for the district court to deny Bourgeois's motion for a stay and dismiss his habeas petition. *Id.* at 639. The government requested that the Seventh Circuit issue its mandate immediately, but the panel declined. *Id.* Instead, like in *Mitchell*, extensive post-opinion motion

---

[5]    Bureau of Prisons – Federal Executions, https://www.bop.gov/about/history/federal_executions.jsp.

practice delayed the mandate. *See* Per Curiam Order, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56.

Before the mandate issued—and while Bourgeois's execution was stayed—the BOP rescheduled Bourgeois's execution for December 11, 2020. Ltr. at 2, *Bourgeois*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 54. After the government's notice of execution was docketed, Bourgeois immediately filed a Fed. R. App. P. 28(j) letter informing the Seventh Circuit that the government scheduled the execution "notwithstanding the continuing validity of the stay of execution entered by the District Court on March 10, 2020 . . . ." Ltr., *Bourgeois*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55. The Seventh Circuit denied rehearing en banc and issued its mandate on December 1, 2020. Per Curiam Order, *Bourgeois*, No. 20-1891 (7th Cir. Dec. 1, 2020), Dkt. 56. The district court vacated its stay two days later, on December 3. Order, *Bourgeois v. Watson*, No. 2:19-cv-392 (S.D. Ind. Dec. 3, 2020), Dkt. 37. Bourgeois was executed as scheduled on December 11, 2020, eight days after the stay of his execution terminated.[6]

### B. Missouri Supreme Court Rule 30.30(f) Does Not Invalidate Montgomery's Scheduled Execution Date

The FDPA requires that the United States Marshal "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Montgomery argues that the FDPA incorporates Missouri Supreme Court Rule 30.30(f), which provides that the Missouri Supreme "Court shall set dates of execution after consultation with the director of the department of corrections," and "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered."

---

[6] Bureau of Prisons – Federal Executions, https://www.bop.gov/resources/federal_executions_info.jsp.

The Rule further states that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month."

Montgomery is mistaken. Rule 30.30(f) does not address a manner of "implement[ing]" a sentence of death, 18 U.S.C. § 3596(a), and is therefore not incorporated via the FDPA, for two independent reasons. First, it does not directly govern the performance of the execution. Second, it regulates the internal operation of the Missouri state government, rather than the performance of executions. And Rule 30.30(f)'s limitation on the number of executions that may be scheduled in a particular month is patently inapplicable on multiple additional grounds.

### 1.     Rule 30.30(f) Does Not Effectuate Death

The phrase "implementation of the sentence in the manner prescribed by [state] law" in § 3596(a) refers at most to "procedures effectuating death." *United States v. Vialva*, 976 F.3d 458, 461-62 (5th Cir. 2020) (per curiam), *cert. denied*, 20-5766 (20A49), 2020 WL 5667626 (U.S. Sept. 24, 2020); *accord Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020), *stay denied*, 20A6, 2020 WL 3964236 (U.S. July 14, 2020); *United States v. Mitchell*, 971 F.3d 993, 996-97 (9th Cir. 2020); *see also LeCroy v. United States*, 975 F.3d 1192, 1198 (11th Cir. 2020), *cert. denied*, 20-5767 (20A52), 2020 WL 5640389 (U.S. Sept. 22, 2020). Procedures effectuating death include only those procedures connected to the execution itself, not pre-execution process requirements.[7] That conclusion is dictated by the plain text of the statute, which makes clear that the FDPA does not incorporate procedures remote in time or space from the actual execution. To "implement" a sentence means to carry it out. *See* Implement, Webster's Third New Int'l Dictionary 1134 (3d ed.

---

[7] Defendants acknowledge the holding in *In re Fed. Bureau of Prisons' Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), that the FDPA's incorporation of state law is not limited to the general method of execution, but preserve their position that "the FDPA regulates only the top-line choice among execution methods such as hanging, electrocution, or lethal injection." *Id.* at 113 (Katsas, J., concurring).

1993) ("to carry out: accomplish, fulfill"); Implementation Plan, Black's Law Dictionary 872 (10th ed. 2014) ("An outline of steps needed to accomplish a particular goal.").

Context reinforces this conclusion: § 3596(a) states that a person sentenced to death must be "committed to the custody of the Attorney General" while any appeal is pending. After that, "[w]hen the sentence is to be implemented," the Attorney General must "release" the prisoner to the United States Marshal, "who shall supervise implementation of the sentence." As Judge Katsas recently concluded, "[t]his language makes clear that the prisoner is transferred to the marshal only '[w]hen the sentence is to be implemented,' and that the 'implementation of the sentence' covers only conduct that follows the transfer. In short, 'implementation' does not include scheduling the execution, but instead presupposes a set time and date." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (Katsas, J., concurring in the denial of reconsideration). The text's reference to "supervis[ion]," 18 U.S.C. § 3596(a), is to the same effect: the Marshal lacks the ability to supervise actions that take place far in advance of the execution, such as scheduling.

The D.C. Circuit's fractured decision in *In re Fed. Bureau of Prisons' Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) ("*Protocol Cases*"), does not suggest a different result. "It addressed what constitutes a 'manner' of execution under the FDPA, not what constitutes its 'implementation.'" *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) (Katsas, J., concurring in the denial of reconsideration). "[T]hat case did not present, and [the court] had no occasion to decide, whether the FDPA extends even to events that precede the release of the prisoner to the marshal." *Id.* Indeed, when the D.C. Circuit recently considered the issue en banc, three judges explicitly concluded that *Protocol Cases* did not demand a conclusion that "implementation" includes the setting of an execution date. *See In*

*re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) (Katsas, J., concurring in the denial of reconsideration). And despite the views of a minority of the en banc panel to the contrary, a *majority* of the en banc panel declined to enter relief on the theory Montgomery here presses regarding an analogous state-law 90-day notice provision, refusing to halt two Texas-based executions, one scheduled with 55 days' notice and the other rescheduled with 21 days' notice. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc).

To be sure, Judge Rao's concurring opinion in *Protocol Cases* notes that "[i]n the death penalty context, the term 'implementation' is commonly used to refer to a range of procedures and safeguards surrounding executions, not just the top-line method of execution." 955 F.3d at 133 (Rao, J., concurring). And in support of that observation, she cited BOP regulations that govern "very minute aspects of executions, including the '[d]ate, time, place, and method.'" *Id.* at 134. But although this discussion provided context that guided Judge Rao's interpretation of whether the "manner" of execution extended beyond the method of execution, nothing in her opinion reflects an intent to settle the meaning of "implementation." To the contrary, Judge Rao observed that a Texas statute governing the timing of executions did "not provide for specific procedures." *See Protocol Cases*, 955 F.3d at 135 n.8 (Rao, J., concurring) (citing Tex. Code Crim. Proc. Ann. art. 43.14).

The separate opinions in *Protocol Cases* confirm that Judge Rao did not intend to answer the question presented here. Judge Katsas did not read the FDPA to encompass state provisions regarding execution timing. *See Protocol Cases*, 955 F.3d at 113-24 (Katsas, J., concurring). Judge Tatel, in dissent, limited his broader reading of § 3596(a) to encompass only state provisions specifying "procedures that effectuate the death," such as "choice of lethal substances, dosages,

vein-access procedures, and medical-personnel requirements," expressly acknowledging "the Attorney General's authority to establish procedures unrelated to" death effectuation. *Id.* at 149, 151 (quotation marks and alterations omitted) (Tatel, J., dissenting). Judge Rao did not suggest that she read "implementation" to reach procedures more distantly related to the execution of a sentence than did Judge Tatel.[8]

The four circuit courts to address this issue after *Protocol Cases* have indicated that § 3596(a)'s incorporation of state procedures is limited to those that effectuate death, and none has read *Protocol Cases* to answer the question presented here in Montgomery's favor. In squarely rejecting an inmate's invocation of Texas's 90-day notice provision, the Fifth Circuit explained that the FDPA is "at least limited to procedures effectuating death and excludes pre-execution process requirements such as date-setting and issuing warrants." *Vialva*, 976 F.3d at 462 (addressing Tex. Code Crim. Proc. art. 43.141). As the court of appeals explained, "[t]he text of the provision explicitly refers to the 'implementation of the sentence' prior to referencing state law," and thus "[t]he text simply does not extend to pre-execution date-setting and warrants." *Id.* Three other courts of appeal have reached similar conclusions. *See Peterson* v. *Barr*, 965 F.3d 549, 554 (7th Cir. 2020) (concluding that § 3596(a) "cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure," noting that the *Protocol Cases* panel's "debate … was limited to state laws, regulations, and protocols governing procedures for effectuating death," and holding that a state law governing execution witnesses falls outside the scope of the FDPA); *United States* v. *Mitchell*, 971 F.3d 993, 996-97 (9th Cir. 2020) (holding that

---

[8] Although Judge Tatel later joined an opinion expressing a broader view of "implementation," *see In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) (Wilkins, J., dissenting), that sheds no light on the meaning of Judge Rao's opinion in *Protocol Cases*.

"procedures that do not effectuate death fall outside the scope of 18 U.S.C. § 3596(a)," which "addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death," such as "choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements") (internal quotation marks omitted); *LeCroy* v. *United States*, 975 F.3d 1192, 1198 (11th Cir. 2020) (explaining that "even the dissenting opinion" from the D.C. Circuit, "which embraced the most capacious reading" of the FDPA, limited § 3596(a) to only death-effectuating procedures, and concluding that § 3596(a) "does not extend to" state provisions regarding attorney attendance at executions).

Here, Rule 30.30(f)'s 90-day scheduling rule does not "effectuate death." Scheduling is remote in both time and space from the actual performance of the execution. The Marshal does not "supervise" scheduling. 18 U.S.C. § 3596(a). As the Fifth Circuit correctly concluded in *Vialva*, the text of § 3596(a) "simply does not extend to pre-execution date-setting and warrants." 976 F.3d 462; *accord Peterson*, 965 F.3d at 554; *LeCroy*, 975 F.3d at 1198. Rule 30.30(f)'s limitation on the number of executions that can be scheduled in a month is even more remote from the process of implementing a sentence of death. At most, it is an attenuated form of scheduling procedure that comes into play only in particular circumstances, prohibiting a state court from requiring the state correctional department to carry out multiple executions in a single month. Montgomery fails to cite any precedent suggesting that a procedural rule of this kind operates to effectuate death.

### 2.      Rule 30.30(f) Governs the Internal Operations of State Government

The FDPA imports state rules prescribing a manner of implementing a sentence of death, not those that organize the internal operations of state government. Indeed, incorporation of the latter in a statute governing *federal* executions would be incoherent. Because Rule 30.30(f)

governs the internal organization and operations of the Missouri state government, it is not incorporated by the FDPA.

The text of the rule reflects its focus on state institutional roles. It provides that the *Missouri Supreme "Court* shall set dates of execution after *consultation with the director of the department of corrections*." (Emphasis added). And it states that "[t]he *department of corrections shall not be required* to execute more than one warrant of execution per month." (Emphasis added). This language prescribes the roles and interaction of different state entities. It establishes certain duties of the Missouri Supreme Court, and it limits that Court's authority by requiring it to consult with the executive agency that conducts executions and prohibiting it from overburdening that agency by providing inadequate notice or by scheduling multiple executions in rapid succession.

Montgomery does not suggest that the FDPA incorporates Rule 30.30(f) directly, such that the Missouri Supreme Court is responsible for scheduling federal executions. And the rule's framework cannot sensibly be translated to the federal level. The Supreme Court—the federal equivalent of the Missouri Supreme Court—does not set the dates of federal executions and does not consult with the BOP in scheduling executions. Indeed, it is unclear whether the Supreme Court even enjoys the constitutional authority to perform these tasks. Incorporating Rule 30.30(f) would at worst be incoherent and at best render it "impossible to carry out executions of prisoners sentenced in some States." *Barr v. Roane*, 140 S. Ct. 353 (2019) (Alito, J., statement respecting the denial of stay or vacatur). Neither alternative is palatable. The FDPA simply cannot be read to incorporate state-level inter-branch coordination rules of this kind.

Tellingly, Montgomery implicitly recognizes this problem by picking and choosing the parts of the Missouri rule she wishes to incorporate. She argues that the 90-day notice provision binds the federal government, but does not suggest that the rule requires the Supreme Court to

schedule executions or consult with the BOP in doing so. But she offers no explanation for why, on her own theory, the FDPA selectively incorporates the state law's rule about when the execution will be scheduled, but not the state law's rule about which officials will schedule the execution. There is no basis in law or logic for Montgomery's preferred gerrymandering. Because the FDPA plainly does not incorporate the rule in its entirety, it does not incorporate the rule at all. It is accordingly unsurprising that two prior Missouri defendants did not raise this argument prior to their executions. *See United States v. Purkey*, Dkt. Nos. 615, 617-21, 4:01-cr-308 (W.D. Mo. July 16, 2020); *United States v. Nelson*, Dkt. Nos. 492-94, 4:99-cr-303 (W.D. Mo. Aug. 28, 2020).[9]

### 3.    Rule 30.30(f)'s Limitation on the Number of Executions Is Inapplicable on its Own Terms

Even apart from the insuperable problems described above, Rule 30.30(f)'s limitation on the number of executions that can be scheduled in a particular month is inapplicable on its own terms. Montgomery claims that the scheduling of her execution violated this rule because two other federal executions are also currently scheduled for January 2021. *See* Dkt. 35 at 10. But neither of those executions is governed by Missouri law.[10] And Rule 30.30(f)'s limitation plainly pertains only to other executions scheduled *under Missouri law*. *See* Mo. Sup. Ct. Rule 30.30(f) ("*The*

---

[9] Another court in this District recently rejected a similar argument. In that case, a federal condemned inmate argued that the FDPA incorporates Georgia Code Ann. § 17-10-40, entitled "Fixing of new time period for execution where original time period has passed." That provision gives the "judge of the superior court of the county where the case was tried[,] . . . the power and authority to pass an order fixing a new time period for the execution of the original sentence," subject to certain minimum and maximum timing requirements. Ga. Code Ann. § 17-10-40(a), (b). Judge Chutkan held that the FDPA does not import the Georgia provision because the latter "sets forth the power afforded to Georgia superior court judges in capital cases carried out by the state of Georgia, not the federal government." *In re Bureau of Prisons' Execution Protocol Cases*, 19-mc-145, 2020 WL 5604293, at *3 (D.D.C. Sept. 20, 2020).

[10]     *See*     https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

*department of corrections* shall not be required to execute more than one warrant of execution per month.") (emphasis added). There is nothing to suggest that Rule 30.30(f) is intended as a limit on the number of executions that may occur nationwide in a single month. The two additional federal executions referenced by Montgomery are therefore irrelevant.

In addition, Montgomery's execution is the *first* execution scheduled for January.[11] Rule 30.30(f) limits the number of executions that may occur in a particular month, not the number that may be scheduled. *See* Mo. Sup. Ct. Rule 30.30(f) (restricting the number of death warrants that the department of corrections is "*required to execute*") (emphasis added). As a result, even assuming Rule 30.30(f) governs all three executions in January, there would be no violation of the rule at the time of Montgomery's execution. And Montgomery lacks standing to challenge purported defects in the planned executions of other prisoners.

## II.      Montgomery Is Not Entitled to Equitable Relief

Montgomery asks the Court to vacate her execution date. Because she seeks to prevent defendants from carrying out her execution on that date, however, her requested relief is properly characterized as an injunction. She cannot satisfy the standards for injunctive relief. And even if vacatur were the appropriate remedy, she cannot satisfy the standard for vacatur, either.

### A.      Montgomery's Request to Vacate Her Execution Date Is Properly Characterized as a Request for Injunctive Relief

Montgomery's request to vacate her execution date is a request for an injunction against the implementation of her lawful capital sentence. An injunction "is a means by which a court tells someone what to do or not to do." *Nken*, 556 U.S. at 428. "When a court employs 'the extraordinary remedy of injunction,' *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982), it directs the

---

[11]      *See*      https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

conduct of a party, and does so with the backing of its full coercive powers. *See* Black's Law Dictionary 784 (6th ed. 1990) (defining 'injunction' as '[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury')." *Nken*, 556 U.S. at 428. Every "equitable decree compelling obedience under the threat of contempt" is an injunction. *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75 (1967).

Montgomery fails to explain how her pleading can reasonably be understood as anything other than a request to enjoin Defendants from executing her on January 12. Montgomery asks the Court to vacate her execution date and bar Defendants from re-noticing her to protect her putative rights under a host of provisions that reference execution dates. Dkt. 35 & 35-3. Montgomery asserts that "because executing [her] on January 12, 2021 is outright prohibited by both federal regulations and the FDPA, Defendants will have to choose a different date on remand." Dkt. 35 at 14; *see* Dkt. 35-3 (proposed order) (requesting an order stating that defendants "are barred from setting a new date for Plaintiff's execution earlier than January 1, 2021"). The requested order would have compulsory effect. Montgomery does not seek merely to set aside a notice or administrative decision. She seeks to stop Defendants from executing her absent compliance with certain conditions. When a court vacates a future execution date, it imposes an affirmative obligation of compliance. If the Court granted Montgomery's motion and Defendants proceeded anyway, Defendants would risk contempt. *See Int'l Longshoremen's Ass'n*, 389 U.S. at 75-76. The injunctive character of the requested relief is confirmed by the fact Montgomery requests the same relief under the heading of an injunction through her parallel motion to clarify or modify this Court's preliminary injunction. Dkt. 28.

Montgomery seeks to evade the stringent standard for injunctive relief by recaptioning her request as one for vacatur. But the D.C. Circuit has already indicated that the standard for injunctive relief governs execution challenges of this kind. In *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d at 126, 137, the court of appeals held that "the 2019 Protocol [should] be set aside to the extent that it permits the use of unprescribed pentobarbital in a manner that violates the Federal Food, Drug, and Cosmetic Act," but "affirm[ed] the district court's denial of a permanent injunction to remedy the FDCA violation" based on a lack of irreparable harm. Critically, the court held that "[s]uccess on an APA claim does not automatically entitle the prevailing party to a permanent injunction" absent satisfaction of the injunctive-relief factors. *Id.* at 137; *see In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 20-5260 (D.C. Cir. Aug. 27, 2020) (similar). And as Judge Chutkan recently found, a "request to vacate [an] execution . . . is a request for an injunction couched" in different terms. Order at 3, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, (D.D.C. Aug. 20, 2020), Dkt. 209. The Eleventh Circuit has similarly rejected the kind of procedural maneuver Montgomery attempts here. *LeCroy*, 975 F.3d at 1196 ("Although LeCroy's motion carefully avoided using the word 'stay'—instead repeatedly asking the district court to 'reset' or 'modify' his execution date— LeCroy has failed to explain how his pleading can sensibly be understood as anything other than a request to stay his execution.").

Montgomery's request for an injunction in the guise of vacatur also misunderstands the APA, which does not authorize plaintiffs to evade the traditional strictures of equitable relief in seeking to bar future agency action. *See* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull. 37 (2019-2020) (explaining that the APA's reference to "set[ting] aside" agency

action does not require any particular remedy). 5 U.S.C. § 703 provides in relevant part that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." Montgomery does not identify any form of legal proceeding that would allow her to block her execution without satisfying the traditional requirements for equitable relief, including irreparable harm. *See* 5 U.S.C. § 702 (specifying that the APA's authorization of judicial review does not affect "the power or duty of the court to . . . deny relief on any . . . equitable ground"). Indeed, the improbable upshot of Montgomery's theory is that the D.C. Circuit would have treated prior execution challenges differently had those inmates simply relabeled their motions as requests for "vacatur" instead of injunctive relief—a proposition that cannot be reconciled with the court of appeals' correct conclusion that judicial orders halting executions do not necessarily follow from a finding of a bare statutory violation. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d at 137; *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc).

### B.   Montgomery Cannot Satisfy the Standards for Injunctive Relief

To obtain an injunction, "the prevailing party must demonstrate that it actually 'has suffered' or is 'likely to suffer irreparable harm.'" *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d at 137 (citation omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Even assuming a regulatory or FDPA violation, Montgomery cannot demonstrate that she has suffered harm by receiving fewer than 90 days' notice of her execution date or by being executed during the same month as another federal prisoner. A regulatory or

statutory violation standing alone does not support an injunction without an additional showing of irreparable harm.

Nor does a bare request for additional time support injunctive relief delaying a valid capital sentence. As Judge Chutkan recently recognized in an FDPA challenge arguing for the incorporation of the Texas 90-day notice statute, even if a court believes a statute affords a condemned prisoner additional days of life, providing fewer days' notice does not rise to the level of irreparable harm when the prisoner has been under a death sentence for well over a decade and has received notice well in advance of the execution. *See In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, 2020 WL 7186766, at *7 (D.D.C. Dec. 6, 2020). A unanimous panel of the D.C. Circuit similarly denied injunctive relief on that claim, and the en banc court denied the inmates' request to reconsider. *See* Order of Dec. 9, 2020, No. 20-5361 (D.C. Cir.); Order of Dec. 10, 2020, No. 20-5361 (D.C. Cir.) (en banc).

For both of Montgomery's execution dates, she received at least the 50 days' notice set forth in the nonbinding 2019 Execution Protocol. Montgomery has been on notice of the government's intent to execute her since October 16, 2020—which is 88 days in advance of her January 12, 2021 execution date. She has been afforded more notice of her imminent execution than that afforded to several other executed prisoners, including William LeCroy, Christopher Vialva, Brandon Bernard, and Keith Nelson (who was sentenced in Missouri). Dkt. 35-2. She received more notice of her rescheduled date than executed prisoners Daniel Lee, Lezmond Mitchell, Wesley Purkey, Alfred Bourgeois, or Dustin Honken. Dkt. 35-2. As the Fifth Circuit concluded in *Vialva*, in denying the prisoner's request for a preliminary injunction based on the 90-day Texas notice statute, the fact that a prisoner "was given official notice well in advance of his execution date"—there, 55 days—militates against equitable relief. 976 F.3d at 462. As the

court observed, "[a]lthough the death penalty itself is irreversible, there comes a time when the legal issues have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *Id.* Here, Montgomery has "sufficiently litigated [her] case." *Id.* (internal quotation marks omitted).

The equities also weigh heavily against granting Montgomery additional delay of her sentence. The government and the public's interest in the timely implementation of capital sentences clearly outweigh Montgomery's assertion of the need for additional notice. *Cf. Glossip v. Gross*, 576 U.S. 863, 881 (2015). Montgomery first sought to delay her execution so her lawyers could prepare a better clemency petition. The Court granted that request, and Defendants accommodated Montgomery by delaying her execution over one month—thirteen days more than the Court's preliminary injunction required. Now, Montgomery argues that she is entitled to additional delay due to the delay she secured earlier. But Montgomery could have brought her FDPA claims months, if not years, ago. The federal government's binding regulations have always provided for a minimum of only 20 days' notice, 28 C.F.R. § 26.4(a), and if Montgomery considered the federal regime inconsistent with the FDPA's incorporation of a Missouri provision, she could have asserted that inconsistency at any point, as other death-row inmates have asserted inconsistencies under the FDPA in challenges to federal execution procedures stretching back years. *See In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145 (D.D.C.) (consolidating cases bringing FDPA challenges as early as 2012); *see also id.* Dkt. 92 (June 2020 amended complaint after the D.C. Circuit's *Protocol Cases* opinion but before any executions were rescheduled, bringing an FDPA claim based on, *e.g.*, Texas time-of-day scheduling provisions). Moreover, in July of this year, the federal government revised even its nonbinding protocol to contemplate only 50 days'—rather than 90 days'—advance notice of an

inmate's execution date and began scheduling other federal inmates' executions with less than 90 days' notice. *See id.* Dkt. 171, No. 1:19-mc-145 (D.D.C.) (informing plaintiffs who brought earlier FDPA challenges of the protocol change); *see also id.* Dkt. 172 (scheduling Vialva's execution with 55 days' notice). And at a bare minimum, Montgomery could have brought her FDPA challenge by October 16, when the government first scheduled her execution for December 8. Because that initial scheduling gave her fewer than 90 days' notice, it presumably violated the FDPA under her current theory. But she did not raise her FDPA claims even then. Instead, she sat on them for nearly two months. Nor did she raise these claims when she filed the instant suit. And even after the government rescheduled her execution, she still waited over two weeks to file her supplemental complaint raising her FDPA and regulatory claims.

There is no excuse for Montgomery's repeated delays and transparent efforts to delay her execution at all costs. *Cf. Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020); *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). The Supreme Court has specifically warned against "transform[ing] courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology." *Baze*, 553 U.S. at 51. And if this warning applies to the method of execution, a stronger warning surely applies to serial litigation concerning alleged technical deficiencies in the notice of an execution date, where each accommodation to a capital defendant is alleged to create rights to additional delay.

It has been over 16 years since Montgomery brutally murdered Bobbie Jo Stinnett. Montgomery does not challenge her conviction for the kidnapping and murder she committed "in an especially heinous or depraved manner," *United States v. Montgomery*, 635 F.3d 1074, 1095-96 (8th Cir. 2011), nor does she challenge her sentence of death. The public has a "powerful and

legitimate interest in punishing the guilty," *Calderon*, 523 U.S. at 556 (quotation omitted), by "carrying out a sentence of death in a timely manner," *Baze*, 553 U.S. at 61.

Montgomery has known for over 15 years that a day will come when she is executed. Over two months ago, Defendants told her that day was imminent. She has litigated her challenges to her conviction and sentence, and she has already received a three-week postponement of her execution date based solely on the illness of two lawyers (out of a score). Equity does not support a further delay of Montgomery's lawful sentence based on her narrow procedural claims.

### C.   Montgomery Cannot Satisfy the Standard for Vacatur

Even if Montgomery's requested relief were properly analyzed under the standard for vacatur rather than injunction, she would still fail. Courts reviewing agency action under § 706(2) must take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. Montgomery bears the burden to demonstrate prejudice. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). "The harmless error rule applies to agency action because '[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.' " *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (quoting *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)).

Montgomery does not demonstrate prejudice. Montgomery alleges her January 12, 2021, execution date deprives her of: (1) days of life; (2) time for further consideration of her clemency petition; (3) time to prepare, mentally and spiritually, for her death; and (4) time to mount additional legal challenges. Dkt. 35 at 12-13. No provision of law entitles Montgomery to avoid any of her alleged instances of prejudice. Montgomery does not dispute that under the Missouri Supreme Court's rules, the government was free to schedule her execution for December 8, 2020 or January 12, 2021; at most, compliance with various Missouri provisions would have required

the government to give Montgomery earlier notice of that fact, or reschedule *other* executions for different months. Montgomery also fails to show that additional time would result in more favorable review of her clemency petition or materially change her ability to prepare for her death sentence, which she has had over 15 years to contemplate. The Court has already provided sufficient time for the filing of a clemency petition via its prior injunction. And being denied "significant time to seek legal relief from . . . one's own execution," Dkt. 35 at 13, is not legally cognizable harm, particularly when Montgomery has already had over a decade to mount challenges to her conviction and sentence.

Moreover, courts consider equitable factors in evaluating the propriety of vacatur under the APA. *See Am. Bankers Ass'n* v. *Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019), *cert. denied*, No. 19-1115, 2020 WL 3492665 (U.S. June 29, 2020). For the reasons explained above, the public and the victim's family all have a strong interest in Montgomery's sentence being carried out in a timely fashion. Montgomery's interest in additional delay, predicated on purported technical violations of procedural rules and in the absence of irreparable harm, do not outweigh that interest.

## CONCLUSION

For the foregoing reasons, the Court should decline to enter summary judgment in favor of Montgomery or enter any relief prohibiting the government from carrying out Montgomery's execution on January 12, 2021.

Dated: December 18, 2020                          Respectfully submitted,

                                                  TIMOTHY A. GARRISON
                                                  United States Attorney
                                                  Western District of Missouri

                                                  JEFFREY RAY
                                                  Deputy United States Attorney
                                                  Western District of Missouri

                                                  BRIAN P. CASEY
                                                  Chief, Appellate Division
                                                  Western District of Missouri

                                                  */s/ Alan T. Simpson*
                                                  ALAN T. SIMPSON, Missouri Bar #65183
                                                  J. BENTON HURST, D.D.C. Bar #MO009
                                                  DAVID WAGNER
                                                  Assistant United States Attorneys
                                                  Western District of Missouri
                                                  Special Assistant United States Attorneys
                                                  District of Columbia

– and –

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN
Chief, Civil Division
District of Columbia

*/s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Alan T. Simpson*
Special Assistant United States Attorney