**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LISA MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:20-cv-03261-RDM** |
| | ) | |
| **WILLIAM P. BARR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CLARIFY AND/OR MODIFY NOVEMBER 19, 2020 PRELIMINARY INJUNCTION ORDER**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

I. The Court Entered A Stay Of Execution ........ 2

II. The Court's Stay Postponed The Director's Ability To Redesignate Mrs. Montgomery's Execution Date ........ 5

III. This Court Should Clarify Its Prior Order ........ 9

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Barnes v. Gideon*,
578 P.2d 685 (Kan. 1978) .......... 9

*Demosthenes v. Baal*,
495 U.S. 731 (1990) .......... 6

*Harbison v. Bell*,
556 U.S. 180 (2009) .......... 7

*In re GTE Service Corp.*,
762 F.2d 1024 (D.C. Cir. 1985) .......... 4

*LeCroy v. United States*,
975 F.3d 1192 (11th Cir. 2020) .......... 3, 4

*Meyer v. Holley*,
537 U.S. 280 (2003) .......... 8

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 3, 4

*Ramirez v. Davis*,
675 F. App'x 478 (5th Cir. 2017) (mem. op.) .......... 4

*Scripps-Howard Radio, Inc. v. FCC*,
316 U.S. 4 (1942) .......... 4

*Smith v. Armontrout*,
825 F.2d 182 (8th Cir. 1987) .......... 5, 6

*Smith v. State*,
145 So. 2d 688 (Miss. 1962) .......... 5, 6

*State v. Joubert*,
518 N.W.2d 887 (Neb. 1994) .......... 5, 6

*Washington Metropolitan Area Transit Commission v. Reliable Limousine Service, LLC*,
985 F. Supp. 2d 23 (D.D.C. 2013) .......... 9

### DOCKETED CASES

*Bourgeois v. Watson*, No. 20-1891 (7th Cir.) .......... 8

*Mitchell v. United States*, No. 18-17031 (9th Cir.) ..... 8

**STATUTES, RULES, AND REGULATIONS**

28 C.F.R. § 26.3 ..... 7, 8, 9

28 U.S.C. § 2251 ..... 6

Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536 (Nov. 30, 1992) ..... 7

**OTHER AUTHORITIES**

H.R. Conf. Rep. 109-333 (Dec. 8, 2005) ..... 6

## INTRODUCTION

Two motions are presently pending before this Court: (1) Mrs. Montgomery's motion for partial summary judgment and (2) the instant motion, which asks this Court to clarify, modify, or otherwise order enforcement of its November 19, 2020 Memorandum and Order. If the Court grants Mrs. Montgomery's motion for summary judgment and vacates Defendants' unlawful decision to designate a January 12, 2021 execution date, then the Court need not act on Mrs. Montgomery's motion for clarification. Mrs. Montgomery's motion for clarification is necessitated by Defendants' improper designation of a new execution date during the pendency of this Court's stay. If that improper agency action is vacated, then the need to clarify this Court's prior order dissipates.

Nevertheless, Defendants' Opposition to this motion confirms why clarification is appropriate. According to Defendants, this Court's decision staying Mrs. Montgomery's execution—unlike any other stay of execution—permitted Defendants to set a new date of execution during the pendency of the stay. This Court's Order did nothing of the sort. In staying Mrs. Montgomery's execution, the Court did not relieve Defendants of their obligations to follow federal law, including the Government's own regulations. This Court need only clarify that its November 19 Order achieved what is already implicit in a stay of execution: that during the pendency of a stay, Defendants may not designate a new date of execution. While Defendants contend that a stay of execution does not prevent redesignation of an execution date while the stay is pending, it fails to cite a single authority—judicial or otherwise—to support their view. To the contrary, precedent and practice confirm that the Director may not reschedule an execution date during the pendency of a stay of execution.

Contrary to Defendants' arguments, clarifying that this Court's November 19 Order did not excuse the Government of its obligation to follow federal law and to respect this Court's stay would not amount to an injunction, let alone a "modified" or "expanded" one. Opp. Clarification at 1. Rather, it would go no further than the Court did in granting Defendants' own earlier motion for clarification. *See* Minute Order I (Nov. 25, 2020) (clarifying "that nothing in the Court's order of November 19, 2020, Dkt. 20, relieved Lisa Nouri or the Office of the Federal Public Defender for the Middle District of Tennessee (FPD-MDT) of their obligations, pursuant to 18 U.S.C. § 3599, to represent Plaintiff in post-conviction and clemency proceedings"). Defendants' contention that Mrs. Montgomery must *again* satisfy the standard for obtaining a preliminary injunction to receive clarification is flat wrong; this Court has already determined that Mrs. Montgomery is entitled to equitable relief, and her motion seeks nothing outside the four corners of the relief already granted.

To minimize duplicative briefing and in view of the substantial overlap between the issues presented by the motion for clarification and those presented by Mrs. Montgomery's motion for partial summary judgment, this memorandum incorporates by reference the arguments in the contemporaneously filed reply in support of summary judgment and tries to address only those subjects essential to resolution of the motion to clarify.

## I. The Court Entered A Stay Of Execution

As a preliminary matter, Defendants resist the premise that this Court's November 19 Order granted a "stay" of execution. *See* Opp. Clarification at 12-13. That argument fails.

This Court has repeatedly explained that its November 19 Order stayed Mrs. Montgomery's execution. In its Memorandum Opinion accompanying the Order, for example, the Court explained that it would "enter an order briefly staying Plaintiff's execution date to permit

Harwell and Henry to finalize her clemency petition." Dkt. 19 at 24; *see also id.* at 21 ("For present purposes, it is sufficient for the Court to stay Plaintiff's execution[.]"). And later, in response to Defendants' motion, the Court further clarified that its November 19 Order "stay[ed] Plaintiff's execution date until December 31, 2020." Minute Order I (Nov. 25, 2020).

Moreover, up until their most recent filings, Defendants understood that Mrs. Montgomery sought, and obtained, a stay of execution in this proceeding. In opposing Mrs. Montgomery's motion for a temporary restraining order and preliminary injunction, Defendants explained that Mrs. Montgomery sought "a stay of execution." Dkt. 12 at 7. And in Defendants' subsequent motion for clarification, they stated that clarification would "eliminate the need for further stays" of Mrs. Montgomery's execution beyond the one this Court granted on November 19, 2020. Dkt. 22-1 at 9.

The parties and this Court have described the Court's November 19 Order as a stay of execution because it is a stay of execution. A request to "postpone" a scheduled execution date cannot "sensibly be understood as anything other than a request to *stay* [an] execution." *LeCroy v. United States*, 975 F.3d 1192, 1196 (11th Cir. 2020), *cert denied*, ---S. Ct. ---, 2020 WL 5650389 (Mem.) (U.S. Sept. 22, 2020). "[A] stay operates by 'halting or postponing some portion of the proceeding, or … temporarily divesting an order of enforceability.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)). And when a plaintiff seeks to "postpone," "'reset,'" or "'modify'" an "execution date," a stay is "*precisely* the relief" sought: "[a] stay by any other means is still a stay." *Id.*[1]

[1] *LeCroy*'s reasoning makes clear that this Court's November 19 Order was a stay of execution because it postponed Mrs. Montgomery's execution date. But that does not mean that Mrs. Montgomery is seeking a new stay or injunction in her supplemental complaint. Mrs. Montgomery advances an APA claim and seeks the ordinary relief for such claims—vacatur of Defendants' unlawful action. *See* Reply ISO SJ at 23.

Undeterred, Defendants suggest that a "stay" can only concern the suspension of the "judgments of other *courts*." Dkt. 37 at 11 (emphasis added). But of course, courts frequently stay *agency action*—not just other courts—and that is what happened here. *See Nken*, 556 U.S. at 429 n.1 ("[W]e have long recognized that such temporary relief from an administrative order—just like temporary relief from a court order—is considered a stay"); *see also Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 17 (1942) (power to stay agency action is "a power as old as the judicial system of the nation"); *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) (noting the court's "statutory authority to stay agency orders pending review in this court").

Defendants argue that this Court's Order could not be a stay because it related to clemency, rather than review of the "judgment of Montgomery's federal sentencing court." Opp. Clarification at 12. But *LeCroy*, like this case, concerned a request to halt a scheduled execution to allow the plaintiff's attorneys time to "properly assist in the preparation and filing of a clemency petition," 975 F.3d at 1195, and that request could not "sensibly be understood as anything other than a request" for a "stay," *id.* at 1196. The same was true in *Ramirez v. Davis*, 675 F. App'x 478 (5th Cir. 2017) (mem. op.), one of the clemency authorities this Court relied upon in issuing its November 19 Order, *see* Dkt. 19 at 11-13. There, the Fifth Circuit "upheld a stay of execution granted by the district court pursuant to § 3599 in order to permit appointment of counsel to assist in state clemency proceedings." Dkt. 19 at 11.

Finally, Defendants contend that this Court crafted its Order as an "injunction"—not a stay of execution—to allow Defendants to reschedule Mrs. Montgomery's execution in contravention of the regulations governing the implementation of federal death sentences. But nothing in this Court's Order suggests that in issuing its stay, it intended to relieve Defendants of their obligation to follow federal law, including the Government's own regulations. To the contrary, the Court

explained in its December 10 teleconference with the parties that it did not consider the regulations' effect on Defendants' ability to designate a new execution date when it issued its Order. *See* Dec. 10, 2020 Tr. 4:6-15. And there is no indication that the Court intended its stay of execution to operate differently than any other stay of execution.[2] In other words, this Court's Order "staying Plaintiff's execution" *was* a stay of execution. Minute Order I (Nov. 25, 2020).

## II. The Court's Stay Postponed The Director's Ability To Redesignate Mrs. Montgomery's Execution Date

Defendants next contend that even if this Court's Order were a stay of execution, it would not "deprive Defendants of their inherent authority to announce future plans to execute the judgment."[3] Opp. Clarification at 13. But tellingly, Defendants fail to cite a single judicial decision or other authority holding that the Government has authority to designate a new execution date during the pendency of a stay. In fact, the only available case law reveals the opposite—that a stay of execution, like any other stay, suspends the Government's authority to act, including by designating a new execution date. *See Smith v. Armontrout*, 825 F.2d 182, 184 (8th Cir. 1987); *State v. Joubert*, 518 N.W.2d 887, 898 (Neb. 1994); *Smith v. State*, 145 So. 2d 688, 690 (Miss. 1962).

Defendants' attempts to distinguish these cases are meritless. Defendants argue that *Smith v. Armontrout* and *State v. Joubert* are distinguishable because they involved a statutory

---

[2] It does not matter that this Court did not use the same exact language as other courts, which specified that the stay of execution would operate to prevent the setting of a new execution date. *Contra* Opp. Clarification at 8. As explained, *infra* Part II, a stay of execution, by its nature, prevents the Government from taking preparatory steps toward implementing an execution and the Government's own regulations make clear that the Director may not designate a new execution date until a stay is lifted. The Court was not required to specify that its stay would prevent the Director from designating a new date for Mrs. Montgomery's execution, even if other courts may have chosen to do so.

[3] Defendants offer no explanation or support for their supposed "inherent authority." Opp. Clarification at 13.

provision—28 U.S.C. § 2251—that explicitly deprives a state court of jurisdiction when a federal court enters a stay in a habeas corpus proceeding. Opp. Clarification at 13-14; *see* 28 U.S.C. § 2251(b) ("After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void."). But the court in *Armontrout* never mentioned § 2251, let alone based its holding on the text of that provision. Instead, it announced a broader principle that applies equally here: when "an order of court staying [an] execution is in full force and effect," the Government may not "resume any preparations for [the] execution" until the "stay of execution [is] finally dissolved." 825 F.2d at 184. And although the *Joubert* court grounded its holding more explicitly in § 2251, it, too, recognized as a general matter that allowing for the scheduling of an execution during a stay impairs a prisoner's right to meaningful review in her ongoing proceedings, even if the execution itself does not occur until after the proceedings are complete and the stay is lifted. *See* 518 N.W.2d at 897 ("[I]f carried into effect . . . the state's actions [of scheduling the date for the prisoner's execution] would deprive the prisoner of the right to have the judgment of that court in the matter of his petition for a writ of habeas corpus reviewed by the U.S. Supreme Court, a right guaranteed to him by the laws of the United States.").[4]

*Smith v. State*, in contrast, did not involve § 2251 or any other comparable statutory provision formally depriving a state court of jurisdiction to execute a sentence. Defendants argue

---

[4] Moreover, any contention that these cases are inapplicable because § 2251 confers a broader and more expansive authority to federal courts to interfere in *state* executions than the federal courts have over *federal* agencies and *federal* prisoners sentenced to death for *federal* crimes is clearly untenable. *See* Dkt. 37 at 13-14. Such a position ignores basic principles of comity, as well as the text and history of § 2251. *See, e.g.*, H.R. Conf. Rep. 109-333, 109 (Dec. 8, 2005) (noting that § 2251 "controls the circumstances under which a federal court hearing a habeas petition may stay a State court action"); *Demosthenes v. Baal*, 495 U.S. 731, 737 (1990) (noting that "federal courts are authorized by the federal habeas statutes to interfere with the course of state proceedings only in specified circumstances"). Neither Mrs. Montgomery's clemency access claims nor her APA claims sound in habeas; rather, they challenge the actions of a federal agency and its officers and agents.

that *Smith* is nevertheless inapposite because it involved an indefinite stay pending direct review. Opp. Clarification at 14-15. But Defendants never explain why that distinction matters, and federal regulations make no such distinction. *See* 28 C.F.R. § 26.3(a)(1) (suspending the Director's authority to reschedule an execution during a "stay" of whatever length). Mrs. Montgomery has "a right to meaningful access to the clemency process," Dkt. 19 at 23, just as she has a right to direct review, *see Harbison v. Bell*, 556 U.S. 180, 192 (2009) (clemency is the "fail safe" of the criminal justice system (quotation omitted)). And this Court already made the considered judgment that preserving the status quo until December 31 was essential to affording her that access and effectuating that right. In short, the only judicial authority on this question confirms that a stay of execution operates in the same way as every other stay, depriving the Government of any authority to effectuate the prisoner's execution, including the authority to designate new execution date.

The Government itself recognized as much when, in 1993, it promulgated rules regarding the implementation of federal executions. In its notice of proposed rulemaking for the 1993 rule, the Government explained that vesting the Director with the power to designate an execution date "will obviate the practice, which is a pointless source of delay in state cases, of seeking a new execution date from the sentencing court each time a higher court lifts a stay of execution that caused an earlier execution date to pass." Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536, 56,536 (Nov. 30, 1992). That statement reveals that when § 26.3 was written, the Government understood that it was—as it is now—the practice to seek a "new execution date" only after a "court lifts a stay of execution." *Id.* Rather than require the Director to seek a new date from a court, § 26.3(a)(1) provided that the Director himself would have the power to designate a new date "when the stay is lifted." But nothing in those regulations even

hints that the Government thought the Director would be permitted to reschedule an execution while a stay remains in effect. *See Meyer v. Holley*, 537 U.S. 280, 287 (2003) (when a text "has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply"); *see also* Reply ISO SJ at 11.

Defendants' conduct in the *Bourgeois* and *Mitchell* cases is hardly proof that their conduct here comported with this Court's stay. *See* Opp. Clarification at 15-18. In both *Bourgeois v. Watson* and *Mitchell v. United States*, the Government set execution dates after stays had been vacated, but before the mandate had issued to finalize those orders. But in neither case were the issues here actually presented and resolved by the relevant courts. In *Bourgeois*, the appellant simply filed a Rule 28(j) letter notifying the court that the Government had scheduled an execution date even though the plaintiff's petition for rehearing was still pending. *See* Appellant Rule 28(j) Letter, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55. The appellant did not ask the court to strike the execution date, and neither the Government nor the court ever addressed the letter. In *Mitchell*, the appellant filed a motion to strike an execution date that the Government had also set while a petition for rehearing was still pending. The appellant made one general reference to the "Code of Federal Regulations" in the introduction to his motion, but presented no specific argument as to § 26.3(a) or the FDPA, nor did any of the other responsive filings. Appellant Motion to Enforce Stay of Execution at 1, *Mitchell v. United* States, No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48. The Ninth Circuit denied the motion but did not address § 26.3, the nature of a stay, or the FDPA, and it provided no reasoning in support of its decision. *See* Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52.

## III. This Court Should Clarify Its Prior Order

The foregoing analysis makes clear that this Court's November 19 Order was a stay of execution that—like every other stay of execution and consistent with federal regulations—suspended any ability the Director may have had to designate a new execution date during the pendency of that stay. The Court need only "make explicit what is already implicitly so," *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 30 (D.D.C. 2013), and clarify that its Order (1) suspended the Government's authority to designate a new execution date through December 31, 2020;[5] and (2) did not relieve the Government of its independent obligation under federal law to wait until "the stay is lifted" to designate a "new date" of execution under 28 C.F.R. § 26.3.

Defendants argue that clarification is improper (Opp. Clarification at 6-7) and that Mrs. Montgomery must show anew that she satisfies the standards for a stay (Opp. Clarification at 26-28). But Defendants' argument depends entirely on its erroneous interpretations of this Court's

[5] According to Defendants, the Court's order "prohibits Defendants from *executing* Montgomery prior to December 31, 2020," but "does not expressly prohibit Defendants" from executing Mrs. Montgomery "on or after that date (such as executing her *on or after December 31, 2020*)." Opp. Clarification at 7; *id.* at 9 n.1. But Defendants overlook the fact that the Court clarified its Order as "staying Plaintiff's execution date *until* December 31, 2020." Minute Order I (Nov. 25, 2020). Context here makes clear that in using the word "until," the Court intended to confirm that the stay would *include* December 31. *See Barnes v. Gideon*, 578 P.2d 685, 685 (Kan. 1978) ("The word 'until,' and words of similar import, whether used in a contractual sense or in court proceedings, is inclusive of the date mentioned and not exclusive unless it is the clear intent of the parties to make it exclusive."). The Court only issued its clarification after Defendants represented in their own motion for clarification that Mrs. Montgomery would be able to submit supplemental clemency evidence for the Pardon Attorney to consider "through the conclusion of the injunction on December 31." Dkt. 22-1 at 6 (government motion for clarification); *see also* Dkt. 22-2 at 2 (declaration of Kira Gillepsie, Senior Attorney Advisor at the Office of the Pardon Attorney, confirming that Pardon Attorney would accept supplemental evidence "until the end of the injunction, *i.e.,* December 31, 2020"). If the Court had disagreed with that interpretation, it would have clarified in its Order that the stay ends on December 30, instead of confirming that it runs until December 31.

Order as an injunction (not a stay of execution) that halted only the execution itself and relieved Defendants' of their obligations under the regulations. For the reasons already explained, Defendants are wrong about the effect of this Court's prior order, and because Mrs. Montgomery asks only for clarification, making explicit what that prior order already accomplished, there is no need for Mrs. Montgomery to *again* satisfy the standard for a stay. *See* Dkt. 19 at 22-23 (holding that Mrs. Montgomery is entitled to a stay of execution). In any event, even if the Court were to consider Mrs. Montgomery's motion as one requiring a new demonstration of entitlement injunctive relief, Mrs. Montgomery would satisfy that standard. *See* Reply ISO SJ at 23-25.

Finally, Defendants remarkably contend that if this Court agrees that Defendants are violating the November 19 Order, the Court should modify that Order and expressly relieve the Government of its obligation to follow federal law in the interest of a "timely enforcement of Montgomery's capital sentence." Opp. Clarification at 25-26. But federal law already strikes the balance between prompt punishment and the fair and orderly administration of the death penalty—a balance that requires Defendants to wait until after expiration of a stay to designate a new date of execution. Defendants have shown no reason why this Court should depart from those ordinary rules to cure their failure to follow the law.

DATED: December 21, 2020

Respectfully Submitted,

*/s/ Sandra L. Babcock*

Sandra L. Babcock
Clinical Professor,
International Human Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
mvergow@omm.com
202.383.5504

Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837