# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LISA MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:20-cv-03261-RDM** |
| | ) | |
| **WILLIAM P. BARR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      This Court Entered A Stay Of Execution ..................................................................2

II.     The January 12, 2021 Execution Date Is *Ultra Vires* ...........................................4

        A.      Defendants Violated 28 C.F.R. § 26.3 In Designating Mrs. Montgomery's New
                Execution Date.................................................................................................4

                1.      Defendants' Interpretation Of § 26.3 Is Untenable ................................4

                2.      A Stay Of Execution Postpones The Director's Ability To Redesignate An
                        Execution Date ...................................................................................8

                3.      Defendants' Interpretation Is Not Entitled To Deference........................11

        B.      Defendants Violated The FDPA .......................................................................14

III.    Mrs. Montgomery Is Prejudiced By Defendants' *Ultra Vires* Action............................17

IV.     Mrs. Montgomery Seeks Vacatur Under The APA, Not Injunctive Relief.....................19

        A.      Defendants Mischaracterize Mrs. Montgomery's Motion For Partial Summary
                Judgment Of Her APA Claims ..........................................................................19

        B.      This Court Should Vacate Mrs. Montgomery's Execution Date.........................21

        C.      Even if the Court Construed Mrs. Montgomery's Complaint As A Request For
                Injunctive Relief, Mrs. Montgomery Would Still Prevail...................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AFL-CIO v. Chao*,
496 F. Supp. 2d 76 (D.D.C. 2007) ...................................................................................20

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*,
988 F.2d 146 (D.C. Cir. 1993) .......................................................................................21

*Allina Health Services v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) .....................................................................................19

*Auer v. Robbins*,
519 U.S. 452 (1997) .......................................................................................................11

*Beck v. Test Masters Educational Services Inc.*,
994 F. Supp. 2d 98 (D.D.C. 2014) .................................................................................20

*Bowles v. Seminole Rock & Sand Co.*,
325 U.S. 410 (1945) .......................................................................................................12

*Byers v. Commissioner*,
740 F.3d 668 (D.C. Cir. 2014) .........................................................................................9

*Demosthenes v. Baal*,
495 U.S. 731 (1990) .......................................................................................................10

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......................................................................................................24

*FedEx Home Delivery v. NLRB*,
849 F.3d 1124 (D.C. Cir. 2017) .....................................................................................13

*Harbison v. Bell*,
556 U.S. 180 (2009) .......................................................................................................10

*Huashan Zhang v. USCIS*,
978 F.3d 1314 (D.C. Cir. 2020) .....................................................................................11

*Illinois Public Telecommunications Association v. FCC*,
123 F.3d 693 (D.C. Cir. 1997) .......................................................................................21

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) ..........................................................15

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
980 F.3d 126 (D.C. Cir. 2020) .......................................................................................22

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
     No. 12-CV-782, 2020 WL 7186766 (D.D.C. Dec. 6, 2020)......................................16, 24

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
     955 F.3d 106 (D.C. Cir. 2020) ..............................................................................15, 19

*In re GTE Service Corp.*,
     762 F.2d 1024 (D.C. Cir. 1985) .....................................................................................4

*International Union, United Mine Workers of America v. Federal Mine Safety & Health
     Administration*,
     920 F.2d 960 (D.C. Cir. 1990) ......................................................................................20

*Jicarilla Apache Nation v. U.S. Department of Interior*,
     613 F.3d 1112 (D.C. Cir. 2010) ....................................................................................18

*Kisor v. Wilkie*,
     139 S. Ct. 2400 (2019)............................................................................... 11, 12, 13, 14

*League of Women Voters of U.S. v. Newby*,
     838 F.3d 1 (D.C. Cir. 2016) ..........................................................................................24

*LeCroy v. United States*,
     975 F.3d 1192 (11th Cir. 2020)...........................................................................3, 4, 23

*Loma Linda University Medical Center v. Sebelius*,
     684 F. Supp. 2d 42 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010) ........................20

*Matson Navigation Co. v. U.S. Department of Transportaion*,
     471 F. Supp. 3d 60 (D.D.C.), *appeal filed*, No. 20-5219 (D.C. Cir. July 23, 2020) .........21

*Meyer v. Holley*,
     537 U.S. 280 (2003) ......................................................................................................11

*Monsanto Co. v. Geertson Seed Farms*,
     561 U.S. 139 (2010) ......................................................................................................20

*National Association of Home Builders v. Defenders of Wildlife*,
     551 U.S. 644 (2007) ........................................................................................................6

*National Mining Association v. U.S. Army Corps of Engineers*,
     145 F.3d 1399 (D.C. Cir. 1998) ....................................................................................19

*Nken v. Holder*,
     556 U.S. 418 (2009) ....................................................................................................3, 4

*Northern Mariana Islands v. United States*,
     686 F. Supp. 2d 7 (D.D.C. 2009) ..................................................................................24

*Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission,*
    896 F.3d 520 (D.C. Cir. 2018) ...................................................................... 18

*Ohio Adult Parole Authority v. Woodard,*
    523 U.S. 272 (1998) ...................................................................................... 24

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ........................................................................................ 5

*Raleigh & Gaston Railroad Co. v. Reid,*
    80 U.S. 269 (1871) .......................................................................................... 5

*Reed v. Salazar,*
    744 F. Supp. 2d 98 (D.D.C. 2010) ............................................................... 21

*Smith v. Armontrout,*
    825 F.2d 182 (8th Cir. 1987)........................................................................... 9

*Smith v. State,*
    145 So. 2d 688 (Miss. 1962) ........................................................................... 9

*State v. Joubert,*
    518 N.W.2d 887 (Neb. 1994)........................................................................... 9

*Vitullo v. Mancini,*
    684 F. Supp. 2d 760 (E.D. Va. 2010) ........................................................... 12

## DOCKETED CASES

*Bourgeois v. Watson*, No. 20-1891 (7th Cir.) ............................................................... 14

*Kisor v. Wilkie*, No. 18-15 (U.S.)................................................................................... 13

*In re Federal Bureau of Prisons*, No. 20-5260 (D.C. Cir.) ......................................... 23

*In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C.)........ 22, 23

*Mitchell v. United States*, No. 18-17031 (9th Cir.) .............................................. 13, 14

## STATUTES, RULES, AND REGULATIONS

28 C.F.R.
    § 26.3 ...................................................................................................*passim*
    § 26.4 .......................................................................................................8

5 U.S.C.
    § 706(2) ............................................................................................ 1, 2, 19

18 U.S.C.
    § 3596(a) ...................................................................................... 1, 15, 16, 19
    § 3599(e) ...............................................................................................18

28 U.S.C. § 2251 ...................................................................................... 9, 10

Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536 (Nov.
    30, 1992) ....................................................................................... 7, 11, 18

Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4,898 (Jan. 19, 1993).........14

Mo. Sup. Ct. R. 30.30(f) .......................................................................... 2, 15, 16, 17

## OTHER AUTHORITIES

2A Sutherland, Statutes and Statutory Construction § 47.23 (Norman J. Singer ed.,
    6th ed. 2000)..........................................................................................5

A. Scalia & B. Garner, *Reading Law* (1st ed. 2012)...................................................5

H.R. Conf. Rep. 109-333 (Dec. 8, 2005)..............................................................10

U.S. Dep't of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders
    Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-
    scheduled-inmates-convicted-brutal-murders-many-years-ago .....................................17

## INTRODUCTION

Lisa Montgomery seeks summary judgment on her APA claims, which arise out Defendants' designation of January 12, 2021 as the date for her execution.  Defendants failed to comply with federal regulations and the FDPA in setting that execution date, as they did not wait until the Court's stay lifted before designating a new date, as required by 28 C.F.R. § 26.3(a)(1), and did not comply with Missouri law concerning execution timing, as required by the FDPA, 18 U.S.C. § 3596(a).  The remedy for these legal violations is simple:  The illegal execution date "shall" be "set aside."  5 U.S.C. § 706(2).  Defendants have no answer to this straightforward analysis.  Instead, they advance strained rationales to contend the legal requirements do not apply here and to invent what amounts to a "death penalty exception" to the APA's default remedy of vacatur.  None of these arguments is persuasive.

On the merits, Defendants' interpretation of § 26.3(a)(1) is illogical.  The regulation provides that "[i]f the date designated for execution passes by reason of a stay of execution, then a new date *shall be* designated promptly … *when the stay is lifted*."  28 C.F.R. § 26.3(a)(1) (emphases added).  According to Defendants, they may nonetheless designate a new date *before* the stay is lifted because § 26.3(a)(1) merely imposes a duty to act upon the lifting of a stay without prohibiting action prior to that time.  That interpretation cannot be squared with the text, logic, and purpose of the regulations.

Defendants' other arguments about § 26.3(a)(1) fare no better.  Their contention that this Court did not stay Mrs. Montgomery's execution is contradicted by the parties' and this Court's characterization of the Order, as well as by case law.  Defendants' claim to deference is unavailing because the regulation is clear and because their interpretation does not implicate agency expertise or reflect considered judgment.  And their contention that Mrs. Montgomery's claims were rejected

by other courts is just plain false.   No court has issued a reasoned opinion concerning § 26.3(a)(1)—which shows how exceptional Defendants' action was here.

With respect to the FDPA, Defendants rely extensively on case law from other jurisdictions while ignoring D.C. Circuit precedent clearly dictating that the FDPA incorporates positive state law regulating the scheduling of executions.   They further take issue with the fact that Missouri Supreme Court Rule 30.30(f) references Missouri-specific institutions, but that unsurprising fact is irrelevant because the substantive requirements here can be readily applied to the federal government, as the FDPA requires.

Defendants' attempts to save the illegal execution date from vacatur likewise fail. Defendants mischaracterize the relief Mrs. Montgomery seeks and then try to invent a heightened standard for vacatur in APA cases involving executions where none exists.   Mrs. Montgomery's APA claims are ripe for final adjudication on the merits.   Because the January 12, 2021 execution date was set in a manner "not in accordance with law," "in excess of statutory jurisdiction," and "without observance of procedure required by law," the Court should grant summary judgment and vacate the unlawful date.   5 U.S.C. § 706(2)(A), (C), (D).

## ARGUMENT

### I.   This Court Entered A Stay Of Execution

As a preliminary matter, Defendants resist the premise that this Court's November 19 Order granted a "stay" of execution.   *See* Opp. SJ at 13.   That argument fails.

This Court has repeatedly explained that its November 19 Order stayed Mrs. Montgomery's execution.   In its Memorandum Opinion accompanying the Order, for example, the Court explained that it would "enter an order briefly staying Plaintiff's execution date to permit Harwell and Henry to finalize her clemency petition."   Dkt. 19 at 24; *see also id.* at 21 ("For present

purposes, it is sufficient for the Court to stay Plaintiff's execution[.]").  And later, in response to Defendants' motion, the Court further clarified that its November 19 Order "stay[ed] Plaintiff's execution date until December 31, 2020."  Minute Order I (Nov. 25, 2020).

Moreover, up until their most recent filings, Defendants acknowledged that Mrs. Montgomery sought, and obtained, a stay of execution in this proceeding.  In opposing Mrs. Montgomery's motion for a temporary restraining order and preliminary injunction, Defendants recognized that Mrs. Montgomery sought "a stay of execution."  Dkt. 12 at 7.  And in Defendants' subsequent motion for clarification, they stated that clarification would "eliminate the need for further stays" of Mrs. Montgomery's execution beyond the one this Court granted on November 19th.  Dkt. 22-1 at 9.

The parties and this Court have described the Court's November 19 Order as a stay of execution because it is a stay of execution.  A request to "postpone" a scheduled execution date cannot "sensibly be understood as anything other than a request to *stay* [an] execution." *LeCroy v. United States*, 975 F.3d 1192, 1196 (11th Cir. 2020).  "[A] stay operates by 'halting or postponing some portion of the proceeding, or … temporarily divesting an order of enforceability.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)).  And when a plaintiff seeks to "postpone," "'reset,'" or "'modify'" an "execution date," a stay is "*precisely* the relief" sought: "[a] stay by any other means is still a stay." *Id.*

Fighting that basic premise, Defendants suggest that a "stay" can only concern the suspension of the "judgments of other courts."  Opp. SJ at 11.  But of course, courts frequently stay *agency action*—not just the judgments of other courts—and that is what happened here. *See Nken*, 556 U.S. at 429 n.1 ("[W]e have long recognized that such temporary relief from an administrative order—just like temporary relief from a court order—is considered a stay."); *In re*

*GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) (noting the Court's "statutory authority to stay agency orders pending review in this court"). Nor does it matter that this Court's Order related to clemency, rather than review of the "judgment of Montgomery's federal sentencing court." Opp. SJ at 12. *LeCroy*, like this case, concerned a request to halt a scheduled execution to allow the plaintiff's attorneys time to "properly assist in the preparation and filing of a clemency petition," 975 F.3d at 1195, and that request could not "sensibly be understand as anything other than a request" for a "stay," *id.* at 1196. And finally, nowhere do Defendants give *any* indication that the regulations, which clearly prohibit the Director from rescheduling an execution during the pendency of a stay, adopt Defendants' new and idiosyncratic view of what constitutes a "stay." This Court's Order "staying Plaintiff's execution" was a stay of execution. Minute Order I (Nov. 25, 2020).

## II.     The January 12, 2021 Execution Date Is *Ultra Vires*

### A.     Defendants Violated 28 C.F.R. § 26.3 In Designating Mrs. Montgomery's New Execution Date

#### 1.     Defendants' Interpretation Of § 26.3 Is Untenable

Section 26.3(a)(1) expressly provides that if, as here, "the date designated for execution passes by reason of a stay," the Director "*shall*" designate a new date "*when the stay is lifted*." 28 C.F.R. § 26.3(a)(1) (emphases added). Defendants acknowledge that the regulations are "binding." Opp. SJ at 31. They concede, as they must, that § 26.3(a)(1)—which provides what the Director "shall" do—has a "mandatory effect." *Id.* at 6. And they do not dispute that the phrase "when the stay is lifted" modifies the verb "designate," meaning that the duty imposed on the Director is to schedule a new execution date only *after* the stay is lifted, and not one minute before. *See* Opening Br. 5-6. Nevertheless, Defendants argue that nothing in § 26.3(a)(1)

prevented the Director from designating a new date of execution *prior* to the expiration of this Court's stay. That position is at war with the regulation's text, logic, and purpose.

Defendants' contention that § 26.3(a)(1) "imposes a *duty* on the Director of the BOP to 'promptly' designate a new execution date" when the stay is lifted, but "does not … in any way *prohibit* the Director from designating a new date before a stay expires," Opp. SJ at 5-6, conflicts with multiple well-settled canons of interpretation. First, a statute or regulation "which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." 2A Sutherland, Statutes and Statutory Construction § 47.23 (Norman J. Singer ed., 6th ed. 2000); *see, e.g.*, *Raleigh & Gaston R.R. Co. v. Reid*, 80 U.S. 269, 270 (1871) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode."). Here, the regulation provides *how* and *when* an execution date "shall" be rescheduled, when the date of an execution "passes by reason of a stay." 28 C.F.R. § 26.3(a)(1). By directing the BOP to designate a new execution date only upon the lifting of the stay, the regulation necessarily excludes the rescheduling of an execution date before a pending stay is lifted.

Second, when a "general permission … is contradicted by a specific prohibition," the interpretive question is "eas[y] to deal with": "the specific provision prevails." A. Scalia & B. Garner, *Reading Law* 183 (1st ed. 2012); *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[T]he specific provision is construed as an exception to the general one."). Here, with respect to the Director's power to reschedule an execution date that "passes by reason of a stay," the specific limits set out in § 26.3(a)(1) apply—not the Director's ordinary power to designate an execution date when a stay is not in effect.

Defendants' other textual argument fares no better. According to Defendants, because § 26.3(a)(1) provides what should happen "[i]f the date designated for execution passes by reason

of a stay," the limitations in that clause do not come into play before a scheduled date passes, *see* Opp. SJ at 6. But that reading of that statute renders the phrase "when the stay is lifted" superfluous. *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668-69 (2007) (rejecting regulatory interpretation that rendered certain language "mere surplusage"). After all, if the Director can reschedule an execution date notwithstanding a pending stay, then there is no need for the regulation to specify that a new date must be designated "when the stay is lifted." (Again, Defendants do not dispute that the phrase "when the stay is lifted" modifies the verb "designate.") And the Defendants' reading results in a bizarre consequence: if a stay is in effect, then up until the date passes, the Director can reschedule an execution date whenever he chooses, but once the date passes, the Director's authority is frozen and he may not reschedule an execution until the stay is lifted.

Indeed, the Defendants' interpretation makes a hash of § 26.3(a)(1) altogether. According to Defendants, the only purpose of the second sentence in § 26.3(a)(1) is to ensure that the Director "promptly" reschedules execution dates. Opp. SJ at 6. But if the regulation's goal were promptness alone, there would be no need to distinguish between the Director's authority to reschedule an execution *before* the date passes and his authority to do so *after* the date passes by reason of a stay. Nor, for that matter, would there be any reason to distinguish between a date that passes by reason of a *stay* or for *any other* reason. The Director's interest in "prompt" rescheduling is presumably the same whether or not the initial date has passed by reason of a snowstorm or by reason of a stay. The regulations would simply have told the Director to reschedule "promptly" if for any reason the Director was not able to implement the originally scheduled execution date.

Instead, in providing that the Director will only designate a new date *when the stay is lifted*, the regulation logically draws the line between when no stay is in effect (during which time the

Director has the general authority to schedule an execution date), and once a stay is in place (during which time the Director lacks the authority to schedule an execution date).  In this way, § 26.3 both presupposes and codifies the ordinary rule—that a stay of execution prevents the designation of a new execution date prior to expiration of a stay.  *See infra* at 8-11.

Defendants' interpretation of § 26.3(a)(1) is also plainly inconsistent with the regulation's purpose.  As the Government explained in promulgating the regulations at issue here, the purpose behind the timing and notice provisions in question is to "ensure [the] *orderly implementation* of death sentences."  Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536, 56,536 (Nov. 30, 1992) (emphasis added).  To that end, §§ 26.3 and 26.4 together guarantee that a substantial stay of execution will be followed by at least a 20-day period between expiration of a stay and a planned execution.  That 20-day period ensures that a party facing execution has the opportunity to consider and pursue appropriate legal remedies in the wake of a judicial decision dissolving a stay and ensures that appellate courts have the time needed to review an order vacating a stay.  These rules hardly have, as Defendants contend, "no purpose."  Opp. SJ at 1.

What's more, under Defendants' apparent view, the Government could—notwithstanding a lengthy judicial stay to consider an issue that requires extended consideration—reschedule an execution to occur as soon as *the minute after* a stay is vacated.  That rule would frustrate judicial review of orders vacating a stay and grievously impede a prisoner's ability to pursue legal remedies after a stay is vacated.  It would also force a prisoner to file rushed pleadings seeking emergency relief in the wake of a judicial decision dissolving a stay, and might promote needless interlocutory appeals by prisoners seeking to head off the possibility that a decision vacating a stay will allow

the Government to immediately proceed to an execution.  Defendants' theory, in other words, is a recipe for a dysfunction.  Little surprise, then, that it has never been the rule.[1]

The Government's interest in "ensuring that executions are rescheduled promptly when a stay interferes with the original date" is not to the contrary.  Opp. SJ at 7.  The regulations already strike the balance between the need for orderly implementation of the death penalty and timely punishment: § 26.3(a)(1) requires that a date will not be set until a stay is lifted, but once a stay is lifted, it ensures that a new date will be scheduled "promptly."  The regulations also expressly provide that, in the event of "a postponement of fewer than 20 days," the Government is relieved of the obligation to "notify the prisoner … of the date designated for execution at least 20 days in advance."  28 C.F.R. § 26.4(a).  As a result, the regulations prudently distinguish between short postponements that do not require a 20-day pause before a scheduled execution, and lengthier stays—which typically accompany more complex or substantial challenges—that do require a 20-day period before an execution can occur.  *Id.*

## 2.    A Stay Of Execution Postpones The Director's Ability To Redesignate An Execution Date

The meaning of § 26.3(a)(1) is, on its face, clear.  But when combined with the background rule that a stay of execution suspends the Government's authority to designate a new execution date, the point is scarcely contestable.

---

[1] Defendants wrongly contend that these interests might be different with respect to "an injunction with a definite endpoint."  Opp. SJ at 7.  But, by its terms, § 26.3(a)(1) applies to any "stay"—it does not distinguish between determinate and indeterminate stays, or stays of differing lengths.  Moreover, under Defendants' view, the Director could schedule an execution even during the pendency of an indeterminate stay, with the hope that the stay would be lifted come execution day.  Federal regulations rightly preclude such unseemly gamesmanship.

According to Defendants, a stay does not "deprive Defendants of their inherent authority to announce future plans to execute the judgment on the presumption that 'the stay' will lift." Opp. SJ at 13. Even putting aside Defendants' bare and unsupported claim to "inherent authority,"[2] Defendants are wrong about the effect of a stay. A stay of execution suspends the Government's authority to act, including by designating a new execution date. *See* Opening Br. 6-7; *Smith v. Armontrout*, 825 F.2d 182 (8th Cir. 1987); *State v. Joubert*, 518 N.W.2d 887, 898 (Neb. 1994); *Smith v. State*, 145 So. 2d 688, 690 (Miss. 1962). Although Defendants resist this premise, they cite no case holding that the Government has the authority to designate a new execution date during the pendency of a stay.

Defendants' attempts to distinguish precedent concerning the effect of a stay are meritless. They argue that *Smith v. Armontrout* and *State v. Joubert* are distinguishable because they involved a statutory provision—28 U.S.C. § 2251—which explicitly deprives a state court of jurisdiction when a federal court enters a stay in a habeas proceeding. Opp. SJ at 13-14. But the court in *Armontrout* never mentioned § 2251, let alone based its holding on the text of that provision. Instead, it announced a broader principle that applies equally here: when "an order of court staying [an] execution is in full force and effect," the Government may not "resume any preparations for [the] execution" until the "stay of execution [is] finally dissolved." 825 F.2d at 184. And although the *Joubert* court grounded its holding more explicitly in § 2251, it, too, recognized as a general matter that allowing for the scheduling of an execution during a stay impairs a prisoner's right to

---

[2] In designating Mrs. Montgomery's execution date, the Director cited only his authority "pursuant to … Section 26.3(a)(1)." *See* Dkt. 33 (AR 175). Defendants cannot now claim that some different source of authority—especially an amorphous and unsupported claim to inherent authority—justifies their action. *See Byers v. Commissioner*, 740 F.3d 668, 680 (D.C. Cir. 2014) ("Under the *Chenery* doctrine, a reviewing court must confine itself to the grounds upon which the record discloses that the agency's action was based.").

meaningful review in her ongoing proceedings, even if the execution itself does not occur until after the proceedings are complete and the stay is lifted. *See* 518 N.W.2d at 897 ("[I]f carried into effect . . . the state's actions [of scheduling the date for the prisoner's execution] would deprive the prisoner of the right to have the judgment of that court in the matter of his petition for a writ of habeas corpus reviewed by the U.S. Supreme Court, a right guaranteed to him by the laws of the United States.").[3]

*Smith v. State* did not involve § 2251 or any other comparable statutory provision formally depriving the State of jurisdiction to execute a sentence. Defendants argue that *Smith* is nonetheless inapposite because it involved an indefinite stay pending direct review. Opp. SJ at 15. But Defendants never explain why that distinction matters, and federal regulations make no such distinction. *See* 28 C.F.R. § 26.3(a)(1) (suspending the authority to schedule an execution during a "stay" of whatever length). Mrs. Montgomery has "a right to meaningful access to the clemency process," Dkt. 19 at 23, just as she has a right to direct review. *See Harbison v. Bell*, 556 U.S. 180, 192 (2009) (clemency is the "fail safe" of the criminal justice system). And this Court already made the considered judgment that preserving the status quo until December 31 was essential to affording her that access and effectuating that right. In short, a stay of execution operates in the

---

[3] Moreover, any contention that these cases are inapplicable because § 2251 confers a broader and more expansive authority to federal courts to interfere in *state* executions than the federal courts have over *federal* agencies and *federal* prisoners sentenced to death for *federal* crimes is untenable. *See* Opp. SJ at 13-14. Such a position ignores basic principles of comity, as well as the text and history of § 2251. *See, e.g.*, H.R. Conf. Rep. 109-333, 109 (Dec. 8, 2005) (noting that § 2251 "controls the circumstances under which a federal court hearing a habeas petition may stay a State court action"); *Demosthenes v. Baal*, 495 U.S. 731, 737 (1990) (noting that "federal courts are authorized by the federal habeas statutes to interfere with the course of state proceedings only in specified circumstances"). Neither Mrs. Montgomery's clemency access claims nor her APA claims sound in habeas; rather, they challenge the actions of a federal agency and its officers and agents. This Court's jurisdiction and authority over federal agencies, officers, and inmates is longstanding and not subject to reasonable debate.

same way as every other stay, depriving the Government of the authority to effectuate the prisoner's execution, including the authority to designate a new execution date.

The Government itself recognized as much when, in 1993, it promulgated the very regulations at issue here.  In its notice of proposed rulemaking, the Government explained that vesting the Director with the power to designate an execution date "will obviate the practice, which is a pointless source of delay in state cases, of seeking a new execution date from the sentencing court each time a higher court lifts a stay of execution that caused an earlier execution date to pass."  57 Fed. Reg. at 56,536.  That statement reveals that when § 26.3 was written, the Government understood that it was—as it is now—the practice to seek a "new execution date" only after a "court lifts a stay of execution."  *Id.*  Rather than require the Director to seek a new date from a court, § 26.3(a)(1) provided that the Director himself would have the power to designate a new date "when the stay is lifted."  But nothing in those regulations even hints that the Director would be permitted to reschedule an execution while a stay remains in effect.  *See Meyer v. Holley*, 537 U.S. 280, 287 (2003) (when a text "has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply").

### 3.  Defendants' Interpretation Is Not Entitled To Deference

Defendants are wrong to argue that their interpretation of § 26.3(a)(1) "should be afforded controlling weight" under *Auer v. Robbins*, 519 U.S. 452 (1997).  Opp. SJ at 9.  As the Supreme Court recently emphasized, *Auer* "often doesn't apply," and it doesn't apply here.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-18 (2019).

First, the regulation is not "genuinely ambiguous."  139 S. Ct. at 2415.  "[B]efore concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction," meaning that it must "'carefully consider[]' the text, structure, history, and purpose

… in all the ways it would if it had no agency to fall back on." *Id.*; *see also Huashan Zhang v. USCIS*, 978 F.3d 1314, 1322 (D.C. Cir. 2020) ("[G]iven the clarity of the governing regulation, we cannot defer to the agency's contrary interpretation."). Here, as explained, the text of § 26.3(a)(1) is clear; "the meaning of the words used" is not "in doubt." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see supra* at 4-6. Accordingly, "resort to *Auer* deference" is unavailable. *Kisor*, 139 S. Ct. at 2415.

Second, even assuming "genuine ambiguity remains" in the meaning of § 26.3(a)(1), Defendants' reading does not "fall within the bounds of reasonable interpretation." 139 S. Ct. at 2415-16 (internal quotation marks omitted). The regulation provides that a new date shall be set when the stay is lifted. 28 C.F.R. § 26.3(a)(1). When a law "provides that a thing shall be done in a certain way," it "carries with it an implied prohibition against doing that thing in any other way." *Vitullo v. Mancini*, 684 F. Supp. 2d 760, 765 (E.D. Va. 2010). Defendants provide no basis for departing from that basic "interpretive tool[]" here. *Kisor*, 139 S. Ct. at 2416. Nor are Defendants able to explain the implications of their interpretation. Under their reading, § 26.3 *sub silentio* provides the Director apparently boundless authority to schedule and reschedule executions in his discretion, but then simultaneously imposes a duty on the Director to exercise his rescheduling authority in one and only one very narrow set of circumstances. Such an interpretation conflicts with the "text, structure, history, and purpose" of the regulatory scheme. *Kisor*, 139 S. Ct. 2415.

Even if § 26.3 were ambiguous and Defendants' interpretation were reasonable, "the character and context" of the interpretation foreclose deference here. *Kisor*, 139 S. Ct. at 2416. For one thing, the interpretation does not implicate Defendants' "substantive expertise." *Id.* at 2417. Defendants contend they are entitled to deference because of their expertise in "correctional

institutions, schedul[ing] executions, and manag[ing] execution logistics."  Opp. SJ at 9.  But § 26.3 does not implicate that supposed expertise.  To the contrary, § 26.3 is aimed at ensuring that executions are carried out in a manner that respects the judicial process—an area that "falls more naturally into a judge's bailiwick."  *Kisor*, 139 S. Ct. at 2417 (no *Auer* deference "[w]hen the agency has no comparative expertise"); *see also, e.g.*, *FedEx Home Delivery v. NLRB*, 849 F.3d 1124, 1128 (D.C. Cir. 2017) (no *Chevron* deference where interpretive question "involv[ed] no special administrative expertise that a court does not possess" (internal quotation marks omitted)).

The circumstances here also indicate that Defendants' position is merely a "convenient litigating position" instead of a "fair and considered judgment" possibly warranting deference. *Kisor*, 139 S. Ct. at 2417.  Indeed, the *only* prior evidence that Defendants point to in support of their "official position" on the meaning of § 26.3 are three filings from litigation in the last six months (including two short letter briefs).  *See* Opp. SJ at 9.  "The general rule … is not to give deference to agency interpretations advanced for the first time in legal briefs," *Kisor*, 139 S. Ct. at 2417 n.6, as the Government itself recently conceded, *see* U.S. Br. at 30, *Kisor v. Wilkie*, No. 18-15 (U.S. Feb. 25, 2019).  That general rule applies with particular force here, given that only one of the three filings even cites § 26.3—and it does so only in an attachment to the letter brief.  *See* U.S. Letter, *Mitchell v. United States*, No. 18-17031 (9th Cir. July 29, 2020), Dkt. 47.  None of the three filings quotes § 26.3's text, much less purports to analyze it.  On their face, then, these filings do not evidence fair and considered judgment.

Aside from its recent litigation position, Defendants cannot point to a single agency interpretation adopting its current reading of § 26.3(a).  Nor do Defendants identify any agency interpretation that so much as hints that the Director may reschedule an execution while a stay is in effect.  Rather, if anything, their current position "conflict[s] with a prior one," *Kisor*, 139 S.

Ct. at 2417-18, because when the Government initially promulgated the 1993 rule that introduced § 26.3, the Government indicated that it understood the rule to "require[] that the Director appoint a new execution date 'promptly' *upon the lifting of a stay of execution*," Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4,898, 4,900 (Jan. 19, 1993) (emphasis added).  Against this backdrop, Defendants cannot seriously argue that they have reached a "fair and considered judgment" on this question.  *Kisor*, 139 S. Ct. at 2417-18.  Defendants' interpretation accordingly is not entitled to deference.

Defendants' conduct in the *Bourgeois* and *Mitchell* cases does not suggest otherwise.  *See* Opp. SJ at 15-18.  In both cases, the Government set execution dates after stays had been vacated but before the mandate had issued to finalize those orders.  But in neither case were the regulatory and statutory arguments presented here argued and resolved.  Bourgeois simply filed a Rule 28(j) letter notifying the court that the Government had scheduled an execution date even though the plaintiff's petition for rehearing was still pending.  *See* Appellant Rule 28(j) Letter, *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Nov. 20, 2020), Dkt. 55.  He did not ask the court to strike the execution date, and neither the Government nor the court ever addressed the letter.  Mitchell filed a motion to strike an execution date that the Government had also set while a petition for rehearing was still pending.  He made one general reference to the "Code of Federal Regulations" in the introduction to his motion, but presented no specific argument as to § 26.3(a) or the FDPA, nor did any of the other responsive filings.  *See* Appellant Motion to Enforce Stay of Execution at 1, *Mitchell v. United* States, No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48.  The Ninth Circuit denied the motion but did not address § 26.3(a) or the FDPA and provided no reasoning in support of its decision.  *See* Order, *Mitchell v. United States*, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. 52.

### B. Defendants Violated The FDPA

Defendants also violated two specific requirements of Missouri law in setting a January 12, 2021 execution date for Mrs. Montgomery: one mandating that "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered," and one mandating that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month."  Mo. Sup. Ct. R. 30.30(f). As explained, because the FDPA, as interpreted by the D.C. Circuit requires that Defendants implement Mrs. Montgomery's sentence in the manner prescribed by Missouri law, and Defendants have failed to do so, Mrs. Montgomery's execution date must be vacated.  Opening Br. 9-10.

Defendants make three principal arguments in an effort to avoid compliance with Missouri law, but all three fail.  First, Defendants argue that the Missouri requirements in question are not "procedures effectuating death," and therefore are not incorporated by the FDPA.  Opp. SJ at 19. But this misstates the standard under controlling precedent.  The FDPA provides that "the implementation of the [death] sentence" must be "in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  Defendants point to cases in other circuits that have interpreted that provision only to apply to "procedures effectuating death."  Opp. SJ at 19.  But that is not the law in this Circuit.  *See* Opening Br. 16-18.  The en banc D.C. Circuit recognized that Judge Rao's concurrence in *In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I)*, 955 F.3d 106 (D.C. Cir. 2020) (Rao, J., concurring), supplies the governing standard.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II)*, No. 20-5361, slip op. at 3-4 (D.C. Cir. Dec. 10, 2020) (en banc).  There, Judge Rao explained that the "implementation" of a death sentence includes "a range of procedures and safeguards surrounding executions, not just the top-line method of execution."  *Execution Protocol Cases I*, 955 F.3d at 133 (Rao, J., concurring).  Indeed, in describing "details [that] fall under the

umbrella of implementing a death sentence," Judge Rao specifically highlighted regulations governing the "[d]ate" and "time" of executions. *Id.* at 134; *see also Execution Protocol Cases II*, No. 20-5361, slip op. at 3 (Katsas, J., concurring) (only three judges disagreeing with Judge Rao's construction of the FDPA in *Execution Protocol Cases I*); *id.* at 4 (Wilkins, J., dissenting) (four judges describing Judge Rao's opinion as "controlling").[4]  The requirements in Rule 30.30(f) are precisely these types of regulations, and in ignoring them, Defendants have violated the FDPA. Indeed, based on this reasoning, Judge Chutkan recently concluded that the Government violated the FDPA when it failed to comply with a similar Texas statute governing the timing of executions under Texas law.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-782, 2020 WL 7186766, at *6 (D.D.C. Dec. 6, 2020) (holding that because "Defendants did not adhere to Texas law governing the time and date of an execution, they have violated the FDPA").

Second, Defendants argue that because certain provisions of Rule 30.30(f) speak specifically to the duties of Missouri state institutions, the requirements in question should not be read to apply to the federal government.  *See* Opp. SJ at 24.  But Missouri law's reference to the duties of Missouri institutions is unsurprising, and it does not excuse Defendants' obligation to "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  Under Defendants' logic, they could avoid any obligation under state law simply because a state's laws contemplate that all matters relating to implementation of an execution will be carried out by that state's institutions, as Missouri law

---

[4] Defendants argue that *Execution Protocol Cases I* spoke only to the meaning of the "manner" of execution under the FDPA, not the "implementation" of an execution, Opp. SJ at 20, but they misread Judge Rao's controlling opinion.  As Judge Rao recognized, the operative provision of the FDPA contains both terms, and the meaning of "implementation" informs the appropriate reading of "manner."  *Execution Protocol Cases I*, 955 F.3d at 133 (Rao, J., concurring).

does.  This would render the FDPA's requirement that executions be implemented in accordance with state law a meaningless protection.

Third, Defendants argue that Rule 30.30(f)'s limitation on the number of executions is inapplicable to Mrs. Montgomery because no other scheduled federal executions are governed by Missouri law.  Opp. SJ at 25.  But there can be no dispute that the scheduling of three executions in the same week violates Missouri law governing Mrs. Montgomery's execution date.  And the fact that Missouri law is framed as applying to Missouri institutions is not reason to excuse the federal government's compliance with it.  Moreover, that Mrs. Montgomery's "execution is the first execution scheduled for January" does not deprive of her of standing to challenge Defendants' violation of Rule 30.30(f).  Opp. SJ at 26.  The logical purpose of limiting the number of executions that can be conducted in one month is to reduce strain on the capital defense bar, the judicial system, and prison administrators and staff, as well as avoid any specter of mass executions, which might undermine confidence in the justice system.  Here, the Government has scheduled three executions to take place in the same facility, under the authority of the same agencies, in a period of four days.[5]  Carrying out multiple executions in the same week—particularly in the midst of the COVID pandemic—will undoubtedly strain BOP resources, creating the potential for mistakes or complications.  The rule prohibits the first of several impermissibly scheduled executions just as much as it prohibits the last.

## III.   Mrs. Montgomery Is Prejudiced By Defendants' *Ultra Vires* Action

Defendants mischaracterize their illegal action as harmless, Opp. SJ at 33-34, but Defendants' violations of § 26.3(a)(1) and the FDPA clearly prejudice Mrs. Montgomery.  Had

---

[5] U.S. Dep't of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

Defendants complied with the law, they would not have been legally permitted to set her execution date for January 12. *See* Opening Br. 11-12. By setting an unlawfully early execution date, Defendants deprive Mrs. Montgomery of additional days of life, a meaningful opportunity to seek clemency and other legal relief, and the time to which she is entitled to prepare for death. *See* Opening Br. 12-13. These significant harms easily clear the APA harmless-error bar, which is "not … particularly onerous." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (internal quotation marks omitted); *see also Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 535 (D.C. Cir. 2018) (contrasting APA prejudice with "substantially higher" "irreparable harm standard").

Defendants attempt to diminish the harm Mrs. Montgomery will suffer by asserting that the harm is not "legally cognizable." Opp. SJ at 34. But Defendants invent that supposed rule out of whole cloth. All that is required of an APA plaintiff is that she show prejudice from the unlawful agency action; and for the reasons explained, Mrs. Montgomery easily does that here.

Defendants' argument also fails on its own terms. With respect to clemency, the Court's original stay necessarily recognized that Mrs. Montgomery has a legally cognizable interest in seeking clemency with the assistance of her longstanding, qualified counsel. *See* 18 U.S.C. § 3599(e). Defendants' conduct unlawfully shortened the amount of time she had to pursue such relief. Defendants blithely assert that "[t]he Court has already provided sufficient time for the filing of a clemency petition via its prior injunction," Opp. SJ at 34, but the entire point of the regulatory scheme is to give adequate time for a clemency petition to be *considered*. The APA does not require Mrs. Montgomery to show that "additional time would result in more favorable review of her clemency petition." Opp. SJ at 34.

Further, the execution regulations themselves provide Mrs. Montgomery a legally cognizable interest in the timing of her execution. Indeed, when the Government first proposed the Rule establishing these regulations, it explained that one of the purposes was "to enable the prisoner and his immediate family to prepare themselves for the execution." Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536, 56,536 (Nov. 30, 1992). And as the D.C. Circuit has recognized, the FDPA provides Mrs. Montgomery a "*right* to have [her] sentence[] implemented 'in the manner prescribed by the law of the State'" where she was sentenced—a right she would be deprived of here if Defendants' action was permitted to stand. *Execution Protocols I*, 955 F.3d at 144 (Rao, J. concurring) (quoting 18 U.S.C. § 3596(a)) (emphasis added). Defendants offer no response whatsoever to these legally cognizable interests, any one of which easily demonstrates prejudice under the APA.

## IV.   Mrs. Montgomery Seeks Vacatur Under The APA, Not Injunctive Relief

### A.   Defendants Mischaracterize Mrs. Montgomery's Motion For Partial Summary Judgment Of Her APA Claims

Defendants try to recharacterize Mrs. Montgomery's motion for partial summary judgment on her APA claims as a motion for injunctive relief. Opp. SJ at 26-28. But they point to no authority that would deprive her of the ability to seek judgment on her APA claims under Rule 56, or the appropriate remedy: that Defendants' agency action be set aside as unlawful. Supp. Compl. ¶¶ 17-39; *see* 5 U.S.C. § 706(2)(A), (C), (D) (under the APA, courts must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory … authority," or "without observance of procedure required by law"); *see also Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (vacatur of unlawful agency action is the "normal remedy"); *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (vacatur is the "ordinary result" that follows a court's determination that agency action is unlawful).

Defendants' attempt to retreat to a more favorable battleground deliberately conflates vacatur of an unlawful agency action and injunctive relief.   Supreme Court precedent indicates that vacatur and injunctions are distinct forms of relief:

> An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.  If a less drastic remedy (such as partial or complete vacatur of [the agency's] deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010).  A vacatur order takes the unlawful agency action "off the books," *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007), which is an appropriate remedy when a plaintiff successfully establishes that the agency's conduct is unlawful, *see, e.g.*, *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990).  On the other hand, "[a] permanent injunction is a forward-looking remedy, the principal purpose of which is to deter future violations, and not to punish the violator." *Beck v. Test Masters Educ. Servs. Inc.*, 994 F. Supp. 2d 98, 100-01 (D.D.C. 2014) (cleaned up).  Simply put, a vacatur remedies unlawful action that has already occurred while an injunction directs the conduct of a party going forward.  *Cf.* Opp. SJ at 28 (incorrectly describing request as attempt "to evade traditional strictures of equitable relief in seeking to bar *future* agency action" (emphasis added)).

At this stage of the litigation, Mrs. Montgomery is seeking vacatur, not a preservation of the status quo.  In actions arising under the APA, judicial review proceeds on an administrative record, and "[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review."  *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010).  Here, the agency has already compiled and

certified a proper record to enable this Court's APA review.  Dkt. 33; *see* LCvR 7(n).  The case is ripe for an adjudication on the merits.  There is nothing left for the parties to do but ask the Court to review the agency action and determine whether it complies with the APA.  That is exactly what Mrs. Montgomery did here by moving for partial summary judgment.

Defendants argue that because the effect of setting aside the execution would be to require the Government to comply with its own regulations, Mrs. Montgomery's motion for summary judgment should be converted into a request for an injunction.  *See* Opp. SJ at 26-29.  That argument attempts to create a different, heightened standard for APA cases in the execution context.  Indeed, Defendants argue that even accepting the proposition that Mrs. Montgomery's claim is meritorious, Mrs. Montgomery is not entitled to a judgment on the merits because setting aside the agency's action would result in a delay of her execution.  *Id.*  Were the Court to accept Defendants' theory, the results would create a bar on judicial determinations that agency action in the execution context violates the law.  That cannot be the law.  The idea that the federal government cannot be required to comply with governing law when carrying out an execution simply because the context affects an execution is nonsensical.  In fact, that Mrs. Montgomery's life is at stake here is even more reason to require that the federal government follow federal law.

### B.      This Court Should Vacate Mrs. Montgomery's Execution Date

The "default remedy" under the APA—"to set aside Defendants' action"—is the appropriate course here.  *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010); *see also, e.g.*, *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997) ("the practice of the court is ordinarily to vacate").  In this case, both of the factors that courts consider support vacatur of the January 12, 2021 execution date.  *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (courts consider (1) the "seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)," and (2) the "disruptive

consequences" of vacatur) (internal quotation marks omitted)); *accord Matson Navigation Co. v. U.S. Dep't of Transp.*, 471 F. Supp. 3d 60, 63 (D.D.C.), *appeal filed*, No. 20-5219 (D.C. Cir. July 23, 2020).  First, Defendants' action was unlawful.  Defendants lacked the power to designate January 12, 2021 for Mrs. Montgomery's execution date.  Second, no "disruptive consequences" follow from vacatur of Mrs. Montgomery's execution date.  Defendants can reschedule Mrs. Montgomery's execution in accordance with the law upon expiration of this Court's stay.

The cases cited by Defendants are inapposite here.  Contrary to Defendants' assertion (at 28), *In re Fed. Bureau of Prisons' Execution Protocol Cases (In re FBOP)*, 980 F.3d 123, 126 (D.C. Cir. 2020), comes nowhere near "indicat[ing] that the standard for injunctive relief governs execution challenges of this kind."  Opp. SJ at 28.  In seeking summary judgment there, the plaintiffs did not seek vacatur of their execution dates on the grounds that the dates were unlawfully set.  Indeed, their underlying claims did not involve the scheduling of their executions at all.  Rather, plaintiffs brought claims challenging the execution method itself and sought a permanent injunction "barring Defendants from executing [them] until … Defendants' method of execution complied with the" prescription requirement in the Food, Drug, and Cosmetic Act ("FDCA").  Pls.' Mot. for Partial Summ. J. & Perm. Inj. at 15, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Sept. 9, 2020), Dkt. 236; *see also* Pl. Keith Nelson's Cross-Mot. for Summ. J. at 8-9, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Aug. 4, 2020), Dkt. 180 (requesting that Court "enjoin Defendants from executing Mr. Nelson using pentobarbital not subject to a prescription or otherwise in violation of the FDCA").  The D.C. Circuit ultimately affirmed summary judgment in the plaintiffs' favor on their FDCA claims and held that the relevant agency action—the execution protocol—had to be "set aside" under the APA to the extent that it conflicted with the FDCA.  *In re FBOP*, 980 F.3d at 137.  But

the D.C. Circuit denied the prisoners' *additional* request for an injunction on irreparable harm

grounds. *Id.*; *see also In re Fed. Bureau of Prisons*, No. 20-5260 (D.C. Cir. Aug. 27, 2020). In

other words, the D.C. Circuit confirmed that, even in execution cases, vacatur and injunctive relief

are two different remedies subject to two different standards. And again, Mrs. Montgomery seeks

only vacatur here; she merely requests that her January 12 execution date be set aside. The D.C.

Circuit's decision itself confirms the propriety of that remedy in these circumstances.[6]

Defendants' reliance on *LeCroy v. United States*, 975 F.3d 1192 (11th Cir. 2020), is even

more misplaced because that case did not involve the APA. There, the plaintiff filed a motion to

postpone his execution date on the ground that members of his legal team were unable to travel

for in-person meetings. The district court and the Eleventh Circuit both found that this request for

prospective relief was properly characterized as a request for a stay of execution. *Id.* at 1197-98.

Here, by contrast, Mrs. Montgomery does not seek prospective relief. She has brought a

straightforward claim under the APA and seeks the ordinary remedy for such a claim: vacatur.

### C. Even if the Court Construed Mrs. Montgomery's Complaint As A Request For Injunctive Relief, Mrs. Montgomery Would Still Prevail

Even if Mrs. Montgomery were seeking an injunction rather than vacatur, she would still

be entitled to that relief. To determine whether a permanent injunction is warranted, a plaintiff

---

[6] Judge Chutkan's August 20, 2020 Order is not to the contrary. *See* Opp. SJ at 28 (citing *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Aug. 20, 2020), Dkt. 209). That order addressed Keith Nelson's "motion to strike" his execution date because it did not comply with the timing requirements of the execution protocol. *See* Pl. Keith Nelson's Mot. to Strike Defs.' Notice of Execution Date, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. June 19, 2020), Dkt. 101. As Judge Chutkan explained, though, Nelson had not asserted a legal claim on that basis, and any such claim would have in any event failed because the protocol did "not create any legally enforceable rights or obligations." Dkt. 209 at 2-3. Thus, Judge Chutkan concluded that the request to "strike" the date was, in reality, a request to preliminarily enjoin the execution while Nelson's actual claims were pending—just "couched" in different terms. *Id.* at 3. That reasoning has no applicability here because Mrs. Montgomery has asserted claims concerning the scheduling of her execution, and those claims are grounded in binding federal regulations and the FDPA, which undeniably create legally enforceable rights.

must satisfy the following four factors:  (1) "irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006).  Each of these factors weighs in favor of a permanent injunction.

Mrs. Montgomery has suffered irreparable harm due to the unlawful order setting the implementation of her death sentence for January 12, 2021.  Judge Chutkan recently observed that "'[a] prisoner under a death sentence remains a living person and consequently has an interest in his life' pending his execution," but emphasized that "providing fewer days' notice than Plaintiffs may be entitled does not rise to the level of irreparable harm when Plaintiff[] … received the minimum twenty-day notice required by federal law[.]"  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-782, 2020 WL 7186766, at *7 (D.D.C. Dec. 6, 2020) (quoting *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1998) (O'Connor, J. concurring in part and concurring in the judgment)).  Here, Plaintiff has *not* received the minimum notice required by federal law, which requires that notice and a twenty-day period *follow* a stay.  Otherwise, Defendants could execute a prisoner the minute after a lengthy stay, denying a prisoner the ability to pursue legal remedies in the wake of judicial stay.  Moreover, the regulations themselves recognize the importance of the final days of life to someone under a sentence of death.  *See* Dkt. 33 (AR 119-122) (listing preparations of a prisoner prior to execution).  There is no remedy at law that can give someone their last days back.  Finally, the balance of the equities and public interest also favor a permanent injunction.  "The public interest is [also] served when administrative agencies comply with their obligations under the APA."  *N. Mariana Islands v. United States*, 686

F. Supp. 2d 7, 21 (D.D.C. 2009).   By contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

## CONCLUSION

The Court should grant summary judgment in Mrs. Montgomery's favor on Claims I and II in the Supplemental Complaint and vacate Mrs. Montgomery's January 12, 2021 execution date.

DATED:          December 21, 2020

Respectfully Submitted,

*/s/ Sandra L. Babcock*
Sandra L. Babcock
Clinical Professor, International Human
Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504

mvergow@omm.com

Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

*Attorneys for Plaintiff*