UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA M. MONTGOMERY, | |
| *Plaintiff*, | |
| v. | Civil Action No. 20-3261 (RDM) |
| WILLIAM P. BARR, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING
THE HISTORICAL ROLE OF U.S. MARSHALS IN FEDERAL EXECUTIONS**

Pursuant to the Court's request of today's date, Defendants respectfully submit this

supplemental brief describing the historical role of United States Marshals in federal executions:

**1. General Background.** A U.S. Marshal conducted the first federal execution in 1790.

*See* Memorandum from Ted Calhoun to Director Hudson at 1-2 (July 21, 1992), *available at*

https://files.deathpenaltyinfo.org/documents/United-States-Marshals-Federal-Execution-

Documents.pdf (pages 4-5 of 56). Judicial death warrants from 1888 and 1902 ordered the

Marshals to arrange executions by hanging on particular dates between 9:00 am and 4:00 pm. *Id.*

at 2 (page 5 of 56). The orders directed the Marshals to "take the defendant to some 'convenient

place within this district' for the actual executions." *Id.* For at least some executions, the Marshal

was responsible for procuring the gallows and controlling the crowd. *Id.*

In 1937, Congress decreed that "'[t]he manner of inflicting the punishment of death shall

be the manner prescribed by the laws of the State within which the sentence is imposed.'" *In re*

*Fed. Bureau of Prisons Execution Protocol Cases*, 955 F.3d 106, 109 (D.C. Cir. 2020) (per

curiam) (quoting Pub. L. No. 75-156, 50 Stat. 304 (1937)). As of 1971, the United States

Marshals Manual provided that "[t]he United States marshal in the district in which the sentence

of death is imposed shall be in direct charge of the conduct of executions, subject to the

procedures herein set forth and to any supplemental instructions by the Department of Justice."
United States Marshals Manual at 621.06-621.07 (Dec. 15, 1971), *available at*
https://files.deathpenaltyinfo.org/documents/United-States-Marshals-Federal-Execution-
Documents.pdf (pages 9 &11 of 56) ("Marshals Manual"). The Manual also specified that "[t]he
execution shall be carried out at the place fixed in the judgment or order of the court which
imposed the sentence. If no such designation is made by the court, the execution shall be carried
out at the place designated by the Department of Justice." *Id.* at 621.07 (page 9 of 56).

The Marshals did not set execution dates. Prior to 1830, sometimes the courts set
execution dates, and sometimes the President did. *See United States v. Lee*, No. 97-cr-00243,
2020 WL 3921174, at *3 (E.D. Ark. July 10, 2020); Pardoning Power, 7 Op. Att'y Gen. 561, 562
(1855); Death-Warrants, 1 Op. Att'y Gen. 228 (1818). In 1830, the President determined to let
the courts set the dates. *See* Death Warrants, 2 Op. Att'y Gen. 344, 344-45 (1830); *see also*
Pardoning Power, 7 Op. Att'y Gen. at 562-63 (referring to the then-established practice that
"[t]he court sentences, and fixes the day of execution; and unless the President interpose, the
Marshal of the United States proceeds to execution in due time."). As of 1971, the United States
Marshals Manual stated that "[t]he day upon which the execution shall take place shall be fixed
in the judgment or order of the court which imposed the sentence. If only the week is designated,
the marshal shall fix the day of the week. If the court order does not fix the time of day, the
execution shall take place at 'about sunrise' on the day fixed." Marshals Manual at 621.07 (page
9 of 56).

The U.S. Marshals interactions with prison officials changed as the prison system
modernized. "Pursuant to Pub. L. No. 71-218, 46 Stat. 325 (May 14, 1930), Congress established
the Bureau of Prisons within the Department of Justice and charged the agency with the

'management and regulation of all Federal penal and correctional institutions.' The federal prison system had already existed for nearly 40 years under the Three Prisons Act (1891), which authorized the first three federal penitentiaries: USP Leavenworth, USP Atlanta and USP McNeil Island, and had since grown to 11 federal prisons. The wardens functioned autonomously for the most part with limited oversight by a Department of Justice official, the Superintendent of Prisons, in Washington, DC. With the creation of the Bureau of Prisons, the agency assumed the responsibilities of oversight, management and administration of the 11 Federal prisons in operation at the time."[1]

The 1930 Act to Reorganize the Administration of Federal Prisons that established the Federal Bureau of Prisons made clear that convicted prisoners were remanded to the Attorney General: "[h]ereafter all persons convicted of an offense against the United States shall be committed, for such terms of imprisonment and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the Federal Government or otherwise or whether within or without the judicial district in which convicted." Pub. L. No. 71-218, § 7, 46 Stat. 325 (May 14, 1930). *Cf.* 18 U.S.C. § 3596(a) ("A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence.").

---

[1] Federal Bureau of Prisons, *Historical Information: A storied past*, https://www.bop.gov/about/history/#:~:text=325%20(May%2014%2C1930),Prisons%20Act%20(1891)%2C%20which.

Accordingly, by the mid-twentieth century, the law called for a convicted federal prisoner to be committed to the Attorney General—which could have meant a stay in federal prison or a state facility. The last federal execution in the twentieth century provides one example of how the scheme worked before passage of the Federal Death Penalty Act: an execution date (or window) was set by the sentencing court and, when the execution date was imminent, the Attorney General released the prisoner to a United States marshal for execution.

**2.** ***United States v. Feguer***. The last federal execution before the passage of the Federal Death Penalty Act was Victor Harry Feguer, in 1963. "[O]n August 9, 1960, by indictment returned in the Northern District of Iowa, [Feguer] was charged with a violation of the Kidnapping Act, 18 U.S.C. § 1201(a), in that on or about July 11, 1960, he knowingly transported Edward Roy Bartels in interstate commerce from Iowa to Illinois, after the latter was unlawfully kidnapped and held, and in that the victim was not liberated unharmed. Feguer pleaded not guilty." *Feguer v. United States*, 302 F.2d 214, 216 (8th Cir. 1962) (Blackmun, J.).

The U.S. Marshal's role in the case is instructive. While awaiting trial, a deputy United States Marshal transferred Feguer to the United States Medical Center in Springfield, Missouri. *Id.* at 231. That same deputy marshal was assigned the duty of caring for Feguer during the pretrial process. *Id.* Additionally, another jailer at Springfield was deputized as special United States Marshal for the purpose caring for Feguer. *Id.* at 232. "The jury trial from March 1 to 12, 1961, resulted in a verdict of guilty and, as authorized by § 1201(a), in the jury's recommendation that the defendant be punished by death. Accordingly, and pursuant to 18 U.S.C. § 3566 and to § 792.9 of the Code of Iowa, 1958, I.C.A., a sentence of death by hanging was imposed." *Id.* at 216. The sentencing court entered its judgment and sentence the next day, on March 13, 1961. Attachment A ("Feguer Documents") at 8 (docket entry dated March 13,

4

1961). The sentencing court issued an order directing the U.S. Marshal to place Feguer in the custody of the Attorney General. Feguer Documents at 8 (referencing an order regarding custody and the custody transfer to the U.S. Penitentiary at Leavenworth, Kansas).

After the capital sentence was rendered, the U.S. Marshal delivered Feguer to the "U.S. Penitentiary at Leavenworth, Kansas on March 16, 1961." Feguer Documents at 8 (docket entry dated Mar. 20, 1961). The Marshal filed an attested return demonstrating compliance with the Court's order. Feguer Documents at 8 (docket entry dated Mar. 20, 1961). On April 16, 1962, the Eighth Circuit affirmed the capital sentence. *Feguer*, 302 F.2d at 255. The Eighth Circuit entered its mandate on October 18, 1962. Feguer Documents at 9 (docket entry dated Oct. 19, 1962).

On November 2, 1962, the sentencing court issued an order stating that the "imposed death sentence by hanging [was] scheduled for January 15, 1963 at approximately 5:30 a.m. at the Iowa State Penitentiary at Fort Madison, Iowa." Feguer Documents at 9 (docket entry dated Nov. 2, 1962).[2] The sentencing court delivered the order to the U.S. Marshal covering Dubuque, Iowa, and mailed copies to the prosecution, the defense, and to the "Defendant, c/o Warden, U.S. Penitentiary, Leavenworth, Kansas." Feguer Documents at 9 (docket entry dated Nov. 2, 1962). Thereafter, the sentencing court postponed the execution twice, each time delivering the order to the U.S. Marshal covering Dubuque, Iowa, and mailed copies to the prosecution, the defense, and to the "Defendant, Victor Harry Feguer, c/o Warden, U.S. Penitentiary, Leavenworth, Kansas." Feguer Documents at 10. On February 20, 1963, President John F. Kennedy denied

---

[2] Similarly, in the case of the Rosenbergs, "execution of the sentence was set for the week of June 15[, 1953] by the District Judge[.]" *Rosenberg v. United States*, 346 U.S. 273, 279 (1953) (vacating stay of execution granted by Justice Douglas). The Rosenbergs were scheduled for execution during the Sabbath, but they objected and their execution times were moved earlier in the day by the sentencing court. The Rosenbergs were executed under the supervision of the U.S. Marshal on Friday, June 19, 1953, by order of the sentencing court. Their place of execution was Sing Sing Prison, New York. The U.S. Marshal also handled press access for the execution.

Feguer's application for clemency. Feguer Documents at 23, Memo. of the President (Feb. 20, 1963).

On March 5, 1963, ten days before his execution, U.S. Deputy Marshal Walter Broughton and special guard Bernard Skahill escorted Feguer from U.S.P. Leavenworth to Fort Madison for his execution. The U.S. Marshal "place[d] the black silk hood over Feguer's head," and Feguer was executed by hanging on March 15, 1963, pursuant to the sentencing court's order. Clayton, Chris, *Iowa Saw Last Federal Execution The impending death of Timothy McVeigh has brought renewed attention to Victor Feguer's 1963 hanging*, Omaha World Herald (May 8, 2001), 2001 WLNR 13255755; Feguer Documents at 10 (docket entry dated Feb. 1, 1963). On March 19, 1963, the U.S. Marshal filed a "Return as to execution of Judgment and Sentence as to Defendant, Victor Harry Feguer, said execution carried out on March 15, 1963 at the State Penitentiary, Fort Madison, Iowa[.]" Feguer Documents at 10 (docket entry dated March 19, 1963).

**3. 1989 to the FDPA.** In 1989, Congress passed the Ant Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1989), which created the death penalty for certain drug-related offenses and established procedures for imposing a sentence of death but did not create rules for implementing a death sentence, such as rules regarding the method of execution. *See Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992) (proposed rule to be codified in 28 C.F.R. part 26). Prior to enactment of the Anti-Drug Abuse Act of 1988, the federal death penalty had been dormant for more than a decade, after *Furman v. Georgia*, 408 U.S. 238 (1972), and *Gregg v. Georgia*, 428 U.S. 153 (1976).

In 1993, the Department of Justice promulgated regulations to govern various tasks related to scheduling and carrying out the death sentence. Those regulations provide, *inter alia*,

that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a).

Against the backdrop of those regulations placing authority to set execution dates within the authority of the Director of the Bureau of Prisons, Congress passed in 1994 the Federal Death Penalty Act, Pub. L. 103–322, title VI, § 60002(a), 108 Stat. 1967, including the procedures in 18 U.S.C. § 3596 for "Implementation of a sentence of death."

## Conclusion

Defendants respectfully suggest that the historical role of a U.S. Marshal in executions shows that scheduling provisions, including Missouri Supreme Court Rule 30.30(f), are not matters incorporated by the FDPA. This history confirms the FDPA's textual indication that the Marshal's role to "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed" arises only "[w]hen the sentence is to be implemented[.]" The decision about *when* the sentence is to be implemented is a decision antecedent to implementation and thus made by actors other than the Marshal.

Dated:  December 23, 2020                    Respectfully submitted,


                                             TIMOTHY A. GARRISON
                                             United States Attorney
                                             Western District of Missouri

                                             JEFFREY RAY
                                             Deputy United States Attorney
                                             Western District of Missouri

                                             BRIAN P. CASEY
                                             Chief, Appellate Division
                                             Western District of Missouri

                                             */s/ Alan T. Simpson*
                                             ALAN T. SIMPSON, Missouri Bar #65183
                                             J. BENTON HURST, D.D.C. Bar #MO009
                                             DAVID WAGNER
                                             Assistant United States Attorneys
                                             Western District of Missouri
                                             Special Assistant United States Attorneys
                                             District of Columbia

                                             – and –

                                             MICHAEL R. SHERWIN
                                             Acting United States Attorney
                                             District of Columbia

                                             DANIEL F. VAN HORN
                                             Chief, Civil Division
                                             District of Columbia

                                             */s/ Johnny Walker*
                                             JOHNNY H. WALKER, D.C. Bar #991325
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, District of Columbia 20530
                                             Telephone: 202 252 2575
                                             Email: johnny.walker@usdoj.gov

                                             *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2020, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Alan T. Simpson*
Assistant United States Attorney
