O'Melveny

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

December 23, 2020

**Alec Schierenbeck**
D: +1 212 728 5837
aschierenbeck@omm.com

The Honorable Randolph D. Moss
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., N.W.
Washington, DC 20001

**Re:** ***Case No. 1:20-cv-03261-RDM***

Dear Judge Moss:

On behalf of Plaintiff Lisa Montgomery, I write to respond to the Court's December 23, 2020 Minute Order instructing the parties to "file documentation as to the historical question related to the U.S. Marshal" and to respond to three additional requests for information made by the Court during today's hearing on Mrs. Montgomery's motions for partial summary judgment and for clarification of the Court's November 19 Order.

The United States marshal has played a central role in the implementation of federal death sentences since the First Congress. In 1790, Congress provided that the marshal carry out all federal executions. *See* Act for the Punishment of Certain Crimes Against the United States, ch. 9, § 33, 1 Stat. 112, 113 (1790) (providing that it was "the marshal who is to cause such sentence to be executed."). Congress's 1937 reform retained the practice of delegating authority to implement federal executions to the marshal. *See* Act To Provide for the Manner of Inflicting the Punishment of Death, Pub. L. No. 75-156, 50 Stat. 304, 304 (1937) (providing that "the United States marshal" was "charged with the execution of the [death] sentence"). And the Federal Death Penalty Act of 1994 (FDPA) continued to require the "United States marshal" to "supervise implementation." 18 U.S.C. § 3596(a).

Throughout that time, the marshal has consistently been required to implement executions in keeping with date and time requirements prescribed by law, even as the applicable source of law has changed. According to a 1992 Marshals Service memorandum, "there was originally some question over whether the president or the courts would set the actual date" of execution. Memo from Ted Calhoun to Director Hudson at 6 (July 21, 1992) (Calhoun Mem.).[1] In 1818, Attorney General William Wirt issued an opinion providing that the president would set the date in states in

[1] The Marshals Service produced this memorandum in response to a Freedom of Information Act request; the memorandum and other materials produced in that request are available at https://files.deathpenaltyinfo.org/documents/United-States-Marshals-Federal-Execution-Documents.pdf. Citation to the pages in the Calhoun memorandum correspond to the pagination of the PDF available at that URL.

O'Melveny

which the governor issued a death warrant setting the date, and that federal courts would set the date in states in which courts would do so. Death-Warrants, 1 U.S. Opp. Atty. Gen. 228 (1818). "In 1830, President Andrew Jackson 'determined in all cases to leave the execution of the sentence of the law to the discretion of the court, in full confidence that the courts will give a reasonable time for the interposition of executive clemency in cases where it ought to be interposed.'" Calhoun Mem. at 7. And in 1855, the Attorney General determined that federal courts would uniformly "fix[] the day of execution." Pardoning Power, 7 U.S. Op. Atty. Gen. 561 (1855).[2] Today, in requiring that the marshal "supervise implementation in the manner prescribed by the law of the State in which the sentence is imposed," Congress has affirmed that the marshal should implement federal executions in accordance with the date-and-time rules prescribed in state law. 18 U.S.C. § 3596(a); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 133 (D.C. Cir. 2020) (Rao J., concurring) ("the federal government is … bound by the FDPA to follow the level of detail prescribed by state law.").

I would be happy to conduct further research on this subject should your Honor believe it would aid resolution of Mrs. Montgomery's FDPA claim. Your Honor was correct in observing, however, that if Defendants' January 12, 2021 designation is vacated for failure to comply with 28 C.F.R. § 26.3, the Court need not reach the FDPA issue.

I would also like to respond to three additional requests from the Court at this morning's hearing. First, the Court asked whether Mrs. Montgomery could provide additional citations for the proposition that "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Raleigh & Gaston R.R. Co. v. Reid*, 80 U.S. 269, 270 (1871). More recent Supreme Court and D.C. Circuit cases also recognize that same principle. *See Christensen v. Harris Cty.,* 529 U.S. 576, 583 (2000); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 406 (1982); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20 (1979); *Nat'l Rifle Ass'n of Am., Inc. v. Reno*, 216 F.3d 122, 137 (D.C. Cir. 2000).

Second, the Court asked a series of questions about the judgment in Mrs. Montgomery's case in the Western District of Missouri, Case No. 5:05-cr-06002-GAF-1. Apart from the April 4, 2008 Judgment that Mrs. Montgomery filed in a notice of supplemental authority on December 11, 2020, Dkt. 32, Mrs. Montgomery has not identified any other pertinent order from the Western District of Missouri.

Finally, during my opening argument, the Court asked if Mrs. Montgomery had a position regarding whether the newly added sections of the Justice Manual invoked by Defendants in a notice of supplemental authority filed shortly before argument (*see* Dkt. 43) are entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). For several independent reasons, they are not. *First*, counsel for Defendants subsequently clarified at today's hearing that Defendants are not asking the Court to defer to any aspects of the Manual. That concession can be treated as dispositive in these circumstances. *See, e.g.*, *Neustar, Inc. v. FCC*, 857 F.3d 886, 894 (D.C. Cir.

[2] Where the applicable law was not precise, it would sometimes fall to the marshal to pick the exact date and time; if a court would specify a week for execution, the marshal "would pick the exact day and hour" within the week prescribed by law. Calhoun Mem. at 7.

2017) (holding that government can forfeit *Chevron* deference). *Second*, no relevant part of the Manual cites 28 C.F.R. § 26.3(a)(1), much less purports to interpret it. *Third*, even if Defendants had asked for deference here, the entire Justice Manual is not subject to *Auer* because the Manual itself disclaims any authoritative effect, *see* Justice Manual § 1-1.200 (Manual merely "provides internal … guidance," "may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal," and places no "limitations … "on otherwise lawful litigation prerogatives of DOJ"); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019) (explaining that "a court may not defer" when interpretation disclaims authoritative effect). *Fourth*, the sections of the Manual that Defendants invoke were included after Defendants designated Mrs. Montgomery's execution for January 12, 2021; such "*post hoc*" rationalizations are not entitled to deference. *Kisor*, 139 S. Ct. at 2418.

Sincerely,

/s/ Alec Schierenbeck
Alec Schierenbeck

*Attorney for Plaintiff*