Case 1:20-cv-03261-RDM Document 41 Filed 12/24/20 Page 1 of 28

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA MARIE MONTGOMERY,<br>*Plaintiff*,<br>v.<br>JEFFREY A. ROSEN[1] *et al.*,<br>*Defendants*. | Civil Action No. 20-3261 (RDM) |

**MEMORANDUM OPINION AND ORDER**

On November 19, 2020, this Court issued a memorandum opinion and order "briefly staying" the execution of Plaintiff Lisa Montgomery. *See generally Montgomery v. Barr*, No. 20-cv-3261, 2020 WL 6799140, at *11 (D.D.C. Nov. 19, 2020) ("*Montgomery I*"). As the Court explained in its memorandum opinion, the postponement of Montgomery's original execution date—December 8, 2020—was intended to allow her counsel, appointed pursuant to 18 U.S.C. § 3599, to recover from COVID-19 and to file a clemency petition on Montgomery's behalf. *Montgomery I*, 2020 WL 6799140, at *10. To provide Plaintiff's counsel with an opportunity to recover and to file a clemency petition, the Court enjoined Defendants "from executing Plaintiff Lisa Marie Montgomery before December 31, 2020." Dkt. 20. "In light of the Court's injunction and Montgomery's pending request for clemency, the Director of [the Bureau of Prisons ("BOP")] . . . announced" on November 23, 2020 "that Montgomery's execution had been rescheduled for January 12, 2021." Dkt. 22-1 at 6; *see also* Dkt. 21.

[1] Acting Attorney General Jeffrey A. Rosen is substituted for former Attorney General William P. Barr, pursuant to Fed. R. Civ. P. 25(d).

Case 1:20-cv-03261-RDM Document 50 Filed 12/24/20 Page 2 of 28

Two motions are now before the Court. First, Montgomery asks the Court to "clarify" or "modify" its November 19, 2020 Memorandum Opinion and Order to "establish . . . that th[e] Court's stay suspended Defendants' authority to designate a new execution date during the pendency of the stay" and "that nothing in the Court's order relieved Defendants of their independent obligation under federal law to wait until 'the stay is lifted' to designate a 'new date' of execution under 28 C.F.R. § 26.3." Dkt. 28 at 7. Second, she moves for partial summary judgment, Dkt. 35, on both counts of her supplemental complaint, Dkt. 29-1, which challenges the lawfulness of the Director of BOP's order setting the January 12, 2021 execution date on the grounds that his action contravened both 28 C.F.R. § 26.3(a) and the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*

In these overlapping motions, Montgomery raises several arguments. First, in her motion to clarify, she contends that this Court's order staying her execution "'temporarily suspend[ed]'" Defendants' "'authority to act'" with respect to her execution and thus deprived the Director of BOP ("Director") of authority to set a new execution date until after the stay expired. Dkt. 28 at 8 (quoting *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)). Second, in both her motion to clarify and in her motion for summary judgment, she argues that the regulations governing the scheduling of federal executions—28 C.F.R. §§ 26.3, 26.4—barred the Director from setting a new execution date until after the stay was lifted. *Id.* at 9–11; Dkt. 35 at 11–16. Third, in her motion for summary judgment, she contends that because the FDPA borrows "the law of the State in which the sentence [was] imposed" for purposes of supervising the "implementation of the sentence," 18 U.S.C. § 3596(a), the setting of her execution date must comply with a Missouri law that requires at least 90 days' notice before a scheduled execution may occur and

precludes "more than one warrant of execution per month," Mo. Sup. Ct. R. 30.30(f). Dkt. 35 at 16–18.

As explained below, the Court agrees with Montgomery that, when an execution is postponed in light of a stay, the governing regulation, 28 C.F.R. § 26.3(a), prevents the Director from setting a new execution date until after the stay is lifted. Because the Director set the new date here while the stay remained in place, he failed to comply with the regulation and, accordingly, his order must be set aside as "not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," *id.* § 706(2)(D). Having concluded that the Director's order must be set aside, moreover, the Court need not—and should not—reach Montgomery's remaining contentions. Because the regulation bars the Director from setting a new execution date before the stay is lifted, the Court need not decide whether the Court's stay might have independently deprived the Director of authority to reschedule the execution. And it is premature for the Court to decide whether the FDPA and Missouri law require that the Director schedule a new execution date to occur at least 90 days after he acts. Until the Director sets a new date, this question is purely hypothetical. The question, moreover, is not an easy one, and would be better answered with more time than allowed by the very expedited schedule that the parties and the Court now face.

## I. BACKGROUND

The Court has previously recounted much of the relevant background, *see Montgomery I*, 2020 WL 6799140, and, accordingly, will only briefly summarize the facts here. In 2008, Montgomery was sentenced to death for kidnapping resulting in death in violation of 18 U.S.C. § 1201(a). *Id.* at *1. On October 16, 2020, the Director set Montgomery's execution date for December 8, 2020. *Id.* Under Pardon Office regulations, Montgomery had "30 days after

[she] received notification from the Bureau of Prisons of the scheduled date of execution" to file a "petition for commutation of sentence," although the regulations permit a petitioner to supplement her application "no later than 15 days after the filing of the petition itself." 28 C.F.R. § 1.10(b). This meant Montgomery had to file her petition by November 15, 2020, although she could supplement that submission by November 30, 2020.

In early November, the two lawyers with principal responsibility for preparing Montgomery's clemency petition, Amy Harwell and Kelley Henry, fell ill with COVID-19, severely limiting their ability to work on Montgomery's behalf. *Montgomery I*, 2020 WL 6799140, at *2. On November 12, 2020, Montgomery filed suit in this Court, Dkt. 1, and that same day moved for a temporary restraining order and preliminary injunction delaying her execution date until she had a meaningful "opportunity to participate in a clemency process with the assistance of counsel," Dkt. 2 at 1.

The Court set an expedited schedule for briefing and oral argument and issued a decision on November 19, 2020, granting Montgomery's motion in part and denying it in part. *Montgomery I*, 2020 WL 6799140 at * 1. The Court concluded that 18 U.S.C. § 3599 "creates an entitlement to the continuity of representation by qualified counsel through post-conviction review" including clemency proceedings, *id.* at *7; that Harwell and Henry—who were both quite sick—were "unable meaningfully to assist in the preparation of Plaintiff's clemency petition," *id.*; that Montgomery's other counsel lacked the experience or knowledge of her case to "fill the shoes of Harwell and Henry" in the few days remaining to research and to prepare a petition, *id.* at *9; and that, without a postponement of her execution date, Montgomery would be denied access to the critical "fail safe" in the criminal justice system of a meaningful opportunity to apply for clemency, *id.* at *7 (quoting *Harbison v. Bell*, 556 U.S. 180, 192 (2009)).

With respect to the relief sought, Montgomery asked that the Court enjoin Defendants—including the Pardon Attorney—"from taking adverse action relating to her request for reprieve until they provide a clemency process that comports with [due process and] . . . 18 U.S.C. § 3599" and preclude Defendants "from carrying out her scheduled execution until she has had access to and an opportunity to participate in a clemency process with the assistance of counsel that comports with fundamental fairness." Dkt. 2 at 1. The Court declined to issue an order relating to the conduct of the reprieve and pardon process "in light of the constitutional commitment of that authority to the President." *Montgomery I*, 2020 WL 6799140 at *10. Instead, the Court concluded that it was "sufficient . . . to stay Plaintiff's execution—briefly—to permit Harwell and Henry to recover from their illness and to have a short time to finish their work in supplementing Plaintiff's placeholder petition for a reprieve or commutation of sentence." *Id.* The Court, accordingly, "grant[ed] in part and . . . den[ied] in part Plaintiff's motion for a preliminary injunction and temporary restraining order" and entered "an order briefly staying Plaintiff's execution date to permit Harwell and Henry to finalize her clemency petition but [declined to] enjoin any government official, including the President, from taking 'adverse action on her request for reprieve and commutation.'" *Id.* at *11; *see also* Dkt. 20 at 1. The Court further ordered Harwell and Henry to finalize Montgomery's "clemency petition as promptly as possible in light of their illness" and, if necessary, to enlist the assistance of other counsel. Dkt. 20 at 1–2.

On November 23, the Director reset Montgomery's execution for January 12, 2021. Dkt. 21. The following day, Defendants moved to clarify that the Court's order had not relieved Montgomery's remaining § 3599 counsel (Lisa Nouri) or the Office of the Federal Public Defender for the Middle District of Tennessee (Harwell and Henry's office) of their obligations

to continue representing Montgomery in her clemency proceedings. Dkt. 22 at 1. Defendants further asked that the Court order that the Office of the Federal Public Defender, a specific attorney in that office (Henry Martin), and Nouri "begin work on Montgomery's clemency application immediately . . . and make best efforts to file a completed application by December 24, 2020." *Id.* The Court granted that motion in part and denied it in part. Minute Order, Nov. 25, 2020. Although the Court declined to issue a mandatory injunction running against individuals not before the Court, it did clarify "that nothing in [its] order of November 19, 2020, Dkt. 20, relieved Lisa Nouri or the Office of the Federal Public Defender for the Middle District of Tennessee (FPD-MDT) of their obligations, pursuant to 18 U.S.C. § 3599, to represent Plaintiff in post-conviction and clemency proceedings" and that, "[i]n staying Plaintiff's execution date until December 31, 2020, the Court relied on the fact that Nouri and the FPD-MDT would remain obligated to continue representing Plaintiff, along with Amy Harwell and Kelley Henry as soon as they are medically able to do so." *Id.*

On December 9, 2020, Montgomery filed her own motion "to clarify and/or modify" the Court's November 19, 2020 order. Dkt. 28. For two reasons, she contends that the Court's order had the effect of precluding the Director from setting a new execution before the stay expires. First, Montgomery maintains that by staying her execution until December 31, 2020, the Court's order "'temporarily suspend[ed] the source of [the Director's] authority to act'" with respect to her execution, barring even preliminary steps such as setting an execution date. *Id.* at 7 (quoting Nken, 556 U.S. at 428)). Second, she asserts that, by setting a new execution date while the stay was in effect, the Director violated 28 C.F.R. § 26.3(a)(1), which provides: "If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons *when the stay is lifted*." *Id.*

(emphasis added). Because Montgomery's execution date passed on December 8, 2020 as a result of this Court's stay, Montgomery contends that the Director acted prematurely in designating a new date before the stay expired. *Id.* at 10. When the Director does set a new date, moreover, "[t]he Warden of the designated institution [must] notify" Montgomery "of the date designated for execution at least 20 days in advance." 28 C.F.R. § 26.4(a). In other words, in Montgomery's view, the Director may not set a new execution date until the stay expires and, when he does so, he must set the new date at least 20 days from when the Director acts, so that the Warden can provide the required notice.

On the same day that Montgomery moved for clarification and/or modification of the Court's November 19, 2020 order, she also moved for leave to file a supplemental complaint alleging that the Director violated 28 C.F.R. § 24.3(a)(1) when he set a new execution date while the stay was in place[2] and that he violated the FDPA by (1) setting an execution date fewer than 90 days after the order designating the execution date, and (2) by scheduling Montgomery's execution for a month in which two other federal executions are scheduled to take place. Dkt. 29-1 (Supp. Compl.). Montgomery's first claim overlaps with her motion for clarification and/or modification. Her second claim, however, was raised only in her proposed, supplemental complaint. In order to expedite proceedings, Defendants did not oppose Montgomery's motion for leave to file the supplemental complaint, although they reserved their right to argue that the supplemental complaint is "futile," Dkt. 31, and the Court granted Montgomery leave to file the

[2] Although parties agree that the Court's stay was in place when the Director rescheduled Montgomery's execution, they quarrel in the footnotes about whether the stay extends through December 31, 2020 or January 1, 2021. *See, e.g.*, Dkt. 36 at 16 n.1; Dkt. 41 at 13 n.5. To be clear, the Court's November 19, 2020 order enjoined Defendants "from executing Plaintiff . . . before December 31, 2020," Dkt. 20 at 1, and the Court has not subsequently extended that time period.

supplemental complaint "without prejudice to Defendants' right to challenge the complaint on the merits," Minute Order, Dec. 11, 2020. After Montgomery indicated that she intended to move for summary judgment, the Court set an expedited schedule for briefing on that motion and Montgomery's pending motion to clarify and/or modify the Court's November 19, 2020 order. Minute Order, Dec. 11, 2020. Defendants filed the Administrative Record on December 13, 2020, Dkt. 33, and Montgomery filed her motion for partial summary judgment two days later, Dkt. 35.

Montgomery's motion for summary judgment first contends that the Court should set aside the Director's order setting the January 12, 2020 execution date on the ground that it was issued in violation of 28 C.F.R. § 26.3(a) and thus constitutes agency action "not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," *id.* § 706(2)(D). Montgomery's second argument turns on the meaning of 18 U.S.C. § 3596(a), which is the subject of a series of recent decisions from the D.C. Circuit. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, 141 S. Ct. 180 (2020) ("*Execution Protocol Cases I*"); *In re the Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (Dec. 10, 2020 D.C. Cir.) (en banc) ("*Execution Protocol Cases II*"). That section provides that, "[w]hen [a federal death] sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Here, Montgomery was sentenced to death by a federal court sitting in Missouri, and she accordingly contends that Missouri law controls the "implementation" of her sentence. She further argues that the Director's order scheduling her execution for January 12,

2020 violates two provisions of Missouri law, and thus violates the FDPA. Both of those provisions are found in Missouri Supreme Court Rule 30.30(f), which provides, in relevant part, (1) that "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered," and (2) that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month." Mo. Sup. Ct. R. 30.30(f). Because the Director "provided nowhere near the 90 days' notice this rule requires," and because he has "scheduled two additional executions for January 2021," Dkt. 35 at 17, Montgomery maintains that the rescheduled execution date violates Rule 30.30(f), and thus that "a United States marshal" has not supervised and cannot "supervise implementation of [her] sentence in the manner prescribed by" Missouri law, 18 U.S.C. § 3596(a). In Montgomery's view, these flaws mean that the Director's order is "not in accordance with law," 5 U.S.C. § 706(2)(A), "without observance of procedure required by law," *id.* § 706(2)(D), and "in excess of statutory . . . authority," *id.* § 706(2)(C).

Defendants oppose both the motion to clarify and/or modify, Dkt. 36, and the motion for summary judgment, Dkt. 37. The Court heard oral argument on December 23, 2020, and, at the Court's request, the parties made supplemental filings late that same night, Dkt. 44; Dkt. 45.

## II. LEGAL STANDARD

Before turning to the merits, the Court must resolve a threshold dispute: what legal standard governs? In Montgomery's view, the usual summary judgment and administrative law rules apply, and she therefore bears the burden of showing that she is entitled to prevail as a matter of law based on the administrative record. Dkt. 42 at 25–29. In Defendants' view, by contrast, Montgomery must satisfy the heightened showing required for injunctive relief, and

Case 1:20-cv-03261-RDM Document 54-1 Filed 12/28/20 Page 10 of 28

must therefore demonstrate, among other things, that she will suffer an irreparable injury if the Court does not act. Dkt. 37 at 33–36.

The Court is persuaded that the usual summary judgment and administrative law rules govern. Both of the claims that Montgomery presses arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, Dkt. 29-1 at 6–8 (Supp. Compl. ¶¶ 20–36), and where agency action violates the APA, "vacatur"—not an injunction—"is the normal remedy." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014). It may be, as Defendants explain, that vacating Montgomery's execution date "would have [the] compulsory *effect*" of "stop[ping] Defendants from executing her absent compliance with certain conditions." Dkt. 37 at 34 (emphasis added). But vacatur of agency action almost always affects what the agency can—and cannot—do in the future. In the rulemaking context, for example, vacatur prevents the agency from implementing the rule and, at least as a practical matter, it prevents the agency from re-promulgating the same rule without curing the defect that led to vacatur—and then, still, the agency may not make the new rule effective for at least thirty days from its renewed publication, 5 U.S.C. § 553(d), or in some cases for at least sixty days, *id.* § 801(a)(3)(A). In other words, the consequence of almost every order of vacatur is to place limits on future agency action.

Against this backdrop, "the Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would 'have [a] meaningful practical effect independent of [the policy's] vacatur.'" *L.M.-M v. Cuccinelli*, 442 F. Supp. 3d 1, 36 (D.D.C. 2020) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)); *see also OA v. Trump*, 404 F. Supp. 3d 109, 153–54 (D.D.C. 2019). The reason is that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course" or where "a less drastic remedy . . . [is] sufficient to redress" a plaintiff's

injury. *Monsanto*, 561 U.S. at 165–66. Defendants, thus, have the relevant administrative law backwards. If an agency action is contrary to law, the court "*shall* . . . set aside [the] agency action," 5 U.S.C. § 706 (emphasis added); *see also Matson Navigation Co., Inc. v. U.S. Dep't of Transp.*, 471 F. Supp. 3d 60, 63 (D.D.C. 2020) ("[V]acatur is the normal remedy[.]" (quotation marks omitted)), and courts should supplement that remedy with an injunctive decree only in the rare case when necessary.

The Court recognizes, as Defendants point out, that were the Court to "impose[] an affirmative obligation of compliance" on Defendants such that they "would risk contempt" by re-scheduling Montgomery's execution, the injunctive relief factors would apply. Dkt. 37 at 34. But that is not the relief that Montgomery is now seeking. *Compare* Dkt. 35-3 at 1 (Plaintiff's proposed order requesting Defendants be "barred from setting a new date for Plaintiff's execution earlier than January 1, 2021") *with* Dkt. 42 at 29 ("Mrs. Montgomery *seeks only vacatur here*; she merely requests that her January 12 execution date be set aside." (emphasis added)). The Court put this question squarely to Montgomery's counsel at oral argument, and counsel affirmed that Montgomery is not asking that the Court do anything more than vacate the Director's order setting the execution date. The Court must, accordingly, assess Montgomery's claims under the summary judgment standard.

That standard is well established: "In a case involving review of a final agency action under the [APA] . . . summary judgment . . . serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'" *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (quoting *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019)). Here, that standard requires the Court to determine whether the Director's order was "not in accordance with law," 5 U.S.C. § 706(2)(A),

Case 1:20-cv-03261-RDM Document 50 Filed 12/24/20 Page 12 of 28

"without observance of procedure required by law," *id.* § 706(2)(D), or "in excess of statutory . . . authority," *id.* § 706(2)(C).

## III. ANALYSIS

### A. Motion to Clarify and/or Modify

The Court need not pause long over Montgomery's motion to clarify and/or modify the Court's November 19, 2020 order. Dkt. 28. To the extent Montgomery merely seeks to clarify what the Court intended in its earlier order, the Court has previously informed the parties that the issues Montgomery now raises were "not on [the Court's] radar." Dkt. 40 at 4. None of the parties raised any issue relating to 28 C.F.R. § 26.3 or the effect that a stay might have on the Director's authority to set a new execution date, and the Court did not consider either issue of its own accord. Moreover, because the Director had yet to set a new date, the question whether he had the authority to act before the Court's stay issued was not before the Court.

To the extent Montgomery seeks to modify the Court's November 19, 2020 order to void the Director's subsequent order setting a new execution date for January 12, 2021, the Court concludes that her arguments are better raised in the context of her motion for partial summary judgment. First, and foremost, the relief that she seeks is premised on events that occurred after the Court entered its prior order. To be sure, one of her arguments turns on the legal effect of the Court's earlier order—whether, even if the Court did not consider the issue, the Court's order deprived the Director of authority to act as a matter of law? But the Court need not reach that question if, as Montgomery contends, 28 C.F.R. § 26.3(a) has precisely that effect.

The Court will, accordingly, consider Montgomery's motion for partial summary judgment.

### B. Motion for Partial Summary Judgment

Montgomery makes two principal arguments in her motion for partial summary judgment. First, she argues that the governing regulation, 28 C.F.R. § 26.3(a), provides that if an execution date passes as a result of a stay of execution, the Director must wait until the stay is lifted before setting a new date. Because the Director set a new execution date before the stay that the Court issued on November 19, 2020 expired, Montgomery contends that the Director's order setting the new date was contrary to law. Second, Montgomery argues that when Congress enacted the FDPA, it declined to adopt federal procedures for implementing death sentences and, instead, required the United States marshal to "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence [was] imposed." 18 U.S.C. § 3596(a). According to Montgomery, this means that Missouri law applies to the implementation of her death sentence, and under Missouri law, an execution date must be set "at least 90 days . . . after the date the order setting the date is entered," and not "more than one warrant of execution" may go forth per month. Mo. Sup. Ct. R. 30.30(f). And, because the date that the Director set failed to comply with either of these requirements, his order is, once again in Montgomery's view, unlawful and must be set aside.

Because the Court is persuaded by Montgomery's first argument, it rests its decision on that ground alone.

#### 1. *28 C.F.R. § 26.3(a)*

Even before Congress enacted the FDPA, the Attorney General promulgated rules to govern the "Implementation of Death Sentences in Federal Cases." 57 Fed. Reg. 56,536 (Nov. 30, 1992). As the Notice of Proposed Rulemaking ("NPRM") explained, "[t]he United States Code . . . provide[d] for the death penalty for a number of civilian offenses," but "[i]n 1984

Congress [had] repealed" the statute that "provided that executions in Federal cases were to be conducted in the manner prescribed in the state in which the sentence was imposed." *Id.* This "left a need for procedures for obtaining and executing death orders," which the Attorney General sought to fill. *Id.*

Of particular relevance here, the new rules charged the BOP Director with setting "[t]he date, time and place of execution." *Id.* As the NPRM explained, the Attorney General anticipated that "[r]esting determination of the execution date with the Director w[ould] obviate the practice, which is a pointless source of delay in state cases, of seeking a new execution date from the sentencing court each time a higher court *lifts a stay of execution* that caused an earlier execution date to pass." *Id.* (emphasis added). Consistent with this understanding, the final rule applicable here provides that "the attorney for the government shall . . . file with the sentencing court a proposed Judgment and Order," which must state, among other things, that "[t]he sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons."[3] 28 C.F.R. § 26.2(a)(3). The rule then provides as follows:

[3] The judgment in this case authorized "the Attorney General" to specify "[t]he time, place and manner of execution," "provided that the time shall not be sooner than 60 days nor later than 90 days after the date of this judgment." Dkt. 32-1 at 2. The trial court, however, "stayed" execution of its judgment "pending further order of th[e] Court upon receipt of the Mandate of the Court of Appeal." *Id.* Neither party has identified a "further order of th[e] Court" lifting that stay, and neither party has addressed the proviso limiting the Attorney General's discretion to set an execution date to the period between 60- and 90-days following entry of judgment. Because Montgomery does not challenge the Director's order setting her execution date on this ground, and because any such question is, in any event, better directed (if at all) to the U.S. District Court for the Western District of Missouri, this Court expresses no view on the question. To the extent the judgment authorizes the Attorney General, rather than the BOP Director to set the execution date, it appears that the Attorney General was entitled to delegate the exercise of that authorization to the Director. *See* 28 U.S.C. § 510.

> Except to the extent a court orders otherwise, a sentence of death shall be executed:
>
> (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner than 60 days from the entry of the judgment of death. *If the date designated for execution passes by reason of a stay of execution*, then *a new date shall be designated* promptly by the Director of the Federal Bureau of Prisons *when the stay is lifted*.

*Id*. § 26.3(a)(1) (emphases added). Finally, the regulations further require that "[t]he Warden of the designated institution shall notify the prisoner . . . of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution." *Id.* § 26.4(a).

The parties disagree about the meaning of the relevant provision of the regulations. In Montgomery's view, the regulation provides that, if the Director needs to reschedule an execution because a stay prevents the execution from going forward as originally scheduled, he may do so but only "when the stay is lifted." *Id*. § 26.3(a)(1). Defendants, in contrast, maintain that the relevant language does not constrain the authority of the Director to set a new date before the stay is lifted; it merely requires that he "promptly" do so—if he has not already done so—as soon as the stay is lifted. *Id.* And, if that argument fails, Defendants maintain that the regulation does not preclude the Director from setting a new date before the date that was originally set passes, even if that date was nullified by a stay issued before the Director set the new date. For the reasons explained below, the Court concludes that Montgomery has the better reading of the regulation and that Defendants' less convincing reading of the regulation is not saved by resort to *Auer* deference.

Before turning to this textual dispute, the Court must address Defendants' suggestion that the rescheduling regulation does not apply because the Court did not "stay" Montgomery's

execution but, rather, "enjoined" Defendants from carrying out the execution. To start, it is far from clear that Defendants even make this argument. To be sure, they do argue that the Court's November 19, 2020 order was an "injunction" and not a "stay," but they do so in responding to Montgomery's separate argument that—independent of the regulation—the Court's order had the effect of depriving Defendants of authority to take any action in preparation for her execution. Dkt. 37 at 17-26. In the preceding section of their opposition brief, where they respond to Montgomery's regulatory argument, however, Defendants merely say: "Even setting aside the fact that 28 C.F.R. § 26.3(a)(1) uses the term 'stay' rather than 'injunction,' Defendants fully complied with § 26.3(a)(1)." Dkt. 37 at 12. That is not enough to preserve the argument.

It is not surprising that Defendants decline to press this argument because it misses the mark by a wide margin. For purposes of interpreting the regulation, the question whether the Court's order "might technically be called an injunction is beside the point." *Nken*, 556 U.S. at 430. What matters is whether treating the Court's order as a "stay" for purposes of the regulation comports with the "'specific context in which [the regulatory] language issue is used, and the broader context of the [regulation] as a whole.'" *Id.* at 426 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, (1997)). Here, common usage leaves little doubt that the phrase "stay of execution" encompasses orders that directly preclude an execution from going forward on the scheduled date. In similar circumstances, the Supreme Court has used the phrase "stay of execution" to refer to a judicial decree postponing an execution. *See* Order, *Barr v. Hall*, 20A102 (Nov. 19, 2020) (vacating a "stay of execution" by setting aside "the injunction entered by the District Court"). And indeed, even here, Defendants themselves have repeatedly referred to the relief that Montgomery sought and received as a "stay," Dkt. 12 at 12 ("[B]ecause Montgomery seeks a stay of execution . . ."); *id.* at 24 ("§ 3599 affords [no] basis to stay an

execution . . ."); Dkt. 22-1 at 2 ("Twelve days ago, Montgomery sought a stay of her scheduled execution . . ."); *id.* at 9 ("It would also eliminate the need for further stays"), as have both the Court, *Montgomery I*, 2020 WL 6799140 at *11 ("briefly staying" Montgomery's execution), and Montgomery, Dkt. 13 at 9 ("These values . . . favor granting a stay of execution to ensure Mrs. Montgomery has access to the historical fail-safe of executive clemency.").

Finally, any doubt about this question is put to rest by the text of § 26.3 itself. Refuting any suggestion that the drafters of the regulation intended to limit the meaning of the word "stay" to those decrees that temporarily suspend the judgment of the district court imposing the sentence of death, Dkt. 37 at 18, the regulation provides that, "[u]nless the President interposes, the United States Marshal shall not *stay* execution of the sentence on the basis that the prisoner has filed a petition for executive clemency." 28 C.F.R. § 26.3(b) (emphasis added). Thus, far from relying on the technical distinction between an injunction and a stay—a distinction that was not elucidated under the case law until years after the regulation was promulgated, *see Nken*, 556 U.S. at 428–31—the regulation uses the word "stay" expansively, if not colloquially.

Although Defendants' next argument stands on slightly firmer ground, the Court is also unpersuaded by their contention that § 26.3(a) imposes no limitation on the Director's authority to act while a stay is place. In Defendants' view, § 26.3(a) was adopted to require that the Director move promptly in setting a new execution date when the original date was delayed by reason of a stay; the goal was expedition, and any reading of the rule that would preclude the Director from acting before the stay is lifted would frustrate that goal. That construction, however, faces two significant problems.

First, that is not the best reading of the text. Section 26.3 grants the Director broad discretion to set the original execution date, so long as the date is "no sooner than 60 days from

Case 1:20-cv-03261-RDM Document 47 Filed 12/24/20 Page 18 of 28

the entry of the judgment of death." 28 C.F.R. § 26.3(a)(1). The regulation then recognizes that this original date might "pass[] by reason of a stay of execution." *Id.* If that happens, the regulation then says what should happen: "a new date shall be designated promptly by the Director of the Federal Bureau of Prisons *when the stay is lifted*." *Id.* (emphasis added). The meaning of that provision is both plain and at odds with Defendants' contention that the regulation authorizes the Director to set "a new date" before the stay is lifted if he decides to do so.

To be sure, the regulation does not explicitly say that the Director may not set a new date until the stay is lifted. But as the Supreme Court has explained, courts presume that "[w]hen a statute [or regulation] limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris Cnty*., 529 U.S. 576, 583 (2000) (internal quotation marks omitted) (quoting *Raleigh & Gaston R.R. Co. v. Reid*, 80 U.S. 269, 270 (1871)); *Nat'l Rifle Ass'n of America, Inc. v. Reno*, 216 F.3d 122, 137 (D.C. Cir. 2000); *see also* 2A Sutherland, *Statutes and Statutory Construction §* 47.23 (Norman J. Singer & J.D. Shamble Singer, eds., 7th ed. 2020). Here, the "thing to be done" is rescheduling after an execution date lapses by reason of a stay, and the "particular mode" is "promptly . . . when the stay is lifted." The regulation defines what the Director should do and when he should do it.

Defendants' contention that the rescheduling provision applies only after the stay is lifted, and otherwise imposes no requirement on the Director, rewrites the sentence. Under their interpretation, the sentence should read: "If the date designated for execution passes by reason of a stay of execution and if the stay is lifted, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons." In other words, if a phrase is intended to narrow the applicability of a requirement rather than modify the requirement, one would expect the phrase

to appear in the conditional part of the sentence. But here, "when the stay is lifted" appears in a series of modifiers that act upon the requirement that "a new date shall be designated." The date shall be designated (1) "promptly," (2) "by the Director of the Federal Bureau of Prisons," (3) "when the stay is lifted."

The second problem with Defendants' argument is that it turns on the premise that the rescheduling provision was adopted to promote expedition—and only to promote expedition. As an initial matter, that contention is hard to square with the fact that, at most, 20 days separates the parties' competing constructions of § 26.3(a). Under Defendants' view, the Director is allowed to reschedule an execution before the stay is lifted, although all agree that he may not set an execution to occur while the stay is in effect. Under Montgomery's reading of the regulation, in contrast, the Director must wait until the stay is lifted and, if the stay was in effect for more than 20 days, he must provide the prisoner with 20 days' notice before the execution occurs. Twenty days is not a lengthy delay in the administration of the death penalty.

But more importantly, Defendants ignore the actual purpose for the rule reflected in the NPRM. Although the discussion is brief, the NPRM explained that "[t]he rule [was] necessary to ensure orderly implementation of death sentences." 57 Fed. Reg. at 56,536. And, as explained above, the NPRM further explained that the rule vested the Director with authority to set and to reset execution dates to "obviate the practice . . . of seeking a new execution date from the sentencing court each time a higher court lifts a stay of execution that caused an earlier execution date to pass." *Id.* The NRPM does not suggest that any prosecutor would have returned to the sentencing court to ask the judge to set a new execution date before "a higher court lift[ed] a stay of execution," and it does not suggest that the new rule authorized the Director to proceed otherwise on his own.

Case 1:20-cv-03261-RDM Document 54-1 Filed 12/28/20 Page 20 of 28

At least at times, moreover, it is far from clear that the Director could do so without running afoul of the courts. To take one example from shortly before the NPRM was issued, the Eighth Circuit "emphatically disapprove[d]" of the practice of moving a petitioner from his cell "to a special holding area" in preparation for his execution while a stay remained in effect, so the state could "carry out the sentence promptly . . . if the motion to vacate the stay [was] granted." *Smith v. Armontrout*, 825 F.2d 182, 184 (8th Cir. 1987). In that case, the court observed, if the "stay of execution [is] dissolved, respondent will be at liberty both to prepare to carry out the sentence, and actually to carry it out," but "[u]ntil that time, the petitioner should not be subjected to the 'preparations' that we have described." *Id.* It does not require a leap of logic to extend that admonition, at least in some contexts, to "the setting of an execution date" while a stay is in effect. *State v. Joubert*, 518 N.W.2d 887, 897–98 (Neb. 1994). Moreover, even assuming that the stay at issue in this case did not independently deprive the Director of authority to set an execution date, it is easy to conclude that the "orderly implementation of death sentences" would be served by absolving the Director of responsibility to determine which stays deprive him of authority to act, and which do not, and to adopt a blanket rule simply providing that the Director should act promptly to set a new date *after* the stay is lifted. Indeed, construing the rule to avoid disputes about the Director's authority to act while a stay is in place seems more likely to promote expedition, than to detract from it.

"Defendants' alternative argument is equally unavailing. Turning back to the regulatory text, they argue that the Director did nothing wrong here because he reset Montgomery's execution date before December 8, 2020—when the execution was set to occur but for the Court's stay—and the rescheduling provision applies only "[i]f the date designated for execution passes by reason of a stay of execution," 28 C.F.R. § 26.3(a). As Defendants explain their

argument, because "[t]here can only be one date designated for execution at any particular time," the rescheduling limitation applies, if at all, only after the designated date has passed, and, here, the date that is now operative—January 12, 2021, has not yet passed. Dkt. 37 at 13.

The Court is, once again, unpersuaded and concludes that the relevant events and regulation are better understood as follows: The initial date designated for Montgomery's execution was December 8, 2020; on November 19, 2020, the Court ordered that the execution not go forward on that date; on November 23, 2020, the Director rescheduled Montgomery's execution because of the Court's November 19, 2020 order. Against this backdrop, and notwithstanding the Director's intervening act, the Court has little doubt that the December 8th date passed "by reason of" the Court's "stay of execution." First, contrary to Defendants' contention, the Court concludes that the phrase "date designated for execution" refers to the date of execution subject to the Court's stay, not whatever date the Director subsequently sets. This reading of the regulation makes sense of the overall provision, which, in the first sentence, instructs the Director to set a date for execution, and in the second, permits the Director to set a subsequent date "when the stay is lifted." 28 C.F.R. § 26.3(a)(1). Second Defendants never suggest—nor could they suggest—that the December 8, 2020 execution date would have passed had the Court not issued its stay or that the date passed for some other "reason." 28 C.F.R. § 26.3(a)(1). To be sure, had the Director set a new date for reasons unrelated to the stay, Defendants might have an argument. But, as explained, that is not what happened, and as long as the December 8th date passed because the Court entered a stay—which is indisputably what happened here—§ 26.3(a) is best construed to require that the Director wait until after the stay is lifted to set a new date.

Defendants offer no sensible rationale for the construction of the rule that they propose. The consequence of Defendants' interpretation is that the BOP Director enjoys full discretion to reschedule up to and including on the date of execution but is paralyzed thereafter until the stay is lifted. Defendants laud their interpretation as sensible because it "does not *require* the Director to designate a new date before the stay terminates, [as] there may be circumstances—particularly if the stay is indefinite—when doing so would not be practicable." Dkt. 36 at 28. But they fail to offer any plausible explanation for why the Director is empowered to act before the date passes but not after. Moreover, in the case of indefinite stays, Defendant's reading of the regulation would encourage the Director to engage in an ongoing relay race with himself, during which he repeatedly sets and resets the execution date just before it passes to avoid the loss of authority to reschedule before the stay is lifted. Such a result can hardly be deemed to advance the "orderly" implementation of death sentences.

The Court is also unpersuaded that either of Defendants' readings of § 26.3(a) is saved by *Auer* deference. Dkt. 37 at 16–17. Under the Supreme Court's decision in *Auer v. Robbins,* 519 U.S. 452 (1997)—and the Court's early decision in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)—a court must at times defer "to an agency's interpretation of its own ambiguous regulation," *Christopher v. SmithKline Beecham Corp*., 567 U.S. 142, 155 (2012). Here, Defendants maintain that the Court should defer to their reading of § 26.3(a) because the regulation is ambiguous and because their reading "is reasonable." Dkt. 37 at 16. They further contend that their reading of the regulation represents "Defendants' official position, as demonstrated by the scheduling of executions for Montgomery," and two other prisoners—Lezmond Mitchell and Alfred Bourgeois—"while a stay or injunction was in effect, and numerous legal filings addressing the issue, including [their] brief" in this case. *Id.*

"*Auer* deference," however, "is not the answer to every question of interpreting an agency's rules." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). It applies "only if a regulation is . . . genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation," and, even then, it is subject to important "limits." *Id.* For one thing, the interpretation must reflect "the agency's 'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's views." *Id.* at 2416 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 257–59 & n.6 (2001) (Scalia, J., dissenting)). For another, "the agency's interpretation must in some way implicate its substantive expertise," as opposed to the type of "interpretative issue[s]" that might "fall more naturally in the judge's bailiwick." *Id.* at 2417. And, finally, the interpretation "must reflect" the agency's "'fair and considered judgment' to receive *Auer* deference," as opposed to "a merely 'convenient litigating position' or 'post hoc rationalization[] advanced' to 'defend past agency action against attack.'" *Id.* at 2417 (quoting *Christopher*, 567 U.S. at 155). This final limitation generally forecloses deferring "to agency interpretations advanced for the first time in legal briefs," at least when the agency is a party and has not "expressed its views . . . in response to the Court's request." *Id*. at 2417–18 n.6.

Here, the Court is unpersuaded that § 26.3(a) admits of the type of ambiguity that *Auer* demands. A regulation is not ambiguous merely because its meaning is not self-evident at first blush or merely because lawyers are capable of making colorable arguments on both sides of a dispute. Rather, a rule is "genuinely ambiguous" only if, after the court "exhaust[s] all the 'traditional tools' of construction," and "only when th[e] legal toolkit is empty," the court concludes that "the interpretive question still has no single right answer." *Id.* at 2415 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, n.9 (1984)). For the

reasons explained above, the meaning of § 26.3(a) is susceptible to legal interpretation. This is not a case in which a gap is left to fill based on policy judgment or agency expertise.

Nor can Defendants point to any evidence that the Department of Justice engaged in the type of "authoritative, expertise-based, 'fair[, or] considered judgment'" that *Auer* requires. *Id.* at 2414 (quotation omitted). The record indisputably reflects that the Director decided to reset Montgomery's execution date while this Court's stay was in effect, Dkt. 33 at 177–79, but it contains no evidence that anyone from the Department of Justice—much less an "authoritative" source—ever considered whether § 26.3(a) precluded the Director from acting while the stay was in effect. The position taken in Defendants' briefs, moreover, constitutes the type of post hoc rationalization or "convenient litigating position" that does not merit deference. *Kisor*, 139 S. Ct. at 2417. Likewise, nothing in the *Mitchell* and *Bourgeois* cases counsels in favor of deference. Defendants fail to identify anywhere in the administrative records or briefs that an "authoritative" source considered the meaning of the rescheduling provision of § 26.3(a) and concluded that it was reasonably construed to have the meaning Defendants press in this case. To the contrary, only one of the litigation filings makes any reference to § 26.3(a), and that filing merely attaches a rescheduling letter that, like the letter in this case, cites to § 26.3(a)(1) without any explanation or elaboration.[4] Dkt. 38 at 129. And, finally, the *Mitchell* and *Bourgeois* cases

[4] In fact, the one case in which the Department of Justice has even made passing reference to § 23.6(a) weighs against the interpretation Defendants offer here. In a Supreme Court brief in opposition to an application for a stay of execution and to a petition for a writ of certiorari, the Solicitor General responded to the petitioner's contention "that the government lack[ed] a compelling interest in proceeding because it did not schedule the[] executions immediately after petitioners exhausted their post-conviction proceedings in 2014 and 2015." Brief for the United States at 21, *O'Keefe v. Barr*, Nos. 20A11, 20-23, 2020 WL 4015846 (U.S. July 2020). The Solicitor General explained that, "[t]hrough no fault of the government's, [the] execution date[s] [were] stayed until June 12, 2020," and "*once the stay was lifted*, BOP promptly rescheduled the executions, *consistent with the applicable regulation*," § 26.3(a)(1). *Id.* (emphasis added). Although also a litigation position, and although far from definitive, this passage at least suggests

differ from the present case in a significant respect; in both of those cases, the appellate court had issued its decision vacating the stay, although the court had yet to issue its mandate. Dkt. 38 at 125–26, 167–68.

The Court, accordingly, concludes that the Director's order setting a new execution date while the Court's stay was in effect was "not in accordance with law," 5 U.S.C. § 706(2)(A), and was "without observance of procedure required by law," *id.* § 706(2)(D). "[T]he default remedy" under the APA "is to set aside Defendants' action," *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010); *see also* 5 U.S.C. § 706, and Defendants offer no sound reason to depart from that approach here. This is not a case, for example, where a rule merely lacks adequate support, which the agency can readily cure on remand. *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Indeed, the only way to cure the error is through rescission of the order setting the execution date and leaving it to the Director to designate a new date after the stay is lifted.[5]

---

that the Department understood § 26.3(a)(1) to preclude the setting of a new date until after the stay was lifted. Otherwise, it is difficult to understand how the reference to § 26.3(a)(1) furthered the Department's contention that it was not responsible for the delay that the petitioners raised.

[5] Defendants ask the Court, in the event it finds a regulatory violation, to modify its order to allow the BOP Director to "permit the execution to proceed as early as December 31." Dkt. 36 at 32–33. By its terms, 28 C.F.R. § 26.3 applies "[e]xcept to the extent a court orders otherwise." As an initial matter, it is unclear whether this proviso is directed at the sentencing court, the court that has issued the stay, or both; the clause, for example, applies to a range of actions that seem to fall within the discretion of the sentencing court, such as setting a date and place for execution of the sentence and the method of execution. But even assuming that the proviso applies to this Court, Defendants have failed to offer good reason to depart from the usual application of § 26.3(a) in this case. Requiring that the Director wait until after the stay expires to set a new execution date will provide Montgomery with additional time to complete her clemency petition, and Defendants provide no convincing argument why shortening that time would serve the interests of justice. Finally, to the extent that Defendants seek modification of the Court's November 19, 2020 order, they have not filed a motion seeking that relief.

This, then, leaves Defendants' observation that the court must take "due account . . . of the rule of prejudicial error," 5 U.S.C. § 706, and contention that Montgomery cannot "demonstrate prejudice" because she has not shown that "additional time would result in more favorable review of her clemency petition or materially change her ability to prepare for her death sentence, which she has had over 15 years to contemplate." Dkt. 37 at 40-41; *but see Montgomery I*, 2020 WL 6799140, at *1 (noting that Montgomery was sentenced to death in 2008).

A party challenging an act taken by an agency must prove more than a mere legal violation; the party also bears "[t]he burden to demonstrate prejudicial error." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010). This burden is not "a particularly onerous requirement," however, *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009), and "[if] prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further," *Jicarilla*, 613 F.3d at 1121; *see also SW Gen., Inc. v. NLRB*, 796 F.3d 67, 80–81 (D.C. Cir. 2015).

Here, the prejudice to Montgomery is obvious. As she explains, the Director's order diminished the time that she has "to seek legal relief from her death sentence," including through the clemency process, and to "'prepare, mentally and spiritually, for [her] death.'" Dkt. 35 at 19 (quoting *Ford v. Wainwright*, 477 U.S. 399, 421 (1986) (Powell, J., concurring)). Although Defendants are correct that Montgomery has not, and cannot, prove that this additional time will yield a commutation of her sentence, such proof is not required. When a court is uncertain whether remedying agency error will lead to a plaintiff's ultimate goal—in this case, clemency—that "uncertainty is sufficient to conclude that [the plaintiff] has carried [her] burden." *SW Gen.*, 796 F.3d at 80–81. Here, a later execution date will allow more time for Montgomery to pursue

her clemency petition, and perhaps that time will have an effect on its success.[6] The Court therefore finds it appropriate to vacate her date of execution.

2. *18 U.S.C. § 3596*

Having concluded that Montgomery is entitled to the relief that she currently seeks—vacatur of the Director's order setting her execution date while the Court's stay was in place—the Court will not address Montgomery's alternative argument under the FDPA for two related reasons. First, given the Court's holding with respect to § 26.3(a), it is unnecessary to address her FDPA claim, which poses a host of difficult issues that, if possible, are better left for resolution on a less compressed timetable. Indeed, the proper interpretation of the FDPA has divided the D.C. Circuit. *See Execution Protocol Cases I*, 955 F.3d at 108; *Execution Protocol Cases II*, No. 20-5361, slip op. at 3–4. Second, in light of the Court's conclusion that the Director's existing order must be set aside, the question whether a new order must provide Montgomery with at least 90 days' notice is hypothetical and not ripe for resolution. The Court asked counsel for Defendants at oral argument whether Defendants had decided how they would proceed if the Court were to rule in Montgomery's favor with respect to § 26.3, and counsel indicated that he did not know. Absent a decision by the Director about when he will set a new date, and how much notice he will provide Montgomery, resolution of Montgomery's FDPA claim is premature. Montgomery herself acknowledged in a supplemental filing "that if

---

[6] Defendants note that Judge Chutkan "recently recognized[] [that] even if a court believes a statute affords a condemned prisoner additional days of life, providing fewer days' notice does not rise to the level of irreparable harm when the prisoner has been under a death sentence for well over a decade and has received notice well in advance of the execution." Dkt. 36 at 34 (citing *In re Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, 2020 WL 7186766, at *7 (D.D.C. Dec. 6, 2020)). Because Judge Chutkan was applying the higher "irreparable harm" standard applicable in injunctions, her reasoning is inapposite here.

Defendants' January 12, 2021 designation is vacated for failure to comply with 28 C.F.R. § 26.3, the Court need not reach the FDPA issue." Dkt. 45 at 2.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Montgomery's motion for summary judgment, Dkt. 35, as to Defendants' violation of federal regulations, 28 C.F.R. §§ 26.3 and 26.4 (Claim I), and **VACATES** the Director's November 23, 2020 order setting a new execution date while the Court's November 19, 2020 stay was in effect. In light of the vacatur, the Court **DENIES** Montgomery's motion to clarify, Dkt. 28, as moot. The Court does not reach Montgomery's claim that Defendants violated the FDPA (Claim II).

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: December 24, 2020