IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA MARIE MONTGOMERY,
Plaintiff,
vs.
WILLIAM P. BARR, et al.,
Defendants.
_______________________________/

Civil Action
No. 1:20-cv-3261
Washington, DC
December 23, 2020
11:04 a.m.

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: ALEC SCHIERENBECK
O'Melveny & Myers
7 Times Square Tower
New York, NY 10036

SANDRA L. BABCOCK
ZOHRA AHMED
Cornell University Law School
157 Hughes Hall
Ithaca, NY 14853

EDWARD UNGVARSKY
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314

For the Defendants: ALAN SIMPSON
U.S. Attorney's Office for the
Western District of Missouri
400 E. 9th Street, Suite 5510
Kansas City, MO 64106

Court Reporter: JEFF M. HOOK
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Washington, DC 20001

**P R O C E E D I N G S**

**DEPUTY CLERK:** This is civil action 20-3261, Lisa Marie Montgomery vs. William P. Barr, et al. Appearing for plaintiff, Sandra Babcock, Zohra Ahmed, Edward Ungvarsky and Alec Schierenbeck. Appearing for defendants, Alan Simpson.

**THE COURT:** Welcome, all. I'll remind you all once again that under the Court's rules and the Chief Judge's standing order, it's not permitted to record or to rebroadcast today's proceedings, and I'm going to order that nobody do so. I'll ask that everyone mute your telephones when you're not speaking so we don't get feedback. Please speak into the handset when you are -- when it is your turn so that we can hear you clearly. And please introduce yourself by name each time that you speak so we have a clear record.

We're here today on the plaintiff's motion to clarify the Court's order, and on plaintiff's motion for partial summary judgment. So I will hear from plaintiffs first.

I don't know, is it Mr. Schierenbeck or Ms. Babcock -- Professor Babcock who's speaking on behalf of the plaintiffs today?

**MR. SCHIERENBECK:** Your Honor, this is Alec Schierenbeck, and I'll speaking on behalf of plaintiffs today.

**THE COURT:** Okay. Well, go ahead, please.

**MR. SCHIERENBECK:** Wonderful. Good morning, your Honor.

**THE COURT:** Good morning.

**MR. SCHIERENBECK:** I can begin however you'd like, your Honor, but I was planning to start with our motion for summary judgment and the text of the regulation 26.3.

**THE COURT:** That's fine.

**MR. SCHIERENBECK:** Great. Well, our reading of 26.3, your Honor, under which the director cannot reschedule a date until, as the text specifies, when the stay is lifted is confirmed by the text, the context, the logic and the purpose of that regulation. On the text, the regulation uses the mandatory term shall, and it specifies the director must, quote, designate a new date, quote, when the stay is lifted. That phrase, when the stay is lifted, modifies the verb designate which the Government hasn't disputed. So the command is that the director designate a new date only when the stay is lifted.

Now, the Government has put forward two readings of the regulation that permit its action here. Neither are tenable. The first, I think, is they say the whole purpose of the second sentence is merely to ensure prompt rescheduling. And so the sentence doesn't limit the Government's ability to designate a new date at all at any

time during a stay. It's simply a duty to designate after a stay is lifted, if the director hasn't done so prior.

But it's a basic tenet of the interpretation of any text that when a statute or a regulation provides that a thing shall be done in a certain way, it carries with it an implied prohibition against doing it in any other way. Or as the Supreme Court stated as far back as 1871 in the Raleigh case, when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode. And that's precisely what happened here, the regulation --

**THE COURT:** I'm sorry to interrupt, but in support of that proposition, you cite to Sutherland and you cite to that case from 1871.

Any case law more recent than 1871 that says the same thing?

**MR. SCHIERENBECK:** Absolutely, your Honor, and I can have that for you in a moment.

**THE COURT:** Okay.

**MR. SCHIERENBECK:** It's been cited in the last decade by the Supreme Court and circuit courts as well. We cited the Raleigh v. Reid case to show how far back that proposition goes. And I think it is a basic tenet -- it's also cited, your Honor, in the Garner and Scalia Reading Law text which goes exhaustively through the history of that proposition.

Now, if the Government is right, and if the purpose of that provision is just promptness, then why specify at all that designation should occur when the stay is lifted? In fact, if the director can redesignate during a stay, why does the provision speak to a stay at all? The Government's interest in prompt rescheduling is presumably the same for whatever reason an original date passes. But this sentence doesn't speak to any reason that a date may pass, it speaks to when a date passes by reason of a stay. So that says that the stay is something different and something special that the regulation called out that prescribed when and how a director should react to the passing of a date in response to a stay.

We also point out, your Honor, that to the extent the Government is saying that the general discretion of the director in the first sentence of 26.3(a)(1) is the reason why the director had his power here, well, the basic canon that the specific governs the general means that the specific prohibition in the second sentence overrides and controls the general discretion in the first sentence.

Now, the Government also argues that here there's no problem in the second sentence, because the director -- because the date that was originally designated didn't pass. The director acted before the date passed, and the statute references if the date passes by reason of a stay. But

again, if that were a plausible reading of the provision, then why would the provision specify that re-designation should occur only, quote, when the stay is lifted?

The Government's reading also leads to a bizarre consequence, your Honor. It would mean that the director has unfettered discretion before the date passes, but then his authority is frozen until after the date passes. Now, the passing of the date alone isn't some magic event. The legally consequential event, your Honor, is the stay going into effect.

Now, the Government has made a lot of work in its opposition papers saying that Auer rule serves no purpose. But the purpose of the rules that promulgated -- that contain 26.3 and 26.4 is to ensure the, quote, orderly implementation of death sentences. That's the stated purpose in the notice of proposed rulemaking. And together 26.3 and 26.4 serve that purpose by ensuring that after a stay is lifted, there will be a 20-day period of daylight so that a plaintiff can consider and pursue appropriate legal remedies in the wake of a stay being lifted, so that appellate courts can review.

Now, in the Government's view, by contrast, it could schedule an execution for a minute after a stay expires, which would frustrate the ability of courts like your Honor to review their own decisions or reconsider

decisions; would frustrate judicial review; and would be a recipe for dysfunction as plaintiffs fearing an execution that could occur one minute after a stay expires would file rushed pleadings and perhaps even interlocutory appeals to try to head off that.

**THE COURT:** But that can happen in the circumstances in which the execution date has not been moved, right? So if the execution date is scheduled for December 8th, and there's a rush up to that execution date, and there is a stay that is lifted at 11:00 p.m. on December 8th, the execution can take place before midnight. And that actually often happens.

**MR. SCHIERENBECK:** It can, your Honor.

**THE COURT:** The disorder you're talking about does occur frequently. And in fact, it's probably more typical than not in the death penalty, right?

**MR. SCHIERENBECK:** Your Honor, it certainly can occur that way. Of course, in that context, all of the relevant parties and the court are aware of the date. So you don't have this situation where a notice happens after a lengthy stay with -- to designate a date that will occur quite shortly thereafter to frustrate review. But it's true that that does occur. I think the regulations, however, contemplate preventing a different kind of dysfunction where a lengthy stay has been in effect and no date has been

designated.

We also think that our reading of the statute is confirmed by the context here, your Honor, the background rule and the general practice that a stay suspends the Government's ability to designate a new date. Now, the Government recognized that general practice in 1993 when it promulgated these rules. It said that 26.3 would, "Obviate the practice which was common in state cases of seeking a new execution date from the sentencing court each time a higher court lifts a stay of execution that caused an earlier execution date to pass."

Now, the Government can't point to a single judicial decision, not a treatise or any other authority, not even internal guidance, which suggests that it has ever -- that a court or anything has properly -- has said that the Government may redesignate a date during the pendency of a stay. Rather, the only authority we've located says that the Government can't. And the only evidence of practice the Government can point to is from this year, in the last six months, in the Bourgeois and Mitchell cases which are factually distinct in the context that there had already been a judicial order which vacated a stay but a mandate hadn't passed.

But more importantly, no judicial authority in either of those contexts blessed the Government's action, it

simply went totally unchallenged. In the Bourgeois case, the plaintiffs simply filed a letter informing the court of a newly scheduled date. And in Mitchell, the defendant just vaguely referenced the, quote, Code of Federal Regulations with no specific arguments about 26.3 or the FDPA or any other authority.

We think that's why our reading of the regulation 26.3 is clear. And because it's clear, there's no basis for deference. Nevertheless, the agency asks for deference based on three litigation filings from the last six months. Again, those filings come in the Mitchell and Bourgeois cases, and not one of those filings even quotes 26.3's text, let alone analyzes it. All of the Government's prior interpretations placed in the record contemplate only that the Government will designate upon the lifting of the stay. That was true of the 1993 rule that we quoted in our papers, your Honor. It said that 26.3 would, quote, require the director to appoint a new execution date promptly upon the lifting of the stay.

The 2004, 2019 and 2020 protocols also say that if the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the director when the stay is lifted. Not one of those authorities suggests that the director may do so before.

**THE COURT:** What about the amendments to the

Justice Manual which was filed this morning and was apparently made just a few days ago?

**MR. SCHIERENBECK:** Well, your Honor, in the limited time we've had to review that filing, it may support the Government's argument. But of course it's not in the administrative record, and we know from the date it was created that it was not guidance upon which the director could have relied in making his decision. So it's classic post hoc rationalization and it's entitled to zero weight. You cannot create an administrative record after the agency decision, that's sort of basic principles here.

It is also somewhat troubling that the Government is I think inventing post hoc rationales during the pendency of this case. If this section was completed on December 18th and then only brought to the attention of the Court five days later, it was only brought to the attention of all the parties and the Court after briefing on both motions and just before our scheduled hearing about an hour and a half ago. I think it's also telling, your Honor, that the Government feels the need to invent post hoc rationales.

And even on its face, the Justice Manual is expressly not a binding document. The Justice Manual is internal DOJ guidance. It says on its face, quote, it's not intended to and does not -- and may not be relied upon to create any rights, substantive or procedural. It's not

enforceable at law nor are any limitations hereby placed on otherwise lawful litigation prerogatives of the DOJ.

So this is a post hoc rationale, a guidance document that is on its face nonbinding.

**THE COURT:** You may not have had time to consider this issue, but do you know whether any court has ever accorded deference to the Justice Manual?

**MR. SCHIERENBECK:** Your Honor, I am not aware, because we haven't looked into it --

**THE COURT:** Fair enough.

**MR. SCHIERENBECK:** -- due to the timing here. But of course we'd be happy to brief the effect of this letter on the case.

**THE COURT:** I can look at that as well, but if you have anything on that, that may be worth providing to the Court promptly.

**MR. SCHIERENBECK:** Okay, we'll do that. Now, I also want to note that the Government has I suppose invoked its substantive expertise in executions as a grounds for Auer deference here. But that substantive expertise is inapposite for the legal interpretive question before your Honor. As Justice Kagan noted in Kaiser, sometimes legal questions do affect substantive expertise of an agency, but sometimes they're in a judge's bailiwick. And here we're talking about a provision that relates to timing and relates

to the effect of a judicial order. And that I think is in the judge's bailiwick, not within the province of the expertise of the director of the BOP.

So that is why --

**THE COURT:** Can I ask you a question just while you touched on the topic of interpreting a judicial order. One of the things that has puzzled be a little bit here is I asked that the district court's judgment be provided to the Court -- the judgment of conviction in this case. I just want to pull it up on the docket here. At docket 32, it was provided to me. I'm a little mystified by that order and whether there's been some substantive order following that order. Because that order says that, "The time, place and manner of execution are to be determined by the Attorney General, provided that the time shall be no sooner than 60 days nor later than 90 days after the date of this judgment." And then it says, "If an appeal is taken from the conviction and sentence, execution of the judgment shall be stayed pending order of this Court upon receipt of the mandate from the Court of Appeals."

I assume that the mandate from the Court of Appeals came down long ago, and certainly well more than 90 days has passed since that happened. And so just a literal reading of the judgment in this case leaves me scratching my head, because it sounds like the attorney general is not

allowed to set a date more than 90 days after the date the judgment became final upon issuance of the mandate from the Court of Appeals.

**MR. SCHIERENBECK:** That's a good point, your Honor. I'd be curious what the Government would make of that. We've taken so far the question to be that once a judgment like that is rendered, there's an order under the 26.2 provision of the regulations. And that order specifies that the director may set a date. And then that date setting authority is governed by 26.3 of the regulations, and so we've focused on 26.3. But of course, the 26.3 powers are subject to any court order otherwise.

So to the extent that the judgment does not provide for the director to have set a date after the 90 days, then that could be a limitation on the director's authority altogether here.

**THE COURT:** I was just wondering -- when I read that, I was wondering whether someone had to go back to the district court in Missouri to either clarify that or to get an order or something from them. But it may be -- let's see what the Justice Department has to say about this. I was just scratching my head about that. My apologies, I interrupted your line of argument.

**MR. SCHIERENBECK:** No, not at all. So based on that reading of 26.3, your Honor, the obvious remedy here is

vacatur. I can turn to the FDPA after this, but we're seeking vacatur. As such, we need only show prejudice. I think the Government's opposition understands that our case for prejudice is a slam dunk, because it conspicuously misconstrues the relief we're seeking as an injunction rather than vacatur, because they wish to impose a higher standard on Ms. Montgomery.

**THE COURT:** Well, let me ask you about that. I just want to make sure I understand what relief you are seeking here, because the final sentence -- or the conclusion of the motion for partial summary judgment does say in it that the request is that the Court vacate Mrs. Montgomery's January 12th, 2021 execution date, period. The proposed order, however, requests vacatur and requests that I enter an injunction, I think, directing that the director of the Bureau of Prisons not set a new execution date before January 1st, 2021. But then in your reply brief, you say pretty clearly that the only relief that we're seeking here is vacatur. So I want to make -- I guess I want to be clear about what relief you are seeking.

Are you seeking any type of injunctive relief or are you seeking purely vacatur here?

**MR. SCHIERENBECK:** Let me clarify, your Honor. The objection we have is to the designation of the date. And vacatur of that designation would be sufficient to give

Ms. Montgomery the relief she's seeking. If for some reason it wasn't sufficient because of some way in which your Honor interpreted the Government's authority, then potentially an injunction could be appropriate. But I think that the straight forward way of handling this case is the ordinary APA method, which is to say the Government didn't act in accordance with law and so their decision should be set aside and no further relief would be necessary.

And I think the Government is focusing on that injunctive requirement because they want the irreparable harm standard rather than prejudice. Because, of course, prejudice is not an onerous requirement, it's a much lesser showing than irreparable harm. And the prejudice here is obvious. It's measured in days of life. It's measured in less time for consideration of Ms. Montgomery's clemency petition, for a petition that may only be complete on December 1st -- December 31st. That timing is critical.

In Woodard, every member of the court agreed that a death sentenced prisoner has some continued life interest. Even the Chief Justice's opinion said that a death sentenced prisoner had a residual interest in clemency. Justice O'Connor said a continuing interest in life. Judge Wilkins in the statement respecting the most recent round of litigation in the execution protocols before the D.C. Circuit said that denying time for consideration of a

clemency petition would be irreparable harm. So it's a fortiori prejudice under the APA. Also Ms. Montgomery will suffer less time to seek legal relief in general, less time to spiritually and materially prepare for her death. Under the APA's flexible and minimal prejudice requirement, this easily satisfies and vacatur is the ordinary relief.

So on that basis alone, your Honor, on 26.3 on the prejudice, you can vacate the Government's decision. But we would urge you also to reach the FDPA issue in this case, one, because it would facilitate likely appellate review. And two, because it would obviate the potential for seriatim litigation before your Honor based on a very similar challenge were the Government to redesignate the date in accordance with the 26.3 requirements but not the FDPA requirements.

**THE COURT:** If I conclude that you're right on the regulation and that the order setting the date of execution has to be set aside or vacated, at that point in time, does Mrs. Montgomery even really have standing to challenge the FDPA or to make -- to raise the FDPA argument? Because at that point in time, it's contingent on the prospect that the director of the Bureau of Prisons will then reset a new execution date, which in your view would not be compliant with Missouri law. But we don't know what would happen until he acts. And in fact, there's not really -- there

wouldn't even be final agency action with respect to that until they act. There's really not anything to review until that decision is made.

**MR. SCHIERENBECK:** I think, your Honor, if you were to vacate the designation on the basis of 26.3 alone, and then before there was a designated date -- for example, if we were to file new papers before your Honor requesting some kind of declaratory relief with respect to the FDPA part of this puzzle, then there might be a standing issue. But of course here we have fully briefed two problems with the agency's action. So we would ask that you reach both issues, even though we win on either and the decision should be set aside, in order to facilitate appellate review and to avoid the possibility of seriatim litigation before your Honor for reasons of judicial economy.

Now on that FDPA point, your Honor is going to look of course to Judge Rao's controlling opinion in the execution protocols case. Judge Rao explained that the FDPA incorporates all procedures at, quote, whatever level of generality state law might be framed. She even noted that those state procedures might include, quote, granular procedures at 139. And she construed the term implementation to include the date, time and place.

Now, in construing --

**THE COURT:** Can I ask you a question about Judge

Rao's opinion?

**MR. SCHIERENBECK:** Yes.

**THE COURT:** In your view, is her opinion -- and in particular, the portion of her opinion that construes the word implementation to include the providing of notice, is that literally a controlling opinion in the sense that it is binding on me under Marks or some similar line of analysis? I'm curious as to whether it's just really informative to me or whether that analysis from her opinion is actually binding in that as a district court judge I'm duty bound to follow that.

If that's your theory, I'd like to understand why that's the case.

**MR. SCHIERENBECK:** I think, your Honor, if you need to look to the narrowest grounds of agreement for all of the Justices, then it's that overlap between Judge Rao's opinion and Judge Tatel's opinion.

**THE COURT:** But the agreement with respect to the judgment in some way? I mean, here it's not like -- it doesn't form the basis for the judgment in the case which actually went the other way. And as far as I can tell, I'm not sure whether it's fair to call this dicta or not, but the notice question wasn't before the court. I understand that the interpretation of the proper meaning of the statute was before the court.

But I'm really struggling with whether -- I don't know if you've gone back to look at Marks and the D.C. Circuit's precedent applying Marks, but I am struggling with whether this is actually binding.

**MR. SCHIERENBECK:** That's fair. And Marks is a vexing question, your Honor, every time I think about it. I haven't looked at the most recent D.C. Circuit precedent interpreting Marks. But you're right that that case didn't address -- it didn't concern a date, time and notice provision. At the very least, Judge Rao's opinion explicated on the meaning of implementation in a determining manner. She construed implementation to include date, time and place.

Judge Tatel did not elaborate on Judge Rao's reasoning in that respect. To the extent he did at all, it was when at the very end of his opinion he talked about the FDPA incorporating quote, unquote implementation procedures. And if we want to know what Judge Tatel thought that meant, you can of course look to his signing on to Judge Wilkins' statement in the most recent round of the D.C. Circuit where he agreed that implementation procedures includes procedures that prescribe the date and time.

Now, we think that flows from the dictionary definitions of implementation, which it means the act of putting a plan into action. Judge Wilkins noted that notice

and time are a critical part of carrying out a death sentence and so easily fall within implementation. I'll also note the Government's own construction of implementation in 1993 recognized as much. Because the very regs we're talking about, the notice and timing provisions in the federal regulations, those regs were entitled implementation of death sentences in federal cases. So now the Government has a different understanding of that word.

Now, even if you were to construe the FDPA as only requiring those procedures that quote, unquote effectuate death -- and that's incorrect, and I think that's been based on a misconstruction of Judge Tatel's opinion which I'd be happy to get into. Judge Wilkins also explained that it's clear that prescribing the date and time of execution is a necessary element of effectuating death.

The other circuit cases that the Government has cited are plainly inapposite. Vialva is the only one that concerned a notice provision, and it is frankly, your Honor, very short on reasoning. It's death effectuation holding or reasoning is ipse dixit. The rest of those circuit opinions are inapposite for a variety of reasons that I'd be happy to get into if you'd like.

**THE COURT:** Can I ask you about the statutory text? Because I have been really puzzling over the statutory text. As Judge Katsas points out in his

concurring opinion respecting the denial of the stay in the protocol litigation, the duty of the U.S. Marshal is triggered first when the sentence is to be implemented. And I think he makes the point in saying -- and he reads that to say in other words when a date has been sent, and therefore the date has already been set before the Marshal's duty to supervise the implementation of the sentence comes into play.

But in any event, what the provision deals with is an obligation of the Marshal who has custody over the death sentenced individual to supervise implementation of the sentence in the manner prescribed by state law. And it's a little odd to think about the Marshal, for example, as being the one who sets the execution date. That's particularly odd in circumstances in which one has to go to a court to get the court to set the execution date.

So I'm curious as to sort of how you understand or conceive of this provision, how you sort of conceive of the role of the Marshal. In your view, is the Marshal -- as soon as the direct appeals are complete, at that point in time is the Marshal in charge of everything that happens after that? When does the Marshal step in? What is the scope of the Marshal's role? Am I right in thinking that all that's at issue here is what the Marshal needs to do and not what the attorney general or the director of the Bureau

of Prisons or others do?

**MR. SCHIERENBECK:** Yes, so there's a few pieces there. So as to Judge Katsas' opinion, his observation was that the statute speaks to transference of the Marshal who will supervise implementation. And he deduced that that means only those parts of procedures that follows transference. I think that that makes sense with respect to Judge Katsas' view that the statute only includes the top line method, but not with the view that's been adopted by -- in the wake of that view being rejected about the effectuation of death, because it's dramatically underinclusive with respect to the effectuation of death.

There are state laws that, for instance, clearly talk about the components of a process that effectuate death but would happen well before transference to a Marshal. For example, the compounding of the chemicals that will be used in a lethal injection. That process of creating the drugs that will be used to perform the sentence itself, that's not happening after transference to the Marshal.

Now, capital counsel could maybe inform better about sort of the factual background of sort of when exactly custody of the United States Marshal occurs. But the statute of course has to be read against the context that any delegation to an officer under the purview of the attorney general is in some ways a delegation to the

attorney general itself. I think that was a predicate part of the reasoning of the execution protocols panel. So that might help to explain what's going on here. The Marshal is supervising implementation of course, but that's simply a part of the Department of Justice's responsibilities.

As to how to think about state provisions that sort of reference state officials or state institutions, you know, that's always going to be a problem under the FDPA's scheme because state laws are written with state executions in mind. And so it's little surprise that they will talk about a state court or a state official. But if that were an insurmountable problem to those state laws being incorporated into the FDPA, then the scheme of the FDPA -- which I think is the decision of the execution protocols panel one, would be totally eviscerated.

Also, the Government here is pointing to some of the practical problems that might arise if the federal government is made to follow state rules. But of course, those practical problems were rejected by the D.C. Circuit in Judge Rao's opinion. She said that those kinds of policy and practical concerns were really for Congress to work out.

**THE COURT:** Can I ask you -- I'm sorry to interrupt you, Mr. Schierenbeck. It may be that one of the law professors who's on the telephone has studied this and knows the answer to this question. But I am curious about

historically what role the Marshal played in the process. It's my understanding that most death row inmates are housed at Terre Haute, and that Mrs. Montgomery isn't there because she's a woman and that the facility is principally for male offenders.

But I am curious as to just sort of the -- both how this currently works, and how it worked historically. So, for example, your argument would be stronger if either as a matter of -- let's start with current. Your argument would be stronger if currently what happens is as soon as the direct appeals are complete, the individual is transferred to Terra Haute. And it may be that the Bureau of Prisons has day-to-day management authority over Terra Haute, but that in some sense that individual is then -- as soon as the direct review process is complete, is in some sense in the custody of the U.S. Marshal.

And in fact, there are lots of times where people are I think technically in the custody of the U.S. Marshal but they're at a prison or a jail that is not run by the Marshals Service. For example, here in D.C., people who are awaiting trial I think probably -- or people who have been subpoenaed from other jurisdictions are probably technically in the custody of the U.S. Marshal even though they're held at the D.C. jail under contract I would assume with the Marshals Service. So sort of understanding what happens

once someone has a final judgment of death after direct appeals, what happens, and whether that person in some sense is at least arguably in the custody of the Marshals Service, that would be helpful to know.

And then related to that, it would be helpful to know is what happened historically either in the '50s or '60s where there was a federal death penalty that was in operation or even much earlier. I think during the earliest days of the republic, it was the Marshal -- I mean, there wasn't a Justice Department back in the early days, and the U.S. Marshals existed before there was a Justice Department. You know, when you watch an old western, it was the Marshals that were enforcing federal law, and it was the Marshals who were overseeing the executions and setting up the gallows and doing all of that.

So I don't know if there's anybody on the line now who knows something about the history of the role of the Marshals Service in executions or whether that's something that could be very quickly provided to me. But with respect to understanding how 3596 works, it's hard to do that without understanding what the current role and historical role has been of the Marshals Service.

**MR. SCHIERENBECK:** I understand your question, your Honor. And from chatting with my co-counsel, it does not appear that anyone on the line can speak with the kind

of authority we would like to on the record here today before you. But we can look into that question, and we would be happy to provide a letter on that subject.

**THE COURT:** When do you think you can do that by?

**MR. SCHIERENBECK:** Perhaps by tomorrow, your Honor. We can also look into it today, we'd just need time to fire up Westlaw, your Honor.

**THE COURT:** I mean, this may be more than a Westlaw question I'm afraid.

**MR. SCHIERENBECK:** It may be.

**THE COURT:** It may be you need to be looking at historical materials, and also looking if there are any histories of the death penalty or histories of the Marshals Service that talks about how that worked so we can try and understand what Congress was thinking in -- was it 1994 when 3596 was adopted?

**MR. SCHIERENBECK:** Yes, your Honor.

**THE COURT:** Well, that is something that is on my mind. If anyone has any thoughts on it, it would be helpful to me. If there's anything you can provide me on that by the end of the day today, that would be very helpful.

**MR. SCHIERENBECK:** Okay. We'll do our best, your Honor.

**THE COURT:** Okay, thank you.

**MR. SCHIERENBECK:** And so I think I was saying

that the practical problems were rejected by the D.C. Circuit, the same practical problems that the Government is raising now. And so that's why I think it's rather clear that Missouri's timing and its number of execution requirements, which are in 30.30(f) and have the binding force and effect of law under the Missouri constitution, are incorporated into the FDPA.

So, your Honor, I could stop there. I think both the 26.3 and the FDPA arguments are grounds to vacate the agency's decision. Ms. Montgomery has clearly demonstrated prejudice.

**THE COURT:** Give me just a moment here, I want to look back at my notes.

If you're right about 3596 incorporating Missouri's timing requirements, what does that do with respect to your 26.3 argument? Is 26.3 invalid because Congress has provided that Missouri law should set the date -- or provides the notice period? What's your view on how 3596 and 26.3 interact?

**MR. SCHIERENBECK:** I think, your Honor, you can read 26.3 and the FDPA together, and in this instance there's no conflict. Missouri simply provides for a longer notice period than the federal regulations. But if you satisfied the Missouri notice period, you'd be satisfying at least the 20-day period in 26.4. And if there were a

situation where there were a conflict, then I do think there would be a problem. Because the FDPA, having incorporated a state law, would have to take supremacy over the regulation. And to the extent those kinds of things would happen in some cases, that's simply the consequence of I think these regulations having been promulgated prior to the FDPA.

**THE COURT:** Okay. Well, I'll give you a chance to respond after I hear from Mr. Simpson. Thank you.

**MR. SCHIERENBECK:** Thank you.

**THE COURT:** Mr. Simpson.

**MR. SIMPSON:** Good morning, your Honor. Alan Simpson for defendants William P. Barr and others. The scheduling of plaintiff's execution complies with every provision of applicable law. On November 19th, this Court enjoined defendants from executing Lisa Montgomery until December 31st. And four days later, the defendants rescheduled Ms. Montgomery's execution for a date permissible under the plain terms of this Court's order. The rescheduling complies with each and every federal regulation, statute and order of this Court.

First, the scheduling complies with the text of the federal regulation plaintiff cites, which is section 26.3. That regulation, as was detailed at length in the brief, requires the director of the Bureau of Prisons to designate a new execution date if a date needs to be set

upon the expiration of a stay. Nothing in the regulation contains an express prohibition on the director from scheduling an execution date more promptly whenever possible. The provision is unambiguous, it is mandatory and not prohibitory.

And even if the regulation did contain a prohibition, as Ms. Montgomery's counsel posits, the prohibition here was never triggered. I haven't heard anything or seen anything in a brief that explains how there could be more than one V date designated for execution. Here, the relevant condition in the prohibition that Ms. Montgomery has identified simply never occurred, because a new date was designated before the old date passed. There's only one date designated for execution at any particular time. And since rescheduling, that date has been January 12th, 2021.

Plaintiff's construction is simply not reasonable. I believe Mr. Schierenbeck several times used the construction only if. And I'd note that that construction does not appear in the regulation. They attempt to rewrite it to prohibit the director from setting a new date until a stay of execution or injunction is lifted. But the shall language in the regulation does not indicate that, it does not mean that, and it cannot be reasonably interpreted to say it. The purpose --

**THE COURT:** I'm sorry, you have a regulation that says -- or a statute that says that every citizen of the United States shall promptly register for the draft when they turn 18.

Would that mean that people could go in when they're 16 and 17 and register for the draft?

**MR. SIMPSON:** Your Honor, you're referring to the canon of expressio unius. And I think that that -- it's an unexceptional canon, all right. And I probably butchered the Latin which is embarrassing because it is so unexceptional. However, here there is no limitation that is a predicate for application of the canon. What the canon states is that whenever there is a limitation in a particular statute or a regulation, it's to be presumed that that is in fact the only situation. But here there is no limit, it's simply a mandatory instruction.

**THE COURT:** Why is the language in there then? Why is the language "when the stay is lifted" in the provision? Why not just simply say if the date passes by reason of a stay of execution or if the date -- if the execution cannot be implemented for some reason, a new date shall be set as promptly as possible?

**MR. SIMPSON:** Your Honor, I think that reading the entire section of 26.3(a), it contemplates both an initial date being set, and then it also contemplates -- or it

directs, it mandates action in that circumstance. And I'm not aware of any situation that's beyond the -- I'm not aware of any situation in which there is a stay, there is an injunction or there would otherwise be any issue in applying the plain language.

As to why it's phrased in the language of a stay of execution, I think that practical considerations over the years have shown that open ended, long term stays can be difficult to manage. It's difficult for the defendants to understand when those stays might be lifted. And quite simply, sometimes injunctions or -- injunctions may expressly prohibit the scheduling of executions. So I think it's logical for there to be a direction to the director. This regulation governs his conduct, it doesn't necessarily -- and it need not necessarily, impart any protection to a defendant or to a criminal -- to a prisoner under a sentence of death. It simply directs that in this instance, as soon as the director is able to, then he shall designate a new date.

**THE COURT:** You would be right if that's what it said, but that's just not what it said. It would have been pretty simple to write what you said. I mean, that is a pretty simple sentence to write, but that's not what the drafters of this regulation wrote.

**MR. SIMPSON:** I understand, your Honor. I don't

believe that the stay language itself is in fact imposing any limit. I don't understand -- I don't think that it's logical to view that whenever the language is simply the shall language. And by the same token, it would be very easy for the drafters to have said if a stay is granted, only if the stay is lifted shall the director set a new date. But that's not the language that appears either.

And in this instance, I think that reading the entire provision in context, it simply denotes that there is a requirement or an instruction for prompt action.

**THE COURT:** So let me ask you about the interaction with 26.3 and 26.4. Because 26.4 provides that the warden shall notify the prisoner of the date at least 20 days in advance except when there's been a postponement of fewer than 20 days. So presumably what this means is that both when the initial date is set and if there is a need to set a subsequent date, that in each case the warden has to give the prisoner 20 days notice to prepare themselves for whatever purposes, litigation, whatever it might be. There's an exception to that rule, though, where it's just a short postponement. So if there's a stay that's in effect just for a couple of days, there's not a need to -- or things get put off for a couple of days, there's not a need to do it again.

But it seems to me that your construction of 26.3

would at least allow the director of the Bureau of Prisons to undercut that rule by simply setting new dates seriatim as long as each new date is set the day before the date was to come. And so if the director of the Bureau of Prisons didn't want to provide somebody with 20 days notice, then -- and there was a stay in effect, even perhaps an indefinite stay, then just every 10 days the director of the Bureau of Prisons could say the day before the execution was supposed to take place, okay, 10 more days, okay, 10 more days, okay, 10 more days, and that could go on forever.

Is that fair? And if so, why isn't that a problem with your reading of the regulation?

**MR. SIMPSON:** Your Honor, I want to think about it for just one second.

**THE COURT:** Yes, please.

**MR. SIMPSON:** I believe that your Honor is correct that that is a necessary implication. However, I don't think that there's any issue with that. As your Honor mentioned previously, oftentimes whenever there's a stay in effect, there would be -- there's lots of last minute litigation attempting to get the stay lifted. And there's always going to be lots of litigation or a lack of comfort whenever the sole reason a person is not being executed imminently is in light of a court stay, unless of course it's the Supreme Court that has stayed such execution. So I

don't think that it's a unique feature or a unique disadvantage to defendants' construction.

I'd note that in fact sometimes delays are very short. Sometimes delays, as has occurred I believe earlier this year -- and I apologize if it was in -- I believe it was earlier this year, that there was a stay of only a few hours. And obviously the notification provision was not -- under 26.4 was not triggered because it was a postponement of fewer than 20 days. I don't think that there are particular reliance concerns that are uniquely affected by --

**THE COURT:** I'm sorry, why wouldn't there be a reliance concern that if you got a stay that was longer than 20 days, you knew that you would at least get the 20 days notice after the stay expired? Why isn't there some reliance interest in that? People may be planning what their litigation strategy is, their clemency strategy is, planning on when relatives are going to come say goodbye to them or whatever else it might be.

**MR. SIMPSON:** Because, your Honor, there's no guarantee that that stay itself would stay in effect in a general sense; that the underlying action itself, if it is a stay, it is subject to -- a stay or an injunction, it is subject to reconsideration, it's subject to any number of issues. And these regulations are governing defendants'

conduct and simply how they go about their business in terms of trying to timely and promptly execute and implement the capital sentences.

**THE COURT:** I think in general -- I'm sorry, Mr. Simpson. I think in general that may be a little bit of a problem with your argument here. Because you construe the regulations in general as really being purely about internal management in a way that doesn't confer any rights or interests on capital inmates or others; and that it's really just about the efficient means by which the Department of Justice can go about doing what it's doing. But there clearly are some portions of the rule that are designed to provide substantive rights to capital inmates. You know, no sooner than 60 days from the entry of the judgment of death, that's not presumably just for purposes of benefitting the Justice Department or for efficient administration of the death penalty. There's the 20-day notice rule.

So the rules are not just about -- I mean, they may be in part about facilitating how the Department of Justice goes about doing its business, but they're not solely about that.

**MR. SIMPSON:** Correct, your Honor, and I did not intend to paint all of the rules with such a broad brush. I'd further note that in your Honor's hypothetical, where the stay is a date certain, there would naturally be --

where the injunction terminates on a date certain, there would naturally be an end to the sort of serial renotices that your Honor had identified. And in practice, although defendants have renoticed for a period that could have possibly been subject to a stay, they have never executed anyone during a stay, and have never scheduled anyone for execution during a time in which they believed that a stay was likely to be in effect. And I think that that covers the rule of the Mitchell and Bourgeois cases.

**THE COURT:** Can I ask you, do you agree with plaintiff's counsel that the stated purpose of the regulations was to provide for an orderly process for implementing executions or death sentences?

**MR. SIMPSON:** Your Honor, I believe that the -- so the Federal Register notice that was identified contains many different sentences and statements, and I believe that that is certainly a purpose.

**THE COURT:** Isn't it fair to say that that is the purpose? I mean, I'd have to go back and look at it again, but I thought that it said that that was the purpose and not just sort of one of many purposes.

**MR. SIMPSON:** Your Honor may be correct, I can't say for sure. I know that the Federal Register, for example, goes on to say that the director -- you know, the director's unique knowledge in the institutional resources

and circumstances of setting execution dates is one reason why the director was given the task of setting execution dates. And that is directly applicable I believe as well to defendants' deference argument, that the regulations recognize a substantive expertise of the director of the Bureau of Prisons in scheduling executions and in understanding when it may be possible in light of logistics, in light of the people who are on federal death row and so on. So I --

**THE COURT:** Can I ask you another question? I'm sorry.

**MR. SIMPSON:** Please.

**THE COURT:** What is your view with respect to the language that I read from the judgment from the Western District of Missouri?

**MR. SIMPSON:** Your Honor, defendants do not believe that any stay is in effect. After the conclusion of direct appeal, there was a 2255 proceeding. At the end of that proceeding, we believe that the 2255 order denying the certificate of appealability was an order as contemplated by Judge Fenner's judgment. And I would just add, your Honor, that this is not a novel or particularly unique issue in judgments. Prior to this particular case, both Keith Nelson, who was sentenced in the Western District of Missouri, had a similar judgment as well as defendants

Brandon Bernard and Mr. Vialva. And in each of those instances, the parties understood that there was no stay in effect. I have not heard any argument from Ms. Montgomery or her counsel that --

**THE COURT:** I guess -- yeah, I'm not asking whether there's a stay in effect, I'm just puzzled by what the authority is of the Marshal or the Justice Department to carry out an execution without going back to Judge Fenner to seek modification of his order unless there's some other order out there or else I'm not understanding something. Because the order says that the time, place and manner of the execution are to be determined by the attorney general, fine. Provided that -- here's a limit, the attorney general cannot, may not order the execution any sooner than 60 days. Fine, not an issue here. Nor later than 90 days later after the date of this judgment.

In other words, has the time run so it's too late under Judge Fenner's order for the attorney general or the director of the Bureau of Prisons to set an execution date? I mean, I'm just not clear also that the department actually has authority given his order to carry out an execution. It's only tangentially related to what is before me, but it is related in the sense that I'm being asked to consider -- I mean, one of the arguments that's presented to me is that the director of the Bureau of Prisons didn't have any

authority to set a new execution date while my stay was in effect, to which I'm wondering is that even the first question. Because Judge Fenner's authorization to allow the attorney general to set an execution date expired 90 days after the mandate issued from the Court of Appeals.

**MR. SIMPSON:** Thank you, your Honor. I know that this issue has come up several times, and the 90-day language is not a limit on the defendants' ability to conduct an execution. We could submit additional paper on that if your Honor would like. I'd note that we've filed now two notices regarding the execution date in the underlying criminal case in front of Judge Fenner. And to the extent the parties have any concern over whether or not there is a valid execution scheduled or that Judge Fenner's judgment as stated permits execution, I think that that would be the appropriate venue for that dispute. But I'm sympathetic to your Honor's point as well. I'm sympathetic to your Honor's point.

**THE COURT:** All I'm saying is I think this is something that someone should look at. You're probably right that this isn't in front of me. But I have to say, I would not want to be the one who orders an execution to take place if there was a doubt about whether it was actually authorized by the court's order. So I think it's just something that somebody better look at.

**MR. SIMPSON:** I appreciate it, your Honor. I'm aware of other issues in which capital defendants have raised these arguments, and I believe that courts have unanimously concluded the matters by entering an order stating something to the effect that they didn't believe the order was necessary, however they otherwise set an execution date. Those are types of potential things that I think could be done if the parties had any concerns. But as of today, I'm not aware the defendants have any concerns regarding the --

**THE COURT:** And the issue's not in front of me, so I have flagged it and I'll leave it to you all to do whatever you think is appropriate with that issue.

Let me ask you another thing about the judgment. This relates to the questions that I was asking about the meaning of 3596 and the role of the Marshal. I am noticing that the judgment actually does remand the defendant to the custody of the U.S. Marshal. It provides that execution of the judgment shall be stayed pending a mandate from the Court of Appeals. But I'm sort of wondering what your view is as to whether either after Judge Fenner issued his order or at least after the time in which the Court of Appeals sustained the conviction and sentence and issued its mandate, whether from that point forward -- at least in some technical sense, Mrs. Montgomery was in the custody of the

U.S. Marshal?

**MR. SIMPSON:** Thank you, your Honor. I believe the answer is an emphatic no. She was only in the custody of the U.S. Marshal for the period of time in which she was being transferred to the Bureau of Prisons facility. In the same way --

**THE COURT:** I'm sorry, but don't you -- I mean, maybe she was -- I guess maybe was she standing in court -- I mean, she wasn't in court presumably when Judge Fenner issued this order, although it may be this order is just reflecting what he did when she was standing in court.

**MR. SIMPSON:** Yes, your Honor, he did in fact read the judgment. I have reviewed enough of the transcript to be able to state that, that the judgment was read aloud in court.

**THE COURT:** I see, okay. Before I turn to 3596, let me let you finish up with the regs and see if you have anything else you wanted to add with respect to the regulations.

**MR. SIMPSON:** Thank you, your Honor. I believe that the statute is unambiguous, and I don't dispute any of the canons that exist and that have been cited. However, we don't believe that they apply here, and I think that we've laid that out in great detail in the brief. The provision is not superfluous, as I think that was my last point. It

has this unique effect. There is no other provision which requires the director of the Bureau of Prisons to promptly act to designate a new date in the circumstances where a capital inmate's sentence or even the scheduling of his or her sentence may be delayed for years. And to avoid the situation that your Honor may posit, I think it makes sense where it otherwise cannot be practicably done to set that general baseline rule.

In terms of the -- now, your Honor, I'd like to turn to -- I think I'd like to finish up on deference. I wanted to say a couple of things that I didn't say previously. I apologize for the late hour of the Justice Manual provision submission. It was not my intent to submit it quite so soon. But as soon as I became aware of it, we submitted it to your Honor out of an abundance of caution. And given your Honor's prior statements in this case, we don't believe that it's necessary to decide the case and we don't make any arguments for deference based off of the Justice Manual provision. However, because it relates to the initial scheduling of executions, we thought that it ought to be included consistent with your Honor's prior order.

**THE COURT:** I appreciate that, thank you.

**MR. SIMPSON:** With that, your Honor, I think I've concluded my argument on the regulation itself and I'd turn

to the Federal Death Penalty Act.

**THE COURT:** Okay.

**MR. SIMPSON:** The selected provision of Missouri Supreme Court Rule 30.30 relates to the practice, procedure and pleading in state courts. It simply does not relate to the implementation of Ms. Montgomery's sentence as that term was used either in the April execution protocol cases or in the most recent en banc concurrence. The fact that the particular rule goes to the Missouri Supreme Court's scheduling authority demonstrates that the rule does not concern the implementation of the sentence by the Marshal or the type of thing that happens after the state equivalent of release of the person sentenced to death to the custody of the United States Marshal. Those are the only types of state law incorporated into federal law by the Federal Death Penalty Act.

And incidentally --

**THE COURT:** That leads to the question that I was just asking Mr. Schierenbeck about, what historically was the role of the Marshal; historically when were people released to the custody of the Marshal. Because there's a sort of glaring gap in the statute here. And if you look at the structure of the Federal Death Penalty Act, you start off with the types of crimes where a sentence of death can be imposed. And then you deal with mitigating and

aggravating factors relating to the imposition of sentence of death. And then how the death sentence actually is imposed with a special hearing and the role of security in that process. There's precautions to ensure against discrimination.

Then you get to a sentence on the imposition of the sentence of death. And then there's review of the sentence of death and how that goes up to the Court of Appeals and how that process takes place. And then the next provision after that just jumps to implementation of the sentence of death. The lead in sentence is, okay, after you've done all that I've just discussed and the review process is complete, then at that point in time -- or the person is committed to the attorney general until the review process is complete. And then the next thing after that is when the sentence is to be implemented, the attorney general shall transfer the person to the Marshal.

Under your view of the statute -- where as I understand it the Marshal's role is pretty limited and only really comes into play during the actual administration of the drugs that may cause death or something along those lines, but it's that very final step in the process. That leaves a big gap in the statute, because the person is in the custody of the attorney general until the direct review is done and then it doesn't say what happens to the person

at that point in time. It doesn't say anything about who sets the execution date. It doesn't say anything about where the person goes. If the person's only in the custody of the attorney general until that's all done, what happens after that's all done. Is the person then automatically -- is the expectation the person would then be transferred to the Marshal immediately at that point in time.

So anything you can do to help me understand how this historically was understood, what the history was, it would be very helpful.

**MR. SIMPSON:** Thank you, your Honor. I don't have the relevant backdrop as to what Congress would have been thinking about in 1994. Whenever I hear the words United States Marshal, I think about perhaps westerns or things like that. And I think that the law had moved far beyond that point in time in that in 1994, there was both the understanding that the person would be at the Bureau of Prisons facility as well as --

**THE COURT:** The Marshals Service doesn't have any facilities. They either rent them from the federal government or enter into a contract with the federal government or with the states. But as far as I know, there are no U.S. Marshals Service facilities, jails that the Marshals Service runs.

**MR. SIMPSON:** So we've quickly exhausted my

knowledge of the history, your Honor. We'd be happy to try to get you something else by the end of today, to the extent that we can. I'd note that there is a discussion of -- in the Federal Register of very old history related to the executive's authority to act, but it simply does not address the point that your Honor is getting at.

**THE COURT:** That would be helpful. If you want to file something on that, I would appreciate it.

**MR. SIMPSON:** I can say that currently, the Marshal only takes custody in the execution facility in the immediate lead up to death. There's no de facto control, there's no agreement that the Bureau of Prisons shall hold a person for the Marshal for some period of time before execution or anything of that sort. And I think that that makes sense for a couple of reasons.

First, as Judge Katsas' recent concurrence recognized, and as Justice Alito's dissent recognized, the Federal Death Penalty Act was designed to make the death penalty more workable. It was designed to eliminate issues. And so I don't think that it's necessary that it envisioned some comprehensive scheme to go about that.

**THE COURT:** Just to back up for a second. I agree with you and with Judge Katsas and with Justice Alito about that understanding of the Federal Death Penalty Act, and that it was designed to make the federal death penalty more

workable. But as I understand it, what Congress sensibly did and said to itself is look, there has been a huge amount of litigation with respect to what types of procedures relating to the death penalty are constitutional and which are not. And if we were to specify a bunch of procedures here, there would be another 10 years of litigation about whether those procedures are permissible or not. And to avoid all of that, what we're going to do is we're just going to let the Justice Department rely on the procedures from the states. Because those have already been tested in the courts, and there's already been a great deal of litigation about those. And they've been refined and tested in ways by the courts that are much more likely to be upheld and to be satisfactory. And so to streamline things, we're just going to rely on the state procedures. But the question is how far -- exactly what that encompasses within the concept of the state procedures that were being adopted.

But it is a little odd that the statute -- either Judge Rao is correct and these procedures encompass a great deal or Congress left a huge lacuna and just didn't specify anything about what sorts of procedures would apply up until the actual administration of death.

**MR. SIMPSON:** Thank you, your Honor. For the reasons Judge Katsas identified, we believe that Judge Rao's broad understanding of the word implementation was -- is not

binding precedent on this Court. We'd note that there's a textual issue within the Federal Death Penalty Act with any construction of implementation that is broad. It's that the Marshal would be tasked with supervising these broad implementation procedures, and that is very unlike anything that ever has occurred with the federal death penalty as far as I can say.

**THE COURT:** I mean, as far as you can say that's a good point, but that's what my question is, right. I don't know whether in the 19th century when the Marshals were involved in administering death sentences or involved in implementing death sentences, what their role was. I don't know what their role was before there even was a Department of Justice. And I don't really understand entirely what their role historically has been, so that's why I think that's an important question.

**MR. SIMPSON:** Thank you, your Honor. And we'll supplement that. We believe that Congress didn't anticipate any translation problems between state court rules or rules governing other branches of government. Because what Congress did was incorporate that narrow manner of implementing death. And in every state, it is the executive that actually implements death. So the fact that we're arguing about scheduling or the provision relates to scheduling and it may be done by a trial court, or as here

an appellate court, reveals that it's not the type of implementation that the Marshal would be tasked with supervising. There are many --

**THE COURT:** How would the date get set according to Congress? I mean, how were all the procedures that would take place from the date of final review of the -- on direct review until the individual is taken to the death chamber, how were all those rules to be defined? What was going to fill that lacuna?

**MR. SIMPSON:** Your Honor, what fills it is 28 C.F.R. 26.3. I think that that's the justification for the regulation to prescribe that there ought be -- that the director of the federal Bureau of Prisons ought do the date setting. And there was debate amongst the capital bar community as described in the Federal Register as to whether or not trial courts should ordinarily have the discretion to either -- to sit back and not do that or whether the director of the Bureau of Prisons should have the affirmative ability to do so. The regulation was adopted that said that that was what the director would do. So I do believe that the regulation is important to that extent.

**THE COURT:** Although the regulation was before the statute was adopted. So unless you think that Congress just intended -- understood the regulation was there and intended to sort of codify the regulation or to defer the regulation,

then I still have my same question. If your argument is that they intended to defer to the regulation, I guess I'd love to see some evidence of that.

**MR. SIMPSON:** Thank you, your Honor. I don't have any direct evidence of that. I think that Congress is generally aware both of court decisions as well as regulations that are in effect. I think it's just on its face some level of evidence that they didn't -- you know, assuming that they did not overrule it, that they did not overrule it. But moreover, I think that the regulation makes sense because it codifies historical practice. It recognizes that courts play a role in scheduling executions, as they have for a very long time. But that history is well set out in the regulation -- Federal Register itself.

**THE COURT:** Okay, I hear you.

**MR. SIMPSON:** I'm sorry, I'm trying to not repeat myself. The last thing I would say, your Honor, on the Federal Death Penalty Act is even if this rule did relate to implementation of Ms. Montgomery's sentence, even if you went -- if your Honor decided that it did, the rule is simply not translatable to federal law given the structure of 3596. There's a picking and choosing of the preferred provisions within the rules, but such selective incorporation is not reflective of any rule that Missouri has actually adopted.

I think it's notable that Judge Rao referred both to the Missouri execution protocol as well as I believe -- or one of the judges at that time referred to the state statute governing executions. But no person contemplated -- no judge contemplated under the reading that I can divine from those -- from the separate opinions that court rules would additionally be adopted, and that we would simply substitute or translate the executive or the U.S. Marshal for another subsidiary state branch.

**THE COURT:** But picking up on -- I mean, if you look at Judge Rao's opinion and Judge Tatel's opinion, Judge Tatel would be more expansive and not even require that the rules at issue have independent legal force. Judge Rao would draw the line at those rules that have legal force to them. I take it you would agree that the 30.30 rule that plaintiff relies upon here does have the force of law?

**MR. SIMPSON:** The rule as stated does, yes, your Honor, because it is a rule of pleading, practice or procedure in Missouri state court.

**THE COURT:** It's more than state court, right? It's more than a court rule, because it actually deals with setting of an execution date or when an execution can actually occur, right?

**MR. SIMPSON:** Your Honor, the only legal effect that the rule is entitled to under the Missouri constitution

is to the extent it is a rule -- a court rule, a pleading, practice or procedure. The Court does not have the authority to adopt rules that could grant substantive rights or the sort, it's only a court rule. And I think that that is -- I think that that's telling. I think it's problematic whenever we try to translate it to other contexts.

And moreover, I'd note that for the reasons we stated at length in the brief, that the apparent -- that the rule is actually designed to govern the Missouri Supreme Court and how it interacts with another coequal branch of Missouri state government. And that is simply a unique consideration that we don't believe is applicable here. But it's one of the furthest afield types of rules that the FDPA might incorporate. It's sufficient to state that the FDPA does not incorporate court rules of pleading, practice or procedure.

**THE COURT:** Okay.

**MR. SIMPSON:** And finally, your Honor, I would just indicate that we believe that we've complied with your court's -- with your Honor's order. I don't have anything further unless your Honor has any further questions for myself.

Actually, I apologize, your Honor, I take it back. The last thing I would say just briefly is that on the question of vacatur and irreparable harm, we believe that to

set aside or to -- does not indicate or does not mean that defendants' plans can simply be quashed. We think that it's telling that Ms. Montgomery has sought precisely the same relief both under the label of a preliminary injunction as well as under the label of vacatur. And we don't think that anything in the APA permits her to do so absent a showing of irreparable harm. Your Honor, thank you for your time.

**THE COURT:** With respect to that argument, what I don't get about it is sitting on a court that hears a heck of a lot more APA cases than we hear death penalty cases, it's just really common that this issue comes up. I have on multiple occasions respected requests from the United States Government and from the Justice Department not to enter an injunction in an APA case, and doing the narrower thing and simply vacating the agency action at issue where the United States has said, you know, Judge, you're overstepping if you actually enter an injunction because you should assume that we'll abide by either your declaratory judgment or by your order setting aside the agency action and nothing more is required. So in all these APA cases, I hear the Government arguing exactly the opposite of what you're arguing today in this case.

**MR. SIMPSON:** I don't dispute your Honor's recollection.

**THE COURT:** The Government would not be very happy

if I started entering injunctions in all of my APA cases.

**MR. SIMPSON:** I'm sure that that's correct, your Honor. The Government doesn't believe that anything in the APA displaces the requirement -- or there's no special review statute here, right. And so the question is what is the form of proceeding, and what does vacatur actually practically mean here where the thing sought to be vacated is an execution date. And in this instance, we believe that doing so -- you know, for reasons identified for example in the LeCroy case, that a stay of execution regardless of how it's characterized has to meet this heightened standard -- or the ordinary standard for injunctive relief, which is both a showing of irreparable harm as well as the balance of the equities favors the injunction or vacatur.

And equitable considerations are similarly part of the Court's calculation under vacatur. And we believe just as a matter of law that the types of APA challenges raised here cannot overcome the public's significant interest in the timely enforcement of Ms. Montgomery's capital sentence.

**THE COURT:** With respect to the timely enforcement here, assuming if I were to agree with the plaintiff on the regulation and disagree on the statute, we're not talking about a very lengthy delay. You're talking about I think to reset the execution date 20 days out from the end of the stay period. But it's not -- this is not the sort of

endless cycles of delay that raise legitimate concerns in cases of this type.

**MR. SIMPSON:** Your Honor, by the same token, we believe that that counts against any finding of prejudice; that there ought not be sort of a categorical rule that any delay any day is enough to demonstrate prejudice under the APA. But your point is well taken that it's not the kind of -- a shorter delay is not the kind of unending delay that would yield the most significant irreparable harm. However, Ms. Montgomery committed her crime over 16 years ago. She was sentenced to death over 12 years ago. She's had sufficient time, and we believe that there is a strong interest in the date that has been set by federal officials.

**THE COURT:** So let me ask you this, one final question. With respect to whether -- if I agree with plaintiff on the regulation, I then need to decide whether I should reach the question of whether the Federal Death Penalty Act requires that I incorporate Missouri rules and direct that no execution date shall be set for at least 90 days.

The question I have for you is do you know -- so if the Court were to agree with plaintiff on the regulation, has the Department of Justice made a decision about when it would set the next execution date to occur or is that something that would be subject to further consideration

after considering the Court's opinion?

**MR. SIMPSON:** I can't really speak to that, your Honor, I just don't know. I think that in cases like this, it's very difficult to make plans when -- as in Ms. Montgomery's case, right, she has brought an FDPA claim that was ripe at a minimum, at the absolute minimum, on October 16th. And she delayed almost two months in bringing it. So it's difficult for us to formulate plans in those sorts of circumstances. I think that we would have to -- that the relevant officials would have to consider it, some of whom I may not know.

**THE COURT:** Right. And I take it that there's likely to be a different attorney general by the time that occurs as well.

**MR. SIMPSON:** Well, I think that there will be a different one by the end of date, but that is --

**THE COURT:** By the end of the day today, is today Attorney General Barr's final day?

**MR. SIMPSON:** I believe so, your Honor.

**THE COURT:** Okay, thank you. Let me give Mr. Schierenbeck an opportunity to respond.

**MR. SCHIERENBECK:** Thank you, your Honor. Alec Schierenbeck. I don't have much to respond to, your Honor, although I'd be happy to answer any of your Honor's questions. Three quick points occur to me. The first is

that I heard the Government concede that these rules have the force and effect of law under the Missouri constitution. I take the Government's argument to be that the rules are only binding on courts and litigants and counsel of course. The Government in a proceeding to effectuate death is a litigant. I don't understand how they would step outside the force and effect of those rules.

The Government's argument that LeCroy somehow suggests that the ordinary standard for vacatur under the APA doesn't apply is just wrong. LeCroy didn't present an APA claim. The plaintiff in that case identified no source of authority to grant the relief sought, and so the court sensibly understood their request for what it was. But if they had brought an APA vacatur claim in the appropriate course, then I think the ordinary APA vacatur standard would have applied.

And lastly, on the notion that we've delayed, your Honor, these APA claims were brought within two weeks of the Government designating a new date. My understanding is that after the Government designated the date, there was surprise. Of course, the Government doesn't do this sort of thing as we've pointed out, so people were mystified. Ms. Montgomery's counsel retained APA counsel to aid in this part of the proceeding. We filed our motion for clarification and leave to file a supplemental complaint

within two weeks, which was quite expeditious. And of course, as your Honor knows, we've been attempting to proceed as expeditiously as possible since that time.

So those are the three points I wanted to raise.

**THE COURT:** And I appreciate the efforts of everyone involved in this case to move this quickly as they can. Let me ask you a question about 30.30, which is, is this arguably outside the scope of 3596 because it deals with what a court should do, and it deals with the court setting an execution date? It says that a court should set a date that is at least 90 days, but not more than 120 days, out from the date that the order is entered.

To the extent the 3596 may incorporate state law, the state law that it incorporates should be state law that governs not how courts operate, because that would raise perhaps Article III problems, but to adopt rules with respect to how Executive Branch actors proceed. And that as a result, even if you're right about the meaning of 3596, it doesn't apply to a rule like 30.30 which addresses how courts should act.

**MR. SCHIERENBECK:** Your Honor, I think I'd go back to the answer I gave you earlier, that state statutes necessarily are going to reference state institutions and state officials. And that can't be an insurmountable problem to the incorporation of state law in the FDPA or

else the scheme envisioned by Congress in the FDPA would be eviscerated.

**THE COURT:** Right, but there's a difference between state judicial officers and state executive officers. So to the extent that state law says how the State department of corrections should behave, yes, you're right. But to the extent it's a rule defining how state courts should behave, it's more difficult to import through 3596.

**MR. SCHIERENBECK:** I take your point, your Honor. I think the FDPA at a minimum requires an effort to harmonize the rules. I would contend here, your Honor, that the rules can be harmonized to -- in this respect and in respect of the notice and timing provisions. So I think that's the answer. Now, there's also another possibility which is that the FDPA actually does expressly contemplate that the United States Marshal may use appropriate state or local facilities or appropriate state or local officials in implementing a sentence.

So it's possible that Congress expressly authorized the federal government to go -- to reach in and avail itself of state facilities and state officials, and that that is the sort of thing that would harmonize the 3596 language and these very state procedures. Of course, we're not arguing --

**THE COURT:** I'm not following that. You're not suggesting that the Marshals Service is supposed to go to a Missouri state court to set the date, so I'm not following your argument.

**MR. SCHIERENBECK:** I'm not, your Honor, I'm just suggesting that to the extent that -- because we're not raising that claim. But my point is to the extent there's a disjuncture in some of these state procedures that reference state institutions and state officials, that it may be that Congress expressly provided in 3597 a way to comply.

**THE COURT:** All right. Anything further?

**MR. SCHIERENBECK:** No, your Honor.

**THE COURT:** You know, I don't want to be unreasonable with the parties in trying to get me additional materials, particularly as we're approaching a holiday. On the other hand, I want to make sure I'm able to get my opinion out quickly for everyone involved and for the other courts that are going to have to look at these issues.

I guess it would be helpful to me if you can get me anything on the historical question I have about the Marshals by midnight tonight, and the same goes for the Government. If in the course of that the parties are of the view that they need more time, you can jointly request more time from me to respond to that. But I do want to move this as fast as I can. I'm not sure I would say yes to that, but

if both sides sought the additional time, I would at least give that some thought. But I guess I hope that you just do your best to get back to me on that tonight and see where we stand.

**MR. SCHIERENBECK:** Yes, your Honor. This is Alec Schierenbeck, and we'll do our best. I think that's realistic.

**THE COURT:** Okay. Mr. Simpson.

**MR. SIMPSON:** Yes, your Honor, nothing further from defendants. Thank you for your time.

**THE COURT:** Okay. Well, thank you all, this was very helpful. The briefing was excellent in this case, so I do appreciate all of your help. I'm going to do my best to get you an opinion as fast as I possibly can.

Well, thank you all, and hopefully you'll all get a chance to at least take some time off for the holidays.

(Proceedings adjourned at 12:46 p.m.)

C E R T I F I C A T E

I, **Jeff Hook, Official Court Reporter**, certify that the foregoing is a true and correct transcript of the remotely reported proceedings in the above-entitled matter.

**PLEASE NOTE:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

**December 28, 2020**
**DATE**

**Jeff M. Hook**

'
'50s [1] 25/6
'60s [1] 25/7

1
10 [5] 33/7 33/9 33/9 33/10 47/6
10036 [1] 1/12
114 [1] 1/17
11:00 p.m [1] 7/10
11:04 [1] 1/6
12 [1] 55/11
120 [1] 58/11
12:46 p.m [1] 61/17
12th [2] 14/13 29/16
139 [1] 17/22
14853 [1] 1/15
157 [1] 1/15
16 [2] 30/6 55/10
16th [1] 56/7
17 [1] 30/6
18 [1] 30/4
1871 [3] 4/7 4/13 4/14
18th [1] 10/15
19 [1] 62/8
1993 [3] 8/6 9/16 20/4
1994 [3] 26/15 45/13 45/16
19th [2] 28/14 48/10
1:20-cv-3261 [1] 1/3
1st [2] 14/17 15/17

2
20 [8] 32/13 32/15 32/18 33/5 34/9 34/14 34/14 54/24
20-3261 [1] 2/2
20-day [3] 6/18 27/25 35/17
20001 [1] 1/25
2004 [1] 9/20
2019 [1] 9/20
2020 [2] 1/5 9/20
2021 [3] 14/13 14/17 29/16
22314 [1] 1/18
2255 [2] 37/18 37/19
23 [1] 1/5
26.2 [1] 13/8
26.3 [26] 3/7 3/10 5/16 6/14 6/17 8/7 9/5 9/8 9/17 13/10 13/11 13/11 13/25 16/7 16/14 17/5 27/9 27/16 27/16 27/19 27/21 28/23 30/24 32/12 32/25 49/11
26.3's [1] 9/12
26.4 [6] 6/14 6/17 27/25 32/12 32/12 34/8
28 [1] 49/10

3
30.30 [5] 27/5 43/4 51/15 58/7 58/19
31st [2] 15/17 28/16
32 [1] 12/10
3261 [2] 1/3 2/2
333 [1] 1/24
3596 [12] 25/20 26/16 27/14 27/19 40/16 41/16 50/22 58/8 58/13 58/18 59/9 59/23
3597 [1] 60/10

4
400 [1] 1/21

5
5510 [1] 1/21

6
60 [3] 12/15 35/14 38/14
64106 [1] 1/21

8
8th [2] 7/9 7/11

9
90 [8] 12/16 12/22 13/1 13/14 38/15 39/4 55/19 58/11
90-day [1] 39/7
9th [1] 1/21

A
a.m [1] 1/6
abide [1] 53/18
ability [5] 3/25 6/24 8/5 39/8 49/19
able [3] 31/18 41/14 60/16
above [1] 62/5
above-entitled [1] 62/5
absent [1] 53/6
absolute [1] 56/6
Absolutely [1] 4/16
abundance [1] 42/15
accordance [2] 15/7 16/14
accorded [1] 11/7
according [1] 49/4
act [14] 15/6 17/2 19/24 42/3 43/1 43/16 43/23 46/5 46/18 46/24 48/2 50/18 55/18 58/20
acted [1] 5/24
action [12] 1/3 2/2 3/21 8/25 17/1 17/11 19/25 31/1 32/10 34/22 53/15 53/19
actors [1] 58/17
acts [1] 16/25
actual [2] 44/20 47/22
actually [17] 7/12 18/9 18/21 19/4 38/20 39/23 40/17 44/2 48/23 50/25 51/21 51/23 52/9 52/23 53/17 54/6 59/16
add [2] 37/21 41/18
additional [3] 39/9 60/14 61/1
additionally [1] 51/7
address [2] 19/9 46/5
addresses [1] 58/19
adjourned [1] 61/17
administering [1] 48/11
administration [3] 35/16 44/20 47/22
administrative [2] 10/6 10/10
adopt [2] 52/3 58/16
adopted [7] 22/9 26/16 47/17 49/19 49/23 50/25 51/7
advance [1] 32/14
affect [1] 11/23
affected [1] 34/10
affirmative [1] 49/19
afield [1] 52/13
afraid [1] 26/9
again [5] 2/7 6/1 9/11 32/24 36/19
against [4] 4/6 22/23 44/4 55/4
agency [6] 9/9 10/10 11/23 17/1 53/15 53/19
agency's [2] 17/11 27/10
aggravating [1] 44/1
ago [5] 10/2 10/19 12/22 55/10 55/11
agree [6] 36/10 46/22 51/15 54/21 55/15 55/22
agreed [2] 15/18 19/21
agreement [3] 18/15 18/18 46/12
ahead [1] 3/1
AHMED [2] 1/14 2/4
aid [1] 57/23
al [2] 1/5 2/3
ALAN [3] 1/19 2/5 28/11
ALEC [5] 1/11 2/5 2/23 56/22 61/5
Alexandria [1] 1/18
Alfred [1] 1/17
Alito [1] 46/23
Alito's [1] 46/17
allow [2] 33/1 39/3
allowed [1] 13/1
almost [1] 56/7
alone [4] 6/8 9/13 16/7 17/5
along [1] 44/21
aloud [1] 41/14
although [4] 36/3 41/10 49/22 56/24
altogether [1] 13/16
always [2] 23/8 33/22
amendments [1] 9/25
amongst [1] 49/14
amount [1] 47/2
analysis [2] 18/7 18/9
analyzes [1] 9/13
anticipate [1] 48/18
APA [16] 15/6 16/2 53/6 53/10 53/14 53/20 54/1 54/4 54/17 55/7 57/10 57/11 57/14 57/15 57/18 57/23
APA's [1] 16/5
apologies [1] 13/22
apologize [3] 34/5 42/12 52/23
apparent [1] 52/8
apparently [1] 10/2
appeal [2] 12/17 37/18
appealability [1] 37/20
appeals [11] 7/4 12/20 12/22 13/3 21/20 24/11 25/2 39/5 40/20 40/22 44/9
appear [2] 25/25 29/20
APPEARANCES [1] 1/10
Appearing [2] 2/3 2/5
appears [1] 32/7
appellate [4] 6/21 16/10 17/13 49/1
applicable [3] 28/14 37/3 52/12
application [1] 30/12
applied [1] 57/16
apply [4] 41/23 47/21 57/10 58/19
applying [2] 19/3 31/4
appoint [1] 9/18
appreciate [5] 40/1 42/23 46/8 58/5 61/13
approaching [1] 60/15
appropriate [7] 6/19 15/4 39/16 40/13 57/14 59/17 59/18
April [1] 43/7
arguably [2] 25/3 58/8
argues [1] 5/21

## A

arguing [4] 48/24 53/21 53/21 59/25
argument [15] 10/5 13/23 16/20 24/8 24/9 27/16 35/6 37/4 38/3 42/25 50/1 53/8 57/3 57/8 60/4
arguments [5] 9/5 27/9 38/24 40/3 42/18
arise [1] 23/17
Article [1] 58/16
aside [5] 15/8 16/18 17/13 53/1 53/19
assume [3] 12/21 24/24 53/17
assuming [2] 50/9 54/21
attempt [1] 29/20
attempting [2] 33/21 58/2
attention [2] 10/15 10/16
attorney [15] 12/14 12/25 21/25 22/25 23/1 38/12 38/13 38/18 39/4 44/14 44/16 44/24 45/4 56/13 56/18
Attorney's [1] 1/20
Auer [2] 6/12 11/20
authorities [1] 9/23
authority [17] 6/7 8/13 8/17 8/24 9/6 13/10 13/16 15/3 24/13 26/1 38/7 38/21 39/1 43/10 46/5 52/3 57/12
authorization [1] 39/3
authorized [2] 39/24 59/21
automatically [1] 45/5
avail [1] 59/22
Avenue [1] 1/24
avoid [3] 17/14 42/5 47/8
awaiting [1] 24/21
aware [8] 7/19 11/8 31/2 31/3 40/2 40/9 42/14 50/6

## B

BABCOCK [4] 1/13 2/4 2/21 2/21
back [13] 4/7 4/21 13/18 19/2 25/10 27/13 36/19 38/8 46/22 49/17 52/23 58/21 61/3
backdrop [1] 45/12
background [2] 8/3 22/21
bailiwick [2] 11/24 12/2
balance [1] 54/13
banc [1] 43/8
Bankruptcy [1] 1/24
bar [1] 49/14
BARR [3] 1/5 2/3 28/12
Barr's [1] 56/18
based [5] 9/10 13/24 16/12 20/11 42/18
baseline [1] 42/8
basic [4] 4/3 4/22 5/17 10/11
basis [4] 9/8 16/7 17/5 18/20
became [2] 13/2 42/14
begin [1] 3/5
behalf [2] 2/21 2/24
behave [2] 59/6 59/8
benefitting [1] 35/15
Bernard [1] 38/1
best [4] 26/22 61/3 61/6 61/13
better [2] 22/20 39/25
beyond [2] 31/2 45/15
big [1] 44/23
binding [7] 10/22 18/7 18/10 19/4 27/5 48/1 57/4
bit [2] 12/7 35/5
bizarre [1] 6/4
blessed [1] 8/25
BOP [1] 12/3
both [13] 10/17 17/11 24/6 27/8 30/24 32/16 37/23 45/16 50/6 51/1 53/4 54/13 61/1
bound [1] 18/10
Bourgeois [4] 8/20 9/1 9/11 36/9
branch [3] 51/9 52/10 58/17
branches [1] 48/20
Brandon [1] 38/1
brief [6] 11/12 14/18 28/24 29/9 41/24 52/8
briefed [1] 17/10
briefing [2] 10/17 61/12
briefly [1] 52/24
bringing [1] 56/7
broad [4] 35/23 47/25 48/3 48/4
brought [5] 10/15 10/16 56/5 57/14 57/18
brush [1] 35/23
bunch [1] 47/5
Bureau [17] 14/16 16/22 21/25 24/12 28/24 33/1 33/4 33/7 37/6 38/19 38/25 41/5 42/2 45/17 46/12 49/13 49/18
business [2] 35/1 35/20
butchered [1] 30/9

## C

C.F.R [1] 49/11
calculation [1] 54/16
call [1] 18/22
called [1] 5/11
came [1] 12/22
can [46] 2/13 3/5 4/17 5/4 6/19 6/21 7/6 7/11 7/13 7/17 8/19 11/14 12/5 14/1 16/8 17/25 18/21 19/19 20/23 23/22 25/25 26/2 26/4 26/6 26/14 26/20 27/20 31/8 35/11 36/10 37/10 43/24 45/8 46/3 46/9 48/7 48/8 51/5 51/22 53/2 58/7 59/13 60/19 60/23 60/25 61/14
canon [5] 5/17 30/8 30/9 30/12 30/12
canons [1] 41/22
capital [8] 22/20 35/3 35/9 35/13 40/2 42/4 49/14 54/19
carries [1] 4/5
carry [2] 38/8 38/21
carrying [1] 20/1
case [28] 4/8 4/13 4/14 4/21 9/1 10/14 11/13 12/9 12/24 14/3 15/5 16/9 17/18 18/13 18/20 19/8 32/17 37/23 39/12 42/16 42/17 53/14 53/22 54/10 56/5 57/11 58/6 61/12
cases [14] 8/8 8/21 9/12 20/7 20/16 28/5 36/9 43/7 53/10 53/10 53/20 54/1 55/2 56/3
categorical [1] 55/5
cause [1] 44/21
caused [1] 8/10
caution [1] 42/15
century [1] 48/10
certain [3] 4/5 35/25 36/1
certainly [3] 7/17 12/22 36/17
certificate [1] 37/20
certify [1] 62/4
challenge [2] 16/13 16/19
challenges [1] 54/17
chamber [1] 49/7
chance [2] 28/7 61/16
characterized [1] 54/11
charge [1] 21/21
chatting [1] 25/24
chemicals [1] 22/16
Chief [2] 2/7 15/20
choosing [1] 50/22
circuit [8] 4/20 15/25 19/7 19/20 20/16 20/20 23/19 27/2
Circuit's [1] 19/3
circumstance [1] 31/1
circumstances [5] 7/7 21/15 37/1 42/3 56/9
cite [2] 4/12 4/12
cited [5] 4/19 4/21 4/23 20/17 41/22
cites [1] 28/22
citizen [1] 30/2
City [1] 1/21
civil [2] 1/3 2/2
claim [4] 56/5 57/11 57/14 60/7
claims [1] 57/18
clarification [1] 57/25
clarify [3] 2/17 13/19 14/23
classic [1] 10/8
clear [7] 2/14 9/8 9/8 14/20 20/14 27/3 38/20
clearly [5] 2/13 14/18 22/13 27/10 35/12
clemency [4] 15/15 15/21 16/1 34/17
co [1] 25/24
co-counsel [1] 25/24
Code [1] 9/4
codifies [1] 50/11
codify [1] 49/25
coequal [1] 52/10
COLUMBIA [1] 1/1
comfort [1] 33/22
command [1] 3/18
committed [2] 44/14 55/10
common [2] 8/8 53/11
community [1] 49/15
complaint [1] 57/25
complete [6] 15/16 21/20 24/11 24/15 44/13 44/15
completed [1] 10/14
compliant [1] 16/23
complied [1] 52/19
complies [3] 28/13 28/19 28/21

## C

comply [1] 60/10
components [1] 22/14
compounding [1] 22/16
comprehensive [1] 46/21
concede [1] 57/1
conceive [2] 21/18 21/18
concept [1] 47/17
concern [4] 19/9 34/13 39/13 43/11
concerned [1] 20/18
concerns [5] 23/21 34/10 40/8 40/9 55/1
conclude [1] 16/16
concluded [2] 40/4 42/25
conclusion [2] 14/11 37/17
concurrence [2] 43/8 46/16
concurring [1] 21/1
condition [1] 29/11
conduct [3] 31/14 35/1 39/9
confer [1] 35/8
confirmed [2] 3/12 8/3
conflict [2] 27/22 28/1
Congress [14] 23/21 26/15 27/17 45/12 47/1 47/20 48/18 48/21 49/5 49/23 50/5 59/1 59/20 60/10
consequence [2] 6/5 28/5
consequential [1] 6/9
consider [4] 6/19 11/5 38/23 56/10
consideration [4] 15/15 15/25 52/12 55/25
considerations [2] 31/7 54/15
considering [1] 56/1
consistent [1] 42/21
conspicuously [1] 14/4
constitution [4] 1/24 27/6 51/25 57/2
constitutional [1] 47/4
construction [7] 20/3 29/17 29/19 29/19 32/25 34/2 48/3
construe [2] 20/9 35/6
construed [2] 17/22 19/12
construes [1] 18/4
construing [1] 17/24
contain [2] 6/14 29/6
contains [2] 29/2 36/15
contemplate [3] 7/24 9/14 59/16
contemplated [3] 37/20 51/4 51/5
contemplates [2] 30/24 30/25
contend [1] 59/12
context [6] 3/12 7/18 8/3 8/21 22/23 32/9
contexts [2] 8/25 52/6
contingent [1] 16/21
continued [1] 15/19
continuing [1] 15/22
contract [2] 24/24 45/21
contrast [1] 6/22
control [1] 46/11
controlling [2] 17/17 18/6
controls [1] 5/20
conviction [3] 12/9 12/18 40/23
Cornell [1] 1/14
corrections [1] 59/6
counsel [8] 22/20 25/24 29/7 36/11 38/4 57/4 57/23 57/23
counts [1] 55/4
couple [4] 32/22 32/23 42/11 46/15
course [18] 7/18 10/5 11/12 13/11 15/11 17/10 17/17 19/19 22/23 23/4 23/18 33/24 57/4 57/15 57/21 58/2 59/24 60/22
court [65]
court's [9] 2/7 2/17 12/8 28/18 39/24 43/9 52/20 54/16 56/1
courts [15] 1/24 4/20 6/21 6/24 40/3 43/5 47/11 47/13 49/16 50/12 57/4 58/15 58/20 59/8 60/18
covers [1] 36/8
COVID [1] 62/8
COVID-19 [1] 62/8
create [2] 10/10 10/25
created [1] 10/7
creating [1] 22/17
crime [1] 55/10
crimes [1] 43/24
criminal [2] 31/16 39/12
critical [2] 15/17 20/1
curious [5] 13/5 18/8 21/17 23/25 24/6
current [2] 24/9 25/21
currently [3] 24/7 24/10 46/9
custody [14] 21/10 22/22 24/16 24/18 24/23 25/3 40/18 40/25 41/3 43/13 43/21 44/24 45/3 46/10
cv [1] 1/3
cycles [1] 55/1

## D

D.C [8] 15/24 19/2 19/7 19/20 23/19 24/20 24/24 27/1
date [100]
dates [3] 33/2 37/1 37/3
day [12] 6/18 24/13 24/13 26/21 27/25 33/3 33/8 35/17 39/7 55/6 56/17 56/18
day-to-day [1] 24/13
daylight [1] 6/18
days [32] 10/2 10/16 12/16 12/16 12/23 13/1 13/15 15/14 25/9 25/10 28/16 32/14 32/15 32/18 32/22 32/23 33/5 33/7 33/9 33/9 33/10 34/9 34/14 34/14 35/14 38/14 38/15 39/4 54/24 55/20 58/11 58/11
DC [2] 1/4 1/25
de [1] 46/11
deal [3] 43/25 47/11 47/20
deals [4] 21/9 51/21 58/8 58/9
death [53] 6/15 7/16 15/19 15/20 16/4 20/1 20/7 20/11 20/15 20/19 21/10 22/11 22/12 22/14 24/2 25/1 25/7 26/13 31/17 35/14 35/17 36/13 37/8 43/1 43/13 43/15 43/23 43/24 44/2 44/2 44/7 44/8 44/11 44/21 46/11 46/18 46/18 46/24 46/25 47/4 47/22 48/2 48/6 48/11 48/12 48/22 48/23 49/7 50/18 53/10 55/11 55/17 57/5
debate [1] 49/14
decade [1] 4/20
December [7] 1/5 7/9 7/11 10/15 15/17 15/17 28/16
December 18th [1] 10/15
December 1st [1] 15/17
December 31st [2] 15/17 28/16
December 8th [2] 7/9 7/11
decide [2] 42/17 55/16
decided [1] 50/20
decision [10] 8/13 10/8 10/11 15/7 16/8 17/3 17/12 23/14 27/10 55/23
decisions [3] 6/25 7/1 50/6
declaratory [2] 17/8 53/18
deduced [1] 22/5
defendant [3] 9/3 31/16 40/17
defendants [13] 1/6 1/19 2/5 28/12 28/15 28/16 31/9 36/4 37/16 37/25 40/2 40/9 61/10
defendants' [5] 34/2 34/25 37/4 39/8 53/2
defer [2] 49/25 50/2
deference [7] 9/9 9/9 11/7 11/20 37/4 42/10 42/18
defined [1] 49/8
defining [1] 59/7
definitions [1] 19/24
delay [5] 54/23 55/1 55/6 55/8 55/8
delayed [3] 42/5 56/7 57/17
delays [2] 34/3 34/4
delegation [2] 22/24 22/25
demonstrate [1] 55/6
demonstrated [1] 27/10
demonstrates [1] 43/10
denial [1] 21/1
denotes [1] 32/9
denying [2] 15/25 37/19
department [14] 13/21 23/5 25/10 25/11 35/10 35/16 35/19 38/7 38/20 47/9 48/13 53/13 55/23 59/6
described [1] 49/15

## D

designate [11] 3/15 3/17 3/18 3/25 4/1 7/21 8/5 9/15 28/25 31/19 42/3
designated [9] 5/23 8/1 9/21 9/22 17/6 29/10 29/13 29/14 57/20
designating [1] 57/19
designation [5] 5/3 6/2 14/24 14/25 17/5
designed [5] 35/12 46/18 46/19 46/25 52/9
detail [1] 41/24
detailed [1] 28/23
determined [2] 12/14 38/12
determining [1] 19/11
dicta [1] 18/22
dictionary [1] 19/23
difference [1] 59/3
different [6] 5/10 7/24 20/8 36/16 56/13 56/16
difficult [5] 31/9 31/9 56/4 56/8 59/8
direct [9] 21/20 24/11 24/15 25/1 37/18 44/24 49/6 50/5 55/19
directing [1] 14/15
direction [1] 31/13
directly [1] 37/3
director [39] 3/10 3/14 3/18 4/2 5/4 5/12 5/16 5/17 5/22 5/24 6/5 9/18 9/22 9/24 10/7 12/3 13/9 13/14 14/16 16/22 21/25 28/24 29/2 29/21 31/13 31/18 32/6 33/1 33/4 33/7 36/24 37/2 37/5 38/19 38/25 42/2 49/13 49/18 49/20
director's [2] 13/15 36/25
directs [2] 31/1 31/17
disadvantage [1] 34/2
disagree [1] 54/22
discretion [4] 5/15 5/20 6/6 49/16
discrimination [1] 44/5
discussed [1] 44/12
discussion [1] 46/3
disjuncture [1] 60/8
disorder [1] 7/14
displaces [1] 54/4
dispute [3] 39/16 41/21 53/23
disputed [1] 3/17
dissent [1] 46/17
distinct [1] 8/21
district [10] 1/1 1/1 1/9 1/20 1/24 12/8 13/19 18/10 37/15 37/24
divine [1] 51/5
dixit [1] 20/20
docket [2] 12/10 12/10
document [2] 10/22 11/4
DOJ [2] 10/23 11/2
done [10] 4/2 4/5 4/8 40/8 42/7 44/12 44/25 45/4 45/5 48/25
doubt [1] 39/23
down [1] 12/22
draft [2] 30/3 30/6
drafters [2] 31/24 32/5
dramatically [1] 22/11
draw [1] 51/14
drugs [2] 22/17 44/21
due [1] 11/11
dunk [1] 14/4
during [9] 4/1 5/4 8/16 10/13 25/8 36/6 36/7 44/20 62/7
duty [4] 4/1 18/10 21/2 21/6
dysfunction [2] 7/2 7/24

## E

earlier [5] 8/11 25/8 34/4 34/6 58/22
earliest [1] 25/8
early [1] 25/10
easily [2] 16/6 20/2
easy [1] 32/5
economy [1] 17/15
EDWARD [2] 1/16 2/4
effect [20] 6/10 7/25 11/12 12/1 27/6 32/21 33/6 33/20 34/21 36/8 37/17 38/3 38/6 39/2 40/5 42/1 50/7 51/24 57/2 57/7
effectuate [3] 20/10 22/14 57/5
effectuating [1] 20/15
effectuation [3] 20/19 22/11 22/12
efficient [2] 35/10 35/16
effort [1] 59/11
efforts [1] 58/5
either [12] 8/25 13/19 17/12 24/8 25/6 32/7 40/21 43/7 45/20 47/18 49/17 53/18
elaborate [1] 19/14
element [1] 20/15
eliminate [1] 46/19
else [5] 34/19 38/10 41/18 46/2 59/1
embarrassing [1] 30/10
emphatic [1] 41/3
en [1] 43/8
encompass [1] 47/19
encompasses [1] 47/16
end [8] 19/16 26/21 36/2 37/18 46/2 54/24 56/16 56/17
ended [1] 31/8
endless [1] 55/1
enforceable [1] 11/1
enforcement [2] 54/19 54/20
enforcing [1] 25/13
enjoined [1] 28/15
enough [3] 11/10 41/13 55/6
ensure [3] 3/23 6/14 44/4
ensuring [1] 6/17
enter [4] 14/15 45/21 53/13 53/17
entered [1] 58/12
entering [2] 40/4 54/1
entire [2] 30/24 32/9
entirely [1] 48/14
entitled [4] 10/9 20/6 51/25 62/5
entry [1] 35/14
envisioned [2] 46/20 59/1
equitable [1] 54/15
equities [1] 54/14
equivalent [1] 43/12
et [2] 1/5 2/3
even [21] 7/4 8/14 9/12 10/21 15/20 16/19 17/1 17/12 17/20 20/9 24/23 25/8 29/6 33/6 39/2 42/4 48/13 50/18 50/19 51/12 58/18
event [3] 6/8 6/9 21/9
everyone [3] 2/10 58/6 60/17
evidence [4] 8/19 50/3 50/5 50/8
eviscerated [2] 23/15 59/2
exactly [3] 22/21 47/16 53/21
example [7] 17/6 21/13 22/16 24/8 24/20 36/24 54/9
excellent [1] 61/12
except [1] 32/14
exception [1] 32/20
execute [1] 35/2
executed [2] 33/23 36/5
executing [1] 28/15
execution [67]
executions [10] 11/19 23/9 25/14 25/18 31/12 36/13 37/6 42/20 50/12 51/4
executive [4] 48/22 51/8 58/17 59/4
executive's [1] 46/5
exhausted [1] 45/25
exhaustively [1] 4/24
exist [1] 41/22
existed [1] 25/11
expansive [1] 51/12
expectation [1] 45/6
expeditious [1] 58/1
expeditiously [1] 58/3
expertise [5] 11/19 11/20 11/23 12/3 37/5
expiration [1] 29/1
expired [2] 34/15 39/4
expires [2] 6/24 7/3
explain [1] 23/3
explained [2] 17/18 20/13
explains [1] 29/9
explicated [1] 19/11
express [1] 29/2
expressio [1] 30/8
expressly [5] 10/22 31/12 59/16 59/20 60/10
extent [13] 5/14 13/13 19/15 28/4 39/13 46/2 49/21 52/1 58/13 59/5 59/7 60/6 60/7

## F

face [4] 10/21 10/23 11/4 50/8
facilitate [2] 16/10 17/13
facilitating [1] 35/19
facilities [4] 45/20 45/23 59/18 59/22
facility [4] 24/4 41/5 45/18 46/10
fact [10] 5/4 7/15 16/25 24/17 30/15 32/1 34/3 41/12 43/8 48/23

## F

facto [1] 46/11
factors [1] 44/1
factual [1] 22/21
factually [1] 8/21
fair [5] 11/10 18/22 19/5 33/11 36/18
fall [1] 20/2
far [9] 4/7 4/21 13/6 18/21 45/15 45/22 47/16 48/6 48/8
fast [2] 60/25 61/14
favors [1] 54/14
FDPA [25] 9/5 14/1 16/9 16/14 16/20 16/20 17/8 17/16 17/18 19/17 20/9 23/13 23/13 27/7 27/9 27/21 28/2 28/6 52/13 52/14 56/5 58/25 59/1 59/11 59/16
FDPA's [1] 23/8
fearing [1] 7/2
feature [1] 34/1
federal [32] 9/4 20/6 20/7 23/17 25/7 25/13 27/23 28/19 28/22 36/15 36/23 37/8 43/1 43/15 43/15 43/23 45/20 45/21 46/4 46/18 46/24 46/25 48/2 48/6 49/13 49/15 50/14 50/18 50/21 55/13 55/17 59/21
feedback [1] 2/11
feels [1] 10/20
Fenner [4] 38/8 39/12 40/21 41/9
Fenner's [4] 37/21 38/18 39/3 39/14
few [3] 10/2 22/2 34/6
fewer [2] 32/15 34/9
file [4] 7/3 17/7 46/8 57/25
filed [4] 9/2 10/1 39/10 57/24
filing [1] 10/4
filings [3] 9/10 9/11 9/12
fill [1] 49/9
fills [1] 49/10
final [8] 13/2 14/10 17/1 25/1 44/22 49/6 55/14 56/18
finally [1] 52/18
finding [1] 55/4
fine [3] 3/8 38/13 38/15
finish [2] 41/17 42/10
fire [1] 26/7
first [9] 2/19 3/22 5/16 5/20 21/3 28/21 39/2 46/16 56/25
five [1] 10/16
flagged [1] 40/12
flexible [1] 16/5
flows [1] 19/23
focused [1] 13/11
focusing [1] 15/9
follow [2] 18/11 23/18
following [3] 12/12 60/1 60/3
follows [1] 22/6
For the Defendants [1] 1/19
force [6] 27/6 51/13 51/14 51/16 57/2 57/7
foregoing [1] 62/4
forever [1] 33/10
form [2] 18/20 54/6
formulate [1] 56/8
fortiori [1] 16/2
forward [3] 3/20 15/5 40/24
four [1] 28/16
framed [1] 17/20
frankly [1] 20/18
frequently [1] 7/15
front [3] 39/12 39/21 40/11
frozen [1] 6/7
frustrate [3] 6/24 7/1 7/22
fully [1] 17/10
further [7] 15/8 35/24 52/21 52/21 55/25 60/11 61/9
furthest [1] 52/13

## G

gallows [1] 25/14
gap [2] 43/22 44/23
Garner [1] 4/23
gave [1] 58/22
general [26] 5/15 5/18 5/20 8/4 8/6 12/15 12/25 16/3 21/25 22/25 23/1 34/22 35/4 35/5 35/7 38/12 38/13 38/18 39/4 42/8 44/14 44/16 44/24 45/4 56/13 56/18
generality [1] 17/20
generally [1] 50/6
given [4] 37/2 38/21 42/16 50/21
glaring [1] 43/22
goes [8] 4/22 4/24 35/20 36/24 43/9 44/8 45/3 60/21
good [5] 3/2 3/4 13/4 28/11 48/9
goodbye [1] 34/18
govern [1] 52/9
governed [1] 13/10
governing [3] 34/25 48/20 51/4
government [39] 3/17 3/20 5/1 5/15 5/21 6/11 8/6 8/12 8/16 8/18 8/19 9/15 10/12 10/20 11/18 13/5 15/6 15/9 16/13 20/8 20/16 23/16 23/18 27/2 45/21 45/22 48/20 52/11 53/13 53/20 53/25 54/3 57/1 57/5 57/19 57/20 57/21 59/21 60/22
government's [14] 3/25 5/6 6/4 6/22 8/5 8/25 9/13 10/5 14/3 15/3 16/8 20/3 57/3 57/8
governs [3] 5/18 31/14 58/15
grant [2] 52/3 57/12
granted [1] 32/5
granular [1] 17/21
great [4] 3/9 41/24 47/11 47/19
grounds [3] 11/19 18/15 27/9
guarantee [1] 34/21
guess [6] 14/19 38/5 41/8 50/2 60/19 61/2
guidance [4] 8/14 10/7 10/23 11/3

## H

half [1] 10/19
Hall [1] 1/15
hand [1] 60/16
handling [1] 15/5
handset [1] 2/12
happen [4] 7/6 16/24 22/15 28/4
happened [3] 4/10 12/23 25/6
happening [1] 22/19
happens [9] 7/12 7/20 21/21 24/10 24/25 25/2 43/12 44/25 45/4
happy [7] 11/12 20/13 20/21 26/3 46/1 53/25 56/24
hard [1] 25/20
harm [7] 15/11 15/13 16/1 52/25 53/7 54/13 55/9
harmonize [2] 59/12 59/23
harmonized [1] 59/13
Haute [3] 24/3 24/12 24/14
head [3] 7/5 12/25 13/22
hear [7] 2/13 2/18 28/8 45/13 50/15 53/10 53/20
heard [3] 29/8 38/3 57/1
hearing [4] 1/8 10/18 44/3 62/7
hears [1] 53/9
heck [1] 53/9
heightened [1] 54/11
held [1] 24/23
help [3] 23/3 45/8 61/13
helpful [8] 25/4 25/5 26/19 26/21 45/10 46/7 60/19 61/12
here's [1] 38/13
hereby [1] 11/1
higher [2] 8/10 14/6
historical [4] 25/21 26/12 50/11 60/20
historically [7] 24/1 24/7 25/6 43/19 43/20 45/9 48/15
histories [2] 26/13 26/13
history [6] 4/24 25/17 45/9 46/1 46/4 50/13
hoc [4] 10/9 10/13 10/20 11/3
hold [1] 46/12
holding [1] 20/19
holiday [1] 60/15
holidays [1] 61/16
Honor [92]
Honor's [8] 35/24 39/17 39/18 42/16 42/21 52/20 53/23 56/24
HONORABLE [1] 1/9
HOOK [3] 1/23 62/3 62/14
hope [1] 61/2
hopefully [1] 61/15
hour [2] 10/18 42/12
hours [1] 34/7
housed [1] 24/2
huge [2] 47/2 47/20
Hughes [1] 1/15
hypothetical [1] 35/24

## I

identified [6] 29/12 36/3 36/15 47/24 54/9 57/11
III [1] 58/16
immediate [1] 46/11
immediately [1] 45/7
imminently [1] 33/24
impart [1] 31/15
implement [1] 35/2
implementation [23]

**I**

implementation... [23] 6/15 17/23 18/5 19/11 19/12 19/17 19/21 19/24 20/2 20/4 20/7 21/7 21/11 22/5 23/4 43/6 43/11 44/10 47/25 48/3 48/5 49/2 50/19
implemented [3] 21/3 30/21 44/16
implementing [4] 36/13 48/12 48/22 59/19
implements [1] 48/23
implication [1] 33/17
implied [1] 4/6
import [1] 59/8
important [2] 48/16 49/21
importantly [1] 8/24
impose [1] 14/6
imposed [2] 43/25 44/3
imposing [1] 32/1
imposition [2] 44/1 44/6
in saying [1] 21/4
inapposite [3] 11/21 20/17 20/21
incidentally [1] 43/17
include [4] 17/21 17/23 18/5 19/12
included [1] 42/21
includes [3] 4/9 19/21 22/8
incorporate [5] 48/21 52/14 52/15 55/18 58/13
incorporated [4] 23/13 27/7 28/2 43/15
incorporates [2] 17/19 58/14
incorporating [2] 19/17 27/14
incorporation [2] 50/24 58/25
incorrect [1] 20/11
indefinite [1] 33/6
independent [1] 51/13
indicate [3] 29/23 52/19 53/1
individual [4] 21/11 24/11 24/14 49/7
inform [1] 22/20
informative [1] 18/8
informing [1] 9/2
initial [3] 30/24 32/16 42/20
injection [1] 22/17
injunction [11] 14/5 14/15 15/4 29/22 31/4 34/23 36/1 53/4 53/14 53/17 54/14
injunctions [3] 31/11 31/11 54/1
injunctive [3] 14/21 15/10 54/12
inmate's [1] 42/4
inmates [3] 24/2 35/9 35/13
instance [5] 22/13 27/21 31/18 32/8 54/8
instances [1] 38/2
institutional [1] 36/25
institutions [3] 23/7 58/23 60/9
instruction [2] 30/16 32/10
insurmountable [2] 23/12 58/24
intend [1] 35/23
intended [4] 10/24 49/24 49/24 50/2
intent [1] 42/13
interact [1] 27/19
interaction [1] 32/12
interacts [1] 52/10
interest [7] 5/6 15/19 15/21 15/22 34/16 54/18 55/13
interests [1] 35/9
interlocutory [1] 7/4
internal [3] 8/14 10/23 35/7
interpretation [2] 4/3 18/24
interpretations [1] 9/14
interpreted [2] 15/3 29/24
interpreting [2] 12/6 19/8
interpretive [1] 11/21
interrupt [2] 4/11 23/23
interrupted [1] 13/23
into [14] 2/12 6/10 11/9 19/25 20/13 20/22 21/7 23/13 26/2 26/6 27/7 43/15 44/20 45/21
introduce [1] 2/13
invalid [1] 27/16
invent [1] 10/20
inventing [1] 10/13
invoked [1] 11/18
involved [4] 48/11 48/11 58/6 60/17
ipse [1] 20/20
irreparable [7] 15/10 15/13 16/1 52/25 53/7 54/13 55/9
issuance [1] 13/2
issue [14] 11/6 16/9 17/9 21/24 31/4 33/18 37/22 38/15 39/7 40/13 48/2 51/13 53/11 53/15
issue's [1] 40/11
issued [4] 39/5 40/21 40/23 41/10
issues [5] 17/12 34/25 40/2 46/19 60/18
Ithaca [1] 1/15

**J**

jail [2] 24/19 24/24
jails [1] 45/23
January [3] 14/13 14/17 29/16
January 12th [1] 29/16
January 1st [1] 14/17
JEFF [3] 1/23 62/3 62/14
jointly [1] 60/23
judge [40] 1/9 15/22 17/17 17/18 17/25 18/10 18/16 18/17 19/10 19/14 19/14 19/18 19/19 19/25 20/12 20/13 20/25 22/3 22/8 23/20 37/21 38/8 38/18 39/3 39/12 39/14 40/21 41/9 46/16 46/23 47/19 47/24 47/24 51/1 51/5 51/11 51/11 51/11 51/13 53/16
judge's [3] 2/8 11/24 12/2
judges [1] 51/3
judgment [26] 2/18 3/7 12/8 12/9 12/17 12/18 12/24 13/2 13/7 13/13 14/11 18/19 18/20 25/1 35/14 37/14 37/21 37/25 38/16 39/15 40/14 40/17 40/19 41/13 41/14 53/18
judgments [1] 37/23
judicial [8] 7/1 8/13 8/22 8/24 12/1 12/6 17/15 59/4
jumps [1] 44/10
jurisdictions [1] 24/22
Justice [21] 10/1 10/21 10/22 11/7 11/22 13/21 15/21 25/10 25/11 35/11 35/16 35/20 38/7 42/12 42/19 46/17 46/23 47/9 48/14 53/13 55/23
Justice's [2] 15/20 23/5
Justices [1] 18/16
justification [1] 49/11

**K**

Kagan [1] 11/22
Kaiser [1] 11/22
Kansas [1] 1/21
Katsas [3] 20/25 46/23 47/24
Katsas' [3] 22/3 22/8 46/16
Keith [1] 37/23
kind [5] 7/24 17/8 25/25 55/7 55/8
kinds [2] 23/20 28/4
knew [1] 34/14
knowledge [2] 36/25 46/1
knows [3] 23/25 25/17 58/2

**L**

label [2] 53/4 53/5
lack [1] 33/22
lacuna [2] 47/20 49/9
laid [1] 41/24
language [12] 29/23 30/17 30/18 31/5 31/6 32/1 32/3 32/4 32/7 37/14 39/8 59/24
last [7] 4/19 8/20 9/10 33/20 41/25 50/17 52/24
lastly [1] 57/17
late [2] 38/17 42/12
later [5] 10/16 12/16 28/16 38/15 38/15
Latin [1] 30/10
law [27] 1/14 1/17 4/14 4/23 11/1 15/7 16/24 17/20 21/12 23/24 25/13 27/6 27/17 28/3 28/14 43/15 43/15 45/15 50/21 51/16 54/17 57/2 58/13 58/14 58/14 58/25 59/5
lawful [1] 11/2
laws [3] 22/13 23/9 23/12
lead [2] 44/11 46/11
leads [2] 6/4 43/18
least [12] 19/10 25/3 27/25 32/13 33/1 34/14 40/22 40/24 55/19 58/11 61/1 61/16
leave [2] 40/12 57/25
leaves [2] 12/24 44/23

## L

LeCroy [3] 54/10 57/8 57/10
left [1] 47/20
legal [7] 6/19 11/21 11/22 16/3 51/13 51/14 51/24
legally [1] 6/9
legitimate [1] 55/1
length [2] 28/23 52/8
lengthy [3] 7/21 7/25 54/23
less [3] 15/15 16/3 16/3
lesser [1] 15/12
lethal [1] 22/17
letter [3] 9/2 11/12 26/3
level [2] 17/19 50/8
life [3] 15/14 15/19 15/22
lifted [16] 3/11 3/16 3/16 3/19 4/2 5/4 6/3 6/18 6/20 7/10 9/23 29/22 30/18 31/10 32/6 33/21
lifting [2] 9/15 9/19
lifts [1] 8/10
light [3] 33/24 37/7 37/8
likely [4] 16/10 36/8 47/13 56/13
limit [5] 3/24 30/16 32/2 38/13 39/8
limitation [3] 13/15 30/11 30/13
limitations [2] 11/1 62/9
limited [2] 10/4 44/19
limits [1] 4/8
line [6] 13/23 18/7 22/9 25/16 25/25 51/14
lines [1] 44/22
LISA [3] 1/2 2/2 28/15
literal [1] 12/23
literally [1] 18/6
litigant [1] 57/6
litigants [1] 57/4
litigation [13] 9/10 11/2 15/24 16/12 17/14 21/2 32/19 33/21 33/22 34/17 47/3 47/6 47/12
little [6] 12/7 12/11 21/13 23/10 35/5 47/18
local [2] 59/18 59/18
located [1] 8/18
logic [1] 3/12
logical [2] 31/13 32/3
logistics [1] 37/7
long [4] 12/22 31/8 33/3 50/13
longer [2] 27/22 34/13
look [15] 11/14 17/17 18/15 19/2 19/19 26/2 26/6 27/13 36/19 39/20 39/25 43/22 47/2 51/11 60/18
looked [2] 11/9 19/7
looking [2] 26/11 26/12
lot [2] 6/11 53/10
lots [3] 24/17 33/20 33/22
love [1] 50/3

## M

magic [1] 6/8
makes [5] 21/4 22/7 42/6 46/15 50/11
making [1] 10/8
male [1] 24/4
manage [1] 31/9
management [2] 24/13 35/8
mandate [7] 8/23 12/20 12/21 13/2 39/5 40/19 40/24
mandates [1] 31/1
mandatory [3] 3/14 29/4 30/16
manner [5] 12/14 19/12 21/12 38/11 48/21
Manual [6] 10/1 10/21 10/22 11/7 42/13 42/19
many [3] 36/16 36/21 49/3
MARIE [2] 1/2 2/3
Marks [5] 18/7 19/2 19/3 19/5 19/8
Marshal [36] 21/2 21/10 21/13 21/19 21/19 21/21 21/22 21/24 22/4 22/15 22/19 22/22 23/3 24/1 24/16 24/18 24/23 25/9 38/7 40/16 40/18 41/1 41/4 43/11 43/14 43/20 43/21 44/17 45/7 45/14 46/10 46/13 48/4 49/2 51/8 59/17
Marshal's [3] 21/6 21/23 44/19
Marshals [15] 24/20 24/25 25/3 25/11 25/12 25/13 25/18 25/22 26/13 45/19 45/23 45/24 48/10 60/2 60/21
materially [1] 16/4
materials [2] 26/12 60/15
matter [3] 24/9 54/17 62/6
matters [1] 40/4
may [31] 5/8 8/16 9/24 10/4 10/24 11/5 11/15 13/9 13/20 15/16 23/23 24/12 26/8 26/10 26/11 31/11 34/16 35/5 35/19 36/22 37/7 38/14 41/10 42/5 42/6 44/21 48/25 56/11 58/13 59/17 60/9
maybe [3] 22/20 41/8 41/8
mean [18] 6/5 18/19 25/9 26/8 29/24 30/5 31/22 35/18 36/19 38/20 38/24 41/7 41/9 48/8 49/5 51/10 53/1 54/7
meaning [4] 18/24 19/11 40/16 58/18
means [5] 5/18 19/24 22/6 32/15 35/10
meant [1] 19/18
measured [2] 15/14 15/14
meet [1] 54/11
member [1] 15/18
mentioned [1] 33/19
merely [1] 3/23
method [2] 15/6 22/9
midnight [2] 7/11 60/21
might [9] 17/9 17/20 17/21 23/3 23/17 31/10 32/19 34/19 52/14
mind [2] 23/10 26/19
minimal [1] 16/5
minimum [3] 56/6 56/6 59/11
minute [3] 6/23 7/3 33/20
misconstruction [1] 20/12
misconstrues [1] 14/5
Missouri [20] 1/20 13/19 16/24 27/6 27/17 27/22 27/24 37/15 37/25 43/3 43/9 50/24 51/2 51/19 51/25 52/9 52/11 55/18 57/2 60/3
Missouri's [2] 27/4 27/15
Mitchell [4] 8/21 9/3 9/11 36/9
mitigating [1] 43/25
MO [1] 1/21
mode [2] 4/9 4/9
modification [1] 38/9
modifies [1] 3/16
moment [2] 4/17 27/12
MONTGOMERY [14] 1/2 2/3 14/7 15/1 16/2 16/19 24/3 27/10 28/15 29/12 38/3 40/25 53/3 55/10
Montgomery's [9] 14/13 15/15 28/17 29/7 43/6 50/19 54/19 56/5 57/23
months [3] 8/20 9/10 56/7
more [23] 4/14 7/15 8/24 12/22 13/1 26/8 29/3 29/10 33/9 33/9 33/10 46/19 46/25 47/13 51/12 51/20 51/21 53/10 53/19 58/11 59/8 60/23 60/23
moreover [2] 50/10 52/7
morning [4] 3/2 3/4 10/1 28/11
MOSS [1] 1/9
most [6] 15/23 19/7 19/20 24/2 43/8 55/9
motion [6] 1/8 2/16 2/17 3/6 14/11 57/24
motions [1] 10/18
move [2] 58/6 60/24
moved [2] 7/8 45/15
Mr. [10] 2/20 23/23 28/8 28/10 29/18 35/5 38/1 43/19 56/21 61/8
Mr. Schierenbeck [5] 2/20 23/23 29/18 43/19 56/21
Mr. Simpson [4] 28/8 28/10 35/5 61/8
Mr. Vialva [1] 38/1
Mrs. [4] 14/13 16/19 24/3 40/25
Mrs. Montgomery [3] 16/19 24/3 40/25
Mrs. Montgomery's [1] 14/13
Ms. [17] 2/21 14/7 15/1 15/15 16/2 27/10 28/17 29/7 29/12 38/3 43/6 50/19 53/3 54/19 55/10 56/5 57/23
Ms. Babcock [1] 2/21
Ms. Montgomery [8] 14/7 15/1 16/2 27/10 29/12 38/3 53/3 55/10
Ms. Montgomery's [8] 15/15 28/17 29/7

**M**

Ms. Montgomery's... [5] 43/6 50/19 54/19 56/5 57/23
much [5] 15/12 20/4 25/8 47/13 56/23
multiple [1] 53/12
must [1] 3/15
mute [1] 2/10
Myers [1] 1/11
myself [2] 50/17 52/22
mystified [2] 12/11 57/22

**N**

name [1] 2/14
narrow [1] 48/21
narrower [1] 53/14
narrowest [1] 18/15
naturally [2] 35/25 36/2
necessarily [3] 31/15 31/15 58/23
necessary [6] 15/8 20/15 33/17 40/6 42/17 46/20
need [11] 10/20 14/2 18/15 26/6 26/11 31/15 32/16 32/22 32/23 55/16 60/23
needs [2] 21/24 28/25
negative [1] 4/9
Neither [1] 3/21
Nelson [1] 37/24
Nevertheless [1] 9/9
new [22] 1/12 3/15 3/18 3/25 8/5 8/9 9/18 9/22 14/16 16/22 17/7 28/25 29/13 29/21 30/21 31/19 32/6 33/2 33/3 39/1 42/3 57/19
newly [1] 9/3
next [3] 44/9 44/15 55/24
nobody [1] 2/10
nonbinding [1] 11/4
nor [3] 11/1 12/16 38/15
North [1] 1/17
notable [1] 51/1
note [10] 11/18 20/3 29/19 34/3 35/24 39/10 46/3 48/1 52/7 62/7
noted [3] 11/22 17/20 19/25
notes [1] 27/13
notice [17] 6/16 7/20 18/5 18/23 19/9 19/25 20/5 20/18 27/18 27/23 27/24 32/18 33/5 34/15 35/17 36/15 59/14
notices [1] 39/11
noticing [1] 40/16
notification [1] 34/7
notify [1] 32/13
notion [1] 57/17
novel [1] 37/22
November [1] 28/14
November 19th [1] 28/14
number [2] 27/4 34/24
NW [1] 1/24
NY [2] 1/12 1/15

**O**

O'Connor [1] 15/22
O'Melveny [1] 1/11
objection [1] 14/24
obligation [1] 21/10
observation [1] 22/3
obviate [2] 8/7 16/11
obvious [2] 13/25 15/14
obviously [1] 34/7
occasions [1] 53/12
occur [10] 5/3 6/3 7/3 7/15 7/18 7/21 7/23 51/23 55/24 56/25
occurred [4] 29/12 34/4 48/6 62/7
occurs [2] 22/22 56/14
October [1] 56/7
October 16th [1] 56/7
odd [3] 21/13 21/15 47/18
off [5] 7/5 32/23 42/18 43/24 61/16
offenders [1] 24/5
Office [1] 1/20
officer [1] 22/24
officers [2] 59/4 59/5
official [3] 1/23 23/11 62/3
officials [7] 23/7 55/13 56/10 58/24 59/18 59/22 60/9
often [1] 7/12
oftentimes [1] 33/19
old [3] 25/12 29/13 46/4
once [3] 2/7 13/6 25/1
one [21] 7/3 9/12 9/23 12/7 16/10 20/17 21/14 21/15 23/15 23/23 29/10 29/14 33/14 36/21 37/1 38/24 39/22 51/3 52/13 55/14 56/16
onerous [1] 15/12
only [28] 3/18 6/3 8/17 8/18 9/14 10/15 10/16 14/2 14/18 15/16 20/9 20/17 22/6 22/8 29/14 29/19 30/15 32/6 34/6 38/22 41/3 43/14 44/19 45/3 46/10 51/24 52/4 57/4
open [1] 31/8
operate [1] 58/15
operation [1] 25/8
opinion [20] 15/20 17/17 18/1 18/3 18/4 18/6 18/9 18/17 18/17 19/10 19/16 20/12 21/1 22/3 23/20 51/11 51/11 56/1 60/17 61/14
opinions [2] 20/20 51/6
opportunity [1] 56/21
opposite [1] 53/21
opposition [2] 6/12 14/3
order [38] 2/8 2/9 2/17 8/22 12/1 12/6 12/11 12/12 12/13 12/13 12/19 13/7 13/8 13/12 13/20 14/14 16/17 17/13 28/18 28/20 37/19 37/20 38/9 38/10 38/11 38/14 38/18 38/21 39/24 40/4 40/6 40/21 41/10 41/10 42/22 52/20 53/19 58/12
orderly [2] 6/14 36/12
orders [1] 39/22
ordinarily [1] 49/16
ordinary [5] 15/5 16/6 54/12 57/9 57/15
original [1] 5/7
originally [1] 5/23
others [3] 22/1 28/12 35/9
otherwise [5] 11/2 13/12 31/4 40/6 42/7
ought [4] 42/21 49/12 49/13 55/5
out [15] 5/11 5/14 20/1 20/25 23/21 38/8 38/10 38/21 41/24 42/15 50/14 54/24 57/22 58/12 60/17
outside [2] 57/6 58/8
over [8] 20/24 21/10 24/13 28/3 31/7 39/13 55/10 55/11
overcome [1] 54/18
overlap [1] 18/16
overrides [1] 5/19
overrule [2] 50/9 50/10
overseeing [1] 25/14
overstepping [1] 53/16
own [2] 6/25 20/3

**P**

p.m [2] 7/10 61/17
paint [1] 35/23
pandemic [1] 62/8
panel [2] 23/2 23/15
paper [1] 39/9
papers [3] 6/12 9/16 17/7
part [7] 17/9 20/1 23/1 23/5 35/19 54/15 57/24
partial [2] 2/18 14/11
particular [7] 4/9 18/4 29/15 30/14 34/10 37/23 43/9
particularly [3] 21/14 37/22 60/15
parties [7] 7/19 10/17 38/2 39/13 40/8 60/14 60/22
parts [1] 22/6
pass [3] 5/9 5/23 8/11
passed [4] 5/24 8/23 12/23 29/13
passes [7] 5/7 5/9 5/25 6/6 6/7 9/21 30/19
passing [2] 5/13 6/8
penalty [17] 7/16 25/7 26/13 35/17 43/1 43/16 43/23 46/18 46/19 46/24 46/25 47/4 48/2 48/6 50/18 53/10 55/18
pendency [2] 8/17 10/13
pending [2] 12/19 40/19
people [8] 24/17 24/20 24/21 30/5 34/16 37/8 43/20 57/22
perform [1] 22/18
perhaps [5] 7/4 26/5 33/6 45/14 58/16
period [10] 6/18 14/13 27/18 27/23 27/24 27/25 36/4 41/4 46/13 54/25
permissible [2] 28/18 47/7
permit [1] 3/21

P

permits [2] 39/15 53/6
permitted [1] 2/8
person [13] 25/2 33/23 43/13 44/14 44/17 44/23 44/25 45/3 45/5 45/6 45/17 46/13 51/4
person's [1] 45/3
petition [3] 15/16 15/16 16/1
phrase [1] 3/16
phrased [1] 31/6
picking [2] 50/22 51/10
pieces [1] 22/2
place [9] 7/11 12/13 17/23 19/13 33/9 38/11 39/23 44/9 49/6
placed [2] 9/14 11/1
plain [2] 28/18 31/5
plainly [1] 20/17
plaintiff [10] 1/3 1/11 2/4 6/19 28/22 51/16 54/21 55/16 55/22 57/11
plaintiff's [5] 2/16 2/17 28/13 29/17 36/11
plaintiffs [5] 2/18 2/22 2/24 7/2 9/2
plan [1] 19/25
planning [3] 3/6 34/16 34/18
plans [3] 53/2 56/4 56/8
plausible [1] 6/1
play [3] 21/8 44/20 50/12
played [1] 24/1
pleading [4] 43/5 51/18 52/1 52/15
pleadings [1] 7/4
please [6] 2/11 2/13 3/1 33/15 37/12 62/7
PLLC [1] 1/17
point [22] 5/14 8/12 8/19 13/4 16/18 16/21 17/16 21/4 21/20 39/17 39/18 40/24 41/25 44/13 45/1 45/7 45/16 46/6 48/9 55/7 59/10 60/7
pointed [1] 57/22
pointing [1] 23/16
points [3] 20/25 56/25 58/4
policy [1] 23/20
portion [1] 18/4
portions [1] 35/12
posit [1] 42/6
posits [1] 29/7
possibility [2] 17/14 59/15
possible [5] 29/4 30/22 37/7 58/3 59/20
possibly [2] 36/5 61/14
post [4] 10/9 10/13 10/20 11/3
postponement [3] 32/14 32/21 34/8
potential [2] 16/11 40/7
potentially [1] 15/3
power [1] 5/17
powers [1] 13/12
practicably [1] 42/7
practical [6] 23/17 23/19 23/21 27/1 27/2 31/7
practically [1] 54/7
practice [10] 8/4 8/6 8/8 8/19 36/3 43/4 50/11 51/18 52/2 52/15
precautions [1] 44/4
precedent [3] 19/3 19/7 48/1
precisely [2] 4/10 53/3
predicate [2] 23/1 30/12
preferred [1] 50/22
prejudice [11] 14/2 14/4 15/11 15/12 15/13 16/2 16/5 16/8 27/11 55/4 55/6
preliminary [1] 53/4
prepare [2] 16/4 32/18
prerogatives [1] 11/2
prescribe [2] 19/22 49/12
prescribed [2] 5/12 21/12
prescribing [1] 20/14
present [1] 57/10
presented [1] 38/24
presumably [4] 5/6 32/15 35/15 41/9
presumed [1] 30/14
pretty [4] 14/18 31/22 31/23 44/19
preventing [1] 7/24
previously [2] 33/19 42/12
principally [1] 24/4
principles [1] 10/11
prior [6] 4/2 9/13 28/6 37/23 42/16 42/21
prison [1] 24/19
prisoner [5] 15/19 15/21 31/16 32/13 32/18
Prisons [17] 14/16 16/22 22/1 24/13 28/24 33/1 33/4 33/8 37/6 38/19 38/25 41/5 42/2 45/18 46/12 49/13 49/18
probably [5] 7/15 24/21 24/22 30/9 39/20
problem [7] 5/22 23/8 23/12 28/2 33/11 35/6 58/25
problematic [1] 52/5
problems [7] 17/10 23/17 23/19 27/1 27/2 48/19 58/16
procedural [1] 10/25
procedure [4] 43/4 51/19 52/2 52/16
procedures [20] 17/19 17/21 17/22 19/17 19/21 19/21 20/10 22/6 47/3 47/5 47/7 47/9 47/15 47/17 47/19 47/21 48/5 49/5 59/24 60/8
proceed [2] 58/3 58/17
proceeding [5] 37/18 37/19 54/6 57/5 57/24
proceedings [3] 2/9 61/17 62/5
process [10] 22/14 22/17 24/1 24/15 36/12 44/4 44/9 44/13 44/15 44/22
Professor [1] 2/21
professors [1] 23/24
prohibit [2] 29/21 31/12
prohibition [6] 4/6 5/19 29/2 29/7 29/8 29/11
prohibitory [1] 29/5
prompt [3] 3/23 5/6 32/10
promptly [8] 9/18 9/22 11/16 29/3 30/3 30/22 35/2 42/2
promptness [1] 5/2
promulgated [3] 6/13 8/7 28/6
proper [1] 18/24
properly [1] 8/15
proposed [2] 6/16 14/14
proposition [3] 4/12 4/22 4/25
prospect [1] 16/21
protection [1] 31/16
protocol [3] 21/2 43/7 51/2
protocols [5] 9/20 15/24 17/18 23/2 23/14
provide [6] 13/14 26/3 26/20 33/5 35/13 36/12
provided [7] 12/8 12/11 12/15 25/19 27/17 38/13 60/10
provides [5] 4/4 27/18 27/22 32/12 40/18
providing [2] 11/15 18/5
province [1] 12/2
provision [22] 5/2 5/5 6/1 6/2 11/25 13/8 19/10 20/18 21/9 21/18 28/14 29/4 30/19 32/9 34/7 41/24 42/1 42/13 42/19 43/3 44/10 48/24
provisions [4] 20/5 23/6 50/23 59/14
public's [1] 54/18
pull [1] 12/10
purely [2] 14/22 35/7
purpose [12] 3/13 3/22 5/2 6/12 6/13 6/16 6/17 29/25 36/11 36/17 36/19 36/20
purposes [3] 32/19 35/15 36/21
pursue [1] 6/19
purview [1] 22/24
put [2] 3/20 32/23
putting [1] 19/25
puzzle [1] 17/9
puzzled [2] 12/7 38/6
puzzling [1] 20/24

Q

quashed [1] 53/2
quick [1] 56/25
quickly [4] 25/19 45/25 58/6 60/17
quite [4] 7/22 31/10 42/14 58/1
quote [11] 3/15 3/15 6/3 6/14 9/4 9/17 10/23 17/19 17/21 19/17 20/10
quoted [1] 9/16
quotes [1] 9/12

R

raise [4] 16/20 55/1 58/4 58/15
raised [2] 40/3 54/17
raising [2] 27/3

**R**

raising... [1] 60/7
Raleigh [2] 4/8 4/21
RANDOLPH [1] 1/9
Rao [4] 17/18 47/19 51/1 51/13
Rao's [8] 17/17 18/1 18/16 19/10 19/14 23/20 47/24 51/11
rather [4] 8/17 14/6 15/11 27/3
rationale [1] 11/3
rationales [2] 10/13 10/20
rationalization [1] 10/9
re [1] 6/2
re-designation [1] 6/2
reach [4] 16/9 17/11 55/17 59/21
react [1] 5/12
read [6] 13/17 22/23 27/21 37/14 41/12 41/14
reading [12] 3/9 4/23 6/1 6/4 8/2 9/7 12/24 13/25 30/23 32/8 33/12 51/5
readings [1] 3/20
reads [1] 21/4
realistic [1] 61/7
really [13] 16/19 16/25 17/2 18/8 19/1 20/24 23/21 35/7 35/9 44/20 48/14 53/11 56/2
reason [11] 5/7 5/8 5/9 5/16 5/25 9/21 15/1 30/20 30/21 33/23 37/1
reasonable [1] 29/17
reasonably [1] 29/24
reasoning [4] 19/15 20/19 20/20 23/2
reasons [6] 17/15 20/21 46/15 47/24 52/7 54/9
rebroadcast [1] 2/9
receipt [1] 12/19
recent [6] 4/14 15/23 19/7 19/20 43/8 46/16
recipe [1] 7/2
recognize [1] 37/5
recognized [4] 8/6 20/4 46/17 46/17
recognizes [1] 50/12
recollection [1] 53/24
reconsider [1] 6/25
reconsideration [1] 34/24
record [6] 2/8 2/15 9/14 10/6 10/10 26/1
redesignate [3] 5/4 8/16 16/13
reference [3] 23/7 58/23 60/8
referenced [1] 9/4
references [1] 5/25
referred [2] 51/1 51/3
referring [1] 30/7
refined [1] 47/12
reflecting [1] 41/11
reflective [1] 50/24
regarding [2] 39/11 40/10
regardless [1] 54/10
register [7] 30/3 30/6 36/15 36/23 46/4 49/15 50/14
regs [3] 20/5 20/6 41/17
regulation [36] 3/7 3/13 3/13 3/21 4/4 4/10 5/11 9/7 16/17 28/3 28/20 28/22 28/23 29/1 29/6 29/20 29/23 30/1 30/14 31/14 31/24 33/12 42/25 49/12 49/19 49/21 49/22 49/24 49/25 49/25 50/2 50/10 50/14 54/22 55/16 55/22
regulations [13] 7/23 9/4 13/8 13/10 20/6 27/23 28/6 34/25 35/7 36/12 37/4 41/19 50/7
Reid [1] 4/21
rejected [3] 22/10 23/19 27/1
relate [2] 43/5 50/18
related [4] 25/5 38/22 38/23 46/4
relates [6] 11/25 11/25 40/15 42/19 43/4 48/24
relating [2] 44/1 47/4
relatives [1] 34/18
release [1] 43/13
released [1] 43/21
relevant [4] 7/19 29/11 45/12 56/10
reliance [3] 34/10 34/13 34/16
relied [2] 10/8 10/24
relief [13] 14/5 14/9 14/18 14/20 14/21 15/1 15/8 16/3 16/6 17/8 53/4 54/12 57/12
relies [1] 51/16
rely [2] 47/9 47/15
remand [1] 40/17
remedies [1] 6/20
remedy [1] 13/25
remind [1] 2/6
remotely [2] 62/5 62/9
rendered [1] 13/7
renoticed [1] 36/4
renotices [1] 36/2
rent [1] 45/20
repeat [1] 50/16
reply [1] 14/17
reported [1] 62/5
Reporter [3] 1/23 1/23 62/3
reporting [1] 62/9
republic [1] 25/9
request [3] 14/12 57/13 60/23
requesting [1] 17/7
requests [3] 14/14 14/14 53/12
require [2] 9/17 51/12
required [1] 53/20
requirement [5] 15/10 15/12 16/5 32/10 54/4
requirements [4] 16/14 16/15 27/5 27/15
requires [4] 28/24 42/2 55/18 59/11
requiring [1] 20/10
reschedule [1] 3/10
rescheduled [1] 28/17
rescheduling [4] 3/24 5/6 28/19 29/15
reset [2] 16/22 54/24
residual [1] 15/21
resources [1] 36/25
respect [17] 17/1 17/8 18/18 19/15 22/7 22/12 25/19 27/16 37/13 41/18 47/3 53/8 54/20 55/15 58/17 59/13 59/14
respected [1] 53/12
respecting [2] 15/23 21/1
respond [4] 28/8 56/21 56/23 60/24
response [1] 5/13
responsibilities [1] 23/5
rest [1] 20/20
result [1] 58/18
retained [1] 57/23
reveals [1] 49/1
review [16] 6/21 6/25 7/1 7/22 10/4 16/10 17/2 17/13 24/15 44/7 44/12 44/14 44/24 49/6 49/7 54/5
reviewed [1] 41/13
rewrite [1] 29/20
right [20] 5/1 7/8 7/16 16/16 19/8 21/23 27/14 30/9 31/20 39/21 48/9 51/20 51/23 54/5 56/5 56/12 58/18 59/3 59/7 60/11
rights [4] 10/25 35/8 35/13 52/3
ripe [1] 56/6
role [14] 21/19 21/23 24/1 25/17 25/21 25/22 40/16 43/20 44/3 44/19 48/12 48/13 48/15 50/12
round [2] 15/23 19/20
row [2] 24/2 37/8
rule [27] 6/12 8/4 9/16 32/20 33/2 35/12 35/17 36/9 42/8 43/4 43/9 43/10 50/18 50/20 50/24 51/15 51/17 51/18 51/21 51/25 52/1 52/1 52/4 52/9 55/5 58/19 59/7
rulemaking [1] 6/16
rules [23] 2/7 6/13 8/7 23/18 35/18 35/23 48/19 48/19 49/8 50/23 51/6 51/13 51/14 52/3 52/13 52/15 55/18 57/1 57/3 57/7 58/16 59/12 59/13
run [2] 24/19 38/17
runs [1] 45/24
rush [1] 7/9
rushed [1] 7/4

**S**

same [9] 4/15 5/7 27/2 32/4 41/6 50/1 53/3 55/3 60/21
SANDRA [2] 1/13 2/4
satisfactory [1] 47/14
satisfied [1] 27/24
satisfies [1] 16/6
satisfying [1] 27/24
saying [5] 5/15 6/12 21/4 26/25 39/19
Scalia [1] 4/23
schedule [1] 6/23
scheduled [5] 7/8 9/3 10/18 36/6 39/14
scheduling [11] 28/13 28/21 29/3 31/12 37/6 42/4 42/20 43/10 48/24 48/25 50/12
scheme [4] 23/9 23/13 46/21 59/1

**S**

SCHIERENBECK [10] 1/11 2/5 2/20 2/24 23/23 29/18 43/19 56/21 56/23 61/6
School [1] 1/14
scope [2] 21/23 58/8
scratching [2] 12/24 13/22
second [5] 3/23 5/19 5/22 33/14 46/22
section [3] 10/14 28/22 30/24
security [1] 44/3
seek [2] 16/3 38/9
seeking [9] 8/8 14/2 14/5 14/10 14/19 14/20 14/21 14/22 15/1
seems [1] 32/25
selected [1] 43/3
selective [1] 50/23
sense [11] 18/6 22/7 24/14 24/16 25/2 34/22 38/23 40/25 42/6 46/15 50/11
sensibly [2] 47/1 57/13
sent [1] 21/5
sentence [33] 3/23 3/24 5/8 5/16 5/19 5/20 5/22 12/18 14/10 20/2 21/3 21/7 21/12 22/18 31/17 31/23 40/23 42/4 42/5 43/6 43/11 43/24 44/1 44/2 44/6 44/7 44/8 44/11 44/11 44/16 50/19 54/19 59/19
sentenced [6] 15/19 15/20 21/11 37/24 43/13 55/11
sentences [7] 6/15 20/7 35/3 36/13 36/16 48/11 48/12
sentencing [1] 8/9
separate [1] 51/6
serial [1] 36/2
seriatim [3] 16/11 17/14 33/2
serve [1] 6/17
serves [1] 6/12
Service [10] 24/20 24/25 25/3 25/18 25/22 26/14 45/19 45/23 45/24 60/2
set [30] 13/1 13/9 13/14 14/16 15/7 16/18 17/13 21/6 21/16 27/17 28/25 30/22 30/25 32/6 32/16 32/17 33/3 38/19 39/1 39/4 40/6 42/7 49/4 50/14 53/1 55/13 55/19 55/24 58/10 60/3
sets [2] 21/14 45/2
setting [11] 13/10 16/17 25/14 29/21 33/2 37/1 37/2 49/14 51/22 53/19 58/10
several [2] 29/18 39/7
shall [15] 3/14 4/5 12/15 12/18 29/22 30/3 30/22 31/18 32/4 32/6 32/13 40/19 44/17 46/12 55/19
short [3] 20/19 32/21 34/4
shorter [1] 55/8
shortly [1] 7/22
show [2] 4/21 14/2
showing [3] 15/13 53/6 54/13
shown [1] 31/8
sides [1] 61/1
significant [2] 54/18 55/9
signing [1] 19/19
similar [3] 16/12 18/7 37/25
similarly [1] 54/15
simple [2] 31/22 31/23
simply [23] 4/1 9/1 9/2 23/4 27/22 28/5 29/12 29/17 30/16 30/19 31/11 31/17 32/3 32/9 33/2 35/1 43/5 46/5 50/21 51/7 52/11 53/2 53/15
SIMPSON [7] 1/19 2/5 28/8 28/10 28/12 35/5 61/8
single [1] 8/12
sit [1] 49/17
sitting [1] 53/9
situation [6] 7/20 28/1 30/15 31/2 31/3 42/6
six [2] 8/20 9/10
slam [1] 14/4
sole [1] 33/23
solely [1] 35/21
somebody [2] 33/5 39/25
somehow [1] 57/8
someone [3] 13/18 25/1 39/20
sometimes [5] 11/22 11/24 31/11 34/3 34/4
somewhat [1] 10/12
soon [6] 21/20 24/10 24/15 31/18 42/14 42/14
sooner [3] 12/15 35/14 38/14
sorry [8] 4/11 23/22 30/1 34/12 35/4 37/11 41/7 50/16
sort [19] 10/11 21/17 21/18 22/21 22/21 23/7 24/6 24/25 36/2 36/21 40/20 43/22 46/14 49/25 52/4 54/25 55/5 57/21 59/23
sorts [2] 47/21 56/9
sought [4] 53/3 54/7 57/12 61/1
sounds [1] 12/25
source [1] 57/11
speak [6] 2/12 2/14 5/5 5/8 25/25 56/2
speaking [3] 2/11 2/21 2/24
speaks [2] 5/9 22/4
special [3] 5/11 44/3 54/4
specific [3] 5/18 5/19 9/5
specifies [3] 3/11 3/14 13/8
specify [4] 5/3 6/2 47/5 47/20
spiritually [1] 16/4
Square [1] 1/12
stand [1] 61/4
standard [6] 14/7 15/11 54/11 54/12 57/9 57/15
standing [5] 2/8 16/19 17/9 41/8 41/11
start [3] 3/6 24/9 43/23
started [1] 54/1
state [50] 8/8 17/20 17/21 21/12 22/13 23/6 23/7 23/7 23/9 23/9 23/11 23/11 23/12 23/18 28/3 41/14 43/5 43/12 43/15 47/15 47/17 48/19 48/22 51/3 51/9 51/19 51/20 52/11 52/14 58/13 58/14 58/14 58/22 58/23 58/24 58/25 59/4 59/4 59/5 59/6 59/7 59/17 59/18 59/22 59/22 59/24 60/3 60/8 60/9 60/9
stated [6] 4/7 6/15 36/11 39/15 51/17 52/8
statement [2] 15/23 19/20
statements [2] 36/16 42/16
states [12] 1/1 1/9 22/22 30/3 30/13 43/14 45/14 45/22 47/10 53/12 53/16 59/17
stating [1] 40/5
statute [20] 4/4 4/8 5/24 8/2 18/24 22/4 22/8 22/23 28/20 30/2 30/14 41/21 43/22 44/18 44/23 47/18 49/23 51/4 54/5 54/22
statutes [1] 58/22
statutory [2] 20/23 20/25
stay [63]
stayed [3] 12/19 33/25 40/19
stays [2] 31/8 31/10
step [3] 21/22 44/22 57/6
still [1] 50/1
stop [1] 27/8
straight [1] 15/5
strategy [2] 34/17 34/17
streamline [1] 47/14
Street [2] 1/17 1/21
strong [1] 55/12
stronger [2] 24/8 24/10
structure [2] 43/23 50/21
struggling [2] 19/1 19/3
studied [1] 23/24
subject [8] 13/12 26/3 34/23 34/24 34/24 36/5 55/25 62/8
submission [1] 42/13
submit [2] 39/9 42/13
submitted [1] 42/15
subpoenaed [1] 24/22
subsequent [1] 32/17
subsidiary [1] 51/9
substantive [8] 10/25 11/19 11/20 11/23 12/12 35/13 37/5 52/3
substitute [1] 51/8
suffer [1] 16/3
sufficient [4] 14/25 15/2 52/14 55/12
suggesting [2] 60/2 60/6
suggests [3] 8/14 9/24 57/9
Suite [1] 1/21
summary [3] 2/18 3/7 14/11
superfluous [1] 41/25
supervise [3] 21/7 21/11 22/5
supervising [3]

**S**

supervising... [3] 23/4 48/4 49/3
supplement [1] 48/18
supplemental [1] 57/25
support [2] 4/11 10/4
suppose [1] 11/18
supposed [2] 33/8 60/2
supremacy [1] 28/3
Supreme [6] 4/7 4/20 33/25 43/4 43/9 52/9
sure [6] 14/9 18/22 36/23 54/2 60/16 60/25
surprise [2] 23/10 57/21
suspends [1] 8/4
sustained [1] 40/23
Sutherland [1] 4/12
sympathetic [2] 39/17 39/17

**T**

talk [2] 22/14 23/10
talked [1] 19/16
talking [5] 7/14 11/25 20/5 54/22 54/23
talks [1] 26/14
tangentially [1] 38/22
task [1] 37/2
tasked [2] 48/4 49/2
Tatel [3] 19/14 19/18 51/12
Tatel's [3] 18/17 20/12 51/11
technical [1] 40/25
technically [2] 24/18 24/22
technological [1] 62/9
telephone [1] 23/24
telephones [1] 2/10
TELEPHONIC [1] 1/8
telling [3] 10/19 52/5 53/3
tenable [1] 3/22
tenet [2] 4/3 4/22
term [4] 3/14 17/22 31/8 43/6
terminates [1] 36/1
terms [3] 28/18 35/1 42/9
Terra [2] 24/12 24/13
Terre [1] 24/3
tested [2] 47/10 47/12
textual [1] 48/2
theory [1] 18/12
thereafter [1] 7/22
therefore [2] 21/5 62/8
thinking [3] 21/23 26/15 45/13
though [3] 17/12 24/23 32/20
thought [4] 19/18 36/20 42/20 61/2
thoughts [1] 26/19
three [3] 9/10 56/25 58/4
timely [3] 35/2 54/19 54/20
times [4] 1/12 24/17 29/18 39/7
timing [7] 11/11 11/25 15/17 20/5 27/4 27/15 59/14
to make [1] 14/19
today [11] 2/16 2/22 2/25 26/1 26/6 26/21 40/9 46/2 53/21 56/17 56/17
today's [1] 2/9
together [2] 6/16 27/21
token [2] 32/4 55/3
tomorrow [1] 26/5
tonight [2] 60/21 61/3
top [1] 22/8
topic [1] 12/6
totally [2] 9/1 23/15
touched [1] 12/6
Tower [1] 1/12
transcript [3] 1/8 41/13 62/4
transfer [1] 44/17
transference [4] 22/4 22/7 22/15 22/19
transferred [3] 24/12 41/5 45/6
translatable [1] 50/21
translate [2] 51/8 52/6
translation [1] 48/19
treatise [1] 8/13
trial [3] 24/21 48/25 49/16
triggered [3] 21/3 29/8 34/8
troubling [1] 10/12
true [3] 7/22 9/16 62/4
try [4] 7/5 26/14 46/1 52/6
trying [3] 35/2 50/16 60/14
turn [6] 2/12 14/1 30/4 41/16 42/10 42/25
two [7] 3/20 16/11 17/10 39/11 56/7 57/18 58/1
type [4] 14/21 43/12 49/1 55/2
types [6] 40/7 43/14 43/24 47/3 52/13 54/17
typical [1] 7/15

**U**

U.S [12] 1/20 1/24 21/2 24/16 24/18 24/23 25/11 40/18 41/1 41/4 45/23 51/8
unambiguous [2] 29/4 41/21
unanimously [1] 40/4
unchallenged [1] 9/1
under [23] 2/7 3/10 13/7 16/2 16/4 18/7 22/24 23/8 24/24 27/6 28/18 31/17 34/8 38/18 44/18 51/5 51/25 53/4 53/5 54/16 55/6 57/2 57/9
undercut [1] 33/2
underinclusive [1] 22/12
underlying [2] 34/22 39/12
understands [1] 14/3
understood [4] 38/2 45/9 49/24 57/13
unending [1] 55/8
unexceptional [2] 30/9 30/11
unfettered [1] 6/6
UNGVARSKY [3] 1/16 1/17 2/4
unique [6] 34/1 34/1 36/25 37/22 42/1 52/11
uniquely [1] 34/10
UNITED [9] 1/1 1/9 22/22 30/3 43/14 45/13 53/12 53/15 59/17
unius [1] 30/8
University [1] 1/14
unless [4] 33/24 38/9 49/23 52/21
unlike [1] 48/5
unquote [2] 19/17 20/10
unreasonable [1] 60/14
up [13] 7/9 12/10 25/14 26/7 39/7 41/17 42/10 44/8 46/11 46/22 47/21 51/10 53/11
upheld [1] 47/13
upon [8] 9/15 9/18 10/7 10/24 12/19 13/2 29/1 51/16
urge [1] 16/9
use [1] 59/17
used [4] 22/16 22/18 29/18 43/7
uses [1] 3/14

**V**

VA [1] 1/18
vacate [4] 14/12 16/8 17/5 27/9
vacated [3] 8/22 16/18 54/7
vacating [1] 53/15
vacatur [16] 14/1 14/2 14/6 14/14 14/19 14/22 14/25 16/6 52/25 53/5 54/6 54/14 54/16 57/9 57/14 57/15
vaguely [1] 9/4
valid [1] 39/14
variety [1] 20/21
venue [1] 39/16
verb [1] 3/17
vexing [1] 19/6
Vialva [2] 20/17 38/1
view [13] 6/22 16/23 18/3 21/19 22/8 22/9 22/10 27/18 32/3 37/13 40/20 44/18 60/23

**W**

wake [2] 6/20 22/10
warden [2] 32/13 32/17
Washington [2] 1/4 1/25
watch [1] 25/12
way [10] 4/5 4/6 7/18 15/2 15/5 18/19 18/21 35/8 41/6 60/10
ways [2] 22/25 47/13
weeks [2] 57/18 58/1
weight [1] 10/9
welcome [1] 2/6
western [4] 1/20 25/12 37/14 37/24
westerns [1] 45/14
Westlaw [2] 26/7 26/9
what's [2] 23/3 27/18
whenever [7] 29/3 30/13 32/3 33/19 33/23 45/13 52/6
who's [2] 2/21 23/24
whole [1] 3/22
Wilkins [3] 15/22 19/25 20/13
Wilkins' [1] 19/19
WILLIAM [3] 1/5 2/3 28/12
win [1] 17/12
wish [1] 14/6
within [7] 12/2 20/2 47/16 48/2 50/23 57/18 58/1
without [2] 25/21

W

without... [1] 38/8
woman [1] 24/4
Wonderful [1] 3/2
wondering [4] 13/17 13/18 39/2 40/20
Woodard [1] 15/18
word [3] 18/5 20/8 47/25
words [3] 21/5 38/17 45/13
work [2] 6/11 23/21
workable [2] 46/19 47/1
worked [2] 24/7 26/14
works [2] 24/7 25/20
worth [1] 11/15
write [2] 31/22 31/23
written [1] 23/9
wrong [1] 57/10
wrote [1] 31/24

Y

year [3] 8/20 34/5 34/6
years [5] 31/8 42/5 47/6 55/10 55/11
yield [1] 55/9
York [1] 1/12

Z

zero [1] 10/9
ZOHRA [2] 1/14 2/4