# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-03261-RDM |
| | ) |
| JEFFREY ROSEN, et al., | ) |
| | ) |
| Defendants. | ) |

## RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to 5 U.S.C. § 702, Rule 56 of the Federal Rules of Civil Procedure, and Local Civil Rule 7(h)(2), Plaintiff Lisa Montgomery hereby moves for partial summary judgment with respect to Claim II of her Supplemental Complaint in the above-captioned matter. Accompanying this motion are a Memorandum of Points and Authorities in support of Mrs. Montgomery's motion, and a proposed order.

DATED:   January 5, 2021

Respectfully Submitted,

/s/ Alec Schierenbeck
Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504
mvergow@omm.com

Sandra L. Babcock
Clinical Professor, International Human Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA MONTGOMERY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )  No. 1:20-cv-03261-RDM |
| | ) |
| JEFFREY ROSEN, et al., | ) |
| | ) |
|       Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1
BACKGROUND ............................................................................................................................. 1
LEGAL STANDARD ..................................................................................................................... 3
ARGUMENT .................................................................................................................................. 3
I.    Designation Of A January 12, 2021 Execution Date Violated The FDPA ......................... 4
II.   Defendants' Violations Of Law Prejudice Mrs. Montgomery .......................................... 8
III.  The Proper Remedy Is To Vacate Mrs. Montgomery's Execution Date ........................... 9
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*,
  988 F.2d 146 (D.C. Cir. 1993) ............................................................................................... 9

*Allina Health Services v. Sebelius*,
  746 F.3d 1102 (D.C. Cir. 2014) ......................................................................................... 4, 9

*Ford v. Wainwright*,
  477 U.S. 399 (1986) ............................................................................................................. 9

*In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I)*,
  955 F.3d 106 (D.C. Cir. 2020) ................................................................................. 1, 4, 5, 6

*In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II)*,
  No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) ........................................................ 4, 6, 7

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
  No. 12-CV-782, 2020 WL 7186766 (D.D.C. Dec. 6, 2020) ................................................ 6

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
  980 F.3d 123 (D.C. Cir. 2020) ............................................................................................. 9

*Jicarilla Apache Nation v. U.S. Dep't of Interior*,
  613 F.3d 1112 (D.C. Cir. 2010) ........................................................................................... 8

*Loma Linda University Medical Center v. Sebelius*,
  684 F. Supp. 2d 42 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010) ............................. 3

*Reed v. Salazar*,
  744 F. Supp. 2d 98 (D.D.C. 2010) ....................................................................................... 3

*United States v. Epps*,
  707 F.3d 337 (D.C. Cir. 2013) ............................................................................................. 5

*United States v. Montgomery*,
  635 F.3d 1074 (8th Cir. 2011) ............................................................................................. 9

*United Steel v. Mine Safety & Health Administration*,
  925 F.3d 1279 (D.C. Cir. 2019) ........................................................................................... 9

*Whitfield v. State*,
  435 S.W.3d 700 (Mo. Ct. App. 2014) .................................................................................. 4

## STATUTES, RULES, AND REGULATIONS

28 C.F.R. § 26.3 ................................................................................................................... *passim*

Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4,898 (Jan. 19, 1993) ............................................................................................................................. 5

5 U.S.C. § 706 ................................................................................................................................ 3

18 U.S.C. § 3596 ................................................................................................................ *passim*

18 U.S.C. § 3597 ............................................................................................................................ 8

Mo. Const. art. V, § 5 .................................................................................................................... 4

Mo. Sup. Ct. R. 30.30(f) ...................................................................................................... *passim*

## OTHER AUTHORITIES

U.S. Department of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago ........................................................................................ 4

## INTRODUCTION

The Federal Death Penalty Act ("FDPA") requires "implementation" of federal death sentences "in the manner prescribed by the laws of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The term "implementation" has a "broad" scope and encompasses not only the "top-line method of execution," but also "a range of procedures and safeguards surrounding executions," including those dictating the "date, time, [and] place." *In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I)*, 955 F.3d 106, 133-34 (D.C. Cir. 2020) (Rao, J., concurring) (cleaned up).

On November 23, the Director of the Bureau of Prisons (the "Director") designated January 12, 2021 as the date that Mrs. Montgomery will be executed. But in doing so, the Director violated binding Missouri law—as incorporated by the FDPA—in two ways. First, Missouri law requires that a prisoner receive at least 90 days' notice of a new execution date. Mo. Sup. Ct. R. 30.30(f). Under that provision, the earliest execution date that the Director could have designated was February 21, 2021—more than five weeks later than the date the Director chose. Second, Missouri law prohibits the execution of more than one individual in a month. *Id.* But Defendants presently plan to execute *three* federal prisoners in the month of January.

Because the Director's January 12 designation runs afoul of the clear terms of the FDPA, Mrs. Montgomery respectfully requests that the Court set aside her January 12, 2021 execution date pursuant to the Administrative Procedure Act ("APA").

## BACKGROUND

Mrs. Montgomery was sentenced to death in April 2008. *United States v. Montgomery*, 635 F.3d 1074, 1079 (8th Cir. 2011).

1

On October 16, 2020, Defendants scheduled Mrs. Montgomery's execution for December 8, 2020. Dkt. 33 at 172. After visiting their client, Mrs. Montgomery's capital attorneys contracted COVID-19, rendering them incapable of filing her clemency petition. On November 12, Mrs. Montgomery filed a complaint asserting claims stemming from her lawyers' inability to assist her in the clemency process. Dkt. 1. Finding merit in Mrs. Montgomery's claims, this Court issued a stay of execution lasting until December 31, 2020. *See* Dkt. 19.

While the stay remained in effect, on November 23, Defendants rescheduled Mrs. Montgomery's execution for January 12, 2021. Dkt. 33 at 173, 175. In response, Mrs. Montgomery filed a supplemental complaint asserting two claims under the APA. Dkt. 29-1 ("Supp. Compl."). In Claim I, Mrs. Montgomery asserted that Defendants' designation of a January 12 execution date violated federal regulations providing that "[i]f the date designated for execution passes by reason of a stay of execution," then the Director "shall" designate a new execution date "when the stay is lifted." 28 C.F.R. § 26.3(a)(1).

In Claim II, Mrs. Montgomery asserted that Defendants' designation violated the FDPA, which requires that federal death sentences be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Specifically, Mrs. Montgomery alleged that Defendants' designation failed to comply with two applicable provisions of Missouri law: (1) a requirement that a prisoner receive at least 90 days' notice of an execution date; and (2) a rule prohibiting the Government from "execut[ing] more than one warrant of execution per month." Mo. Sup. Ct. R. 30.30(f); *see* Supp. Compl. at 4, 6-7.

After this Court granted leave to file the supplemental complaint, Mrs. Montgomery moved for partial summary judgment on both claims in the supplemental complaint and requested that the January 12 execution date be vacated. Following full briefing and oral argument, this Court

granted partial summary judgment on Claim I and vacated the January 12 execution date—the "'default remedy' under the APA." Dkt. 47 ("D. Ct. Op.") at 25 (quoting *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010)). Having concluded that Mrs. Montgomery was entitled to vacatur on Claim I, the Court "d[id] not reach Montgomery's claim that Defendants violated the FDPA (Claim II)." *Id.* at 27-28.

On December 28, Defendants filed a notice of appeal and moved for a stay pending appeal in the district court. This Court denied Defendants' request. Dkt. 55. Defendants then moved the D.C. Circuit for a stay pending appeal or vacatur of this Court's opinion. On January 1, 2021, a panel of the D.C. Circuit reversed and vacated this Court's decision. Order, *Montgomery v. Rosen*, 20-5379 (per curiam). On January 5, 2021, the D.C. Circuit denied rehearing en banc.

The same day that the D.C. Circuit denied rehearing en banc, Mrs. Montgomery asked this Court for leave to renew her motion for partial summary judgement on Claim II of the supplemental complaint.

## LEGAL STANDARD

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is … consistent with the APA." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C.), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010). Here, the summary judgment standard requires this Court to again decide whether the Director's order was "not in accordance with law," "in excess of statutory … authority," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

## ARGUMENT

Defendants' decision to designate Mrs. Montgomery's execution for January 12, 2021 violated the FDPA in two respects. *See* Supp. Compl. at 6-7. Each violation, on its own, requires

the Court to vacate Mrs. Montgomery's execution date. *See, e.g.*, *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("vacatur is the normal remedy" under the APA for unlawful agency action).

## I. Designation Of A January 12, 2021 Execution Date Violated The FDPA

Defendants' designation of a January 12 execution date violated the FDPA. As the D.C. Circuit has explained, the FDPA's requirement that "implementation of the [death] sentence" be "in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a), requires Defendants to abide by "the positive law and binding regulations of [the] state" where the prisoner was sentenced, *Execution Protocol Cases I*, 955 F.3d at 130 (Rao J., concurring); *accord In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II)*, No. 20-5361, slip op. at 3-4 (D.C. Cir. Dec. 10, 2020) (en banc) (three concurring judges and four dissenting judges recognizing Judge Rao's concurrence in *Execution Protocol Cases I* as the controlling D.C. Circuit opinion).

Here, Mrs. Montgomery was sentenced in the Western District of Missouri, *see Montgomery*, 635 F.3d at 1079 n.1, so her execution must comply with any relevant Missouri statutes or regulations. Defendants, however, have concededly failed to comply with binding Missouri law.[1] It is undisputed that Defendants have provided nowhere near the requisite 90 days' notice under Missouri Supreme Court Rule 30.30(f). Nor do Defendants dispute that they have scheduled two additional executions for January 2021, in violation of Rule 30.30(f)'s monthly limit. *See* Suppl. Compl. at 4;[2] *see* Dkt. 37 ("Opp. SJ") at 18-26.

---

[1] Missouri Supreme Court Rules constitute "positive law" because the Missouri Constitution provides that they "shall have the force and effect of law." Mo. Const. art. V, § 5; *see also Whitfield v. State*, 435 S.W.3d 700, 702 (Mo. Ct. App. 2014) (Missouri Supreme Court Rules are "binding").

[2] *See also* U.S. Dep't of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders*

4

Instead, Defendants contend that the Missouri's scheduling requirements do not concern the "implementation" of Mrs. Montgomery's sentence within the meaning of 18 U.S.C. § 3596(a). But as Judge Rao's controlling opinion in *Execution Protocol Cases I* explains, "implementation" has a "broad" scope and encompasses "a range of procedures and safeguards surrounding executions," including those dictating the "[d]ate, time, [and] place." 955 F.3d at 133-34 (first alteration in original) (internal quotation marks omitted); *id.* at 129 (holding that FDPA incorporates state law "at whatever level of generality state law might be framed"). Indeed, when the Government promulgated its own timing and notice regulations to govern federal executions, it clearly understood that the term "implementation" encompasses such scheduling rules: "DOJ's 1993 execution protocol bears the title, 'Implementation of Death Sentences in Federal Cases.'" *Id.* at 133-34 (citing 58 Fed. Reg. 4898 (Jan. 19, 1993)).

Judge Rao's opinion is binding on this Court. When a fragmented court decides a case, the D.C. Circuit has explained, the "narrowest opinion" is controlling on lower courts to the extent that it "represent[s] a common denominator of the Court's reasoning." *United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) (internal quotation marks omitted). To be controlling, in other words, the opinion must "posit[] a narrow test" to which the majority "must *necessarily* agree as a logical consequence." *Id.* (internal quotation marks omitted). Judge Rao articulated such a test, holding that the FDPA requires the federal government to apply "the positive law and binding regulations of [the] state" where the prisoner was sentenced. *Execution Protocols I*, 955 F.3d at 130 (Rao, J., concurring). In dissent, Judge Tatel necessarily agreed that the FDPA would incorporate formal state "procedures set forth . . . in statutes and regulations," *id.* at 146; he simply

---

*Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

5

favored a slightly broader test that would incorporate all "implementation procedures," *id.* at 151, including more informal "protocols issued by state prison officials pursuant to state law," *id.* at 146. Judge Rao's narrow test is thus controlling here. It makes clear that the FDPA incorporates Missouri's binding rules regarding notice and timing of executions. *See id.* at 133-34 (Rao, J., concurring) ("implementation" encompasses not only "top-line method of execution," but also "a range of procedures and safeguards surrounding executions, … including those dictating the 'date, time, [and] place'" (cleaned up)).

Defendants have argued that *Execution Protocol Cases I* spoke only to the meaning of the "manner" of execution under the FDPA, not the "implementation" of an execution. Opp. SJ at 20. They are mistaken. As Judge Rao recognized, the operative provision of the FDPA contains both terms, and the meaning of "implementation" informs the appropriate reading of "manner." *Execution Protocol Cases I*, 955 F.3d at 133 (Rao, J., concurring). Indeed, recognizing that Judge Rao's opinion is "controlling precedent" on this point, Judge Chutkan recently concluded that the Government violated the FDPA when it failed to comply with a similar Texas statute governing the timing of executions under Texas law. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-782, 2020 WL 7186766, at *6 (D.D.C. Dec. 6, 2020) (holding that because "Defendants did not adhere to Texas law governing the time and date of an execution, they have violated the FDPA").

Moreover, as four additional D.C. Circuit judges recently emphasized in *Execution Protocol Cases II*, even under a "narrow[er] definition [of] 'implementation'" including "only those measures that 'effectuate death,' it seems clear that prescribing the date and time for the execution to occur is a necessary element of effectuating the death sentence." *Execution Protocol Cases II,* No. 20-5361, slip op. at 4 (Wilkins, J., dissenting) (citation omitted); *see also id.* at 3

6

(Katsas, J., concurring) (only three judges disagreeing with this construction of the FDPA). As those four judges recognized, state laws like the Missouri rules at issue here are not mere "notice" provisions; they also determine when the execution may lawfully take place—"a fundamental part of [the death sentence's] implementation." *Id.* at 4 (Wilkins, J., dissenting).

Defendant have argued that because certain provisions of Missouri Supreme Court Rule 30.30(f) speak specifically to the duties of Missouri state institutions, the requirements in question should not be read to apply to the federal government. *See* Opp. SJ at 24. But a reference in a Missouri law to the duties of Missouri officials and institutions is hardly surprising, and it does not alter the simple fact that the FDPA obligates federal officials to execute federal inmates "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Defendants' interpretation of the FDPA renders the law meaningless. Under Defendants' logic, they could avoid any obligation under state law simply because a state's laws contemplate that all matters relating to implementation of an execution will be carried out by that state's institutions, as Missouri law does. Indeed, Defendants' reading would excuse federal authorities from following even those state laws that govern infliction of the punishment itself—including even the top-line method—so long as the relevant state law references state officials and state institutions. That cannot be the rule. The FDPA's mandate that federal officials follow state law necessarily entails the straightforward translation of state laws into the federal context—the substitution of state officials for federal officials, and the like. Defendants have not suggested—and cannot

suggest—that it would be impossible to follow the state procedures at issue here, which concern scheduling rules easily implemented by federal officials.[3]

## II.    Defendants' Violations Of Law Prejudice Mrs. Montgomery

Under the APA, a party challenging an agency action bears "[t]he burden to demonstrate prejudicial error." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010). This requirement, as this Court recognized, is not "particularly onerous." D. Ct. Op. at 26 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). If "prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further." *Id.* (quoting *Jicarilla*, 613 F.3d at 1121)).

This Court previously concluded that "the prejudice to [Mrs.] Montgomery" from the Director's violation of federal regulations governing scheduling of executions was "obvious." *Id.* That conclusion is correct as to the Director's FDPA violations, as well. Had the Government complied with Missouri law's scheduling requirements, as incorporated by the FDPA, the earliest possible date for Mrs. Montgomery's execution would have been February 21, 2021—90 days after the November 23, 2020 designation. *See* Mo. Sup. Ct. R. 30.30(f). Instead, the Director set January 12, 2021 as the execution date, diminishing both "the time that [Mrs. Montgomery] has to seek legal relief from her death sentence, including through the clemency process," and the time

---

[3] Even where, moreover, aspects of state law are impossible for federal officials themselves to carry out, it is by no means clear that the Government is excused from its duty under 18 U.S.C. § 3596. The FDPA itself provides two potential routes to negotiate state law in such circumstances. First, 18 U.S.C. § 3597(a) expressly authorizes the marshal to avail himself of "appropriate State or local facilities" and "State or local official[s]" in order to "supervis[e] the implementation of a sentence of death"—meaning Congress gave the marshal the tools needed to conform to state law requirements respecting state officials and institutions. Second, if implementation of a death sentence according to state law is truly impossible notwithstanding § 3597(a), that state's law may be deemed to not "provide for implementation of a sentence of death" within the meaning of § 3596(a), which would allow the sentencing court to designate "another State, the law of which does provide for the implementation of a sentence of death," that federal officials may follow, 18 U.S.C. § 3596(a).

8

she has "to prepare mentally and spiritually for her death." D. Ct. Op. at 26 (internal quotation marks omitted); *see Ford v. Wainwright*, 477 U.S. 399, 421 (1986) (Powell, J., concurring).

Mrs. Montgomery was likewise prejudiced by Defendants' violation of Missouri law's prohibition against executing more than one person per month. That "legal mandate" reflects the considered judgment of the State of Missouri that the prisoner and the public "are likely to suffer harm if that mandate is ignored," *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 140 (D.C. Cir. 2020) (Pillard, J., concurring)—which is precisely what happened here. *See Execution Protocols I*, 955 F.3d at 144 (Rao, J. concurring) (prisoners have a "right to have their sentences implemented 'in the manner prescribed by the law of the State'" (quoting 18 U.S.C. § 3596(a))).

**III.  The Proper Remedy Is To Vacate Mrs. Montgomery's Execution Date**

As this Court recognized, where, as here, "agency action violates the APA, 'vacatur'—not an injunction—'is the normal remedy.'" D. Ct. Op. at 10 (quoting *Allina*, 746 F.3d at 1110); *see also id.* at 25. In deciding whether to vacate, courts consider (1) "the extent of doubt whether the agency chose correctly" and (2) the "disruptive consequences" of vacatur. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (internal quotation marks omitted).

Here, both factors support vacatur of the January 12, 2021 execution date. As this Court explained, "[t]his is not a case . . . where a rule merely lacks adequate support, which the agency can readily cure on remand." D. Ct. Op. at 25. Here, there is no doubt that Defendants acted unlawfully in designating that date for Mrs. Montgomery's execution, meaning Defendants will *have* to set a new date on remand. *See United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (remand without vacatur inappropriate because agency's action was "*ultra vires*" and so could "not be saved" on remand). Vacatur, moreover, would yield no

9

"disruptive consequences." The remedy would apply to only one person—Mrs. Montgomery—and the Government can simply reschedule her execution for a date that comports with Missouri law and, in turn, the FDPA.

## CONCLUSION

The Court should grant partial summary judgment in Mrs. Montgomery's favor on Claim II in the Supplemental Complaint and vacate Mrs. Montgomery's January 12, 2021 execution date.

DATED:	January 5, 2021

Respectfully Submitted,

/s/ Alec Schierenbeck
Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504
mvergow@omm.com

Sandra L. Babcock
Clinical Professor, International Human Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street
Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

*Attorneys for Plaintiff*