UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA MONTGOMERY, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-03261-RDM |
| | ) |
| JEFFREY ROSEN, et. al., | ) |
| | ) |
|        Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

There is no dispute that Defendants are not following two requirements of Missouri law in setting a January 12, 2021 execution date: one mandating that "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered," and another mandating that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month." Mo. Sup. Ct. R. 30.30(f). As this Court explained in its December 24, 2020 Opinion and Order, Mrs. Montgomery suffers "obvious" prejudice from an order by the Director "diminish[ing] the time that she has 'to seek legal relief from her death sentence,' including through the clemency process, and to 'prepare, mentally and spiritually, for [her] death." Dkt. 47 at 26. And under "the usual summary judgment and administrative law rules"—as opposed to the injunctive-relief standard Defendants have invented out of whole cloth for the purposes of this litigation—if the Director's order designating a January 12, 2021 execution date is contrary to law, that "obvious" prejudice would entitle Mrs. Montgomery to vacatur under the Administrative Procedure Act ("APA"). *Id.* at 10; *see* 5 U.S.C. § 706 (if an agency action is contrary to law, the court "*shall* … set aside [the] agency action" (emphasis added)).

1

As a result, there is really only one substantive, outstanding question at issue on this motion: whether the FDPA incorporates the Missouri laws at issue here.  It does.  As Judge Rao explained in her controlling opinion in *In re Federal Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases I)*, 955 F.3d 106 (D.C. Cir. 2020), the FDPA incorporates state law at "whatever level of generality state law might be framed," *id.* at 129, including even "granular details," *id.* at 139.  And in requiring "that the Marshal 'shall supervise *implementation of the sentence* in the manner prescribed by the law of the State,' 18 U.S.C. § 3596(a)," Judge Rao explained that the FDPA requires the marshal to do more than physically "'inflict[] the punishment of death'"—as "'implementation of the sentence' suggests additional procedures involved in carrying out the sentence of death." *Id.* at 133.  Indeed, Judge Rao reasoned that the term "implementation" encompasses not only "top-line method of execution," but also "a range of procedures and safeguards surrounding executions, … including those dictating the 'date, time, [and] place.'" *Id.* at 133-34 (cleaned up).  The upshot, according to Judge Rao, was clear: the FDPA "require[s] the federal government to follow all procedures prescribed by state statutes and formal regulations," a reading that "coheres with the statute's directive that the Marshal 'supervise' implementation of the sentence." *Id.* at 134.

Defendants do not dispute that Judge Rao's concurrence is the controlling opinion in *Execution Protocol Cases I*.  *Accord In re Fed. Bureau of Prisons' Execution Protocol Cases (Execution Protocol Cases II)*, No. 20-5361, slip op. at 3-4 (D.C. Cir. Dec. 10, 2020) (en banc) (three concurring judges and four dissenting judges recognizing Judge Rao's concurrence in *Execution Protocol Cases I* as the controlling opinion).  Instead, Defendants seek to set aside Judge Rao's opinion for purposes of this case on the ground that, while Judge Rao explained that the term implementation includes "minute aspects of executions, including the '[d]ate, time, place,

and method,'" her opinion supposedly turned on interpretation of the term "manner" and did not "reflect[] an intent to settle the meaning of 'implementation.'" Dkt. 59 ("Opp. Renewed S.J.") at 8 (internal citation omitted).  Hardly.  As just explained, Judge Rao's opinion discussed the meaning of the term "implementation" in the course of interpreting § 3596(a)'s broader command that "'the Marshal shall supervise *implementation of the sentence* in the manner prescribed by the law of the state.'"  *Execution Protocols I*, 955 F.3d at 133 (Rao, J. concurring) (quoting 18 U.S.C. § 3596(a)).  Her opinion did not divorce the term "implementation" from its statutory context.  Her interpretation of that term was critical to her determination that the FDPA requires the "federal government to follow all procedures prescribed by state statutes and formal regulations."  *Id.* at 134.  Defendants' effort to narrow Judge Rao's concurrence is irreconcilable with her opinion's reasoning.

Defendants wrongly suggest the "structure" of § 3596(a) means that "implementation of the sentence" under that provision must exclude state laws respecting date and time.  Opp. Renewed S.J. at 6-7.  According to Defendants, "implementation" must take a narrow meaning because the marshal would presumably take custody of the death-sentenced person to "supervise implementation of the sentence" after the execution date has been scheduled.  But the FDPA does not permit Defendants to manipulate what laws they will comply with based on when they choose to release a person to the marshal's custody.  In reality, the better reading of the FDPA's command that the "United States marshal" "supervise implementation of the sentence" is that Congress assigned the marshal responsibility for ensuring that the execution is carried out in accordance with all applicable law—both federal law and state law (as incorporated by the FDPA) concerning the "implementation" of death sentences.  18 U.S.C. § 3596(a).  That assignment of responsibility accords with the marshal's primary role as the enforcement arm of the federal courts.  *See* 28

U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States" courts). The statute's reference to a transfer to the custody of the marshal "[w]hen the sentence is to be implemented" prescribes a division of responsibility: a sentence of death cannot be "implemented" until after direct and collateral proceedings are exhausted, and when those proceedings have come to an end, the marshal is responsible for supervising the execution to ensure that it proceeds in accordance with law.  18 U.S.C. § 3596(a).

Defendants' view, by contrast, suffers from fatal defects.  *First*, it again runs up against the controlling appellate opinion.  As Judge Rao explained, the FDPA's requirement that "the federal government … follow all procedures prescribed by state statutes and formal regulations … coheres with the statute's directive that the Marshal 'supervise' implementation of the sentence." *Execution Protocols I*, 955 F.3d at 134 (Rao, J. concurring).  Under Defendants' view, the converse is true: the marshal's responsibility to "'supervise' implementation of the sentence" means that the FDPA *doesn't* incorporate "all procedures prescribed by state statutes and formal regulations" but only those procedures that follow formal transfer to the custody of the marshal.  *Id.*

*Second*, while Defendants elsewhere submit that the FDPA incorporates procedures that "effectuate death," Opp. Renewed S.J. at 6, 9, their "structural" argument would excuse the federal government of following even death-effectuation procedures.  State law, for example, often sets out how and where chemicals used in lethal injections should be obtained.  *See, e.g.*, Ind. Code Ann. § 35-38-6-1 (providing that the state obtain needed drugs from regulated pharmacies or wholesale drug distributors).  And because those chemicals are likely obtained far in advance of when the punishment itself is inflicted, Defendants' interpretation would excuse the federal

4

government from following state law concerning the safety and provenance of the very chemicals that will be used to effectuate death.

*Third*, under Defendants' reading, the marshal's duty to supervise implementation of the execution is triggered only when there is a formal transfer of the prisoner to the marshal. But Defendants never even attempt to identify the point at which such a formal transfer takes place, meaning it is not clear what, if any, procedures follow formal transfer—or even if, in this case, the very date of execution in dispute was selected prior to "release" to the marshal. 18 U.S.C. § 3596(a). Indeed, Defendants' conspicuous silence on this point illustrates why Congress's decision in the FPDA to incorporate state law cannot turn on the Department of Justice's own determination as to when it is appropriate to transfer "custody" of the prisoner to the marshal. *Id.* If it did, then the Defendants could evade the FDPA altogether simply by providing that a prisoner is formally "release[d]" to the marshal at the moment just before death. *Id.* Congress surely did not intend to give the Government unfettered discretion over whether to follow state law.

Defendants insistence that § 3596(a) captures only procedures that "effectuate death" likewise fails. Defendants offer no linguistic reason why, despite the ordinary and broad meaning of the term implementation, the Court should instead read that term in Defendants' idiosyncratic and narrow fashion. *See Execution Protocol Cases II*, slip op. at 4 (Wilkins, J., dissenting) (noting that implementation is defined as "the act of putting a plan into action or of starting to use something" (citation omitted)). Instead, Defendants allegedly find support for their view in two places. *First*, they misread Judge Tatel's dissenting opinion in *Execution Protocol Cases I* as adopting the view that the FDPA incorporates only procedures that effectuate death. Opp. Renewed S.J. at 8-9. In reality, Judge Tatel's opinion stated that the *plaintiffs* in that case argued that the FDPA only incorporates procedures that "effectuate death"—Judge Tatel, by contrast, took

5

the view that the FDPA incorporates "only 'implementation' procedures." *Execution Protocol Cases I*, 955 F.3d at 151. *Second*, Defendants find support for their view in non-binding out-of-circuit authorities—not one of which is persuasive. Indeed, only one, the Fifth Circuit's decision in *United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020), squarely holds that the FDPA does not incorporate state laws concerning the timing of executions. And the conclusory reasoning of that decision—that the phrase "'implementation of the sentence' … simply does not extend to pre-execution date-setting and warrants"—is nothing more than *ipse dixit*. *Id.* at 462.[1] In any event, "even if … 'implementation' means only those measures that 'effectuate death' … it seems clear that prescribing the date and time for the execution to occur is a necessary element of effectuating the death sentence." *Execution Protocol Cases II*, slip op. at 4 (Wilkins, J., dissenting).

Elsewhere, Defendants point out that the marshal did not "historically set execution dates," and contend this somehow suggests that "scheduling provisions … are not matters incorporated by the FDPA." Opp. Renewed S.J. at 10. But Mrs. Montgomery has never argued that the FDPA requires the marshal to *set* an execution date. Rather, she argues, consistent with binding D.C. Circuit precedent, that in supervising the "implementation" of a death sentence, the marshal is ensuring that the execution complies with "a range of procedures and safeguards surrounding executions," including those dictating the "date, time, and place." *Execution Protocol Cases I*,

---

[1] In *United States v. Mitchell*, the prisoner did "not raise[]" any argument with respect to state law notice requirements, meaning the Court's passing, unreasoned assertion that notice requirements "fall outside the scope of 18 U.S.C. § 3596(a)" was dicta. 971 F.3d 993, 997 n.6 (9th Cir. 2020). *Peterson v. Barr* rejected a challenge brought by family members claiming that they were entitled to attend an execution under state law, and the Court's holding turned on its view that "the word 'manner' as used in § 3596(a)" does not "refer to details such as witnesses" because manner "concerns how the sentence is carried out, not who watches." 965 F.3d 549, 554 (7th Cir. 2020). Similarly, in *LeCroy v. United States*, the Court pointedly declined to decide "precisely what 'in the manner prescribed by the law of the State' … entails," reasoning only that it "does not extend to ensuring a lawyer's presence at execution." 975 F.3d 1192, 1198 (11th Cir. 2020).

955 F.3d at 133-34 (Rao, J., concurring) (cleaned up).  That interpretation aligns with the marshal's historic role: implementing executions in keeping with date and time requirements prescribed by law, even as the applicable source of law has changed.  *See* Dkt. 45 at 1-2 (describing evolution of federal execution scheduling requirements).

Next, Defendants contend that because Missouri Supreme Court Rule 30.30(f) makes passing reference to Missouri state institutions—*viz.*, the Missouri Supreme Court and the department of corrections—no aspect of the Rule can apply to the federal government.  But, as Mrs. Montgomery has explained (Renewed S.J. Mot. at 7-8), the FDPA's mandate—that the federal government execute federal inmates "in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a)—necessarily contemplates that some features of state laws, like the relevant state actors, will have to be translated into the federal context.  Otherwise, federal authorities would be excused from complying with statutes governing even the top-line method of execution because those provisions reference the state's department of corrections.  *See, e.g.*, Mo. Rev. Stat. § 546.720 (2012) ("director of the department of corrections is hereby authorized and directed to provide a suitable and efficient room or place . . . and the necessary appliances for carrying into execution the death penalty by means of the administration of lethal gas or by means of the administration of lethal injection").

Defendants concede this point, as they must, but argue that Rule 30.30(f) is different because it refers to judicial, not executive, actors.  Opp. Renewed S.J. at 11-13.  There is nothing in the statute, however, that even hints at the conclusion that when procedures are carried out by officers housed within the judicial branch they do not amount to procedures "prescribed by the law of the State."  Nor is there any basis for concluding that execution scheduling requirements applicable to state judicial officers cannot "sensibly be translated" to a federal context.  Opp.

Renewed S.J. at 11.  A requirement that a state court set an execution date pursuant to specific timing requirements can just as easily be translated to a federal context as a requirement that a state department of corrections administer a lethal injection using a specific combination of drugs.  The Director of the Bureau of Prisons ("BOP"), instead of the state court, is responsible for scheduling the execution, 28 C.F.R. § 26.3(a), but he must do so consistent with the timing and notice requirements envisioned by state law.

Defendants' claim that Rule 30.30(f) does not apply here because it is a "state court rule[] of procedure, practice, and pleading," Opp. Renewed S.J. at 11, fares no better.  The FDPA requires Defendants to abide by all of Missouri's "positive law and binding regulations," *Execution Protocol Cases I*, 955 F.3d at 130 (Rao, J., concurring), and Missouri Supreme Court Rules plainly constitute "positive law."  The Missouri Constitution provides that the Rules "shall have the force and effect of law." Mo. Const. art. V, § 5.  And Missouri courts have recognized that the Rules "are binding on courts, litigants, and counsel."  *Whitfield v. State*, 435 S.W.3d 700, 702 (Mo. Ct. App. 2014) (quotation omitted).  The federal government is obviously a litigant in any prosecution that results in a federal death sentence and thus is bound by the Missouri Supreme Court Rules, as incorporated by the FDPA.

According to Defendants, Rule 30.30(f)'s limitation on the number of executions is inapplicable to Mrs. Montgomery because no other scheduled federal executions are governed by Missouri law.  Opp. Renewed S.J. at 13.  But again, the fact that Missouri law refers to Missouri institutions is not reason to excuse the federal government's compliance with it.  Moreover, that Mrs. Montgomery's "execution is the *first* execution scheduled for January" does not, as Defendants suggest (Opp. Renewed S.J. at 14), deprive of her of standing to challenge Defendants' violation of Rule 30.30(f).  The logical purpose of limiting the number of executions that can be

conducted in one month is to reduce strain on the judicial system and prison administrators and staff, as well as avoid any specter of mass executions, which might undermine confidence in the justice system.  Here, the Government has scheduled three executions to take place in the same facility, under the authority of the same agencies, in a period of four days.  Carrying out multiple executions in the same week—particularly in the midst of the COVID pandemic—will doubtless strain BOP resources, creating the potential for mistakes or complications.  The rule prohibits the first of several impermissibly scheduled executions just as much as it prohibits the last.

Finally, Defendants indefensibly suggest that Mrs. Montgomery has delayed in bringing this claim.  In fact, Mrs. Montgomery brought this claim a mere two weeks after the Director designated the execution date under review.  The fact that this litigation is occurring at all—and now so close to the scheduled execution date—is because *Defendants* unlawfully abbreviated the time between notice and a scheduled execution in an unprecedented rush to the execution chamber.  Defendants' suggestion (Opp. Renewed S.J. at 16-17) that Mrs. Montgomery should have challenged an execution date before it was set would be laughable if the stakes were not so serious—it is elementary that an APA action cannot *precede* the final agency action challenged.  *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  And Defendants do not cite a single APA case in which a court denied a party otherwise entitled to vacatur such relief based on supposed delay—much less a delay of *two weeks*.

For these reasons, the Court should grant partial summary judgment in Mrs. Montgomery's favor on Claim II in the Supplemental Complaint and vacate Mrs. Montgomery's January 12, 2021 execution date.

DATED:        January 7, 2021                                    Respectfully Submitted,

/s/ Alec Schierenbeck
Alec Schierenbeck
O'Melveny & Myers LLP
N.Y. Bar No. 5391008
7 Times Square
New York, NY 10036
212.728.5837
aschierenbeck@omm.com

Meaghan VerGow
O'Melveny & Myers LLP
D.C. Bar No. 977165
1625 Eye Street, N.W.
Washington, DC 20006
202.383.5504
mvergow@omm.com

Sandra L. Babcock
Clinical Professor, International Human Rights Clinic
157 Hughes Hall
Cornell Law School
Ithaca, NY 14853-4901
312.823.2330
Slb348@cornell.edu

Joseph Margulies
Professor of the Practice of Law and Government
Cornell University
Ithaca, NY 14853
607.216.2289

Zohra Ahmed
Clinical Teaching Fellow
Cornell Law School
Ithaca, NY 14853
415.260.9690

Edward J. Ungvarsky
Ungvarsky Law, PLLC
D.C. Bar No. 459034
114 North Alfred Street

10

Alexandria, VA 22314
Office: 571.207.9710
Cellular: 202.409.2084
ed@ungvarskylaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

/s/ Alec Schierenbeck