BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA MARIE MONTGOMERY, . Case Number 20-cv-3261

Plaintiff,

vs.

WILLIAM P. BARR, et al., . January 7, 2021 . 2:02 p.m.

Defendants.

- - - - - - - - - - - - - - - -

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

ALEC SCHIERENBECK, ESQ.
O'Melveny & Myers LLP
7 Times Square Tower
New York, New York 10036

SANDRA BABCOCK, ESQ.
Cornell Law School
157 Hughes Hall
Ithaca, New York 14853

EDWARD UNGVARSKY, ESQ.
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, Virginia 22314

For the Defendants:

ALAN SIMPSON, AUSA
U.S. Attorney's Office
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106

Official Court Reporter:

SARA A. WICK, RPR, CRR
333 Constitution Avenue Northwest
U.S. Courthouse, Room 4704-B
Washington, D.C. 20001
202-354-3284

Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(All participants present telephonically.)

THE COURTROOM DEPUTY: Your Honor, this is Civil Action 20-3261, Lisa Marie Montgomery versus William Barr, et al. Appearing for plaintiff, Sandra Babcock, Edward Ungvarsky, and Alec Schierenbeck. Appearing for defendant, Alan Simpson.

THE COURT: All right. Thank you, all. I appreciate your prompt responses to the Court's order and promptly getting on the telephone for this hearing today.

Who is speaking on behalf of the plaintiff today?

MR. SCHIERENBECK: Your Honor, this is Alec Schierenbeck. I will be speaking on behalf of Ms. Montgomery.

THE COURT: Okay. Why don't you go ahead, then.

MR. SCHIERENBECK: Thank you, Your Honor.

We are, of course, happy to take Your Honor's direction as to where you would like to go this afternoon, but in light of Your Honor's prior opinion, we don't see a need to again address why the defendants have misconstrued the standard for vacatur under the APA or why Ms. Montgomery suffers prejudice as a result of an unlawfully truncated period between notice and execution. Instead, we plan to address only defendants' argument that the FDPA does not incorporate Missouri law at issue here.

And we think plaintiffs are wrong starting with the text.

The dictionary definitions of "implementation" are broad. They includes the act of putting a plan into action or carrying it out, as Judge Wilkins has noted. Notice is a critical part of carrying out the death sentence and thus implementing it.

The government, of course, its own construction of "implementation" in 1993 recognized as much. Its regulation that promulgated its notice and timing rules, we're entitled to implementation of death sentences in federal cases.

Now, the text is buttressed by Judge Rao's controlling opinion in *Execution Protocols 1*. Judge Rao said that the FDPA incorporates all procedures at, quote, whatever level of generalities state law might be framed, including, quote, granular details. She construed "implementation" to include date, time, and place.

Defendants read *Execution Protocols 1* as a manner case and not as an implementation case. And I think that is defendants' way of trying to wiggle away from Judge Rao's reasoning.

THE COURT: Can I ask you to pause there for a second.

I'm on board with the proposition that the case is not just about the meaning of the word "manner" and is about the meaning of the entire phrase, including the word "implementation."

But given the fact that the setting of the execution date wasn't at issue in that case -- and that case dealt with a much narrower question -- I am interested in how you sort of get to the conclusion that what she said on that issue created binding

circuit precedent, because that's a pretty, you know, expansive view of when a concurring opinion can create binding circuit precedent, and that so that any time there's any sort of reasoning in that opinion that touches on questions that go, you know, well beyond what was at issue in the case, that that can then create a binding sort of precedent as long as there's another opinion which doesn't necessarily engage in the same reasoning but reaches the same bottom line on that issue, on the question of the meaning of the word.

MR. SCHIERENBECK: I understand your point, Your Honor, and I think there are a few ways of thinking about that.

First is, of course, *Execution Protocols 1* didn't concern a date and time provision itself, but it did construe the statute to include all procedures at whatever level of generalities state law might be framed. It's factually distinguishable in not having touched upon a date, time, or place requirement, but its reasoning isn't distinguished based on that factual distinction.

Now, under sort of *Marks* principles which Your Honor alluded to in our last conversation, the controlling opinion is the reasoning of the judge who concurred in the judgment on the narrowest grounds, and Judge Rao's reasoning was the narrowest. Judge Katsas would have stated that nothing other than the top-line method is incorporated. And Judge Rao vacated the District Court on narrower grounds. She said the state

execution protocols in question were not incorporated because they were not positive law, simply on that narrow not positive law grounds. And so that is how she reasoned, and that reasoning was necessary for the judgment. So I think that's how you get to construing as binding.

There's also the overlap between Judge Rao and Judge Tatel. And I understand that Judge Tatel did not concur in the judgment, but construing the Panel's decisions as a whole, Judge Rao took all state procedures. Judge Tatel said that the FDPA incorporates all implementation procedures, and subsequently, Judge Tatel clarified that that narrower view of scheduling and notice provisions are incorporated within the meaning of "implementation procedures," at least in his view, although that is certainly not binding on the Court.

So that's how we get there, Your Honor.

Now, I think I will move to what I take to be defendant's big argument now on opposition, which is newly raised, this, quote unquote, structural argument. Now, we think the better reading of 3596(a) is that the provision merely establishes that an execution will only be implemented after exhaustion of direct and collateral review. At that point the sentence is to be implemented, and it is the marshal who is going to supervise implementation.

Now, Judge Rao saw no conflict between following, quote, all procedures under law and the marshal's role in supervision.

And I would direct Your Honor to Judge Rao's opinion at 133 and 134 where she really goes into this issue and is obviously construing the marshal's role as a part of the whole statute.

Now, there are additional problems with defendants' argument. The first is that although defendants appear to argue at this point that the statute that incorporates death effectuation procedures, their view would carve out even some death effectuation procedures, including critical death effectuation procedures, like how drugs are obtained and compounded. And I can think of no more potential element of state law in terms of inflicting the punishment of lethal injection than determining the safety and provenance of the chemicals to be used themselves.

Also, if release is instrumental to the marshal's duty to supervise implementation of law, then certainly the government should be able to identify when release to the marshal occurs, but they haven't even tried. I'm not sure as a matter of practice there is even a technical or formal transfer of custody.

Also, I think the government's obscurity on that point points to why the FDPA doesn't turn merely on the DOJ's own internal decision about when formal transfer of custody occurs, because if it did the government could evade the FDPA all together simply by saying the marshal only formally takes custody upon pushing the button for the electrocution chamber or

what have you, at the very last moment of the infliction of punishment.

Now, I will skip getting into at length why we think the government is wrong on the effectuation of death reading. They give no linguistic reasoning why the broad terms of "implementation of the manner" should be narrowed to just "effectuation of death," and they misread Judge Tatel's opinion as adopting that view. The other circuits they cite are inapposite and really provide no more reasoning than the government does. Because even if effectuation is the line, scheduling is a critical part of carrying out the sentence and thereby effectuating it.

Now, a few other points. The government stresses the historic role of the marshal, and of course, we have never argued that the marshal sets the execution date. Our point is that the marshal ensures that the execution is carried out in accordance with law. Although the law provides the timing provision, he ensures that the execution is carried out in accordance with that timing provision.

The government's argument just proves too much. The marshal doesn't select the top-line method either. Of course, the marshal has to follow the top-line method prescribed by law. It's always been federal law that suggested what the top-line method would be or direct following state procedure with respect to the top-line method. I don't think there's any question --

THE COURT: So let me ask you a question about this.

The marshal is required to supervise the implementation in accordance with state law. If you are right and if the government is right -- which I think it is that the historical backdrop here was that the courts set the execution date, and indeed, in this case the Court did set the execution date.

If the Court sets the execution date for a Saturday afternoon and there is a state law that says that under state procedures executions should not occur on the weekends, the Court issues an order setting a date for Saturday afternoon. The marshal shows up.

Is the marshal at that point in time supposed to say, look, I can't actually -- the execution cannot go forward because in my view the Court's order is inconsistent with state law?

MR. SCHIERENBECK: I don't know whether as a practical matter, Your Honor, that happens. I think the statute envisions that the marshal has a duty to ensure that the execution is carried out in accordance with law. And here the law is not just the courts set date, but it's the state law. And so yes, I think that's the scheme the statute envisions.

You could think of it as the marshal being delegated the responsibility on behalf of the entire Department of Justice to ensure that the execution is implemented in accordance with applicable law.

THE COURT: Okay. Since I've already interrupted you,

let me ask you another question, which is, if the Court were to rule against Mrs. Montgomery on this current motion, what do you think that I should do?

You've moved for summary judgment. The government has not moved for summary judgment. And it's not clear to me that there would be an appealable order at that point if I were to simply deny your motion for summary judgment.

So I guess my question for you is, would you agree that I can treat the government's opposition as a cross-motion for summary judgment and just resolve this case on the merits?

And part 2 of that question is, if I did that, should I enter final judgment in the case on the grounds that the D.C. Circuit has already rejected your other argument with respect to the regulations? What do I do to preserve your appellate rights?

MR. SCHIERENBECK: Your Honor, I think because we want to move as expeditiously as possible to enforce our -- to keep this case going, a final judgment on this claim would be appropriate. Your Honor, we still have an outstanding *Woodard* claim in the initial complaint, and I don't think we are prepared to say that final judgment on that *Woodard* claim would be appropriate at this juncture.

THE COURT: Is there more to do with respect to that claim?

MR. SCHIERENBECK: Potentially, Your Honor. The

government's consideration of Ms. Montgomery's clemency petition is ongoing. And were the government to depart from the minimal safeguards of due process with respect to that claim, we may be before Your Honor on that claim.

THE COURT: How would they -- how would that come about just hypothetically?

I mean, I take it it's not based on sort of the original basis of the claim in that the lawyers were ill, but that they didn't give the claim adequate consideration. I'm not quite sure what that would look like.

MR. SCHIERENBECK: I understand, Your Honor. I don't want to suggest that this is, you know, in the offing, but if you want an example of what it might look like, suppose the Office of the Pardon Attorney is struck by coronavirus and we find out that they are incapable of considering this petition.

THE COURT: All right. That's fair enough.

So your position, then, is that -- and I'm not saying what I will do, but that if I were to rule against you on the present motion for summary judgment, that I should treat the government's opposition as a cross-motion and enter partial summary judgment on Count 2 of Mrs. Montgomery's supplemental complaint.

Do I have it right?

MR. SCHIERENBECK: I think that's fair, Your Honor. I confess I have not walked through all of the pieces. There

would also be, I suppose, an option to certify that issue for interlocutory appeal.

THE COURT: Yeah, I'm not sure that that is going to get you the expedition you want. If I certify it for interlocutory appeal, first of all, I would need briefing on the question of whether the standards of 1292(b) are satisfied, and then you would have to get an order from the Court of Appeals granting interlocutory appeal before then the case could even be teed up to the Court of Appeals.

MR. SCHIERENBECK: The point is well-taken, Your Honor. I do think that construing the government's motion as a cross-motion would be appropriate under those circumstances.

THE COURT: It does seem to me that there's nothing left -- again, without suggesting how I'm going to come out one way or the other on this issue, I don't need the briefing. It's not like there's discovery that's going to be taking place or further briefing on it. So it seems the parties have fully presented their views with respect to that claim and it is ripe for resolution one way or the other.

MR. SCHIERENBECK: I would agree, Your Honor. It's purely legal. This is an administrative law case. The record's here. Your Honor could rule.

THE COURT: Okay.

MR. SCHIERENBECK: I think there are only two points, Your Honor, that I wanted to press in this opening presentation.

First is -- two of many points, I should say.

The first is that I take the government to argue that they understand that references to state officials can't be an insurmountable problem to incorporate in state law in the FDPA, or else the FDPA would be totally eviscerated. I take the government's argument to be that references to courts are different, but it doesn't quite explain why. The government doesn't dispute that it could give 90 days' notice. It doesn't dispute that these rules have the force and effect of law. It suggests that the rules are only binding on courts and litigants and counsel, but of course, the government is a litigant in a criminal prosecution that ends in a sentence of death.

And to the extent the government is referencing practical problems that arise from having to follow Missouri law, those are the very practical problems that were rejected by the panel in the *Execution Protocols 1* case.

And finally, I feel compelled to respond to the argument from the government in its most recent filing that we have unnecessarily delayed in bringing this claim. As Your Honor is aware, we have moved quite expeditiously in trying to enforce Ms. Montgomery's rights. The pleading was filed within two weeks of the government setting the execution date. The government appears to argue that Ms. Montgomery could have challenged the execution date before it was even set, but basic rules of the Administrative Procedure Act require final agency

action prior to a challenge to that agency action.

And to the extent we are now on the precipice of the execution in litigating this claim, that is a consequence of the government's actions in this case that are under review, in rushing to the execution chamber in an unprecedented way in violation of federal law.

THE COURT: This touches on a question I had for you, which is, the judgment from the District Court in this case, the District Court in Missouri, says that the execution would be no sooner than 60 days, no later than 90 days from the entry of a judgment. Give me a second here. And then the Missouri Supreme Court rule says that any execution shall be at least 90 days but not more than 120 days after the date of the order.

My question to you is, was the order entered by the District Court invalid, in your view, because it didn't comply with the Missouri Supreme Court rules? And if so, were you untimely raising an objection with respect to that? That obviously has been around for years.

MR. SCHIERENBECK: Your Honor, we haven't made that argument. We didn't make that argument in our supplemental complaint as to the judgment. We didn't add it to this proceeding after Your Honor raised that very interesting point in our last conversation. So we are simply not pressing that point at all.

THE COURT: Okay. But are you pressing it before the

District Court in Missouri, and what's the status?

It at least puzzles the Court and perhaps troubles the Court if there is actually a judicial decree from a sister court which is not being complied with here. It may not be an issue for me to resolve, but I am concerned at least about the prospect that there could be an order from a federal court here that's not being complied with. I am just curious as to what's going on with that. You have previously represented to me that the order that has been provided to me is the only thing that is on the docket in Missouri and that the District Court judge, the sentencing court has not entered any further order or modified its order in any respect. So I am still scratching my head about that issue.

MR. SCHIERENBECK: I understand, Your Honor. We have not returned to Judge Fenner on that point.

THE COURT: Okay. Obviously, that's not my decision as to whether you go to Judge Fenner with it. It's one of the things that complicates my analysis as I think about it. If I conclude that the historic backdrop for the statute is that the Court set the execution date, the Court actually did set the execution date or a range of dates here in this case, and it's leaving me scratching my head a little bit about what we're talking about here where -- what Judge Fenner did was somehow improper, in your view, or if the government is not complying with Judge Fenner's order in some respect, I'm left scratching

my head.

Isn't your remedy to go to Judge Fenner rather than this Court with those issues?

MR. SCHIERENBECK: I understand, Your Honor. If we were pressing a claim with respect to Judge Fenner's judgment, the appropriate forum would likely be Judge Fenner. But because we're bringing an APA claim in this jurisdiction and our claims were based on, you know, the federal regulations and now the FDPA, we think these questions are appropriate for Your Honor.

THE COURT: All right. For me -- and I realize the issue is not one that's presented to me and presumably one that should be presented, if at all, to Judge Fenner. It complicates things a little bit for how I think about it, because if the backdrop is the courts typically set the execution dates, to address this case without talking about and thinking about what has actually happened in the sentencing court is a little bit artificial. It's made my consideration in the case a little bit more difficult.

MR. SCHIERENBECK: I understand, Your Honor, and I think we may need to investigate that claim a bit more, you know, and consider what to do. But we don't think that claim is before Your Honor. In all candor, there have been a lot of moving pieces here, and we are riding the horse we have at the moment.

THE COURT: And I understand that. It does help me to

at least know where things stand for purposes of preparing my opinion. So thank you for that.

MR. SCHIERENBECK: Of course.

THE COURT: Anything else you want to add?

MR. SCHIERENBECK: Not at the moment, Your Honor. Thank you.

THE COURT: Okay. I will let you reserve some time, and I will hear from Mr. Simpson now.

MR. SIMPSON: Thank you, Your Honor.

Defendants believe that scheduling of Montgomery's execution complied with the Federal Death Penalty Act, as apparent from the text and structure of the FDPA. The FDPA provides that the person who has been sentenced to death is committed to the custody of the Attorney General until exhaustion of the procedures for appeal. And post-sentence, Montgomery was committed to the custody of the Attorney General. She exhausted her appeals in May 2020, and she remains in the Attorney General's custody today. She's confined in Texas, as Your Honor well knows.

The FDPA next provides that when the sentence is to be implemented, the Attorney General shall release the person to the custody of a marshal, and that has not yet occurred. Montgomery is at the Federal Medical Center Carswell and will not be placed into the custody of a marshal for purposes of the FDPA as opposed to transfer until she is in the execution room

and the execution is ready to proceed.

THE COURT: But let me ask you about that. Does that mean that in essence the requirement in the FDPA that the marshal supervise implementation of the execution according to state law is in essence a nullity or can be rendered a nullity by planning by the Department of Justice in that some other official can decide what chemical to use for purposes of the execution, who is going to be in the room for the execution, everything whatsoever relating to implementation, and that the marshal can simply walk in eight seconds before the execution is set to take place and say go ahead and do it, and there actually would be nothing to the requirement that the supervision be in accordance with state law because the marshal would be doing nothing other than simply saying do it after all the other decisions and actions have taken place?

MR. SIMPSON: No, Your Honor, because those state laws govern the actual implementation of the sentence. And I believe that this is something that Judge Rao discusses in her concurrence where she says that most state statutes and formal regulations, including a reference to Missouri's, govern the implementation of a sentence at a high level of generality. But there are still nonetheless requirements applying to the sentence, that is, the chemicals to be used or that chemicals used to effectuate that shall have been procured in a particular way. It's not merely a reference to -- it's not merely a

requirement to the types of plans that various officials must undertake.

So for example, with respect to witness attendance, if its state law says that state officials shall plan for certain people to be able to attend, then I think that that would not be a procedure which effectuates -- or in any event, that would not be comparable -- and it's probably a better example to use the prescription -- not the prescription, but the actual chemical requirement that Your Honor mentioned and that Mr. Schierenbeck mentioned. But there, the requirement is actually on the chemical to be used, not on merely the type of chemical that shall be obtained for use.

THE COURT: So are you disagreeing, then, with Judge Rao?

MR. SIMPSON: I don't believe that I'm disagreeing with Judge Rao.

THE COURT: Well, because Judge Rao seems to say that part of the implementation even includes the setting of the date.

MR. SIMPSON: Your Honor, we believe that Judge Katsas's concurrence was correct and that Judge Rao's concurrence did not address this particular issue.

And I think that the context of that particular opinion is important. There, Judge Chutkan had found that the requirement to conduct executions in the manner prescribed by state law

applies both to the selection of the execution method as well as to additional procedural details, for example how the intravenous catheter is to be inserted. And Judge Rao reads that "manner" included procedural details where the details were a part of state statutes or formal regulations, including Missouri's and again not referencing state court rules of practice and procedure. But we believe that Judge Katsas's recent concurrence is correct that that case did not present and had no occasion to decide whether the FDPA extends to these matters that precede the release of the prisoner to the marshal.

THE COURT: I will ask you the same question I asked Mr. Schierenbeck about what I should do. If I agree with plaintiff, it's pretty clear what I would do. I would enter summary judgment in plaintiff's favor. If I agree with the defendants, what do you think I should do? Would it be appropriate for me to treat your opposition as a cross-motion for summary judgment and just enter judgment in your favor, in favor of the defendants on that claim?

MR. SIMPSON: I believe that that would be appropriate, Your Honor. The defendants want to see this matter brought forth expeditiously. We've made various arguments about that and note that this issue has been apparent for many months. And in fact, Ms. Montgomery attempted, after her date was set in October, to intervene into the federal death penalty -- into the execution protocol litigation but did not raise this particular

claim, even though it was readily apparent.

Moreover --

THE COURT: I'm sorry. Just to finish on this point.

MR. SIMPSON: Yes. Sorry, Your Honor. Yes, please.

THE COURT: So it is appropriate to treat your opposition as a cross-motion. Would it be appropriate for me also to enter, as I did before, a partial judgment, this time on Count 2 of the supplemental complaint, which would then permit for prompt appellate review?

MR. SIMPSON: Yes, Your Honor.

THE COURT: All right. Thank you. I'm sorry. I cut you off.

MR. SIMPSON: Your Honor, I don't want to belabor the point. I think it's well addressed in the briefs. But this particular issue or this alleged violation has been apparent for some number of months, and it was only recently brought to -- brought forth. And we believe that the delay and here now where any relief on this claim would occur nearly five days at the earliest before the execution means that this falls within the category of cases that the Supreme Court has repeatedly discouraged capital defendants from not raising these claims earlier, and various other defendants -- or other inmates have actively brought these claims.

And I note Mr. Schierenbeck's opposition to that is only that they could not have brought an APA claim before a date was,

in fact, set, but they could have brought an injunction action, as many other inmates did. And I think that it relates to the point in the briefs about why Ms. Montgomery's argument has to be incorrect, and that is that she can avoid a sort of -- the standard for a stay of execution or for equitable relief based solely on the APA, that her rule would counsel the precise sort of delay that the Supreme Court has repeatedly discouraged.

THE COURT: Let me ask you about the judgment again. I know I've had this conversation with you before. But do you have anything else to update on this?

I guess I still am confused as to the basis the government has for concluding that you go forward with the execution here on the date that's scheduled where there's a court order that says that the execution -- the Attorney General can determine the time, place, and manner of the execution, provided that it should be no sooner than -- no sooner than 90 days, no later than 90 days after the date of this judgment, and the judgment is stayed pending appeal and then also pending further order of the Court.

And so reading that, it looks to me as though there's at least an argument that the judgment actually has been stayed and is still stayed in the District Court in Missouri, and if it's not stayed in the District Court in Missouri, then it seems like the time that was specified has run and you need to go back to Judge Fenner to get him to either clarify or set a new date.

I am interested in the government's position on that question.

MR. SIMPSON: Your Honor, we do not believe that the 60 to 90 days provision is applicable because there was a direct appeal taken and subsequent to that a timely 2255 proceeding. And we believe that the further order contemplated by Judge Fenner's criminal judgment was his 2255 order which denied relief and a certificate of appealability. And that order, collateral review entirely became final in May of 2020, and that now -- at any point in time thereafter, Ms. Montgomery was subject to defendant's scheduling for execution.

THE COURT: Maybe it's Judge Fenner's business and not my business as to whether that complies with his order. But it's not obvious to me by any means. It's a little hard, I think, to reconcile with what the order and judgment actually says, but I will leave that to the parties and Judge Fenner.

For me, I don't think the question -- and I think Mr. Schierenbeck was clear that the issue is not presented to me in this case, but it poses a little bit of a quandary for me in how I think about this case. As I said to Mr. Schierenbeck, I tend to agree with what I believe is your position, Mr. Simpson, that the sort of background norm here upon which the legislation was adopted was that the courts set the execution date, and therefore, your argument is that it is not the marshal who sets the execution date, it's been historically the Court does. In

fact, that's what happened here. But then the judgment doesn't actually jive with what's going on, which is causing me a little bit of a quandary.

MR. SIMPSON: Your Honor, both the judgment as well as the FDPA were entered well after the Department of Justice had promulgated its regulations that provide for the director of the Federal Bureau of Prisons to set execution dates.

THE COURT: I don't think that's quite a fair reading of it, because as you also know, until just a couple of weeks ago, the federal regulations said that the U.S. Attorney should go to the Court and request that the Court set an execution date that, in essence, delegates authority to the Bureau of Prisons to set the date, which is sort of what happened here. It may have been the Attorney General instead of the Bureau of Prisons.

And Judge Fenner entered the order along the lines contemplated by the regulations, and the regulations also said that the director of the Bureau of Prisons shall set the date except as otherwise provided by the Court. So we still kind of run back into this judgment from the District Court in Missouri.

MR. SIMPSON: And Your Honor, defendants have no opposition to go in to Judge Fenner, but we also do not believe that this criminal judgment that we have requires us to do so, and we're not in a position where we believe that that's a necessary action.

But I understand Your Honor's concern, and I believe that

defendants just disagree as to the conclusions to be drawn from those cases.

THE COURT: Let me ask you, was I correct in my wind-up to that question that it is defendants' position that sort of the historical norm preceding adoption of the FDPA was the courts set the execution date and that that norm counsels against plaintiff's contention here that Congress contemplated that it would be the U.S. Marshal that would be implementing the judgment in setting a date in accordance with state law?

MR. SIMPSON: Your Honor, yes, with my prior caveat about the regulation. I think that Congress enacted the FDPA with knowledge of the regulations and intending to supplement and by the FDPA make federal executions easier, particularly in locations or states where there are no -- where there is no death penalty.

So the answer is yes, but I don't believe that there's any limitation thereby on defendants' ability to set dates. So as a matter of historical practice, we agree that the marshal really never set dates, apart from this instance which we mentioned in the historical briefing regarding when a Court might set a window, for example, and I believe that that actually occurred in the *Rosenberg* case.

But apart from that, marshals did not set dates, and I think that that is reinforced by the structure of the FDPA in that section where it says that the supervision of the marshal,

of that implementation is only occurring upon release to a marshal. So it contemplates sort of a single person and not a lengthy period of time, that that corresponds with historical practice and understanding.

And so all of these decisions about scheduling are far antecedent to the actual release to the marshal and the implementation of the sentence.

THE COURT: Okay. Anything else, Mr. Simpson?

MR. SIMPSON: Yes, I did want to mention one other thing. I'm just going to jump through in my notes. I had one final point.

And that is that we believe this case is -- that this particular claim is different than the regulatory claim in that even if Your Honor were to determine that Ms. Montgomery is correct on the merits that scheduling is something the marshal is supposed to supervise, that the director of BOP's designation of Montgomery's date is not itself contrary to law or in excess of statutory authority. And accordingly, it cannot be vacated under the APA. Any legal action -- or any legal violation or provision of law would be a failure of the marshal to supervise under the FDPA.

So unlike this Court's prior order where the regulation, if it applied at all, made the setting of the execution date itself contrary to law, here, the FDPA does not directly govern what BOP designates. At most, it prescribes the way in which the

marshal supervises. Accordingly, we do not believe that APA vacatur would be an available remedy to set aside BOP's designation.

Again, assuming that Montgomery is right on the merits of her argument, any relief would have to be via an injunction, which requires a showing of irreparable harm. And I think that Your Honor understands my point, but to put it another way, there is space between the textual duty imposed on the marshal by the FDPA and the thing that Ms. Montgomery is seeking to vacate.

THE COURT: I get that point. That's helpful. Thank you.

MR. SIMPSON: Okay. So with that, Your Honor, defendants would rest on their briefs.

THE COURT: All right. Thank you.

Mr. Schierenbeck, your rebuttal? You may be on mute, Mr. Schierenbeck.

MR. SCHIERENBECK: Thank you, Your Honor. Only two quick points.

The first is that in discussing with co-counsel Your Honor asked about the status of our *Woodard* claim, and it was brought to my attention that there is a situation we are monitoring. I just want to say, all we are doing is monitoring what is very fast-moving, and there are currently questions about the ability of the executives to carry out the duties of office and whether

that would be probative of a *Woodard* claim and is something we are monitoring.

THE COURT: One thing I should just caution the parties about is that I will be unavailable for most of the day on Saturday. If you need to come to me with any emergency requests, I'm going to be hard to get in touch with on Saturday.

MR. SCHIERENBECK: Understood, Your Honor.

THE COURT: Anything further, Mr. Schierenbeck?

MR. SCHIERENBECK: No, Your Honor. The only point I think is this last argument which I had not took the defendants to have made in their papers, that there is a distinction between the duty of the marshal to supervise implementation and the agency action we're challenging here. It's entirely new to me, and Your Honor, it's something I think we would have to discuss with co-counsel to adequately respond to. I wonder, if Your Honor would allow, that I am able to consult with them and if necessary file a paper no later than 5:00 on that point.

THE COURT: Yeah, I will allow that. I haven't been focusing on this myself. I can't tell you that it will be time well spent on your part, but if you would like to file something by 5:00, you are welcome to do so.

MR. SCHIERENBECK: I understand, Your Honor. I don't think there's -- at first blush, there's not much to it, but I simply haven't -- because it wasn't in their papers, I haven't thought it over.

THE COURT: Completely fair. I'm not objecting at all. It's completely fair if you would like to file something. All I was saying is that if it's in the papers it's not something I focused on previously. So it's not as though I'm getting ready in the next couple hours to issue an opinion that is going to rely on that reasoning. But if you would like to file something by 5:00 p.m. tonight addressing that, you are welcome to do so if you think that is something you would like to do.

MR. SCHIERENBECK: I understand, Your Honor. And if no paper comes, I think then it would mean that we also found no reason to respond. Thank you.

THE COURT: Fair enough. That's completely fair.

Anything else, Mr. Schierenbeck, you want to raise?

MR. SCHIERENBECK: No, Your Honor. Thank you very much.

THE COURT: Okay. And Mr. Simpson, anything further from you?

MR. SIMPSON: No, Your Honor. Thank you.

THE COURT: Thank you, all. And once again, I appreciate your incredibly hard work on this matter on a very short timetable. I know the pressure you are all operating under, and I know that things are tough in the world right now anyway with the virus and people having to work from home with family around. So I am very appreciative of your efforts. So

thank you.

I will issue an opinion as soon as I possibly can. One way or the other, I want to make sure that whoever is unhappy with what I do they have an opportunity to take further steps.

Thank you, all.

(Proceedings adjourned at 2:48 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Please Note: This hearing occurred during the COVID-19 pandemic and is, therefore, subject to the technological limitations of court reporting remotely.

/s/ Sara A. Wick                    January 8, 2021

SIGNATURE OF COURT REPORTER          DATE